**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| CONGHUA YAN, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
|  | ) |
| THE STATE BAR OF TEXAS, a private company, | ) |
| THE BARROWS FIRM, a private company, | ) |
| LESLIE STARR BARROWS, in individual capacity, | ) |
|     as member of the State Bar of Texas, | ) |
| WILLIAM ALBERT PIGG in individual capacity, | ) |
|     as member of the State Bar of Texas, | ) |
| SAMANTHA YBARRA, in individual capacity, | ) |
|     as member of the State Bar of Texas, | ) |
| LUIS JESUS MARIN in individual capacity, | ) |
|     as member of the State Bar of Texas, | ) |
|     and official capacity as Assistant Disciplinary | ) |
|     Counsel for the Office of the CDC, | ) |
| DANIEL EULALIO MARTINEZ | ) |
|     in individual capacity, | ) |
|     as a member of the State Bar of Texas, | ) |
|     and official capacity as Assistant Disciplinary | ) |
|     Counsel for the Office of the CDC, | ) |
| RACHEL ANN CRAIG in individual capacity, | ) |
|     as member of the State Bar of Texas, | ) |
|     and official capacity as Assistant Disciplinary | ) |
|     Counsel for the Office of the CDC, | ) |
| LORI L. DEANGELIS in individual capacity, | ) |
|     as member of the State Bar of Texas, | ) |
|     and official capacity as Associated Judge, | ) |
| TARRANT COUNTY, | ) |
|     Defendants. | ) |

**RESPONSE/OBJECTION TO MOTION TO DISMISS
BY THE STATE BAR OF TEXAS,
MARIN, MARTINEZ AND CRAIG
AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

PAGE

Table of Contents .................................................................................................................... 2

Index of Authorities ............................................................................................................... 3

**I. Introduction** ......................................................................................................................... 5

**II. Standard of Review** ........................................................................................................... 7

**III. Summary of Motion to Dismiss** ...................................................................................... 9

**IV. Argument and Authorities** ............................................................................................. 10

A.Immunity.............................................................................................................................. 10

    i. Eleventh Amendment immunity 12(b)(1). .................................................................... 10

    ii. Absolute immunity 12(b)(1).. ........................................................................................ 13

    iii. Qualified immunity 12(b)(1) ......................................................................................... 15

B.Claims .................................................................................................................................. 17

    i.Claim liable in individual capacity 12(b)(1). ................................................................. 17

    ii.Cognizable equal protection claim under 42. U.S.C. §1983 12(b)(6). ........................ 17

    iii.Claims under Texas Constitution Article I, Sections 13 and 19 12(b)(6) .................... 21

    iv.Claim under the RICO Act 12(b)(6) .............................................................................. 23

C.Relief .................................................................................................................................... 26

    i.Requisites for injunctive relief 12(b)(6) ......................................................................... 26

**V. Conclusion** ......................................................................................................................... 26

**VI. Prayer for Relief** ............................................................................................................. 28

**CERTIFICATE OF SERVICE** ............................................................................................... 29

# INDEX OF AUTHORITIES

PAGE

**CASES** .........................................................................................................................

Allen v. Booth, Civil Action No. 08-135, (E.D. Ky. Nov. 5, 2008) ................................................ 11

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ............................ 8

Bazile v. Fin. Sys. of Green Bay, Inc., 983 F.3d 274, 280-81 (7th Cir. 2020) .................................... 8

Beck v. Texas State Board of Dental Examiners, 204 F.3d 629, 637 (5th Cir. 2000) ............................ 15

Bell Atlantic v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................... 8,16,17,20

Civil Rights Corps. v. Pestana, 21 Civ. 9128 (VM), 29 (S.D.N.Y. May. 5, 2022) .................................. 13

Confederation Life Ins. Co. v. Goodman, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994) ........................... 23

Dyer v. Houston, 964 F.3d 374, 379 (5th Cir. 2020) ............................................................ 8

Forman v. Ours, 804 F. Supp. 864, 867 (E.D. La. 1992) ........................................................ 15

Guerrero v. Gates, 110 F. Supp. 2d 1287 (C.D. Cal. 2000) ..................................................... 12

Hardwick v. Cnty. of Orange, 844 F.3d 1112, 1116 (9th Cir. 2017) ............................................. 15

Hinojosa v. Livingston, 807 F.3d 657, 664 (5th Cir. 2015) ..................................................... 8

Jackson , 419 U.S. at 353, 95 S.Ct. 449 ..................................................................... 11

Jeryl A. Cummings v. David Eber, City and County of Honolulu, 134 F.3d 376 (9th Cir. 1998) ................. 26

Kling v. Hebert, 60 F.4th 281, 284 (5th Cir. 2023) ........................................................... 9

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) ................ 8

Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) ......................... 9

Malley v. Briggs, 475 U.S. 335, 1986 ........................................................................ 15

Manax v. McNamara, 842 F.2d 808, 811 (5th Cir. 1988) ....................................................... 23

Mancini v. Lester, 630 F.2d 990, 992, 995 (3d Cir. 1980) ..................................................... 14,18

National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) ............................... 26

N.C. State Bd. of Dental Exam'rs v. F.T.C. ,

     574 U.S. 494, 500–01, 504–05, 511–12, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015) ........................... 11

Pearson v. Callahan, 555 U.S. 223, 224 (2009) .............................................................. 16

Salinas v. United States, 522 U.S. 52, 64, 65 (1997) ......................................................... 24,25

Stapley v. Pestalozzi, 733 F.3d 804, 810-11 (9th Cir. 2013) ................................................... 14

Thole v. U.S. Bank et al., No. 17-1712 (June 1, 2020) ........................................................ 27

United States v. Bacheler, 611 F.2d 443, 450 (3d Cir. 1979) .................................................. 13

United States v. Farrell, 921 F.3d 116, 138-39 (4th Cir. 2019) ............................................... 25

United States v. Godwin, 765 F.3d 1306, 1324 (11th Cir. 2014) ............................................................ 25

United States v. Kamahele, 748 F.3d 984, 1006 (10th Cir. 2014) ........................................................ 24

U.S. v. Urban, 404 F.3d 754, 770-71 (3d Cir. 2005) .......................................................................... 12

**STATUTES AND RULES** ........................................................................................................................

TEX. CONST. ART. II, SEC. 1 ...........................................................................................................21,22

ERISA section 514(a) ............................................................................................................................ 27

29 U.S.C. section 1114(a) ...................................................................................................................... 27

29 U.S.C. section 1132(a)(e)(f) ............................................................................................................. 27

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this Response/Objection to Defendants' Motion to Dismiss by the State Bar of Texas, Marin, Martinez and Craig. ECF No 13.

## I. Introduction

1.        Four Defendants in this suit, the State Bar of Texas ("State Bar"), Luis Jesus Marin ("Marin"), Daniel Eulalio Martinez ("Martinez"), and Rachel Ann Craig ("Craig") (hereinafter referred to collectively as "Defendants") submitted Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) or, alternatively, 12(b)(6).

2.        Due to the fact that Defendants' counsel failed to comply with the FRCP Rule 10(b) requirement to state their defense in numbered paragraphs, as stipulated under the clause "must", the plaintiff has experienced difficulties referring to specific numbered paragraphs in the Motion to Dismiss. Despite this, the plaintiff will strive to do his best.

