# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| THE STATE BAR OF TEXAS, a private company, | ) |
| THE BARROWS FIRM, a private company, | ) |
| LESLIE STARR BARROWS, in individual capacity, | ) |
| as member of the State Bar of Texas, | ) |
| WILLIAM ALBERT PIGG in individual capacity, | ) |
| as member of the State Bar of Texas, | ) |
| SAMANTHA YBARRA, in individual capacity, | ) |
| as member of the State Bar of Texas, | ) |
| LUIS JESUS MARIN in individual capacity, | ) |
| as member of the State Bar of Texas, | ) |
| and official capacity as Assistant Disciplinary | ) |
| Counsel for the Office of the CDC, | ) |
| DANIEL EULALIO MARTINEZ | ) |
| in individual capacity, | ) |
| as a member of the State Bar of Texas, | ) |
| and official capacity as Assistant Disciplinary | ) |
| Counsel for the Office of the CDC, | ) |
| RACHEL ANN CRAIG in individual capacity, | ) |
| as member of the State Bar of Texas, | ) |
| and official capacity as Assistant Disciplinary | ) |
| Counsel for the Office of the CDC, | ) |
| LORI L. DEANGELIS in individual capacity, | ) |
| as member of the State Bar of Texas, | ) |
| and official capacity as Associated Judge, | ) |
| TARRANT COUNTY, | ) |
| U.S. BANK, | ) |
| Defendants. | ) |

**THIRD AMENDED COMPLAINT FOR CIVIL RICO, AND ANTITRUST ETC.,
DEMAND DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGE RELIEF,
AND JURY DEMAND**

Come Now, Plaintiff, Conghua Yan, respectfully moves this Honorable Court amended complaint for the following causes:

- A civil RICO complaint is lodged against the State Bar of Texas, its members who are on the Defendants list herein, and other associated RICO enterprises, alleging a pattern of racketeering activity, by alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), a chapter of the Organized Crime Control Act of 1970.
- A civil antitrust complaint is lodged against the State Bar of Texas, its members who are on the Defendants list herein, under alleged violations of Section 2 of the Sherman Act.
- Civil complaints under *42 U.S.C. § 1983* are lodged against Leslie Starr Barrows, William Albert Pigg, Luis Jesus Marin, Daniel Eulalio Martinez, Rachel Ann Craig, and Lori L. DeAngelis at issue, by alleged multiple violations of various Federal statutes, including but not limited to *18 U.S.C. § 1961-1968*, *18 U.S.C. § 1341*, *18 U.S.C. § 1343*, *18 U.S.C. § 1349*, *18 U.S.C. § 664*, *18 U.S.C. § 1027*, *18 U.S.C. § 4*, Fourteenth Amendments to the U.S. Constitution.
- Civil complaints under RICO and *42 U.S.C. § 1983* are lodged against U.S. Bank, by alleged multiple violations of various Federal statutes, including but not limited to *18 U.S.C. § 1961-1968*, *18 U.S.C. § 1341*, *18 U.S.C. § 1343, 18 U.S.C. § 664*, Fourteenth Amendments to the U.S. Constitution.

Plaintiff requests that this Honorable Court consider and grant this amended complaint, along with declaratory and injunctive relief, damage claims, and related matters.

Plaintiff requests a jury trial.

In support of this complaint, Plaintiff states as follows:

**I. INTRODUCTION**

1.      The Employee Retirement Income Security Act (ERISA) is Federal law formulated with the intent to safeguard retirement account assets. ERISA restricts the use of these assets to *specific purposes*, including providing benefits to ex-spouses or dependents. But certain members of the State Bar of Texas managed to establish RICO schemes to abstract these assets for their own use over *several decades*, engaging in a *continuous series* of RICO racketeering activities (mainly *18 U.S.C. § 1341*, *18 U.S.C. § 1343 and 18 U.S.C. § 664*) under the protection of their conspirators. This suit exposes a **Scandalous Case of the Decades** to this Honorable Court.

2.      The principle behind these alleged RICO schemes is quite simple: to drain as much money as possible from the victims, including funds from federally prohibited resources, in the quickest manner possible. Each conspirator benefits from their share of the income but must conceal the truth from the victims.

3.      These conspirators have formed a criminal syndicate. Any outsider who attempts to expose illegal acts within the RICO enterprise will be met with backlash from all of them. Almost every litigant known to Plaintiff, who tried to challenge this criminal syndicate, experienced retaliation. Some of their members are family court judges who enjoy absolute immunity to exercise their discretion, granting them the authority to separate children from plaintiffs, impose gag orders, issue no-contact orders, and compel plaintiffs to pay exorbitant fees to attorneys, potentially leading to bankruptcy. Plaintiff anticipates these potential consequences but shows no fear.

4.      Unlike many American, Plaintiff grew up under a communist dictatorship. Having experienced dictatorship before, Plaintiff is confident in their ability to endure another form of dictatorship. However, thanks to the Founding Fathers of this country, Plaintiff remain has a chance in the Federal Court.

5.      This lawsuit originates from allegations against certain DFW family court attorneys/judges in Plaintiff's case. They were alleged to have manipulated QDRO orders to illicitly secure attorney's fees from Plaintiff's out-of-state retirement accounts, assets shielded by ERISA from such prohibited usage. Upon discovering this, Plaintiff found that knowledgeable attorneys conspired in coordination to hide the crime.

6.          Additionally, Plaintiff also uncovered a *decade-long* and *widespread* pattern of RICO racketeering activity affecting victims statewide, escalating the issue to a matter of public concern. The scope and duration of these alleged RICO racketeering activities present a significant public threat. The danger is immense when legal professionals exploit public trust, unlawfully obtaining millions, and then cover up their actions while proclaiming them lawful.

7.          The alleged RICO schemes consisted of a number of mail fraud and wire fraud offenses and ultimately amounted to acts of "theft or embezzlement from employee benefit plan." These RICO schemes often involve using unlawful QDRO orders to withdraw money from retirement accounts, deliberately circumventing ERISA restrictions through the application of legal skills. The extracted funds are typically divided between the attorneys of both parties as a "say-nothing" incentive. Even though either the order or the procedure often breaches legal boundaries, neither attorney appeals the order that benefits themselves. Rather than advocating for their client's interests, they choose to divert the money for their own business interests, relying on the State Bar of Texas's self-regulated disciplinary system to shield their conspiracy in the event of being caught.

8.          The shield is not a free benefit. These members of the State Bar of Texas participate in financially supporting the State Bar of Texas through annual membership fees, thereby obtaining the license to practice family law in exchange. This license not only enables them to charge legal fees from clients but also grants them exclusive rights to appear in courts as "officer of the court," utilizing the courts as platforms to secure business revenues. With this platform, they can effectively exploit the court's authority for the commercial interest.

9.          In other words, contrary to *other* professionals who bill for their services and treat uncollected fees as debts against their clients, Texas family law attorneys take a distinct approach. Using their exclusive "officer of the court" status, they exploit family court orders to compel payment, thereby leveraging judicial power to secure business revenue. This privileged enforcement under the guise of a court order can sometimes compel *prepayment* before actual services are provided and without factual proof of services rendered. Such a fees collection mechanism has become a common routine for some family law attorneys, especially when certain family court judges sit on the bench.

10.        Claims or orders for family court legal fees are often based on fabricated evidence or false statements presented during court proceedings. Family law attorneys partake in these frauds,

rendering the orders de facto fraudulent. Many litigant consumers have had their assets illegitimately seized with the sole aim of paying these family court attorneys' legal fees, circumventing due process.

11.     The fundamental issue lies in the expectation that family law attorneys, hired by consumers to represent their best interests in divorce petitions, will truly advocate on their behalf. But consumers are often uninformed that the family court is often used as a platform to advocate for the attorneys' own business revenues. Exploiting their specialized legal knowledge, these attorneys compromise the interests of ordinary Texas citizens who lack such knowledge, prioritizing their business revenues over their consumers' interests. The legal community knows about this issue, more so than the average Texas consumer, yet little has been done to address it.

12.     Other members of the State Bar of Texas, working in various sectors, including the executive, judicial branches, or the disciplinary system of the State Bar of Texas, use their authorities to support these illegal practices. They either help to conceal any wrongdoing, advocate for the business revenue interests of their fellow family law attorneys, or extend legal protections, offering them de facto civil and criminal immunity under the banner of discretionary decision-making.

13.     Attorneys unite to safeguard each other. Plaintiff is witnessing this firsthand. While the Tarrant County Criminal District Attorney's Office propagandizes itself as being different from San Francisco DA, where theft has been decriminalized, they have been decriminalizing the white-collar crimes of Tarrant County family law attorneys for decades under the guise of discretionary decisions.

14.     This assistance doesn't come as a gift; significant financial benefits are often exchanged among them through mechanisms like political contributions or real estate transactions. Sometimes, there may even be sexual relationships among these members of the collective entity.

15.     The State Bar of Texas itself benefits from the growing business revenues of its members, who share the same business interests. Despite being aware of these RICO racketeering activities within its self-regulated disciplinary system, the State Bar of Texas has established a pattern of concealment, thus exploiting its privilege of self-regulation. Over the years, the State Bar of Texas has continuously granted paid licenses to these conspirators, allowing every conspirator to continue to enjoy the growth of business revenues obtained from these alleged RICO racketeering activities.

16.     The members of the State Bar of Texas hold a monopolistic position in legal interpretation across various sectors requiring legal expertise. When they unanimously choose to interpret unlawful activities as lawful ones and consent not to expose each other's criminal actions, the average Texan legal service consumer lacks the ability and skillset to prevail within the authority and legal system. That is the reason these alleged RICO racketeering activities have been ongoing for decades and continue today.

17.     Should this Honorable Court fail to intervene here, the legal service consumers in Texas—whose constitutional rights have been violated without their being accurately informed of the legal boundaries by the professionals they hired—will be left without recourse. Most of them were unable to draft a valid complaint to challenge the monopolistic empire established by the State Bar of Texas.

18.     The lawsuit will demonstrate how RICO racketeering activities were conducted within the family court system through a detailed real-life case and what actions were taken by members of the State Bar of Texas to conceal the RICO scheme. This case represents just a small fraction of the RICO racketeering activities that have occurred in the family court system over the last decades. What is exposed herein is not only occurred in Tarrant County.

## II. JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under *15 U.S.C. § 4* because the essential substantive violation of Federal law arises under Sherman Act, *15 U.S.C. § 2*.

2.     This Court has jurisdiction under *18 U.S.C. § 1595*, *18 U.S.C. § 1964* and *28 U.S.C. § 1331* because the essential substantive violation of Federal law arises under *18 U.S.C. § 1961-1968*, *18 U.S.C. § 4*, *18 U.S.C. § 1341*, *18 U.S.C. § 1343*, *18 U.S.C. § 1349*, *18 U.S.C. § 664*, *18 U.S.C. § 1027*, and *42 U.S.C. § 1983* etc.

3.     Additionally, This Court has supplemental jurisdiction under *28 U.S.C. § 1367*, because this action also states claims for violating the multiple Texas penal codes.

4.        This Court has venue under *18 U.S.C. § 1965* because the essential substantive violation of Federal law arises under *18 U.S.C. § 1961-1968*, *18 U.S.C. § 4*, *18 U.S.C. § 1341*, *18 U.S.C. § 1343*, *18 U.S.C. § 1349*, *18 U.S.C. § 664*, and *18 U.S.C. § 1027* and *42 U.S.C. § 1983* etc.

5.        This Court is allowed to award the requested declaratory relief, injunctive relief, compensatory damages relief, punitive damages relief, treble damages relief, fees relief and expense relief under the Declaratory Judgment Act, *28 U.S.C. §§ 2201-2202*, *15 U.S.C. § 15*, *15 U.S.C. § 26*, *18 U.S.C. § 1964*, and by its general legal and equitable powers.

6.        Venue is proper in the Northern District of Texas pursuant to *28 U.S.C. § 1391(b)*, *18 U.S.C. § 1965*, and *15 U.S.C. § 22*, as Plaintiff resided in Tarrant County, Texas for over 10 years before filing this lawsuit. One Defendant, the main actor, Leslie Starr Barrows, is a resident of Tarrant County. Several RICO racketeering activities performed by Leslie Starr Barrows occurred in Tarrant County, which falls within the jurisdiction of the Northern District of Texas. Therefore, the Northern District of Texas is the proper venue for this action.

### III. PARTIES

7.        Plaintiff Conghua Yan is a natural person and a resident of Tarrant County for more than 10 years. Plaintiff works as a professional IT expert for the banking sector. For almost 30 years, Plaintiff has devoted his entire professional life to the banking sector. Plaintiff built a solid reputation for himself throughout his career. Plaintiff doesn't have a criminal record.

8.        Defendant, the State Bar of Texas, is a private company. TAX ID (EIN): 746000148. The State Bar of Texas is being sued under Section 2 of the Sherman Act and is also being sued both as a person under *18 U.S.C. § 1962(d)* and as an enterprise under *18 U.S.C. § 1962(a)*.

9.        Defendant, the Barrows Firm, is a private company. The Barrows Firm is being sued as an enterprise under *18 U.S.C. § 1962(a)*.

10.        Defendant Leslie Starr Barrows, member of the State Bar of Texas, Bar Card Number:24048343. She is being sued in her individual capacity.

11.     Defendant William Albert Pigg, member of the State Bar of Texas, Bar Card Number:24057009. He is being sued in his individual capacity.

12.     Defendant Samantha Ybarra, member of the State Bar of Texas, Bar Card Number:24104627. She is being sued in her individual capacity.

13.     Defendant Luis Jesus Marin, member of the State Bar of Texas, Bar Card Number: 24108702. He is being sued in his official capacity and in his individual capacity. Defendant Luis Jesus Marin's official capacity is being sued under ultra vires doctrine, for his ultra vires acts. Defendant Luis Jesus Marin's individual capacity is being sued for his alleged RICO racketeering activities.

14.     Defendant Daniel Eulalio Martinez, member of the State Bar of Texas, Bar Card Number:24120994. He is being sued in his official capacity and in his individual capacity. Defendant Daniel Eulalio Martinez's official capacity is being sued under ultra vires doctrine, for his ultra vires acts. Defendant Daniel Eulalio Martinez's individual capacity is being sued for his alleged RICO racketeering activities.

15.     Defendant Rachel Ann Craig, member of the State Bar of Texas, Bar Card Number:24090049. She is being sued in her official capacity and in her individual capacity. Defendant Rachel Ann Craig's official capacity is being sued under ultra vires doctrine, for her ultra vires acts. Defendant Rachel Ann Craig's individual capacity is being sued for her alleged RICO racketeering activities.

16.     Defendant Lori L. DeAngelis, aka Lori DeAngelis Griffith, member of the State Bar of Texas, Bar Card Number:05624250. She is being sued in her official capacity and in her individual capacity. Defendant Lori L. DeAngelis' official capacity is being sued under ultra vires doctrine, for her ultra vires acts. Defendant Lori L. DeAngelis' individual capacity is being sued for her alleged RICO racketeering activities in the clear absence of all jurisdictions.

17.     TARRANT COUNTY, is being sued in Defendant Lori L. DeAngelis' official capacity, due to its employer obligation.

18.     Defendant U.S. Bancorp ("U.S. Bank") is an American bank holding company based in the Minneapolis, Minnesota area, and incorporated in Delaware. On the Plan's 2021 5500 form, it lists its address as 4000 West Broadway Avenue, Robbinsdale, MN 55422. In this Complaint, "U.S. Bank" refers to the named Defendants and all parent, subsidiary, related, predecessor, and successor entities to which these allegations pertain. U.S. Bank acted through its officers, including the Board of Directors, to perform Plan-related fiduciary functions in the course and scope of their business. U.S. Bank and its Board appointed other Plan fiduciaries on the U.S. Bancorp's Benefits Administration Committee, and accordingly had a concomitant fiduciary duty to monitor and supervise those appointees. For these reasons, U.S. Bank is fiduciary of the Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

## IV. STANDARD OF REVIEW

In support of this complaint, Plaintiff asserts the **_precise_** bounds of the law as follows:

### A.     *ATTORNEY'S FEES*
### *MUST BE*
### *REASONABLE*

19.     The phrase "attorney's fees" was mentioned 87 times in the whole Texas Family Code. Among them,
- The phrase "attorney's fees" was mentioned 20 times in "TITLE 1 THE MARRIAGE RELATIONSHIP" from subtitle A to C. The phrase "attorney's fees" was mentioned 20 times, all in the subtitle C "DISSOLUTION OF MARRIAGE."
- The phrase "attorney's fees" was mentioned 4 times in "TITLE 2 CHILD IN RELATION TO THE FAMILY" from the subtitle A to E.
- The phrase "attorney's fees" was mentioned 5 times in "TITLE 3 JUVENILE JUSTICE CODE" from the subtitle A to C.
- The phrase "attorney's fees" was mentioned 4 times in "TITLE 4 PROTECTIVE ORDERS AND FAMILY VIOLENCE" from the subtitle A to C.
- The phrase "attorney's fees" was mentioned 54 times in "TITLE 5 THE PARENT-CHILD RELATIONSHIP AND THE SUIT AFFECTING THE PARENT-CHILD RELATIONSHIP" from the subtitle A to E.

20.     The word "payment" appears 332 times in the Texas Family Code, while "payments" appears 213 times. Similarly, "attorney" is found 1023 times, and "attorneys" 62 times. The law is precise to the letter; "payment" is not the same as "payments," and "attorney" is not the same as "attorneys."

21.      The only statue mentions "attorney's fees" with a temporary order in the subtitle C "DISSOLUTION OF MARRIAGE" is Sec. 6.502. TEMPORARY INJUNCTION AND OTHER TEMPORARY ORDERS.

> (a) While a suit for dissolution of a marriage is pending and on the motion of a party or on the court's own motion after notice and hearing, the court may render an appropriate order, including the granting of a temporary injunction for the preservation of the property *and* protection of the parties as deemed necessary *and* equitable *and* including an order directed to *one* or *both* parties:
>
> (2)  requiring *payments* to be made for the support of either spouse;
>
> …
>
> (4)  ordering *payment* of *reasonable attorney's* fees and expenses;

22.      "Section 6.502 of the Texas Family Code allows the trial court to enter temporary orders, including orders for *payment* of support for *either* spouse *and* reasonable interim *attorney's* fees," *In re Bielefeld*, 143 S.W.3d 924, 928 (Tex. App. 2004)

23.      Sec 6.502 is very clear that the court may issue an order directed to *one* or *both* parties, ordering *payment* of reasonable *attorney's* fees. It could be *one* party ordered to *payment* of *an* **attorney's** fees or *both* parties ordered to *payment* of *an attorney's* fees. The statue letters used are "*payments*" to either spouse or "*payment*" of attorney's fees. No "**s**" when it mentions the latter application. The Texas Family Code statute never permits *one* party ordered to "*payments"* of "*attorneys' fees"* in a temporary injunctive order.

24.      The three "and" clause is also very clear that the temporary injunctive order must meet all three clauses, "*preservation of the property,*" "*protection of the parties as deemed necessary,*" and "*equitable.*" The Texas Family Code statute never permits a temporary injunctive order solely for *attorney's fees* without meeting all three clauses. Due to the three clauses, the payment of attorney fees cannot be ordered directly to the attorney.

25.      Finally, and most importantly, every time the term "*attorney's fees*" is mentioned in the Texas Family Code, it is always accompanied by the restrictive clause "*reasonable.*" The phrase "*attorney's fees*" never appears in the Texas Family Code without the term "*reasonable*" attached to it.

26.       April 2019 – The Supreme Court of Texas's opinion clarified the law governing recovery of attorney's fees and the applicable evidentiary standards.

- Lodestar method is the *only* method that may be used to establish the reasonableness and necessity of an attorney's fee award.
- Attorney-fee awards in Texas *must* be supported by detailed evidence supporting each variable of the lodestar method.
- The lodestar method applies to *all* fee-shifting awards, including awards of attorney's fees as well as sanctions.

27.       "Texas follows the "American Rule" – generally speaking, each litigant pays its own way in attorneys fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 3d 469, 483 (Tex. 2019).

28.       "Fees awarded must be *reasonable and necessary*, *even if* the statute or contract says "reasonable fees" or just "attorneys fees." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 3d 469, 479 (Tex. 2019).

29.       "General, conclusory testimony about tasks performed will *not* support a fee award. There must be some evidence to inform the trial court of the time spent on specific tasks to enable a *factfinder* to meaningfully review the requested fees" *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 3d 469, 502 (Tex. 2019).

30.       "If recoverable fees are qualified as "**incurred** fees", fee award must be **reasonable**, **necessary** and *incurred*..." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 3d 469, 489 (Tex. 2019).

31.       "The fees *incurred* or *contracted for* do *not* themselves establish reasonableness or necessity." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 3d 469, 495 (Tex. 2019).

32.       "A party may not recover attorney's fees from the adverse party *unless* authorized by statute, by a contract between the litigants or other equitable grounds." *In Re Nat'l Lloyds Ins. Co.*, 532 S.W. 3d 794, 809 (Tex. 2017).

33.       "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ." Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Further, challenges to the legal and factual

sufficiency of the evidence are relevant factors in determining whether or not a trial court abused its discretion. In re Rogers, 370 S.W.3d 443, 445 (Tex. App.-Austin 2012, orig. proceeding)." *In re D.M.L.*, No. 02-22-00451-CV, 5 (Tex. App. Dec. 22, 2022).

34.      Texas Disciplinary Rules of Professional Conduct Rule 1.04 does not allow any lawyer enter into an arrangement to collect an ***unconscionable fee.*** **"**A fee is ***unconscionable*** if a competent lawyer could not form a reasonable belief that the fee is ***reasonable.***" "Factors that may be considered in determining the ***reasonableness*** of a fee include… the following:(4) the amount ***involved*** and the results ***obtained.***" The ***prepayment*** of attorney's fee is not **reasonable fee** per 1.04(b)(4).

35.      "Factors that a ***factfinder*** should consider when determining the ***reasonableness of a fee*** include: (4) the amount involved and the results obtained;" *Arthur Andersen Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)

36.      " "To determine the amount of a ***reasonable fee***, ***district courts*** typically proceed in two steps: first, courts generally apply the ***lodestar method*** to ***determine*** what constitutes a ***reasonable attorney fee***; and second, the district court may then adjust the lodestar upward or downward based on a variety of factors, including the degree of success obtained by Plaintiffs." Bravo v. City of Santa Maria, 810 F.3d 659, 665-66 (9th Cir. 2016)." *G & G Closed Circuit Events, LLC v. Brews & Brats, Inc*, 22-cv-02714-SI, 2 (N.D. Cal. Jun. 27, 2023).

37.      " "The Supreme Court has instructed that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying ***the number of hours*** reasonably expended on the litigation times ***a reasonable hourly rate***, an approach commonly known as the lodestar method.' *Vargas v. Howell*, 949 F.3d 1188, 1194 (9th Cir. 2020) (internal quotations omitted). ' When a party seeks an award of attorneys' fees, that party bears the ***burden of submitting evidence*** of ***the hours worked and the rate paid***,' and showing ' that the rate charged is in line with the prevailing market rate of the relevant community. ' *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks omitted) (quoting *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir.1996)). ' Where the documentation of hours is inadequate, the district court may reduce the award accordingly. " *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)." *G & G Closed Circuit Events, LLC v. Brews & Brats, Inc*, 22-cv-02714-SI, 2 (N.D. Cal. Jun. 27, 2023)

38.     "In its most current form, the **lodestar method** as described in Blum has achieved dominance in the Federal courts and has "**become the guiding light**" for fee-shifting jurisprudence. " *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493 (Tex. 2019)

39.     "We have noted that "the lodestar figure includes most, if not all, of the relevant factors constituting a **'reasonable' attorney's fee''** and have held that an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 493 (Tex. 2019)

40.     In Plaintiff's **family law** case, it is **unlawful** and the judge **lacks jurisdiction** to award **interim** attorney fees **incurred** in the **criminal** case.

41.     In Plaintiff's family law case, it is **unlawful** and the judge **lacks legal authority** to award interim attorney fees to **both attorneys**.

42.     In Plaintiff's family law case, it is **unlawful** and the judge **abuses the discretion** to award interim attorney fees **without** providing factual evidence that satisfies the "**reasonable**" clause.

43.     In Plaintiff's family law case, it is **unlawful** and the judge **lacks authority** to award interim attorney fees with **prepayment**.

44.     In Plaintiff's family law case, it is **unlawful** and the judge **lacks jurisdiction** to issue an **interim** order **compelling** Plaintiff to directly pay his **own** attorney fees. The family court has **no** jurisdiction to assist the attorney to secure/collect **non-billed** payment or prepayment from their own client in the **absence** of that attorney's pleading. The judge **lacks jurisdiction** over the subject matter of commercial contract relations between the service provider and its consumer, particularly given the **clear absence** of pleading.

### B.    *QDRO (Qualified Domestic Relations Order)*
### *MUST BE*
### *FINAL ORDER*

45.     **TITLE 1**. THE MARRIAGE RELATIONSHIP/**SUBTITLE C**. DISSOLUTION OF MARRIAGE/**CHAPTER 9**. POST-DECREE PROCEEDINGS/**SUBCHAPTER B**. POST-DECREE QUALIFIED DOMESTIC RELATIONS ORDER

Sec. 9.102. **PROCEDURE**. (a) A party to a **decree of divorce** or annulment may **petition** the court for a **qualified domestic relations order** or similar order.

46.     "A QDRO is a **final**, **appealable** order. See, e.g., Reiss v. Reiss, 118 S.W.3d 439, 441 (Tex. 2003) (considering appeal of **post-divorce** QDRO)." *Gainous v. Gainous*, 219 S.W.3d 97, 104 (Tex. App. 2006)

47.     "A QDRO is a species of **post-divorce** enforcement or clarification order. See Shanks, 110 S.W.3d at 449" *Gainous v. Gainous*, 219 S.W.3d 97, 107 (Tex. App. 2006)

48.     QDRO **must** be a **final** and **appealable** order and **must** be **post-divorce**.

49.     In Plaintiff's family law case, it is **unlawful,** and the judge **lacks authority** to issue a QDRO in an **unappealable interlocutory order before a** final divorce decree following a trial.

### C.    CHILD SUPPORT or SPOUSAL SUPPORT vs ATTORNEY FEES
### LEGAL DUTY vs DEBT
### A MOTION FOR ATTORNEY FEE
### IS NOT
### A MOTION FOR SPOUSAL SUPPORT

50.     "It is also generally held, however, that Texas law **forbids** collection of **attorney's fees** by contempt proceedings. *Wallace*, the principal case cited by courts for the proposition that **attorney's fees** may **not** be enforced by contempt, involved an order similar to that sought to be enforced here." *In re Bielefeld*, 143 S.W.3d 924, 928 (Tex.App.-Fort Worth 2004)

51.     "the Supreme Court concluded that interim attorney's fees awarded in a temporary order entered incident to divorce proceedings were impermissible, the basis for the opinion is not the constitutional impediment urged here, but the **absence of statutory authority**." *Ex Parte Kimsey*, 915 S.W.2d 523, 526 (Tex. App. 1995).

52.     "On the other hand, it has long been established that the **obligation** that the law imposes on **spouses** to **support** one another, as well as on parents to **support** their **children**, is **not** considered a "**debt**" within the constitutional prohibition but, rather, a **legal duty** arising out of the legal status of the parties, and failure to comply with a court order for **spousal** or **child support** is thus **enforceable** by contempt." *In re Bielefeld*, 143 S.W.3d 924, 928 (Tex.App.-Fort Worth 2004)

53.        "Texas courts, however, have **not** extended the use of **contempt** for recovery of attorney's fees **beyond those incurred in enforcing** the **legal duties** of spousal or child support, emphasizing that the power of contempt of court must be exercised with "caution."" *In re Bielefeld*, 143 S.W.3d 924, 929 (Tex.App.-Fort Worth 2004)

54.        An attorney's fee is considered a debt, while spousal support is regarded as a legal duty. On April 26th, 2022, Defendant Leslie Starr Barrows submitted a fraudulent garnishment court order that, <u>for the first time</u>, **falsely categorized** interim attorney's fees as "spousal support." Manipulating the nature of a previous hearing's outcome under the guise of the law for personal gain constitutes a crime and an abuse of the legal process. Defendant Leslie Starr Barrows was initially awarded $25,000 in attorney's fees paid directly to her, then she relabeled the entire $25,000 award as an enforceable legal duty named "spousal support," a word that **never** appeared in her motion. It is quite clear that Defendant Leslie Starr Barrows **is not a Judge**. She is not allowed to issue order per her own will under the Texas law.

55.        In Plaintiff's family law case, it is **unlawful, lacks authority, fraudulent,** and an **abuse of process** for the officers of the court to arrange an **enforceable** spousal support order with the true intention of abstracting **attorney's fees**.

56.        In Plaintiff's family law case, it is **unlawful, lacks jurisdiction, fraudulent,** and an **abuse of process** under the color of law for the officers of the court to arrange an enforceable spousal support order while there is **neither** a motion **nor** a hearing for the matter of spousal support, which violates the Due Process clause of the Fourteenth Amendment.

### D.    FEDERAL ERISA LAW
### PROHIBIT
### PAYING ATTORNEY FEE WITH 401K FUND

57.        Qualified Domestic Relations Order is under definition of *29 U.S.C. § 1056(d)(3)(B)(i)* the term "qualified domestic relations order" means a domestic relations order—(I) which creates or recognizes the existence of an **alternate payee**'s right to, or assigns to an **alternate payee** the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, **and**… **(ii)** the term "domestic relations order" means any judgment, decree, or order (including approval of a

property settlement agreement) which—(I) relates to the provision of *child support*, *alimony payments*, or *marital property rights* to *a spouse, former spouse, child*, or other dependent of a participant, *and* (II) is made pursuant to a State or Tribal domestic relations law (including a community property law).

