**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |

**RESPONSE/OBJECTION TO MOTION TO DISMISS**
**BY LORI L. DEANGELIS**
**AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                                      2

INDEX OF AUTHORITIES                                                                                   3

I.      INTRODUCTION                                                                                   5

II.     STANDARD OF REVIEW                                                                            8

III.    SUMMARY OF MOTION TO DISMISS                                                                 10

IV.     ARGUMENT AND AUTHORITIES                                                                     11

**A.    Lacks standing**                                                                             **11**
   1.   Presiding Judge;                                                                             11

**B.    Abstention**                                                                                 **13**
   1.   Abstain from deciding issues pending in state court;                                         13

**C.    Failed to state a claim**                                                                    **14**
   1.   Claims against Associate Judge DeAngelis are barred by judicial immunity;                    15
   2.   Official capacity claims are barred by Eleventh Amendment Immunity;                          17
   3.   Individual capacity claims are barred by qualified immunity;                                 19
   4.   Cannot enjoin Associate Judge DeAngelis;                                                     19
   5.   Has not stated a civil RICO claim;                                                           22

**D.    Jurisdiction of family court**                                                               **22**
   1.   Jurisdiction for collecting legal fees.                                                      23

V.      CONCLUSION                                                                                   25

VI.     PRAYER FOR RELIEF                                                                            28

CERTIFICATE OF SERVICE                                                                               29

# INDEX OF AUTHORITIES

**CASES**

*Allen v. Booth,* Civil Action No. 08-135, (E.D. Ky. Nov. 5, 2008)...................................................17

Axon Enterprise, Inc. v. Federal Trade Commission et al ...........................................................19

*Bazile v. Fin. Sys. of Green Bay, Inc.* 983 F.3d 274, 280-81 (7th Cir. 2020).................................7

*Brandon E. ex Rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000)..........................14

Cicalese v. Univ. of Tex. Med Branch, 924 F.3d 762, 766–67 (5th Cir. 2019) ............................7

*Civil Rights Corps. v. Pestana*, 21 Civ. 9128 (VM), 29 (S.D.N.Y. May. 5, 2022)........................18

Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986)........................................................7

*Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994)...............21

*D. Bart Rockett v. The Honorable Eric Eighmy*, 21-3903 (8th Cir. 2023)....................................15

*Davis v. Sec'y of State*, 951 N.W.2d 911, (Mich. 2020)...............................................................14

*Deangelis v. Protective Parents Coal.* , 556 S.W.3d 836 (Tex. App. 2018)..................................5

*Forrester v. White*, 484 U.S. 219, 227 (1988).............................................................................15

Fuller v. Ulland, 858 F. Supp. 931, 934 (D. Minn. 1994) .............................................................12

*Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 279 (5th Cir. 2022)....................................................18

Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999) ..................................................................7

Kling v. Hebert, 60 F.4th 281, 284 (5th Cir. 2023) .........................................................................9

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) ............8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ..............9

*Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)..................................................................................15

*Mireles v. Waco*, 502 U.S. 9, 12 (1991)........................................................................................24

*Nashville Cmty. Bail Fund v. Gentry*, 446 F. Supp. 3d 282, 301 (M.D. Tenn. 2020). ................20

*Pulliam v. Allen*, 466 U.S. 522, 540 (1984) .................................................................................14

*Pulliam v. Allen*, 466 U.S. 522, 540-41 (1984) ...........................................................................14

*Pulliam v. Allen*, 466 U.S. 522, 541 n.21 (1984) ........................................................................14

*Pulliam v. Allen*, 466 U.S. 522, 542 (1984) .................................................................................15

*Pure, Ltd. v. Shasta Beverages*, Inc., 691 F. Supp. 1274, 1279 (D. Haw. 1988). ........................7

*Rodriguez v. City of New York*, 861 F. Supp. 1173, 1186 (S.D.N.Y. 1994) ...................................8

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)...............................................................................9

Scheuer v. Rhodes, 416 U.S. 232, 237-38 (1974)........................................................................9, 16

Scheuer v. Rhodes, 416 U.S. 232, 241-42 (1974).........................................................................22

*Stewart v. Wells*, No. 4:19-CV-00598-P-BP, 2020 WL 3146866 ................................................11

*Tamiami Parts. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1045 (11th Cir. 1995). ............19

*United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir. 1979) .....................................................12

*United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014) ..............................................21

Vander Zee v. Reno, 73 F.3d 1365, 1368 (5th Cir. 1996) ...............................................................7

*Wood v. Parker Cnty*. (5th Cir. 2012) .........................................................................................15

*Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). ......................................17

*Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ..............................................23

**STATUTES**

*18 U.S.C. § 1961*(5) ......................................................................................................................22

*18 U.S.C. § 1962(c)* ......................................................................................................................27

*18 U.S.C. § 1962(d)* ......................................................................................................................27

*18 U.S.C. § 664* ............................................................................................................................18

29 U.S.C. § 1132 ..............................................................................................................................5

29 U.S.C. § 1144.............................................................................................................................5, 6

Tex. Fam. Code § 155.001 .............................................................................................................6, 12

Tex. Fam. Code § 201.004(a)(b) ........................................................................................................... 7
Tex. Fam. Code § 201.004(b) ............................................................................................................. 12
Tex. Fam. Code § 201.017 .................................................................................................................. 16
Tex. R. Disc. Prof'l. Cond ..................................................................................................................... 7
Texas Constitutional, Article 16 ......................................................................................................... 6

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this Response/Objection to Defendant's Motion to Dismiss by Lori L. DeAngelis. ECF No 69.

## I.   Introduction

1.      Defendant in this suit, Lori L. DeAngelis (hereinafter referred to as "Lori" or "DeAngelis" or "Defendant") submitted Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) or, alternatively, 12(b)(6).

2.      In the third amended complaint, ECF No 60, following claims applied to Defendant:

- *First Claim for Relief, RICO (Individual)*

- *Second Claim for Relief, AntiTrust(Individual)*

- *Third Claim for Relief, 42 U.S.C. §§ 1983(Official and Individual)*

3.      In section "I. INTRODUCTION AND SUMMARY OF RELIEF" of Motion to Dismiss, Defendant's counsel <u>only referred 2 claims that Plaintiff made</u>, said "for alleged constitutional violations under section 1983 and for alleged RICO violations. Id., ¶¶ 16, 135-203 (RICO claim), 275-295 (1983 claim)." Defendant's counsel **<u>never</u>** addressed any Plaintiff's **<u>allegation</u>** in the **<u>Second Claim for AntiTrust</u>** <u>before this Court</u>. Therefore, Defendant's argument is insufficient and ineffective.

4.      Defendant's counsel persistently tried to obfuscate the issues by referring to "ongoing family court litigation." Contrary to how Defendant's counsel attempted to mischaracterize the situation, Plaintiff **did not** come to this Court seeking relief of same subject matter related to child custody, child support, or marital property division. Plaintiff came to this Court to address the reliefs arising from racketeering activities, which consist of unlawfully depriving Texas residents, including Plaintiff, of federally ERISA protected **out of state** employee retirement funds. These racketeering activities violated Federal RICO, ERISA and the Fourteenth Amendment.

