**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |

**RESPONSE/OBJECTION TO MOTION TO DISMISS**
**BY SAMANTHA YBARRA**
**AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

TABLE OF CONTENTS                                                                    2

INDEX OF AUTHORITIES                                                                 3

I.     INTRODUCTION                                                                  5

II.    STANDARD OF REVIEW                                                           6

III.   SUMMARY OF MOTION TO DISMISS                                                9

IV.    ARGUMENT AND AUTHORITIES                                                    9

**A.    Abstention**                                                               **10**
   1.   Abstain from deciding issues pending in state court due to Younger doctrine;   10

**B.    Failed to state a claim**                                                  **12**
   1.   Claims against Ybarr are barred by attorney immunity;                      12
   2.   Has not stated a civil RICO claim "continuity";                            16
   3.   Has not stated a civil RICO claim "18 U.S.C. § 1962(c)";                   17
   4.   Has not stated a civil RICO claim "18 U.S.C. § 1962(a)";                   20
   5.   Has not stated a civil RICO claim "18 U.S.C. § 1962(d)";                   21
   6.   Has not sufficiently pleaded entitlement to injunctive relief;             23

V.     CONCLUSION                                                                  25

VI.    PRAYER FOR RELIEF                                                           27

CERTIFICATE OF SERVICE                                                             28

# INDEX OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal* ..............................................................................................................................7

Axon Enterprise, Inc. v. Federal Trade Commission et al ................................................................10

*Baker v. Stewart Title Trust of Phoenix*, 197 Ariz. 535, 544 (Ariz. Ct. App. 2000) ....................17, 23

*Bazile v. Fin. Sys. of Green Bay, Inc.* 983 F.3d 274, 280-81 (7th Cir. 2020) ......................................7

*Cicalese v. Univ. of Tex. Med Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019)..................................7

Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) ...................................11

*Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ...........................................................6

*Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994) ....................25

*DeLoach v. Woodley* ...........................................................................................................................8

*Foman v. Davis* ...................................................................................................................................8

*Fuller v. Ulland, 858 F. Supp. 931, 934 (D. Minn. 1994)* ................................................................12

*Google, Inc. v. Hood* ........................................................................................................................11

*H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989) .......................................16

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021)..............................................14

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021)..............................................24

*Hill v. Astrue* ......................................................................................................................................6

*Hitt v. City of Pasadena* .....................................................................................................................8

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019)........................15

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) ......................................................................7

*Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) ............................................................................8

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) ......7

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ...................6

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999) ....15

*NFTD, LLC v. Haynes & Boone LLP*, 652 S.W.3d 546, 557 (Tex. App. 2022) ..................................15

*Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002) .........................20

*Peterson v. Peterson,* Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) ....11

*Pure, Ltd. v. Shasta Beverages*, Inc., 691 F. Supp. 1274, 1279 (D. Haw. 1988). ...............................7

*Rodriguez v. City of New York*, 861 F. Supp. 1173, 1186 (S.D.N.Y. 1994) ........................................8

*Salinas v. United States*, 522 U.S. 52, 64 (1997). ............................................................................22

*Salinas v. United States*, 522 U.S. 52, 65 (1997) .............................................................................21

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).................................................................................17

*Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588, 591 (2013) ..................................................11

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ...........................................................11, 25

*Sprint Communications, Inc. v. Jacobs et al* ....................................................................................11

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000) ..................................20

Stewart v. Wells, No. 4:19-CV-00598-P-BP, 2020 WL 3146866.......................................................11

*Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 506 (5th Cir. 2019) ..........................................13

*Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019) .....................................13, 14

*U.S. v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990) ...........................................................................22

*U.S. v. Philip Morris USA Inc*, 316 F. Supp. 2d (D.D.C. 2004)........................................................26

*U.S. v. Vallone*, No. 04 CR 0372, 3 (N.D. Ill. Feb. 19, 2008) ..........................................................18

*U.S. v. Vallone*, No. 04 CR 0372, 4 (N.D. Ill. Feb. 19, 2008) ..........................................................18

*U.S. v. Vallone*, No. 04 CR 0372, 4-5 (N.D. Ill. Feb. 19, 2008). ......................................................19

*U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008) .....................................................18, 19

*United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019)........................................................22

*United States v. Godwin*, 765 F.3d 1306, 1324 (11th Cir. 2014) .....................................................21

*United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014) ...................................................17

*Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) ............................................................... 7

*W. Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp. (In re Nat'l Prescription Opiate Litig.)*, 452 F. Supp. 3d 745, 773 n.33 (N.D. Ohio 2020) ............................................................................................................. 20

*Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ............................................... 11

**STATUTES**

*18 U.S.C. § 1956(c)(7)* ...................................................................................................................... 22

*18 U.S.C. § 1961(1),* ......................................................................................................................... 16

*18 U.S.C. § 1961(3).* ......................................................................................................................... 16

*18 U.S.C. § 1961(5)* ......................................................................................................................... 23

*18 U.S.C. § 1962(a)* ......................................................................................................................... 19

*18 U.S.C. § 1962(a),* ......................................................................................................................... 16

*18 U.S.C. § 1962(c)* ......................................................................................................................... 16

*18 U.S.C. § 1962(d)* ......................................................................................................................... 16

*18 U.S.C. § 664* ................................................................................................................... 13, 14, 17

*28 U.S.C. § 1331* ............................................................................................................................... 25

*29 U.S.C. § 1132(e)* ......................................................................................................................... 25

*29 U.S.C. § 1144(a)* ......................................................................................................................... 25

*29 U.S.C. § 18* ................................................................................................................................... 25

Tex. Gov. Code § 81.012(2)(3) ......................................................................................................... 26

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this Response/Objection to Defendant's Motion to Dismiss by Samantha YBarra. ECF No 75.

### I.    Introduction

1.        Defendant in this suit, Samantha YBarra (hereinafter referred to as "Samantha" or "Ybarra" or "Defendant") submitted Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) or, alternatively, 12(b)(6).

2.        After carefully review Defendant's Motion to Dismiss, first, Plaintiff would like to give credit to counsel Mr. Johnson and Ms. Cyrier for professional presentation of their legal arguments **without** resorting to insulting tactics and dishonest statements. Defendant's counsels' document ECF No 75 was also written in numbered paragraphs, which allows Plaintiff to address these arguments effectively. "Your quality will be known among your enemies before you ever meet them", *Kingdom of Heaven* (2005).

3.        In the third amended complaint, ECF No 60, following claims applied to Defendant:

- *First Claim for Relief, RICO (Individual)*
- *Second Claim for Relief, AntiTrust(Individual)*

4.        The scope of this Response to the Motion to Dismiss will be limited to the scope of Defendant's Motion to Dismiss. Plaintiff neither seeks adding new allegation in this Response to the Motion to Dismiss nor addresses argument not raised in Defendant's Motion to Dismiss.

5.        Defendant's counsel never addressed any Plaintiff's allegation in the Second Claim for AntiTrust before this Court. Therefore, Defendant's argument is insufficient and ineffective.

