**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

**RESPONSE/OBJECTION TO FIRST AMENDED MOTION TO DISMISS
BY THE STATE BAR OF TEXAS,
MARIN, MARTINEZ AND CRAIG
AND BRIEF IN SUPPORT**

## Contents

I. Introduction ........................................................................................................................... 5

II. Standard of Review ............................................................................................................. 7

III. Summary of Motion to Dismiss ........................................................................................ 9

IV. Argument and Authorities ............................................................................................... 10

A.    Immunity ......................................................................................................................... 10

    1.    Eleventh Amendment immunity 12(b)(1); ................................................................... 10

    2.    Absolute immunity 12(b)(1); ....................................................................................... 13

    3.    Qualified immunity 12(b)(1); ...................................................................................... 14

B.    Claims .............................................................................................................................. 16

    1.    Claim liable in individual capacity 12(b)(1); ............................................................. 16

    2.    Cognizable equal protection claim under 42. U.S.C. §1983 12(b)(6); ........................ 18

    3.    Claims under Texas Constitution Article I, Sections 13 and 19 12(b)(6); .................. 21

    4.    Claim under the RICO Act 12(b)(6); .......................................................................... 22

C.    Relief ............................................................................................................................... 26

    1.    Requisites for injunctive relief 12(b)(6); .................................................................... 26

V. Conclusion .......................................................................................................................... 26

VI. Prayer for Relief ............................................................................................................... 28

CERTIFICATE OF SERVICE ................................................................................................. 29

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). ....................................8

*Bazile v. Fin. Sys. of Green Bay, Inc.* 983 F.3d 274, 280-81 (7th Cir. 2020) ............................................................7

*Beck v. Texas State Board of Dental Examiners*, 204 F.3d 629, 637 (5th Cir. 2000) .................................14

*Bell Atlantic v. Twombly*, 550 U.S. at 555.............................................................................................................15

*Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir. 1986) ............................................................................14

*Cicalese v. Univ. of Tex. Med Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019) ...............................................8

*Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) ..........................................................................7

*Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994).................................22

*Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020 ..........................................................................................8

*Forman v. Ours*, 804 F. Supp. 864, 867 (E.D. La. 1992) ...............................................................................14

*Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017) ...........................................................14

*Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 279 (5th Cir. 2022) ....................................................................16

*Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008).......................................7

*Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015)..............................................................................8

*Hope v. Pelzer* , 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).............................................16

*Jeryl A. Cummings v. David Eber, City and County of Honolulu*, 134 F.3d 376 (9th Cir. 1998) .................25

*Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) ....................................................................................7

*Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) .............................................................................................9

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) ................8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ............................8

*Malley v. Briggs*, 475 U.S. 335, 1986...............................................................................................................14

*Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988)..........................................................................22, 23

*Mancini v. Lester*, 630 F.2d 990, 992 (3d Cir. 1980)......................................................................................14

*Mancini v. Lester*, 630 F.2d 990, 995 (3d Cir. 1980)......................................................................................19

*Mitchell v. Los Angeles Comm. College Dist*, 861 F.2d 198, 201 (9th Cir. 1989) .......................................10

*N.C. State Bd. of Dental Exam'rs v. F.T.C.* , 574 U.S. 494, 500–01, 504–05, 511–12, 135 S.Ct. 1101, 191 L.Ed.2d 35
  (2015) ............................................................................................................................................................11

*National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) .........................................25

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed.
  2d 298 (1989) (NOPSI) ...............................................................................................................................27

*Pearson v. Callahan*, 555 U.S. 223 ..................................................................................................................15

*Pearson v. Callahan*, 555 U.S. 223, 224 (2009) ............................................................................................15

*Pearson v. Callahan*, 555 U.S. 223, 234 (2009) ............................................................................................15

*Pure, Ltd. v. Shasta Beverages*, Inc., 691 F. Supp. 1274, 1279 (D. Haw. 1988) ...........................................8

*Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 709-10 (9th Cir. 2019)..............................................................11

*Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 712 (9th Cir. 2019).  .................................................................11

*Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 712 n.8 (9th Cir. 2019) ............................................................10

*Salinas v. United States*, 522 U.S. 52, 64 (1997) ...........................................................................................24

*Salinas v. United States*, 522 U.S. 52, 65 (1997) ...........................................................................................24

Siegert v. Gilley, 500 U.S. 226, 230 (1991) ......................................................................................................15

Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013)...............................................................................27

*Stapley v. Pestalozzi*, 733 F.3d 804, 810-11 (9th Cir. 2013) .........................................................................13

*Taylor v. Riojas* , —— U.S. ——, 141 S. Ct. 52, 208 L.Ed.2d 164 (2020) ...................................................16

Thole v. U.S. Bank et al., No. 17-1712 (June 1, 2020) ....................................................................................26

*Twombly*, 550 U.S. at 555 .........................................................................................................................8, 18

*U.S. v. Urban*, 404 F.3d 754, 770-71 (3d Cir. 2005) ................................................................ 12
*U.S. v. Vallone*, No. 04 CR 0372, 4 (N.D. Ill. Feb. 19, 2008) .................................................. 17
*U.S. v. Vallone*, No. 04 CR 0372, 4-5 (N.D. Ill. Feb. 19, 2008) ............................................... 17
*United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir. 1979) ................................................... 12
*United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019) ............................................... 25
*United States v. Godwin,* 765 F.3d 1306, 1324 (11th Cir. 2014) ............................................... 24
*United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014) ............................................ 23
*United States v. Rabinowich*, 238 U.S. 78, 86 (1915) .............................................................. 24
*Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) ........................................................... 7

## Statutes

*15 U.S.C. § 2* ............................................................................................................................ 5
*18 U.S.C. § 1027* ...................................................................................................................... 5
*18 U.S.C. § 1349* ...................................................................................................................... 5
*18 U.S.C. § 1961*(4) ............................................................................................................... 23
*18 U.S.C. § 1961*(5) ............................................................................................................... 23
*18 U.S.C. § 1962(a)* ................................................................................................................. 5
*18 U.S.C. § 1962(d)* ........................................................................................................... 5, 25
18 U.S.C. § 664 ........................................................................................................................ 18
28 U.S.C. § 1331. ...................................................................................................................... 26
29 U.S.C. § 1132(e) ................................................................................................................. 26
29 U.S.C. § 1144(a). ................................................................................................................ 26
29 U.S.C. § 18 .......................................................................................................................... 26
*42 U.S.C. § 1983* ........................................................................................................... 5, 18, 19
Art. I, Section 13 of the Texas Constitution ............................................................................ 21
FRCP Rule 11(b)(1) .................................................................................................................. 21
Rule 12(b)(1)............................................................................................................................... 7
Rule 12(b)(6)............................................................................................................................... 7
section 13 and 19 of Article I of the Texas Constitution ........................................................ 22
section 29 of Article I of the Texas Constitution .................................................................... 22

## Other Authorities

The Federalist No. 78, at 491 (Alexander Hamilton) (Benjamin F. Wright ed., 1961) ............................................. 20

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this Response/Objection to Defendants' First Amended Motion to Dismiss by the State Bar of Texas, Marin, Martinez and Craig. ECF No 83.

## I. Introduction

1.        Four Defendants in this suit, the State Bar of Texas ("State Bar"), Luis Jesus Marin ("Marin"), Daniel Eulalio Martinez ("Martinez"), and Rachel Ann Craig ("Craig") (hereinafter referred to collectively as "Defendants") submitted Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) or, alternatively, 12(b)(6).