3.        In the original complaint, ECF No 1, following claims applied to Defendants:

- *First Claim for Relief, RICO (State Bar, Marin, Martinez and Craig)*

- *Second Claim for Relief, AntiTrust(State Bar, Marin, Martinez and Craig)*

- *Sixth Claim for Relief, 42 U.S.C. §§ 1983(Marin)*

- *Seventh Claim for Relief 42 U.S.C. §§ 1983 (Martinez)*

- *Eighth Claim for Relief 42 U.S.C. §§ 1983 (Craig)*

4.        In section "I. INTRODUCTION" of Motion to Dismiss, Defendants' counsel only referred 2 types of allegations that Plaintiff made, *42 U.S.C. §§ 1983* and *18 U.S.C. §§ 1962(d)*. Defendants' counsel never addressed the allegations of *18 U.S.C. §§ 1962(a), 15 U.S.C. § 2, 18 U.S.C. § 1027* and *18 U.S.C. § 1349* in the Motion to Dismiss before this Court. Therefore, Defendants' argument is insufficient and ineffective.

5.      In section "IV. ARGUMENTS AND AUTHORITIES" of Motion to Dismiss, Plaintiff's original complaint was referred 22 times by Defendants' Motion to Dismiss. The sole reference associated to Second Claim AntiTrust was [Dkt. 1, ¶¶ 245], which concerns relief and not the actual allegation. <u>Defendants' counsel **never** addressed any Plaintiff's **allegation** in the **Second Claim for AntiTrust** before this Court</u>. Therefore, Defendants' argument is insufficient and ineffective. Following is the evidential reference list in Defendants' Motion to Dismiss:

- "myriad of illicit actions to facilitate the collection of professional service fees for their own interests." [Dkt. 1, ¶75].
- Dkt. 1, ¶¶ 75, 151, Exh. 3
- [see generally, Dkt. 1]
- Barrow was seeking through her motion for interim attorney fees that she filed in his divorce matter on March 3, 2022. [Dkt. 1, ¶¶ 88-92].
- Judge Lori DeAngelis. [Dkt. 1, ¶¶ 88-92]
- "dismissed" Yan's grievance against Barrow on or about October 25, 2022. [Dkt. 1, ¶¶ 9, 109, 110, 336, 337, 340, 341-344, Exh. 2 pp. 96-97].
- "collection mechanism". [Dkt. 1, ¶¶ 109-110].
- when he allegedly "dismissed" the grievance on or about February 15, 2023. [Dkt. 1, ¶¶ 69, 114, and Exh. 2, pp 94-95].
- "collection mechanism". [Dkt. 1, ¶¶ 9, 114.]
- District 7 Grievance Committee Summary Disposition Panel for review. [Dkt. 1, ¶¶ 112, 378].
- "collection mechanism". [Dkt. 1, ¶¶ 112, 378].
- [Dkt. 1, ¶120, Exh. 4]
- [Dkt. 1, ¶¶ 113, 117, Exh. 2 pp. 98-99].
- the Defendants at all. [Dkt. 1, Exh. 2 pp. 92-93].
- [Dkt. 1, ¶¶ 144].
- [Dkt. 1, ¶¶ 336, 342, 357, 362, 377, 382].
- [Dkt. 1, ¶¶ 113, 117, Exh. 2 pp. 98-99].
- [Dkt. 1, ¶¶ 339, 341, 359, 361, 379, 381].
- [Dkt. 1, ¶¶ 341, 361, 381]
- [Dkt. 1, ¶¶ 336, 357, 377]
- [ Dkt. 1, ¶¶ 117, 336, 357, 377, Exh. 2 pp. 98- 99].
- [Dkt. 1, ¶¶ 245]

6.      In C section of "IV. ARGUMENTS AND AUTHORITIES" of Motion to Dismiss, Defendants' counsel argued that Yan does not meet the requisites for injunctive relief by referring following statement:

- *In fact, his only claim of "injury" is for past losses to his retirement account. [Dkt. 1, ¶¶ 245]. This conclusory claim is insufficient to meet all four necessary elements and Yan's request for an injunction should be denied*

However, Plaintiff has made seven different "injury" claims, both tangible and intangible, as outlined in ECF No. 1, paragraphs ¶243-¶249. Even if the Defendants' above arguments are sound, which they are not, there are still six other "injury" claims, both tangible and intangible, that Defendants' counsel never addressed before this Court. Therefore, Defendants' argument of "*request for an injunction should be denied*" is insufficient and ineffective.

7.      Defendants' counsel even went further on PageID 199, made untruthful statement said, "**In doing so**, Yan **admits** in his pleadings and exhibits that the Tarrant County District Attorney's office refused to **bring charges** against Barrows and Pigg for any of the alleged "crimes" of which he complains in his pleadings." In this case, Defendants' counsel was unintelligent enough to quickly conclude that submitting a government office's public record letter in exhibition should be considered as Yan's admitting into Defendants' conclusory statement, which is not true. However, when three individual Defendants reviewed the emails between Barrows and Pigg, as well as the contradictory court orders during their grievance investigation, they failed to conclude that Barrows and Pigg admitted to being dishonest. It's challenging for Plaintiff to understand such a vast cognitive disparity between counsels, akin to the difference between chimpanzees and ChatGPT.

8.      In the end, this serves as yet another example of misrepresentation by Defendants' counsel. It's clear that Tarrant County District Attorney's office did not refuse to bring charge (prosecution), they refused to investigate. It is Defendants' counsel themselves who mischaracterized the action of Tarrant County District Attorney's office, yet they turned around and claimed that it was the Plaintiff who admitted it.

9.      After all, even if all of Defendants' arguments are sound, they shall not be granted a dismissal of Plaintiff's lawsuit with prejudice as frivolous, as per their request. This is because Defendants' Motion to Dismiss is insufficient and ineffective. Defendants' counsel only partially read Plaintiff's complaint, raised a few selective arguments, and yet demanded the entire suit be dismissed. Defendants have even requested to be awarded their attorneys' fees for the ineffective arguments. Nay, keep praying.

## II. Standard of Review

10.      It was exactly in Tarrant County, 30 years ago, SCOTUS has ruled a landmarking opinion about what Rule 8(a)(2) stands in a pleading, "Rule 8(a)(2) requires that a complaint include *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Conley v. Gibson*, 355 U.S. 41 (1957), we said in effect that *the Rule meant what it said*:

> "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id*., at 47 (footnote omitted). "

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). *Leatherman v. Tarrant County* was cited 2000 times in various opinions.

11.      "See Bell Atlantic v. Twombly , 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (A complaint "does not need detailed factual allegations" but rather "**enough fact** to raise a reasonable expectation that *discovery* will reveal evidence of [a necessary element].") True, her complaint didn't detail such an injury. But "[c]omplaints need not be elaborate." *Aker* , 854 F.3d at 399–400 (quoting S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc. , 274 F.3d 1168, 1171 (7th Cir. 2001) )."  *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280-81 (7th Cir. 2020)

12.      "To survive a motion to dismiss, a complaint must allege sufficient facts, *accepted* as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. These standards are the same when a motion to dismiss is based on qualified immunity." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). The crucial question is "whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under section 1983 and would overcome their qualified immunity defense." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015).

13.      For purposes of deciding a motion to dismiss under Rule 12(b)(6) of the FRCP, the Court *must* assume that the facts alleged in the complaint are **true** and construe them **in the light most favorable to the plaintiff**. *Twombly,* 550 U.S. at 555. For its Rule 12(b)(6) review, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to

dismiss that are central to the plaintiff's claims and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A Rule 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023). Plaintiff argues that Defendants' counsel executed a factual attack without conducting a **complete** analysis of paragraphs of **all** three elements in the original complaint.