58.     The *only* power ERISA grants to a pension plan administrator is the power to review an existing order to determine *whether* it is a qualified domestic relations order under the Act. See *29 U.S.C. § 1056(d)(3)(G)(i)(II)* ("[T]he plan administrator shall determine *whether* such an order *is* a qualified domestic relations order and notify the participant and each alternate payee of such determination."). Thus, *any* power the trial *court* had to enter the *post-divorce order must* come from *state law*. See *Hogle v. Hogle*, 732 N.E.2d 1278, 1284 (Ind. Ct. App. 2000) ("Since ERISA does not provide an enforcement mechanism for collecting judgments, state law methods for collecting money generally remain undisturbed by ERISA."). If *no state law* authorizes the order, ERISA does not apply, and the trial court still lacked authority to enter the order at issue. ERISA's anti-alienation and preemption clauses **do not**, however, grant a state *court authority* to *issue an order* that the state's law does *not authorize*.

59.     "ERISA itself does *not* expressly *permit* an assignment of retirement funds pursuant to a QDRO to satisfy *an award of attorney's fees*. The requirement that a QDRO "relate to" *alimony, child suppo*rt, or *the division of marital property*, seeks to *ensure* that assets *protected under* ERISA will be used for the benefit of a *former spouse* or *a dependent*, and then *only* for *specified* purposes." *Silverman v. Spiro*, 438 Mass. 725, 733 (Mass. 2003).

60.     "These decisions also have routinely approved the use of a QDRO to permit the recovery of attorney's fees in connection with the enforcement of *an existing order* for spousal or child support. Admittedly, in these decisions, the collection of *past due* support was the *principal* matter in issue," *Silverman v. Spiro*, 438 Mass. 725, 734 (Mass. 2003)

61.     In Plaintiff's family law case, it is *unlawful, lacks authority, fraudulent,* and an *abuse of process* for the officers of the court to collect attorney fees using QDRO if the fees are unrelated to the *enforcemen*t of any *existing* order for the collection of *past due* support.

62.      In Plaintiff's family law case, it is *unlawful*, *lacks authority, fraudulent,* an *abuse of process* for the officers of the court to draft, sign, and request the family court issue an *interlocutory* QDRO order with the hidden intention of securing attorney's fees by abstracting from employee welfare benefit plans or pension benefit plans *during* a divorce proceeding - an action not *authorized* by Texas State law. This violates *29 U.S.C. § 1056* and constitutes a crime under *18 U.S.C. § 664*.

63.      For the past several decades in the state of Texas, whenever a member of the State Bar of Texas had participated in conspiracy activities of willfully using an unlawful unappealable interlocutory QDRO order to abstract funds from litigant's employee welfare benefit plan or employee pension benefit plan for their own legal fees, they had committed RICO racketeering activities under *18 U.S.C. § 664*, *18 U.S.C. § 1341*, and *18 U.S.C. § 1343*, among other statutes.

64.      Additionally, over the same period, any instance in which a member of the State Bar of Texas has acted to support, obscure, or legitimize the previously mentioned RICO racketeering activities, regardless of the true legal context, also constitutes racketeering offenses under *18 U.S.C. § 1962(d)*, *18 U.S.C. § 1027*, and *18 U.S.C. § 4*, as well as violations of the Fourteenth Amendment to the U.S. Constitution and *42 U.S.C. § 1983*, among other statutes.

### E.  *MARTERIAL FALSE STATEMENT IN THE COURT IS AGGRAVATED PERJURY*

65.      *(33)* "*Official proceeding*" means any type of administrative, executive, legislative, or *judicial proceeding* that may be conducted before a public servant.

66.      *37.02.  PERJURY*. (a)  *A person* commits an offense if, with intent to *deceive* and with knowledge of the statement's meaning: (1)  he makes a *false statement* under *oath* or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath;  or  (2)  he makes a *false unsworn declaration* under Chapter 132, Civil Practice and Remedies Code.

67.      *37.03.  AGGRAVATED PERJURY*. (a) A person commits an offense if he commits perjury as defined in *Section 37.02,* and the false statement: (1) is made during or in connection with

an *official proceeding*; and (2) is material. (b) An offense under this section is a *felony of the third degree*.

## F. SUMMARY FACT OF LAW BREACH

68.     On the very first date of hearing Plaintiff's case, which was November 8th and 9th, 2021, Defendant Lori L. DeAngelis ordered Plaintiff to *prepay both* parties' *attorneys' fees*, which came to a total of $10,000. This occurred before any fact-finding process took place and in the absence of any pleading. Neither party's attorney offered any evidence of bills or gave any testimony about the fees during the hearing. A pure speculation was made by Defendant Lori DeAngelis, and she rewarded Defendant Leslie Starr Barrows, her political campaign contributor who just held a fundraising event for her weeks ago, a fat check, from Plaintiff's pocket.

69.     Defendant Leslie Starr Barrows filed a motion *solely* for *interim attorney's fees* in March 2022. The motion included an affidavit that detailed all of the bills incurred from the first day of both the dissolution of marriage suit and the *criminal defense suit* in the *other court*. The affidavit was in the filing. Barrows made a double dipping effort to get Plaintiff to pay her fees of $19,300 by claiming that her client was unable to make these payments. This is despite the fact that Plaintiff had paid Barrows with prior payments around $5,000 in November 2021.

70.     Despite all these fraudulent statements that Leslie made and William not even being a party to this hearing, Defendant Lori L. DeAngelis ordered Plaintiff on *April 13, 2022*, following the hearing on the "motion for interim attorney's fees" to *prepay* Defendant Leslie Starr Barrows $25,000 from his 401K and to *prepay* Defendant William Albert Pigg $25,000 from his 401K. William was the attorney for Plaintiff and was there expected to advocate for Plaintiff's interests. In this legal proceeding, he had not advocated for his attorney's fees, nor did he provide any testimony or evidence about his attorney's fees in any other capacity. Yet, Associate Judge, Defendant Lori L. DeAngelis advocated for William's interests and granted him $25,000 in the absence of any evidence or pleading. She did this despite the fact that she had no authority to do so. The entire order is completely outside the boundaries of the law. As an incentive for William Albert Pigg's do-not-appeal this unlawful order, Lori L. DeAngelis offered him $25,000 in exchange for his cooperation. That *interlocutory* QDRO order violated *29 U.S.C. § 1056(d)(3)(B)(ii)(II)* because it is not permitted under Texas law.

71.      That interlocutory QDRO order's context itself violated *29 U.S.C. § 1056(d)(3)(B)(i)(I)* and *29 U.S.C. § 1056(d)(3)(B)(ii)(I)*. In a ***deliberate attempt to circumvent ERISA restrictions***, Leslie Starr Barrows went ahead to make significant changes to that order by altering its context, falsely stating, 'On ***April 13, 2022***, the Court ***heard*** Respondent's ***request for Spousal Support*** inter alia,' and 'Yan ***was*** ordered/required to pay spousal support,' among other claims. Furthermore, Leslie Starr Barrows included in the order a directive for the retirement fund administrator to pay $25,000 to Plaintiff's soon-to-be-ex-spouse Fuyan Wang. Leslie Barrow also provided detailed instructions in the order, thereby granting herself authority to oversee the entire fund dispersal operation to ensure the funds would ultimately reach her own pocket.

72.      A court order implies a legal obligation to the people, and its context should be subject to strict scrutiny. However, in the eyes of Defendant Leslie Starr Barrows and her fellow conspirators, the court is treated as their flea market. Defendant Leslie Starr Barrows altered the "alternate payee" and "purpose" contexts from the original court order to circumvent EIRSA restrictions. She admitted her criminal intention in an email, "we have to" and "no other way around it." Both William Albert Pigg and Samantha Ybarra consented and cooperated.

73.      Between April and September 2022, Leslie Starr Barrows conducted multiple mail and wire fraud telecommunications with U.S. Bank and their legal counsel to try to deceive them into dispensing funds and to counter Plaintiff's objections using her own interpretation of the law. Eventually, she successfully obtained the funds in late 2022 with the cooperation of the other Defendants. These criminal actions targeting Plaintiff's 401K violated *18 U.S.C. § 664* and *18 U.S.C. § 1027*.

74.      Between April and September 2022, Leslie Starr Barrows engaged in multiple telecommunications with William Albert Pigg, Lori DeAngelis, and Samantha Ybarra, seeking their cooperation in her RICO conspiracy. Upon discovering that Plaintiff had uncovered their racketeering activities, Leslie Starr Barrows, William Albert Pigg, and Samantha Ybarra withdrew from Plaintiff's family court case in late 2022. All attorney's fees that Plaintiff paid for legal work in the case were compromised and irrecoverable. Plaintiff, as a consumer, was sabotaged and retaliated against by his legal service provider, William Albert Pigg, for attempting to expose RICO racketeering activities. The incurred loss amounts to approximately $50,000 to $100,000.

75.     Since that day until today, every member of the State Bar of Texas has been working under a RICO conspiracy to ensure that every unlawful act they committed against Plaintiff can be covered up. This has been going on since that day.

76.     For the past several decades in the state of Texas, certain family court attorneys and judges, members of the State Bar of Texas, have carried out a myriad of illicit actions to facilitate the collection of professional service fees for their own interests. Functioning collectively, this group has engaged in racketeering, harming legal service consumers in Texas. Other members of the State Bar of Texas, notably those holding roles within the Office of the Chief Disciplinary Counsel or the Criminal District Attorney's Office, have purportedly backed these activities by implementing protective measures, leaving regular consumers of legal services in Texas defenseless against unlawful asset seizures.

77.     The State Bar of Texas' effective monopolization of legal services has guaranteed that when their members improperly obtain fees, consumers find it difficult to navigate the legal landscape. On the rare occasions when consumers, including Plaintiff, have noticed these infractions, other members of the State Bar of Texas exercise state actor authority under the color of law to mask the criminal actions. This represents a significant scandal, impacting **_hundreds of thousands_** of legal service consumers in Texas.

78. These members of the State Bar of Texas knowingly used an **_interlocutory_** QDRO order to obtain their fees from employee pension benefit plans, which are protected by ERISA specifically to preserve funds for alimony, child support, or the division of marital property. Texas statute does not permit **_interlocutory_** QDRO orders, and Federal ERISA regulations do not allow employee pension benefit plans to disburse funds for the purpose of attorney's fees incurred during dissolution of marriage suit. **_There is no greater form of MONOPOLIZATION than possessing the knowledge and power to commit a crime while preventing others from understanding it._**

## V. FACTUAL BACKGROUND OF THIS SUIT

### A. FAMILY COURT CASE

79.      On October 15th, 2021, Plaintiff filed an original petition for divorce. The case was assigned to the 325th District Court, Tarrant County. The case number is 325-707596-21. The presiding Judge was Judith G. Wells, and the Associate Judge was Lori L. DeAngelis, another Defendant.

80.      On October 27th, 2021, Defendant Associate Judge Lori L. DeAngelis posted on her official 325th Judge campaign's social media account, "**Lori L. DeAngelis Griffith for Judge.**" She expressed her gratitude to her campaign fundraising event sponsor, Defendant Leslie Barrows, and the event was held at the Barrows Firm. Lori L. DeAngelis also posted several photos of herself and Defendant Leslie Starr Barrows together. In one of the photos, an award frame with the words '***Top Attorney***' was visible. In effect, Defendant Associate Judge Lori L. DeAngelis was soliciting business for Southlake attorney Leslie Barrows using the judge's official campaign's social media accounts on **Facebook** and **Twitter**.

81.      By the end of October 2021, Plaintiff was represented by Anita Krosby Cutrer, bar number 00787861. Plaintiff's soon-to-be-ex-spouse, Fuyan Wang, a Southlake resident in Tarrant County, who claimed she cannot efficiently communicate in English, was represented by Eun Hyuk "Nathan" Yi, bar number 24033489, an attorney who speaks Chinese Mandarin and English. Fuyan Wang's native language is Chinese Mandarin.

82.      The initial hearing date was November 1st, 2021. Mr. Yi appeared in court on that day and requested to reschedule the hearing to November 8th, 2021. His request was granted.

83.      On November 4th, 2021, Defendant Leslie Starr Barrows made a request to replace Eun Hyuk 'Nathan' Yi, who had represented Plaintiff's soon-to-be-ex-spouse. She got what she wanted. Eun Hyuk 'Nathan' Yi, a lawyer who speaks Chinese, had never provided any court services before that day. Leslie Starr Barrows, an English-speaking attorney, was able to quickly persuade Plaintiff's soon-to-be-ex-spouse that she was a better option despite the language barrier between Fuyan Wang and Defendant Leslie Starr Barrows, not giving Chinese-speaking attorney Eun Hyuk 'Nathan' Yi a chance. Plaintiff's soon-to-be-ex-spouse, on the other hand, has consistently asked for a Chinese Mandarin interpreter throughout the court case until now, claiming she cannot communicate in English due to a language barrier. Leslie Starr Barrows, a Defendant, no doubt thought she had a secret formula to get past the language barrier.

84.      On the hearing dates of November 8th and November 9th, 2021, Defendant Associate Judge Lori L. DeAngelis demonstrated complete bias against Plaintiff. She refused almost every photo and video evidence Plaintiff's attorney attempted to submit to the court. These photos and videos were critical to proving that Plaintiff's soon-to-be-ex-spouse is a child and family violence abuser. Defendant Associate Judge Lori L. DeAngelis dismissed these pieces of evidence under the pretext that she could not understand the Chinese Mandarin spoken by Plaintiff's soon-to-be-ex-spouse in the videos. Furthermore, Associate Judge Lori L. DeAngelis disregarded Plaintiff's testimonial, presuming every word from Plaintiff's soon-to-be-ex-spouse's testimonial as truthful. This was despite the fact that Plaintiff had no criminal history or charges, even though Plaintiff's soon-to-be-ex-spouse had two temporary restraining orders and had been arrested twice in the past. One of the temporary restraining orders was actually issued by the 324th family court in *prior year*. Defendant Associate Judge Lori L. DeAngelis ruled that Plaintiff, who came to seek a protection order in court, must move out of the house, continue to pay the house mortgage despite not living there, and lost primary child custody. Plaintiff was also ordered to pay child support. When Plaintiff confronted Defendant Associate Judge Lori L. DeAngelis at the end of the hearing and asked why she ordered Plaintiff to move out while the soon-to-be-ex-spouse with a history of family violence remained with primary child custody, Defendant Associate Judge Lori L. DeAngelis sneered and replied, "You asked for protection, so I order you to move out to protect you."

85.      Defendant Associate Judge Lori L. DeAngelis made her court proceedings resemble a game of *Russian Roulette*. Despite similar family cases being presented, outcomes varied drastically. The only discernible distinction was the involvement of Defendant Leslie Starr Barrows, who had made a campaign contribution to Associate Judge Lori L. DeAngelis just two weeks prior.

86.      Without any court hearing on the matter of attorney's fees, and without even a pleading t from either litigant, on November 10th, 2021, Defendant Associate Judge Lori L. DeAngelis ordered Plaintiff to withdraw the last and only $10,000 from his bank account, allocating $5,000 to each party for attorney's fees. Neither party had pleaded that the court award attorney fees, as both parties had paid retainers before appearing in court. Defendant Associate Judge Lori L. DeAngelis voluntarily advocated for legal fees without any solicitation. Defendant Associate Judge Lori L. DeAngelis presumes that she always carries the function to enforce the payment of legal fees as a reward for her fellow family court attorneys. There was absolutely no evidence or testimony submitted to the court

about the attorney's fees, the only factfinder was Plaintiff showing that he had $10,000 available in his account, that became the only fact that Defendant Associate Judge Lori L. DeAngelis used in her ruling. How much Plaintiff had in his account was how much Lori L. DeAngelis determined she could take from Plaintiff to award her family law affiliates. This order is attached hereto as Exhibit 7.

87.      Between December 2021 and February 2022, Fuyan Wang was charged by Southlake DFPS and trialed for assault with contact and family violence with criminal case number E0129990-1 in the municipal court of the city of Southlake. Fuyan Wang was represented by Defendant Samantha Ybarra. who worked in the same firm, the Barrows Firm, as Defendant Leslie Starr Barrows. This criminal case is attached hereto as Exhibit 6.

88.      On March 3rd, 2022, Defendant Leslie Starr Barrows filed a **Motion for Interim Attorney's Fees** against Plaintiff in the 325th Family Court. Defendant Leslie Starr Barrows claimed that there were **$19,300** in fees incurred by March 3rd, 2022. Leslie Starr Barrows, also serving as a witness for this petition, submitted an affidavit stating that the bills recorded in the exhibits were for attorney's fees in the family court case. This motion is attached hereto as Exhibit 3.

89.      But the billing record in the affidavit showed that there were multiple charges related to the Southlake Police's **criminal charge** case number **E0129990-1** in the municipal court of the city of Southlake. One of the records dated February 1st, 2022, showed a 2-hour charge totaling $500 for attending a hearing in the municipal court. These charges were **not** attorney's fees in this **family court case**. Defendant Leslie Starr Barrows made a false statement by claiming all these fees were in this **family court case**. Therefore, Defendant Leslie Starr Barrows committed an act of **wire fraud**, as defined by **18 U.S.C. § 1343**, coupled with **aggravated perjury**, as described by Texas Penal Code **37.03**, by submitting this affidavit to the court on March 3rd, 2022. Defendant Samantha Ybarra was included as a recipient in this telecommunication, she knew this affidavit was not true, but she chose to support this act with her consent as a conspirator, as defined by **18 U.S.C. § 1349**. This affidavit is attached hereto as Exhibit 5.

90.      On April 13th, 2022, a hearing for the **Motion of Interim Attorney's Fees** was held in Defendant Lori L. DeAngelis' Associated Judge Court. On the stand, Defendant Leslie Starr Barrows represented herself as a witness and testified that everything in the affidavit was true. By personally affirming this affidavit in court on April 13th, 2022, Defendant Leslie Starr Barrows committed

another act of **aggravated perjury** as described by Texas Penal Code **37.03**. Both Defendants Samantha Ybarra and William Albert Pigg appeared in court, but neither of them reported Leslie Starr Barrows' misconduct to the State Bar of Texas. Defendant Samantha Ybarra appeared in court, she knew this testimonial was not true, but she chose to support this act with her consent as a conspirator, as defined by *18 U.S.C. § 1349*.

91.     Plaintiff testified on the stand, claiming that the fees listed on the bill were incurred in another **criminal** case, **not** the **family** court case. All Defendants in court, including Defendant Lori L. DeAngelis, chose to commit the crime of **official oppression** as described by Texas Penal Code **39.03(a)(2),** disregarding Plaintiff's testimony. Despite knowing no funds were available for withdrawal from Plaintiff's bank accounts, and that $**100,000** remained in Plaintiff's out-of-state employee retirement account, Defendant Lori L. DeAngelis opted to draw money from Plaintiff's 401K account to support her loyal political campaign contributor, Defendant Leslie Starr Barrows.

92.     The billing record in the affidavit showed that, even when considering the fees related to the **criminal** case, Leslie Starr Barrows was only owed about $**11,000** after payments as of March 2nd, 2022. Despite this, Defendant Lori L. DeAngelis still generously awarded both family attorneys, $**25,000** each, more than Leslie Starr Barrows asked. Defendant Lori L. DeAngelis' behavior demonstrated her belief that in her family court, she has the absolute authority to unconditionally **compel payment**, even in a **prepayment** form, at any time and without needing to provide reasons, as long as Plaintiff's financial account still has an available balance to be withdrawn. Defendant Lori L. DeAngelis' found herself in a new function in the family court, a **debt/prepayment** collector for her fellow family court attorneys.

93.     An Associated Judge report was written after the hearing. Both Leslie Starr Barrows and William Albert Pigg consented to this unlawful proposed order. This Associated Judge report ordered that Plaintiff needs to pay the fees for drafting a QDRO and Plaintiff needs to **directly** pay Leslie Starr Barrows and William Albert Pigg $**25,000** each from his out-of-state 401K account. This order is attached hereto as Exhibit 7.

94.     After the hearing on April 13, 2022, Defendant Leslie Starr Barrows contacted Plaintiff's 401K administrator, U.S. Bank, located in the State of Minnesota. Defendant Leslie Starr Barrows learned that Federal ERISA law **prohibits** a QDRO order to dispense funds to anyone other than an

*'alternate payee'* as defined in *29 U.S.C. § 1056*. An attorney is *not* defined as an ***alternate payee***. Defendant Leslie Starr Barrows also learned that *29 U.S.C. § 1056 **prohibits*** a QDRO order to dispense funds relating to the provision of ***interim attorney's fees***.

95.     Not wanting to lose the opportunity to secure payment for her own fees, Defendant Leslie Starr Barrows decided to find a fraudulent way to circumvent *29 U.S.C. § 1056*. She chose to continue her journey of engaging in RICO racketeering activities.

96.     On April 26th, 2022, Defendant Leslie Starr Barrows committed an act of ***wire fraud***, as defined by *18 U.S.C. § 1343*, coupled with ***aggravated perjury*** as described by Texas Penal Code ***37.03***, by submitting her fraudulently drafted garnishment court order to William Albert Pigg. Leslie Starr Barrows solicited William Albert Pigg to sign this order. Under a conspiracy, William Albert Pigg signed this fraudulent order. Defendant William Albert Pigg committed an act of ***wire fraud***, per *18 U.S.C. § 1343*, in conjunction with ***aggravated perjury*** as described by Texas Penal Code *37.03*, by submitting his signed copy back to the court. Defendant Samantha Ybarra was included as a recipient in these telecommunications, she knew this court order was not true, but she chose to support this act with her consent as a conspirator, as defined by *18 U.S.C. § 1349*. Defendant William Albert Pigg was expected to zealously pursue his client's interests within the bounds of the law. But he chose to conceal this court order from his client, ***without*** disclosing its existence. Plaintiff was ***not*** informed about this court activity. This order is attached hereto as Exhibit 8.

97.     The fraudulent garnishment court order, intended to serve as a QDRO to circumvent *29 U.S.C. § 1056*, contained false information including, but not limited to, "On April 13, 2022, the Court heard Respondent's request for ***Spousal Support*** inter alia.," and "Yan, ***was ordered***/required to ***pay spousal support***" etc. Judge Judith G. Wells knew that, on the court record, there was ***no*** motion for spousal support, ***no*** hearing for spousal support, and ***no*** order for spousal support. Nevertheless, she chose to sign the fraudulent court order to support securing attorney fees for her fellow family court attorneys. Defendant Leslie Starr Barrows was also a political campaign contributor to Judge Judith G. Wells.

98.     On May 26th, 2022, Defendant Leslie Starr Barrows committed an act of ***wire fraud***, as defined by *18 U.S.C. § 1343*, coupled with ***aggravated perjury*** as described by Texas Penal Code ***37.03***, by submitting her fraudulently ***revised*** garnishment court order to William Albert Pigg. William

Albert Pigg signed and submitted it back to the court. Judge Judith G. Wells signed it. Thus, the same pattern of RICO racketeering activity that occurred on April 26th, 2022, was repeated by the same actors. William Albert Pigg continues to choose to conceal this court order from his client, *without* disclosing its existence. Plaintiff *was* not informed about this court activity. Defendant Samantha Ybarra was included as a recipient in these telecommunications, she knew this court order was not true, but she chose to support this act with her consent as a conspirator, as defined by *18 U.S.C. § 1349*.

99.     On June 21st, 2022, Defendant Leslie Starr Barrows committed an act of wire fraud, as defined by *18 U.S.C. § 1343*, coupled with **aggravated perjury** as described by Texas Penal Code ***37.03***, by submitting her fraudulently WRIT of garnishment court order to William Albert Pigg. William Albert Pigg signed and submitted it back to the court. Judge Judith G. Wells signed it. Thus, the same pattern of RICO racketeering activity that occurred on April 26th, 2022, was repeated by the same actors. But this time, these actors committed an act of **mail fraud**, as defined by *18 U.S.C. § 1341*, a violation that goes against *18 U.S.C. § 664* and *18 U.S.C. § 1027*, which prohibits *false statements and the concealment of facts in relation to documents required by ERISA*. They mailed the fraudulent WRIT of garnishment court order to U.S. Bank, Plaintiff's 401K administrator, located in the State of Minnesota. William Albert Pigg William Albert Pigg continues to choose to conceal this court order from his client, *without* disclosing its existence. Plaintiff was *not* informed about this court activity. Defendant Samantha Ybarra was included as a recipient in these telecommunications, she knew this court order was not true, but she chose to support this act with her consent as a conspirator, as defined by *18 U.S.C. § 1349*.

100.    After knowing that Plaintiff was notified by the U.S. Bank in July 2022 about the garnishment court order, Defendant William Albert Pigg chose to keep concealing the truth with Plaintiff, by sending a telecommunication email, required Plaintiff to sign an objection letter to the U.S. Bank employment retirement fund, located in the State of Minnesota. Even though Defendant William Albert Pigg admitted to Plaintiff that the writ of garnishment and the court orders of garnishment were *not* truthful, Plaintiff was *not* ordered to pay spousal support during the hearing held on April 13th, 2002. In an email, Defendant William Albert Pigg gave Plaintiff the *false* impression that he did *not* sign the order, suggesting *it was Defendant Leslie Starr Barrows who did so*, and that he was **trying to stop her attempt**. William Albert Pigg acted as if he were the good actor trying to

protect Plaintiff's interests from the alleged misconduct of Defendant Leslie Starr Barrows. By doing so, he persuaded Plaintiff to pay him ***$25,000*** separately as a reward for his perceived honesty. Plaintiff was deceived by him and paid him accordingly. When Defendant William Albert Pigg ***lied*** to Plaintiff in his email by saying he did ***not*** sign these orders, he has committed a violation that goes against *18 U.S.C. § 1027* by himself. These emails are attached hereto as Exhibit 1.

101.      On August 5th, 2022, after learning that Plaintiff had signed an objection letter, Defendant Leslie Starr Barrows sent a ***private*** email to Defendant William Albert Pigg. This act constituted a case of ***criminal solicitation***. This email also represented an attempted *RICO conspiracy*, as defined under *18 U.S.C. § 1962(d)*. In the email, Defendant Leslie Starr Barrows, *solicited* Defendant William Albert Pigg, to refrain from objecting to her fraudulent court order, stating, "In order for ***us*** to obtain ***our*** attorney's fee, we ***must*** say the order ***is*** for ***spousal support***…," and "there is ***no way*** around it." Defendant Leslie Starr Barrows knew *29 U.S.C. § 1056* prohibit her to obtains attorney's fee, but she still wanted to unlawfully and willfully abstracts the 401K for her own use. Defendant Samantha Ybarra was included as a recipient in these telecommunications, she knew these acts are RICO racketeering activities defined in *18 U.S.C. § 1961(1)*, but she chose to support these acts with her consent as a RICO conspirator, as defined by *18 U.S.C. § 1962(d)*. These emails are attached hereto as Exhibit 1.

102.      Defendant Leslie Starr Barrows knew that she initiated all the RICO racketeering activities, with multiple violations of *18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C. § 1349, 18 U.S.C. § 664*, and *18 U.S.C. § 1027*. In her email, she openly solicited William Albert Pigg, stating, "<u>for ***us*** to obtain ***our*** attorney's fee</u>." This provides undeniable evidence of conspiracy solicitation among members of the State Bar of Texas. The terms used were not "***me***" and "***my***," but "***us***" and "***our***." Each individual who received this email chose to consent, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d)*.

*103.*      During the same period, Defendant Leslie Starr Barrows made several telecommunications to the U.S. Bank, the administrator of Plaintiff's 401K, located in the State of Minnesota. Utilizing her status as an attorney and member of the State Bar of Texas, Defendant Leslie Starr Barrows managed to mislead the U.S. Bank that although the QDRO ***directly contradicts*** the Associate Judge's original court report (the actual hearing results), the QDRO ***superseded*** the prior

associate judge's report. Defendant Leslie Starr Barrows did not inform U.S. Bank the truthful bounds of the law that, according to Texas law, "A QDRO is a *final*, *appealable* order" and "A QDRO is a species of *post-divorce* enforcement or clarification order," Texas law does not permit the issuance of an *interlocutory QDRO order* during divorce proceedings, and the concept of "*Superseded Order*" is not defined in Texas Family Code either. The Texas attorney license that Defendant, the State Bar of Texas, granted to Defendant Leslie Starr Barrows provided her with a unique standing to misinterpret Texas law to third parties. This standing allowed her to deceive an out-of-state 401K administration, thereby facilitating the execution of her RICO scheme.

104.     Defendant William Albert Pigg accepted Defendant Leslie Starr Barrows' RICO conspiracy solicitation and consented to the U.S. Bank dispensing fund. Defendant Leslie Starr Barrows obtained her attorney's fees, by committing an act under *18 U.S.C. § 664*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1)*. Defendant William Albert Pigg concealed his consent from Plaintiff. Plaintiff was *not* informed about his consent act. These emails are attached hereto as Exhibit 1.

105.     In August 2022, Defendant William Albert Pigg presumed that Plaintiff did not know the true copies of prior fraudulent court orders, as he *never* disclosed these orders to Plaintiff. Defendant William Albert Pigg sent multiple telecommunication emails, tried to deceive Plaintiff, by saying, "I *did not sign* off on that QDRO because it would *not* be *true* and I'm *not going to* sign a court document that is *not true*," "In that case, the legal issue is that we either have to *lie* and accept the QDRO," and "'I am *not* going to put myself in a position where I'm taking money in a *non-truthful way*." These emails are attached hereto as Exhibit 1.