5.      ERISA cases fall **exclusively** under federal jurisdiction, in accordance with 29 U.S.C. § 1132(a), (e), (f) and (g). 29 U.S.C. § 1144(a) contains a very broad preemption clause that ERISA **supersedes any and all state laws insofar** as they relate to an employee benefit plan. The U.S.

Supreme Court has characterized ERISA's preemption provision as extremely broad and that ERISA **supersedes** "**any and all state laws** as they may now or hereafter relate to" an ERISA plan, in accordance with ERISA section 514(a), 29 U.S.C. § 1144(a). The quasi-judicial functional family court does not have subject matter jurisdiction over civil RICO combined with ERISA and Federal Constitutional violations.

6.     Defendant's counsel even made a factual **false** statement in his argument by claiming "Plaintiff lacks standing to sue the state court associate judge, who **is presiding over his ongoing family law proceeding.**" According to the Tex. Fam. Code § 155.001, the 325th court has continuing, exclusive jurisdiction over Plaintiff's ongoing family law proceedings. Contrary to Defendant's counsel's lies, DeAngelis **lost** judge campaign for the 325th court in the primary election held in March 2022, DeAngelis was **terminated** from 325th court associate judge position at the end of 2022. It was the people of Texas who chose to disapprove of a problematic individual to continue sitting on the bench. Nonetheless, another member of the State Bar of Texas, Beth Polous, recommended DeAngelis as the 324th associate judge on January 1, 2023. This recommendation was solely made by members of an alleged RICO enterprise, not by the people of Texas.

7.     "you know we owe them a favor. Where are we going to put them? We can't put them in a civil court or the Supreme Court because the press goes in there to report. We have to put them in a place where nobody can see the morons we appoint to the court." Judge Judy Scheindlin said. Judge Judy Scheindlin was right. When a bad family lawyer lost her reputation in Tarrant County after she repeatedly lost suits like *Deangelis v. Protective Parents Coal.*, 556 S.W.3d 836 (Tex. App. 2018), someone has "to put them in a place where nobody can see." DeAngelis' reputation was so poor among the local populace that she consistently **lost** elections in 2018 and 2022. However, she was repeatedly appointed by other members of the RICO enterprise, ensuring that the organization could maintain a co-conspirator in a jurisdictional role to perpetuate ongoing RICO acts.

8.     According to the Texas Constitutional, Article 16, every Texas officer needs to take official oath of office, as it says, "All elected and **appointed** officers, **before** they enter upon the **duties** of their offices, **shall** take the following Oath or Affirmation:

"I, _____, do solemnly swear (or affirm), that I will faithfully execute **the duties of the office of** _____ **of the State of Texas,** and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.""

The oath stipulates that 324th associate judge Lori L. DeAngelis has duties **only** pertaining to the office of the 324th court. According to Tex. Fam. Code § 201.004(a)(b), associate judges serving a single court serve at the will of the court's judge; Associate judges serving more than two courts may be terminated by a majority vote of the courts they serve. The fact is undisputable that Plaintiff does not have an **ongoing family law proceeding** in 324th court. Therefore, Lori L. DeAngelis is not presiding over Plaintiff's ongoing family law proceeding.

9.      Defendant's counsel's above factual **false** statement demonstrates that he made fraudulent misrepresentation. Defendant's counsel acted in **bad faith** by **misleading** this Court into believing that DeAngelis still had authority over Plaintiff. Subsequently, he used this fraudulent misrepresentation as a basis to introduce groundless immunity arguments. Defendant's counsel **Melvin Keith Ogle is a liar** because he knowingly and falsely represented "Plaintiff lacks standing to sue the **state court associate judge, who is presiding over his ongoing family law proceeding**". Implying an equally applied standard that Rachel Craig sued Sidney Powell and Amanda Kates/Royce Lemonie sued Kenney Paxton under the allegation of falsely representing "election fraud.", will any counsel from the Office of Chief Disciplinary Counsel named as Defendant in this case ever report Melvin Keith Ogle to the appropriate disciplinary authority after learning he lied in this case, pursuant to Tex. R. Disc. Prof'l. Cond. 8.03? Texas people will see how many liars we will expose in this suit.

10.      The arguments put forth by Defendant's counsel further confirmed the dangers posed by a monopolistic entity made up of State Bar of Texas members skilled in bending legal processes and falsely presenting criminal conduct as legitimate. This is precisely the issue that the Antitrust claim aimed to tackle, yet it was sidestepped by Defendant's counsel.

11.      In asserting that the "Plaintiff seeks to recover over $2.2 million," Defendant's counsel demonstrated the ability to tally up the amount to $2.2 million and argue jurisdiction. Meanwhile, his client DeAngelis **failed** to calculate the fees subject matter incurred in the criminal court that were ordered in family court. This discrepancy suggests that Defendant's counsel may be a more suitable candidate for a future family court judge position when he demonstrated an accurate counting ability.

12.      After all, even if all of Defendant's arguments are sound, they shall not be granted a dismissal of Plaintiff's lawsuit with prejudice as frivolous, as per their request. This is because Defendant's Motion to Dismiss is insufficient and ineffective. Defendant's counsel only partially read Plaintiff's complaint, raised a few selective arguments, and yet demanded the entire suit be dismissed.

## II.    Standard of Review

13.      To warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that Plaintiff can prove **no** set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

14.      "Thus, the court **should not** dismiss the claim unless Plaintiff would not be entitled to relief **under any set of facts or any possible theory** that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

15.      "See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (**all permissible inferences** must be construed in favor of plaintiff)." *Pure, Ltd. v. Shasta Beverages*, Inc., 691 F. Supp. 1274, 1279 (D. Haw. 1988).

16.      To survive a Federal Rule 12(b)(6) motion, "See Bell Atlantic v. Twombly , 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (A complaint "does not need detailed factual allegations" but rather "**enough fact** to raise a reasonable expectation that *discovery* will reveal evidence of [a necessary element].") True, her complaint didn't detail such an injury. But "[c]omplaints need not be elaborate." *Aker* , 854 F.3d at 399–400 (quoting S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc. , 274 F.3d 1168, 1171 (7th Cir. 2001) )." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280-81 (7th Cir. 2020).

17.      "Therefore, the Court's task is to identify the elements of a cause of action and then determine whether Plaintiff pled sufficient factual allegations in support of the asserted elements to state a plausible claim, and thereby, survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019).

18.      It was exactly in Tarrant County, 30 years ago, SCOTUS has ruled a landmarking opinion about what Rule 8(a)(2) stands in a pleading, "Rule 8(a)(2) requires that a complaint include *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Conley v. Gibson*, 355 U.S. 41 (1957), we said in effect that *the Rule meant what it said*:

      "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a

short and plain statement of the claim" that will give the defendant *fair notice* of what Plaintiff's claim is and the grounds upon which it rests." *Id.*, at 47 (footnote omitted). " *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). Leatherman v. Tarrant County was citied 2000 times in various opinions.

19.     "To survive a motion to dismiss, a complaint must allege sufficient facts, *accepted* as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. These standards are the same when a motion to dismiss is based on qualified immunity." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). The crucial question is "whether the complaint pleads facts that, if true, would permit the inference that Defendant are liable under section 1983 and would overcome their qualified immunity defense." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015).