6.        Defendant's counsel argued that "The extent of … allegations against Ybarra are" from ECF No 60, ¶89, ¶90, ¶96, ¶98, and ¶157. However, that was not a complete list of allegations.

7.        Plaintiff has pleaded that, among ECF No 60, ¶136-139, with following statement: "Plaintiff **incorporates** by reference the sections "*FACTUAL BACKGROUND OF THIS SUIT*" and "*STANDARD OF REVIEW*" as if fully set forth **herein**; Plaintiff refers to **every** paragraph **herein** as

Plaintiff's **allegation**; Plaintiff refers to every paragraph **herein** where the **name** of a person or entity is **mentioned** and its attachment as factual statements; Plaintiff refers to every sentence **herein** where the **U.S. Code** is **mentioned** as an **allegation** to its related **party**."

8.      Plaintiff argues that Defendant's counsel never argued the ECF No 60, ¶72, ¶74, ¶87, ¶99, ¶101, ¶107, ¶159, and ¶160-171. Therefore, even if all of Defendant's arguments are sound, they shall not be granted a dismissal of Plaintiff's lawsuit with prejudice as frivolous, as per their request. This is because Defendant's Motion to Dismiss is insufficient and ineffective. Defendant's counsel only partially read Plaintiff's complaint, raised a few selective arguments, and yet demanded the entire suit be dismissed.

## II.      Standard of Review

9.      "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court **first** considers the Rule 12(b)(1) jurisdictional attack **before** addressing any attack on the merits. Ramming, 281 F.3d at 161. This requirement precludes a court without jurisdiction from dismissing a case with prejudice. Id. A motion to dismiss under **Rule 12(b)(6)** is **"viewed with disfavor and rarely granted."** Priester v. Lowndes County, 354 F.3d 414, 418 (5th Cir. 2004), citing Lowery v. Texas A M University System, 117 F.3d 242, 247 (5th Cir. 1997). **The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true**. Id. **The issue is whether the plaintiff is entitled to offer evidence to support her claim, not whether she will prevail on the claim**. Id. Although detailed factual allegations are not required, the plaintiff must supply the basis for its justification for relief. Ollie v. Plano Independent School Dist., 564 F.Supp.2d 658, 660 (**E.D. Tex. 2008**), citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007). Consequently, the court will not dismiss a claim unless the plaintiff will not be entitled to **any relief** under **any facts** or **possible theory** that the plaintiff could prove consistent with the allegations of the complaint. Priester, 354 F.3d at 418." *Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008).

10.      To warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "**beyond doubt** that Plaintiff can prove **no set of** facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). "Thus, the court **should not** dismiss the claim unless Plaintiff would not be entitled to relief **under any set of facts or any possible theory** that he could prove consistent with the

allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

11.     "See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (**all permissible inferences** must be construed in favor of plaintiff)." *Pure, Ltd. v. Shasta Beverages, Inc.*, 691 F. Supp. 1274, 1279 (D. Haw. 1988).

12.     To survive a Federal Rule 12(b)(6) motion, "See Bell Atlantic v. Twombly , 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (A complaint "does not need detailed factual allegations" but rather "**enough fact** to raise a reasonable expectation that *discovery* will reveal evidence of [a necessary element].") True, her complaint didn't detail such an injury. But "[c]omplaints need not be elaborate." *Aker* , 854 F.3d at 399–400 (quoting S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc. , 274 F.3d 1168, 1171 (7th Cir. 2001) )."  *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280-81 (7th Cir. 2020).

13.     "Therefore, the Court's task is to identify the elements of a cause of action and then determine whether Plaintiff pled sufficient factual allegations in support of the asserted elements to state a plausible claim, and thereby, survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019).

14.     It was exactly in Tarrant County, 30 years ago, SCOTUS has ruled a landmarking opinion about what Rule 8(a)(2) stands in a pleading, "Rule 8(a)(2) requires that a complaint include *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Conley v. Gibson*, 355 U.S. 41 (1957), we said in effect that *the Rule meant what it said*:

    "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant *fair notice* of what Plaintiff's claim is and the grounds upon which it rests." *Id.*, at 47 (footnote omitted). "
    *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  Leatherman v. Tarrant County was citied 2000 times in various opinions.

15.     "To survive a motion to dismiss, a complaint **must** allege sufficient facts, *accepted* as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when Plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16.    A Complaint **should only be dismissed** under Federal Rule 12(b)(6) **after** affording **ample** opportunity for Plaintiff to state a claim upon which relief can be granted, **unless** it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561, F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court **must allow** a plaintiff the opportunity to **amend** the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds Plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

17.    "See Schueuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (claim **should not be dismissed** without leave to amend **unless** it is clear that there is **no** basis for relief). " *Rodriguez v. City of New York*, 861 F. Supp. 1173, 1186 (S.D.N.Y. 1994).

18.    For purposes of deciding a motion to dismiss under Rule 12(b)(6) of the FRCP, the Court *must* assume that the facts alleged in the complaint are **true** and construe them **in the light most favorable to Plaintiff**. *Twombly,* 550 U.S. at 555. For its Rule 12(b)(6) review, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss that are central to Plaintiff's claims and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A Rule 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023). Plaintiff argues that Defendant's counsel executed a factual attack without conducting a **complete** analysis of paragraphs of **all** three elements within the third amended complaint.

19.    Tex. Pen. Code § 7.02 Criminal Responsibility for Conduct of Another

(a) A person is criminally responsible for an offense committed by the conduct of another if:

(1) acting with the kind of culpability required for the offense, he **causes or aids** an innocent or non-responsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to **promote** or **assist** the commission of the offense, he **solicits, encourages, directs, aids, or attempts to aid** the other person to commit the offense; or

(3) having a **legal duty** to **prevent** commission of the offense and acting with intent to promote or assist its commission, he **fails to make a reasonable effort** to **prevent** commission of the offense.

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, **all conspirators are guilty of the felony actually committed**, though having no intent to commit it, if the offense was committed in **furtherance of the unlawful purpose** and was one that should have been **anticipated as a result** of the carrying out of the conspiracy. In this subsection, "conspiracy" means an agreement between two or more persons to commit a felony.