2.        In the third amended complaint, ECF No 60, following claims applied to Defendants:
   - *First Claim for Relief, RICO (State Bar, Marin, Martinez and Craig)*
   - *Second Claim for Relief, AntiTrust(State Bar, Marin, Martinez and Craig)*
   - *Sixth Claim for Relief, 42 U.S.C. § 1983(Marin)*
   - *Seventh Claim for Relief 42 U.S.C. § 1983 (Martinez)*
   - *Eighth Claim for Relief 42 U.S.C. § 1983 (Craig)*

3.        Despite having the defects *pointed out* when Plaintiff responded in ECF No. 36, Defendants' counsel, in the "I. INTRODUCTION" section of Motion to Dismiss, Defendants' counsel only referred 2 types of allegations that Plaintiff made, *42 U.S.C. § 1983* and *18 U.S.C. § 1962(d)*. Defendants' counsel never addressed the allegations of *18 U.S.C. § 1962(a), 15 U.S.C. § 2, 18 U.S.C. § 1027* and *18 U.S.C. § 1349* in the Motion to Dismiss before this Court. Defendants' counsel repetitively **never** adversarially addressed any Plaintiff's **allegation in the Second Claim for AntiTrust** before this Court as well. Perhaps the State Bar of Texas is so accustomed to defending against these types of allegations from other usual cases that, if something (antitrust) is not in their pre-formatted scripts, they refuse to reprogram themselves to argue about it. Ironically, Defendants' counsel consistently mischaracterizes each allegation, steering whatever allegation into their familiar territory of the "grievance process," which is never the core issue of this case. Therefore, Defendants' counsel's arguments are insufficient and ineffective.

4.        The core issue arising from this case is a statewide, decade-long violation of *18 U.S.C. § 664* and its conspiracy among members of the State Bar of Texas and associated RICO enterprises,

proved in attached Exhibit 1. The defendants have made zero adversarial argument regarding this issue and antitrust issue.

5.       In C section of "IV. ARGUMENTS AND AUTHORITIES" of Motion to Dismiss, Defendants' counsel argued that Yan does not meet the requisites for injunctive relief by referring following statement:

- *In fact, Yan's only claim of an "injury" in his lawsuit, is for past losses to his retirement account due to the QDRO entered by Judge DeAngelis. [Dkt. 60, ¶¶ 246]. This conclusory claim is insufficient to meet all four necessary elements and Yan's request for an injunction should be denied.*

    However, Plaintiff has made seven different "injury" claims, both tangible and intangible, as outlined in ECF No. 60, paragraphs ¶244-¶250. Even if the Defendants' above arguments are sound, which they are not, there are still six other "injury" claims, both tangible and intangible, that Defendants' counsel never adversarially addressed before this Court. Therefore, Defendants' argument of "*claim is insufficient…request for an injunction should be denied*" is insufficient and ineffective.

6.       Defendants' counsel even went further on PageID 1389, made untruthful statement said, "**In doing so**, Yan **admits** in his pleadings and exhibits that the Tarrant County District Attorney's office refused to **bring charges** against Barrows and Pigg for any of the alleged "crimes" of which he complains in his pleadings." In this case, Defendants' counsel was well unintelligent to quickly conclude that submitting a government office's public record letter in exhibition should be considered as Yan's admitting into Defendants' **conclusory** statement, which is not true. However, when three individual Defendants reviewed the emails between Barrows and Pigg, as well as the contradictory court orders during their grievance investigation, they failed to conclude that Barrows and Pigg admitted to being dishonest. It's challenging for Plaintiff to understand such a vast cognitive disparity between counsels, akin to the difference between chimpanzees and ChatGPT.

7.       In the end, this serves as yet another example of misrepresentation by Defendants' counsel. It's clear that Tarrant County District Attorney's office did not refuse to bring charge (prosecution), they refused to investigate. It is Defendants' counsel themselves who mischaracterized the action of Tarrant County District Attorney's office, yet they turned around and claimed that it was Plaintiff who admitted it.

8.       After all, even if all of Defendants' arguments are sound, they shall not be granted a dismissal of Plaintiff's lawsuit with prejudice as frivolous, as per their request. This is because Defendants' Motion to Dismiss is insufficient and ineffective. Defendants' counsel only partially read Plaintiff's complaint, raised a few selective arguments, and yet demanded the entire suit be dismissed. Defendants have even requested to be awarded their attorneys' fees for the ineffective arguments. Nay, keep praying.

## II. Standard of Review

9.       "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court **first** considers the Rule 12(b)(1) jurisdictional attack **before** addressing any attack on the merits. Ramming, 281 F.3d at 161. This requirement precludes a court without jurisdiction from dismissing a case with prejudice. Id. A motion to dismiss under Rule 12(b)(6) is **"viewed with disfavor and rarely granted."** Priester v. Lowndes County, 354 F.3d 414, 418 (5th Cir. 2004), citing Lowery v. Texas A M University System, 117 F.3d 242, 247 (5th Cir. 1997). **The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true.** Id. **The issue is whether the plaintiff is entitled to offer evidence to support her claim, not whether she will prevail on the claim**. Id. Although detailed factual allegations are not required, the plaintiff must supply the basis for its justification for relief. Ollie v. Plano Independent School Dist., 564 F.Supp.2d 658, 660 (**E.D. Tex. 2008**), citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1969 (2007). Consequently, the court will not dismiss a claim unless the plaintiff will not be entitled to **any relief** under **any facts** or **possible theory** that the plaintiff could prove consistent with the allegations of the complaint. Priester, 354 F.3d at 418." *Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008).

10.      To warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "**beyond doubt** that Plaintiff can prove **no set of** facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). "Thus, the court **should not** dismiss the claim unless Plaintiff would not be entitled to relief **under any set of facts or any possible theory** that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

11.      To survive a Federal Rule 12(b)(6) motion, "See Bell Atlantic v. Twombly , 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (A complaint "does not need detailed factual

allegations" but rather "**enough fact** to raise a reasonable expectation that *discovery* will reveal evidence of [a necessary element].") True, her complaint didn't detail such an injury. But "[c]omplaints need not be elaborate." *Aker* , 854 F.3d at 399–400 (quoting S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc. , 274 F.3d 1168, 1171 (7th Cir. 2001) )." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280-81 (7th Cir. 2020).

12.     "Therefore, the Court's task is to identify the elements of a cause of action and then determine whether Plaintiff pled sufficient factual allegations in support of the asserted elements to state a plausible claim, and thereby, survive a motion to dismiss." *Cicalese v. Univ. of Tex. Med Branch*, 924 F.3d 762, 766–67 (5th Cir. 2019).

13.     It was exactly in Tarrant County, 30 years ago, SCOTUS has ruled a landmarking opinion about what Rule 8(a)(2) stands in a pleading, "Rule 8(a)(2) requires that a complaint include *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Conley v. Gibson*, 355 U.S. 41 (1957), we said in effect that *the Rule meant what it said*:

"[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id*., at 47 (footnote omitted). "

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). *Leatherman v. Tarrant County* was citied 2000 times in various opinions.

14.     "To survive a motion to dismiss, a complaint must allege sufficient facts, *accepted* as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. These standards are the same when a motion to dismiss is based on qualified immunity." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020). The crucial question is "whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under section 1983 and would overcome their qualified immunity defense." *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015).  "See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (**all permissible inferences** must be construed in favor of plaintiff)." *Pure, Ltd. v. Shasta Beverages*, Inc., 691 F. Supp. 1274, 1279 (D. Haw. 1988).

15.     For purposes of deciding a motion to dismiss under Rule 12(b)(6) of the FRCP, the Court *must* assume that the facts alleged in the complaint are **true** and construe them **in the light most**

**favorable to the plaintiff**. *Twombly,* 550 U.S. at 555. For its Rule 12(b)(6) review, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss that are central to the plaintiff's claims and referenced in the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A Rule 12(b)(1) factual attack on the court's subject matter jurisdiction may be based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023). Plaintiff argues that Defendants' counsel executed a factual attack without conducting a **complete** analysis of paragraphs of **all** three elements in the third amended complaint. Defendants' counsel did not even take the time to address each allegation. By leaving many allegations unargued and undefended, can they truly expect this Court to complete the argument on their behalf and establish that all allegations, even if true, are still insufficient?