### III. Summary of Motion to Dismiss

14.     In the Motion to Dismiss, Defendants' counsel seek dismissal under FRCP 12(b)(1) and FRCP 12(b)(6) dismissal for two grounds,

> A. The Court Lacks Subject Matter Jurisdiction – 12(b)(1)
>
>> 1.   11th Amendment immunity bars Yan's claims against Defendants.
>>
>> 2.   Absolute immunity bars Yan's claims against Marin, Martinez and Craig.
>>
>> 3.   Qualified immunity bars any individual-capacity claims against Marin, Martinez, and Craig.
>>
>> 4.   Yan fails to set forth any claim that would make Marin, Martinez and Craig liable in their individual capacities.
>
> B. Plaintiff's Failure to State a Plausible Claim – 12(b)(6)
>
>> 1.   Yan cannot show he suffered an "injury" and his assertions do not constitute a cognizable equal protection claim under 42. U.S.C. §1983.
>>
>> 2.   Yan fails to state claims under Texas Constitution Article I, Sections 13 and 19.
>>
>> 3.   Yan fails to state a claim under the RICO Act.
>>
>> 4.   Yan does not meet the requisites for injunctive relief.

15.     Plaintiff will rebut Defendants' argument in following order:

> A.   Immunity
>
>> i.      Eleventh Amendment immunity 12(b)(1).
>>
>> ii.     Absolute immunity 12(b)(1).
>>
>> iii.    Qualified immunity 12(b)(1).
>
> B.   Claims

     i.     Claim liable in individual capacity 12(b)(1).

     ii.    Cognizable equal protection claim under 42. U.S.C. §1983 12(b)(6).

     iii.   Claims under Texas Constitution Article I, Sections 13 and 19 12(b)(6).

     iv.    Claim under the RICO Act 12(b)(6).

C.  Relief

     i.     Requisites for injunctive relief 12(b)(6).

### IV. Argument and Authorities

16.     Before delving into the detailed argument, the Plaintiff emphasizes a factual statement: the Defendants' Motion to Dismiss failed to address the **allegations** in the **Second Claims of Relief** in their entirety. Therefore, the scope of this Response to the Motion to Dismiss will be limited to the scope of the Defendant's Motion to Dismiss. Plaintiff neither seeks adding new allegation in this Response to the Motion to Dismiss nor addresses argument not raised in the Defendant's Motion to Dismiss.

17.     In C section of "IV. ARGUMENTS AND AUTHORITIES" of Motion to Dismiss, Defendants' counsel mispresented a dishonest statement by saying, "In fact, his **only** claim of "injury" is for past losses to his retirement account. [Dkt. 1, ¶¶ 245]. This conclusory claim is insufficient to meet all four necessary elements and Yan's request for an injunction should be denied". However, the truthful "In fact" was, Plaintiff had made **7** different "injury" claims, tangible and intangible, among ECF No. 1, paragraphs ¶243-¶249.

18.     The above facts argued in Defendant's Motion to Dismiss constituted a violation of the following Texas Disciplinary Rules of Professional Conduct "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." TEX. RULES DISCIPLINARY P. R. 8.04(a)(3).  As a result of Defendants' counsel's above actions, Plaintiff was required to expend time, money, and resources to respond to the misrepresentations and false statements.

A. **Immunity**

    **i.  Eleventh Amendment immunity 12(b)(1).**

19.     The Eleventh Amendment incorporates state sovereign immunity during "an exercise of the State's sovereign power", also referred to as state-action immunity. However, there exists the Ex Parte Young exception, in which state sovereign immunity cannot be invoked in federal court.

20.      "Section 1983 claims against a public official in his official capacity are construed as claims against the entity for which he is an agent. Kentucky v. Graham,473 U.S. 159, 165-66 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citations omitted)); Claybrook v. Birchwell,199 F.3d 350, 356 n. 4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."). Thus, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police,491 U.S. 58, 71 (1989). Thus a claim against Booth in his official capacity is the same thing as a claim against the Kentucky State Police." *Allen v. Booth,* Civil Action No. 08-135, (E.D. Ky. Nov. 5, 2008)

21.      A suit against Marin, Martinez, Craig's **official capacity** is a suit against the State Bar of Texas. However, there exists a distinction between the State Bar of Texas, a private company, and a traditional government entity. This is because the State Bar of Texas operates as a "public/private hybrid'." The State Bar of Texas is not a full government entity.

22.      The State Bar of Texas was delegated limited state legislative power, with certain actions associated to TEX. RULES DISCIPLINARY P. R. These actions may be considered a power "traditionally associated with [state] sovereignty." See *Jackson* , 419 U.S. at 353, 95 S.Ct. 449 (noting if the utility company had exercised a power "traditionally associated with sovereignty, such as eminent domain" the result may be different); cf. *N.C. State Bd. of Dental Exam'rs v. F.T.C.* , 574 U.S. 494, 500–01, 504–05, 511–12, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015) (explaining state legislation is "an exercise of the State's sovereign power" that is **entitled to** state-action immunity for **antitrust** claims, but holding that North Carolina's State Board of Dental Examiners, who was permitted to "promulgate rules and regulations governing the practice of dentistry within the State," was a "'public/private hybrid'" and **was not entitled to** state-action immunity for its decision that teeth whitening was the practice of dentistry because this was not a **decision supervised by the state**).

23.      However, Plaintiff argues that, the State Bar of Texas' actions related to obtaining fees are commercial activities in a free market and are not considered state actions. While collecting property tax is a state action, collecting attorneys' fees is not. Neither the members of the State Bar of

Texas nor the State Bar of Texas's commercial activities are exercises of the State's sovereign power because they are not decisions supervised by the State. Plaintiff <u>sued for the unlawful acts related to the State Bar of Texas's private functions</u>, specifically the business income derived from collecting its members' income sourced through RICO acts. Defendants **didn't** argue **Antitrust** claim for its actions.

24.  Furthermore, the Plaintiff rebuts that during its actual operation of state function, the State Bar of Texas's Office of Chief Disciplinary Counsel and its counsel do not even act as a government body due to the penetration of RICO activities. Regardless of whether it is a government entity, such an entity is not immune from a RICO suit. In the Precedential opinion of Federal case *Guerrero v. Gates*, 110 F. Supp. 2d 1287 (C.D. Cal. 2000), Guerrero alleged that LAPD Rampart CRASH had violations under sections 1962(b), 1962(c), and 1962(d), "<u>the Court finds that Guerrero has standing to pursue his RICO claims</u>." It is clear that the Office of the Chief Disciplinary Counsel is funded by a portion of the income from members of the State Bar of Texas' racketeering activities, not by state funds. <u>When the LAPD, a government body fully funded by the state, was not immune from a RICO suit, what could make a private corporation, the State Bar of Texas immune from a RICO suit? Nothing!</u> "The plain text of RICO defines enterprise as, inter alia, a "legal entity [.]" See 18 U.S.C. § 1961(4). And **we have frequently found government entities to be "enterprises" for RICO purposes.** See, e.g., Genty v. Resolution Trust Corp.,937 F.2d 899, 906-07 (3d Cir. 1991) (holding that **township** can be an "enterprise" for RICO purposes) (citation omitted); Averbach v. Rival Mfg. Co.,809 F.2d 1016, 1018 (3d Cir. 1987) (noting **that court** can be an "enterprise"); United States v. Bacheler,611 F.2d 443, 450 (3d Cir. 1979) (holding that **Philadelphia Traffic Court** can be an "enterprise"); United States v. Frumento,563 F.2d 1083, 1092 (3d Cir. 1977) (holding that **the Pennsylvania Department of Revenue's Bureau of Cigarette and Beverage Taxes** was an "enterprise")." *U.S. v. Urban*, 404 F.3d 754, 770-71 (3d Cir. 2005)