106.     The plain truth is evident that Plaintiff *did not* have a hearing held on April 13th, 2002, regarding *spousal support*. Therefore, according to the Fourteenth Amendment, states are prohibited from depriving any person of life, liberty, or property *without* Due Process of law. The outcome of the fraudulent garnishment court orders was, Plaintiff lost *$25,000* dollars from his interstate employment retirement fund, located in the State of Minnesota. Plaintiff also lost access to his employment retirement fund, located in the State of Minnesota, from August 2022 until present. Both *$25000* property and the liberty of accessing one's property are 2 elements protected by the Fourteenth

Amendment. Plaintiff's constitutional rights protected by the *Fourteenth Amendment* were stripped away without Due Process.

107.     By August 2022, following the lead of Defendant Leslie Starr Barrows, Defendant William Albert Pigg and Defendant Samantha Ybarra teamed up. Utilizing their Texas attorney licenses, sold by the State Bar of Texas, they carried out several Federal crimes and RICO racketeering activities defined by *18 U.S.C. § 1961*, including but not limited to *18 U.S.C. § 1341*, *18 U.S.C. § 1343*, *18 U.S.C. § 1349*, *18 U.S.C. § 664* and *18 U.S.C. § 1027*. Three Defendant s used interstate mail, emails, and phone calls to defraud an employment retirement fund located in the state of Minnesota, with the aim of conspiratorially dispensing the fund for their own use, despite the legal constraints stipulating that neither Federal nor State law permits such actions.

108.     In September 2022, upon realizing that Plaintiff had caught onto their several Federal crimes and RICO racketeering activities and had begun collecting evidence, Defendant Leslie Starr Barrows and Defendant William Albert Pigg suddenly attempted to force Plaintiff to sign a divorce settlement in a conspiratorial move. When Plaintiff declined the settlement, pointing out to Defendant William Albert Pigg that he still hadn't finished the financial information discovery on Plaintiff's soon-to-be-ex-spouse's side, Defendant William Albert Pigg pulled out a withdrawal petition, stating he had withdrawn from the case. Despite objections from Plaintiff due to this unexpected movement, Defendant William Albert Pigg submitted his withdrawal within 48 hours after the settlement was brought up on the table. Defendant William Albert Pigg was evidently desperate to extricate himself from being held accountable for his participation in the RICO racketeering activities.

109.     Another noteworthy fact is that Plaintiff's soon-to-be-ex-spouse, Fuyan Wang, failed to produce or submit any of her personal income tax reports and related business records by the end of 2022. Defendant Leslie Starr Barrows managed to evade accountability for concealing her client's financial information in the court presided over by Defendant Associate Judge Lori L. DeAngelis.

### B. GRIEVANCE PROCESS AND CRIMINAL COMPLAINT

110.     In October 2022, Plaintiff filed a grievance case, 202206760, against Defendant Leslie Starr Barrows with the Office of the Chief Disciplinary Counsel. Plaintiff provided complete, indisputable evidence to the Office of the Chief Disciplinary Counsel, including all the court reports,

court orders, and emails. Despite the irrefutable hard evidence presenting the facts, Defendant Luis Jesus Marin, in both his official and individual capacities, dismissed the case, stating, "We have concluded that the conduct you described is not a violation of the disciplinary rules." This official statement letter issued by the State Bar of Texas serves as an official endorsement and consent for Defendant Leslie Starr Barrows' RICO racketeering activities. Defendant Luis Jesus Marin chose to support these RICO racketeering activities, concealing the criminal acts through his dismissal decision. This decision is attached hereto as Exhibit 2.

111.    Defendant Luis Jesus Marin should have read the letter in which Defendant Leslie Starr Barrows solicited her RICO racketeering conspiracy, stating, "***In order for us to obtain our attorney's fee, we must say the order is for spousal support…***" *and "**There is no way around it.**"*  Defendant Luis Jesus Marin decided to accept the solicitation because "***our attorney's fee***" is a common interest of members of the State Bar of Texas. Despite the clear criminal evidence, Defendant Luis Jesus Marin chose to involve himself in the concealment of these RICO racketeering activities, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d).* This decision is attached hereto as Exhibit 2.

112.    Plaintiff appealed this dismissal decision to the Board of Disciplinary Appeals, case number 67344. In Jan 2023, the Board of Disciplinary Appeals granted Plaintiff's appeal, and asked the Office of the Chief Disciplinary Counsel to initiate an investigation. This decision is attached hereto as Exhibit 2.

113.    On May 17th, 2023, despite the irrefutable hard evidence presenting the facts, Defendant Rachel Ann Craig, in both her official and individual capacities, determined there was no 'Just Cause'. This official statement letter issued by the State Bar of Texas serves as an endorsement and consent for Defendant Leslie Starr Barrows' RICO racketeering activities. Defendant Rachel Ann Craig chose to support these RICO racketeering activities, concealing the criminal acts through her 'No Just Cause' decision, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d).* This decision is attached hereto as Exhibit 2.

114.    Later, this case was ***dismissed*** by the Summary Disposition Panel. This decision demonstrated that the State Bar of Texas was capable of supporting its members' RICO racketeering activities by knowingly disposing of the grievance within its self-regulated discipline process. The

State Bar of Texas, as a person, assisting in the concealment of these RICO racketeering activities, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d)*. This decision is attached hereto as Exhibit 2.

115.     In January 2023, Plaintiff filed a grievance case, 202300469, against Defendant William Albert Pigg with the Office of the Chief Disciplinary Counsel. Defendant Daniel Eulalio Martinez, in both his official and individual capacities, dismissed the case, stating, "We have concluded that the conduct you described is not a violation of the disciplinary rules." This official statement letter issued by the State Bar of Texas serves as an official endorsement and consent for Defendant William Albert Pigg RICO racketeering activities. Defendant Daniel Eulalio Martinez chose to support these RICO racketeering activities, concealing the criminal acts through his dismissal decision, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d)*. This decision is attached hereto as Exhibit 2.

116.     Plaintiff appealed this dismissal decision to the Board of Disciplinary Appeals, case number 67592. In April 2023, the Board of Disciplinary Appeals granted Plaintiff's appeal, and asked the Office of the Chief Disciplinary Counsel to initiate an investigation. This decision is attached hereto as Exhibit 2.

117.     On May 18th, 2023, despite the irrefutable hard evidence presenting the facts, Defendant Rachel Ann Craig, in both her official and individual capacities, determined there was no 'Just Cause'. This official statement letter issued by the State Bar of Texas serves as an endorsement and consent for Defendant William Albert Pigg's RICO racketeering activities. Defendant Rachel Ann Craig chose to support these RICO racketeering activities, concealing the criminal acts through her 'No Just Cause' decision, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d)*. This decision is attached hereto as Exhibit 2.

118.     Later, this case was ***dismissed*** by the Summary Disposition Panel. This decision demonstrated that the State Bar of Texas could support its members' RICO racketeering activities by knowingly disposing of the grievance within its self-regulated discipline process. The State Bar of Texas, as a person, assisting in the concealment of these RICO racketeering activities, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d)*. This decision is attached hereto as Exhibit 2.

119.     On May 17 and 18, 2023, Defendant Rachel Ann Craig made two consecutive decisions to refuse to proceed with the grievance case against Defendant Leslie Starr Barrows and Defendant William Albert Pigg. She was fully aware of how these two Defendant s were engaged in RICO racketeering activities together. Defendant Rachel Ann Craig chose to support these RICO racketeering activities, thereby supporting her fellow members of the State Bar of Texas. Defendant Rachel Ann Craig should have read the letter in which Defendant Leslie Starr Barrows solicited her racketeering conspiracy, stating, "***In order for us to obtain our attorney's fee, we must say the order is for spousal support…", "There is no way around it.***" Defendant Rachel Ann Craig decided to accept the solicitation because "***our attorney's fee***" is a common interest of members of the State Bar of Texas. Defendant Rachel Ann Craig has formed a pattern of being a RICO conspirator as defined by *18 U.S.C. § 1962(d)*. She should have reviewed the QDRO related to Plaintiff's 401K, thereby her concealment act itself violated *18 U.S.C. § 1027*, concealment of facts in relation to documents required by the ERISA. This decision is attached hereto as Exhibit 2.

120.     Plaintiff alleged that anyone in the Office of the Chief Disciplinary Counsel who had read the letter in which Defendant Leslie Starr Barrows solicited her RICO racketeering conspiracy, stating, "***In order for us to obtain our attorney's fee, we must say the order is for spousal support…***" and "***There is no way around it***", had accepted her criminal solicitation because "***our attorney's fee***" is a common interest among members of the State Bar of Texas. Therefore, every decision ***not to proceed*** with these grievance complaints stems from accepting Defendant Leslie Starr Barrows' criminal solicitation. In Plaintiff's case, the State Bar of Texas had successfully concealed the RICO racketeering activities by playing its supporting role, which endorsed its members to open-end continue these illegal practices.

121.     In December 2022, Plaintiff filed a criminal complaint with the Tarrant County Sheriff's Department. Other members of the State Bar of Texas, working in the Tarrant County Criminal District Attorney's office, chose to engage in these RICO racketeering activities by refusing to investigate these crimes committed by other members of the State Bar of Texas. Plaintiff alleged that these attorneys also became conspirators as defined by *18 U.S.C. § 1962(d),* who contributed to the open-end continued RICO schemes. This decision is attached hereto as Exhibit 4.

122.    In late January 2023, *after* the criminal complaint case was closed, some Tarrant County government employees allegedly proactively communicated with Defendant Leslie Starr Barrows, informing her of the Plaintiff's movements and whereabouts. The Plaintiff alleges that these employees, whose names are yet to be determined, became conspirators as defined by *18 U.S.C. § 1962(d),* contributing to the ongoing RICO schemes as informants.

123.    The concealment of these crimes was so glaringly obvious that all these agencies appeared to be lying. Both the Office of the Chief Disciplinary Counsel and the Tarrant County Criminal District Attorney's Office were presented with multiple pieces of solid documentary evidence, including all the mentioned emails in the previous statement. None of the members of the State Bar of Texas involved in Plaintiff's case upheld the law to stop these RICO racketeering activities.

124.    Plaintiff alleges that any member of the State Bar of Texas who chose to conceal these racketeering conspiracy acts without taking further action, regardless of his/her role, became a RICO conspirator as defined by *18 U.S.C. § 1962(d).* Such individuals are also implicated in committing additional crimes, including, but not limited to, violations of *18 U.S.C. § 1027* and *18 U.S.C. § 4*.

125.    Plaintiff holds additional court record evidence dating back *nine years*, relating to *further family court victims*. Plaintiff alleges that this evidence supports the claim that in family court, the practice of family court business participants using an interlocutory QDRO order to obtain interim attorney fees from federally protected retirement funds—sometimes in prepayment form—*is a deeply entrenched, widespread, and statewide RICO conspiracy scandal*. This order is attached hereto as Exhibit 9.

126.    Plaintiff holds additional court record evidence showing that some family court litigants had to face the consequences of insufficient funds in their *later* stages of divorce proceedings when their funds were unlawfully *depleted* in the *earlier* stages. Some were *incarcerated* due to failure to pay child support, even though their retirement funds were supposed to be preserved until then for this *very* purpose.

## VI. BRIEFING REGARDING THE STATE BAR OF TEXAS ROLE IN RICO AND ANTITRUST

127.     When a family court judge orders *prepayment* from the consumer of legal professional services via a court order, *without* any pleading from either litigant party, the judge is acting as an advocate for more advantageous business contract terms for fellow members of the State Bar of Texas. This action is undertaken at the expense of depriving family court litigants of their property. Consumers of professional legal services should not be treated as prey for predators; however, they often find themselves in such a position upon entering the family court system.

128.     Consumers of professional legal services should have the freedom to choose their service providers in the market, consenting to and signing agreements based on mutually agreed-upon business contract terms. Members of the State Bar of Texas are exclusive providers of professional legal services within the Texas market. However, when consumers begin receiving these services during court proceedings, other members of the State Bar of Texas, acting as judges, often interfere and alter the business contract terms. They do this either by enforcing advanced payment through court orders or by altering other aspects of the contract. These family court judges, wielding the authority granted by their licenses from the State Bar of Texas, are advocating for its members. They act as an extended arm of the State Bar of Texas, advancing the business interests of its members. The State Bar of Texas not only provides the license but also supplies its members with these roles, enabling these members to interfere in the business contracts between consumers and their providers (other members). This puts consumers in a disadvantaged, involuntary position without options, facing a choice of "agree with this mandatory contract term (prepay more) or face contempt of court charges and potential jail time." The State Bar of Texas is aware of this practice and permits it to continue.

129.     These family court attorneys often have no intention to advocate for their clients during lengthy court proceedings, which sometimes take up to three years before a final hearing date. A common strategy among these attorneys is to drain their clients' financial capacity as quickly and thoroughly as possible in the early stages of the court proceedings, often utilizing unlawful rulings to obtain interim attorney's fees from the 401K. This strategy enables them to deplete their clients' limited financial resources rapidly. Collecting business revenue in advance or over a shorter period than normal, to divide among the members of the State Bar of Texas, is a common benefit and interest for its members, even if it sometimes involves unlawful methods. The State Bar of Texas is aware of this but chooses to endorse this practice for common interest from an enterprise perspective. If the

members of the State Bar of Texas monopolize the interpretation of law, who else can counter-claim this practice is unlawful?

130.    In Plaintiff's case, none of the family law attorneys and judges have interpreted these practices as unlawful as of now. This is the de facto monopolization of injustice. Every member of the State Bar of Texas involved herein has chosen to help others to obtain fees illegally without any consequence. This also explains why these illegal activities have been in Texas for decades and are still ongoing.

131.    Plaintiff alleged there is a criminal collective entity among a large group of family court attorneys, judges, and other conspirator assistants.

132.    These family court litigants' protected assets were depleted in the early stages by the RICO racketeering activities of these criminals. This money was intended to be reserved for child support, according to ERISA guidelines. However, when their funds were misappropriated by family law attorneys, these litigants were unjustly labeled by the family law industry as "deadbeat parents."

133.    The availability of funds at different stages of a family court case proceeding can significantly influence the outcome, affecting the interests of Texas families and their children. These large-scale racketeering activities, shielded by the State Bar of Texas, inflict substantial harm on these families.

134.    In this Honorable Court, "It is our *duty* 'to give effect, if possible, to *every clause and word of a statute*.' "*United States v Menasche*, 348 US 528, 538-539, 99 L Ed 615, 75 5 Ct 513 (1955) (quoting Montclair v Ramsdell, 107 US 147, 152, 27 L Ed 431, 2 S Ct 391 (1883));"

135.    **Plaintiff wishes to inform this Honorable Court that the merits of this suit are so important that any attempt to dismiss it would harm the public interest statewide**.

## VII. STATEMENT OF CLAIM

### First Claim for Relief
*The Barrows Firm, enterprise*
*The State Bar of Texas, enterprise and person*
*Leslie Starr Barrows, person*
*Samantha Ybarra, , person*

***<u>William Albert Pigg, person</u>***
***<u>Luis Jesus Marin, person</u>***
***<u>Daniel Eulalio Martinez, person</u>***
***<u>Rachel Ann Craig, person</u>***
***<u>Lori DeAngelis, person</u>***
***<u>18 U.S.C. § 1341</u>***
***<u>18 U.S.C. § 1343</u>***
***<u>18 U.S.C. § 1349</u>***
***<u>18 U.S.C. § 1962</u>***
***<u>Injunction Relief</u>***
***<u>Compensatory, Punitive and Treble Damages</u>***

136.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

137.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

138.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

139.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

140.     Culpable Person:
- Defendant Leslie Starr Barrows, member of State Bar of Texas, Bar Card Number: 24048343. Staff of the Barrows Firm, being sued in individual capacity.
- Defendant, Samantha Ybarra, member of State Bar of Texas, Bar Card Number: 24104627. Staff of the Barrows Firm, being sued in individual capacity.
- Defendant, William Albert Pigg, member of State Bar of Texas, Bar Card Number: 24057009, being sued in individual capacity.
- Defendant, Luis Jesus Marin, member of State Bar of Texas, Bar Card Number: 24108702, being sued in individual capacity.
- Defendant, Daniel Eulalio Martinez, member of State Bar of Texas, Bar Card Number: 24120994, being sued in individual capacity.
- Defendant, Rachel Ann Craig, member of State Bar of Texas, Bar Card Number: 24090049, being sued in individual capacity.
- Defendant, Lori L. DeAngelis, member of State Bar of Texas, Bar Card Number: 05624250, being sued in individual capacity.
- The State Bar of Texas

141.     Enterprise
- The Barrows Firm

- The State Bar of Texas

142. Racketeering Activities
   - 18 U.S.C. § 1341
   - 18 U.S.C. § 1343
   - 18 U.S.C. § 664

143. Other Activities
   - 18 U.S.C. § 1349
   - 18 U.S.C. § 1027
   - 18 U.S.C. § 4

144. RICO offenses
   a. 18 U.S.C. § 1962(a)
      *It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to **use** or **invest**, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.*
   b. 18 U.S.C. § 1962(d)
      *It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.*
   c. 18 U.S.C. § 1962(c)

145. Primary substantive contraventions of Federal law
   a. To circumvent ***29 U.S.C. § 1056***, unlawfully and willfully use ***mail fraud*** and ***wire fraud*** to abstract assets from the employee pension benefit plan for own use, as part of a conspiracy. interlocutory QDRO orders signed/issued by the officer of the court is the main fraudulent scheme to carry out this crime.

146. Scheme
   a. License issued by the State Bar of Texas
   b. Title of "Officer of the court"
   c. interlocutory QDRO order

147. Frauds Artifice (Mail and Wire), including but not limited to:
   a. In the family court case, filing motions solely for interim attorney's fees, contradicting the law, because the Texas Family Code does not allow for interim attorney fees in its circumstances, as explained in Section STANDARD OF REVIEW.
   b. In the family court case, filling affidavits to request attorney fees to be awarded from a different criminal case, for services provided by a different individual.

    c.   Engaged in several RICO conspiracies among the attorneys and judges for criminal RICO racketeering activities solicitation.

    d.   To deliberately circumvent *29 U.S.C. § 1056*, a complex scheme was devised to abstract assets from the employee pension benefit plan for personal use. This scheme was carried out as part of a conspiracy and involved the utilization of multiple fraudulent Qualified Domestic Relations Orders (QDROs) and Court Orders as the primary vehicle to perpetrate this crime.

    e.   All the above crimes were concealed as part of a conspiracy.

148.    Plaintiff reserves the right to add any party as a culpable person during the court proceedings, pursuant to FRCP rule 21.

149.    Plaintiff alleges that, *all the individual defendants* described herein as conspirator are members of the State Bar of Texas. They contributed a portion of their proceeds of such income, received through racketeering activities, to maintain their attorney license issued by *the State Bar of Texas*. Using and investing such income also granted them voting rights on specific matters within the State Bar of Texas, provided them with a certain degree of control over the course of the **enterprise** that is *the State Bar of Texas*. These acts constituted the contravention of *18 U.S.C. § 1962(a)*.

150.    Plaintiff alleges that, *the State Bar of Texas*, as a **person**, used the ill-gotten business income to hire other conspirators identified herein to work in the Office of Chief Disciplinary Counsel. Their primary duties involve shielding and covering up any misconduct carried out by members of the State Bar of Texas when complaints are lodged against their members. They played crucial supporting roles, acting as the last line of defense. These supporting acts under the color of self-regulated disciplinary system, constituted the contravention of *18 U.S.C. § 1962(d)*.

151.    Plaintiff alleges that, *the State Bar of Texas*, knowingly utilizing fees obtained from the income of its members' racketeering activities, has established, operated, and maintained its self-regulated disciplinary system as a shield for criminal actions, providing it as a benefit to its members who conspire in these RICO racketeering activities. These acts constituted the contravention of *18 U.S.C. § 1962(d)*.

152.    Plaintiff alleges that, there exists a RICO scheme involving the primary substantive violations of Federal law "to circumvent 29 U.S.C. § 1056, unlawfully and willfully use mail fraud and wire fraud to abstract assets from the employee pension benefit plan for own use, as part of a conspiracy. QDRO/Court Orders signed by the officer of the court is the main vehicle to carry out this

crime." is a longstanding and widespread act that occurred in the last decades among the members of *the State Bar of Texas*. *The State Bar of Texas* knew about it and used the disciplinary procedure to shield and cover up. These covering up acts constituted the contravention of *18 U.S.C. § 1962(d).*

153.     Plaintiff alleges that, *Luis Jesus Marin, Daniel Eulalio Martinez* and *Rachel Ann Craig*, the members in the Office of Chief Disciplinary Counsel play important conspirator roles in these RICO racketeering activities. Their function is to protect the other members, keep them from being exposed, constituted the contravention of *18 U.S.C. § 4*, *18 U.S.C. § 1962(d)* and *18 U.S.C. § 1349*.

154.     Plaintiff alleges that conspirator *Lori L. DeAngelis*, as a member of the State Bar of Texas, plays a critical role in this ongoing RICO scheme, constituted the contravention of *18 U.S.C. § 4*, *18 U.S.C. § 1962(d)* and *18 U.S.C. § 1349*. She accepted financial benefits from the income generated by other conspirators' RICO racketeering activities to help herself obtain the position of judge. She assumed the role of a judge to obtain the authority to issue unlawful orders that facilitated the extraction of money from clients by other conspirators. Often, these rulings were made without any jurisdiction or authority. However, *Lori L. DeAngelis* would have utilized a division of the award, ensuring that both conspirators on each side would maintain silence. There exists a pattern: the more attorney's fees she issued award, the more political contribution income she received. The Tarrant government records demonstrate a positive correlation between the income obtained from RICO racketeering activities in her court and the political contribution amount she received from these conspirators.

155.     Plaintiff alleges that, there were court records showing, at least in 9 years ago, there were same racketeering acts described herein, in the Texas family court against other victims. The Texas public lacks knowledge of the bounds of the law if all other members of the State Bar of Texas, as part of a conspiracy, collaborate to circumvent 29 U.S.C. § 1056. These criminal acts also fall in the statue limitation of the RICO offense.

156.     Plaintiff alleges that, within the entire RICO scheme described herein, the license issued by *the State Bar of Texas*, which grants these conspirators with "officer of the court" title, is the crucial element of the fraud. This element allowed these conspirators to interpret the law in a practice that exceeded the limits set by the law, all while evading detection. The *State Bar of Texas* needs the

license fees to grow, maintain, operate its business and its members need the license to carry out the RICO scheme. These supporting license acts constituted the contravention of *18 U.S.C. § 1962(d)*.

157.    Plaintiff alleges that, the *Office of Chief Disciplinary Counsel* serves as a significant mechanism to hide these RICO racketeering activities from public scrutiny. Plaintiff's own grievance complaint experiment has substantiated these claims. *The State Bar of Texas* and *the Office of Chief Disciplinary Counsel* establish and operate using such income derived from the part of members' income obtained from these RICO racketeering activities. The annual financial report proved this cash flow relationship. Plaintiff alleges that, such income (injuries through Defendants' racketeering activities), which *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* received from these multiple racketeering activities, were used and invested, directly and indirectly, part of such income and the proceeds of such income, in acquisition of interests in, and the establishment and operation of, an enterprise, *the Barrows Firm*. Such income was in conjunction with the enterprise's business income. These RICO racketeering activities constituted a violation as defined in *18 U.S.C. § 1962(a)*.

158.    Plaintiff alleges that *Defendant Leslie Starr Barrows* is the actual person in control who operates the **enterprise** known as *the Barrows Firm*. *Defendant Leslie Starr Barrows* controls the re-distribution of such income to *other Defendants* involved herein.

159.    Plaintiff alleges that, by spending such income (injuries through these RICO racketeering activities), the **enterprise**, *the Barrows Firm*, also provided the facility, paid office, equipment, telecommunication cost and paychecks to support all the expense requirement to aid and abet these RICO racketeering activities conducted by the persons. The enterprise, *the Barrows Firm* pays *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* using such income (injuries through these RICO racketeering activities). The enterprise, *the Barrows Firm* retains profits for marketing both online and locally, thereby expanding its business and allegedly soliciting more victims for its purported racketeering activities. Plaintiff alleges that, the **enterprise**, *the Barrows Firm* and *Defendant Leslie Starr Barrows* also use such income to acquire local real estate property. Plaintiff alleges that the facts and allegations herein above, constitute a violation as defined in *18 U.S.C. § 1962(c)*, by the enterprises, *the Barrows Firm*.

160.    Plaintiff alleges that, on March 3rd, 2022, *Defendant Leslie Starr Barrows* filed a motion for interim attorney's fees to the 325th district court. She devised a scheme and an artifice (the motion) to defraud and obtain money through false and fraudulent pretenses. She used telecommunications to file her motion. In her affidavit, she falsely claimed that all these fees were incurred in the family court case 325-707596-21, which was a material deception. In fact, according to her claims, some fees were from a different case, E0129990-1. Additionally, she fraudulently claimed she should be rewarded interim attorney's fees, which is not allowed by the Texas Family Code, as explained in IV. STANDARD OF REVIEW. The was one act of *18 U.S.C. 1343*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1)*. Plaintiff alleges that, on March 3rd, 2022, *Defendant Samantha Ybarra* committed one act of *18 U.S.C. 1349*. Plaintiff alleges that, on March 3rd, 2022, both *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* committed one act of *18 U.S.C. § 1962(d)*.

161.    Plaintiff alleges that, on April 13th, 2022, *Defendant Leslie Starr Barrows* represented herself as a witness and testified on the stand that everything in the affidavit was true. By personally affirming this affidavit in court on April 13, 2022, *Defendant Leslie Starr Barrows* committed one act of *18 U.S.C. 1349*, by aiding in the commission of her prior *18 U.S.C. 1343* offense. Plaintiff alleges that, on April 13th, 2022, *Defendant Samantha Ybarra* committed one act of *18 U.S.C. 1349*. Plaintiff alleges that, on April 13th, 2022, both *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* committed one act of *18 U.S.C. § 1962(d)*.

162.    Plaintiff alleges that, on April 26th, 2022, *Defendant Leslie Starr Barrows* filed a drafted garnishment court order to *Defendant William Albert 'Bert'* and the court. She devised a scheme and an artifice (the garnishment court order) to defraud and obtain money from Plaintiff's 401K account through false and fraudulent pretenses. She used telecommunications to file her garnishment court order. In her garnishment court order, she falsely claimed, "On April 13, 2022, the Court heard Respondent's request for Spousal Support inter alia," and "Yan was ordered/required to pay spousal support," etc., which were material deceptions. In fact, there was no "request for Spousal Support" heard, and Plaintiff was not ordered to pay spousal support. Additionally, she fraudulently drafted all the actions that need to be taken by U.S. Bank. This was one act under *18 U.S.C. 1343*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1)*. Plaintiff alleges that, on April 26th, 2022, *Defendant Samantha Ybarra* committed one act of *18 U.S.C. 1349*. Plaintiff alleges that, *Defendant William Albert 'Bert'* committed one act of *18 U.S.C. 1343* after signing it. Plaintiff alleges that,

*Defendant Leslie Starr Barrows, Defendant Samantha Ybarra, and Defendant William Albert 'Bert'* committed one act of *18 U.S.C. § 1962(d).*

163.      Plaintiff alleges that, on May 26th, 2022, *Defendant Leslie Starr Barrows* filed a revised garnishment court order to *William Albert 'Bert'* and the court. She devised a scheme and an artifice (the revised garnishment court order) to defraud and obtain money from Plaintiff's 401K account through false and fraudulent pretenses. She used telecommunications to file her garnishment court order. In her revised garnishment court order, she falsely claimed, "On April 13, 2022, the Court heard Respondent's request for Spousal Support inter alia," and "Yan was ordered/required to pay spousal support," etc., which were material deceptions. In fact, there was no "request for Spousal Support" heard, and Plaintiff was not ordered to pay spousal support. Additionally, she fraudulently drafted all the actions that need to be taken by U.S. Bank. This was one act under *18 U.S.C. 1343*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1).* Plaintiff alleges that, on May 26th, 2022, *Defendant Samantha Ybarra* committed one act of *18 U.S.C. 1349.* Plaintiff alleges that, *Defendant William Albert 'Bert'* committed one act of *18 U.S.C. 1343* after signing it. Plaintiff alleges that, *Defendant Leslie Starr Barrows, Defendant Samantha Ybarra*, and *Defendant William Albert 'Bert'* committed one act of *18 U.S.C. § 1962(d).*

164.      Plaintiff alleges that, on June 21st, 2022, *Defendant Leslie Starr Barrows* filed a WRIT of garnishment court order to William Albert 'Bert' and the court. She devised a scheme and an artifice (the WRIT of garnishment court order) to defraud and obtain money from Plaintiff's 401K account through false and fraudulent pretenses. She used telecommunications to file her WRIT of garnishment court order. The WRIT of garnishment court order was fraudulent because the garnishment court order was fraudulent. This was one act under *18 U.S.C. 1343*, a RICO racketeering activity defined in 18 *U.S.C. § 1961(1).* Later, the WRIT of garnishment court order was mailed to Plaintiff's 401K administrator in the State of Minnesota. This was one act under *18 U.S.C. 1341*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1*). Plaintiff alleges that, on June 21st, 2022, Defendant *Samantha Ybarra* committed one act of *18 U.S.C. 1349.* Plaintiff alleges that, Defendant *William Albert 'Bert'* committed one act of *18 U.S.C. 1343* after signing it. Plaintiff alleges that, *Defendant Leslie Starr Barrows, Defendant Samantha Ybarra*, and *Defendant William Albert 'Bert'* committed one act of *18 U.S.C. § 1962(d).*

165.     Plaintiff alleges that, between June 2022 and August 2022, Defendant Leslie Starr Barrows made multiple telecommunications to Plaintiff's 401K administrator in the State of Minnesota, either through phone calls or emails. She devised a scheme to defraud and obtain money from Plaintiff's 401K account through false and fraudulent pretenses. She knew Plaintiff had objected to the WRIT of garnishment court order by pointing out the discrepancy between the Associate Judge's court report and the garnishment court order. She managed to deceive Plaintiff's 401K administrator into believing that despite the direct conflict between the two court documents, the garnishment court order superseded the Associate Judge's court report. Her interpretation of the law was fraudulent, because there is no definition of "superseding order" in the Texas Family Code. The garnishment court order itself violated the principle of Due Process, as Due Process requires, at a minimum, (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. In fact, Defendant Leslie Starr Barrows knew that there was never a hearing for spousal support. Through phone calls or emails and with successful deception, she committed multiple acts under *18 U.S.C. 1343*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1)*. Plaintiff alleges that, *Defendant Leslie Starr Barrows, Defendant Samantha Ybarra*, and *Defendant William Albert 'Bert'* committed one act of *18 U.S.C. § 1962(d)*.