20.     A Complaint **should only be dismissed** under Federal Rule 12(b)(6) **after** affording ample opportunity for Plaintiff to state a claim upon which relief can be granted, **unless** it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561, F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court **must allow** a plaintiff the opportunity to **amend** the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds Plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

21.     "See Schueuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (claim **should not be dismissed** without leave to amend unless it is clear that there is no basis for relief). " *Rodriguez v. City of New York*, 861 F. Supp. 1173, 1186 (S.D.N.Y. 1994).

22.     For purposes of deciding a motion to dismiss under Rule 12(b)(6) of the FRCP, the Court *must* assume that the facts alleged in the complaint are **true** and construe them **in the light most favorable to Plaintiff**. *Twombly*, 550 U.S. at 555. For its Rule 12(b)(6) review, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss that are central to Plaintiff's claims and referenced in the complaint. *Lone Star Fund V (U.S.),*

*L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A Rule 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023). Plaintiff argues that Defendant's counsel executed a factual attack without conducting a **complete** analysis of paragraphs of **all** three elements within the third amended complaint.

23.      "When a federal court reviews the sufficiency of a complaint, **before the reception of any evidence** ... its task is necessarily a limited one. The issue **is not** whether a plaintiff will ultimately prevail but whether the claimant is **entitled to offer evidence** to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### III.    Summary of Motion to Dismiss

24.      In the Motion to Dismiss, Defendant's counsel seek dismissal under FRCP 12(b)(1) and FRCP 12(b)(6) dismissal for any of all of seven reasons,

    A. Lacks standing

      1.  Plaintiff lacks standing to sue the state court associate judge, who is presiding over his ongoing family law proceeding;

    B. Abstention

      1.  This Court should abstain under the Younger abstention doctrine;

    C. Failed to state a claim

      1.  Plaintiff's claims are barred by judicial immunity;

      2.  Plaintiff cannot enjoin Associate Judge DeAngelis;

      3.  Plaintiff's official capacity claims against Associate Judge DeAngelis are barred by Eleventh Amendment immunity;

      4.  Plaintiff has not stated a claim under either section 1983 or RICO; and

      5.  Plaintiff's individual capacity claims against Associate Judge DeAngelis are barred by qualified immunity.

25.      Plaintiff will rebut Defendant's argument in following order:

A. Lacks standing

    1. Presiding Judge;

B. Abstention

    1. Younger abstention doctrine;

C. Failed to state a claim

    1. Judicial immunity;

    2. Eleventh Amendment immunity;

    3. Qualified immunity;

    4. Cannot enjoin injunctive relief;

    5. Failed to state a claim under RICO.

D. Jurisdiction of family court

    1. Jurisdiction.

### IV.    Argument and Authorities

26.    Before delving into the detailed argument, Plaintiff emphasizes a factual statement: Defendant's Motion to Dismiss failed to address the **allegations** in the **Second Claims of Relief** in their entirety. Therefore, the scope of this Response to the Motion to Dismiss will be limited to the scope of the Defendant's Motion to Dismiss. Plaintiff neither seeks adding new allegation in this Response to the Motion to Dismiss nor addresses argument not raised in the Defendant's Motion to Dismiss.

**A. Lacks standing**

**1. Presiding Judge;**

27.    Defendant's counsel misunderstood the relief that Plaintiff claimed, which led him to an ineffective argument. Plaintiff claimed, "preliminary and permanent **declaration**" related "the Texas family **courts**." The arguments that Defendant's counsel raised was never related to "the Texas family **courts**." Instead, he continually referred to "the **court**" and its judge, specifically relating to the 325th family **court**.

28.    Defendant's counsel mispresented a **dishonest factual false statement** by saying, "Plaintiff lacks standing to sue the **state court associate judge, who is presiding over his ongoing**

**family law proceeding.**" Plaintiff argues that Lori L. Angelis is a 324th Court Associate Judge. She **is not presiding** over Plaintiff's ongoing family law proceedings, pursuant to the Tex. Fam. Code § 155.001, the 325th Court has **continuing, exclusive jurisdiction** over Plaintiff's ongoing family law proceedings. Tex. Fam. Code § 201.004(b) forbids Lori L. Angelis to serve 325th Court.

29.     Defendant's counsel argued that Plaintiff asserted claims for declaratory relief against Texas family **courts** and injunction relief against **Tarrant County**. It's important to note that Defendant's counsel represents the party of DeAngelis in this filing, thus lacking standing to defend Texas family courts and Tarrant County in this specific Motion to Dismiss filing, which means DeAngelis has no standing to argue or defend these two mentioned reliefs were not claimed against her. F.R.C.P. Rule 71 allows order grants relief for a nonparty.

30.     The actual subject matter in the First Claim brought before this Court pertains to RICO acts involving ERISA-protected **out of state** employee retirement plan. Defendant's counsel's argument that "Plaintiff's dispute is with his wife" is both conclusory and false, as Plaintiff's soon-to-be ex-spouse **is not** a party in this case. Additionally, Plaintiff **does not** seek to appeal family court subject matters in this Court. The RICO suit against DeAngelis is solely related to RICO acts. If the argument presented by Defendant's counsel holds, then it would suggest that any doctor could commit murder within their office and then claim that their actions fall under the subject matter of medical malpractice solely because the incident happened within their office premises during regular office hours. The location where the crime occurred does not establish the venue for this case.

31.     The case *Stewart v. Wells*, No. 4:19-CV-00598-P-BP, 2020 WL 3146866 and other cases cited by Defendant's counsel are, in fact, related to **either** child support **or** child custody subject matters, which do not apply to this case.

32.     Plaintiff argues that, multiple Federal Courts have held that a government official is not immune from RICO allegations as a RICO person. "Appellants contend that the Philadelphia Traffic Court is not an "enterprise" within the meaning of 18 U.S.C.A. § 1961(4) which appellants urge should be confined to businesses and not extended to state governmental units. This contention has already been rejected in this Circuit. See United States v. Frumento,563 F.2d 1083 (3d Cir. 1977), cert. denied, 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978) (**Pennsylvania Bureau of Cigarette and Beverage Taxes, a division of the Department of Revenue**, held to be an enterprise); United States v. Herman,589 F.2d 1191 (3d Cir.), cert. denied 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (**applying RICO to Pittsburgh magistrates without discussing the enterprise**

**issue**); United States v. Vignola,464 F. Supp. 1091 (E.D.Pa. 1979), aff'd mem., 605 F.2d 1199 (3d Cir. 1979) (**Philadelphia Traffic Court** held to be an enterprise)." *United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir. 1979).

33.     In the entire section arguing "Plaintiff lacks standing to sue Associate Judge DeAngelis," Defendant's counsel only referred to **two** reliefs that Plaintiff claimed in the third amended complaint, without mentioning any acts that Plaintiff alleged against DeAngelis in the third amended complaint. Defendant's counsel proceeded to cite several case laws but did not apply any factual allegations from the third amended complaint. Throughout this section, Defendant's counsel entirely omitted analyzing why the specific allegations against the Defendant are applicable to case laws cited by him, and instead jumped to a conclusory statement.