### III.    Summary of Motion to Dismiss

20.    In the Motion to Dismiss, Defendant's counsel seek dismissal under FRCP 12(b)(1) and FRCP 12(b)(6) dismissal for any of all of seven reasons,

A.  12(b)(1)

1.  This Court should abstain under the Younger abstention doctrine;

B.  12(b)(6)

1.  Plaintiff's claims are barred by attorney immunity;

2.  Plaintiff has not sufficiently pleaded a RICO claim "continuity";

3.  Plaintiff has not sufficiently pleaded a RICO claim "18 U.S.C. § 1962(c)";

4.  Plaintiff has not sufficiently pleaded a RICO claim "18 U.S.C. § 1962(a)";

5.  Plaintiff has not sufficiently pleaded a RICO claim "18 U.S.C. § 1962(d)";

6.  Plaintiff has not sufficiently pleaded entitlement to injunctive relief.

21.    Plaintiff will rebut Defendant's argument in following order:

A.  Abstention

1.  Younger abstention doctrine;

B.  Failed to state a claim

1.  Attorney immunity;

2.  RICO;

3.  Injunctive relief.

### IV.    Argument and Authorities

22.     Before delving into the detailed argument, Plaintiff emphasizes a new landmark ruling. On **April 14, 2023**, SCOTUS held that "see also J. Mascott, Constitutionally Conforming Agency Adjudication, 2 Loyola U. Chi. J. Reg. Compliance 22, 45 (2017) (Mascott) ("Cases involving . . . **deprivations** or transfers of life, liberty, or **property** constitute a 'core' of cases that . . . **must be re-solved by Article III courts**—not executive adjudicators 'dressed up as courts' ")." *Axon Enterprise, Inc. v. Federal Trade Commission et al.*, 143 S.Ct. 890 (2023) (No. 21-86). Texas Family courts are not Article III courts.

23.     On May 8th, 2023, Magistrate Judge Jeffrey L. Cureton clearly stated in one of his orders, "this Court is not bound by the Texas Rules of Civil Procedure." Therefore, Plaintiff argues that Federal court is not bound by the state common laws which were cited by Defendant's counsel.

24.     When Plaintiff alleged that the entire Texas legal system has utilized its monopolization to unlawfully extract money from Texas consumers' employee pension funds for decades, every member of this alleged RICO enterprise petitioned this Court, saying, "Please sweep this matter under the rug in our state jurisdiction, so we can use our immunity and discretion to continue our RICO acts."

### A.  Abstention

#### 1.  Abstain from deciding issues pending in state court due to Younger doctrine;

25.     Defendant's counsel argued that "The Younger abstention doctrine instructs federal courts to refrain from considering requests for injunctive or declaratory relief when doing so would result in the interference with certain, select state proceedings." Defendant's counsel did not argue about the second claim, so plaintiff will address this Younger abstention doctrine within the first claim. This statement is factually false, as none of Defendants are currently playing any role in Plaintiff's isolated state court proceedings. No matter what relief this Court grants, it will not alter the course of Plaintiff's isolated state court proceedings. Even if this Court were to send every defendant to Mars, it would not produce any outcome that might interfere with Plaintiff's isolated state court proceedings.

26.     Furthermore, Defendant's counsels failed to specify which relief would "result in the **interference** with" which "certain, select state proceedings". It left Plaintiff no opportunity to rebut argument in their response.

27.     Defendant's counsel argued that "The doctrine applies only to three categories of state proceedings: (1) … (2) … (3) pending civil proceedings involving certain orders **uniquely** in

furtherance of the state courts' ability to perform their judicial functions. *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588, 591 (2013))."

28.     It is ironic that Defendant's counsel cited *Sprint Communications, Inc. v. Jacobs et al.* The **true** story of this Sprint case was, U.S. District Court for the Southern District of Iowa abstained from deciding Sprint's case due to the pending state court proceeding, and the Court of Appeals for the Eighth Circuit affirmed the district court's decision to abstain. However, the Supreme Court **reversed**, concluding that "We reverse the judgment of the Court of Appeals. In the main, federal courts are **obliged** to decide cases **within** the scope of federal jurisdiction. Abstention **is not** in order simply because a pending state-court proceeding involves the **same subject matter**. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) ( NOPSI) ("[T]here is **no** doctrine that . . . pendency of state judicial proceedings **excludes** the federal courts.")." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

29.     Plaintiff has never raised issues of child support or child custody in this case. The subject matter in this case has not been claimed in Texas family court. "federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim;" *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

30.     Defendant's counsels were very adept at arguing the lack of jurisdiction for their clients, however, it is Plaintiff's family court case that truly lacks subject matter jurisdiction over claims in this case. Plaintiff argues that the Texas family court never acquired any subject matter jurisdiction in this case because there was no such claim in the pending family court civil proceedings.

31.     The case Stewart v. Wells, No. 4:19-CV-00598-P-BP, 2020 WL 3146866 and other cases cited by Defendant's counsel, in ECF No 75, ¶12, are in fact related to either child support or child custody subject matters, which do not apply to this case.

32.     It is interesting that when Defendant's counsel stated that "Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) (dismissing plaintiff's RICO claims related to his ongoing divorce proceeding and observing that **"[s]tate courts have concurrent jurisdiction to hear RICO claims**")," in ECF No 75, ¶12, counsel intentionally concealed a critical context from the *Peterson v. Peterson* citation.

33.     The full context of citation from *Peterson v. Peterson,* Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) is "(quoting Pennzoil, 481 U.S. at 15). State courts have

concurrent jurisdiction to hear RICO claims, Tafflin v. Levitt, 493 U.S. 455, 467 (1990),17 and Plaintiff has made allegations in state court almost **identical** to the underlying facts in this case." In that *Peterson v. Peterson,* Civil Action No. 4:18-CV-4837 case, Peterson sought remedy about divorce and property disputes arising from a divorce decree. That property was a Texas property and Peterson made allegations in State Court first, then went to Federal Court, which triggered conflicting judgement. In this case, Plaintiff never sought remedy in state court for **identical** allegations, and Plaintiff's injury **originated** from an out-of-state employee fund account under **exclusive** ERISA jurisdiction. Contrary to a property dispute among family members, Plaintiff's property was stolen through a joint criminal conspiracy by external parties which is not the party of state proceedings.

34.     Plaintiff argues that the Younger doctrine does not apply to this RICO / AntiTrust / ERISA / 1983 case. Plaintiff's soon-to-be ex-spouse is not a party in this case. Plaintiff is not seeking child support, child custody, or the division of marital assets in this case. Additionally, Plaintiff's state family court case is still ongoing without any indication of interference. Plaintiff has constitutional right to seek various civil remedies in Federal and State court at same time. Younger doctrine never says citizen can only have one civil case ongoing at same time. Younger doctrine is used to address federal and state court jurisdiction conflict situation over **same subject matter**. Younger doctrine carries no intention restricting people to seek remedies from Federal court while they have isolated cases in the State court.

35.     "The Supreme Court has set out a three-part test for determining whether Younger abstention is appropriate. Middlesex, 457 U.S. at 423, 102 S.Ct. at 2515. Abstention is appropriate if (1) there are ongoing state proceedings, (2) the proceedings implicate important state interests, and (3) there is an adequate opportunity in the state proceedings to raise federal questions. Id. at 432, 102 S.Ct. at 2521; see also Yamaha Motor Corp. U.S.A. v. Riney,21 F.3d 793, 797 (8th Cir. 1994). **If any of the three prongs is not satisfied, abstaining on the grounds of Younger is inappropriate**. See Yamaha Motor Corp.,21 F.3d at 798 n. 11." *Fuller v. Ulland*, 858 F. Supp. 931, 934 (D. Minn. 1994).

36.     Defendant's counsel only referred to the name "Younger doctrine" in his argument, without performing full three-part test analysis. It left Plaintiff no opportunity to rebut analysis in his response. Therefore, Defendant's argument is insufficient and ineffective.