### III. Summary of Motion to Dismiss

16.      In the Motion to Dismiss, Defendants' counsel seek dismissal under FRCP 12(b)(1) and FRCP 12(b)(6) dismissal for two grounds,

    A.  The Court Lacks Subject Matter Jurisdiction – 12(b)(1)

        1.  11th Amendment immunity bars Yan's claims against Defendants.

        2.  Absolute immunity bars Yan's claims against Marin, Martinez and Craig.

        3.  Qualified immunity bars any individual-capacity claims against Marin, Martinez, and Craig.

        4.  Yan fails to set forth any claim that would make Marin, Martinez and Craig liable in their individual capacities.

    B.  Plaintiff's Failure to State a Plausible Claim – 12(b)(6)

        1.  Yan cannot show he suffered an "injury" and his assertions do not constitute a cognizable equal protection claim under 42. U.S.C. §1983.

        2.  Yan fails to state claims under Texas Constitution Article I, Sections 13 and 19.

        3.  Yan fails to state a claim under the RICO Act.

    C.  Yan does not meet the requisites for injunctive relief.

17.      Plaintiff will rebut Defendants' argument in following order:

    A.   Immunity

        1.  Eleventh Amendment immunity 12(b)(1).

2. Absolute immunity 12(b)(1).

3. Qualified immunity 12(b)(1).

B. Claims

1. Claim liable in individual capacity 12(b)(1).

2. Cognizable equal protection claim under 42. U.S.C. §1983 12(b)(6).

3. Claims under Texas Constitution Article I, Sections 13 and 19 12(b)(6).

4. Claim under the RICO Act 12(b)(6).

C. Relief

1. Requisites for injunctive relief 12(b)(6).

### IV. Argument and Authorities

18.     Before delving into the detailed argument, the Plaintiff emphasizes a factual statement: the Defendants' Motion to Dismiss failed to address the **allegations** in the **Second Claims of Relief** in their entirety. Therefore, the scope of this Response to the Motion to Dismiss will be limited to the scope of the Defendant's Motion to Dismiss. Plaintiff neither seeks adding new allegation in this Response to the Motion to Dismiss nor addresses argument not raised in the Defendant's Motion to Dismiss.

A. Immunity

1. Eleventh Amendment immunity 12(b)(1);

19.     SCOTUS has held "In place of the various factors recognized in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S. Ct. 1171, 59 L.Ed.2d 401 (1979), for determining arm-of-the-state status, we may now substitute a single overriding criterion, vulnerability of the state treasury. **If a State does not fund judgments against an entity, that entity is not within the ambit of the Eleventh Amendment, and suits in federal court may proceed unimpeded**." *Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 712 n.8 (9th Cir. 2019).

20.     "Under the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. Pennhurst State School Hosp. v. Halderman,465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) (eleventh amendment proscribes suit against state agencies "regardless of the nature of the relief sought"); Alabama v. Pugh,438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). To determine whether a governmental agency is an arm of the state, *the following factors must be examined*: **whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power**

to take property in its own name or only the name of the state, and the corporate status of the entity. Jackson v. Hayakawa, 682 F.2d 1344, 1350 (9th Cir. 1982)." *Mitchell v. Los Angeles Comm. College Dist*, 861 F.2d 198, 201 (9th Cir. 1989).

21.   ""The first Mitchell factor—**whether a money judgment ... would be satisfied out of state funds—is the most important**." Sato v. Orange Cty. Dep't of Educ. , 861 F.3d 923, 929 (9th Cir. 2017) ; see also Beentjes v. Placer Cty. Air Pollution Control Dist. , 397 F.3d 775, 785 (9th Cir. 2005) (noting that the **first Mitchell factor** is "**the one given the most weight**"). The County conceded, both below and on appeal, that it **cannot show that a money judgment would be paid directly with State funds**. Thus, this factor weighs **against** Eleventh Amendment immunity." *Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 709-10 (9th Cir. 2019).

22.   A suit against Marin, Martinez, Craig's **official capacity** is a suit against the State Bar of Texas. However, there exists a distinction between the State Bar of Texas, a private company, and a traditional government entity. This is because the State Bar of Texas operates as a "public/private hybrid'." The State Bar of Texas is a financially self-sufficient, generates its own revenues, paid its own debt. "After noting that the bistate entity "was **financially self-sufficient**," generated "**its own revenues**," and paid "**its own debts**," the Court held that "[r]equiring the [bistate entity] to answer in federal court to injured railroad workers who assert a federal statutory right, under the FELA, to recover damages **does not touch the concerns**—the States' solvency and dignity—that underpin the Eleventh Amendment." Id. at 52, 115 S.Ct. 394." *Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 712 (9th Cir. 2019).

23.   *N.C. State Bd. of Dental Exam'rs v. F.T.C.* , 574 U.S. 494, 500–01, 504–05, 511–12, 135 S.Ct. 1101, 191 L.Ed.2d 35 (2015). (explaining state legislation is "an exercise of the State's sovereign power" that is **entitled to** state-action immunity for **antitrust** claims, but holding that North Carolina's State Board of Dental Examiners, who was permitted to "promulgate rules and regulations governing the practice of dentistry within the State," was a "'public/private hybrid'" and **was not entitled to** state-action immunity for its decision that teeth whitening was the practice of dentistry because this was not a **decision supervised by the state**).

24.   Plaintiff argues that the State Bar of Texas' actions, which involve a conspiracy related to the concealment of criminal RICO acts and are aimed at furthering its members' continuity to unlawfully obtain service fees, commercial activities in a free market, should not be considered state actions. While collecting property tax is a state action, collecting attorney's fees is not. Commercial activities are not exercises of the State's sovereign power because they are not decisions supervised by

the State. Plaintiff sued for the unlawful acts related to the State Bar of Texas's private functions, specifically the business income derived from collecting its members' income sourced through RICO acts. Defendants **didn't** argue **Antitrust** claim for its actions.

25.      "The plain text of RICO defines enterprise as, inter alia, a "legal entity [.]" See18 U.S.C. § 1961(4). And **we have frequently found government entities to be "enterprises" for RICO purposes.** See, e.g., Genty v. Resolution Trust Corp.,937 F.2d 899, 906-07 (3d Cir. 1991) (holding that **township** can be an "enterprise" for RICO purposes) (citation omitted); Averbach v. Rival Mfg. Co.,809 F.2d 1016, 1018 (3d Cir. 1987) (noting **that court** can be an "enterprise"); United States v. Bacheler,611 F.2d 443, 450 (3d Cir. 1979) (holding that **Philadelphia Traffic Court** can be an "enterprise"); United States v. Frumento,563 F.2d 1083, 1092 (3d Cir. 1977) (holding that **the Pennsylvania Department of Revenue's Bureau of Cigarette and Beverage Taxes** was an "enterprise")." *U.S. v. Urban*, 404 F.3d 754, 770-71 (3d Cir. 2005).