25.  "Appellants contend that the **Philadelphia Traffic Court is not an "enterprise"** within the meaning of 18 U.S.C.A. § 1961(4) which appellants urge should be confined to businesses and **not extended to state governmental units**. **This contention has already been rejected** in this Circuit. See United States v. Frumento,563 F.2d 1083 (3d Cir. 1977), cert. denied, 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978) (**Pennsylvania Bureau of Cigarette and Beverage Taxes**, a division of the Department of Revenue, **held to be an enterprise**); United States v. Herman,589 F.2d 1191 (3d Cir.), cert. denied 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (**applying RICO to Pittsburgh magistrates without discussing the enterprise issue**); United States v. Vignola,464 F.

Supp. 1091 (E.D.Pa. 1979), aff'd mem., 605 F.2d 1199 (3d Cir. 1979) (**Philadelphia Traffic Court held to be an enterprise**)." *United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir. 1979). Plaintiff argues that, multiple Federal Courts have held that a government entity is not immune from RICO allegations as a RICO enterprise, and have also held that a government official is not immune from RICO allegations as a RICO person.

26.     Even if the Eleventh Amendment immunity does apply, in a very limited scope. Plaintiff still has jurisdiction to sue Marin, Martinez, Craig's **official capacity** for **prospective, injunctive relief** under the doctrine set forth in Ex parte Young. Plaintiff has alleged that Marin, Martinez, Craig is providing ongoing RICO conspirator supporting RICO racketeering activities roles, utilizing their counsel position, pursuant to the violation of *18 U.S.C. §§ 1962(d)*. "Eleventh Amendment immunity does not insulate the Grievance Committee and Kearse from every lawsuit. First, Kearse may still be sued in her individual capacity rather than her official capacity. See Ford v. Reynolds, 316 F.3d 351, 356 (2d Cir. 2003). Second, Kearse may still be sued in her official capacity for prospective, injunctive relief under the doctrine set forth in Ex parte Young, 209 U.S. 123 (1908). See Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) ("The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law."). The Ex parte Young exception to Eleventh Amendment immunity applies when "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." D.K. v. Teams, 260 F.Supp.3d 334, 352 (S.D.N.Y. 2017) (quoting Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002))." *Civil Rights Corps. v. Pestana*, 21 Civ. 9128 (VM), 29 (S.D.N.Y. May. 5, 2022)

27.     Plaintiff would have included *Kristin Virginia Brady* and *the District 7 Grievance Committee Summary Disposition Panel* in the suit if this suit were for "the ultimate decision to dismiss," as it was mischaracterized by Defendants. Plaintiff did not seek any relief related to the dismissal decision, nor did Plaintiff sue for the acts of "dismissal." However, Plaintiff sued Defendants for the acts of "concealing the criminal acts".

### ii.  Absolute immunity 12(b)(1).

28.     "We do not believe that Flood and Fry require absolute immunity in all civil suits. Flood and Fry both involved suits brought against government attorneys who had brought civil tax enforcement proceedings. The scope of immunity for other types of civil suits was not at issue. The

broad reading of Fry and Flood for which Defendants advocate would go well beyond what is required under Supreme Court precedent. **The Court has emphasized that qualified immunity is the norm for government officials, and that absolute immunity exists only in "exceptional situations" where it is "essential for the conduct of the public business.**" Butz,438 U.S. at 507, 98 S.Ct. 2894;see also Burns v. Reed,500 U.S. 478, 487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) ("We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." (internal quotation marks and citation omitted)). **The Court has never stated that government attorneys receive absolute immunity for all litigation-related conduct, even in criminal cases**. Rather, **the Court has repeatedly stated that only certain actions taken by prosecutors receive absolute immunity, and that a functional comparison of the activities performed is critical**. See Imbler,424 U.S. at 430, 96 S.Ct. 984 (finding absolute immunity for "activities ... intimately associated with the judicial phase of the criminal process"); Butz,438 U.S. at 515, 98 S.Ct. 2894 (finding absolute immunity for "functions analogous to those of a prosecutor")." *Stapley v. Pestalozzi*, 733 F.3d 804, 810-11 (9th Cir. 2013). Plaintiff argues that, Defendants' argument of absolute immunity is not sound because Defendants' arguments never evaluated whether the separated functions performed by three individuals are analogous to those of a prosecutor or not. Defendants' counsel's failure to complete a functional comparison of three individuals' activities performed, before this Court, is a critical defect.

29.        "The lower federal courts must employ a functional analysis to determine whether Imbler's absolute immunity protects a prosecutor. Many of the reported decisions have held that only a qualified, good faith immunity applies to a prosecutor acting in an investigative or administrative capacity. See, e. g., Jacobson v. Rose, 592 F.2d 515, 524 (9th Cir. 1978), cert. denied, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298; Briggs v. Goodwin, 569 F.2d 10, 16 (D.C.Cir. 1977) (collecting cases at page 20; qualified, good-faith immunity applies to acts done in administrative or investigative capacity), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133; Pflaumer v. United States Dept. of Justice, 450 F. Supp. 1125, 1133 (E.D.Pa. 1978) (the gathering of evidence for the purpose of supporting the presentation of an indictment is part of the prosecutor's investigative role and therefore entitled to qualified rather than absolute immunity); D'Iorio v. County of Delaware, 447 F. Supp. 229, 235 (E.D.Pa. 1978) (qualified immunity), vacated on other grounds, 592 F.2d 681 (3d Cir. 1979); Austin v. Manlin, 433 F. Supp. 648 (E.D.Pa. 1977) (qualified immunity applies to prosecutor's investigative role); Tomko v. Lees, 416 F. Supp. 1137 (W.D.Pa. 1976)." *Mancini v. Lester*, 630 F.2d

990, 992 (3d Cir. 1980). Plaintiff argues that, three individuals Defendants are not entitle to absolute immunity, because they are <u>under investigative capacity</u>.

30.　　　Even in the case *Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir. 1986), which was cited by Defendants, the court did not hold that state bar employees entitle to absolute immunity. "In Bishop v. State Bar of Texas, 791 F.2d 435 (5th Cir. 1986), the court did not reach the issue of absolute immunity for state bar employees because the defendant bar employees pleaded only that they were entitled to qualified good faith immunity. Bishop, 791 F.2d at 438." *Forman v. Ours*, 804 F. Supp. 864, 867 (E.D. La. 1992).

31.　　　"In the instant case, Pitcock neither initiated nor pursued prosecution of the complaint against Beck. Thus, Pitcock's investigative activities are not covered under absolute immunity. " *Beck v. Texas State Board of Dental Examiners*, 204 F.3d 629, 637 (5th Cir. 2000). In this case, Pitcock oversaw the investigative section of the Board, another Texas public/private hybrid entity. The court concluded that Pitcock performed only an investigative function, when Pitcock did not participate in the Board's adjudication function.