166.     Plaintiff alleges that, on August 5th, 2022, after learning that Plaintiff had signed an objection letter, *Defendant Leslie Starr Barrows* telecommunicated private emails to *Defendant William Albert 'Bert'*, and *Defendant Samantha Ybarra* was included as a recipient in these telecommunications. In the emails, *Defendant Leslie Starr Barrows*, solicited *Defendant William Albert 'Bert'*, to refrain from objecting to her fraudulent court orders, stating, "***In order for us to obtain our attorney's fee, we must say the order is for spousal support…***" and "***there is no way around it*** (*29 U.S.C. § 1056* prohibited transaction)" (emphasis added), as explained in IV. STANDARD OF REVIEW. These emails constituted one act of *18 U.S.C. 1349*. *Defendant Leslie Starr Barrows*, the conspirator, solicited two other members of the State Bar of Texas, who are conspirators, to agree to assist her in accomplishing prior mail frauds and wire frauds. These emails constituted one act of *18 U.S.C. § 1962(d)*. *Defendant Leslie Starr Barrows*, the conspirator, solicited two other members of the State Bar of Texas, who are conspirators, to agree to assist her in accomplishing her act of *18 U.S.C. 1341*, *18 U.S.C. 1343* and *18 U.S.C. § 664*. Defendant *Leslie Starr Barrows* emphasized in the emails that they, as members of the State Bar of Texas and sharing the same financial interest ("for us to obtain our attorney's fee"), should act accordingly. Other members

of the State Bar of Texas, include but not limited to *Luis Jesus Marin, Daniel Eulalio Martinez*, and *Rachel Ann Craig*, after reading her emails during the grievance complaint investigation, subsequently agreed to her solicitation for conspiracy, therefore committed one act of *18 U.S.C. § 1962(d)*.

167.     Plaintiff alleges that, *Defendant Leslie Starr Barrows* received the money—the main object of her fraudulent scheme. It was put into *Defendant the Barrows Firm*'s account around September 2022. *Defendant Leslie Starr Barrows*, *Defendant Samantha Ybarra* and *Defendant William Albert 'Bert'* prior multiple acts of *18 U.S.C. 1341*, *18 U.S.C. 1343* and *18 U.S.C. 1349* aided and abetted Defendant Leslie Starr Barrows accomplish one act of *18 U.S.C. § 664*, a RICO racketeering activity defined in *18 U.S.C. § 1961(1)*, accompanied with another act of *18 U.S.C. § 1027. Defendant Leslie Starr Barrows* was able to unlawfully and willfully abstract funds from Plaintiff's employee pension benefit plan for her own use.

168.     Plaintiff alleges that, in the years 2022 and 2023, *Defendant Leslie Starr Barrows*, with the participation, support, and consent of other members of *the State Bar of Texas*, committed multiple RICO racketeering activities as defined in *18 U.S.C. § 1961(1)*. There were two parts of the income incurred from these multiple racketeering activities; one part was the money abstracted from Plaintiff's 401K account from the State of Minnesota, another part was *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* both charged their client for the time they spent to conduct racketeering activities. These RICO racketeering activities themselves generated income for Defendant the Barrows Firm. Using such income, *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* were paid by *Defendant the Barrows Firm* to operate these RICO racketeering activities.

169.     Plaintiff alleges that, such income (injuries through these RICO racketeering activities), which *Defendant Leslie Starr Barrows* obtained from these multiple racketeering activities, were used, directly and indirectly, part of such income and the proceeds of such income, in acquisition of interests in, and the establishment and operation of, the Barrows Firm.  Such income was in conjunction with the enterprise's business income. These RICO racketeering activities constitute a violation as defined in *18 U.S.C. § 1962(a)*. By spending such income (injuries through these RICO racketeering activities), the ***enterprise***, *Defendant the Barrows Firm*, also provided the facility, paid office, equipment, telecommunication cost and paychecks to support all the expense requirement to aid and abet these RICO racketeering activities conducted by the persons. Using such income, *Defendant*

*Leslie Starr Barrows* and *Defendant Samantha Ybarra* were paid by *Defendant the Barrows Firm* to operate these RICO racketeering activities.

170.     Plaintiff alleges that, through these RICO racketeering activities, *Defendant Leslie Starr Barrows* managed to conduct and participate directly or indirectly, in the conduct of *Defendant the Barrows Firm*'s affairs. These RICO racketeering activities constitute a violation as defined in *18 U.S.C. § 1962(c)*. *Defendant Leslie Starr Barrows* is actual operating and managing the enterprise, Defendant *the Barrows Firm*. By spending such income (injuries through these RICO racketeering activities), the ***enterprise***, *Defendant the Barrows Firm*, also provided the facility, paid office, equipment, telecommunication cost and paychecks to support all the expense requirement to aid and abet these RICO racketeering activities conducted by the persons. Using such income, *Defendant Leslie Starr Barrows* and *Defendant Samantha Ybarra* were paid by *Defendant the Barrows Firm* to operate these RICO racketeering activities.

171.     Plaintiff alleges that, the emails sent on August 5th, 2022, in which *Defendant Leslie Starr Barrows*, the conspirator, solicited other members of the State Bar of Texas to assist her in carrying out violations of *18 U.S.C. 1341, 18 U.S.C. 1343*, and *18 U.S.C. § 664*. These emails constituted one act of *18 U.S.C. § 1962(d)* and *one act of 18 U.S.C. 1349*. In the emails, Defendant Leslie Starr Barrows emphasized that, as members of the State Bar of Texas with a shared financial interest ('for us to obtain our attorney's fee'), they should act accordingly. Other members of the State Bar of Texas, *William Albert Pigg, Samantha Ybarra, Luis Jesus Marin, Daniel Eulalio Martinez, Rachel Ann Craig*, as well *as the State Bar of Texas* itself, as persons, conspirators, after reading her emails during the case or during the grievance complaint investigation, subsequently agreed to participate in the conspiracy. Plaintiff alleges that, *William Albert Pigg, Samantha Ybarra, Luis Jesus Marin, Daniel Eulalio Martinez*, and *Rachel Ann Craig* played crucial roles as conspirators, maintaining the open-ended continuity of these RICO racketeering activities.

172.     The grievance complaint against *Defendant Leslie Starr Barrows* was dismissed, which served as an ***approval, consent, and endorsement*** of its members' past and future racketeering activities, constitutes one act of *18 U.S.C. § 1962(d).* To obtain fees for itself, *the State Bar of Texas* continues to grant a license to *Defendant Leslie Starr Barrows*, enabling *Defendant Leslie Starr Barrows* to continue these RICO racketeering activities against other victims. Plaintiff alleges that, *the*

*State Bar of Texas* played a crucial role as one of the conspirators, maintaining the *open-ended continuity* of these RICO racketeering activities.

173.     The grievance complaint against *Defendant William Albert Pigg* was dismissed, which served as an ***approval, consent, and endorsement*** of its members' past and future racketeering activities, constitutes one act of *18 U.S.C. § 1962(d).* To obtain fees for itself, *the State Bar of Texas* continues to grant a license to *Defendant William Albert Pigg*, enabling *Defendant William Albert Pigg* to continue these RICO racketeering activities against other victims. Plaintiff alleges that, *the State Bar of Texas* played a crucial role as one of the conspirators, maintaining the *open-ended continuity* of these RICO racketeering activities.

174.     The *Tarrant County Criminal District Attorney's Office refused* to investigate these RICO racketeering activities in January 2023. Plaintiff alleges that, *these attorneys* working in this office played a crucial role as RICO conspirators, maintaining the open-ended continuity of these RICO racketeering activities. The *unnamed identities of those* involved will be determined during discovery. These *unnamed attorneys* are alleged of abusing their discretion to cover up the white-collar crime committed by their colleagues, despite a clear conflict of interest related to their fellows in the same ***collective entity***. Plaintiff alleges that, these *unnamed attorneys* are RICO conspirators as defined by *18 U.S.C. § 1962(d).*

175.     As of today, there is ***no*** record of ***any*** disciplinary action taken against ***any*** of the conspirators involved in the RICO scheme mentioned in Plaintiff's case. This demonstrates that the State Bar of Texas has **established an extremely effective shield system under the guise of a self-regulated disciplinary system**, allowing these RICO racketeering activities **to remain covered up for decades and potentially indefinitely**.

176.     Plaintiff alleges that, the complaint alone with the complaint supplemented by undisputed facts evidenced in the record, have provided sufficient facts to support all these allegations herein above and below.

### Injuries

177.     Plaintiff alleges that, the direct injury from RICO racketeering activities is that Plaintiff lost $25,000 dollars from his interstate employment retirement fund, located in the State of Minnesota.

178.     Plaintiff alleges that, the direct injury from RICO racketeering activities is that Plaintiff is losing his access right to employment retirement fund, located in the State of Minnesota, from August 2022 until present.

179.     Plaintiff alleges that, the direct injury from RICO racketeering activities is that Plaintiff was sabotaged and retaliated by *William Albert Pigg* after attempting to expose these RICO racketeering activities. His abandonment resulted in unrecoverable attorney's fees paid by Plaintiff for the legal work efforts. The incurred loss amounts to approximately $50,000 to $100,000.

180.     Plaintiff alleges that, these unlawful RICO racketeering activities have caused Plaintiff many sleepless nights and significant emotional distress. Plaintiff also experienced endocrine and metabolic disorders due to emotional distress.

### Reliefs

181.     Plaintiff is entitled to receive vicarious liability relief, pursuant to *18 U.S.C. § 1962(a)* and *18 U.S.C. § 1964*. "With this in mind, we find no barrier to vicarious liability in this case as such liability has been found to be available under subsections (a) and (b) when the principal has **derived** some **benefit** from the agent's wrongful acts.Landry,901 F.2d at 425; Liquid Air Corp. v. Rogers,834 F.2d 1297, 1307 (7th Cir. 1987), cert. denied, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989)." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).

182.     Plaintiff alleges that, *Defendant Leslie Starr Barrows* and *Defendant the Barrows Firm*'s aided and abetted one another, *other Defendants* named, and *other Defendants* not named herein, in connection with committing the primary substantive contraventions of Federal law identified herein above and are therefore jointly and severally liable as principals pursuant to Title *18 U.S.C. § 2*.

183.     For the foregoing reasons,

184.     The Court should hold defendant persons and enterprises are vicariously and derivatively liable, pursuant to *18 U.S.C. § 1962* and *18 U.S.C. § 1964*.

185.     The Court should hold all defendant persons and enterprises herein above are jointly and severally liable, pursuant *18 U.S.C. § 2*.

186.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas to obtain income from all defendant persons herein and, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

187.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas to have additional financial transaction with all defendant persons herein and, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

188.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas to have further financial transaction with all defendant persons herein and, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

189.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas to have further employment relation with all defendant persons herein and, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

190.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas to have further employment relation with all defendant persons herein and, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

191.     The Court should issue a preliminary and permanent injunction enjoining the Tarrant County to have further employment relation with all defendant persons herein and, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

192.     The Court should issue a preliminary and permanent injunction dissolving *the Barrows Firm*, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

193.     The Court should issue a permanent injunction dissolving the Office of the Chief Disciplinary Counsel, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

194.     The Court should issue a permanent injunction dissolving the State Bar of Texas, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

195.     The Court should issue a preliminary and permanent declaration clarifying the precise bounds of the law that,

a.  The Texas family courts should immediately cease and desist from issuing any unlawful orders including but not limited to,

b.  compelling the ***prepayment*** of attorney fees.

c.  compelling ***interlocutory*** QDRO order.

d.  compelling the ***payments*** of attorneys' fees.

196.    The Court should issue a preliminary and permanent injunction compelling the State Bar of Texas to initiate a statewide through audit of the family law courts records in the last 10 years, to identify all the victims who have been unlawfully ordered to pay attorney's fees without knowing their right being violated, to inform every one of them and to reimburse their loss, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

197.    The Court should issue a preliminary and permanent injunction enjoining the members of the State Bar of Texas from accepting payment of attorney's fees based on family court orders until the full audit has been completed and all prior damages have been accounted and recovered, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d) and Fed. R. Civ. P. 65(d).

198.    The Court should issue a preliminary and permanent injunction compelling the State of Texas to initiate a statewide through criminal investigation of these RICO racketeering activities in the last 10 years, to identify all the victims who have been unlawfully ordered to pay attorney's fees without knowing their being damaged, to inform every one of them and to seek justice is done, pursuant to *18 U.S.C. § 1964* and Fed. R. Civ. P. 65(d).

199.    The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $200,000, pursuant to *18 U.S.C. § 1964*.

200.    The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $1,000,000, pursuant to *18 U.S.C. § 1964*.

201.    The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $1,000,000, pursuant to *18 U.S.C. § 1964*.

202.    The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, *18 U.S.C. § 1964* and Fed. R. Civ. P. 54.

203.    The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, *18 U.S.C. § 1964* and Fed. R. Civ. P. 54.

204.    The Court should reward any and all other such relief that the Court deems just and proper.

**Second Claim for Relief**
***AntiTrust***
***The State Bar of Texas***
***15 U.S.C. § 2 Sherman Act***
***15 U.S.C. § 15 Damage relief***
***15 U.S.C. § 26 Injunctive relief***
***Declaratory Relief***
***Injuction Relief***
***Compensatory, Punitive and Treble Damages***

205.    Parties:

- Defendant, Luis Jesus Marin, member of State Bar of Texas, Bar Card Number: 24108702, being sued in official capacity and individual capacity.
- Defendant, Daniel Eulalio Martinez, member of State Bar of Texas, Bar Card Number: 24120994, being sued in official capacity and individual capacity.
- Defendant, Rachel Ann Craig, member of State Bar of Texas, Bar Card Number: 24090049, being sued in official capacity and individual capacity.
- The State Bar of Texas.
- Defendant, Leslie Starr Barrows, member of State Bar of Texas, Bar Card Number: 24048343. Staff of the Barrows Firm, being sued in individual capacity.
- Samantha Ybarra, Defendant, member of State Bar of Texas, Bar Card Number: 24104627. Staff of the Barrows Firm, being sued in individual capacity.
- Defendant, William Albert Pigg, member of State Bar of Texas, Bar Card Number: 24057009, being sued in individual capacity.
- Defendant, Lori L. DeAngelis, member of State Bar of Texas, Bar Card Number: 05624250, being sued in individual capacity.

206.    Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

207.    Plaintiff refers to every paragraph herein as Plaintiff's allegation.

208.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

209.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

210.     Plaintiff alleges that, the State Bar of Texas is the ***one and only*** organization in Texas that selling membership licensing fee which allows individual lawyers to practice law in the Texas market. With hybrid functions embedded, the State Bar of Texas is organized as a private profit company with its principal place of operation in Austin, Texas.

211.     Plaintiff alleges that, the State Bar of Texas primarily generates its business income from two sources: the sale of membership licensing fees and the sale of mandatory Continuing Legal Education (CLE) training to its members.

212.     Whenever this complaint refers to any act of the State Bar of Texas, it means that the State Bar of Texas engaged in the act through its members who were practicing law using the licenses sold by the State Bar of Texas.

213.     Whenever this complaint refers to the terms "unlawful" and "transgress the boundaries of the law" in this claim, it is referring to actions or behaviors that are not permitted by the laws mentioned in Section STANDARD OF REVIEW.  These terms "unlawful" and "transgress the boundaries of the law" are used as a conclusion of law if the defendants fail to dispute the STANDARD OF REVIEW.

**Trade and Commerce：**

214.     Plaintiff alleges that, the State Bar of Texas sells licenses and training credits through Continuing Legal Education (CLE) classes. According to the latest financial report, the State Bar of Texas possesses $52 million in assets. In the previous year, it generated $25 million in revenue from membership licensing fees and $22 million from CLE training, which is categorized as a service charge. This results in a total revenue of $47 million out of its $50 million overall revenue.

215.     Plaintiff alleges that, the members of the State Bar of Texas, utilizing the licenses they bought from the organization, offer legal services during their practice. The State Bar of Texas holds exclusive authority as the provider of these licenses, and its members are the sole legal service providers in the market. Members of the State Bar of Texas obtain legal service fees from consumers through various stages, including entering into mutually agreed commercial business service contracts, providing services, invoicing consumers, and collecting fees, similar to any other professional service in Texas.

216.     Plaintiff alleges that, members of the State Bar of Texas offer services to out-of-state consumers in order to initiate legal actions under Texas jurisdiction. Additionally, their members' business often requests that the court abstract or seize property and assets situated outside of Texas. The State Bar of Texas itself accepts out-of-state membership. The State Bar of Texas affects interstate trade and commerce.

## Argument In Monopoly

217.     Plaintiff alleges that, the license sold by the State Bar of Texas confers exclusive authority upon its members to occupy positions within two government branches: judges and the Criminal District Attorney Office. Without a membership and license, no one can hold the role of judge or prosecutor in the Criminal District Attorney Office. This also enables the State Bar of Texas to maintain a natural monopoly on the provision of legal services to the State government agencies funded by taxpayers.

218.     Plaintiff alleges that, these requirements, coupled with the State Bar of Texas' closed-door, secretive, self-regulated grievance system, grant members of the State Bar of Texas the exclusive benefit of being assisted by their fellow members in dominating absolute favorable commercial business interests over consumers.

219.     Plaintiff alleges that, for the past several decades and continuing up to the date of this complaint, the State Bar of Texas and its conspirators have engaged in an ongoing collaboration and conspiracy to enforce compulsory practices to collect legal service fees. Plaintiff alleges that these compulsory practices are unlawful. These practices and other allegations herein above and below are considered the essential substantive violation of Federal law *15 U.S.C. §2.*

220.     Plaintiff alleges that, the ongoing monopoly of the State Bar of Texas is likely to persist unless the requested relief is granted. The State Bar of Texas holds a natural monopoly due to its professional service position and exclusive expertise in interpreting Texas laws. Plaintiff alleges that, this natural monopoly has been abused to transgress the bounds of laws in favor of the personal interests of the members of the State Bar of Texas, it poses a significant threat to the public interest of Texas. Regular consumers of legal services in Texas lack the expertise to overcome the barriers of legal knowledge, especially when they need to bear the financial burden of legal engagement while the opposing party is financially supported for carrying out acts against their consumers. Plaintiff alleges that these acts are unlawful.

221.     Plaintiff alleges that, the collaboration and conspiracy involve utilizing various family court orders, to compel advanced payment, to secure business income without consent or solicitation of consumers and their service providers. These actions are perpetrated by multiple conspirators, all of whom are members of the State Bar of Texas. Regular legal service consumers in Texas, such as Plaintiff, are forced to comply with these unlawful court orders either out of fear or due to a lack of knowledge regarding legal boundaries. Meanwhile, their legal service providers knowingly and intentionally refrain from informing consumers about the limits imposed by the law.

222.     Plaintiff alleges that, these consumers were not informed that when they appeared in the family court to seek jurisdiction about matters of parent-child relationships or dissolution of marriage, they were vulnerable to being coerced into accepting modifications to their previously agreed-upon business agreements without any alternative options. The conspirators, who hold a monopolized legal expertise advantage over their consumers, were aware of this fact. They consistently consented to these modifications in favor of their own interests, which contradicted the interests of the consumers. These consumers had no choice but to accept these modifications, as contesting the orders would result in additional legal fees. It has been consistently a lose-lose situation for the consumers regardless of their choice.

223.     Plaintiff alleges that, unlawfully ordering the consumers to pay both parties legal fees, did not happen in same frequency when the litigants themselves were lawyers who got involved in their own family court case, which implies that these conspirators, members of the State Bar of Texas, knew exactly where the bounds of the law are.

224.     Plaintiff alleges that, the members of the State Bar of Texas, who represented both parties in the family court, were incentivized by these court orders, neither of them appealed the order. These fees did not meet the definition of "reasonable attorney's fees" in accordance with Federal and State law, known as the lodestar method.

225.     Taking Plaintiff's own case as a reference, in the initial hearing for a Temporary Protection Order, there was no discussion about attorney's fees or any mention of evidence relating to billable hours and rates for either party's attorney. At the end of the hearing, Plaintiff was ordered to pay $10,000 from his account, with each attorney receiving $5,000. This was the sole award at that hearing. No evidence was submitted to the court that would allow for computation under the lodestar method. Without applying the lodestar method, these fees do not meet the criteria for 'reasonable attorney's fees'. Essentially, Plaintiff was ordered to make an advance payment to both parties' attorneys based on the family court judge's speculation. Not one single member of the State Bar of Texas appealed against that order.

226.     At the second hearing, once it was clear that Plaintiff had no more funds available in his bank account, he was ordered to pay an interim attorney's fee of $50,000 from his 401K via a QDRO (Qualified Domestic Relations Order). According to Texas Family Code, a QDRO must be a *final* order in a *judgment* after trial; it cannot be an *interlocutory* order. Even though Leslie Starr Barrows, the attorney for the opposing party, did submit a bill of charges that included hours from another criminal case (also double-dipped hours from the first family court hearing), fraudulently claiming these fees (totaling approximately $19,000) were for this family case, Plaintiff's own attorney, William Albert Pigg, never submitted any billable hours or rates or any pleading into the hearing. Plaintiff was ordered to pay *each* attorney $25,000. Without the application of the lodestar method, these fees did not meet the criteria for 'reasonable attorney's fees'. Essentially, Plaintiff was repeatedly ordered to make an advance payment to both parties' attorneys based on the family court judge's speculation. Not one single member of the State Bar of Texas appealed against that order.

227.     Defendant Leslie Starr Barrows is a close friend of Defendant Lori L. DeAngelis, a long-time political contributor. The Plaintiff was ordered by Defendant Lori L. DeAngelis to pay out $60,000 within the first six months. These orders rapidly drained the Plaintiff's financial capacity, which has affected the outcome of the court proceedings. This suggests that the member of the State

Bar of Texas possesses the devastating power under monopolization to guarantee a specific court result by utilizing fee awards.

228.     Every piece of solid documentary evidence was submitted to the State Bar of Texas for these two grievances. Both were dismissed. Not one member of the State Bar of Texas in the Office of Chief Disciplinary Counsel concluded that these alleged unlawful acts as a problem. Plaintiff alleges that, the Office of Chief Disciplinary Counsel knew about these acts for decades based on the evidence of a prior grievance complaint. They have concealed these acts for decades.

229.     Plaintiff alleges that the State Bar of Texas knowingly allows its members, who serve as family court judges, to provide advance payments to other members who practice family law in court, resulting in mutual benefits for themselves through a revolving door method.

230.     Plaintiff alleges that, members of the State Bar of Texas have a longstanding and widespread practice of receiving these fees in their own interest. None of them have ever chosen to uphold the law and appealed these court orders on behalf of their consumers, because they themselves are the sole beneficiaries of these allegedly unlawful court orders for decades.

231.     Plaintiff alleges that, in furtherance of this collaboration and conspiracy, utilizing its monopoly power, the State Bar of Texas and its conspirator have, among other things, collaborated and conspired to:

       a.  As part of a conspiracy, the conspirators transgress the boundaries of the law by using court orders to collect/secure payment without pleading, often divided among them.

       b.  As part of a conspiracy, the conspirators transgress the boundaries of the law by using court orders to collect/secure advance payment without pleading, often divided among them.

       c.  As part of a conspiracy, the conspirators transgress the boundaries of the law by using false statements and affidavits to commit perjury and aggravated perjury to collect additional business revenue.

       d.  As part of a conspiracy, the conspirators transgress the boundaries of the law by utilizing fraudulent court QDRO (Qualified Domestic Relations Order) orders to

circumvent *29 U.S.C. § 1056*. Additionally, they unlawfully and willfully engage in mail fraud and wire fraud to abstract assets from the employee pension benefit plan (nationwide) for their personal use.

e. As part of a conspiracy, the conspirators transgress the boundaries of the law by fabricating causes (such as child support or spousal support) for the true intention of obtaining/collecting/securing legal service fees.

f. As part of a conspiracy, the State Bar of Texas implemented a "***self-regulated***", "***an independent grievance system***" solely for the benefit of its own members, and used this system as a tool to shield the RICO scheme described herein above and below, deprive consumers of rights protected by the constitution.

232.     Plaintiff alleges that, court records show, there were occurrences of similar collaboration and conspiracy acts described herein above and below in the Texas family court against other victims, at least within the last 9 years. These acts also fall within the statute of limitations for offenses under the *Sherman Act*.

233.     Plaintiff alleges that, the State Bar of Texas financially benefits from the actions of its conspirators described herein above and below. The denial of plaintiff's two grievances from the Office of Chief Disciplinary Counsel and the continued selling of licenses to bad actors by the State Bar of Texas prove that it has lost the ability to distinguish between truth and falsehood, thereby further substantiating its role as a RICO conspirator.

234.     Plaintiff alleges that, the State Bar of Texas was expected to provide legal services to the public, utilizing its natural monopoly and sole capability to interpret the bounds of the law. However, Plaintiff's personal experience, among others, has highlighted that when the State Bar of Texas and its conspirators were exposed by consumers, other conspirators within the Office of Chief Disciplinary Counsel acted to conceal the truth. They collaborated with conspirators within the Criminal District Attorney's office to extend criminal immunity, creating multiple shields to protect its members.

235.     Plaintiff alleges that, attempting to rectify such unlawful acts performed by the members of State Bar of Texas in the civil court, through self-advocacy by consumers, may generate more legal service fees for members of the State Bar of Texas. The State Bar of Texas has a clear financial motivation to ensure that neither its members in the Chief Disciplinary Counsel nor in the Criminal

District Attorney's office efficiently take their roles to assist Texas legal service consumers in halting such crimes.

236.     Plaintiff alleges that, collaboratively, members of the State Bar of Texas possess monopoly power to redefine what is deemed unlawful as lawful. Section STANDARD OF REVIEW has interpreted where the precise bounds of the law lie related to Plaintiff's family court case. Including, but not limited to, the defendants named herein, none of the State Bar of Texas members involved in Plaintiff's family court case and grievance, had upheld the law within bounds of the law as of today. Everyone either remained silent upon learning about the crime or intentionally denied it to cover up the criminal activities. When Plaintiff managed to bring this case to the Federal court and clarify the bounds of the law, the rest of the consumers could not do so. As a result, the State Bar of Texas's monopoly law practicing function has evolved into a menace to the public.

237.     Evidentially, the State Bar of Texas openly admitted on its website, described it as one of the membership benefits that "Texas lawyers have the *ability* to practice law in a *self-regulated* profession with *an independent grievance system*." The State Bar of Texas used the "*self-regulated*", "*an independent grievance system*" as its membership benefits. If the consumer is the party who has the sole right to initiate grievance complaint against its member and the system is unbiased, the system would not have called itself benefiting members. A complaint is a zero-sum game that does not generate any inherent benefits. The accused either lost or gained nothing. Only a biased system can provide benefits to the accused. Plaintiff alleges that, the State Bar of Texas claimed that the accused (its member) benefits from the 'independent grievance system,' therefor the consumer is no doubt the one losing out in this system. The State Bar of Texas had admitted it.

238.     Plaintiff alleges that, Plaintiff's case has highlighted that legal service consumers have no viable means of obtaining a remedy for their consumer rights being violated, without incurring additional financial burdens.

239.     Plaintiff alleges that, Plaintiff suffered a significant financial loss when such "*an independent grievance system*" responded to shield the crimes of its members, which was offered as one of the benefits of purchasing membership from the State Bar of Texas.

240.     Plaintiff alleges that, "*an independent grievance system*" was implemented by the State Bar of Texas under its monopoly power, which was used as a shield to help its members unlawfully collect fees from consumers. Plaintiff submitted evidence of two attorneys' emails. In one email, an

attorney stated that the court order was not truthful, while in the other email, another attorney solicited collaboration by saying, "*we have to say*" and "*no other way around it*." Even after these indisputable pieces of evidence were presented, the Office of Chief Disciplinary Counsel still made bold decisions and closed both grievance cases, stating "No Just Cause." The outcome of these two grievance cases is the strongest proof showing "*an independent grievance system*" helped cover up the RICO racketeering activities committed by its members. Consumers came to seek legal service; they did not expect to see bandits dressed in suits.

241.    Plaintiff alleges that there is no worse monopoly than the monopoly of legal service, thus preventing justice from being served in their case. The State Bar of Texas is a natural monopoly and functions as such for its own interests.

242.    Section 2 of the Sherman Act was specifically crafted to address all these issues and safeguard the interests of consumers.

243.    Plaintiff alleges that, the complaint alone with the complaint supplemented by undisputed facts evidenced in the record, have provided sufficient facts to support all these allegations herein above and below.

## Effects and Injuries

244.    Plaintiff alleges that, the direct injury from the State Bar of Texas and other conspirator is that Plaintiff lost $60,000 dollars, which was ordered by the State Bar of Texas and other conspirator without solicitation and in violation of legal boundaries. The State Bar of Texas and other conspirators did not provide the expected legal service to uphold the law within its bounds. Plaintiff paid all out of fear and with no knowledge of the bounds of the laws were transgressed.

245.    Plaintiff alleges that, the direct injury from the State Bar of Texas and other conspirators is that Plaintiff incurred a loss of approximately $50,000 to $100,000 due to legal service payment for legal services from the State Bar of Texas and other conspirator who failed to uphold the law. Plaintiff paid all with no knowledge of the bounds of the laws were transgressed.