34.     Therefore, Defendant's counsel's argument that the **identity** of a "falsely claimed" presiding judge shields Lori L. Angelis from being sued is flawed.

### B.  Abstention

#### 1.  Abstain from deciding issues pending in state court;

35.     Defendant's counsel argued that "Plaintiff is requesting injunctive relief in this action concerning his obligations to pay attorney's fees in his ongoing divorce proceeding, involving child support and child custody issues. State court provides a sufficient avenue for Plaintiff to raise his complaints. Under Younger, Plaintiff's injunctive relief claims arising out of ongoing domestic relations proceedings should all be dismissed under rule 12(b)(1)." This statement is factually false, as Plaintiff has never raised issues of child support or child custody in this case, nor discussed any obligations.

36.     "The Supreme Court has set out a three-part test for determining whether Younger abstention is appropriate. Middlesex, 457 U.S. at 423, 102 S.Ct. at 2515. Abstention is appropriate if (1) there are ongoing state proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions. Id. at 432, 102 S.Ct. at 2521; see also Yamaha Motor Corp. U.S.A. v. Riney,21 F.3d 793, 797 (8th Cir. 1994). **If any of the three prongs is not satisfied, abstaining on the grounds of Younger is inappropriate**. See Yamaha Motor Corp.,21 F.3d at 798 n. 11." *Fuller v. Ulland*, 858 F. Supp. 931, 934 (D. Minn. 1994).

37.     Plaintiff argues that the Younger doctrine does not apply to this RICO / AntiTrust / ERISA / 1983 case. Plaintiff's soon-to-be ex-spouse is not a party in this case. Plaintiff is not seeking child support, child custody, or the division of marital assets in this case. Additionally, Plaintiff's state

family court case is still ongoing without any indication of interference. Plaintiff has constitutional right to seek various civil remedies in Federal and State court at same time. Younger doctrine never says citizen can only have one civil case ongoing at same time. Younger doctrine is used to address federal and state court jurisdiction conflict situation. Younger doctrine carries no intention restricting people to seek remedies from Federal court while they have isolated cases in the State court.

38.      Defendant's counsel argued that there were "issues pending in state court", but he failed to state what state pending issues with **same subject matter** are raised in this case? child support, child custody, or the division of marital assets? None of them!

39.      In *Sprint Communications, Inc. v. Jacobs et al.* U.S. District Court for the Southern District of Iowa abstained from deciding Sprint's case due to the pending state court proceeding, and the Court of Appeals for the Eighth Circuit affirmed the district court's decision to abstain. the Supreme Court reversed, concluding that "We reverse the judgment of the Court of Appeals. In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction. Abstention is not in order simply because a pending state-court proceeding involves the same subject matter. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) ( NOPSI) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.")." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013).

40.      Plaintiff did not remove his family court case to Federal court. If Defendant's counsel has not violated Plaintiff's privacy by illegally accessing Plaintiff's family case using his privileged government backdoor access without authorization, he should have no knowledge of Plaintiff's family court case as of today. Assuming the Defendant and her counsel are given the benefit of the doubt and have acted ethically up to today, they should not have sufficient knowledge to establish a ground to bring any argument that there were "**issues** pending in state court." Plaintiff reserves the right to bring a lawsuit in the future against any Tarrant County employee who ever uses their privileged government backdoor access without proper authorization to access Plaintiff's private information in the government system. This type of privileged government backdoor access would have granted Defendants an advantaged position against Plaintiff in this suit.

41.       Defendant's counsel only referred to the name "Younger doctrine" in his argument, without performing full three-part test analysis. It left Plaintiff no opportunity to rebut analysis in his response. Therefore, Defendant's argument is insufficient and ineffective.

### C.  Failed to state a claim

**1. Claims against Associate Judge DeAngelis are barred by judicial immunity;**

42.      "In general, " '[t]he extent of the authority of the people's public agents is measured by the statute from which they derive their authority, not by their own acts and assumption of authority.' "" *Davis v. Sec'y of State*, 951 N.W.2d 911, (Mich. 2020)

43.      "Congress enacted § 1983 and its predecessor, § 2 of the Civil Rights Act of 1866, 14 Stat. 27, to provide an independent avenue for protection of federal constitutional rights. **The remedy was considered necessary** because "**state courts** were being used to **harass** and **injure** individuals, either because **the state courts were powerless to stop deprivations** or were **in league with those who were bent upon abrogation of federally protected rights**." *Mitchum* v. *Foster*, 407 U.S. 225, 240 (1972). See also *Pierson* v. *Ray*, 386 U.S., at 558-564 (dissenting opinion) (**every** Member of Congress who spoke to the issue assumed that **judges would be liable under § 1983**)." *Pulliam v. Allen*, 466 U.S. 522, 540 (1984).

44.      "Subsequent interpretations of the Civil Rights Acts by this Court acknowledge Congress' intent to reach **unconstitutional actions** by all state actors, **including judges**. In Ex parte Virginia, 100 U.S. 339 (1880), § 4 of the Civil Rights Act of 1875, 18 Stat. 336, was employed to authorize a criminal indictment against a judge for excluding persons from jury service on account of their race. The Court reasoned that the Fourteenth Amendment prohibits a State from denying any person within its jurisdiction the equal protection of the laws. Since a State acts only by its legislative, executive, or judicial authorities, the constitutional provision must be addressed to those authorities, including the State's judges. Section 4 was an exercise of Congress' authority to enforce the provisions of the Fourteenth Amendment and, like the Amendment, reached **unconstitutional state judicial action**." *Pulliam v. Allen*, 466 U.S. 522, 540-41 (1984).

45.      "It went on to conclude, however, that **even if** the judge had been performing a **judicial** function, he would be **liable** under the statute. 100 U.S., at 348-349." *Pulliam v. Allen*, 466 U.S. 522, 541 n.21 (1984).  "Pulliam v. Allen, 466 U.S. 522, 541-543 (1984) (holding **that judicial immunity was not a bar to awards of attorney's fees and costs or to demands for injunctive relief**)," *Brandon E. ex Rel. Listenbee v. Reynolds*, 201 F.3d 194, 198 (3d Cir. 2000).

46.      "We remain steadfast in our conclusion, nevertheless, that Congress intended § 1983 to be an independent protection for federal rights and **find nothing to suggest** that Congress intended to **expand the common-law doctrine of judicial immunity** to insulate state judges completely from federal collateral review. We conclude that judicial immunity is not a bar to prospective injunctive

relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 542 (1984).

47.    On June 22, 2023,8th Cir of federal court, ruled on case *D. Bart Rockett v. The Honorable Eric Eighmy*, 21-3903 (8th Cir. 2023), held that "Cf. Forrester, 484 U.S. at 227 (explaining that judicial immunity "is justified and defined by the functions it protects and serves, **not by the person to whom it attaches**." *Forrester v. White*, 484 U.S. 219, 227 (1988).