   **B.  Failed to state a claim**

    **1.  Claims against Ybarr are barred by attorney immunity;**

37.      Defendant's counsel argued that "Attorneys have "true immunity from suit" against claims of non-clients for the attorney's actions taken in connection with representing a client in litigation". Defendant's counsel acknowledged that "An attorney has no immunity against claims from clients for malpractice actions," including but not limited to unlawful abstraction of money from a client's employee pension fund. However, in this case, the attorney's actions referred to the criminal act specified in *18 U.S.C. § 664*. If Defendant's counsel's argument is sound, then every Texas lawyer could collude with opposing counsel in a conspiracy to unlawfully abstract money from opposing counsel's client, enrich themselves, and walk away with "attorney immunity". Plaintiff argues that the intention of "attorney immunity" was not to evade accountability for collusion to steal money from another party to their own pocket, which is not part of the litigation. Moreover, Ms. Ybarra obtained the fee from the service of other litigation when Plaintiff was not the opposing party when Ms. Ybarra represented her client.

38.      "Criminal conduct can negate attorney immunity." Gaia Envtl., Inc. v. Galbraith , 451 S.W.3d 398, 404 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "[T]heft of goods or services **on a client's behalf**" is an example the Supreme Court of Texas provided of attorney behavior undoubtedly **not immunized**. Youngkin , 546 S.W.3d at 682-83." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 506 (5th Cir. 2019).  On August 5th, 2022, Leslie Starr Barrows wrote email to William Albert Pigg, copied Ms. YBarra saying, "In order for us to obtain our attorney's fee, we must say the order is for spousal support…," and "there is no way around it." ECF No. 60, PageID 1172. Plaintiff argues that "say the order is for spousal support" is "on an attorney's behalf", and "for us to obtain our attorney's fee" is "theft of goods". Plaintiff argues that Ms. YBarra is included in 'we' because part of those fees ($25000) was for her service in a criminal case. The fees were sent to the Barrows Firm, Ms. YBarra and Leslie Starr Barrows split those fees.

39.      "We conclude that criminal conduct does not automatically negate immunity, but in the **usual** case it will be **outside** the scope of representation." *Troice v. Greenberg Traurig, L.L.P*., 921 F.3d 501, 507 (5th Cir. 2019).

40.      "As an example of the doctrine at work, the Supreme Court of Texas cited "assaulting opposing counsel during trial" — a presumably criminal action — as an example of unimmunized conduct. Id. at 683 ; see also TEX. PENAL CODE ANN . § 22.01 (West 2017). The court held such behavior to fall outside the protections of immunity, not because it could be criminal, but "because it **does not** involve the provision of legal services and would thus fall outside the scope of client representation." Cantey Hanger , 467 S.W.3d at 482." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d

501, 507 (5th Cir. 2019). Plaintiff argues that Plaintiff was not even a party in the criminal case; it was a government entity vs. Ms. YBarra's client. Ms. YBarra did not provide legal services in family court for the defense in that criminal case, and there is no client interest that Ms. Ybarra could advocate against Plaintiff concerning that criminal charge. Plaintiff argues that the unlawful theft of Plaintiff's employee pension fund for the lawyer's financial interest incurred in service of criminal case "fall outside the scope of client representation" of family court case.

41.    "Summarizing our jurisprudence, attorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the **unique office, professional skill, training, and authority of an attorney** and (2) the attorney engages in to fulfill the attorney's duties in representing the client within an **adversarial context** in which **the client** and **the non-client** do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable. See id. at 52 (holding immunity did **not** apply because the conduct had "little to do with 'the office, professional training, skill, and authority of an attorney' " and was not "part of the discharge" of a "lawyer's duties in representing his or her client" (quoting Cantey Hanger , 467 S.W.3d at 481 )); see also Bethel, 595 S.W.3d at 658 ; Youngkin , 546 S.W.3d at 681 ; McCamish , 991 S.W.2d at 794. Whether the defense applies depends on whether the claim is based on this "kind " of conduct, not on the nature of the conduct's alleged wrongfulness. Bethel , 595 S.W.3d at 657 ; Youngkin , 546 S.W.3d at 681." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021). Plaintiff argues that Ms. Ybarra committed aggravated perjury during the April 13th hearing, which had "little to do with the office, professional training, skill, and authority of an attorney," and that her role as a RICO conspirator involved violations of federal crimes, including but not limited to *18 U.S.C. § 664.*  Plaintiff further argues that RICO acts involving **unlawfully abstracting money from Plaintiff's pension account for collecting attorney fees and diverting it to the lawyer's own pocket** was outside the scope of an adversarial context between attorney's client and non-client. Ms. Ybarra's client was used as a vehicle. Neither Ms. Ybarra nor Leslie told their client that the **pension account** was preserved for child support and spousal support only per Federal ERICO act. Neither Ms. Ybarra nor Leslie informed their client that interlocutory orders are not permitted by the Texas Family Code. On April 16, 2022, Ms. Ybarra, Leslie, and Pigg betrayed their clients when DeAngelis awarded attorney fees to both sides. None of those who possess an attorney's license objected to that unlawful order. None of them told their clients that Leslie fabricated an order, committed fraud upon the court in April and May, 2022.

42.      "Because not every situation is clearly defined as "adversarial" or "nonadversarial," the characterization of the inter-party relationship should be guided, at least in part, by "the extent to which the interests of the client and the third party are consistent with each other." See Feinman, 31 Tort Ins. L.J. at 750." *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999). At the hearing on April 13, 2023, Ms. Ybarra's client and the non-client shared a non-adversarial relationship. Both parties had consented to the associated judge's report, which should not be altered against the will of either party. It was Leslie and Ms. Ybarra's own decision to change the context when they put the order under the writing.

43.      In the associate judge's report on April 13th, 2022, DeAngelis wrote that Plaintiff obligates to pay the fee for drafting interlocutory QDRO, but she did not order which party has to draft interlocutory QDRO, the context indicates that **either** party's counsel could draft the interlocutory QDRO. Few weeks later, Plaintiff asked Pigg why he did not draft, Pigg replied that if he did not draft, Fuyan's counsel could have picked up the work, makes no difference. The drafting QDRO is purely ministerial act does not need to exercise any discretion. The drafting task is neither 'unique' to Fuyan's party nor to Plaintiff's party, nor does it require any further adversarial context in which Ms. Ybarra's client(Fuyan) and non-client(Plaintiff) do not share the same interests, because EITHER party's counsel can do the task. When Fuyan's counsel Leslie and Ms. Ybarra altered the context, changed $50000 to $25000 and removed the name of Pigg, that altering is an adversarial act against Plaintiff's 401K on behalf of ONLY Leslie and Ms. Ybarra's interest. Therefore, the attorney immunity does not apply.