26.      "Appellants contend that the **Philadelphia Traffic Court is not an "enterprise"** within the meaning of 18 U.S.C.A. § 1961(4) which appellants urge should be confined to businesses and **not extended to state governmental units**. **This contention has already been rejected** in this Circuit. See United States v. Frumento,563 F.2d 1083 (3d Cir. 1977), cert. denied, 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978) (**Pennsylvania Bureau of Cigarette and Beverage Taxes**, a division of the Department of Revenue, **held to be an enterprise**); United States v. Herman,589 F.2d 1191 (3d Cir.), cert. denied 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979) (**applying RICO to Pittsburgh magistrates without discussing the enterprise issue**); United States v. Vignola,464 F. Supp. 1091 (E.D.Pa. 1979), aff'd mem., 605 F.2d 1199 (3d Cir. 1979) (**Philadelphia Traffic Court held to be an enterprise**)." *United States v. Bacheler*, 611 F.2d 443, 450 (3d Cir. 1979). Plaintiff argues that, multiple Federal Courts have held that a government entity is not immune from RICO allegations as a RICO enterprise, and have also held that a government official is not immune from RICO allegations as a RICO person. Defendants' counsel never argued why a corporation should be immune from RICO and antitrust claims. Knowing that such arguments would be frivolous, they portrayed themselves as a government entity and government officials, despite their payroll not being funded by the state. In many third-world countries, security personnel working for nightclubs dress like police officers. There is a similarity here, often encapsulated by the saying "sneaky minds think alike."

27.      Plaintiff **would have included** *Kristin Virginia Brady* and *the District 7 Grievance Committee Summary Disposition Panel* in the suit if this suit were for "the ultimate decision to

dismiss," as it was mischaracterized by Defendants. Plaintiff **did not** seek any relief related to the dismissal decision, **nor did** Plaintiff sue for the acts of "dismissal." However, Plaintiff sued Defendants for the RICO conspiracy acts of making "concealing the criminal acts" statement.

    2.   Absolute immunity 12(b)(1);

28.     "We do not believe that Flood and Fry require absolute immunity in all civil suits. Flood and Fry both involved suits brought against government attorneys who had brought civil tax enforcement proceedings. The scope of immunity for other types of civil suits was not at issue. The broad reading of Fry and Flood for which Defendants advocate would go well beyond what is required under Supreme Court precedent. **The Court has emphasized that qualified immunity is the norm for government officials, and that absolute immunity exists only in "exceptional situations" where it is "essential for the conduct of the public business.**" Butz,438 U.S. at 507, 98 S.Ct. 2894; see also Burns v. Reed,500 U.S. 478, 487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) ("We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant." (internal quotation marks and citation omitted)). **The Court has never stated that government attorneys receive absolute immunity for all litigation-related conduct, even in criminal cases**. Rather, **the Court has repeatedly stated that only certain actions taken by prosecutors receive absolute immunity, and that a functional comparison of the activities performed is critical**. See Imbler,424 U.S. at 430, 96 S.Ct. 984 (finding absolute immunity for "activities ... intimately associated with the judicial phase of the criminal process"); Butz,438 U.S. at 515, 98 S.Ct. 2894 (finding absolute immunity for "functions analogous to those of a prosecutor")." *Stapley v. Pestalozzi*, 733 F.3d 804, 810-11 (9th Cir. 2013). Plaintiff argues that, Defendants' argument of absolute immunity is not sound because Defendants' arguments <u>never evaluated whether the **separated functions** performed</u> by three **different individuals** are analogous to those of a prosecutor or not. Defendants' counsel's failure to complete a functional comparison of three individuals' activities performed, before this Court, is a critical defect.

29.     "The lower federal courts must employ a functional analysis to determine whether Imbler's absolute immunity protects a prosecutor. Many of the reported decisions have held that only a qualified, good faith immunity applies to a prosecutor acting in an investigative or administrative capacity. See, e. g., Jacobson v. Rose, 592 F.2d 515, 524 (9th Cir. 1978), cert. denied, 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298; Briggs v. Goodwin, 569 F.2d 10, 16 (D.C.Cir. 1977) (collecting cases at page 20; qualified, good-faith immunity applies to acts done in administrative or investigative capacity), cert. denied, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133; Pflaumer v. United States Dept.

of Justice, 450 F. Supp. 1125, 1133 (E.D.Pa. 1978) (the gathering of evidence for the purpose of supporting the presentation of an indictment is part of the prosecutor's investigative role and therefore entitled to qualified rather than absolute immunity); D'Iorio v. County of Delaware, 447 F. Supp. 229, 235 (E.D.Pa. 1978) (qualified immunity), vacated on other grounds, 592 F.2d 681 (3d Cir. 1979); Austin v. Manlin, 433 F. Supp. 648 (E.D.Pa. 1977) (qualified immunity applies to prosecutor's investigative role); Tomko v. Lees, 416 F. Supp. 1137 (W.D.Pa. 1976)." *Mancini v. Lester*, 630 F.2d 990, 992 (3d Cir. 1980). Plaintiff argues that, three individuals Defendants are not entitle to absolute immunity, because they are under investigative capacity.

30.      Even in the case *Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir. 1986), which was citied by Defendants, the court **did not hold that state bar employees entitle to absolute immunity**. "In Bishop v. State Bar of Texas, 791 F.2d 435 (5th Cir. 1986), the court **did not reach the issue** of absolute immunity for state bar employees because the defendant bar employees pleaded only that they were entitled to qualified good faith immunity. Bishop, 791 F.2d at 438." *Forman v. Ours*, 804 F. Supp. 864, 867 (E.D. La. 1992).

31.      "In the instant case, Pitcock neither initiated nor pursued prosecution of the complaint against Beck. Thus, Pitcock's investigative activities are not covered under absolute immunity." *Beck v. Texas State Board of Dental Examiners*, 204 F.3d 629, 637 (5th Cir. 2000). In this case, Pitcock oversaw the investigative section of the Board, another Texas public/private hybrid entity. The court concluded that Pitcock performed only an investigative function, when Pitcock did not participate in the Board's adjudication function.

32.      "[b]ut they are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." 514 F.3d at 908 (quoting Miller , 335 F.3d at 896 )." *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017). Plaintiff argues that, three individuals Defendants are not entitle to absolute immunity, because their actions are investigative function.

3.   Qualified immunity 12(b)(1);

33.      Qualified immunity only may be applied when allegation is under individual capacity. There are 3 types of individual capacity for government officials, administrative capacity, investigative capacity, and prosecutorial capacity. Three individual Defendants are under their investigative capacity in this case. However, the Supreme Court of the United States (SCOTUS) has held that "As a matter of public policy, qualified immunity provides ample protection to all **but** the

**plainly incompetent** or those who **knowingly violate the law**." (*Malley v. Briggs*, 475 U.S. 335, 1986). Plaintiff argues that, three individual Defendants' separated acts were alleged for both plainly incompetent and knowing concealed the factual evidence, one of the alleged violation is *18 U.S.C. §§ 1962(d)*. Even though Defendants' counsel did mention that a "a two-step inquiry" is needed. Defendants' counsel failed to argue for these 3 individuals' separated acts: Defendants' counsel failed to apply a separate two-step inquiry on Marin's acts when Marin was presented with Barrows' grievance; Defendants' counsel failed to apply a separate two-step inquiry on Matinez's acts when Matinez was presented with Pigg's grievance; Defendants' counsel failed to apply a separate two-step inquiry on Craig's acts when Craig was presented with both Barrows and Pigg's grievance. It is neither Plaintiff nor Court's responsibility to finish the separate two-step inquiry analysis for Defendants. When Defendants' arguments failed to refer any fact related to grievance investigation to rebut Plaintiff's allegation, "the Court *must* assume that the facts alleged in the complaint are true and construe them in the light most favorable to the plaintiff." *Bell Atlantic v. Twombly*, 550 U.S. at 555. Therefore, Plaintiff argues that, three individuals Defendants are not entitle to qualified immunity, because 3 individuals' separated acts are **plainly incompetent** and **knowingly violate the law**. Defendants' counsel never addressed the allegations of <u>3 individuals' separated acts</u> before this Court, therefore, Defendants' argument is insufficient and ineffective.