32.　　　"[b]ut they are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." 514 F.3d at 908 (quoting Miller , 335 F.3d at 896 )." *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017). Plaintiff argues that, three individuals Defendants are not entitle to absolute immunity, because their actions are investigative function.

### iii.　Qualified immunity 12(b)(1).

33.　　　Qualified immunity only may be applied when allegation are under individual capacity. There are 3 types of individual capacity for government officials, administrative capacity, investigative capacity, and prosecutorial capacity. Three individual Defendants are under their investigative capacity in this case. However, the Supreme Court of the United States (SCOTUS) has held that "As a matter of public policy, qualified immunity provides ample protection to all **but** the **plainly incompetent** or those who **knowingly violate the law**." (*Malley v. Briggs*, 475 U.S. 335, 1986). Plaintiff argues that, three individual Defendants' separated acts were alleged for both plainly incompetent and knowing concealed the factual evidence, one of the alleged violation is *18 U.S.C. §§ 1962(d)*. Even though Defendants' counsel did mention that a "a two-step inquiry" is needed.

Defendants' counsel failed to argue for these 3 individuals' separated acts: Defendants' counsel failed to apply a separate two-step inquiry on Marin's acts when Marin was presented with Barrows' grievance; Defendants' counsel failed to apply a separate two-step inquiry on Matinez's acts when Matinez was presented with Pigg's grievance; Defendants' counsel failed to apply a separate two-step inquiry on Craig's acts when Craig was presented with both Barrows and Pigg's grievance. It is neither Plaintiff nor Court's responsibility to finish the separate two-step inquiry analysis for Defendants. When Defendants' arguments failed to refer any fact related to grievance investigation to rebut Plaintiff's allegation, "the Court **must** assume that the facts alleged in the complaint are true and construe them in the light most favorable to the plaintiff." *Bell Atlantic v. Twombly*, 550 U.S. at 555. Therefore, Plaintiff argues that, three individuals Defendants are not entitle to qualified immunity, because 3 individuals' separated acts are **plainly incompetent** and **knowingly violate the law**. Defendants' counsel never addressed the allegations of 3 individuals' separated acts before this Court, therefore, Defendants' argument is insufficient and ineffective.

34.     Defendants' arguments also citied a superseded two-step inquiry to analyze the qualified immunity doctrine. Defendants' counsel argued "In determining whether the plaintiff has successfully overcome qualified immunity, the court engages in a two-step inquiry. **First,** the court **must** consider "whether the plaintiff asserted a violation of a constitutional right at all – prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." Siegert v. Gilley, 500 U.S. 226, 230 (1991) (internal quotation marks omitted). **Next**, the court **must** consider whether the defendant's conduct was nonetheless objectively reasonable in light of clearly established law. Anderson v. Creighton, 483 U.S. 635, 639 (1987)." However, in *Pearson v. Callahan*, 555 U.S. 223, the Supreme Court of the United Stated has held that the two-step procedure for analyzing a claim of qualified immunity, requiring an initial determination of whether there is a constitutional violation, is **no longer mandatory**. "(c) Reconsideration of the Saucier procedure demonstrates that, while the sequence set forth therein is often appropriate, it should no longer be regarded as mandatory in all cases. Pp. 818 – 822. " *Pearson v. Callahan*, 555 U.S. 223, 224 (2009) "Because of the basis and the nature of the Saucier two-step protocol, it is sufficient that we now have a considerable body of new experience to consider regarding the consequences of requiring adherence to this inflexible procedure. This experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Pearson v. Callahan*, 555 U.S. 223, 234 (2009). Therefore, Defendants' argument of "two-step inquiry" itself is ineffective.

B.  **Claims**

   i.  **Claim liable in individual capacity 12(b)(1).**

35.     Defendants argued that "he failed to identify even one act they took outside the general scope of their employment… As a result, Marin, Martinez, and Craig are entitled to qualified immunity." Plaintiff has alleged the First Claim, Second Claim, Sixth Claim, Seventh Claim and Eighth Claim separately against Marin, Martinez, and Craig in their individual capacity. Plaintiff alleged and identified that Marin, Martinez, and Craig committed crimes. It is obvious that committing crime is outside the general scope of their employment. Defendants' arguments "failed to identify even one act"are lumped together, viewed as a generic decline without any analysis.

36.     Plaintiff identified acts of *42 U.S.C. §§ 1983, 18 U.S.C. §§ 1962(d)*, *18 U.S.C. §§ 1962(a), 15 U.S.C. § 2, 18 U.S.C. § 1027* and *18 U.S.C. § 1349*. Defendants' counsel only referred 2 types of allegations that Plaintiff made, *42 U.S.C. §§ 1983* and *18 U.S.C. §§ 1962(d)*. Defendants' counsel never addressed the allegations of *18 U.S.C. §§ 1962(a), 15 U.S.C. § 2, 18 U.S.C. § 1027* and *18 U.S.C. § 1349* before this Court.

37.     Defendants' arguments are insufficient and ineffective because they failed to perform an analysis of their separated acts, therefore "the Court ***must*** assume that the facts alleged in the complaint are **true** and construe them in the light most favorable to the plaintiff." *Twombly,* 550 U.S. at 555.

   ii.  **Cognizable equal protection claim under 42. U.S.C. §1983 12(b)(6).**

38.     In the beginning of Defendants' arguments, Defendants argued by saying Plaintiff "Yan alleges Defendants…cause him to suffer a "direct injury"…actions..deprived..."Equal Protection" and "Due Process" rights, in violation of 42 U.S.C. §1983.";

39.     First of all, in fact, Plaintiff claimed more than one injury in the original complaint. Therefore, Defendants' argument was insufficient when Plaintiff claimed multiple injuries, but Defendants argued the claim of "a" direct injury without specifying which direct injury they referred to.

40.     The further arguments that Defendants' counsel raised demonstrate how disgraceful the self-regulated disciplinary system of the State Bar of Texas has become, and how unethical counsel could be.

41.     Defendants' counsel made a conclusory statement saying, "<u>he is not entitled to any relief for filing a grievance against a licensed Texas attorney pursuant to the TRDP.</u>" Then Defendants' counsel kept on arguing that how Plaintiff was not entitled to sue Defendants referred to multiple rules in the TRDP.

42.     *42 U.S.C. §§ 1983* is very clear, "**Every person** who, **under color of any statute**, **ordinance**, **regulation**, **custom**, or **usage**, of any State …subjects, or causes to be subjected, **any citizen** of the United States or **other person** within the jurisdiction thereof to the deprivation of **any rights**…secured by the Constitution and laws, **shall** be liable to the party injured in an **action**.."

43.     No state act can bar claims against Federal rights violation. "The act is not a bar to this suit. This cause involves federal rights. **These rights cannot be denied by the passage of state legislation**. If the contrary were true, every state could deprive its citizens of the very rights which enactments of the Federal Congress are designed to protect. As then Judge Stevens points out in Hampton v. Chicago, 484 F.2d 602 (7th Cir. 1973), cert. den., 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974): The district court erroneously relied on the Illinois Tort Immunity Act. Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and **the supremacy clause of the Constitution insures that the proper construction may be enforced**. (citation omitted)" *Mancini v. Lester*, 630 F.2d 990, 995 (3d Cir. 1980).