246.    Plaintiff alleges that, the direct injury from the State Bar of Texas and other conspirator is that Plaintiff lost $25,000 dollars, capital growth loss and other tax loss in his 401K, which was ordered by the State Bar of Texas and other conspirator without solicitation and in violation of legal

boundaries. The State Bar of Texas and other conspirators did not provide the expected legal service to uphold the law within its bounds. Plaintiff paid all out of fear and with no knowledge of the bounds of the laws were transgressed.

247.     Plaintiff alleges that, the direct injury from the State Bar of Texas and other conspirators is that Plaintiff is losing his access right to employment retirement fund, located in the State of Minnesota, from August 2022 until present, for legal services from the State Bar of Texas and other conspirator who failed to uphold the law.

248.     Plaintiff alleges that, Plaintiff has been consistently retaliated for attempting to restore the bounds of the laws about the service fees subject matter. The State Bar of Texas and other conspirators have been continuously depriving off Plaintiff's legal rights using the court as a vehicle.

249.     Plaintiff alleges that, these violations of Sherman Act unlawful activities by the State Bar of Texas and other conspirators have caused Plaintiff many sleepless nights and significant emotional distress. Plaintiff also experienced endocrine and metabolic disorders due to emotional distress.

250.     Plaintiff alleges that, there are other victims statewide who have received injuries similar to those Plaintiff sustained.

251.     Plaintiff is entitled to receive declaratory judgments and injunctive reliefs, pursuant to *28 U.S.C. §§ 2201-2202* and Rule 57 of FRCP.

252.     Plaintiff is entitled to receive injunctive reliefs, pursuant to *15 U.S.C. § 26*.

253.     Plaintiff is entitled to receive damage reliefs, pursuant to *15 U.S.C. § 15(a)*.

### Reliefs

254.     For the foregoing reasons,

255.     The Court should issue a declaratory judgment, affirming that these acts described herein are unlawful, pursuant to *28 U.S.C. §§ 2201-2202* and Rule 57 of FRCP.

256.     The Court should issue a preliminary and permanent injunction, ordering the State Bar of Texas to mandate a policy, which needs disclosing the legal fees they rewarded/received to/from each

other in the court records as public records for the public interest, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

257.     The Court should issue a preliminary and permanent injunction, ordering the State Bar of Texas to initiate a through misconduct investigation against all conspirators related to plaintiff's case, bring the report to the court, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

258.     The Court should issue a preliminary and permanent injunction, enjoining the State Bar of Texas and other conspirators from engaging in further violation of *15 U.S.C. § 2*, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

259.     The Court should issue a preliminary and permanent injunction, enjoining the State Bar of Texas and other conspirators, barring them from voluntarily advocating for another member's commercial consumer business using the authority granted under their license, unless there is a presented dispute between the service provider and consumer, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

260.     The Court should issue a preliminary and permanent injunction, dissolving the Office of the Chief Disciplinary Counsel, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

261.     The Court should issue a preliminary and permanent injunction, enjoining the members of the State Bar of Texas continuing its self-regulated discipline procedure, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

262.     The Court should issue a permanent injunction dissolving the State Bar of Texas, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

263.     The Court should issue a preliminary and permanent injunction, spinning off the state agency function of the State Bar of Texas into a separate entity, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

264.     The Court should issue a preliminary and permanent injunction, spinning off the professional service function of the State Bar of Texas into three entities which improves natural-monopoly situation, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

265.     The Court should issue a preliminary and permanent injunction, spinning off the grievance system the State Bar of Texas into a separate entity, which improves its transparency, and eliminates covering up crime possibilities, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

266.     26.The Court should issue a preliminary and permanent injunction, permitting any organization who meets certain criteria, can issue lawyer license, reintroduce free market principle, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

267.     The Court should issue a preliminary and permanent injunction compelling the State Bar of Texas to initiate a statewide through audit of the family law courts records in the last 10 years, to identify all the victims who have been unlawfully ordered to pay attorney's fees without knowing the truth, to inform every one of them and to reimburse their loss, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

268.     The Court should issue a preliminary and permanent injunction enjoining the members of the State Bar of Texas from accepting payment of attorney's fees based on family court orders until the full audit has been completed and the prior damages have been recovered, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

269.     The Court should issue a preliminary and permanent injunction compelling the State of Texas to initiate a statewide through criminal investigation of these RICO racketeering activities in the last 10 years, to identify all the victims who have been unlawfully ordered to pay attorney's fees without knowing the truth, to inform every one of them and to seek justice is done, pursuant to *15 U.S.C. § 26* and Fed. R. Civ. P. 65(d).

270.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $200,000, pursuant to *15 U.S.C. § 15(a)*.

271.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $1,000,000, pursuant to *15 U.S.C. § 15(a)*.

272.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $1,000,000, pursuant to *15 U.S.C. § 15(a)*.

273.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, *15 U.S.C. § 15(a)* and Fed. R. Civ. P. 54.

274.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, *15 U.S.C. § 15(a)* and Fed. R. Civ. P. 54.

275.     The Court should reward any and all other such relief that the Court deems just and proper.

**Third Claim for Relief**
***Lori L. DeAngelis,***
***Both Official and Individual Capacity***
***U.S. Const. amend. XIV***
***42 U.S.C. §§ 1983***
***Injunction Relief***
***Compensatory, punitive and treble damages***

276.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

277.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

278.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

279.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

280.     Defendant Lori L. DeAngelis, member of the State Bar of Texas, Bar Card Number: 05624250, being sued in both official and individual capacity. Defendant Lori L. DeAngelis's official capacity is being sued under the ultra vires doctrine, for her ultra vires acts. Defendant Lori L. DeAngelis's individual capacity is being sued for her alleged violations of the Fourteenth Amendment provisions of the Constitution under *42 U.S.C. § 1983*, and violations of the Texas Constitution, Art. 1 §§ 13 and 19.

281.     On November 8th and 9th, 2021, Defendant Lori L. DeAngelis ordered Plaintiff to ***prepay both*** parties' ***attorneys' fees***, which came to a total of $10,000. Plaintiffs allege that, this order was

unlawful and Defendant Lori L. DeAngelis lacked authority and jurisdiction, pursuant to the "STANDARD OF REVIEW."

282.     On April 13th, 2022, following the hearing on the "motion for interim attorney's fees," Defendant Lori L. DeAngelis ordered Plaintiff to prepay Defendant Leslie Starr Barrows $25,000 from his 401K and to prepay Defendant William Albert Pigg $25,000 from his 401K. Plaintiffs allege that, this order was unlawful and Defendant Lori L. DeAngelis' acts lacked authority and jurisdiction, pursuant to the "STANDARD OF REVIEW."

283.     Plaintiffs allege that, Defendants Lori L. DeAngelis' ultra vires acts, including the context in her two orders, which lacked authority, under her official capacity, violated the plaintiff's Equal Protection and Due Process under the Fourteenth Amendment. Her decision also violated the Texas Constitution, Art. 1 §§ 13 and 19.

284.     Plaintiffs allege that, Defendants Lori L. DeAngelis' other acts, including but not limited to issuing the 2 unlawful orders, and her engaging in RICO racketeering activities, in her individual capacity, deprived Plaintiff $60,000 of his property to pay her fellow members of the State Bar of Texas directly, which was in clear absence of all jurisdictions, violated the plaintiff's Equal Protection and Due Process under the Fourteenth Amendment. Her decision also violated the Texas Constitution, Art. 1 §§ 13 and 19.

285.      Plaintiffs allege that, Defendant Lori L. DeAngelis' acts herein, in her individual capacity, violated *42 USC § 1983*, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that …" "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

286.     Plaintiff alleges that, the direct injury from Defendant's acts is that Plaintiff is losing his access right to the employment retirement fund, located in the State of Minnesota, from August 2022 until the present. Access rights to his employment retirement fund are also protected under the "Liberty" clause of Fourteenth Amendment.

287.     Plaintiff alleges that, he suffered an intangible injury due to the anxiety introduced by Defendant Lori L. DeAngelis's acts.

288.     Plaintiff alleges that, he suffered other injuries herein by Defendant Lori L. DeAngelis's acts.

289.     For the foregoing reasons,

290.     The Court should issue a preliminary and permanent injunction enjoining the Tarrant County, Texas, represented by Defendant Lori L. DeAngelis in her official capacity, from continuing to engage in ultra vires actions beyond its legal authority, including depriving Plaintiff of his Equal Protection and Due Process constitutional rights by depriving Plaintiff of his property, pursuant to Fed. R. Civ. P. 65(d).

291.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $100,000, pursuant to *42 U.S.C. § 1983*.

292.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

293.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

294.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

295.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

296.     The Court should reward any and all other such relief that the Court deems just and proper.

**Fourth Claim for Relief**
***Leslie Starr Barrows,***
***U.S. Const. amend. XIV***
***42 U.S.C. §§ 1983***
***Compensatory, punitive and treble damages***

297.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

298.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

299.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

300.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

301.     Defendant Leslie Starr Barrows, member of State Bar of Texas, Bar Card Number: 24048343, is being sued for her alleged violations of the Fourteenth Amendment provisions of the Constitution under 42 U.S.C. § 1983, and violations of the Texas Constitution, Art. 1 §§ 13 and 19.

302.     Plaintiffs allege that, Defendants Leslie Starr Barrows' other acts herein, including but not limited to her engaging in RICO racketeering activities, under her individual capacity, deprived Plaintiff $25,000 of his property to pay herself, violated the plaintiff's Liberty, Equal Protection and Due Process under the Fourteenth Amendment. Her acts also violated the Texas Constitution, Art. 1 §§ 13 and 19.

303.      Plaintiffs allege that, Defendant Leslie Starr Barrows' acts herein, under her individual capacity, violated *42 USC § 1983*, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that …" "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

304.     Plaintiff alleges that, the direct injury from Defendant's acts is that Plaintiff is losing his access right to the employment retirement fund, located in the State of Minnesota, from August 2022 until the present. Access rights to his employment retirement fund are also protected under the "Liberty" clause of the Fourteenth Amendment.

305.     Plaintiff alleges that, he suffered an intangible injury due to the anxiety introduced by Defendant Leslie Starr Barrows' acts.

306.     Plaintiff alleges that, he suffered other injuries herein by Defendant Leslie Starr Barrows' acts.

307.     For the foregoing reasons,

308.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $100,000, pursuant to *42 U.S.C. § 1983*.

309.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

310.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

311.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

312.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

313.     The Court should reward any and all other such relief that the Court deems just and proper.

**Fifth Claim for Relief**
***William Albert Pigg,***
***U.S. Const. amend. XIV***
***42 U.S.C. §§ 1983***
***Compensatory, punitive and treble damages***

314.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

315.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

316.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

317.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

318.     Defendant William Albert Pigg, member of State Bar of Texas, Bar Card Number: 24057009, is being sued for his alleged violations of the Fourteenth Amendment provisions of the Constitution under 42 U.S.C. § 1983, and violations of the Texas Constitution, Art. 1 §§ 13 and 19.

319.     Plaintiffs allege that, Defendants William Albert Pigg's other acts herein, including but not limited to his engaging in RICO racketeering activities, under his individual capacity, deprived Plaintiff $25,000 of his property to pay himself, violated the plaintiff's Liberty, Equal Protection and Due Process under the Fourteenth Amendment. His acts also violated the Texas Constitution, Art. 1 §§ 13 and 19.

320.     Plaintiffs allege that, Defendants William Albert Pigg's has been dishonest, intentionally concealed the court activities to Plaintiff, under his individual capacity, deprived Plaintiff of Equal Protection and Due Process under the Fourteenth Amendment.

321.      Plaintiffs allege that, Defendant William Albert Pigg's acts herein, under his individual capacity, violated *42 USC § 1983*, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that …" "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

322.     Plaintiff alleges that, the direct injury from Defendant's acts is that Plaintiff is losing his access right to the employment retirement fund, located in the State of Minnesota, from August 2022 until the present. Access rights to his employment retirement fund are also protected under the "Liberty" clause of the Fourteenth Amendment.

323.     Plaintiff alleges that, the direct injury from Defendant's acts is that Plaintiff was sabotaged and retaliated by Defendant William Albert Pigg after attempting to expose RICO racketeering activities. His abandonment resulted in unrecoverable attorney's fees paid by Plaintiff for the legal work efforts. Defendant William Albert Pigg has be dishonest with his client with multiple

court activities concealment acts, which affected the outcome of the proceeding. The incurred loss amounts to approximately $50,000 to $100,000.

324.     Plaintiff alleges that, he suffered an intangible injury due to the anxiety introduced by Defendant William Albert Pigg's acts.

325.     Plaintiff alleges that, he suffered other injuries herein by Defendant William Albert Pigg's acts.

326.     For the foregoing reasons,

327.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $100,000, pursuant to *42 U.S.C. § 1983*.

328.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

329.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

330.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

331.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

332.     The Court should reward any and all other such relief that the Court deems just and proper.

***Luis Jesus Marin,***
***Both Official and Individual Capacity***
***U.S. Const. amend. XIV***
***42 U.S.C. §§ 1983***
***Injunction Relief***
***Compensatory, punitive and treble damages***

333.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

334.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

335.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

336.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

337.     Defendant Luis Jesus Marin, member of State Bar of Texas, Bar Card Number: 24108702, being sued in both official and individual capacity. Defendant Luis Jesus Marin's official capacity is being sued under ultra vires doctrine, for his ultra vires acts. Defendant Luis Jesus Marin's individual capacity is being sued for his alleged violations of the Fourteenth Amendment provisions of the Constitution under 42 U.S.C. § 1983, and violations of the Texas Constitution, Art. 1 §§ 13 and 19.

338.     In October 2022, Plaintiff filed a grievance case, 202206760, against Defendant Leslie Starr Barrows with the Office of the Chief Disciplinary Counsel. Plaintiff provided complete, indisputable evidence to the Office of the Chief Disciplinary Counsel, including all the court reports, court orders, and emails. Despite the irrefutable hard evidence presenting the facts, Defendant Luis Jesus Marin, in both his official and individual capacities, dismissed the case, stating, "We have concluded that the conduct you described is not a violation of the disciplinary rules." This official statement letter issued by the State Bar of Texas serves as an official endorsement and consent for Defendant Leslie Starr Barrows' RICO racketeering activities. Defendant Luis Jesus Marin chose to support these RICO racketeering activities, concealing the criminal acts through his dismissal decision.

339.     Defendant Luis Jesus Marin should have read the letter in which Defendant Leslie Starr Barrows solicited her RICO racketeering conspiracy, stating, "***In order for us to obtain our attorney's fee, we must say the order is for spousal support…***" *and "**There is no way around it.**"* Defendant Luis Jesus Marin decided to accept the solicitation because "***our attorney's fee***" is a common interest of members of the State Bar of Texas. Despite the clear criminal evidence, Defendant Luis Jesus

Marin chose to involve himself in the concealment of these RICO racketeering activities, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d)*.

340.     The State Bar of Texas has filed a disciplinary petition in Collin County against Attorney General Ken Paxton for making "dishonest" statements. However, when Defendant Leslie Starr Barrows was alleged to have made all these false statements and engaged in fraudulent activities, the outcome became different. In one of the emails that Defendant Leslie Starr Barrows wrote, she clearly admitted that she had lied.

341.     Defendant Luis Jesus Marin was provided with clear and convincing documentary evidence by Plaintiff. Concealment of RICO racketeering activity is not part of his job responsibility, but Defendant Luis Jesus Marin still chose to, in his official capacity, lie through his teeth.

342.     Defendant Luis Jesus Marin's treatment of Plaintiff's grievance when compared to the treatment of grievance filed against Attorney General Ken Paxton was not equal. The decision has resulted in Plaintiff being discriminated against by other people who made allegations for making "dishonest" statements.

343.     Defendants Luis Jesus Marin violated the plaintiff's Equal Protection and Due Process rights under the Fourteenth Amendment. His acts herein also violated the Texas Constitution, Art. 1 §§ 13 and 19. Defendant Luis Jesus Marin, in his individual capacity, violated *42 USC § 1983*, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that …" "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

344.     Plaintiff alleges that, the direct injury from RICO racketeering activities is that Plaintiff is losing his access right to the employment retirement fund, located in the State of Minnesota, from August 2022 until the present. Access rights to his employment retirement fund are also protected under the "Liberty" clause of Fourteenth Amendment. Defendant Luis Jesus Marin's decision directly extended the deprivation period.

345.     Plaintiff alleges that, he suffered an intangible injury due to the anxiety introduced by Defendant Luis Jesus Marin's decision that caused the extension of his liberty deprivation period.

346.     For the foregoing reasons,

347.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas, represented by Defendant Luis Jesus Marin in his official capacity, from continuing to engage in ultra vires actions beyond its legal authority, including depriving Plaintiff of his Equal Protection and Due Process constitutional rights by refusing to consider his grievance, pursuant to Fed. R. Civ. P. 65(d).

348.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $100,000, pursuant to *42 U.S.C. § 1983*.

349.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

350.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

351.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

352.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

353.     The Court should reward any and all other such relief that the Court deems just and proper.

**Seventh Claim for Relief**
**_Daniel Eulalio Martinez,_**
**_Both Official and Individual Capacity_**
**_U.S. Const. amend. XIV_**
**_42 U.S.C. §§ 1983_**
**_Injunction Relief_**
**_Compensatory, punitive and treble damages_**

354.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

355.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

356.    Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

357.    Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

358.    Defendant Daniel Eulalio Martinez, member of State Bar of Texas, Bar Card Number: 24120994, being sued in both official and individual capacity. Defendant Daniel Eulalio Martinez's official capacity is being sued under ultra vires doctrine, for his ultra vires acts. Defendant Daniel Eulalio Martinez's individual capacity is being sued for his alleged violations of the Fourteenth Amendment provisions of the Constitution under 42 U.S.C. § 1983, and violations of the Texas Constitution, Art. 1 §§ 13 and 19.

359.    In January 2023, Plaintiff filed a grievance case, 202300469, against Defendant William Albert Pigg with the Office of the Chief Disciplinary Counsel. Defendant Daniel Eulalio Martinez, in both his official and individual capacities, dismissed the case, stating, "We have concluded that the conduct you described is not a violation of the disciplinary rules." This official statement letter issued by the State Bar of Texas serves as an official endorsement and consent for Defendant William Albert Pigg RICO racketeering activities. Defendant Daniel Eulalio Martinez chose to support these RICO racketeering activities, concealing the criminal acts through his dismissal decision, thereby becoming a RICO conspirator as defined by *18 U.S.C. § 1962(d).*

360.    The State Bar of Texas has filed a disciplinary petition in Collin County against Attorney General Ken Paxton for making "dishonest" statements. However, when Defendant William Albert Pigg was alleged to have made all these dishonest actions and engaged in fraudulent activities, the outcome became different.

361.    Defendant Daniel Eulalio Martinez was provided with clear and convincing documentary evidence by Plaintiff. Concealment of RICO racketeering activity is not part of his job responsibility, but Defendant Daniel Eulalio Martinez still chose to, in his official capacity, lie through his teeth.

362.    Defendant Daniel Eulalio Martinez's treatment of Plaintiff's grievance when compared to the treatment of grievance filed against Attorney General Ken Paxton was not equal. The decision has

resulted in Plaintiff being discriminated against by other people who made allegations for making "dishonest" statements.

363.     Defendants Daniel Eulalio Martinez violated the plaintiff's Equal Protection and Due Process rights under the Fourteenth Amendment. His acts herein also violated the Texas Constitution, Art. 1 §§ 13 and 19. Defendant Daniel Eulalio Martinez, in his individual capacity, violated *42 USC § 1983*, which states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that …" "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

364.     Plaintiff alleges that, the direct injury from RICO racketeering activities is that Plaintiff is losing his access right to the employment retirement fund, located in the State of Minnesota, from August 2022 until the present. Access rights to his employment retirement fund are also protected under the "Liberty" clause of Fourteenth Amendment. Defendant Daniel Eulalio Martinez's decision directly extended the deprivation period.

365.     Plaintiff alleges that, he suffered an intangible injury due to the anxiety introduced by Defendant Daniel Eulalio Martinez's decision that caused the extension of his liberty deprivation period.

366.     For the foregoing reasons,

367.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas, represented by Defendant Daniel Eulalio Martinez in his official capacity, from continuing to engage in ultra vires actions beyond its legal authority, including depriving Plaintiff of his Equal Protection and Due Process constitutional rights by refusing to consider his grievance, pursuant to Fed. R. Civ. P. 65(d).

368.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $100,000, pursuant to *42 U.S.C. § 1983*.

369.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

370.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

371.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

372.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

373.     The Court should reward any and all other such relief that the Court deems just and proper.

**Eighth Claim for Relief**
***Rachel Ann Craig,***
***Both Official and Individual Capacity***
***U.S. Const. amend. XIV***
***42 U.S.C. §§ 1983***
***Injuction Relief***
***Compensatory, punitive and treble damages***

374.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth herein.

375.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

376.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

377.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

378.     Defendant Rachel Ann Craig, member of State Bar of Texas, Bar Card Number: 24090049, being sued in both official and individual capacity. Defendant Rachel Ann Craig's official capacity is being sued under ultra vires doctrine, for her ultra vires acts. Defendant Rachel Ann Craig's individual capacity is being sued for her alleged violations of the Fourteenth Amendment provisions of the Constitution under *42 U.S.C. § 1983*, and violations of the Texas Constitution, Art. 1 §§ 13 and 19.

379.     On May 17 and 18, 2023, Defendant Rachel Ann Craig made two consecutive decisions to refuse to proceed with the grievance case against Defendant Leslie Starr Barrows and Defendant William Albert Pigg. She was fully aware of how these two Defendant s were engaged in RICO racketeering activities together. Defendant Rachel Ann Craig chose to support these RICO racketeering activities, thereby supporting her fellow members of the State Bar of Texas. Defendant Rachel Ann Craig should have read the letter in which Defendant Leslie Starr Barrows solicited her racketeering conspiracy, stating, "***In order for us to obtain our attorney's fee, we must say the order is for spousal support…", "There is no way around it.***" Defendant Rachel Ann Craig decided to accept the solicitation because "***our attorney's fee***" is a common interest of members of the State Bar of Texas. Defendant Rachel Ann Craig has formed a pattern of being a RICO conspirator as defined by *18 U.S.C. § 1962(d)*. She should have reviewed the QDRO related to Plaintiff's 401K, thereby her concealment act itself violated *18 U.S.C. § 1027*, concealment of facts in relation to documents required by the ERISA.

380.     The State Bar of Texas has filed a disciplinary petition in Collin County against Attorney General Ken Paxton for making "dishonest" statements. However, when Defendant Leslie Starr Barrows and Defendant William Albert Pigg were alleged to have made all these false statements and engaged in fraudulent activities, the outcome became different. In one of the emails that Defendant William Albert Pigg wrote, he clearly said that Defendant Leslie Starr Barrows lied. So, either both of them lied or one of them lied; it could not be that nobody lied.

381.     Defendant Rachel Ann Craig was provided with clear and convincing documentary evidence by Plaintiff. Concealment of RICO racketeering activity is not part of her job responsibility, but Defendant Rachel Ann Craig still chose to, in her official capacity, lie through her teeth.

382.     Defendant Rachel Ann Craig's treatment of Plaintiff's grievances when compared to the treatment of grievance filed against Attorney General Ken Paxton was not equal. The decisions have resulted in Plaintiff being discriminated against by other people who made allegations for making "dishonest" statements.

383.     Defendants Rachel Ann Craig violated the plaintiff's Equal Protection and Due Process rights under the Fourteenth Amendment. Her acts herein also violated the Texas Constitution, Art. 1 §§ 13 and 19. Defendant Rachel Ann Craig, in her individual capacity, violated *42 USC § 1983*, which

states that "every person...shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that …" "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails" Wyatt v. Cole, 504 U.S. 158 (1992).

384.     Plaintiff alleges that, the direct injury from RICO racketeering activities is that Plaintiff is losing his access right to the employment retirement fund, located in the State of Minnesota, from August 2022 until the present. Access rights to his employment retirement fund are also protected under the "Liberty" clause of Fourteenth Amendment. Defendant Rachel Ann Craig's decisions directly extended the deprivation period.

385.     Plaintiff alleges that, he suffered an intangible injury due to the anxiety introduced by Defendant Rachel Ann Craig's decisions that caused the extension of his liberty deprivation period.

386.     For the foregoing reasons,

387.     The Court should issue a preliminary and permanent injunction enjoining the State Bar of Texas, represented by Defendant Rachel Ann Craig in her official capacity, from continuing to engage in ultra vires actions beyond its legal authority, including depriving Plaintiff of his Equal Protection and Due Process constitutional rights by refusing to consider his grievances, pursuant to Fed. R. Civ. P. 65(d).

388.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $100,000, pursuant to *42 U.S.C. § 1983*.

389.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

390.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $300,000, pursuant to *42 U.S.C. § 1983*.

391.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

392.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, and Fed. R. Civ. P. 54.

393.     The Court should reward any and all other such relief that the Court deems just and proper.

**Nineth Claim for Relief**
***U.S Bank, person***
***18 U.S.C. § 664***
***18 U.S.C. § 1027***
***18 U.S.C. § 1341***
***18 U.S.C. § 1343***
***18 U.S.C. § 1349***
***18 U.S.C. § 1962***
***U.S. Const. amend. XIV***
***42 U.S.C. §§ 1983***
***Injuction Relief***
***Compensatory, Punitive and Treble Damages***

394.     Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT", "STANDARD OF REVIEW" and ""First Claim for Relief" as if fully set forth herein.

395.     Plaintiff refers to every paragraph herein as Plaintiff's allegation.

396.     Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements.

397.     Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party.

398.     Culpable Person:
   - U.S. Bank

399.     Racketeering Activities
   - 18 U.S.C. § 1341
   - 18 U.S.C. § 1343
   - 18 U.S.C. § 664

400.     Other Activities
   - 18 U.S.C. § 1349
   - 18 U.S.C. § 1027

401.    RICO offenses

    a. 18 U.S.C. § 1962(c)
    b. 18 U.S.C. § 1962(d)
    *It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.*

402.    Primary substantive contraventions of Federal law

    a. A breach of fiduciary duty under ***29 U.S.C. § 1056(d)(3)(H)(i)***, unlawfully and willfully use ***mail fraud*** and ***wire fraud*** to abstract assets from the employee pension benefit plan **for the use of another,** as part of a conspiracy.

403.    Scheme

    a. Failed to determine an interlocutory QDRO order described herein as void order
    b. Diverted money regardless sole fiduciary duty

404.    Frauds Artifice (Mail and Wire), including but not limited to:

    a. Engaged in RICO conspiracy among the attorneys and judges for criminal RICO racketeering activities.
    b. A breach of fiduciary duty under ***29 U.S.C. § 1056(d)(3)(H)(i)***, participated a scheme that was devised to abstract assets from the employee pension benefit plan for the use of another. This scheme was carried out as part of a conspiracy and involved the utilization of fraudulent Qualified Domestic Relations Order (QDRO) and voided Court Order as the primary vehicle to perpetrate this crime.
    c. All the above crimes were concealed as part of a conspiracy.

405.    Plaintiff reserves the right to add any party as a culpable person during the court proceedings, pursuant to FRCP rule 21.

406.    Plaintiff alleges that, there exists a RICO scheme involving the primary substantive violations of Federal law "unlawfully and willfully use mail fraud and wire fraud to abstract assets from the employee pension benefit plan to the use of another, as part of a conspiracy." U.S. Bank willfully, recklessly, and maliciously breached its fiduciary duty under *29 U.S.C. § 1056(d)(3)(H)(i)*, helped other Defendant to succeed continuity elements of RICO act of *18 U.S.C. § 664*. These acts constituted the contravention of *18 U.S.C. § 1962(c)(d)*.

407.    In one the email, U.S Bank admitted that the "domestic relations order" they received was appeared in direct conflict with the associate judge's factual order dated April 13th, 2022. U.S Bank still determined that they should treated the "domestic relations order" as "qualified". It is U.S. Bank's fiduciary duty to make determinations that are warranted by state statue. Since then, U.S. Bank

has continued to send the Plaintiff mails and emails, attempting to deceive the Plaintiff into believing that they have made legitimate decisions.

408.    Plaintiff alleges that, despite of multiple objections from Plaintiff, with evidence presented, U.S. Bank willfully, recklessly, and maliciously sent multiple deceptive emails and mails, in order to defraud Plaintiff, between 2022 to present, constituted the contravention of *18 U.S.C. § 1341 and 18 U.S.C. § 1343.* In one of the emails, U.S. Bank falsely claimed that they have an obligation to comply with a "signed order," rather than complying with state statue. Plaintiff lacked legal knowledge to rebut U.S. Bank at that time.

409.    In or around October 2022, U.S. Bank claimed to be in compliance with ERISA law and its own policy, sent Plaintiff a letter inquiring whether Plaintiff objected to the final action of diverting money. Plaintiff formally objected again and informed U.S. Bank that that judgment order lacked due process and that the Plaintiff's property is protected under the Fourteenth Amendment. Within four hours, the Plaintiff received a response stating that U.S. Bank had declined the Plaintiff's objection. According to U.S. Bank's own policy, the Benefits Administration Committee should review this objection and make a determination; however, the Plaintiff does not believe that the Benefits Administration Committee met and discussed this matter on the same day. The Plaintiff alleges that an unidentified individual within U.S. Bank under his individual and official capacity, has violated 42 U.S.C. § 1983 by acting under the color of law to deprive the Plaintiff of rights protected under the Fourteenth Amendment and ERISA.