48.    Defendant's counsel argued DeAngelis has judicial immunity due to her identity, as he stated, "Tex. Fam. Code § 201.017 ("An associate judge … has the judicial immunity of a district judge.")."   However, 5th circuit held that judge "is entitled to judicial immunity..." if they "acted within the scope of the court's jurisdiction..." *Wood v. Parker Cnty.* (5th Cir. 2012). Defendant's counsel failed to analyze the specific acts DeAngelis was alleged, which left Plaintiff no opportunity to rebut analysis in his response.

49.    "Perhaps the most important question is whether the "function [is one] normally performed by a judge." Stump, 435 U.S. at 362. Another is whether the parties are "deal[ing] with the judge in [a] judicial capacity."" "On one end of the spectrum, the classic example of a **judicial act** is "resolving **disputes between parties** who have **invoked the jurisdiction** of a court."" "But **those acts also have their limits**." *D. Bart Rockett v. The Honorable Eric Eighmy*, 21-3903 (8th Cir. 2023).

50.    When DeAngelis rewarded Plaintiff's counsels twice in her court, there was no pleading, no claim, and no party acquired in her court's jurisdiction. There were no advocating parties between Plaintiff and his own counsel during that court proceedings. DeAngelis had no personal jurisdiction on Plaintiff's counsel. DeAngelis had no subject matter jurisdiction on the legal fees between Plaintiff and his counsels. Moreover, in a separate act, DeAngelis had no subject matter jurisdiction on the legal fees incurred in criminal court, as those services were performed by Ybarra, who was not admitted to practice in her family court. DeAngelis voluntarily acted in complete absence of all jurisdiction, having neither personal nor subject matter jurisdiction.

51.    "Judicial immunity can be "overcome in only two sets of circumstances": (1) when a judge takes "nonjudicial actions"; and (2) when the action is judicial, but is done"in the complete absence of all jurisdiction."" *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)(per curiam).

52.    Plaintiff has alleged that DeAngelis' RICO acts **complete absence of all jurisdiction** and lack authority in the third amended complaint. Instead of analyzing these alleged acts, Defendant's counsel took a shortcut by simply claiming that the associate judge's identity shields DeAngelis from

being sued, therefore rendering the claims barred. Every citation by Defendant's counsel pertained to arguments about why a judge cannot be sued solely because of their judicial position. Ogle neglected to apply his citation into argument why DeAngelis cannot be sued due to her specific alleged acts. He even attempted to reference case law concerning elected officials, despite DeAngelis being an appointed official. Neither Plaintiff nor this Court can assist Defendant's counsel in completing these missing puzzle pieces. Therefore, Defendant's argument is insufficient and ineffective.

### 2.  Official capacity claims are barred by Eleventh Amendment Immunity;

53.      The Eleventh Amendment incorporates state sovereign immunity during "an exercise of the State's sovereign power", also referred to as state-action immunity. However, there exists the Ex Parte Young exception, in which state sovereign immunity cannot be invoked in federal court.

54.      "However, since Ex parte Young, 209 U.S. 123 (1908), it has been settled that the **Eleventh Amendment** provides **no shield for a state official** confronted by a claim that he had deprived another of a federal right under the color of state law. Ex parte Young teaches that when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the **superior authority of that Constitution**, and he is in that case stripped of his official or representative character and is **subjected** in his person **to the consequences** of his individual conduct. **The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States**." Id., at 159-160. (Emphasis supplied.) Ex parte Young, like Sterling v. Constantin, 287 U.S. 378 (1932), involved a question of the federal courts' injunctive power, not, as here, a claim for **monetary damages**. While it is clear that the doctrine of Ex parte Young is of no aid to a plaintiff seeking **damages** from the **public treasury**, Edelman v. Jordan, supra; Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573 (1946); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459 (1945); Great Northern Life Insurance Co. v. Read, 322 U.S. 47 (1944), **damages against individual defendants are a permissible remedy** in some circumstances notwithstanding the fact that they hold public office. Myers v. Anderson, 238 U.S. 368 (1915). See generally Monroe v. Pape, 365 U.S. 167 (1961); Moor v. County of Alameda, 411 U.S. 693 (1973). In some situations a damage remedy can be as effective a redress for the infringement of a constitutional right as injunctive relief might be in another." *Scheuer v. Rhodes*, 416 U.S. 232, 237-38 (1974).

55.      "Section 1983 claims against a public official in his official capacity are construed as claims against the entity for which he is an agent. Kentucky v. Graham,473 U.S. 159, 165-66 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and

an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." (citations omitted)); Claybrook v. Birchwell,199 F.3d 350, 356 n. 4 (6th Cir. 2000) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents."). Thus, "**a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office**. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police,491 U.S. 58, 71 (1989). Thus a claim against Booth in his official capacity is the same thing as a claim against the Kentucky State Police." *Allen v. Booth,* Civil Action No. 08-135, (E.D. Ky. Nov. 5, 2008).

56.      "The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. See, e.g., Kentucky v. Graham,473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); Hafer v. Melo, ___ U.S. ___, ___, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991). As to a claim brought against him in his individual capacity, however, the state official has no Eleventh Amendment immunity. See, e.g., id. at ___, 112 S.Ct. at 365; *Scheuer v. Rhodes*,416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (**Eleventh Amendment does not bar award of damages to be paid not from the state treasury but from the official's personal funds**)." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).

57.      Defendant's counsel represents DeAngelis. Defendant's counsel **does not** represent DeAngelis' office which is held responsible for the claims under official capacities **in this filing** of Motion to Dismiss. DeAngelis' official capacity **is not** sued under RICO claims as of today. Defendant's counsel **has no standing** to argue that official capacity.

58.       Even if the Eleventh Amendment immunity does apply, in a very limited scope. Plaintiff still has jurisdiction to sue DeAngelis' **official capacity** for **prospective, injunctive relief** under the doctrine set forth in Ex parte Young. Plaintiff has alleged that DeAngelis committing RICO racketeering activities, including but not limited to the violation of *18 U.S.C. § 664*. "Eleventh Amendment immunity does not insulate the Grievance Committee and Kearse from every lawsuit. First, Kearse may still be sued in her individual capacity rather than her official capacity. See Ford v. Reynolds, 316 F.3d 351, 356 (2d Cir. 2003). Second, Kearse may still be sued in her official capacity for prospective, injunctive relief under the doctrine set forth in Ex parte Young, 209 U.S. 123 (1908).

See Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) ("**The Eleventh Amendment, however, does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law.**"). The Ex parte Young exception to Eleventh Amendment immunity applies when "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." D.K. v. Teams, 260 F.Supp.3d 334, 352 (S.D.N.Y. 2017) (quoting Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002))." *Civil Rights Corps. v. Pestana*, 21 Civ. 9128 (VM), 29 (S.D.N.Y. May. 5, 2022).

### 3.   Individual capacity claims are barred by qualified immunity;

59.      Defendant's counsel's arguments in this section are becoming weak and inadequate. He made a conclusory statement by asserting "Here, Plaintiff has failed to sufficiently plead either a constitutional violation or that Associate Judge DeAngelis acted unreasonably in light of clearly established law."

60.      Prior to that conclusory statement, Defendant's counsel cited a plethora of case laws **without** addressing **any of the allegations** made by Plaintiff against DeAngelis' actions. Therefore, it appears that, regardless of the number of allegations made by Plaintiff, whether it's one or a hundred, Defendant's counsel simply needed to make a conclusory statement asserting that "Plaintiff has failed to sufficiently plead," and his argument would stand? Plaintiff opposes this shotgun style argument.