44.      ""[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense." "To meet this burden, the attorney must 'conclusively establish that [the] alleged conduct was within the scope of [the attorney's] legal representation of [the] client.' "" *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019). "Moreover, we have explicitly found that attorney immunity is not a jurisdictional issue and, thus, not a jurisdictional bar to suit. See Hunter v. Marshall , No. 14-17-00839-CV, 2020 WL 103706, at *10 (Tex. App.—Houston [14th Dist.] Jan. 9, 2020, no pet.) (mem. op.). Our sister court also agrees, stating that "[a]n attorney has **qualified immunity** from civil liability, with respect to non-clients," and "the attorney immunity defense is an affirmative defense; it is not a jurisdictional issue." Diogu v. Aporn, No. 01-17-00392-CV, 2018 WL 3233596, at *5 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op.)." *NFTD, LLC v. Haynes & Boone LLP*, 652 S.W.3d 546, 557 (Tex. App. 2022).

Plaintiff argues that Defendant's counsel never raised any evidence to support their argument, therefore, this "attorney immunity" argument is insufficient.

45.     Plaintiff argues that Defendant's counsel never conclusively established any argument relating to unlawfully abstracting money to collect Ms. Ybarra's legal service fee in Fuyan's criminal case. There was no conduct Ms. Ybarra could have engaged Plaintiff in the family court (April 2023) for discharging her duties to criminal case client (Jan 2023). Defendant's counsel failed to complete analyze that whether Ms. Ybarra's alleged criminal conduct that "(1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney **and** (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable." Defendant's counsel failed to meet the burden of establishing entitlement to the defense. It left Plaintiff no opportunity to rebut argument. Therefore, Defendant's argument is insufficient and ineffective.

## 2.  Has not stated a civil RICO claim "continuity";

46.     Defendant's counsel further argued that Plaintiff has not sufficiently pleaded "continuity", *18 U.S.C. § 1962(a)*, *18 U.S.C. § 1962(c)* and *18 U.S.C. § 1962(d)* against Ms. Ybarra. Plaintiff argues that Defendant's counsel was misleading by mixing the concept of "racketeering activity" and RICO "person".

47.     "To establish a RICO pattern it must also be shown that the **predicates** themselves **amount to**, or that **they** otherwise constitute a threat of, **continuing** racketeering activity." *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989). This "continuity" requirement is for "racketeering activity" defined under *18 U.S.C. § 1961(1),* not for "person" defined under *18 U.S.C. § 1961(3)*. It was "they" "constitute" "a" "threat of continuing.". Therefore, there is no requirement for Plaintiff to sufficiently pleaded "continuity" or any other element of *18 U.S.C. § 1962(a)(c)(d)* separately against Ms. Ybarra's role related to predicate acts. It is all Defendants' joint participation of racketeering activities constituted "continuity", both closed-ended continuity and open-ended continuity. Pigg's withdrawal for covering up, his false statement made to the law enforcement when Plaintiff filed criminal complaint, the concealment acts by the Chief Disciplinary Office's counsels, and the Tarrant County District Attorney Office's refusal to investigate for continuous cover up, along with prior court orders involving other alleged **prior racketeering** against **prior victims**—some of which was presented in ECF No. 60, Exhibit 9—collectively prove both closed-ended continuity and open-ended continuity. The members of the State Bar of Texas have not taken any action to stop these

alleged unlawful RICO acts, neither ten years ago nor now. This constitutes a threat of continuing racketeering activity against the people of Texas, who may not be aware of this RICO crime.

48.     When Defendant's counsels argued that "[c]ontinuity cannot be established by multiple acts of fraud that are part of a single transaction.", they forgot to mention that these cited cases were multiple acts of alleged mails or emails. In this case, Plaintiff asserted that there are multiple acts of alleged mails or emails from/to the court, multiple acts of alleged mails or emails from/to out of the state pension fund administrator and acts of *18 U.S.C. § 664*, a decade long, statewide **racketeering** against **family court victims**. Plaintiff presented evidence in ECF No. 60, Exhibit 9 showed there was **prior victim** under the same offense of *18 U.S.C. § 664*, back to 9 years ago.

49.     "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence ... its task is necessarily **a limited one**. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is **entitled to offer evidence** to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Plaintiff should be entitled to offer evidence obtained through discovery to support the claim that there may be up to 100,000 Texas prior victims in recent decades. Plaintiff believes that now is the time to tell the truth. Any further efforts by state government officials to conceal this crime against public interest, as defined by 18 U.S.C. § 664, would be a public career suicide for them.

### 3.  Has not stated a civil RICO claim "18 U.S.C. § 1962(c)";

50.     Defendant's counsel argued "Plaintiff does not allege that Ms. Ybarra committed mail or wire fraud… Instead…18 U.S.C. § 1349. [See Pl.'s 3d Am. Compl., at ¶¶ 89/160, 90/161, 96/162, 98/163, 99/164, and 166/171]." Defendant's counsel failed to argue the allegations in ECF No 60, ¶107.

51.     Moreover, SCOTUS has held that Plaintiff "does not need to prove that **each defendant** personally committed two predicate acts to prove a RICO conspiracy. See Salinas v. United States,522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("**There is no requirement** of some overt act or specific act in the [**RICO conspiracy**] statute....")." *United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014). "Conspirators are liable for the acts of their co-conspirators who **agree** to pursue the **same criminal objective**. Salinas supports the rule adopted by the majority of circuit courts that a person **need not** participate in the enterprise's operation or management to be liable for a RICO conspiracy." *Baker v. Stewart Title Trust of Phoenix*, 197 Ariz. 535, 544 (Ariz. Ct. App. 2000).

52.      "A conspiracy may exist even if a coconspirator does not agree to commit or facilitate each and every part of the substantive offense. [citation omitted] The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other. [citation omitted] If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators. Salinas v. United States, 522 U.S. 52, 63-4 (1997). The government need not prove that a defendant knew each and every detail of the conspiracy or played more than a minor role in the conspiracy. **Any of the defendants may be found guilty** even if they **joined** or **terminated** their relationship with core conspirators at different times. United States v. Morrow, 971 F.Supp. 1254, 1256-57 (N.D. Ill. 1997)." *U.S. v. Vallone*, No. 04 CR 0372, 3 (N.D. Ill. Feb. 19, 2008).

53.      "A conspirator who has become **less active** in the conspiracy nevertheless is **liable for his conspirators' further statements unless** he **openly disavows** the conspiracy or **reports it to the police**. United States v. Maloney, 71 F.3d 645, 654-55 (7th Cir. 1995) (mere inactivity on the part of the conspirator is not sufficient to constitute withdrawal)." *U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008). Ms. Ybarra has never openly disavows or reports it to the authorities, even though Tex. R. Disc. Prof'l. Cond. 8.03 mandates it "a lawyer having knowledge that another lawyer has committed a violation…**shall** inform the appropriate disciplinary authority."

54.      Other than the emails among lawyers, the bills from Barrows Firm indicate that Ms. Ybarra drafted, reviewed, discussed multiple orders and motions which Leslie filed or attempted to file to the court. These acts and statements are alleged in ECF No 60, ¶107 under the clause of "teamed up".