34.     Defendants' arguments also citied **a superseded two-step inquiry** to analyze the qualified immunity doctrine. Defendants' counsel argued "In determining whether the plaintiff has successfully overcome qualified immunity, the court engages in a two-step inquiry. **First,** the court **must** consider "whether the plaintiff asserted a violation of a constitutional right at all – prior to addressing the potentially unnecessary question of whether plaintiff asserted a violation of a clearly established right." Siegert v. Gilley, 500 U.S. 226, 230 (1991) (internal quotation marks omitted). **Next**, the court **must** consider whether the defendant's conduct was nonetheless objectively reasonable in light of clearly established law. Anderson v. Creighton, 483 U.S. 635, 639 (1987)." However, in *Pearson v. Callahan*, 555 U.S. 223, the Supreme Court of the United Stated has held that the two-step procedure for analyzing a claim of qualified immunity, requiring an initial determination of whether there is a constitutional violation, is **no longer mandatory**. "(c) Reconsideration of the Saucier procedure demonstrates that, while the sequence set forth therein is often appropriate, it should no longer be regarded as mandatory in all cases. Pp. 818 – 822. " *Pearson v. Callahan*, 555 U.S. 223, 224 (2009) "Because of the basis and the nature of the Saucier two-step protocol, it is sufficient that we now have a considerable body of new experience to consider regarding the consequences of requiring

adherence to this inflexible procedure. This experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Pearson v. Callahan*, 555 U.S. 223, 234 (2009). Therefore, Defendants' argument of "two-step inquiry" itself is ineffective.

35.      Recently, the "clearly established law" doctrine **is being replaced** by **obviousness** doctrine after recent rulings in SCOTUS and Fifth Circuit adopted the new standard. "The final question is whether this constitutional violation was clearly established. The district court answered "yes," concluding that the sheriffs' actions were an **"obvious" constitutional violation**. See *Hope v. Pelzer* , 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ; see also *Taylor v. Riojas* , ——— U.S. ———, 141 S. Ct. 52, 208 L.Ed.2d 164 (2020) (**reversing grant of qualified immunity because the violation was obvious**). We agree." *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 279 (5th Cir. 2022).

36.      It is **obvious** and **clear** that an attorney (official of the court) does not have the judicial discretion to materially alter the context during the **reduction to writing** of a **rendering process** when drafting a QDRO in a manner that **contradicts** both the associated judge's report and the terms to which both parties consented in open court. This is especially true when she further solicits, via an email, stating, "in order for us to obtain our... fees," "must say fees are for spousal support," and "no other way around it." It is evident that Leslie Barrows engaged in a conspiratorial act of criminal solicitation. The act is **obviously** criminal and undermines the **foundation of legal integrity**. If the State Bar's CDC counsel has consistently upheld that altering the context of court orders does not violate the law—either through the disciplinary process or in arguments before this Court—then the people of Texas should be informed: *At what point* would such acts of altering court orders be considered by CDC counsel to have violated the law? Is changing from "$25,000" to "$2,000,000" considered no "just cause"? Is altering from "5 years in jail" to "Death penalty" considered no "just cause"? Do CDC counsel truly believe they have the authority to determine how the constitutional rights of Texas people can be deprived of, all while operating under the immunity granted by the TRDP?

37.      Under the color of law, Marin, Martinez, and Craig had made conspiracy statement to furtherance the open-end continuity elements of RICO acts. Every Texas lawyer is free to commit such a RICO act due to their statement.

B. Claims

   1. Claim liable in individual capacity 12(b)(1);

38.      Defendants argued that "he failed to identify even one act they took outside the general scope of their employment… As a result, Marin, Martinez, and Craig are entitled to qualified immunity." Plaintiff has alleged the First Claim, Second Claim, Sixth Claim, Seventh Claim and Eighth Claim separately against Marin, Martinez, and Craig in their individual capacity. Plaintiff alleged and identified that Marin, Martinez, and Craig <u>committed crimes</u>. It is obvious that <u>committing crime</u> is outside the general scope of their employment. Defendants' arguments "failed to identify even one act" are lumped together, viewed as a generic decline without any analysis.

39.      "Under the reasonable basis standard, a statement may be susceptible to alternative interpretations and **still be** "in furtherance of the conspiracy." Shoffner, 826 F.2d at 628. Yet, the statement **need not** have been made **exclusively**, or even **primarily**, to further the conspiracy in order to be admissible under the coconspirator exception. United States v. Johnson, 200 F.3d 529, 533 (7th Cir. 2000); United States v. Powers, 75 F.3d 335, 340 (7th Cir. 1996). Rather, the record need only contain some reasonable basis for concluding that the statement in question furthered the conspiracy in some respect. Stephenson, 53 F.3d at 845. "*U.S. v. Vallone*, No. 04 CR 0372, 4 (N.D. Ill. Feb. 19, 2008).

40.      "The Government has a **relatively low burden** of proof on the issue of whether a statement is made "in furtherance" of a conspiracy. Shoffner, 826 F.2d at 628. Such statements can take on a variety of forms, and the Seventh Circuit has upheld the admission of a wide assortment of coconspirators statements. For instance, statements used to recruit potential coconspirators, id., **update others on a conspiracy's progress**, United States v. Potts, 840 F.2d 368, 371 (7th Cir. 1987), **control damage to an ongoing conspiracy**, United States v. Van Daal Wyk, 840 F.2d 494, 499 (7th Cir. 1988), **plan** or **review** co-conspirators' exploits, United States v. Molt, 772 F.2d 366, 369 (7th Cir. 1985), and **attempt to conceal the conspiracy**, United States v. Kaden, 819 F.2d 813, 820 (7th Cir. 1987), have been **approved** as statements made "in furtherance of" conspiracies. In turn, the court recognizes that "conspiracy is serious business, and **talk about** it **among** or **by** the conspirators **should not be presumed to be unrelated** to the accomplishment of the conspiracy's goals." United States v. Pallais, 921 F.2d 684, 688 (7th Cir. 1990)." *U.S. v. Vallone*, No. 04 CR 0372, 4-5 (N.D. Ill. Feb. 19, 2008).

41.      "Statements that are "part of the information **flow between** conspirators intended to help each perform his role" are statements "in furtherance." United States v. Gajo, 290 F.3d 922, 929 (7th Cir. 2002); United States v. Hunt, 272 F.3d 488, 495 (7th Cir. 2001). **Assurances** that a **coconspirator can be trusted or relied upon to perform his role** are considered to further the conspiracy. United

States v. Buishas, 791 F.2d 1310, 1315 (7th Cir. 1986). Statements designed to **conceal a conspiracy** also are deemed to be "in furtherance" where ongoing concealment is a purpose of the conspiracy. Gajo, 290 F.3d at 928-29. Therefore, "statements made to keep coconspirators **informed about the progress** of the conspiracy, to recruit others or to **control damage to the conspiracy** are in furtherance of the conspiracy. Stephenson, 53 F.3d at 845." *U.S. v. Vallone*, No. 04 CR 0372, 5 (N.D. Ill. Feb. 19, 2008).

42.     Marin, Martinez, and Craig's decisions were acts of "**control damage to the conspiracy**" and "**attempt to conceal the conspiracy.**" and "**control damage to an ongoing conspiracy**," it is also **"Assurances** that Barrows and Pigg **can be trusted or relied upon to perform their roles**".

43.     Until now, continuously failed to take any immediate action to stop these ongoing 18 U.S.C. § 664 RICO acts, the executive board members of a RICO enterprise, the State Bar of Texas, had multiple meeting with "statements made to keep coconspirators **informed about the progress** of the conspiracy, to recruit others or to **control damage to the conspiracy** are in furtherance of the conspiracy."

44.     At last, defendants' arguments are insufficient and ineffective because they failed to perform an analysis of their separated acts, therefore "the Court *must* assume that the facts alleged in the complaint are **true** and construe them in the light most favorable to the plaintiff." *Twombly,* 550 U.S. at 555.