44.     Plaintiff sued Defendant for their actions violated constitutional right. The State Bar of Texas cannot refer to any rule in TRDP to bar Plaintiff seeking a relief involves federal right. The State Bar of Texas did exactly what Congress tried to protect. Utilizing their state-actor identity, the State Bar of Texas has used TRDP as a weapon to shield their own members' criminal activities from *42 U.S.C. §§ 1983*, to "transmute a basic guarantee into an illusory promise." <u>Defendants (any person), under the color of law (TRDP), subjected Plaintiff (any citizen) to the deprivation of Fourteenth Amendment, shall be liable to Plaintiff (the party) injured in their actions (an action).</u>

45.     The argument of "Yan **was not a "party"** to the disciplinary proceedings initiated by his alleged grievances/Complaints against Barrows and Pigg and **was thus** not entitled to any relief…As such, Yan **could not have suffered an "injury"** based on the dismissal of his alleged Complaints." is a conclusory statement which contradict to the definition of *42 U.S.C. §§ 1983. 42 U.S.C. §§ 1983*

clearly stated that any person shall be liable to the party injured in an action.  No state law (TDRP) can narrow the scope of the definition of "the party" from "injured in an action" to "the party" as only "defined in TDRP". Again, allowing TDRP to narrow the scope of the definition of "the party" would "transmute a basic guarantee into an illusory promise."

46.      The Defendants essentially misrepresented the arguments by saying that themselves (State Bar of Texas) wrote rules in the TDRP stating that legal service consumers, the victims, are not the 'party' in a grievance process, **thus** those legal service consumers, the victims, could not have suffered injuries based on their concealment of the crime. This was the exact reason why the alleged RICO racketeering activities could last for a decade and span statewide. The State Bar of Texas indeed functions as a RICO enterprise and has influenced the state's legislative process.

47.      The argument of "*Yan is also "unable to show that the consideration of his alleged bar grievance 'produce[d] erroneous or unreliable results [that] imperil[ed] a protected liberty or property interest.'"...Thus, Yan's allegations do not establish "that he had a cognizable interest in the procedures used to consider his bar grievance or in the ultimate outcome of the proceeding.""* is also a conclusory statement without reference to any actual allegation. Without a trial and interpretation of law, Defendants had no standing to conclude whether the results produced by themselves were erroneous or unreliable. The Plaintiff does not have to convince the Defendants to acknowledge that their grievance process produced results were erroneous or unreliable, something the Defendants would never admit. The Plaintiff only needed to make allegations in the original complaint. Defendants drew the conclusion but failed to analyze "the complaint, documents attached to the complaint, and documents attached to the motion", "the Court ***must*** assume that the facts alleged in the complaint are **true** and construe them in the light most favorable to the plaintiff." *Twombly,* 550 U.S. at 555.

48.      Defendants' counsel argued, "In fact, Yan's allegations indicate…or that he was intentionally attempting to use the disciplinary system (when he filed his alleged grievances) to harass Barrows and Pigg" was frivolous speculation. It indeed shows bad faith to accuse the Plaintiff of intentionally attempting to harass. The members of the State Bar of Texas involved in the Plaintiff's case continue to demonstrate how low their ethics could be.

49.      In May 2022, the State Bar of Texas desperately and proactively launched a grievance process to sue Kenney Paxton in case 471-02574-2022, filed in District Court of Collins County.

Defendant's counsel, Amanda Kates and Royce Lemonie were the leading counsel sued Kenney Paxton. The State Bar of Texas alleged Kenney Paxton was dishonest and made misrepresentations in the Federal suit when he represented himself as AG of Texas against United State concerning election fraud. In a separate case DC-22-02562 in District Court of Dallas, The State Bar of Texas sued Sidney Powell for similar causes. Rachel Craig was the leading counsel sued Sidney Powell. The State Bar of Texas considered that claiming election fraud, which remains a controversial topic that dividing the whole country, constituted dishonesty and misrepresentation. Meanwhile, the State Bar of Texas considered Barrows and Pigg's alleged RICO crime of clear violation of *18 U.S.C. § 664* has no just cause. Defendants' counsel further argued Plaintiff "was intentionally attempting to use the disciplinary system (when he filed his alleged grievances) to harass Barrows and Pigg". Counsels' plainly lying through teeth indeed violated Plaintiff's equal protection and due process rights. "the Court ***must*** assume that the facts alleged in the complaint are **true** and construe them in the light most favorable to the plaintiff." *Twombly,* 550 U.S. at 555. When Defendants' counsel does not represent Barrows and Pigg, Defendants' counsel has no standing to defend Barrows and Pigg's acts, therefore this Court must assume that these RICO allegations against Barrows and Pigg were true. Based on that, when the State Bar of Texas implemented different dishonest standards of determination truthfulness between Plaintiff's case and other political driven cases such as Ken Paxton's and Sydney Powell's, there was facial discrimination. Therefore, it *produce[d] erroneous or unreliable results*. Furthermore, the Plaintiff is a member of the class of employee retirement fund owners, protected under ERISA. The Plaintiff is also a member of the class of Texas legal service consumers whom the members of the State Bar of Texas unlawfully obtained fees from. These class' liberty and assets are protected under the Fourteen Amendment, RICO Act and the Antitrust Act. Plaintiff alleged members of the State Bar of Texas had formed a RICO pattern to violate ERISA law as well. Plaintiff alleged he is one of the many victims of this decade long, statewide crime. Any citizen is supposed to be equally protected under Federal laws, including ERISA, RICO Act and AntiTrust Act. Defendants' acts had deprived Plaintiff of liberty and asset protection shielded by ERISA, RICO Act and AntiTrust Act. The actions of Defendants helped Barrows and Pigg's RICO crime, a clear violation of *18 U.S.C. § 664*, supporting them to continue their RICO racketeering activities, and the money transaction from the racketeering activities continue as well. The actions of Defendants undermined Fourteen Amendment's protection to Plaintiff's liberty (Access to 401K) and asset (401K).

50.    Our founding fathers believed that human beings with authorities cannot be trusted for self-regulation, that is why they formed the greatest principle of our constitutions, the "Separation of Power". That is the fundamental difference between dictatorship around the USA and USA. Members of the State Bar of Texas are human beings, they are no better than our founding fathers. "[T]here is *no* liberty, if the power of judging be *not* separated from the legislative and executive powers … [L]iberty can have *nothing to fear* from the judiciary alone, but would have *every thing to fear* from its union with either of the other departments …" The Federalist No. 78, at 491 (Alexander Hamilton) (Benjamin F. Wright ed., 1961) (internal quotation marks omitted). Currently, members of State Bar Texas were granted broad civil and criminal immunity by their comrades in the Texas Supreme Court. Member of the State Bar of Texas owns the state legislative power of establishing and operating TRDP. Members of the State Bar of Texas execute TRDP as well. Members of the State Bar of Texas own exclusive jurisdictional, legislative, and executive powers to determine the legal service commercial activities involved with Texas attorneys. If our founding fathers believed nobody can be trusted with all the powers in a single branch, what makes the State Bar of Texas an exception? NOTHING!

51.    The result of the State Bar of Texas's authoritarian control and monopolization is apparent: it had given rise to a RICO enterprise, as alleged by the Plaintiff, specializing in forming a pattern of RICO racketeering activities. These activities include unlawfully abstracting money from Texas consumers' retirement plans for personal use, spanning a decade and occurring statewide. Additionally, we saw the family lawyer industry becoming the only service provider industry that openly mock its victimized consumers as "**whiney ass clients**." We, the Texas legal service consumers, have everything to fear!