410.    Furthermore, U.S. Bank informed Plaintiff that it is Plaintiff's responsibility to seek relief for the damages resulting from the criminal acts described herein. U.S. Bank has breached its fiduciary duty by shifting the legal costs to Plaintiff and failing to protect Plaintiff's interests.  By participating these described RICO acts, U.S. Bank derived some benefit of legal cost saving, but shifted the financial burden to Plaintiff.

411.    U.S. Bank knew that an interlocutory QDRO order is not permitted by Texas Family Code and that only a final judgement with post-divorce decree is allowed. To conceal its wrongdoing violated RICO act, around the same time in 2022, U.S. Bank unilaterally changed Plaintiff's marital status from 'married' to 'single' in their system without Plaintiff's knowledge, falsified that U.S. Bank received a post-divorce decree QDRO, this act constituted the contravention of *18 U.S.C. § 1341*, *18*

*U.S.C. § 1343*, *18 U.S.C. § 1349 and 18 U.S.C. § 1027*. Plaintiff did not learn the change until later November 2022, and Plaintiff had to contact U.S. Bank requesting a correction. The fact is clear that, Plaintiff's hearing date for final judgement of divorce was set to 2024 and Plaintiff isn't divorced as of today.

412.    Plaintiff notified U.S. Bank that he intended to seek legal action against RICO Culpable Persons, requested to preserve all communications that these RICO Culpable Persons had with U.S. Bank. It is Plaintiff's belief that U.S. Bank has not preserved ALL communications. Due to all these acts described herein, Plaintiff alleged U.S. Bank constituted the contravention of *18 U.S.C. § 1962(c)*.

413.    Plaintiff would not have needed to appear in this Court if U.S. Bank had done the right acts in 2022. Plaintiff alleges that U.S. Bank is responsible for all the damages claimed in the **First Claim**.

### Reliefs

414.    Plaintiff is entitled to receive vicarious liability relief, pursuant to *18 U.S.C. § 1962(a)* and *18 U.S.C. § 1964*. "With this in mind, we find no barrier to vicarious liability in this case as such liability has been found to be available under subsections (a) and (b) when the principal has **derived** some **benefit** from the agent's wrongful acts. Landry,901 F.2d at 425; Liquid Air Corp. v. Rogers,834 F.2d 1297, 1307 (7th Cir. 1987), cert. denied, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989)." *Crowe v. Henry*, 43 F.3d 198, 206 (5th Cir. 1995).

415.    Plaintiff alleges that, Defendant U.S Bank aided and abetted one another, *other Defendants* named, and *other Defendants* not named herein, in connection with committing the primary substantive contraventions of Federal law identified herein above and are therefore jointly and severally liable as principals pursuant to Title *18 U.S.C. § 2*.

416.    For the foregoing reasons,

417.    The Court should hold defendant persons and enterprises herein above are vicariously and derivatively liable, pursuant to *18 U.S.C. § 1962* and *18 U.S.C. § 1964*.

418.     The Court should hold all defendant persons and enterprises herein above are jointly and severally liable, pursuant *18 U.S.C. § 2*.

419.     The Court should reward Plaintiff compensatory damages pursuant to the claims herein, in an amount of no less than $200,000, pursuant to *18 U.S.C. § 1964*.

420.     The Court should reward Plaintiff punitive damages pursuant to the claims herein, in an amount of no less than $1,000,000, pursuant to *18 U.S.C. § 1964*.

421.     The Court should reward Plaintiff treble damages pursuant to the claims herein, in an amount of no less than $1,000,000, pursuant to *18 U.S.C. § 1964*.

422.     The Court should reward Plaintiff's expenses and costs, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, *18 U.S.C. § 1964* and Fed. R. Civ. P. 54.

423.     The Court should reward Plaintiff's expenses and costs in the family court case 325-707596-21, pursuant to *42 U.S.C. § 1988*, *28 U.S.C. § 1920*, *18 U.S.C. § 1964* and Fed. R. Civ. P. 54.

424.     The Court should reward any and all other such relief that the Court deems just and proper.

## VIII. Prayer for Relief

Based on the above, Plaintiff respectfully requests for the following relief:

425.     For the first claim, grant all the reliefs Plaintiff requested.

426.     For the second claim, grant all the reliefs Plaintiff requested.

427.     For the third claim, grant all the reliefs Plaintiff requested.

428.     For the fourth claim, grant all the reliefs Plaintiff requested.

429.     For the fifth claim, grant all the reliefs Plaintiff requested.

430.     For the sixth claim, grant all the reliefs Plaintiff requested.

431.     For the seventh claim, grant all the reliefs Plaintiff requested.

432.     For the eighth claim, grant all the reliefs Plaintiff requested.

433.     For the nineth claim, grant all the reliefs Plaintiff requested.

434.     The court should grant Plaintiff a jury trial on all appropriate issues.

Respectfully submitted,

_____/s/ Conghua Yan_____

[Conghua Yan]
[2140 E Southlake Blvd, Suite L-439]
[Southlake, Texas 76092]
[214-228-1886]
[arnold200@gmail.com]

# EXHIBIT 1

1 / 70

M Gmail

**Arnold Yan** ▮▮▮▮▮▮▮▮▮▮▮▮

## Fwd: Conghua Yan - ▮▮▮▮▮▮▮▮▮▮▮▮

**Bert Pigg** <WAPigg@pigglawfirm.com>                                                    Thu, Jul 21, 2022 at 9:09 AM
To: Arnold Yan ▮▮▮▮▮▮▮▮▮▮▮▮  Doug Burks <doug@pigglawfirm.com>, ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Arnold:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Also attached is the Associate Judge's Order from the April 13, 2022 hearing wherein you were ordered to withdraw
$50K from your 401K,  So, you will need to do that.  I suggest you contact your 401 K administrator to have them cut
you 2 certified checks - one made payable to The Barrows Law Firm and the other to my law firm.  If they won't do
that, have them cut you a certified check for the full $50k, made payable to you and me.  I will then deposit it in my
trust account and cut a check to Leslie Barrows.

I will respond to the USBank letter telling them that it is not a QDRO as the April 13, 2022 order does not meet the
definition.  I have already told Leslie Barrows this.  I will prepare a letter today and have you sign off on it as well.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Bert Pigg

---------- Forwarded message ---------
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Good day.

**<span style="color:red">\*PLEASE REPLY TO CONFIRM RECEIPT OF THIS E-MAIL\*</span>**

Attached please find the PDF transcript for the deposition of the above-mentioned witnesses.

Please follow these instructions so that the deposition is processed as efficiently as possible:

- Have the witness read the deposition and sign it before a Notary Public. A separate
  signature page has been attached for your convenience. (Notary services, if needed, are
  available at our office. Please call ahead to schedule.)

- The Rules of Civil Procedure require that corrections or additions be noted only on the
  loose corrections page provided.

- Return the executed errata page(s) to the address listed below for further processing:

**3 / 70**

--
William A. "Bert" Pigg

William A. Pigg, PLLC
(214) 551-9391

www.williamapiggpllc.com

**Mailing Address:**                              **Physical Address:**
10455 N. Central Expressway            9638 Greenville Avenue
Suite 109                                        Dallas, Texas 75243
Dallas, Texas 75231

This is a transmission from the law firm of William A. Pigg, PLLC and may contain information which is privileged, confidential, and protected by the attorney-client privilege and/or the attorney work product doctrine. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and any attachments and notify us immediately at our telephone number (214) 551-9391.



**4 / 70**



Bert Pigg <wapigg@pigglawfirm.com>

# In the Matter of the ████████████████████████ Order

1 message

**Leslie Barrows** <lbarrows@barrowsfirm.com>                    Fri, Aug 5, 2022 at 1:06 PM
To: "William A. Pigg (Other)" <wapigg@pigglawfirm.com>
Cc: Sara Brandt <sara@barrowsfirm.com>, Samantha Ybarra <samantha@barrowsfirm.com>

Mr. Pigg:

████████████████████████████████████████████████████ ce until
████████████████████████████████████████████████████ He said you
are writing to US Bank objecting to the Order that you signed off and the Order that the judge has signed off on.

In order for us to obtain our attorney's fees, the order must say that the fees are for **spousal support**. There is no way
around it ███████████████████████████████████████████████

Very Truly Yours,

*Leslie Barrows*

**Attorney and Mediator**

**IF THIS IS AN URGENT MATTER CALL THE OFFICE DIRECTLY. I HOPE TO RESPOND TO EMAILS WITHIN 48
HOURS MONDAY THROUGH THURSDAY GIVEN MY TRIAL SCHEDULE.**

**The Barrows Firm, P.C.** *(located next door to Southlake Style Magazine)*

520 E. Southlake Blvd., Suite 140

Southlake, Texas 76092

**Phone: 817-481-1583**

www.barrowsfirm.com

**The Barrows Firm Team:**



## 401K

**Bert Pigg** <WAPigg@pigglawfirm.com>                                    Sun, Aug 7, 2022 at 5:30 AM
To: Arnold Yan <                              >,
Doug Burks <doug@pigglawfirm.com>

No.

If you recall, at the hearing in April, you were ordered to get 50K from your 401k.  You were to have done it within 30 days - meaning mid-May.   Leslie tried to get her 25k via a QDRO, claiming it was for spousal support - not attorney's fees as ordered.  I did not sign off on that QDRO because it would not be true and I'm not going to sign a court document that is not true.

Thanks
[Quoted text hidden]
--
[Quoted text hidden]

**6 / 70**



## 401K

**Bert Pigg** <WAPigg@pigglawfirm.com>                                              Mon, Aug 8, 2022 at 7:12 AM
To: Arnold Yan
Cc:                                                                              Doug Burks
<doug@pigglawfirm.com>

In that case, the legal issue is that we either have to lie and accept the QDRO or you need to figure out some other way to get 25K for Barrows. As for my 25K, I'm not going to put myself in a position where I'm taking money in a non-truthful way, so, regardless of Barrows, you'll have to figure out something for my end of things.

[Quoted text hidden]

**7 / 70**

 Gmail

**Bert Pigg** <WAPigg@pigglawfirm.com>                          Wed, Nov 2, 2022 at 4:19 PM
To: Arnold Yan ▮

---------- Forwarded message ---------
From: **Bert Pigg** <WAPigg@pigglawfirm.com>
Date: Mon, Aug 29, 2022 at 12:41 PM
Subject: Re: ▮
To: Leslie Barrows <lbarrows@barrowsfirm.com>
Cc: Cheryl Lopez (Work) <cdlopez@tarrantcounty.com>, Sara Brandt <sara@barrowsfirm.com>, Samantha Ybarra <samantha@barrowsfirm.com>

Ms. Barrows:

US Bank approved the QDRO, so you'll be getting your money in due course.

Bert Pigg

On Mon, Aug 29, 2022 at 12:32 PM Leslie Barrows <lbarrows@barrowsfirm.com> wrote:

> Cheryl:
>
> We need to clarify with Judge DeAngelis a ruling for attorney's fees in her AJ Report. Do you have dates and times that she would be available via Zoom and/or In Person?
>
>
> Very Truly Yours,
>
> *Leslie Barrows*
>
> **Attorney and Mediator**
>
>
> ***IF THIS IS AN URGENT MATTER CALL THE OFFICE DIRECTLY. I HOPE TO RESPOND TO EMAILS WITHIN 48 HOURS MONDAY THROUGH THURSDAY GIVEN MY TRIAL SCHEDULE.***
>
>
> **The Barrows Firm, P.C.** *(located next door to Southlake Style Magazine)*
>
> 520 E. Southlake Blvd., Suite 140
>
> Southlake, Texas 76092
>
> **Phone: 817-481-1583**
>
> **www.barrowsfirm.com**
>
> -

**The Barrows Firm Team:**

**Associate Attorneys: samantha@barrowsfirm.com and anthony@barrowsfirm.com**

**Senior Paralegal and Office Administrator: sara@barrowsfirm.com**

**Legal Assistant: sydney@barrowsfirm.com**

**Legal Assistant/Intake Coordinator: caroline@barrowsfirm.com**

**Waylon the French Bulldog @waylon_the_frenchman**

**Office Hours – CLOSED for lunch daily from 12PM to 1PM and CLOSED EARLY on Fridays**

Monday - Thursday: **8:30AM to 12:00PM** and **1:00PM to 5:00PM**

Friday: **8:30AM to 12:00PM (by appointment only)**

***VACATION/TRIAL/SEMINAR NOTICE: I WILL BE OUT OF THE OFFICE AND UNAVAILABLE 9/5/22, 9/9/22, 10/03/22, 10/7/22, 10/11/22, 10/20/22-10/21/22, 10/31/22, 11/21/22-11/25/22, 12/08/22, 12/19/22-01/02/23. 1/16/23, 2/17/23, 2/20/23, 3/13/23-3/17/23, 4/7/23, 4/10/23, 5/25/23***

**9 / 70**

--
William A. "Bert" Pigg

William A. Pigg, PLLC
(214) 551-9391
www.williamapiggpllc.com

**Mailing Address:**                 **Physical Address:**
10455 N. Central Expressway          9638 Greenville Avenue
Suite 109                            Dallas, Texas 75243
Dallas, Texas 75231

This is a transmission from the law firm of William A. Pigg, PLLC and may contain information which is privileged, confidential, and protected by the attorney-client privilege and/or the attorney work product doctrine. If you are not the addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this transmission in error, please destroy it and any attachments and notify us immediately at our telephone number (214) 551-9391.

--
William A. "Bert" Pigg

William A. Pigg, PLLC
(214) 551-9391
www.williamapiggpllc.com

**Mailing Address:**                          **Physical Address:**
10455 N. Central Expressway        9638 Greenville Avenue
Suite 109                                      Dallas, Texas 75243
Dallas, Texas 75231

This is a transmission from the law firm of William A. Pigg, PLLC and may contain
information which is privileged, confidential, and protected by the attorney-client
privilege and/or the attorney work product doctrine. If you are not the addressee, note
that any disclosure, copying, distribution, or use of the contents of this message is
prohibited. If you have received this transmission in error, please destroy it and any
attachments and notify us immediately at our telephone number (214) 551-9391.

# EXHIBIT 2

**11 / 70**

CHAIR
KELLI M. HINSON

VICE CHAIR
MICHAEL C. GROSS

MEMBERS
JASON BOATRIGHT
JENNIFER CAUGHEY
ARTHUR C. D'ANDREA
ANDREW D. GRAHAM
DAVID IGLESIAS
W.C. KIRKENDALL
RUDOLPH K. METAYER
WILLIAM W. OGDEN
COURTNEY C. SCHMITZ
NANCY J. STONE

EXECUTIVE DIRECTOR
& GENERAL COUNSEL
JENNY HODGKINS

DEPUTY DIRECTOR
& COUNSEL
MATTHEW J. GREER

EXECUTIVE ASSISTANT
JACKIE TRUITT

# THE BOARD OF DISCIPLINARY APPEALS
### APPOINTED BY THE SUPREME COURT OF TEXAS

January 20, 2023

Conghua Yan


RE:   Disposition of Appeal Notice
Conghua Yan  v. Leslie Starr  Barrows
202206760; BODA Case No. 67344

Dear Mr. Yan:

On January 19, 2023, the Board of Disciplinary Appeals appointed by the Supreme Court of Texas considered your appeal from the dismissal of the above grievance by the Office of the Chief Disciplinary Counsel of the State Bar of Texas. After reviewing the grievance as filed with the State Bar Chief Disciplinary Counsel's office and no other information, the Board grants the appeal and reverses the dismissal, finding that the grievance alleges a possible violation of the following Texas Disciplinary Rules of Professional Conduct:

Rule(s) 4.01 (a)

**12 / 70**   The Board of Disciplinary Appeals will now return the case to the Office of the Chief Disciplinary Counsel for investigation and a determination of whether there is just cause to believe that the attorney has committed professional misconduct.  The Office of the Chief Disciplinary Counsel will notify both parties of each step of the process, including asking the attorney to respond to the complaint.  For information concerning the handling of the case from this point forward, please contact the regional Office of the Chief Disciplinary Counsel in charge of your case.

Information concerning the disciplinary system, the Texas Disciplinary Rules of Professional Conduct, and the Texas Rules of Disciplinary Procedure are available at www.texasbar.com.  The Board's Internal Procedural Rules are available at www.txboda.org.

Very truly yours,

Jenny Hodgkins
Executive Director & General Counsel

JH/jt

cc:   Leslie Starr  Barrows

Office of the Chief Disciplinary Counsel
State Bar of Texas
PO Box 13287
Austin, TX 78711
(512) 427-1350
(877) 953-5535 toll free

CHAIR
KELLI M. HINSON

VICE CHAIR
MICHAEL C. GROSS

MEMBERS
  JASON BOATRIGHT
  JENNIFER CAUGHEY
  ARTHUR C. D'ANDREA
  ANDREW D. GRAHAM
  DAVID IGLESIAS
  W.C. KIRKENDALL
  RUDOLPH K. METAYER
  WILLIAM W. OGDEN
  COURTNEY C. SCHMITZ
  NANCY J. STONE

EXECUTIVE DIRECTOR
& GENERAL COUNSEL
JENNY HODGKINS

DEPUTY DIRECTOR
& COUNSEL
MATTHEW J. GREER

EXECUTIVE ASSISTANT
JACKIE TRUITT

## THE BOARD OF DISCIPLINARY APPEALS

APPOINTED BY THE SUPREME COURT OF TEXAS

April 06, 2023

Conghua Yan

▉▉▉▉▉▉▉▉▉▉

RE:   Disposition of Appeal Notice
      Conghua Yan  v. William Albert  Pigg
      202300469; BODA Case No. 67592

Dear Mr. Yan:

On April 06, 2023, the Board of Disciplinary Appeals appointed by the Supreme Court of Texas considered your appeal from the dismissal of the above grievance by the Office of the Chief Disciplinary Counsel of the State Bar of Texas. After reviewing the grievance as filed with the State Bar Chief Disciplinary Counsel's office and no other information, the Board grants the appeal and reverses the dismissal, finding that the grievance alleges a possible violation of the following Texas Disciplinary Rules of Professional Conduct:

Rule(s) 1.05 (b)

**13 / 70**

The Board of Disciplinary Appeals will now return the case to the Office of the Chief Disciplinary Counsel for investigation and a determination of whether there is just cause to believe that the attorney has committed professional misconduct.  The Office of the Chief Disciplinary Counsel will notify both parties of each step of the process, including asking the attorney to respond to the complaint.  For information concerning the handling of the case from this point forward, please contact the regional Office of the Chief Disciplinary Counsel in charge of your case.

Information concerning the disciplinary system, the Texas Disciplinary Rules of Professional Conduct, and the Texas Rules of Disciplinary Procedure are available at www.texasbar.com.  The Board's Internal Procedural Rules are available at www.txboda.org.

Very truly yours,

Jenny Hodgkins
Executive Director & General Counsel

JH/jt

cc:   William Albert  Pigg

      Office of the Chief Disciplinary Counsel
      State Bar of Texas
      PO Box 13287
      Austin, TX 78711
      (512) 427-1350
      (877) 953-5535 toll free

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

May 17, 2023

***Sent Via Email:*** ***Arnold200@gmail.com***

Conghua Yan
2140 E Southlake Blvd Suite L-439
Southlake, Texas 76092

Re:  202206760 - Conghua Yan - Leslie Starr Barrows

Dear Conghua Yan:

You are hereby notified that the referenced Complaint has been placed on a Summary Disposition Panel docket.

The Summary Disposition Panel is an independent panel of grievance committee members comprised of both volunteer lawyers and public members. The Panel will review all information, documents and evidence submitted during the investigation and determine whether the Complaint should be dismissed or should proceed.  The Rules of Disciplinary Procedure provide that, at the summary disposition proceeding, the Chief Disciplinary Counsel will present the Complaint without the presence of the Complainant or the Respondent. You will be notified of the results by letter.

Sincerely,

Rachel Craig
Assistant Disciplinary Counsel

RAC/krp

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

May 18, 2023

***Sent Via Email:*** ***Arnold200@gmail.com***

Conghua Yan
2140 E Southlake Blvd Suite L-439
Southlake, Texas 76092

Re:  202300469 - Conghua Yan - William Albert Pigg

Dear Conghua Yan:

You are hereby notified that the referenced Complaint has been placed on a Summary Disposition Panel docket.

The Summary Disposition Panel is an independent panel of grievance committee members comprised of both volunteer lawyers and public members. The Panel will review all information, documents and evidence submitted during the investigation and determine whether the Complaint should be dismissed or should proceed.  The Rules of Disciplinary Procedure provide that, at the summary disposition proceeding, the Chief Disciplinary Counsel will present the Complaint without the presence of the Complainant or the Respondent. You will be notified of the results by letter.

Sincerely,

Rachel Craig
Assistant Disciplinary Counsel

RAC/krp

**The Princeton Building, 14651 Dallas Parkway, Suite 925, Dallas, Texas 75254**
**(972) 383-2900, (972) 383-2935 (FAX)**

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

February 15, 2023

Conghua Yan
2140 East Southlake Boulevard Suite L-439
Southlake, TX 76092

Re: 202300469 - Conghua Yan - William Albert Pigg

Dear Conghua Yan:

The Office of the Chief Disciplinary Counsel of the State Bar of Texas has received your grievance against the above named lawyer.

Lawyers licensed in Texas are governed by the Texas Disciplinary Rules of Professional Conduct, and may only be disciplined when their conduct is in violation of one or more of the disciplinary rules. When a grievance is received, this office conducts an initial review to determine whether the alleged conduct would be a violation of the ethics rules. If the conduct does not allege a violation, the grievance is classified as an Inquiry and dismissed with a right to appeal the dismissal. If the conduct alleges a violation, the grievance is classified as a Complaint and investigated. We have concluded that the conduct you described is not a violation of the disciplinary rules. Thus, your grievance has been classified as an Inquiry and dismissed.

**16 / 70**

If you would like further review of your grievance, you may choose one of the following two options:

1. Amend your grievance and re-file it with additional information that will assist us in determining whether the lawyer violated the disciplinary rules. (Examples of additional information that may be helpful include: correspondence/emails between you and your lawyer, fee agreement/contract with your lawyer, the approximate date your lawyer's conduct occurred, etc.) It is not necessary to list the disciplinary rules you believe were violated. You have twenty (20) days from your receipt of this letter to re-file your amended grievance.

   **OR**

2. Appeal this decision to dismiss your grievance to the Board of Disciplinary Appeals. You must submit your appeal directly to the Board of Disciplinary Appeals by using the enclosed form. **You have thirty (30) days from your receipt of this letter to appeal this decision.**

Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure. If you have any questions about the dismissal of your grievance, I can be reached at (877) 953-5535.

Also, please scan the QR code below or go to https://cdc.texasbar.com/survey to complete our Disciplinary System Questionnaire, which gives us valuable feedback from those involved in the process. We would appreciate you taking a moment to complete it.



Sincerely,

D. Martinez
Assistant Disciplinary Counsel

DEM/tf

**17 / 70**

Enclosures:    BODA Appeal Form


Cc:          Mr. William Albert Pigg

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

October 25, 2022

Conghua Yan
219 East Southlake Boulevard Suite L-439
Southlake, TX  76092

Re:  202206760 - Conghua  Yan -Leslie Starr   Barrows

Dear Conghua Yan:

The Office of the Chief Disciplinary Counsel of the State Bar of Texas has received your grievance against the above named lawyer.

Lawyers licensed in Texas are governed by the Texas Disciplinary Rules of Professional Conduct, and may only be disciplined when their conduct is in violation of one or more of the disciplinary rules.  When a grievance is received, this office conducts an initial review to determine whether the alleged conduct would be a violation of the ethics rules.  If the conduct does not allege a violation, the grievance is classified as an Inquiry and dismissed with a right to appeal the dismissal.  If the conduct alleges a violation, the grievance is classified as a Complaint and investigated.  We have concluded that the conduct you described is not a violation of the disciplinary rules.  Thus, your grievance has been classified as an Inquiry and dismissed.

If you would like further review of your grievance, you may choose one of the following two options:

1. Amend your grievance and re-file it with additional information that will assist us in determining whether the lawyer violated the disciplinary rules. (Examples of additional information that may be helpful include: correspondence/emails between you and your lawyer, fee agreement/contract with your lawyer, the approximate date your lawyer's conduct occurred, etc.)  It is not necessary to list the disciplinary rules you believe were violated.  You have twenty (20) days from your receipt of this letter to re-file your amended grievance.

   **OR**

2. Appeal this decision to dismiss your grievance to the Board of Disciplinary Appeals.  You must submit your appeal directly to the Board of Disciplinary Appeals by using the enclosed form.  **You have thirty (30) days from your receipt of this letter to appeal this decision.**

Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure. If you have any questions about the dismissal of your grievance, I can be reached at (877) 953-5535. Also, Please scan the QR code below or go to https://cdc.texasbar.com/survey to complete our Disciplinary System Questionnaire, which gives us valuable feedback from those involved in the process. We would appreciate you taking a moment to complete it.



Sincerely,

Luis J. Marín

LJM/tf

Enclosures:     BODA Appeal Form

**19 / 70**

Cc:          Ms. Leslie Starr Barrows

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

July 13, 2023

**_Sent Via Email: Arnold200@gmail.com_**

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092

Re: 202300469 - Conghua Yan - William Albert Pigg

Dear Conghua Yan:

Upon completion of its investigation of your grievance, the Chief Disciplinary Counsel has determined that there is no just cause to believe that the above named lawyer has committed professional misconduct.

In accordance with the Texas Rules of Disciplinary Procedure, following this determination by the Chief Disciplinary Counsel your complaint was presented to a Summary Disposition Panel of the District 7 Grievance Committee. The Panel which is comprised of volunteer lawyers and public members has the option to dismiss the complaint or vote to proceed should they believe the case should go forward. This is solely their decision to make on any complaint presented to them. The Panel has voted to dismiss the complaint after reviewing all the evidence submitted and obtained during the investigation. Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure.

Although there is no appeal of the Panel's decision to dismiss your grievance, the State Bar of Texas maintains the Client-Attorney Assistance Program (CAAP), which you may have contacted prior to filing your grievance. Please be advised that even after a grievance has been dismissed, CAAP can still attempt to assist you through alternative dispute resolution procedures unless the attorney at issue is *deceased*, *disbarred*, *suspended* or *not your lawyer*. **CAAP is not a continuation of the attorney disciplinary process, and participation by both you and your attorney is voluntary.** Should you wish to pursue that option, CAAP may be reached at 1-800-932-1900.

Sincerely,

Kristin Virginia Brady
Assistant Disciplinary Counsel

KVB/krp

**The Princeton Building, 14651 Dallas Parkway, Suite 925, Dallas, Texas 75254**
**(972) 383-2900, (972) 383-2935 (FAX)**

# STATE BAR OF TEXAS



*Office of the Chief Disciplinary Counsel*

July 13, 2023

**Sent Via Email:** *Arnold200@gmail.com*

Conghua Yan
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092

Re: 202206760 - Conghua Yan - Leslie Starr Barrows

Dear Conghua Yan:

Upon completion of its investigation of your grievance, the Chief Disciplinary Counsel has determined that there is no just cause to believe that the above named lawyer has committed professional misconduct.

In accordance with the Texas Rules of Disciplinary Procedure, following this determination by the Chief Disciplinary Counsel your complaint was presented to a Summary Disposition Panel of the District 7 Grievance Committee. The Panel which is comprised of volunteer lawyers and public members has the option to dismiss the complaint or vote to proceed should they believe the case should go forward. This is solely their decision to make on any complaint presented to them. The Panel has voted to dismiss the complaint after reviewing all the evidence submitted and obtained during the investigation. Please know that the Office of the Chief Disciplinary Counsel maintains confidentiality in the grievance process as directed by the Texas Rules of Disciplinary Procedure.

Although there is no appeal of the Panel's decision to dismiss your grievance, the State Bar of Texas maintains the Client-Attorney Assistance Program (CAAP), which you may have contacted prior to filing your grievance. Please be advised that even after a grievance has been dismissed, CAAP can still attempt to assist you through alternative dispute resolution procedures unless the attorney at issue is *deceased*, *disbarred*, *suspended* or *not your lawyer*. **CAAP is not a continuation of the attorney disciplinary process, and participation by both you and your attorney is voluntary.** Should you wish to pursue that option, CAAP may be reached at 1-800-932-1900.

Sincerely,

Kristin Virginia Brady
Assistant Disciplinary Counsel

KVB/krp

**The Princeton Building, 14651 Dallas Parkway, Suite 925, Dallas, Texas 75254
(972) 383-2900, (972) 383-2935 (FAX)**

# EXHIBIT 3

325-707596-21

FILED
TARRANT COUNTY
3/3/2022 3:14 PM
THOMAS A. WILDER
DISTRICT CLERK

## CAUSE NO. <u>325-707596-21</u>

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CONGHUA YAN | § | |
| AND | § | 325th JUDICIAL DISTRICT |
| FUYAN WANG | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| SHIMING YAN, A CHILD | § | TARRANT COUNTY, TEXAS |

## <u>Motion for Interim Attorney's Fees, Costs, and Expenses</u>

This Motion for Interim Attorney's Fees, Costs, and Expenses is brought by **FUYAN WANG**, Respondent.

Respondent would show this Court that she is not in control of sufficient assets to pay attorney's fees and anticipated costs and expenses in this matter. As of March 3, 2022, Petitioner has incurred $19,135.00 in attorney's fees and costs and expenses. Respondent lacks sufficient community property or separate property to pay her attorney's fees, costs, and expenses. Respondent requests that this Court order Petitioner, **CONGHUA YAN**, to pay Petitioner's interim attorney's fees, costs, and expenses by a certain date.

**FUYAN WANG** prays that this Court order the payment of her interim attorney's fees, costs, and expenses as requested above.