61.      Meanwhile, the "clearly established law" doctrine **is being replaced** by obviousness doctrine after recent rulings in SCOTUS and Fifth Circuit adopted the new standard. "The final question is whether this constitutional violation was clearly established. The district court answered "yes," concluding that the sheriffs' actions were an **"obvious" constitutional violation**. See *Hope v. Pelzer* , 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ; see also *Taylor v. Riojas* , ——— U.S. ———, 141 S. Ct. 52, 208 L.Ed.2d 164 (2020) (**reversing grant of qualified immunity because the violation was obvious**). We agree." *Harris v. Clay Cnty., Miss*., 47 F.4th 271, 279 (5th Cir. 2022).

62.      Is Defendant's counsel expecting this Court to carry out the two-prong test for each of DeAngelis' alleged acts on his behalf? Of course not. Defendant's counsel left Plaintiff no opportunity to rebut analysis in his response. Therefore, Defendant's argument is insufficient and ineffective.

### 4.   Cannot enjoin Associate Judge DeAngelis;

63.      Texas family court has been operated under quasi-judicial functions instead of judicial functions, even though it carries the name of "court", evidence is not taken on oath.

64.     Tex. Fam. Code § 201.001 is very clear by saying "APPOINTMENT.  (a)  A judge of a court having jurisdiction of a suit under this title, Title 1, Chapter 45, or Title 4 may appoint a full-time or part-time associate judge to perform the duties authorized by this chapter if the commissioners court of a county in which the court has jurisdiction authorizes the employment of an associate judge. (b)  If **a court** has jurisdiction in more than **one county**, an associate judge appointed by that court may serve **only in a county** in which the **commissioners court** has **authorized** the associate judge's **appointment**." A state district judge can appoint an associate judge to perform duty but has to be authorized by county commissioner's court. The associate judge's salary is covered by the county's payroll rather than the state's, suggesting that the associate judge is an employee of the county. In the past, the decision to terminate the associate judge position fell under the purview of the county commissioner's court; the state of Texas did not intervene in this termination decision. Plaintiff argues that, while a state district judge appoints associate judge to perform state jurisdictional act, these acts done in the complete absence of all jurisdiction are not part of the state jurisdictional act.

65.     "holding that a suit against an individual in his official governmental capacity — claiming that the individual is acting beyond his authority — is not a suit against the sovereign)." *Tamiami Parts. v. Miccosukee Tribe of Indians*, 63 F.3d 1030, 1045 (11th Cir. 1995). In the third amended complaint, DeAngelis was sued "in her official capacity, from continuing to engage in ultra vires actions beyond its legal authority, including depriving Plaintiff of his Equal Protection and Due Process constitutional rights by **depriving Plaintiff of his property**."

66.     Family courts are not Article III courts. On April 14, 2023, SCOTUS held a landmark ruling saying that "see also J. Mascott, Constitutionally Conforming Agency Adjudication, 2 Loyola U. Chi. J. Reg. Compliance 22, 45 (2017) (Mascott) ("Cases involving . . . **deprivations** or transfers of life, liberty, or **property** constitute a 'core' of cases that . . . **must be re-solved by Article III courts**—not executive adjudicators 'dressed up as courts' ")." *Axon Enterprise, Inc. v. Federal Trade Commission et al.*, 143 S.Ct. 890 (2023) (No. 21-86).

67.     "Quite to the contrary, it is well established, under Ex parte Young , that the appropriate way to obtain injunctive relief against an unconstitutional statute is by filing suit against an official or officials charged with enforcing the challenged law. 209 U.S. at 156, 28 S.Ct. 441 (holding that **injunctive relief is available against officials** "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act")." *Nashville Cmty. Bail*

*Fund v. Gentry*, 446 F. Supp. 3d 282, 301 (M.D. Tenn. 2020). Plaintiff argues that Plaintiff can seek prospective injunctive relief against associate judge's employee(Tarrant County) or any non-party.

68.     Plaintiff claimed injunctive relief against Tarrant County and claimed declaratory relief against Texas family courts for different cause in the third amended complaint. Defendant's counsel argued that "Plaintiff is impermissibly seeking injunctive relief" because "Title 42 U.S.C. § 1983 expressly provides "in any action brought against a judicial officer for an act or omission taken in such officer's official capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable."" Defendant's counsel did not argue the reliefs in RICO and AntiTrust claims where DeAngelis is solely sued under her individual capacity. The argument "Plaintiff is impermissibly seeking injunctive relief" is not valid because Plaintiff did not seek injunctive relief against Texas family courts. Instead, Plaintiff sought declaratory relief against Texas family courts without requesting injunctive relief against them.

69.     The injunctive relief against Tarrant County was a separate issue, one is "preliminary and permanent injunction enjoining the Tarrant County to have further employment relation" under RICO claim, which Defendant's counsel's 1983 clause does not apply. Another is "continuing to engage in ultra vires actions" under 1983 claims, encompassing, but not limited to, providing financial, human resources, and legal assistance. These forms of assistance materially fulfill the 'continuity' element of DeAngelis' RICO acts, which violate Plaintiff's constitutional rights protected by 42 U.S.C. § 1983. Defendant's counsel's argument is misleading as it confuses this Court regarding two separate parties for whom injunctive relief and declaratory relief are sought. The argument of "injunctive relief shall not be granted unless a declaratory decree…" does not apply in this case because Plaintiff sought injunctive relief and declaratory relief on two different parties for different cause.

70.     Another flaw of this argument is, Defendant's counsel draw a conclusory statement that "injunctive relief shall not be granted" based on an assumption that DeAngelis acted within her jurisdictional capacity. However, DeAngelis' official capacity is being sued under the ultra vires doctrine, for her ultra vires acts. DeAngelis' RICO acts were not within her capacity, she had acted in the complete absence of all jurisdiction and lack of authority. DeAngelis rewarded legal fees to Barrows for a criminal case that acquired in a different court, where Barrows was not even the counsel appeared to that criminal court and Plaintiff was not a party in that criminal case either. DeAngelis also granted legal fees to Plaintiff's counsels twice, even though neither pleading or claim, nor party of counsel was acquired into her family court.

71.     Even if Defendant's counsel's argument holds merit, this injunctive relief is just one of the various remedies sought in the Third Claim. The inadequacy of one remedy is not enough to dismiss DeAngelis entirely from this lawsuit. Therefore, Defendant's argument is insufficient and ineffective.

### 5.  Has not stated a civil RICO claim;

72.     SCOTUS has held that "see National Organization for Women, Inc. v. Scheidler, ___ U.S. ___, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (stating that Civil RICO **should be construed broadly to effectuate Congress' purpose**)," *Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994).  Plaintiff argues that, Civil RICO should be construed broadly to effectuate Congress' purpose.

73.     Defendant's counsel argued that "Plaintiff has not pleaded any of these **three requisite elements** with respect to Associate Judge DeAngelis. Furthermore, Plaintiff's conclusory assertions throughout his complaint that other Defendant allegedly violated certain federal statutes are **insufficient** to plead the **predicate acts** necessary to **establish a pattern of racketeering activity**."