55.      "Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and **still be** "in furtherance of the conspiracy." Shoffner, 826 F.2d at 628. Yet, the statement **need not** have been made **exclusively**, or even **primarily**, to further the conspiracy in order to be admissible under the coconspirator exception. United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000); United States v. Powers, 75 F.3d 335, 340 (7th Cir. 1996). Rather, the record need only contain some reasonable basis for concluding that the statement in question furthered the conspiracy in some respect. Stephenson, 53 F.3d at 845. "*U.S. v. Vallone*, No. 04 CR 0372, 4 (N.D. Ill. Feb. 19, 2008). The email Leslie sent out is a joint statement.

56.      "The Government has a **relatively low burden** of proof on the issue of whether a statement is made "in furtherance" of a conspiracy. Shoffner, 826 F.2d at 628. Such statements can

take on a variety of forms, and the Seventh Circuit has upheld the admission of a wide assortment of coconspirators statements. For instance, statements used to recruit potential coconspirators, id., **update others on a conspiracy's progress**, United States v. Potts, 840 F.2d 368, 371 (7th Cir. 1987), **control damage to an ongoing conspiracy**, United States v. Van Daal Wyk, 840 F.2d 494, 499 (7th Cir. 1988), **plan** or **review** co-conspirators' exploits, United States v. Molt, 772 F.2d 366, 369 (7th Cir. 1985), and **attempt to conceal the conspiracy**, United States v. Kaden, 819 F.2d 813, 820 (7th Cir. 1987), have been **approved** as statements made "in furtherance of" conspiracies. In turn, the court recognizes that "conspiracy is serious business, and **talk about** it **among** or **by** the conspirators **should not be presumed to be unrelated** to the accomplishment of the conspiracy's goals." United States v. Pallais, 921 F.2d 684, 688 (7th Cir. 1990)." *U.S. v. Vallone*, No. 04 CR 0372, 4-5 (N.D. Ill. Feb. 19, 2008).

57.     "statements made during the course of and in furtherance of a conspiracy, even at its **beginning stages**, are admissible against those who arrive late to join a going concern. Potts, 840 F.2d at 372. Moreover, conversations made by conspirators to prospective coconspirators for membership purposes are acts in furtherance of the conspiracy. Shoffner, 826 F.2d at 628." *U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008). Ms. Ybarra's contribution during the criminal case is part of the conspiracy of committing *18 U.S.C. § 664* crime as well.

58.     "Statements that are "part of the information **flow between** conspirators intended to help each perform his role" are statements "in furtherance." United States v. Gajo, 290 F.3d 922, 929 (7th Cir. 2002); United States v. Hunt, 272 F.3d 488, 495 (7th Cir. 2001). **Assurances** that a **coconspirator can be trusted or relied upon to perform his role** are considered to further the conspiracy. United States v. Buishas, 791 F.2d 1310, 1315 (7th Cir. 1986). Statements designed to **conceal a conspiracy** also are deemed to be "in furtherance" where ongoing concealment is a purpose of the conspiracy. Gajo, 290 F.3d at 928-29. Therefore, "statements made to keep coconspirators **informed about the progress** of the conspiracy, to recruit others or to **control damage to the conspiracy** are in furtherance of the conspiracy. Stephenson, 53 F.3d at 845." *U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008). Ms. Ybarra has been trusted by Leslie to control and move forward committing *18 U.S.C. § 664* crime during Leslie's absence.

59.     Ms. Ybarra is not the only member of the State Bar of Texas who did not openly disavows the conspiracy or reports it to the law enforcement authorities. Every member of the State Bar of Texas, either as defendant or counsel, has been participating of some form of control damage, conceal or update others on a conspiracy's progress as of today.

**4. Has not stated a civil RICO claim "18 U.S.C. § 1962(a)";**

60.     In ECF No. 75, ¶27 and following, Defendant's counsel argued that Plaintiff failed to plead *18 U.S.C. § 1962*(a) against Ms. Ybarra, mainly because Plaintiff failed to plead "any injury must flow from the use or investment of racketeering income.", citing *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002).

61.     First of all, fifth circuit does recognize "form of legal costs" as injury, "we believe that St. Paul has sufficiently distinguished and established a genuine issue of material fact as to the existence of a prior pattern of racketeering activity, which may have produced income that was invested into a RICO enterprise, **causing injuries** to St. Paul in the **form of legal costs.**" *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000). In ECF No. 60, ¶179, Plaintiff did claim a loss of legal costs after Pigg failed to compel Plaintiff to sign an unsolicited settlement offer sent by attorneys Barrows and Ms. Ybarra. Compelling Plaintiff to settle was a conspiratorial act intended to conclude the case when the Defendants realized that the Plaintiff intended to file a criminal complaint soon. Pigg, acting as a co-conspirator, withdrew within 24 hours after the Plaintiff declined the draft; he did not even present any alternative settlement proposal, which is highly unusual at the divorce settlement stage. When Pigg met the Plaintiff for the first time in the office to discuss the settlement, the motion to withdraw was already printed and present in Pigg's suitcase. The Plaintiff incurred legal costs on Pigg without receiving any benefits. The Barrows Firm has used racketeering income to operate its office, providing internet, computer, electricity, and payroll to engage in offering settlement in attempts to conceal prior RICO activities. When this attempt failed, co-conspirator Pigg took the money and left.

62.     *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000). also cited *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385 (6th Cir. 1989), which says, "See Vemco, 23 F.3d at 131 (distinguishing Newmyer v. Philatelic Leasing, Ltd. , 888 F.2d 385 (6th Cir.1989) ). In Newmyer, the Sixth Circuit reversed dismissal of plaintiffs' § 1962(a) claim where "Newmyer plaintiffs could have been injured by the investment itself if the investment plan into which they put their money (i.e., the enterprise) was itself funded with monies from **prior racketeering** against **prior victims**" concluding that "an injury resulting from the investment of racketeering proceeds itself was possible." Id. (emphasis added)." *W. Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp. (In re Nat'l Prescription Opiate Litig.)*, 452 F. Supp. 3d 745, 773 n.33 (N.D. Ohio 2020).

63.     Plaintiff has alleged that this is a decade-long, statewide, ongoing racketeering scandal in which every lawyer, the State Bar of Texas counsel, and District Attorneys have attempted to mislead

Plaintiff into believing that this 18 U.S.C. § 664 offense is lawful. Given that no Texas State authority has attempted to prosecute or discipline those involved, each day serves as further evidence of "'continuity." Plaintiff has also alleged that there were prior racketeering activities against previous victims. While Plaintiff is not the first victim of these RICO enterprises involving the Barrows Firm and the State Bar of Texas, due to very high legal knowledge barriers, Plaintiff is the first one to draft a coherent legal document to present the crime to this Court. Even Plaintiff himself did not acquire such a legal knowledge until a few months ago.

### 5.  Has not stated a civil RICO claim "18 U.S.C. § 1962(d)";

64.      When Defendant's counsel incompletely concluded that the allegations against Ms. Ybarra were "(1) received telecommunications; (2) attended a court hearing; and (3) received income from the alleged "racketeering" activities", which is both false and incomplete, this conclusory summary is misleading.