2.   Cognizable equal protection claim under 42. U.S.C. §1983 12(b)(6);

45.     In the beginning of Defendants' arguments, Defendants argued by saying Plaintiff "Yan alleges Defendants…cause him to suffer **a** "direct injury"…actions..deprived..."Equal Protection" and "Due Process" rights, in violation of 42 U.S.C. §1983.";

46.     First of all, in fact, Plaintiff claimed more than **one** injury in the third amended complaint. Therefore, Defendants' argument was insufficient when Plaintiff claimed multiple injuries, but Defendants argued the claim of "a" direct injury without specifying which direct injury they referred to.

47.     Defendants' counsel made a conclusory statement saying, "he is not entitled to any relief for filing a grievance against a licensed Texas attorney pursuant to the TRDP." Then Defendants' counsel kept on arguing that how Plaintiff was not entitled to sue Defendants referred to multiple rules in the TRDP.

48.     *42 U.S.C. § 1983* is very clear, "**Every person** who, **under color of any statute**, **ordinance**, **regulation**, **custom**, or **usage**, of any State …subjects, or causes to be subjected, **any citizen** of the United States or **other person** within the jurisdiction thereof to the deprivation of **any rights**…secured by the Constitution and laws, **shall** be liable to the party injured in an **action**.."

49.     No state act can bar claims against Federal rights violation. "The act is not a bar to this suit. This cause involves federal rights. **These rights cannot be denied by the passage of state legislation**. If the contrary were true, every state could deprive its citizens of the very rights which enactments of the Federal Congress are designed to protect. As then Judge Stevens points out in Hampton v. Chicago, 484 F.2d 602 (7th Cir. 1973), cert. den., 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974): The district court erroneously relied on the Illinois Tort Immunity Act. Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) **cannot be** immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would **transmute a basic guarantee into an illusory promise**; and **the supremacy clause of the Constitution insures that the proper construction may be enforced**. (citation omitted)" *Mancini v. Lester*, 630 F.2d 990, 995 (3d Cir. 1980).

50.     Plaintiff sued Defendant for their actions violated constitutional right. The State Bar of Texas cannot refer to any rule in TRDP to bar Plaintiff seeking a relief involves federal right. The State Bar of Texas did exactly what Congress tried to protect. Utilizing their state-actor identity, the State Bar of Texas has used TRDP as a weapon to shield their own members' criminal activities from *42 U.S.C. § 1983*, to "**transmute a basic guarantee into an illusory promise**." <u>Defendants (any person), under the color of law (TRDP), subjected Plaintiff (any citizen) to the deprivation of Fourteenth Amendment, shall be liable to Plaintiff (the party) injured in their actions (an action).</u>

51.     The argument of "Yan **was not a "party"** to the disciplinary proceedings initiated by his alleged grievances/Complaints against Barrows and Pigg and **was thus** not entitled to any relief…As such, Yan **could not have suffered an "injury"** based on the dismissal of his alleged Complaints." is a conclusory statement which contradict to the definition of *42 U.S.C. § 1983. 42 U.S.C. § 1983* clearly stated that any person shall be liable to the party injured in an action.  No state law (TDRP) can narrow the scope of the definition of "the party" from "injured in an action" to "the party" as only "defined in TDRP". Again, allowing TDRP to narrow the scope of the definition of "the party" would "transmute a basic guarantee into an illusory promise."

52.     The Defendants essentially misrepresented the arguments by saying that themselves (State Bar of Texas) wrote rules in the TDRP stating that legal service consumers, the victims, are not

the 'party' in a grievance process, **thus** those legal service consumers, the victims, could not have suffered injuries based on their concealment of the crime. This was the exact reason why the alleged RICO racketeering activities could last for a decade and span statewide. The State Bar of Texas indeed functions as a RICO enterprise and has influenced the state's legislative process.

53.     The argument of "*Yan is also "unable to show that the consideration of his alleged bar grievance 'produce[d] erroneous or unreliable results [that] imperil[ed] a protected liberty or property interest.'"...Thus, Yan's allegations do not establish "that he had a cognizable interest in the procedures used to consider his bar grievance or in the ultimate outcome of the proceeding.""* is also a conclusory statement without reference to any actual allegation. Plaintiff never alleged the bar grievance produced any result caused the damage. Plaintiff alleged that Defendants' RICO acts caused damage. Defendants drew the conclusion but failed to analyze "the complaint, documents attached to the complaint, and documents attached to the motion".

54.     Our founding fathers believed that human beings with authorities cannot be trusted for self-regulation, that is why they formed the greatest principle of our constitutions, the "Separation of Power". That is the fundamental difference between dictatorship around the USA and USA. Members of the State Bar of Texas are human beings, they are no better than our founding fathers. "[T]here is **no** liberty, if the power of judging be **not** separated from the legislative and executive powers … [L]iberty can have **nothing to fear** from the judiciary alone, but would have **every thing to fear** from its union with either of the other departments …" The Federalist No. 78, at 491 (Alexander Hamilton) (Benjamin F. Wright ed., 1961) (internal quotation marks omitted). Currently, members of State Bar Texas were granted broad civil and criminal immunity by their comrades in the Texas Supreme Court. Member of the State Bar of Texas owns the state legislative power of establishing and operating TRDP. Members of the State Bar of Texas execute TRDP as well. Members of the State Bar of Texas own exclusive jurisdictional, legislative, and executive powers to determine the legal service commercial activities involved with Texas attorneys. If our founding fathers believed nobody can be trusted with all the powers in a single branch, what makes the State Bar of Texas an exception? NOTHING!

55.     The result of the State Bar of Texas's authoritarian control and monopolization is apparent: it had given rise to a RICO enterprise, as alleged by the Plaintiff, specializing in forming a pattern of RICO racketeering activities. These activities include unlawfully abstracting money from Texas consumers' retirement plans for personal use, spanning a decade and occurring statewide. Additionally, we saw the family lawyer industry becoming the only service provider industry that

openly mock its victimized consumers as "**whiney ass clients**." We, the Texas legal service consumers, have everything to fear!

56.     According to the State Bar of Texas's arguments, further proved the RICO enterprise and Monopolization is established to against Texas legal service consumers. Plaintiff must be allowed to proceed with RICO Claim and AntiTrust Claim to address this issue.

   3.   Claims under Texas Constitution Article I, Sections 13 and 19 12(b)(6);

57.     The In the beginning of Defendants' arguments, Defendants argued by saying Plaintiff "claims…violation under the Texas Constitution Article I, Sections 13 and 19, and…"

58.     Art. I, Section 13 of the Texas Constitution provides that: "all courts shall be open, and every person **for an injury done to him**… shall have **remedy** by due course of law.".

59.     Despite having the defects pointed out when the Plaintiff responded in ECF No. 36, PageID 495, where Plaintiff responded that Plaintiff never alleged that his **open courts** provision was violated. Defendants' counsel argued on wrong subjects based on her own interpretation. In fact, Plaintiff alleged that he should have remedy when he was injured per Art. I, Section 13 of the Texas Constitution. Defendants counsel failed to argue about the "**remedy**" clause of Art. I, Section 13 of the Texas Constitution. However, when Defendants' counsel submitted their first amended motion to dismiss, they repetitively argued open court provision, but repetitively failed to argue about the "**remedy**" clause of Art. I, Section 13 of the Texas Constitution. Defendants' counsel kept on barking at the wrong tree, without paying attention on Plaintiff's prior response, fully demonstrated their incompetent. These repetitive false arguments constitute violation of FRCP Rule 11(b)(1), "harass, cause unnecessary delay, or needlessly increase the cost of litigation". Therefore, Defendants' argument is insufficient and ineffective.