52.    According to the State Bar of Texas's arguments, further proved the RICO enterprise and Monopolization is established to against Texas legal service consumers. Plaintiff must be allowed to proceed with RICO Claim and AntiTrust Claim to address this issue.

### iii.   Claims under Texas Constitution Article I, Sections 13 and 19 12(b)(6).

53.    The In the beginning of Defendants' arguments, Defendants argued by saying Plaintiff "claims…violation under the Texas Constitution Article I, Sections 13 and 19, and…"

54.    Art. I, Section 13 of the Texas Constitution provides that: "all courts shall be open, and every person **for an injury done to him**… shall have **remedy** by due course of law.".

55.        Plaintiff never alleged that his open courts provision was violated. Defendants' counsel argued on wrong subjects based on her own interpretation. In fact, Plaintiff alleged that he should have remedy when he was injured per Art. I, Section 13 of the Texas Constitution. Defendants counsel failed to argue about the "**remedy**" clause of Art. I, Section 13 of the Texas Constitution. Therefore, Defendants' argument is insufficient and ineffective.

56.        Defendants' counsel argued that "Yan makes the conclusory claim "that Defendants violated section 19 of Article I of the Texas Constitution", but provides no supporting facts that would indicate how Defendants violated his due process rights under the Texas Constitution.". However, Plaintiff cleared referred to Attorney General Ken Paxton's grievance case in allegations against 3 individuals. In the claims, Plaintiff clearly alleged multiple injuries, tangible and intangible. Despite the fact that, a private corporation, the State Bar of Texas, is neither a party to the election fraud claim between Texas and the United States nor an eligible entity with election rights, the office of the Chief Disciplinary Counsel appears to prefer playing a political role as an extended arm of a political party under the color of State law. It's proactively interfering in an election fraud suit where it has no standing but chose filing a disciplinary suit against Paxton and Powell under abused state-actor capacity, rather than upholding the law for legal service consumers during its grievance proceeding process to protect the Texas public consumers' interest from becoming victimized by unlawful RICO racketeering acts performed by its own members. The evidence shown in the original complaint's exhibits clearly demonstrated that Barrows and Pigg had multiple written emails and signed court orders/affidavits, admitting to this dishonest misrepresentation. Pigg even said in one email that Barrows lied. Barrows admitted in another email that she lied to obtain fees. The State Bar of Texas used third-party conclusions as its ground to prosecute Paxton and Powell. But when the parties involved in the Plaintiff's case, Barrows and Pigg, admitted to lying, the State Bar of Texas's conclusions were "No Just Cause," based on the acts involving "obtaining fees". These lying through teeth acts failed to meet Impartial Tribunal element of Due Process, under Texas and Federal constitutions.

57.        When Defendants were alleged of violation of section 13 and 19 of Article I of the Texas Constitution, among other constitutional right, and Defendants' arguments referred in-house made TRDP as their defense, Plaintiff rebuts Defendants' arguments by referring TRDP violated section 29 of Article I of the Texas Constitution. "BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE.  To guard against transgressions of the high powers herein

delegated, we declare that every thing in this "Bill of Rights" is **excepted out of the general powers of government**, and shall forever remain inviolate, and **all laws** contrary thereto, or to the following provisions, **shall be void**." Any part of the in-house made TRDP that is contrary to Article I of the Texas Constitution is void.

### iv.   Claim under the RICO Act 12(b)(6).

58.     In the beginning of Defendants' arguments, Defendants argued by saying Plaintiff "asserts… participants in a conspiracy"; "claims…violation under the Texas Constitution Article I, Sections 13 and 19, and… ("RICO")."

59.     SCOTUS has held that "see National Organization for Women, Inc. v. Scheidler, ___ U.S. ___, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (stating that Civil RICO **should be construed broadly to effectuate Congress' purpose**)," *Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994).  Plaintiff argues that, Civil RICO should be construed broadly to effectuate Congress' purpose.

60.     Defendants argued that Plaintiff failed "to establish an ongoing association-in-fact enterprise and prove the commission of predicate crimes." Plaintiff argues that, Defendants arguments are not sound. "An enterprise under RICO can include the usual legal entities such as partnerships and **corporations**, but it also can include "any union or group of individuals associated in fact although not a legal entity. . . ." *18 U.S.C. § 1961*(4) (emphasis added)." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).  *18 U.S.C. § 1961*(4) clearly defined that  "enterprise" includes any individual, partnership, **corporation**, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. Plaintiff argues that, Defendant, the State Bar of Texas is, in fact, **a private corporation**.

61.     In *Manax v. McNamara* case, Manax sued McNamara, an attorney and the mayor of Waco, Texas; two other Waco attorneys associated with McNamara; Cox Enterprises, the publisher of newspapers in Austin and Waco; Cechoslovak Publishing, the publisher of The West News, a newspaper in West, Texas; Sue Pescaia, the owner of The West News; and Denise Gamino, a reporter for Cox. Plaintiff argues that, in the case that Defendants' counsel referred, Manax failed to associate attorney, mayor, publisher and reporter into an **association-in-fact enterprise**. Meanwhile, in Plaintiff's case, Marin, Martinez and Craig are indeed the **members of the State Bar of Texas**, a RICO enterprise. Marin, Martinez, and Craig receive payments from the State Bar of Texas, and the

State Bar of Texas receives payments from other members' income, part of which is obtained from their racketeering activities. All the defendants in this RICO claim had money transactions associated with either RICO persons or the RICO enterprises.

62.     Defendants argued that, Plaintiff "also would have to show that Defendants engaged in two or more of the predicate crimes as enumerated in the statute. Boyle v. United States, 556 U.S. 938 (2009)." However, SCOTUS has held that Plaintiff "does not need to prove that each defendant personally committed two predicate acts to prove a RICO conspiracy. See Salinas v. United States,522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("There is no requirement of some overt act or specific act in the [RICO conspiracy] statute....")." *United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014).

63.     Plaintiff argues that, Plaintiff has alleged a pattern of racketeering activity performed by other defendants, proved the commission of predicate crimes in the original complaint. *18 U.S.C. § 1961*(5) provides that a "pattern of racketeering activity" requires at least two acts of racketeering activity in a RICO suit. It does not require each individual defendant to commit two predicate acts of racketeering activity. The requirement for at least two predicate acts can be met by a total count, not by a separate personal count for each person under RICO claim.

64.     Plaintiff argues that, Defendants' counsel does not represent Pigg, Barrows, Ybarra or DeAngelis in this case. Therefore, Defendants' counsel has no standing to argue acts of racketeering activity performed by other defendants.

65.     Plaintiff argues that, human activity normally carries multiple agendas. Plaintiff alleges that Marin, Martinez, and Craig are "RICO conspirators" because they concealed the crime and its evidence. Everything that Marin, Martinez, and Craig have done is in the investigation stage. "Inquiry" and "No Just Cause" determinations concealed RICO crime in Plaintiff's case. Any prior concealment of RICO crime supported the ongoing perpetration of the RICO crime.