Respectfully submitted,

THE BARROWS FIRM, P.C.
520 E. Southlake Blvd., Suite 140
Southlake, Texas 76092
Phone: 817-481-1583
Fax: 817-912-1380

*Leslie Starr Barrows*

Leslie Starr Barrows
State Bar No. 24048343
Email: lbarrows@barrowsfirm.com
Danielle DeFranco
State Bar No. 24127415
Email: danielle@barrowsfirm.com
Erin B. Healey
State Bar No. 24041073
Email: erin@barrowsfirm.com
Samantha Ybarra
State Bar No. 24104627
Email: samantha@barrowsfirm.com
Attorney for Respondent

## Certificate of Conference

A conference was attempted to be held on March 3, 2022 with opposing counsel on the merits of this motion. Attorney for Respondent left a message for Petitioner's attorney. A reasonable effort has been made to resolve the dispute without the necessity of court intervention and the effort failed. Therefore it is presented to the Court for determination.

*Leslie Starr Barrows*

Leslie Starr Barrows
Attorney for Respondent

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on March 3, 2022.

*Leslie Starr Barrows*

Leslie Starr Barrows
Attorney for Respondent

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Tisha Dixon on behalf of Leslie Barrows
Bar No. 24048343
tisha@barrowsfirm.com
Envelope ID: 62278391
Status as of 3/3/2022 3:31 PM CST

Associated Case Party: CONGHUAYAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Pigg | 24057009 | wapigg@pigglawfirm.com | 3/3/2022 3:14:07 PM | SENT |

Associated Case Party: FUYANWANG

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Leslie StarrBarrows | | lbarrows@barrowsfirm.com | 3/3/2022 3:14:07 PM | SENT |
| Tisha Dixon | | tisha@barrowsfirm.com | 3/3/2022 3:14:07 PM | SENT |
| Samantha Ybarra | | samantha@barrowsfirm.com | 3/3/2022 3:14:07 PM | SENT |
| Bert Pigg | | WAPIGG@pigglawfirm.com | 3/3/2022 3:14:07 PM | SENT |
| Daisy Morado | | Daisy@barrowsfirm.com | 3/3/2022 3:14:07 PM | SENT |

# EXHIBIT 4

**26 / 70**

 

**Tarrant County Sheriff's Department**
**Criminal Investigation Division**

Detective d Bennett #74751
Criminal Investigation Division
200 Taylor Street - 7th Floor
Fort Worth, TX 76196

Office# 817-884-3436
Mobile# 817-999-5683
Fax# 817-884-1886
Email: dfbennett@tarrantcounty.com

Date: January 4, 2023

Service Number: 2022-18012

RE: Perjury

**To: Conghua Yan,**

On December 16, 2022, you were listed as the reporting person a victim in TCSO case #2022-18012. After my investigating, I was not able to meet the requirements set forth by TCDA's office. I spoke to TCDA's office regarding your issue and they advised they would only accept or open an investigation into your claim of perjury only at the request of the presiding judge, since that did not occur, your case has been closed.

Thank you for your cooperation,

Detective D Bennett
817-884-3436

27 / 70

# EXHIBIT 5

28 / 70

CAUSE NO. <u>325-707596-21</u>

| | | |
|---|---|---|
| **IN THE MATTER OF** | § | **IN THE DISTRICT COURT** |
| **THE MARRIAGE OF** | § | |
| | § | |
| **CONGHUA YAN** | § | |
| **AND** | § | **325TH JUDICIAL DISTRICT** |
| **FUYAN WANG,** | § | |
| | § | |
| **AND IN THE INTEREST OF** | § | |
| **SHIMING YAN, A CHILD** | § | **TARRANT COUNTY, TEXAS** |

## AFFIDAVIT OF LESLIE BARROWS' ATTORNEY'S FEES

BEFORE ME, the undersigned authority, on this day personally appeared Leslie Barrows, who swore under oath that the following facts are true:

"My name is Leslie Barrows. I am more than eighteen years of age, of sound mind, and fully competent to make this affidavit. I am the attorney of record for **Fuyan Wang** in the above-styled and numbered cause, and in that capacity, I have personal knowledge of the matters set forth below.

"I am a graduate of University of Oklahoma College of Law and received a Juris Doctorate decree. I have been licensed to practice law in the state of Texas since December 2000. I am admitted to practice before this Court.

"Presently, I am employed by the Barrows Firm, PC, a law firm having its principal place of business in Southlake, Texas.

To the extent that I have specialized legal knowledge, it is in the areas of Texas Family Law. I am familiar with the types of fees usually and customarily charged in cases of this type in Tarrant County, Texas. It is my testimony that an hourly rate of $400.00 per hour is a reasonable and necessary rate in Tarrant County, Texas, for an attorney with my experience and expertise. Additionally, it is my testimony that the following hourly rates are reasonable for all support staff in my firm:

| | |
|---|---|
| Leslie Barrows, Lead Attorney | $400.00/hour |
| Associate Attorneys/Of Counsel | $225.00 - $275.00/hour |
| Legal Assistants/Paralegals | $125.00 - $175.00/hour |

Law Point referral benefits program discounted rates as follow:

Law Point referral benefits program discounted rates as follow:

| | |
|---|---|
| Leslie Barrows, Lead Attorney | $300.00/hour |
| Associate Attorneys/Of Counsel | $168.75 - $206.25/hour |
| Legal Assistants/Paralegals | $93.75 - $131.25/hour |

"This case is pending a hearing for temporary orders and investigation of the case remains on-going. The exact amount of legal services are unknown and still accruing at the time this Affidavit was filed." The Barrows Firm, P.C. and Attorney Leslie Barrows reserves the right to supplement this Affidavit as this case continues.

Attached as **Exhibit A** is a summary of current and anticipated time and expenses for enforcement only and attached as **Exhibit B** are the detailed invoices in this case that are currently available. It is taken from the original records of The Barrows Firm; P.C. and it is a summary of records kept in the usual course of business. The records are timely entered at or near the time of the events they describe by a person with knowledge of those events. Specifically, they are records of my time, my paralegal's time or other office staff in this case, and my firm's time which make up the entries. It is a part of the regular course of business of The Barrows Firm, P.C. to make and keep such records.

I have reviewed the summary of the time and invoices in this case, and I find that all the work performed in this case has been reasonable and necessary. My fees, my paralegal's fees or other office staff in this case, and my firm's fees in the case are reasonable and necessary if considered in light of the following factors:

"1.     The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform legal services properly.

"2.     The fees customarily charged in this locality for similar legal services:  The fees charged by me are usual and customary in Tarrant County, Texas, for a case of this type involving the issues before the Court.   A reasonable hourly rate in this matter for a senior lead attorney would be between $350.00 to $400.00 per hour and a reasonable hourly rate in this matter for an associate attorney would be between $225.00 and $275.00 per hour, depending on the qualifications, education and experience of the attorney and the work performed by the attorney.

"3.     A reasonable hourly rate in this matter for similar legal services performed by paralegals or other office staff in this case under attorney supervision, would be between $125.00 and $175.00, depending on the qualifications, education, and experience of the paralegal or other office staff.

"4.     The nature and length of my firm's professional relationship with our client **Fuyan Wang**; and

"5.     Any and all experience, reputation, or ability that we have.

### (SIGNATURES ON FOLLOWING PAGE)

"The foregoing matters are, within my personal knowledge, true and correct."

Leslie Barrows, Affiant
Attorney for **Fuyan Wang**

SIGNED under oath before me on April 12 2022.



DAISY YAELIN MORADO
Notary Public, State of Texas
Comm. Expires 12-08-2025
Notary ID 133480650

Notary Public State of Texas

Respectfully submitted,

THE BARROWS FIRM, P.C.
520 E. Southlake Blvd., Suite 140
Southlake, Texas 76092
Phone: 817-481-1583
Fax: 817-912-1380

State Bar No. 24048343
Email: lbarrows@barrowsfirm.com
Danielle DeFranco
State Bar No. 24127415
Email: danielle@barrowsfirm.com
Erin B. Healey
State Bar No. 24041073
Email: erin@barrowsfirm.com
Samantha Ybarra
State Bar No. 24104627
Email: samantha@barrowsfirm.com
Attorneys for **Fuyan Wang**

CAUSE NO. <u>325-707596-21</u>

| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| CONGHUA YAN | § | |
| AND | § | 325TH JUDICIAL DISTRICT |
| FUYAN WANG, | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| SHIMING YAN, A CHILD | § | TARRANT COUNTY, TEXAS |

---

### SUMMARY OF ATTORNEY'S FEES

---

     **Fuyan Wang**, "Respondent" and Movant herein, and presents the following summary of attorney's fees and costs:

| Date | Invoice # | Expenses | Attorney at $400.00 p/h | Attorney at $200.00 p/h | Attorney at $250.00 p/h | Attorney at $150.00 p/h | Paralegal at $175.00 p/h | Paralegal at 125.00 p/h | Totals | |
|------|-----------|----------|-------------------------|-------------------------|-------------------------|-------------------------|--------------------------|-------------------------|--------|---|
| 11/02/2021 | 60959 | $0 | $400.00 | $0 | $0 | $0 | $0 | $0 | $400.00 | |
| 11/09/2021 | 60975 | $561.10 | $1,800.00 | $400.00 | $0 | $37.50 | $1,006.25 | $0 | $3,804.95 | |
| 12/01/2021 | 61087 | $10.00 | $300.00 | $800.00 | $0 | $0 | $306.25 | $0 | $1,416.25 | |
| 12/09/2021 | 61099 | $370.60 | $1,600.00 | $500.00 | $0 | $0 | $0 | $125.00 | $2,595.60 | |
| 01/10/2022 | 61197 | $0 | $0 | $1,250.00 | $0 | $0 | $1,312.50 | $562.50 | $3,125.00 | |
| 01/24/2022 | 61302 | $10.00 | $0 | $375.00 | $0 | $0 | $350.00 | $156.25 | $1,585.00 | |
| 03/02/2022 | 61515 | $30.00 | $0 | $450.00 | $2012.50 | $0 | $1,968.75 | $2,411.25 | $7,030.00 | |
| 04/11/2022 | 61736 | 10.00 | $300.00 | $0 | $437.50 | $0 | $656.25 | $250.00 | $1,653.75 | |
| 04/12/2022 | 61737 | $0 | $0 | $0 | $62.50 | $0 | $218.75 | $156.25 | $437.50 | |
| | | | | | | | | | | |
| | **Subtotals** | $991.70 | $4400.00 | $3775.00 | $2512.50 | $37.50 | $5818.75 | $3661.25 | | |
| | | | | | | | | | **Total** | **$22,048.05** |

| | |
|---|---|
| Total Attorney Time | $10,725.00 |
| Total Paralegal Time | $9,480.00 |
| Total Expenses | $991.70 |



# BARROWS
## — FIRM —
### ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 60959
Date: 11/02/2021

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

**In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/ TD Represent Wife Fuyan Wang**

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 11/02/2021 | Consultation. PNC speaks Mandarin and will come back tomorrow with a friend to translate. | 1.00 | $400.00 | $400.00 |

| | |
|---|---|
| **Total** | **$400.00** |
| **Payment (11/09/2021)** | **-$400.00** |
| **Balance Owing** | **$0.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|
| 60959 | 11/02/2021 | $400.00 | $400.00 | $0.00 |

| | |
|---|---|
| **Outstanding Balance** | **$2,500.00** |
| **Amount in Trust** | **$0.00** |
| **Total Amount Outstanding** | **$2,500.00** |

## 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|------|------|-------------|--------|----------|----------|---------|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $2,195.05 | | $0.00 |
| 01/10/2022 | | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022 | Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

|  |  | **103 Frost IOLTA Trust Account Balance** | **$0.00** |
|--|--|--|--|

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



### BARROWS
#### — FIRM —
##### ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 60975
Date: 11/09/2021

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

**In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/ TD Represent Wife Fuyan Wang**

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 11/03/2021 | Second Consultation. Client retained. Substitution of Counsel signed and Employment Agreement signed. | 0.50 | $400.00 | $200.00 |
| Service | 11/03/2021 | Draft employment contract. | 0.25 | $0.00 | $0.00 |
| Service | 11/04/2021 | Draft Motion for Substitution of Counsel and Order on Motion for Substitution of Counsel; submit same for filing with court | 0.25 | $175.00 | $43.75 |
| Service | 11/04/2021 | Open new client file and update pleadings and pleadings index. | 0.25 | $0.00 | $0.00 |
| Service | 11/05/2021 | Drafted Motion for Continuance; Order for Continuance; and Counterpetition for Divorce; submitted Counterpetition for filing at court; drafted Notice of Hearing and submitted to court coordinator | 3.00 | $175.00 | $525.00 |
| Service | 11/08/2021 | Temporary Orders preparation, including typing Financial Income Statement, and drafting Summary of Requested Relief. Transmit our exhibits to Court and opposing counsel. Email to client encl ▮ | 1.50 | $175.00 | $262.50 |
| Service | 11/08/2021 | Complete and transmit request for records to Southlake Police Department. | 0.25 | $200.00 | $50.00 |
| Service | 11/08/2021 | Conference with Paralegal Bell re upcoming hearing. | 0.25 | $0.00 | $0.00 |
| Service | 11/08/2021 | Draft Responses to Initial Disclosures and sent email to client re ▮ | 1.00 | $175.00 | $175.00 |
| Service | 11/08/2021 | Prepare exhibits for upcoming temporary orders hearing. | 1.75 | $200.00 | $350.00 |
| Service | 11/08/2021 | Travel to/from Temporary Orders hearing. Meet with client and mandarin translator. Case continued until tomorrow. Interim order entered by AJ. Telephone conferences with translator. Conference with client. Conference with paralegal Bell re exhibits for trial. Conference with attorney Ybarra. Review exhibits and videos offered by husband. | 2.00 | $400.00 | $800.00 |
| Service | 11/08/2021 | Travel to/from Tarrant County Courthouse with Attorney Barrows to attend temporary orders hearing. | 2.00 | $0.00 | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Expense | 11/08/2021 | Parking: Parking fee for Tarrant County Courthouse. | | 1.00 | $7.00 | $7.00 |
| Service | 11/09/2021 | Meeting with client re ▮▮▮▮▮ | | 1.00 | $400.00 | $400.00 |
| Service | 11/09/2021 | Conference with attorney Barrows. Review income and calculate child support prior to hearing. | | 0.25 | $150.00 | $37.50 |
| Service | 11/09/2021 | Continuation of Temporary Orders Hearing. Draft AJ ruling and husband to remain in hotel until judge send her ruling. Meeting with client and interpreter at courthouse. | | 1.00 | $400.00 | $400.00 |
| Expense | 11/09/2021 | Reimbursable expenses: Parking | | 1.00 | $7.00 | $7.00 |
| Expense | 11/09/2021 | Reimbursable expenses: Pay Translator | | 1.00 | $547.20 | $547.20 |

|  |  |
|---|---|
| **Total** | **$3,804.95** |
| **Payment (11/09/2021)** | **-$3,804.95** |
| **Balance Owing** | **$0.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 60975 | 11/09/2021 | $3,804.95 | $3,804.95 | $0.00 |

|  |  |
|---|---|
| **Outstanding Balance** | **$2,500.00** |
| **Amount in Trust** | **$0.00** |
| **Total Amount Outstanding** | **$2,500.00** |

### 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|---|---|---|---|---|---|---|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |

Invoice 60975 - 11/09/2021

| Date | | Description | Detail | | | |
|------|---|-------------|--------|---|---|---|
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $2,195.05 | | $0.00 |
| 01/10/2022 | | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022 | Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

**103 Frost IOLTA Trust Account Balance**          $0.00

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



# BARROWS
## FIRM
### ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 61087
Date: 12/01/2021

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and iTIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/
TD Represent Wife Fuyan Wang

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 11/02/2021 | Monthly Admin Fee - November. | 1.00 | $10.00 | $10.00 |
| Service | 11/09/2021 | Travel to/from Tarrant County Courthouse and attended temporary orders hearing with Attorney Barrows. | 3.00 | $0.00 | $0.00 |
| Service | 11/10/2021 | In person meeting with client regarding ▮ | 0.25 | $0.00 | $0.00 |
| Service | 11/10/2021 | Receipt/Review of AJ Report. Print for client. Email to client. Calendar deadlines. Email Family Court Services with our client's contact information. Forward email from Family Court Services to client for payment. Receipt of De Novo Appeal. Email to client.▮ | 0.75 | $400.00 | $300.00 |
| Service | 11/15/2021 | Emailed Inventory and Appraisement to client for completion; calendared and emailed Notice of Hearing on opposing counsel's De Novo Hearing | 0.25 | $175.00 | $43.75 |
| Service | 11/16/2021 | Reviewed initial disclosures with client; reviewed inventory and appraisement with client. | 1.25 | $200.00 | $250.00 |
| Service | 11/16/2021 | Initial draft of initial disclosures. | 0.50 | $200.00 | $100.00 |
| Service | 11/23/2021 | Scan documents from client into file. Create dropbox for client. Rearrange and organize documents. Review documents. Emailed client regarding ▮ | 1.50 | $200.00 | $300.00 |
| Service | 11/30/2021 | Review documents brought by client. Scan in documents brought in by client. Organize documents brought in by client. Draft Certificate of Written Discovery. Update dropbox for Discovery. | 0.75 | $200.00 | $150.00 |
| Service | 12/01/2021 | Redact Bank Statements and Billing statements for disclosures | 1.50 | $175.00 | $262.50 |

Total  **$1,416.25**

Payment (12/06/2021)  **-$1,416.25**

Balance Owing  **$0.00**

 

Invoice 61087 - 12/01/2021

## Credit Card Payment History

| Date | Reference | Note | Status | Amount |
|------|-----------|------|--------|--------|
| 12/06/2021 | BanK O ZK<br>Visa ending in 2049 | Linked payment for Fuyan Wang | Completed | $1,416.25 |
| | | | **Total Payments** | **$1,416.25** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|
| 61087 | 12/01/2021 | $1,416.25 | $1,416.25 | $0.00 |
| | | | **Outstanding Balance** | **$2,500.00** |
| | | | **Amount in Trust** | **$0.00** |
| | | | **Total Amount Outstanding** | **$2,500.00** |

### 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|------|------|-------------|--------|----------|----------|---------|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and ITIO Shiming Yan, a | $2,195.05 | | $0.00 |

| Date | | Description | Details | Amount | Trust Applied | Balance |
|------|---|-------------|---------|--------|---------------|---------|
| | | | Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | | |
| 01/10/2022 | | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022 | Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

**103 Frost IOLTA Trust Account Balance**   **$0.00**

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



# BARROWS
## FIRM
### ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 61099
Date: 12/09/2021

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

**In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/ TD Represent Wife Fuyan Wang**

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 12/01/2021 | Monthly Admin Fee - December. | 1.00 | $10.00 | $10.00 |
| Service | 12/02/2021 | Prep for conference with client. In office conference with client regarding ▮▮▮ | 1.25 | $200.00 | $250.00 |
| Service | 12/06/2021 | Client came in to discuss citation. Reviewed citation. Conference with Paralegal Dixon and Attorney Barrows. Scanned citation and saved to file. | 0.50 | $200.00 | $100.00 |
| Service | 12/06/2021 | Draft letter of representation; Telephone conference with Southlake Municipal Court and emailed letter of representation to Southlake Municipal Court. Conference with attorney Barrows re the same. | 0.50 | $200.00 | $100.00 |
| Service | 12/06/2021 | Prepare exhibits for De Novo Hearing and updated pleadings and pleadings index. | 1.00 | $125.00 | $125.00 |
| Service | 12/07/2021 | Review exhibits for temporary orders. Edit order of bank statements. Scan and print out copies of bank statements. | 0.25 | $200.00 | $50.00 |
| Expense | 12/07/2021 | Reimbursable expenses: Parking | 1.00 | $7.00 | $7.00 |
| Service | 12/07/2021 | Travel to/from Fort Worth for De Novo hearing with translator. Began de novo and continued until February. Conference with opposing counsel re the same. | 4.00 | $400.00 | $1,600.00 |
| Expense | 12/07/2021 | Reimbursable expenses: Translator Services | 1.00 | $353.60 | $353.60 |
| Service | 12/07/2021 | Assist in Contested Hearing. | 4.00 | $0.00 | $0.00 |
| Service | 12/09/2021 | Receipt/Review of translator services. Pay invoice. | 0.25 | $0.00 | $0.00 |

| | |
|---|---|
| **Total** | **$2,595.60** |
| **Payment (12/09/2021)** | **-$2,195.05** |
| **Payment (12/09/2021)** | **-$400.55** |
| **Balance Owing** | **$0.00** |

 

Invoice 61099 - 12/09/2021

# Credit Card Payment History

| Date | Reference | Note | Status | Amount |
|------|-----------|------|--------|--------|
| 12/09/2021 | Fuyan Wang<br>Visa ending in 4245 | Linked payment for Fuyan Wang | Completed | $400.55 |
| | | | **Total Payments** | **$400.55** |

# Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|-----------|-------------------|-------------|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|-----------|-------------------|-------------|
| 61099 | 12/09/2021 | $2,595.60 | $2,595.60 | $0.00 |
| | | | **Outstanding Balance** | **$2,500.00** |
| | | | **Amount in Trust** | **$0.00** |
| | | | **Total Amount Outstanding** | **$2,500.00** |

### 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|------|------|-------------|--------|----------|----------|---------|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a | $2,195.05 | | $0.00 |

Invoice 61099 - 12/09/2021

| | | | | | |
|---|---|---|---|---|---|
| | | Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | | |
| 01/10/2022 | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022   Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |
| | | **103 Frost IOLTA Trust Account Balance** | | $0.00 | |

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



**BARROWS**
FIRM
ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 61197
Date: 01/10/2022

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/
TD Represent Wife Fuyan Wang

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 12/02/2021 | Updated pleadings for De Novo Hearing | 0.25 | $0.00 | $0.00 |
| Service | 12/15/2021 | Received email from city of southlake concerning assault case. Arranged date for hearing. | 0.25 | $200.00 | $50.00 |
| Service | 12/16/2021 | Received email from City of Southlake with police footage. Downloaded footage and saved to client's file. | 0.50 | $200.00 | $100.00 |
| Service | 12/17/2021 | Drive to and from city of southlake police dept. Retrieved footage referring to citation. | 0.75 | $200.00 | $150.00 |
| Service | 12/20/2021 | Conference with Paralegal Dixon. Called opposing counsel regarding possession and access of chid. | 0.50 | $200.00 | $100.00 |
| Service | 12/21/2021 | Draft Request for Production and Request for Interrogatories to Respondent; | 1.50 | $175.00 | $262.50 |
| Service | 12/21/2021 | Review all drafts for discovery. | 0.75 | $200.00 | $150.00 |
| Service | 12/21/2021 | Conference with paralegals Dixon and Moore on Inventory and Appraisement. Reviewed and edited same. Discussed next steps for inventory and appraisement. | 1.50 | $200.00 | $300.00 |
| Service | 12/21/2021 | Conference with Attorney Ybarra and Paralegal Dixon on Inventory and Appraisement. Reviewed and edited same. Discussed next steps for inventory and appraisement. | 1.50 | $125.00 | $187.50 |
| Service | 12/21/2021 | Conference with Attorney Ybarra and Paralegal Moore on Inventory and Appraisement. Reviewed and edited same. Discussed next steps for inventory and appraisement. | 1.50 | $175.00 | $262.50 |
| Service | 12/27/2021 | E-serve OC with Discovery Request; Review e-mail from OC respond to same. | 0.50 | $175.00 | $87.50 |
| Service | 12/28/2021 | Meet with Client and Paralegal Moore re I & A | 1.50 | $175.00 | $262.50 |
| Service | 12/28/2021 | Meet with Client and Paralegal Dixon re I & A. | 1.50 | $125.00 | $187.50 |
| Service | 12/28/2021 | Called client, regarding ███████████, no answer, left voicemail. | 0.25 | $0.00 | $0.00 |
| Service | 12/28/2021 | Drafted Client's I&A. | 1.50 | $125.00 | $187.50 |
| Service | 12/29/2021 | Review and Finalize I&A e-serve to OC | 1.00 | $175.00 | $175.00 |

Invoice 61197 - 01/10/2022

| Service | 01/06/2022 | [redacted] with [redacted] send to client; Begin Drafting Response to Request for Production and Response to Request o Interrogatories | 1.50 | $175.00 | $262.50 |
|---|---|---|---|---|---|
| Service | 01/07/2022 | Called caseworker to discuss findings. No answer, left voicemail. | 0.25 | $200.00 | $50.00 |
| Service | 01/07/2022 | Called caseworker once again to discuss findings. No answer, Left voicemail. Sent email to caseworker in order to schedule a time to speak. | 0.25 | $200.00 | $50.00 |
| Service | 01/10/2022 | Call with caseworker regarding status of case. | 0.50 | $200.00 | $100.00 |
| Service | 01/10/2022 | Conference with Attorney Barrows; Conference with legal assistant Morado; reviewed southlake PD videos with legal assistant Morado; sent caseworker documents regarding case. | 0.75 | $200.00 | $150.00 |
| Service | 01/10/2022 | Received dropbox link from legal assistant Morado; Sent same to caseworker. | 0.25 | $200.00 | $50.00 |

| | | |
|---|---|---|
| **Total** | | **$3,125.00** |
| **Payment (01/11/2022)** | | **-$3,125.00** |
| **Balance Owing** | | **$0.00** |

## Credit Card Payment History

| Date | Reference | Note | Status | Amount |
|---|---|---|---|---|
| 01/11/2022 | Fuyanwang<br>Visa ending in 4245 | Linked payment for Fuyan Wang | Completed | $3,125.00 |
| | | | **Total Payments** | **$3,125.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 61197 | 01/10/2022 | $3,125.00 | $3,125.00 | $0.00 |

| | |
|---|---|
| **Outstanding Balance** | **$2,500.00** |
| **Amount in Trust** | **$0.00** |
| **Total Amount Outstanding** | **$2,500.00** |

### 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|---|---|---|---|---|---|---|
| 11/02/2021 | | Payment for | Wang.Fuyan-In the Matter of the Marriage of Conghua | | $400.00 | $400.00 |

Invoice 61197 - 01/10/2022

| | | | | | |
|---|---|---|---|---|---|
| | trust request: #60957 | Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | | |
| 11/03/2021 | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |
| 11/09/2021 | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $2,195.05 | | $0.00 |
| 01/10/2022 | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022  Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

**103 Frost IOLTA Trust Account Balance**      **$0.00**

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



# BARROWS
## FIRM
### ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 61302
Date: 01/24/2022

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

**In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/ TD Represent Wife Fuyan Wang**

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 01/01/2022 | Monthly Admin Fee - January. | 1.00 | $10.00 | $10.00 |
| Service | 01/11/2022 | Email from and to caseworker regarding status of case. Email to client regarding ▮ | 0.25 | $200.00 | $50.00 |
| Service | 01/11/2022 | Call with caseworker on case regarding status of case. Conference with Attorney Barrows and paralegal Dixon. | 0.50 | $200.00 | $100.00 |
| Service | 01/13/2022 | Received ▮ from client. Saved to file. Sent same to caseworker. | 0.25 | $200.00 | $50.00 |
| Service | 01/14/2022 | Called Southlake Police Department requesting information for records department; spoke to records department regarding subpoenas; drafted subpoena and business record affidavit; emailed same to records department for southlake police department. | 0.75 | $200.00 | $150.00 |
| Service | 01/18/2022 | Received email from Southlake PD; responded to same. | 0.25 | $200.00 | $50.00 |
| Service | 01/18/2022 | Received email from Southlake PD that documents are ready for pick up; responded to same. | 0.25 | $200.00 | $50.00 |
| Service | 01/18/2022 | Telephone call with Southlake municipal clerk regarding plea hearing. | 0.50 | $125.00 | $62.50 |
| Service | 01/19/2022 | E-mail to OC re; rescheduling De Novo Hearing; review response email from OC; E-mail to court re: new dates; Draft Notice Of Hearing; e-mail to court; Receive Notice of hearing from Court; Save to Court send to OC discuss case with Paralegal; email to translator re: change of Hearing | 2.00 | $175.00 | $350.00 |
| Service | 01/19/2022 | Conference with attorney Ybarra Regarding regarding municipal court docket for citation. | 0.25 | $125.00 | $31.25 |
| Service | 01/19/2022 | Conference with Paralegal Moore regarding municipal court docket for citation. | 0.25 | $200.00 | $50.00 |
| Service | 01/19/2022 | Emailed Southlake municipal clerk regarding requesting a translator and resetting plea hearing. | 0.25 | $125.00 | $31.25 |
| Service | 01/19/2022 | Emailed Client regarding ▮ ▮ | 0.25 | $125.00 | $31.25 |
| Service | 01/19/2022 | Telephone call with client regarding ▮ | 0.50 | $125.00 | $62.50 |
| Service | 01/19/2022 | Emailed caseworker new date for de novo hearing. | 0.25 | $200.00 | $50.00 |

Invoice 61302 - 01/24/2022

| | | | | | |
|---|---|---|---|---|---|
| Service | 01/19/2022 | Received and reviewed new admonishment hearing date from Municipal court; saved same to file. | 0.25 | $200.00 | $50.00 |
| Service | 01/20/2022 | Emailed Southlake municipal clerk regarding filling Motion to Dismiss for ciation. | 0.25 | $125.00 | $31.25 |
| Service | 01/20/2022 | Review motion and order to dismiss citation with Southlake municipal court. | 0.25 | $200.00 | $50.00 |
| Service | 01/20/2022 | Drafted Motion to Dismiss and Order for Southlake municipal court and emailed to clerk. | 0.75 | $125.00 | $93.75 |
| Service | 01/20/2022 | Telephone call with client regarding ▮▮▮▮▮▮▮▮ | 0.25 | $125.00 | $31.25 |
| Service | 01/20/2022 | Drive to and from City of Southlake municipal court to pick up records requested via subpoena. | 0.75 | $200.00 | $150.00 |
| Service | 01/24/2022 | Initial draft of notice of subpoena. | 0.25 | $200.00 | $50.00 |

|  |  |
|---|---|
| **Total** | **$1,585.00** |
| **Payment (01/24/2022)** | **-$1,585.00** |
| **Balance Owing** | **$0.00** |