74.     However, SCOTUS has held that Plaintiff "does not need to prove that **each defendant** personally committed two predicate acts to prove a RICO conspiracy. See Salinas v. United States,522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("**There is no requirement** of some overt act or specific act in the [RICO conspiracy] statute....")." *United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014).

75.     Plaintiff argues that, Plaintiff has alleged a pattern of racketeering activity performed by other Defendant, proved the commission of predicate crimes in the third amended complaint. *18 U.S.C. § 1961*(5) provides that a "pattern of racketeering activity" requires at least two acts of racketeering activity in a RICO suit. It does not require each individual defendant to commit two predicate acts of racketeering activity. The requirement for at least two predicate acts can be met by a total count, not by a separate personal count for each person under RICO claim.

76.     Plaintiff argues that, Defendant's counsel does not represent Pigg, Barrows, Ybarra or DeAngelis in this case. Therefore, Defendant's counsel lacks the standing to advocate for racketeering activities performed by other Defendants—Pigg, Barrows, Ybarra or DeAngelis—in this case.

77.     After all, Defendant's counsel's arguments are insufficient and ineffective.

### D.  Jurisdiction of family court

### 1. Jurisdiction for collecting legal fees.

78.      "Although the development of the general concept of immunity, and the mutations which the underlying rationale has undergone in its application to various positions are not matters of immediate concern here, it is important to note, even at the outset, that one policy consideration seems to pervade the analysis: **the public interest requires decisions and action to enforce laws for the protection of the public**. Mr. Justice Jackson expressed this general proposition succinctly, stating "it is not a tort for government to govern." Dalehite v. United States, 346 U.S. 15, 57 (1953) (dissenting opinion). Public officials, whether governors, mayors or police, legislators or **judges**, who fail to make decisions when they are needed or who do not act to implement decisions when they are made do not fully and faithfully perform the duties of their offices. Implicit in the idea that officials have some immunity — absolute or qualified — for their acts, is a recognition that they may err. The **concept of immunity** assumes this and goes on to assume that it is better to **risk some error and possible injury from such error** than not to decide or **act at all**. In Barr v. Matteo, 360 U.S. 564, 572-573 (1959), the Court observed, in the somewhat parallel context of the privilege of public officers from defamation actions: "The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to **aid in the effective functioning** of government." See also Spalding v. Vilas, 161 U.S., at 498-499." *Scheuer v. Rhodes*, 416 U.S. 232, 241-42 (1974). Plaintiff does not see any **aid in the effective functioning of government** when DeAngelis voluntarily helps collecting fees for lawyers in her court. The **concept of immunity** cannot be assumed in this case when a family court judge is better to "**risk some error**" (committing RICO acts) and "**possible injury from such error**" (Plaintiff lost asset) than "**not to decide**" (not issuing orders). There is no "**public interest requires decisions and action**" in such orders. There is only DeAngelis' friends' interest.

79.      For the past several decades, it has become common practice among Tarrant County family court judges that when a litigant enters family court, he/she may be confronted with the legal fees of both parties. While the prevailing party collecting legal fees from opposing party for monetary relief could be lawful, there is no existing law to warrant the practice of ordering any party to paying his/her own counsel's legal fees in family court. A judge should issue orders based on what the law is, rather than what the law should be for their friends.

80.      Plaintiff presents a case of **first impression** to this Court, challenging the unconstitutional actions, in a context where every family law attorney has failed to defend the Due Process clause under the Fourteenth Amendment. Plaintiff alleged this type of order is unconstitutional, therefore violated 1983, RICO and AntiTrust. DeAngelis is one bad actor.

81.     "Rules for thee and not for me". When a family law attorney faces a lawsuit, such as in this case, they suddenly begin to recognize how the law should be applied. Phrases like "lack of jurisdiction," "failed to state a claim," and "failure to comply with civil procedure" **come into play**. Yet, the same counsel never raises these arguments when a family court judge orders a litigant to pay legal fees to their own counsel. Does this **not** also involve "lack of jurisdiction," "failure to state a claim," or "failure to comply with civil procedure?"

82.     There are several critical fundamental elements of Due Process: 1) A court acquires personal jurisdiction through service of process. 2) A court acquires subject matter jurisdiction over a claim. "federal court may issue an injunction **if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim**; it may not attempt to determine the rights of persons not before the court. Under Federal Rule of Civil Procedure 65(d), an injunction binds only "the parties to the action, their officers, agents, servants, employees, and attorneys, and . . . those persons in active concert or participation with them who receive actual notice of the order. . . ." The district court must, therefore, tailor the injunction to affect only those persons over which it has power." *Zepeda v. United States I.N.S.,* 753 F.2d 719, 727 (9th Cir. 1983) .

83.     Plaintiff was never a party to that criminal case involving the government and the soon-to-be ex-spouse. DeAngelis never acquired personal jurisdiction over Plaintiff or subject matter jurisdiction over that criminal case. But she ordered Plaintiff make payment to her ongoing political campaign event fundraising hostess, Leslie Barrows, for the legal fees incurred in that criminal case.

84.     If there is a disputed claim over legal fees between Plaintiff and his counsel, or between a family court litigant and his/her own counsel, the subject matter jurisdiction for such a disputed claim belongs in a civil court. The specific court—be it justice court, county court, or district court—depends on the amount involved. Even these specific courts must acquire personal jurisdiction through service of process and gain subject matter jurisdiction over the claim. **Without a claim, there lacks jurisdiction; without jurisdiction, there should be no relief granted**.

85.     Family courts have exclusive subject matter jurisdiction over suits affecting the parent-child relationship or those concerning the marital relationship. Disputes over professional service fees between a client and his/her service provider do not fall under the jurisdictional definition outlined in the Texas Family Code.

86.     However, Tarrant County family courts operate like Tuesday night restaurant running promotion "**kids eat free**", they will get you one child's plate for each adult entree. When litigants

walk in for the suit for the marital relationship, the family court judge hands out the suit for professional service fees collecting, **free of claim**.

87.        "This Court in Stump made clear that "whether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, i.e., **whether** it is a function normally performed by a judge, and to **the expectations of the parties**, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S., at 362." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). It was never Plaintiff's expectation that litigant need to pay his/her own attorney fees without a pleading, or without a hearing of such a subject matter, or without a claim of damage relief. DeAngelis voluntarily announced such an order after a hearing.

88.        When DeAngelis ordered Plaintiff to pay his own counsel legal fees twice in her court, **where was the claim** and **where came the party's expectation**? There was not even one piece of evidence related to fees presented in her court. **Where was the injury**? This suit raises a **first impression** federal question: When a family court judge voluntarily takes on the role of advocating for fees on behalf of an unpresented party in the court, Plaintiff argues that **such a practice is not constitutional**; Plaintiff argues that *the family court judge acts in absence of all jurisdiction to make ruling on fees subject matter when the relevant party is not presented or no pleading of damage is claimed*.