65.      SCOTUS has held that ""[I]n proving the existence of a single RICO conspiracy, the government **does not** need to prove that **each** conspirator agreed with **every other** conspirator, knew of his fellow conspirators, was aware of **all** of the details of the conspiracy, or contemplated participating in the same related crime." United States v. Castro,89 F.3d 1443, 1451 (11th Cir.1996). A mere "[a]greement to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity brings a defendant within the conspiracy **regardless of** the **unrelatedness** of the acts of other members of the conspiracy." Gonzalez,921 F.2d at 1540." *United States v. Godwin,* 765 F.3d 1306, 1324 (11th Cir. 2014).

66.      "a person to be convicted of conspiracy so long as he "**agrees** with such other person or persons that they or **one or more of them will engage in** conduct that constitutes such crime…the actor **need not agree** `to commit' the crime…A conspirator must intend to **further** an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so **in any number of ways short of agreeing** to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate **only some** of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished **whether or not** the substantive crime ensues, **for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself**. See Callanan v. United States, 364 U.S. 587, 594 (1961)." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Plaintiff argues that Ms. Ybarra did not simply receive the telecommunications, as Defendant's counsel mischaracterized. She was not watching TV or listening to the radio. When Leslie wrote, "In

order for **us** to obtain **our** attorney's fee, **we** must say the order is for spousal support…", this is an email jointly sent by these lawyers working at the Barrows Firm: **Leslie and Ms. Ybarra**. Due to technological restrictions, the email system allows only one sender's email address to be listed in the FROM field of each email. Co-authors (Ms. Ybarra) must be typed on the CC field list. That email was addressed to Pigg, to solicitate him agreeing further substantive criminal offense. Clearly, Mr. Pigg was the one who received the RICO conspiracy solicitation, and he agreed and cooperated. Other than Leslie herself, as "I" and "my", who was the other individual constituted as "we" and "our"? That is Ms. Ms. Ybarra, a co-author who sent RICO conspiracy solicitation to Pigg. Ms. Ybarra's fee was part of the "**our** attorney's fee".

67.        Plaintiff argues that Ms. Ybarra did not receive the email, she was the co-author; Ms. Ybarra did not tour the court, she was the co-counsel in the court; Ms. Ybarra did not receive the income, she was the one generated that income. Therefore, Ms. YBarra is one of the many family law attorneys engaged in decades-long substantive RICO acts, including but not limited to *18 U.S.C. § 664*.

68.        "If conspirators have a plan which calls for some conspirators to perpetrate the crime and ***others to provide support, the supporters are as guilty as the perpetrators***. As Justice Holmes observed: "[P]lainly a person may conspire for the commission of a crime by a third person." United States v. Holte, 236 U.S. 140, 144 (1915). A person, moreover, may **be liable for conspiracy even though** he *was incapable* **of committing the** *substantive offense*." *United States v. Rabinowich*, 238 U.S. 78, 86 (1915)." *Salinas v. United States*, 522 U.S. 52, 64 (1997). Plaintiff argues that Ms. Ybarra is the supporter as guilty as the perpetrators for *18 U.S.C. § 1962(d)* act.

69.        "In that regard, we **emphasize** that, because drug trafficking is an "unlawful activity" with respect to money laundering and **RICO offenses** (*see 18 U.S.C. § 1956(c)(7)* ), a lawyer providing advice to an unlawful drug trafficking entity such as the Nicka Organization places himself at great personal risk. **Any lawyer** providing advice concerning ongoing unlawful activity is circumscribed in the legal advice that can permissibly be provided, lest he become a participant in the unlawful activity. That is, a lawyer representing or advising such an entity can **readily turn himself into a coconspirator — or aider and abettor — in the form of a consigliere or fixer**." *United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019). "**any statement** by a conspirator, made while he is a member of the conspiracy, that concerns the conspiracy and has some informational content is in furtherance of it. The **exchange of information** is the lifeblood of a conspiracy, as it is of any **cooperative activity**, **legal or illegal**." *U.S. v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990). Plaintiff

argues that Ms. Ybarra is held liable as conspirators when she crossed the line and became part of the criminal organization itself, as a consigliere or fixer. Ms. Ybarra did not attend a court hearing as a court tourist, she was the co-counsel working with Leslie side by side, making notes for helping Leslie when she cross exam Plaintiff or when she is committing falsify testimony under aggravated perjury. These notes are Ms. Ybarra's statements. Ms. Ybarra exchanged of information with Leslie in the court. Ms. Ybarra was there to **further** an endeavor which, was completed, and satisfied the proceeding of RICO offense. Ms. Ybarra got paid for her presence in the court. Ms. Ybarra did receive money from the alleged "racketeering" activities" income, it was indeed from the unlawful abstraction of Plaintiff's pension fund. The billing evidence presented in ECF No. 60, Exhibit 5 showed Ms. Ybarra drafted court documents for Leslie Barrows as well.

70.        "Some federal courts have held an employer liable under respondeat superior for its employee's violations of section 1962(c) "when the employer is distinct from the enterprise." Brady v. Dairy Fresh Products Co., 974 F.2d 1149, 1154 (9th Cir. 1992); see also Petro-Tech, Inc. v. Western Co. of North America, 824 F.2d 1349, 1358 (3rd Cir. 1987); Davis v. Mutual Life Ins. Co. of New York, 6 F.3d 367, 379-80 (6th Cir. 1993)." *Baker v. Stewart Title Trust of Phoenix*, 197 Ariz. 535, 544 (Ariz. Ct. App. 2000). Ms. Ybarra was employed by the Barrows Firm during the whole time, get paid for her engagement and contributed her work.

71.        Plaintiff argues that, Plaintiff has alleged a pattern of racketeering activity performed by all Defendants, proved the commission of predicate crimes in the third amended complaint. *18 U.S.C. § 1961*(5) provides that a "pattern of racketeering activity" requires at least <u>two acts of racketeering activity in a RICO suit</u>. It does not require <u>each individual defendant</u> to commit two predicate acts of racketeering activity. The requirement for at least two predicate acts can be met by a total count, not by a separate personal count for each person under RICO claim.

72.        Ms. Ybarra never took affirmative action to withdraw from the conspiracy; Ms. Ybarra never communicated her withdrawal to all co-conspirators; and Ms. Ybarra never withdrew prior to the completion of the conspiracy's objective. Instead, as a member of the State Bar of Texas, she is patiently waiting for the next victim to walk in so that she can unlawfully divert employee pension funds again, like her co-conspirators. The evidentiary decision from the Tarrant County DA's office and the State Bar of Texas has assured her and conspirators that there will be no consequences for committing such RICO acts against future victims.

**6. Has not sufficiently pleaded entitlement to injunctive relief;**

73.     Plaintiff has pleaded for multiple forms of relief, including but not limited to declaratory relief, injunctive relief, compensatory damages, punitive damages, treble damages, fee reimbursement, and expense relief. Defendant's counsel failed to mention which injunctive relief they were arguing about. Without specifying the context of the injunctive relief, their argument was too broad, leaving Plaintiff with no opportunity to specifically rebut their argument.