60.     Defendants' counsel argued that "Yan makes the conclusory claim "that Defendants violated section 19 of Article I of the Texas Constitution", but provides no supporting facts that would indicate how Defendants violated his due process rights under the Texas Constitution.". However, Plaintiff cleared referred to Attorney General Ken Paxton's grievance case in allegations against 3 individuals. In the claims, Plaintiff clearly alleged multiple injuries, tangible and intangible. Despite the fact that, a private corporation, the State Bar of Texas, is neither a party to the election fraud claim between Texas and the United States nor an eligible entity with election rights, the office of the Chief Disciplinary Counsel appears to prefer playing a political role as an extended arm of a political party under the color of State law. It's proactively interfering in an election fraud suit where it has no

standing but chose filing a disciplinary suit against Paxton and Powell under abused state-actor capacity, rather than upholding the law for legal service consumers during its grievance proceeding process to protect the Texas public consumers' interest from becoming victimized by unlawful RICO racketeering acts performed by its own members. The evidence shown in the third amended complaint's exhibits clearly demonstrated that Barrows and Pigg had multiple written emails and signed court orders/affidavits, admitting to this dishonest misrepresentation. Pigg even said in one email that Barrows lied. Barrows admitted in another email that she lied to obtain fees. The State Bar of Texas used third-party conclusions as its ground to prosecute Paxton and Powell. But when the parties involved in Plaintiff's case, Barrows and Pigg, admitted to lying, the State Bar of Texas's conclusions were "No Just Cause," based on the acts involving "obtaining fees". These lying through teeth acts failed to meet Impartial Tribunal element of Due Process, under Texas and Federal constitutions.

61.      When Defendants were alleged of violation of section 13 and 19 of Article I of the Texas Constitution, among other constitutional right, and Defendants' arguments referred in-house made TRDP as their defense, Plaintiff rebuts Defendants' arguments by referring TRDP violated section 29 of Article I of the Texas Constitution. "BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE.  To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is **excepted out of the general powers of government**, and shall forever remain inviolate, and **all laws** contrary thereto, or to the following provisions, **shall be void**." Any part of the in-house made TRDP that is contrary to Article I of the Texas Constitution is void.

4.   Claim under the RICO Act 12(b)(6);

62.      In the beginning of Defendants' arguments, Defendants argued by saying Plaintiff "asserts… participants in a conspiracy"; "claims…violation under the Texas Constitution Article I, Sections 13 and 19, and… ("RICO")."

63.      SCOTUS has held that "see National Organization for Women, Inc. v. Scheidler, ___ U.S. ___, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (stating that Civil RICO **should be construed broadly to effectuate Congress' purpose**)," *Confederation Life Ins. Co. v. Goodman*, 842 F. Supp. 836, 837 n.1 (E.D. Pa. 1994).  Plaintiff argues that, Civil RICO should be construed broadly to effectuate Congress' purpose.

64.        Defendants argued that Plaintiff failed "to establish an ongoing association-in-fact enterprise and prove the commission of predicate crimes." Plaintiff argues that, Defendants arguments are not sound. "An enterprise under RICO can include the usual legal entities such as partnerships and **corporations**, but it also can include "any union or group of individuals associated in fact although not a legal entity. . . ." *18 U.S.C. § 1961*(4) (emphasis added)." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988).  *18 U.S.C. § 1961*(4) clearly defined that  "enterprise" includes any individual, partnership, **corporation**, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. Plaintiff argues that, Defendant, the State Bar of Texas is, in fact, **a private corporation**.

65.        In *Manax v. McNamara* case, Manax sued McNamara, an attorney and the mayor of Waco, Texas; two other Waco attorneys associated with McNamara; Cox Enterprises, the publisher of newspapers in Austin and Waco; Cechoslovak Publishing, the publisher of The West News, a newspaper in West, Texas; Sue Pescaia, the owner of The West News; and Denise Gamino, a reporter for Cox. Plaintiff argues that, in the case that Defendants' counsel referred, Manax failed to associate <u>attorney, mayor, publisher and reporter</u> into an **association-in-fact enterprise**. Meanwhile, in Plaintiff's case, Marin, Martinez and Craig are indeed the **members of the State Bar of Texas**, a RICO enterprise. Marin, Martinez, and Craig receive payments from the State Bar of Texas, and the State Bar of Texas receives payments from other members' income, part of which is obtained from their racketeering activities. All the defendants in this RICO claim had money transactions associated with either RICO persons or the RICO enterprises.

66.        Defendants argued that, Plaintiff "also would have to show that Defendants engaged in two or more of the predicate crimes as enumerated in the statute. Boyle v. United States, 556 U.S. 938 (2009)." However, SCOTUS has held that Plaintiff "does not need to prove that each defendant personally committed two predicate acts to prove a RICO conspiracy. See Salinas v. United States, 522 U.S. 52, 63, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("There is no requirement of some overt act or specific act in the [RICO conspiracy] statute....")." *United States v. Kamahele*, 748 F.3d 984, 1006 (10th Cir. 2014).

67.        Plaintiff argues that, Plaintiff has alleged a pattern of racketeering activity performed by other defendants, proved the commission of predicate crimes in the third amended complaint. *18 U.S.C. § 1961*(5) provides that a "pattern of racketeering activity" requires at least <u>two acts of racketeering activity in a RICO suit</u>. It does not require <u>each individual defendant</u> to commit two

predicate acts of racketeering activity. The requirement for at least two predicate acts can be met by a total count, not by a separate personal count for each person under RICO claim.

68.     Plaintiff argues that, human activity normally carries multiple agendas. Plaintiff alleges that Marin, Martinez, and Craig are "RICO conspirators" because their statements concealed the crime and its evidence. Everything that Marin, Martinez, and Craig have done is in the investigation stage. "Inquiry" and "No Just Cause" determinations concealed RICO crime in Plaintiff's case. Any prior concealment statement of RICO crime supported the ongoing perpetration of the RICO crime.

69.     Defendants argued that "Yan has not pled, and is unable to show, any association exists between" twice in the last paragraph of RICO argument. However, SCOTUS has held that ""[I]n proving the existence of a single RICO conspiracy, the government **does not** need to prove that each conspirator agreed with every other conspirator, knew of his fellow conspirators, was aware of all of the details of the conspiracy, or contemplated participating in the same related crime." United States v. Castro,89 F.3d 1443, 1451 (11th Cir.1996). A mere "[a]greement to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity brings a defendant within the conspiracy **regardless of** the **unrelatedness** of the acts of other members of the conspiracy." Gonzalez,921 F.2d at 1540." *United States v. Godwin,* 765 F.3d 1306, 1324 (11th Cir. 2014).

70.     "A conspirator must intend to **further** an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so **in any number of ways short of agreeing** to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished **whether or not** the substantive crime ensues, **for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself**. See Callanan v. United States, 364 U.S. 587, 594 (1961)." *Salinas v. United States*, 522 U.S. 52, 65 (1997). Plaintiff argues that, Defendants play critical roles under the color of law, using self-regulated grievance system as a platform to further ongoing its state-wide, decades-long substantive RICO acts, including but not limited to 18 U.S.C. § 664.

71.     "If conspirators have a plan which calls for some conspirators to perpetrate the crime and *others to provide support, the supporters are as guilty as the perpetrators*. As Justice Holmes observed: "[P]lainly a person may conspire for the commission of a crime by a third person." United States v. Holte, 236 U.S. 140, 144 (1915). A person, moreover, may **be liable for conspiracy even though** he *was incapable* **of committing the** *substantive offense*." *United States v. Rabinowich*, 238

U.S. 78, 86 (1915)." *Salinas v. United States*, 522 U.S. 52, 64 (1997). Plaintiff argues that, Marin, Martinez, and Craig are the supporters as guilty as the perpetrators.