66.     Defendants argued that "Yan has not pled, and is unable to show, any association exists between" twice in the last paragraph of RICO argument. However, SCOTUS has held that ""[I]n proving the existence of a single RICO conspiracy, the government **does not** need to prove that each conspirator agreed with every other conspirator, knew of his fellow conspirators, was aware of all of the details of the conspiracy, or contemplated participating in the same related crime." United States v. Castro,89 F.3d 1443, 1451 (11th Cir.1996). A mere "[a]greement to participate in the conduct of the

affairs of the enterprise through a pattern of racketeering activity brings a defendant within the conspiracy **regardless of** the **unrelatedness** of the acts of other members of the conspiracy." Gonzalez,921 F.2d at 1540." *United States v. Godwin,* 765 F.3d 1306, 1324 (11th Cir. 2014).

67.        "A conspirator must intend to **further** an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so **in any number of ways short of agreeing** to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished **whether or not** the substantive crime ensues, **for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself**. See Callanan v. United States, 364 U.S. 587, 594 (1961)." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Plaintiff argues that, Defendants play critical roles under the color of law, using self-regulated grievance system as a platform to further ongoing its state-wide, decades-long substantive RICO acts, including but not limited to 18 U.S.C. § 664.

68.        "If conspirators have a plan which calls for some conspirators to perpetrate the crime and *others to provide support, the supporters are as guilty as the perpetrators*. As Justice Holmes observed: "[P]lainly a person may conspire for the commission of a crime by a third person." United States v. Holte, 236 U.S. 140, 144 (1915). A person, moreover, may **be liable for conspiracy even though** he *was incapable* **of committing the** *substantive offense*." *United States v. Rabinowich*, 238 U.S. 78, 86 (1915)." *Salinas v. United States*, 522 U.S. 52, 64 (1997). Plaintiff argues that, Marin, Martinez, and Craig are the supporters as guilty as the perpetrators.

69.        "In that regard, we **emphasize** that, because drug trafficking is an "unlawful activity" with respect to money laundering and **RICO offenses** (*see* 18 U.S.C. § 1956(c)(7) ), a lawyer providing advice to an unlawful drug trafficking entity such as the Nicka Organization places himself at great personal risk. **Any lawyer** providing advice concerning ongoing unlawful activity is circumscribed in the legal advice that can permissibly be provided, lest he become a participant in the unlawful activity. That is, a lawyer representing or advising such an entity can **readily turn himself into a coconspirator — or aider and abettor — in the form of a consigliere or fixer**." *United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019). Plaintiff argues that, Marin, Martinez, and

Craig are held liable as conspirators when they crossed the line and became part of the criminal organization itself, as a consigliere or fixer.

70.      "See Malley v. Briggs, 475 U.S. 335 (1986) (finding that officer acted as a complaining witness because he instigated the prosecution by conducting the investigation and by filing the initial complaint)." *Jeryl A. Cummings v. David Eber, City and County of Honolulu*, 134 F.3d 376 (9th Cir. 1998). Plaintiff argues that, during their investigation, Marin, Martinez, and Craig acted as complaining witnesses. Their determinations were factually false and served in supportive roles to further the continues element of the ongoing RICO crime, violated *18 U.S.C. § 1962*(d) as Plaintiff alleged in the original complaint.

C.  **Relief**

    i.  **Requisites for injunctive relief 12(b)(6).**

71.      Plaintiff argues that, Defendants' counsel made an ineffective argument. Plaintiff argued that, whether Plaintiff is entitled to any injunctive relief shall be decided by a jury at trial.

72.      Plaintiff argues that, Defendants' counsel argued **only one** relief in an attempt to dismiss **all** claims of injuries. Therefore, Defendants' argument is insufficient.

73.      "We have held that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for, on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted)." *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994). Plaintiff argues that, the factual allegations of injuries presented by Plaintiff in the pleading are enough, given Defendants' insufficient and ineffective arguments.

**V. Conclusion**

74.      Federal courts have clearly ruled that "court", "judge", and other government entities can qualify as an 'enterprise' under RICO charges. Therefore, the Defendants' argument that the Plaintiff lacks jurisdiction due to various immunities is not sound.

75.      Defendant, the State Bar of Texas, argued that the Plaintiff is not a party pursuant to TRDP, and therefore, the Plaintiff does not have standing to be entitled any relief, in the grievance process, etc. These arguments were very misleading. **In none of the injunctive reliefs that the Plaintiff claimed did the Plaintiff ever request any relief from the grievance process' outcome,**

**nor did the Plaintiff seek any injunctive relief to interfere with the grievance proceedings**. Plaintiff seeks injunctive reliefs, including, but not limited to "enjoining the State Bar of Texas to obtain income from all defendant persons" and "enjoining the State Bar of Texas to have additional financial transaction with all defendant persons" etc. All the injunctive reliefs that Plaintiff sought were from the **private functions of the State Bar of Texas**. Defendants argued about grievance related reliefs that Plaintiff did not seek.

76.    ERISA cases fall **exclusively** under federal jurisdiction, in accordance with 29 U.S.C. §§ 1132(a), (e), (f) and (g). U.S.C. § 1114(a) contains a very broad preemption clause that ERISA **supersedes any and all state laws insofar** as they relate to an employee benefit plan. The U.S. Supreme Court has characterized ERISA's preemption provision as extremely broad and that ERISA **supersedes** "**any and all state laws** as they may now or hereafter relate to" an ERISA plan, in accordance with ERISA section 514(a), 29 U.S.C. section 1114(a).

77.    In *Thole v. U.S. Bank et al.*, No. 17-1712 (June 1, 2020), the U.S. Supreme Court affirmed controlling preconditions to any ERISA lawsuit in federal court: (1) a concrete injury ($25000), (2) caused by the defendant (RICO), that is (3) redressable by the requested judicial relief (civil remedies).

78.    Plaintiff argues any Texas State law granted immunity cannot shield the Defendants from being sued in this suit involving decade long, statewide RICO scheme, which targeting hundred thousand victims' ERISA plans.

79.    Defendants made an incomplete partial argument from many aspects, missed reliefs, missed claims, and missed U.S.C. code citations. Plaintiff argues that Defendants' Motion to Dismiss is insufficient and ineffective.

80.    Defendants never argued **Second Claim** in their "Lacks Subject Matter Jurisdiction" and "Failure to State a Plausible Claim" arguments. Plaintiff believes that the **Second Claim** was not effectively argued, and the rest arguments are not sound. Plaintiff expects a Reply from Defendants limited to the scope of Plaintiff's Response herein, but the Court should not allow any new argument arises from the Defendants' reply.

81.    Defendants are unlikely to prevail in this suit. Whether obtaining legal fees using interlocutory orders from a 401K is unlawful is a key question to be determined in this case. Once the

Court rules on this question of law, the outcome of the suit will become apparent. After all, the State Bar of Texas carries economic responsibility to its members, while it also bears social responsibility to the people of Texas. The Plaintiff suggests that Defendants' counsel behave professionally during the proceeding to preserve Defendants' intangible assets, such as brand recognition and reputation, if there would be any remain.

## VI. Prayer for Relief

82.      Based on the above, Plaintiff respectfully requests for the following relief:

83.      Plaintiff prays that the defendants' Motion to Dismiss be denied as moot.

Respectfully submitted,

_____/s/ Conghua Yan_____

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

/[arnold200@gmail.com]

**CERTIFICATE OF SERVICE**

On (August 30th, 2023) I, Conghua Yan, filed (RESPONSE/OBJECTION TO MOTION TO DISMISS BY STATE BAR OF TEXAS, MARIN, MARTINEZ AND CRAIG AND BRIEF IN SUPPORT [ECF No. 36]) through the court CM/ECF system.

I hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]