## Detailed Statement of Account

### Other Invoices

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 61302 | 01/24/2022 | $1,585.00 | $1,585.00 | $0.00 |
| | | | **Outstanding Balance** | $2,500.00 |
| | | | **Amount in Trust** | $0.00 |
| | | | **Total Amount Outstanding** | $2,500.00 |

### 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|---|---|---|---|---|---|---|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a | $400.00 | | $4,000.00 |

Invoice 61302 - 01/24/2022

Child:.Tarrant County Divorce Cause No. 325-707596-21//
LB/SY/TD Represent Wife Fuyan Wang

| Date | | Description | | Amount | | |
|---|---|---|---|---|---|---|
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $2,195.05 | | $0.00 |
| 01/10/2022 | | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022 | Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

**103 Frost IOLTA Trust Account Balance**                    **$0.00**

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



### BARROWS FIRM
ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 61515
Date: 03/02/2022

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/ TD Represent Wife Fuyan Wang

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 01/24/2022 | Called and emailed opposing counsel regarding extention for discovery responses. | 0.25 | $125.00 | $31.25 |
| Service | 01/24/2022 | Scan in documents from southlake police department. | 0.25 | $200.00 | $50.00 |
| Service | 01/24/2022 | Reviewed rule 11 agreement regarding request for production and inspection and written interrogatories. | 0.25 | $200.00 | $50.00 |
| Service | 01/24/2022 | Conference with paralegal Dixon regarding subpoenas. | 0.25 | $200.00 | $50.00 |
| Service | 01/24/2022 | Drafted Rule 11 agreement for discovery extention and sent to OC Pigg via email. | 0.50 | $125.00 | $62.50 |
| Service | 01/24/2022 | Emailed opposing counsel regarding subpoenaed police records. | 0.25 | $125.00 | $31.25 |
| Service | 01/25/2022 | Call with opposing counsel regarding police records. | 0.25 | $200.00 | $50.00 |
| Service | 01/25/2022 | Met with client and translator to review ▮▮▮▮ | 2.00 | $125.00 | $250.00 |
| Service | 01/25/2022 | Receipt of signed Rule 11 agreement from OC. E-filed Rule 11 agreement for discovery extention. Saved file marked copy in client's file. | 0.25 | $125.00 | $31.25 |
| Service | 01/25/2022 | Reviewed and saved subpoenaed police records to client's file. Created Drop Box link to records for OC. Drafted letter to OC regarding police records. Emailed OC letter and Drop Box link. | 0.50 | $125.00 | $62.50 |
| Service | 01/25/2022 | Review letter to opposing counsel concerning police record CD's | 0.25 | $200.00 | $50.00 |
| Service | 01/25/2022 | Scanned and sent Police Reports to Samantha | 0.25 | $0.00 | $0.00 |
| Service | 01/25/2022 | E-serve Notice, Affidavit and records ; send to OC | 0.50 | $175.00 | $87.50 |
| Service | 01/26/2022 | Discuss Discovery with paralegal Moore | 0.50 | $175.00 | $87.50 |
| Service | 01/26/2022 | Met with client ▮▮▮▮▮▮▮▮▮. | 2.00 | $125.00 | $250.00 |
| Service | 01/26/2022 | Discuss Discovery with paralegal Dixon. | 0.50 | $125.00 | $62.50 |
| Service | 01/26/2022 | Conference with Paralegal Moore. Called CPS worker regarding status of CPS case. | 0.50 | $200.00 | $100.00 |

Invoice 61515 - 03/02/2022

| | | | | | |
|---|---|---|---|---|---|
| Service | 01/26/2022 | Conference with Attorney Ybarra regarding status of CPS case. | 0.25 | $125.00 | $31.25 |
| Service | 01/27/2022 | Called city of southlake police department re update on dismissal. No answer, left voicemail. | 0.25 | $200.00 | $50.00 |
| Service | 01/27/2022 | Telephone call with Camille Ross re hearing next week. | 0.25 | $200.00 | $50.00 |
| Service | 01/28/2022 | Downloaded pleadings, digital file. Printed and added to Physical file. | 0.50 | $125.00 | $62.50 |
| Service | 01/28/2022 | Telephone call with client regarding ███████████████████. | 0.25 | $125.00 | $31.25 |
| Service | 01/28/2022 | Sent client ██████████████████ | 0.25 | $0.00 | $0.00 |
| Service | 01/28/2022 | Prepared USB drive for client re file for Southlake Citation. | 0.25 | $125.00 | $31.25 |
| Service | 02/01/2022 | Called client to ████████████████████ | 0.25 | $0.00 | $0.00 |
| Service | 02/01/2022 | Review and Copy records from client | 0.50 | $175.00 | $87.50 |
| Service | 02/01/2022 | Attended hearing at municipal court with client; attended fingerprinting with client; scan in documents and save to client's file. | 2.00 | $250.00 | $500.00 |
| Service | 02/01/2022 | Monthly Admin Fee - Feb. | 1.00 | $10.00 | $10.00 |
| Service | 02/03/2022 | Reviewed and scanned production documents from client. | 0.50 | $125.00 | $62.50 |
| Service | 02/03/2022 | Conference with Paralegal Moore; begin to Review discovery | 0.75 | $175.00 | $131.25 |
| Service | 02/04/2022 | Continued drafting client's discovery. | 2.00 | $125.00 | $250.00 |
| Service | 02/07/2022 | Conference with Attorney Barrows and Paralegal Dixon; calendar response date to Petitioner's original petition to adjudicate parentage. | 0.25 | $250.00 | $62.50 |
| Service | 02/08/2022 | Draft Respondent's Original Answer - Adjudicate Parentage; e-file with court | 1.00 | $175.00 | $175.00 |
| Service | 02/08/2022 | Review and edit Respondent's Original Answer to Original Petition to Adjudicate Parentage. | 0.50 | $250.00 | $125.00 |
| Service | 02/09/2022 | review e-mail from opposing counsel; conference with attorney Barrrows and Ybarra; respond to Opposing counsels e-mail | 0.75 | $175.00 | $131.25 |
| Service | 02/09/2022 | Review email from opposing counsel; conference with Paralegal Dixon. | 0.50 | $250.00 | $125.00 |
| Service | 02/09/2022 | Saved all production documents from opposing counsel to client's file. | 0.50 | $125.00 | $62.50 |
| Service | 02/09/2022 | Conference with Paralegal Dixon re motion for adjudication of parentage. | 0.50 | $250.00 | $125.00 |
| Service | 02/10/2022 | Review Discovery with Paralegal Moore; discuss case with attorney Ybarra | 0.75 | $175.00 | $131.25 |
| Service | 02/10/2022 | Email to Tarrant County Family Court Services re rescheduling of de novo hearing. | 0.25 | $250.00 | $62.50 |
| Service | 02/10/2022 | Review and revise respondent's written interrogatories; conference with Paralegal Dixon. | 1.00 | $250.00 | $250.00 |
| Service | 02/10/2022 | Phone call with client regarding ████████████ | 0.25 | $0.00 | $0.00 |
| Service | 02/10/2022 | Completed drafting client's discovery, Redacted, and bates labelled supporting documents. | 2.00 | $125.00 | $250.00 |
| Service | 02/10/2022 | Received and saved Unopposed Motion for Continuance and Proposed Order to client's file. | 0.25 | $125.00 | $31.25 |
| Service | 02/11/2022 | Reviewed initial draft discovery; conference with Paralegal Moore and Paralegal Dixon re discovery; reviewed and revised final draft of discovery. | 0.75 | $250.00 | $187.50 |
| Service | 02/11/2022 | Finalized Discovery and created DropBox link to production documents. E-Served to opposing counsel discovery and emailed opposing counsel same. | 0.50 | $125.00 | $62.50 |
| Service | 02/11/2022 | In person meeting with client to notarize interrogatories and questions for attorney. | 0.25 | $125.00 | $31.25 |
| Service | 02/14/2022 | Review e-mail from opposing Counsel; Reply to E-mail | 0.25 | $175.00 | $43.75 |
| Service | 02/15/2022 | Receive Discovery request from OC; Save to file; Send ████████████ client re: | 1.75 | $175.00 | $306.25 |

Invoice 61515 - 03/02/2022

| Service | 02/15/2022 | Conference with Paralegal Dixon re discovery; review letter from OC re discovery. | 0.50 | $250.00 | $125.00 |
|---------|------------|-----------------------------------------------------------------------------------|------|---------|---------|
| Service | 02/16/2022 | Received signed Order on Continuance; save to file | 0.25 | $175.00 | $43.75 |
| Service | 02/16/2022 | Adjudicate Parentage Case: Began drafting discovery responses. | 1.00 | $125.00 | $125.00 |
| Service | 02/21/2022 | Email correspondence and phone call with client regarding ▇▇▇▇▇ | 0.50 | $0.00 | $0.00 |
| Service | 02/22/2022 | Review discovery; Meeting with client re: ▇▇▇▇ | 1.50 | $175.00 | $262.50 |
| Service | 02/22/2022 | Meeting with client and translator regarding ▇▇▇▇▇ | 1.04 | $125.00 | $130.00 |
| Service | 02/23/2022 | Call with client regarding ▇▇▇▇▇▇▇▇ | 0.25 | $125.00 | $31.25 |
| Service | 02/25/2022 | Email correspondence with client and in person meeting regarding ▇▇▇▇▇ ▇▇▇▇▇ | 0.50 | $125.00 | $62.50 |
| Service | 02/25/2022 | Received ▇▇▇▇ from client, saved in file. | 0.25 | $125.00 | $31.25 |
| Service | 02/25/2022 | Drafted Respondent's Response to Admission, Production and Inspection and Interrogatories. | 1.25 | $125.00 | $156.25 |
| Service | 02/28/2022 | Scanned in and saved all ▇▇▇ brought by client. | 0.25 | $125.00 | $31.25 |
| Service | 02/28/2022 | Begin Reviewing Wang Discovery; Parentage Case | 0.75 | $175.00 | $131.25 |
| Service | 02/28/2022 | Bates Numbered pictures brought in from client. Combines documents | 0.50 | $125.00 | $62.50 |
| Service | 03/01/2022 | Draft Respondent's Certificate Discovery | 0.25 | $175.00 | $43.75 |
| Service | 03/01/2022 | Review and edit Response to Interrogatories , Production and Admissions with Attorney DeFranco and Ybarra; e-Serve Discovery; e-file Certificate Of discovery | 1.75 | $175.00 | $306.25 |
| Service | 03/01/2022 | Called client to come in to the office to sign Response to Written Interrogatories. Met with client in office and assisted and notarized Response to Written Interrogatories. Scanned and saved in file. | 0.50 | $125.00 | $62.50 |
| Service | 03/01/2022 | Review and edit Response to Interrogatories , Production and Admissions with Attorney DeFranco and Paralegal Dixon | 1.30 | $250.00 | $325.00 |
| Service | 03/01/2022 | Review and edit Response to Interrogatories , Production and Admissions with Attorney Ybarra and Paralegal Dixon | 1.30 | $225.00 | $292.50 |
| Service | 03/01/2022 | Client provided Discover Statements from account ending in ▇▇ . Scanned and saved in file. | 0.25 | $125.00 | $31.25 |
| Service | 03/01/2022 | Monthly Admin Fee - March. | 1.00 | $10.00 | $10.00 |

| | |
|---|---|
| **Total** | **$7,030.00** |
| **Payment (03/02/2022)** | **-$915.00** |
| **Payment (03/09/2022)** | **-$1,500.00** |
| **Payment (03/09/2022)** | **-$615.00** |
| **Payment (03/21/2022)** | **-$800.00** |
| **Payment (04/10/2022)** | **-$700.00** |
| **Balance Owing** | **$2,500.00** |

## Credit Card Payment History

| Date | Reference | Note | Status | Amount |
|---|---|---|---|---|
| 03/09/2022 | Fuyanwang<br>Visa ending in 0511 | Linked payment for Fuyan Wang | Completed | $1,500.00 |
| 03/09/2022 | Fuyanwang<br>Visa ending in 2049 | Linked payment for Fuyan Wang | Completed | $615.00 |
| 04/10/2022 | Fuyanwang<br>Visa ending in 4245 | Linked payment for Fuyan Wang | Completed | $700.00 |
| | | | **Total Payments** | **$2,815.00** |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|---|---|---|---|---|
| 61515 | 03/02/2022 | $7,030.00 | $4,530.00 | $2,500.00 |
| | | | **Outstanding Balance** | **$2,500.00** |
| | | | **Amount in Trust** | **$0.00** |
| | | | **Total Amount Outstanding** | **$2,500.00** |

### 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|---|---|---|---|---|---|---|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// | $2,195.05 | | $0.00 |

LB/SY/TD Represent Wife Fuyan Wang

| 01/10/2022 | | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| --- | --- | --- | --- | --- | --- | --- |
| 01/24/2022 | | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022 | Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

**103 Frost IOLTA Trust Account Balance**   $0.00

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.



**BARROWS**
—— FIRM ——
ATTORNEYS & MEDIATORS

520 E. Southlake Blvd., Suite 140
Southlake, TX 76092
Phone: 817-481-1583 817-481-1583
www.barrowsfirm.com

Invoice 61737
Date: 04/12/2022

Mrs. Fuyan Wang
207 Meadowlark Ln
Southlake, TX 76092

**Adjudicate Parentage ONLY: In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child.: Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang**

| Type | Date | Description | Quantity | Rate | Total |
|------|------|-------------|----------|------|-------|
| Service | 03/08/2022 | ADJ Review Subpoena to compel Production of Documents and Tangible things; save to file | 0.25 | $175.00 | $43.75 |
| Service | 03/23/2022 | Draft Notice of Intention to Take Oral Deposition of Conghua Yan | 1.00 | $175.00 | $175.00 |
| Service | 03/25/2022 | In-Person Meeting with client Re ███████████████████████. | 0.25 | $0.00 | $0.00 |
| Service | 03/25/2022 | Conference with legal assistant Moore re ██████ dropped off by client. | 0.25 | $250.00 | $62.50 |
| Service | 04/01/2022 | Received, Scanned and Saved Daughter's ████████. | 0.50 | $125.00 | $62.50 |
| Service | 04/11/2022 | Began drafting Summary of Fees | 0.25 | $125.00 | $31.25 |
| Service | 04/11/2022 | Drafted Affidavit of Attorneys Fees | 0.50 | $125.00 | $62.50 |
| | | | | **Total** | **$437.50** |

## Detailed Statement of Account

### Current Invoice

| Invoice Number | Due On | Amount Due | Payments Received | Balance Due |
|----------------|--------|------------|-------------------|-------------|
| 61737 | 04/12/2022 | $437.50 | $0.00 | $437.50 |
| | | | **Outstanding Balance** | **$437.50** |
| | | | **Amount in Trust** | **$0.00** |
| | | | **Total Amount Outstanding** | **$437.50** |

Invoice 61737 - 04/12/2022

## 103 Frost IOLTA Trust Account

| Date | Type | Description | Matter | Receipts | Payments | Balance |
|------|------|-------------|--------|----------|----------|---------|
| 11/02/2021 | | Payment for trust request: #60957 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $400.00 | $400.00 |
| 11/03/2021 | | Retainer | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $4,000.00 | $4,400.00 |
| 11/09/2021 | | Payment for invoice #60959 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $400.00 | | $4,000.00 |
| 11/09/2021 | | Payment for invoice #60975 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $3,804.95 | | $195.05 |
| 11/10/2021 | | Payment for trust request: #60977 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,000.00 | $2,195.05 |
| 12/09/2021 | | Payment for invoice #61099 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $2,195.05 | | $0.00 |
| 01/10/2022 | | Clio Payment applied to trust request #61198 for Fuyan Wang | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $2,500.00 | $2,500.00 |
| 01/24/2022 | | Payment for invoice #61302 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $1,585.00 | | $915.00 |
| 03/02/2022 | | Payment for invoice #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $915.00 | | $0.00 |
| 03/21/2022 | Cash | Paid in Cash in Office. | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | | $800.00 | $800.00 |
| 03/21/2022 | | Payment for bill #61515 | Wang.Fuyan-In the Matter of the Marriage of Conghua Yan and Fuyan Wang, and ITIO Shiming Yan, a Child:.Tarrant County Divorce Cause No. 325-707596-21// LB/SY/TD Represent Wife Fuyan Wang | $800.00 | | $0.00 |

|  | **103 Frost IOLTA Trust Account Balance** | **$0.00** |
|--|--|--|

Please make all amounts payable to: Barrows Firm, P.C.

Payment is due upon receipt.


56 / 70

# EXHIBIT 6

Leslie Starr Barrows
Attorney and Mediator
lbarrows@barrowsfirm.com

Samantha Ybarra
Attorney
samantha@barrowsfirm.com



**BARROWS**
FIRM
ATTORNEYS & MEDIATORS

December 6, 2021

Clerks@ci.southlake.tx.us
City of Southlake Municipal Court
600 State Street,
Southlake, Texas 76092

RE:     *Letter of Representation for Fu Yan Wang; Citation #E0129990*

To Whom It May Concern:

Please allow this correspondence to serve as notice that my firm currently represents Ms. Fu Yan Wang in an ongoing family law matter and citation #E0129990.

Kindly include myself and my paralegal, Tisha Dixon (tisha@barrowsfirm.com) on all communications with Ms. Wang in relation to your recent inquiries and any investigation or case moving forward.

I appreciate your cooperation in this regard.

Sincerely,

Samantha Ybarra
Attorney for Fu Yan Wang

cc: Client

58 / 70



February 1, 2022

CAUSE NUMBER:  E0129990-1
OFFENSE: ASSAULT BY CONTACT- FAMILY VIOLENCE

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE MUNICIPAL COURT |
| | § | |
| | § | CITY OF SOUTHLAKE |
| VS | § | |
| | § | DENTON/TARRANT COUNTY, TEXAS |
| FUYAN WANG | | |

**FIREARM ADMONISHMENT UPON CONVICTION FOR FAMILY VIOLENCE MISDEMEANOR**

I, FUYAN WANG, Defendant in the above styled and numbered case have been admonished by the court of the following pursuant to Article 27.14, Code of Criminal Procedure:

> **If you are convicted of a misdemeanor offense involving violence where you are or were a spouse, intimate partner, parent, or guardian of the victim or are or were involved in another, similar relationship with the victim, it may be unlawful for you to possess or purchase a firearm, including a handgun or long gun, or ammunition, pursuant to federal law under 18 U.S.C. Section 922(g)(9) or Section 46.04(b), Texas Penal Code. If you have any questions whether these laws make it illegal for you to possess or purchase a firearm, you should consult an attorney.**

**59 / 70**

I have read and understand the above admonishment of potential consequences for a conviction of a misdemeanor involving family violence as defined by Section 71.004, Texas Family Code.

Signed on February 1, 2022

_Fu Yan Wang_
_____
Defendant Signature

_Samantha Yana_
_____
Attorney for Defendant

# EXHIBIT 7

60 / 70

# ASSOCIATE JUDGE'S REPORT
### CASE NO. 325- 707596-21

RESET DATE: _____
RESET TIME: _____

Hearing Date(s): 11-08-21 + 11-09-2021

Cong Hua Yan
v.
Fu Yan Wang

INFO: ████████

IN THE 325th JUDICIAL DISTRICT COURT
TARRANT COUNTY, TEXAS
( ) Modification of _____
( ) Final (parties waived reporter and appeal to referring court) _____ Dated _____
(X) Temporary Orders

( ) AGREEMENT   ( ) DEFAULT   (X) CONTESTED HEARING

**APPEARANCES:**
(X) Movant Conghua Yan _____ in person
(X) Attorney: Anita Cutrer   ( ) Pro Se
( ) Movant did not appear
( ) Other: cutrer@familylawtex.com

(X) Respondent Fuyan Wang _____ in person
(X) Attorney: Leslie Barrows   ( ) Pro Se
( ) Respondent did not appear
L.barrows@barrowsfirm.com

**FINDINGS:** _____
_____
_____

**CONSERVATORSHIP:**
(X) Joint Managing Conservators   ( ) Sole Managing: _____
(X) Geographic Restriction:   (X) TARRANT   ( ) OTHER: _____   ( ) Possessory: _____
(X) Rights and Duties attached Exhibit "A"

**POSSESSION SCHEDULE FOR:** ( ) MOTHER (X) FATHER   ( ) OTHER
( ) Texas Family Code (Standard) § 153 ...

███████████████████████████

**CHILD ...**

$ 1,380.00 PER month ____ ON _____ BEGINNING 12-01-2021
Medical Insurance Provided by: ( ) Mother (X) Father   ( ) CHIPS or Medicaid   ( ) Private
Insurance Cost Paid by: ( ) Mother (X) Father   ( ) Cash Medical Support $ _____
Uninsured Health Care Costs Paid: (X) Equally ( ) _____

**OTHER ORDERS AS TO CHILD(REN):**
The Parties are ORDERED to the following:
( ) **CLASSES:**
Each parent shall pay own costs and file a certificate of completion within _____ Class
( ) **COUNSELING:** For: _____ with: _____ days.
Minimum of 5 sessions over next _____ days. Fees: _____
(X) **OTHER ORDERS AS TO CHILDREN:**

███████████████████████████

Page 1 of 3

**TEMPORARY SPOUSAL SUPPORT:**
    ( ) Wife      ( ) Husband      PAYS <u>DIRECTLY</u> TO SPOUSE
    $_____ PER _____ ON _____ BEGINNING _____

**TEMPORARY POSSESSION OF PROPERTY:**
    HUSBAND: *his vehicle, his personal belongings,*

_Each party is awarded $5000.00 (OR ½) of the account with an approx 10,000.00_
_balance to be used for attorney's fees and monthly expenses. To be paid to Wife by noon_
_on 4-16-2021._

**62/70**    Within 14 days, formal orders in conformity with this report shall be prepared by _*Anita Cutrer*_
and submitted to the Court and opposing counsel/party.  Failure to do so may result in case being placed on dismissal
docket.  The Court will sign said Orders 10 days after receipt, absent written objection from opposing counsel/party.
    As evidenced by their signatures below:
    ( ) All attorneys and parties acknowledge receipt of a copy of this report.
    ( ) This report reflects the agreement of the parties.
    ( ) All attorneys and parties have consented in open Court to receive this report via facsimile or email.

**Movant** _____        **Respondent** _____

**Attorney for Movant Phone:**_____        **Attorney for Respondent Phone:**_____
            Fax: _____                          Fax: _____
            Email: _____                          Email: _____

**SO ORDERED:**                              **APPROVED & SO ORDERED:**

_____        _____
**ASSOCIATE JUDGE**            **DATE**        ~~**JUDGE PRESIDING**~~            **DATE**

Page 2 of _3_

**ORDERS CONTINUED:**          **CAUSE NUMBER: 325-** 707596-21

Any bonuses received by husband are to be deposited into his attorneys trust account, unless the parties/attorneys agree otherwise.

_Lori Lee Angel_   11-10-2021

**ASSOCIATE JUDGE**          **DATE**     **DISTRICT JUDGE**          **DATE**

Page 3 of 3

63 / 70

## ASSOCIATE JUDGE'S REPORT

Cause No. 325- __707596-21__

Conghua Yan

Fuyan Wang

IN THE 325TH DISTRICT COURT

TARRANT COUNTY, TEXAS

FILED
TARRANT COUNTY
22 APR 14  AM 9:11
THOMAS A. WILDER
DISTRICT CLERK

**1. APPEARANCES:**
( ) MOVANT IN PERSON & BY ATTORNEY
(X) RESPONDENT IN PERSON & BY ATTORNEY
( ) AMICUS ATTORNEY
( ) DOMESTIC RELATIONS OFFICE
( ) ATTORNEY GENERAL
( ) FAMILY COURT SERVICES

William Pigg
Leslie Barrows

**2. ORDERS OR AGREEMENT:**

Mr. Yan testified that he has $100,000.00 in a retirement account at U.S. Bank.

Mr. Yan is ordered to withdraw or borrow $50,000 from his retirement account or as much as allowed. Each attorney is awarded $25,000.00 in fees. Mr. Yan is responsible for the cost of QDRO.

SO ORDERED

ASSOCIATE JUDGE
DATE: 4-13-2022

APPROVED AND IT IS SO ORDERED

PRESIDING JUDGE
DATE:

This recommendation/report is a standing order of the Court and will not be considered a final, appealable order until a typed order is signed by the District Judge. Failure to submit a typed order pursuant to this recommendation/report subjects this matter to being placed on the Court's DWOP docket. Counsel, _____ is ORDERED to submit the typewritten order to the Court no later than the _____ day of _____, 20___.

Page __2__ of __2__

# EXHIBIT 8

65 / 70

CAUSE NO. <u>325-707596-21</u>

| | | |
|---|---|---|
| **IN THE MATTER OF** | § | **IN THE DISTRICT COURT** |
| **THE MARRIAGE OF** | § | |
| | § | |
| **CONGHUA YAN** | § | |
| **AND** | § | **325ᵗʰ JUDICIAL DISTRICT** |
| **FUYAN WANG** | § | |
| | § | |
| **AND IN THE INTEREST OF** | § | |
| **SHIMING YAN, A CHILD** | § | **TARRANT COUNTY, TEXAS** |

### ORDER FOR GARNISHMENT OF U.S. BANK 401 (K) SAVINGS PLAN

On April 13, 2022, the Court heard Respondent's request for Spousal Support *inter alia*.

WHEREAS, this Court has jurisdiction over all parties and over the subject matter of spousal support in this case.

WHEREAS this Court intends this order to be a Domestic Relations Order.

WHEREAS this order is being using to collect amounts owed as spousal support.

WHEREAS by order of this court, Participant, Conghua Yan, was ordered/required to pay spousal support to Fuyan Wang, which is currently is in the balance of $25,000.00.

IT IS HEREBY ORDERED by the Court as follows:

*DEFINITIONS:*

"PARTICIPANT":

- Conghua Yan
- Social Security Ending **8618**
- Address: 207 Meadowlark Lane, Southlake, Texas 76092
- Phone: (214) 228-1886

"ALTERNATE PAYEE (SPOUSE)":
- Fuyan Wang
- Social Security Ending **7562**
- Address: 207 Meadowlark Lane, Southlake, Texas 76092

• Phone: (682) 408-2808

"Plan":
• U.S. Bank 401 (k) Savings Plan

"Plan Administrator":
• U.S. Bank 401(k) Savings Plan
• U.S. Bank
  **Attn: Garnishment Department**
  800 Nicollet Mall
  Minneapolis, MN 55402-4302

### *COLLECTION OF SPOUSAL SUPPORT*

IT IS ORDERED that the retirement account at U.S. Bank pay to Fuyan Wang, $25,000.00 from the U.S. Bank 401 (k) Savings Plan of Conghua Yan to satisfy this obligation.

IT IS FURTHER ORDERED that the payment shall be made payable to Fuyan Wang c/o The Barrows Firm P.C., 520 E. Southlake Blvd. Suite 140, Southlake, Texas 76092

### *LIMITATIONS ON ORDER*

THE COURT FINDS that nothing contained in this Order shall be construed to require the Plan to provide for any type or form of benefits, or any option, not otherwise provided under the Plan to the Alternate Payee.

SIGNED on _____, 2022.

_____
PRESIDING JUDGE

THE BARROWS FIRM, P.C.
520 E. Southlake Blvd., Suite 140
Southlake, Texas 76092
Phone: 817-481-1583
Fax: 817-912-1380

*Leslie S. Barrows*

Leslie Starr Barrows
State Bar No. 24048343
Email: lbarrows@barrowsfirm.com
Danielle DeFranco
State Bar No. 24127415
Email: danielle@barrowsfirm.com
Erin B. Healey
State Bar No. 24041073
Email: erin@barrowsfirm.com
Samantha Ybarra
State Bar No. 24104627
Email: samantha@barrowsfirm.com
Attorney's for Fuyan Wang


WILLIAM A. PIGG. PLLC

William A. Pigg
SBN 24057009
wapiggpigglawfirm.com
10455 N. Central Expressway, Suite 109
Dallas, Texas 75231
Tel. (214) 551-9391
Fax (214) 602-8832
Attorney for CONGHUA YAN

---

**ORDER FOR GARNISHMENT OF U.S. BANK 401 (K) SAVINGS PLAN**      Page 3 of 3
*Wang; Cause No. 325-707596-21*

# EXHIBIT 9

**69 / 70**

# ASSOCIATE JUDGE'S REPORT

CASE NO. 360- 54924 6-13

IN THE MATTER OF THE MARRIAGE OF:
IN THE INTEREST OF:

IN THE 360th DISTRICT COURT

TARRANT COUNTY, TEXAS

1. **APPEARANCES:**
   - [X] PETITIONER/MOVANT IN PERSON
   - ( ) PETITIONER/MOVANT DID NOT APPEAR
   - [X] ATTY: D Williams
   - [X] RESPONDENT IN PERSON
   - ( ) RESPONDENT DID NOT APPEAR
   - ( ) ATTY: ProSe

   - ( ) OTHER: _____

2. **FINDINGS:**

   Case reset for review : 6/23/14 @ 8:30 am

3. **ORDERS:**

   1) Mr Goodwin shall be allowed to withdraw $12,000.00 from his 401(k): $6,000 to Mrs Goodwin
   2) Pretrial today. $6,000.00 to for atty's fees held in Mrs Williams Mrs Williams IOLTA pending for atty's fees her taux pro required

**SO ORDERED:**

Cynthia Mendoza  4-21-14

ASSOCIATE JUDGE        DATE

**APPROVED AND SO ORDERED:**

All orders not modified herein shall remain in full force & effect

PRESIDING JUDGE        DATE

letter training yes