89.         DeAngelis acted in complete absence of all jurisdiction. There is no immunity she could seek for her acts. "*There can be no free society without law administered through an independent judiciary. If one man can be allowed to determine for himself what is law, every man can. That means first chaos, then tyranny.*" —U.S. Supreme Court Justice Felix Frankfurter, *United States v. United Mine Workers* (1947).

## V.    Conclusion

90.        Plaintiff did not bring any disputes related to the family court before this Court. Had Plaintiff done so, he would have alleged that DeAngelis granted Fuyan Wang, a proven child abuser (multiple arrest records and TROs), to obtain primary custody of Plaintiff's daughter since 2021. A video captured evidence proving that Wang had deliberately whipped the 3-year-old child with a cloth wire hanger, causing visible bloody welts on her back. DeAngelis ruled in favor of Wang to appease her counsel, Leslie Barrows, who is a hostess for political campaign fundraising events. **God's children are not for sale, but they are traded for campaign contribution in DeAngelis' court**. Another Fort Worth family law attorney, who is also an active participant in DeAngelis' campaign, openly admitted to others, "**I can guarantee results in two courts**." However, all these transactions,

regardless of their legality, are shielded under the doctrines of sovereign immunity and judicial immunity, matters Plaintiff could not bring before this Court.

91.     "But when a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their **duty**, to throw off such Government, and to provide new Guards for their future security" The *Declaration of Independence* (1776).

92.     The District Attorney's office in Tarrant County has a lengthy history of aiding family court judges in **returning individuals** to states of "absolute despotism." Numerous family court litigants have filed complaints with the DA's office about the unlawful fee orders imposed by these judges. Yet, the Tarrant County DA's office has never upheld law using such as "lack of jurisdiction" or "failure to state a claim" to support these aggrieved parties. Rather, they persist in sustaining a continuous series of abuses and usurpations within the Tarrant County family courts. These victims are at a legal knowledge disadvantage compared to the opposing cabal parties, including some DAs and family court judges. These DAs and family court judges believed nobody could touch them for their conspiracy acts. It is Plaintiff's duty to throw off such Government.

93.     Here lies the paradox: On one hand, the Founding Fathers risked everything to free themselves and future generations from a system of governance that England King was immune from accountability. On the other hand, the very democratic institutions they created also introduced mechanisms for certain family court officials to act with a level of immunity. While this is generally not "absolute" in the way that a monarch's might be, the protections are substantial.

94.     **When Texas family court judges unlawfully deprive people of lifesaving resources to enrich their allied lawyers for decades, and the same group of lawyers argues that they all have immunity, isn't this akin to the reasons our Founding Fathers fought against the King**? Family court order v. King's order, family court judge's immunity v. King's immunity, Texas Family Code under the King's Tea Act. Don't these arguments presented by the Tarrant County DA to defend the unconstitutional actions of today's family court judges also apply to the English King in 1776? Plaintiff lost his hard-earned 401K, in contrast to the colonies' people who were merely required to pay a modest tea tax.

95.     Does Texas people need a Magna Carta to put into writing the principle that the family court judges and their lawyer friends are not above the law? Secret courts with no juries were one of the many grievances our forefathers named in the Declaration of Independence as one of the reasons

for our break with England. Jefferson accused the king of "depriving us in many cases, of the benefits of Trial by Jury."

96.     The Tarrant County family lawyer industry has extended its reach into the family court, deploying judges to seize people's property without due process. Several Tarrant County Family Courts have operated as money courts for decades. This case sets a precedent because numerous family court lawyers and judges have compromised the law in the past to unlawfully enrich members of this family law industry cabal. This case is not the first to bring attention to this crime; 325th court ex-judge Judith Wells is a prominent figure in the documentary film "**The Divorce Corp**," available on Amazon Prime. When Texas lawyers are unwilling to uphold the law, Plaintiff acts. This "Tarrant County Divorce Corp" must cease and desist. Plaintiff is just one of the David against Goliath. American will never need to exercise their Second Amendment if Tyranny can be overthrown in the Court and Constitutionals can be upheld. "The tree of liberty must be refreshed from time to time with the blood of patriots & tyrants."

97.     If, to this day, the District Attorney's office in Tarrant County still doesn't acknowledge that such a decade-long unlawful practice is against the public interest and chooses to use taxpayer funds to advocate for the family law industry, this gives Plaintiff ample reason to bring these issues to public awareness. Texas people will not approve of spending our own money for defending unlawful activities enriched family lawyers' pockets. Tarrant County's approval of spending taxpayer fund to assist continues ongoing RICO acts would have triggered offense of RICO *18 U.S.C. § 1962(c),* and *18 U.S.C. § 1962(d).* There is no obligation on the part of Tarrant County to defend any county employee accused of a crime. Proper legal analysis is always required. Any public official who approves the use of public funds to defend DeAngelis for alleged RICO violations in an individual capacity will be held accountable. Such an official is either corrupt or lacks cognitive ability.

98.     There is an old adage among lawyers that says, "If you have the facts on your side, pound the facts; if you have the law on your side, pound the law; if you have neither the facts nor the law, pound the table." In this case, Defendant's counsel only pounds the immunity. He was so afraid of pounding the facts or law related to his client's alleged RICO acts.

99.      "Judge Judy Scheindlin: Family Court a 'Dumping Ground for Morons and Political Hacks' and Should Be Monitored by the Press", by Megan Fox 2:52 PM on December 07, 2019.

100.    Federal courts have clearly ruled that "court", "judge" can qualify as an "person" under RICO charges, and government entities can be named as "enterprise" under RICO charges. Therefore,

the arguments that Plaintiff lacks jurisdiction against Defendant due to various immunities is not sound.

101.    Defendant's counsel made an incomplete partial argument from many aspects, missed reliefs, missed claims, and missed U.S.C. code citations. Plaintiff argues that Defendant's Motion to Dismiss is insufficient and ineffective.

102.    Defendant's counsel never argued **Second Claim** sued under her individual capacity in the arguments. Plaintiff believes that the **Second Claim** was not effectively argued, and the rest arguments are not sound. Plaintiff expects a Reply from Defendant limited to the scope of Plaintiff's Response herein, but this Court shall not allow any new argument arises from the Defendant's reply.

103.    After this issue arose in this Court since July 2023, if every party involved—including members of the State Bar of Texas—refuses to acknowledge that these alleged RICO acts are unlawful and declines to take immediate action in their official or individual capacities to protect Texas consumers from further harm, it underscores the essence of Plaintiff's antitrust claim: this industry has completely lost its cognitive ability regarding upholding law, thereby harming Texas consumers.

104.    Defendant is unlikely to prevail in this suit. Plaintiff suggests that Defendant's counsel behave professionally during the proceedings to preserve the Tarrant County executive branch's intangible assets, such as DA office's reputation, if there would be any remain.

## VI.    Prayer for Relief

105.    Based on the above, Plaintiff respectfully requests for the following relief:

106.    Plaintiff prays that the Defendant's Motion to Dismiss be denied as moot.

Respectfully submitted,

_____/s/ Conghua Yan_____
Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] /[arnold200@gmail.com]

**CERTIFICATE OF SERVICE**

On (September 26th, 2023) I, Conghua Yan, certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).


_____                    /s/ Conghua Yan_____

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]