74.     However, "We are aware, however, that the **protections** a **non-client** enjoys against an opponent's attorney's wrongful conduct in a non-litigation context are **not as numerous** as the protections available within a litigation context. As we have observed, the litigation context offers "other mechanisms," besides a suit against the attorney, to discourage and remedy an opposing attorney's wrongful conduct, "such as sanctions, contempt, and **attorney disciplinary proceedings**." Cantey Hanger , 467 S.W.3d at 482. Although the **first two** of these mechanisms are **only** available in the litigation context, the **third** is available to **any non-client** who complains of an attorney's wrongful conduct."  "We agree that these mechanisms provide **sufficient incentive** to discourage attorneys from engaging in wrongful conduct within the non-litigation context." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021). Plaintiff argues that Supreme Court of Texas had held that, **these mechanisms** provide **sufficient incentive** to discourage attorneys from engaging in wrongful conduct. However, when Plaintiff's own attorney Pigg, opposing counsel Ms. Ybarra, Barrows, and counsels in the Chief Disciplinary Office colluded together under a RICO conspiracy with the common goal of "for us to obtain our attorney's fee", none of "sanctions, contempt, and attorney disciplinary proceedings" function effectively. There is insufficient incentive to discourage attorneys from engaging in wrongful conduct, which poses a 'real and immediate threat of future or continuing injury' to all Texas legal service consumers, including Plaintiff.

75.     For the injunctive relief portion, Plaintiff has pleaded for multiple forms of relief, enjoining the parties of Tarrant County, the State Bar of Texas, the Barrows Firm, the Office of the Chief Disciplinary Counsel and State of Texas. Ms. Ybarra was not named in any of the aforementioned parties. Defendant's counsel has no standing to defend against any relief targeted at non-clients.

76.     Plaintiff could not effectively argue about this subject of injunctive relief when Defendant's counsel failed to meet the burden of citing the specific injunctive relief that they were arguing about in the third amended complaint. There was no citation in that section at all.

77.      Even if their argument about this whatever relief is sound, which is not, there are still other forms of relief against Ms. Ybarra that they failed to address; nonetheless, Defendant's counsel demanded that the entire suit be dismissed. Defendant's counsel's argument was insufficient.

## V.    Conclusion

78.      This Court "**shall** have **original** jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" under *28 U.S.C. § 1331.*

79.      This Court has **exclusive** jurisdiction of civil actions under *29 U.S.C. § 1132(e)* because the essential substantive violation of Federal law arises under ERISA Act, *29 U.S.C. § 18*, and ERISA statute also supersedes **any** and **all** state laws insofar as they "relate to" any employee benefit plan under *29 U.S.C. § 1144(a).*

80.      The Supreme Court held that "In the main, federal courts are **obliged** to decide cases **within** the scope of federal jurisdiction…. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (NOPSI) ("[T]here is **no doctrine** that . . . pendency of state judicial proceedings **excludes** the federal courts.")." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). This Court is obliged to decide case **originally** arising under the **exclusive** ERISA statue, RICO, Antitrust and Fourteen Amendment.

81.      SCOTUS has held that "see National Organization for Women, Inc. v. Scheidler, ___ U.S. ___, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (stating that Civil RICO **should be construed broadly to effectuate Congress' purpose**)," *Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994). Plaintiff argues that Civil RICO should be construed broadly to effectuate Congress' purpose. There is no Federal statue or procedural law grant any form of immunity based on identity of any person on RICO charge. Even though President Trump and his 18 co-defendants, including attorneys and officials were indicted Aug. 14, 2023 for violating RICO Act due to frivolous allegations in Georgia, no immunity was sought by all defendants in that case to succeed any motion to dismiss. Somehow, Defendants in this case believed they all have immunity under all kind of self-claimed house rules.

82.      "**Every circuit in the country** that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires **imposition of joint and several liability** because all defendants participate in the enterprise responsible for the RICO violations. See Oki Semiconductor Co. v. Wells Fargo Bank, 298 F.3d 768, 775 (9th Cir. 2002) ("[h]olding RICO conspirators jointly and

severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy is not to be judged by dismembering it and viewing its **separate parts**, but only by looking at it **as a whole**"); U.S. v. Corrado, 227 F.3d 543, 553 (6th Cir. 2000) (finding that "joint and several liability is not only consistent with the statutory scheme [of RICO] but in some cases will be necessary to achieve the aims of the legislation" because the "entire scheme would not have succeeded without the support of [the] enterprise")." *U.S. v. Philip Morris USA Inc*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004).

83.    Defendant's counsel made an incomplete partial argument from many aspects, missed reliefs, missed claims, and missed U.S.C. code citations. Plaintiff argues that Defendant's Motion to Dismiss is insufficient and ineffective.

84.    Defendant's counsel never argued **Second Claim** sued under her individual capacity in the arguments. Plaintiff believes that the **Second Claim** was not effectively argued, and the rest arguments are not sound. Plaintiff expects a Reply from Defendant limited to the scope of Plaintiff's Response herein, but this Court shall not allow any new argument arises from Defendant's reply.

85.    After this issue arose in this Court since July 2023, if every party involved—including members of the State Bar of Texas—refuses to acknowledge that these alleged RICO acts are unlawful and declines to take immediate action in their official or individual capacities to protect Texas consumers from further harm, it underscores the essence of Plaintiff's antitrust claim: this industry has completely lost its cognitive ability regarding upholding law, thereby harming Texas consumers.

86.    The defendant argues that all members of the State Bar of Texas, the Tarrant County District Attorney's Office, and the State Bar of Texas bear the responsibility to protect the public interest. As of today, they have all failed to fulfill this duty. Further arguments in this Court serve only as damage control for an **ongoing** conspiracy, with the chilling effect of perpetuating it.

87.    The State Bar of Texas acts in bad faith when it continues to update others on the progress of this statewide *18 U.S.C. § 664* conspiracy during board meetings, yet takes no action to comply with Tex. Gov. Code § 81.012(2)(3) to protect consumers.

88.    Defendant is unlikely to prevail in this suit. Plaintiff suggests that Defendant's counsel behave professionally during the proceedings to preserve the Tarrant County executive branch's intangible assets, such as DA office's reputation, if there would be any remain.

**Prayer for Relief**

89.     Based on the above, Plaintiff respectfully requests for the following relief:

90.     Plaintiff prays that Defendant's Motion to Dismiss be denied as moot.

91.     If not, "Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court **must allow** a plaintiff the opportunity to **amend** the Complaint" *Hitt*, 561 F.2d at 608–09. Alternatively, Plaintiff prays that this Court grants Plaintiff leave of court for Amendment.

Respectfully submitted,

_____/s/ Conghua Yan_____
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]
/[arnold200@gmail.com]

**CERTIFICATE OF SERVICE**

On (October 7th, 2023) I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).


/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]