72.      "In that regard, we **emphasize** that, because drug trafficking is an "unlawful activity" with respect to money laundering and **RICO offenses** (*see* 18 U.S.C. § 1956(c)(7) ), a lawyer providing advice to an unlawful drug trafficking entity such as the Nicka Organization places himself at great personal risk. **Any lawyer** providing advice concerning ongoing unlawful activity is circumscribed in the legal advice that can permissibly be provided, lest he become a participant in the unlawful activity. That is, a lawyer representing or advising such an entity can **readily turn himself into a coconspirator — or aider and abettor — in the form of a consigliere or fixer**." *United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019). Plaintiff argues that, Marin, Martinez, and Craig are held liable as conspirators when they crossed the line and became part of the criminal organization itself, as a consigliere or fixer.

73.      *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000). also cited *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385 (6th Cir. 1989), which says, "See Vemco, 23 F.3d at 131 (distinguishing Newmyer v. Philatelic Leasing, Ltd. , 888 F.2d 385 (6th Cir.1989) ). In Newmyer, the Sixth Circuit reversed dismissal of plaintiffs' § 1962(a) claim where "Newmyer plaintiffs could have been injured by the investment itself if the investment plan into which they put their money (i.e., the enterprise) was itself funded with monies from **prior racketeering** against **prior victims**" concluding that "an injury resulting from the investment of racketeering proceeds itself was possible." Id. (emphasis added)." *W. Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp. (In re Nat'l Prescription Opiate Litig.)*, 452 F. Supp. 3d 745, 773 n.33 (N.D. Ohio 2020). Members of the State Bar of Texas have collected income through racketeering, unlawfully extracting funds from consumers' 401(k) accounts for decades. These funds have been used, either directly or indirectly, to operate and maintain the State Bar of Texas and to manage its Office of Chief Disciplinary Counsel. The purpose of this management is to create concealment and damage control statements as part of a RICO conspiracy. The TRDP is itself a carefully drafted document that serves a conspiracy function of damage control and concealment.

74.      "See Malley v. Briggs, 475 U.S. 335 (1986) (finding that officer acted as a complaining witness because he instigated the prosecution by conducting the investigation and by filing the initial complaint)." *Jeryl A. Cummings v. David Eber, City and County of Honolulu*, 134 F.3d 376 (9th Cir. 1998). Plaintiff argues that, during their investigation, Marin, Martinez, and Craig acted as complaining witnesses. Their determination statements were factually false and served in supportive

roles to further the continues element of the ongoing RICO crime, violated *18 U.S.C. § 1962*(d) as Plaintiff alleged in the third amended complaint.

C. Relief

1. Requisites for injunctive relief 12(b)(6);

75.    Plaintiff argues that, Defendants' counsel made an ineffective argument. Plaintiff argued that, whether Plaintiff is entitled to any injunctive relief shall be decided by a jury at trial.

76.    Plaintiff argues that, Defendants' counsel argued **only one** relief in an attempt to dismiss **all** claims of injuries. Therefore, Defendants' argument is insufficient.

77.    "We have held that, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for, on a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted)." *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994). Plaintiff argues that, the factual allegations of injuries presented by Plaintiff in the pleading are enough, given Defendants' insufficient and ineffective arguments.

## V. Conclusion

78.    Federal courts have clearly ruled that "court", "judge", and other government entities can qualify as an "enterprise"  and "person" under RICO charges. Therefore, the Defendants' argument that the Plaintiff lacks jurisdiction due to various immunities is not sound.

79.    Defendants continually refer to the TRDP as their guiding document to exempt themselves from being held accountable for RICO acts committed by a private corporation and individuals who work for a self-regulated grievance system. If their argument is sound, then an Uber driver could refer to his contract with the Uber corporation when caught delivering drugs using his vehicle, arguing that the contract exempts him from criminal liability. Similarly, a tenant could refer to her contract with Airbnb when caught running a brothel in the property, arguing that the lease exempts her from criminal liability. The TRDP serves as a guideline for how to conduct the disciplinary process; it does not provide a framework for running a RICO enterprise that unlawfully extracts money from the pension funds of the people of Texas.

80.    Defendant, the State Bar of Texas, argued that Plaintiff is not a party pursuant to TRDP, and therefore, Plaintiff does not have standing to be entitled any relief, in the grievance process, etc. These arguments were very misleading. **In none of the injunctive reliefs that Plaintiff claimed did**

**Plaintiff ever request any relief from the grievance process' outcome, nor did Plaintiff seek any injunctive relief to interfere with the grievance proceedings**. Plaintiff seeks injunctive reliefs, including, but not limited to "enjoining the State Bar of Texas to obtain income from all defendant persons" and "enjoining the State Bar of Texas to have additional financial transaction with all defendant persons" etc. All the injunctive reliefs that Plaintiff sought were from the **private functions of the State Bar of Texas**. Defendants argued about grievance related reliefs that Plaintiff did not seek. Plaintiff is a victim, also a consumer, that is the ground which entitled Plaintiff with relief. Plaintiff does not need anyone's consent or permission to seek relief when his civil right is violated.

81.      This Court "shall have **original** jurisdiction of all civil actions **arising** under the Constitution, laws, or treaties of the United States" under 28 U.S.C. § 1331.

82.      This Court has **exclusive** jurisdiction of civil actions under 29 U.S.C. § 1132(e) because the essential substantive violation of Federal law arises under ERISA Act, 29 U.S.C. § 18, and ERISA statute also supersedes any and all state laws insofar as they "relate to" any employee benefit plan under 29 U.S.C. § 1144(a).

83.      In *Thole v. U.S. Bank et al.*, No. 17-1712 (June 1, 2020), the U.S. Supreme Court affirmed controlling preconditions to any ERISA lawsuit in federal court: (1) a concrete injury ($25000), (2) caused by the defendant (RICO), that is (3) redressable by the requested judicial relief (civil remedies).

84.      The Supreme Court held that "In the **main**, federal courts are **obliged** to decide cases within the scope of federal jurisdiction…. New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (NOPSI) ("[T]here is no doctrine that . . . pendency of state judicial proceedings excludes the federal courts.")." *Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013).* This Court is obliged to decide case originally arising under the exclusive ERISA statue, RICO, Antitrust and Fourteen Amendment.

85.      Plaintiff argues any Texas State law granted immunity cannot shield the Defendants from being sued in this suit involving decade long, statewide RICO scheme, which targeting hundred thousand victims' ERISA plans.

86.      Defendants made an incomplete partial argument from many aspects, missed reliefs, missed claims, and missed U.S.C. code citations. Plaintiff argues that Defendants' Motion to Dismiss is insufficient and ineffective.

87.     Defendants never argued **Second Claim** in their "Lacks Subject Matter Jurisdiction" and "Failure to State a Plausible Claim" arguments. Plaintiff believes that the **Second Claim** was not effectively argued, and the rest arguments are not sound. Plaintiff expects a Reply from Defendants limited to the scope of Plaintiff's Response herein, but the Court should not allow any new argument arises from the Defendants' reply.

88.     Defendants are unlikely to prevail in this suit. Whether attorneys **obtaining legal fees** using **interlocutory orders** from Texas people's 401K for decades is unlawful is a key question to be determined in this Federal case. Once this Court rules on this question of law, the outcome of the suit will become apparent. After all, the State Bar of Texas carries economic responsibility to its members, while it also bears social responsibility to the people of Texas. Plaintiff suggests that Defendants' counsel behave professionally during the proceeding to preserve Defendants' intangible assets, such as brand recognition and reputation, if there would be any remain.

89.     Every wrongfully obtained fees needs to be refunded to consumers, Plaintiff is at a position to collect first cent.

## VI. Prayer for Relief

90.     Based on the above, Plaintiff respectfully requests for the following relief:

91.     Plaintiff prays that the defendants' Motion to Dismiss be denied as moot.

Respectfully submitted,

_____/s/ Conghua Yan_____
Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] /[arnold200@gmail.com]

## CERTIFICATE OF SERVICE

On (October 17th, 2023) I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).


/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]
