## FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendants. | ) |
|  —————————————————————— | ) |

## JUDICIAL NOTICE OF ADJUDICATIVE FACTS

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

This matter is before the Court on Pro Se Plaintiff's judicial notice of adjudicative facts, pursuant to Federal Rule of Evidence 201(b). Hereby, Plaintiff presents to this Court with following adjudicative facts:

## I. INTRODUCTION AND ADJUDICATIVE FACTS

1. On July 7th, 2007, Supreme Court of Missouri, disbarred Norvel E. Brown for conviction of 1 one felony count of wire fraud in violation of *18 U.S.C. § 1343* and 2 and one felony count of theft from an Employee Benefit Plan in violation of *18 U.S.C. § 664*. (Supreme Court No. SC8862 In re: Norvel E. Brown, Jr., MBE No. 26503), attached herein as EXHIBIT 1.

2. On July 24th, 1980, Texas Court of Appeals - 4th District, disbarred Patrick L. Searcy, for one violation of *18 U.S.C. § 1014*, making a materially false statement in a loan application, involving **moral turpitude**, *Searcy v. State Bar of Texas* 604 S.W.2d 256 (Tex. Civ. App. 1980), attached herein as EXHIBIT 2.

3. On December 19th, 1996, Attorney General of Texas issued Letter Opinion No. 96-140, says,

> "It is well established that "[g]enerally, a crime involving **dishonesty or false statement** is considered to be one involving **moral turpitude**." United States v. Gloria, 494 F.2d 477 (5th Cir. 1974), cert. denied, 95 S.Ct 306 (1974)."

"In Robertson v. State, the court held that the offense of **lying to a police officer**, as proscribed by section 37.08, Penal Code, was a **crime of moral turpitude**."

attached herein as EXHIBIT 3.

4. **October 27ᵗʰ, 2021, August 15ᵗʰ, 2023**, Lori L. DeAngelis used her official campaign social media account, a public forum, to solicitate business for Leslie Starr Barrows, attached herein as EXHIBIT 4. Knowing herself was under a Federal suit, Lori L. DeAngelis purged whole social media account and it records, violated **Texas Government Code, Chapter 552,** the public information act.

## II. LEGAL STANDARD AND AUTHORITIES

5. Rule 201. Judicial Notice of Adjudicative Facts

**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
   **(1)** is generally known within the trial court's territorial jurisdiction; or
   **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
**(c) Taking Notice.** The court:
   **(1)** may take judicial notice on its own; or
   **(2) must take judicial notice if a party requests it** and the court is supplied with the necessary information.
**(d) Timing.** The court may take judicial notice **at any stage of the proceeding**.
**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.
**(f) Instructing the Jury.** In a civil case, the court must instruct the jury to accept the noticed fact as conclusive. In a criminal case, the court must instruct the jury that it may or may not accept the noticed fact as conclusive.

## III. Brief in Support

6. The court filings and Tarrant County's criminal complaint investigation report clearly showed Barrows, Ybarra and Pigg lied on the court documents, manufactured the court orders without an actual hearing, lied to police officer, committed multiple acts of **moral turpitude**. All these evidences were submitted to Chief Discipline Counsel, State Bar of Texas and Tarrant County DA office, but they chose to conceal and damage control to protect Tarrant County Divorce Corp.

7.  Tucker Carlson once said, "Millions of Americans sincerely love Donald Trump. They love him in spite of everything they've heard. They love him often in spite of himself. They love Donald Trump because no one else will love them. The country they build, the country their ancestors fought for over hundreds of years has left them to die in their unfashionable little towns. *Mocked and despised by the sneering half wits with finance(**law**) degrees*, *but no actual skills, who seem to run everything all of a sudden*. Whatever Donald Trump's fault, he is better than the rest of the people in charge, at least he doesn't hate them for their weakness. Donald Trump in another word is and has always been a living indictment of people who run this country. … But they didn't, instead they were **incompetent**, and **narcissus**, and **cruel**, and **relentlessly dishonest**. They wrecked what they didn't build, they lied about it. **They hurt anyone who told the truth about what they were doing**. That's true, we watched. American still a great country, the best in the world. **Our ruling class is disgusting**. A vote for Trump is a vote against them. That's what's going on in this country."

8.  ERISA is so restricted, Federal government does not even allow American middle-class people themselves to abstract money from pension fund to buy necessary food before they reach age of 65. However, these family lawyers have committed an industry scale RICO crime scene to unlawfully abstract money from pension fund, unwarranted by any Texas statue, without consumers' knowledge.

9.  Tarrant County criminal DA office keeps on pushing this case back to State, where they can have full control of abusive conducts, and utilize perjury to get guaranteed outcome. What Tarrant County criminal DA office did to Plaintiff is disgusting. What State Bar of Texas did to Plaintiff is disgusting. What Texas family courts did to Plaintiff and Texas people is disgusting. One family court judge sentenced a parent to six months in jail for missing a single child support payment, while another threatened to incarcerate a parent if they appealed to a higher court. Moreover, many court reporters seem to know when to stop recording transcripts when a judge becomes unhinged in court.

10. In this case, the Plaintiff has not found a single Defendant to be honest. Issuing an interlocutory order to withdraw money from a pension fund to pay attorney fees is unwarranted by any statute, which is the "unlawfully" element of *18 U.S.C. § 664*, a core

issue of this case. As a pro se litigant, the Plaintiff has been combating every Texas lawyer on the opposing side. "That's what's going on in this country."

11. There are 38 racketeering acts defined under *18 U.S.C. § 1961*. Tarrant County Criminal DA's Office is not a Federal legislative body, not the congress above congress; it has no Federal authority to abolish *18 U.S.C. § 664*, thereby reducing this Federal statute to 37 racketeering acts.

*12.* Income from racketeering activities is treated equally, regardless of whether it is derived from drug sales or the abstraction of pension funds. **Income from racketeering activities, had been used, indirectly and directly, invested into Tarrant County family court judges' campaign, in the form of campaign donation, to put more *culpable person* into judge position, furtherance the acquiring more income from racketeering activities using court orders. Lori L. DeAngelis is one of the judges.** Cartel has controlled many Mexico judges using drug sales income, just like Tarrant County family lawyers controlled many judges using abstraction of pension funds income, probably controlled many DA office attorneys as well.

## V. Prayer for Relief

13. WHEREFORE, premises considered, Plaintiff does file this Judicial Notice of Adjudicative Faces, and does move the Honorable Court to make such a matter of record this this litigation, pursuant to Ruel 201(b) and (d) of Federal Rule of Evidence:

Respectfully submitted,

_____/s/ Conghua Yan_____

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]

<u>CERTIFICATE OF
SERVICE</u>

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (October 20th, 2023).


_____     /s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]

# EXHIBIT 1

# Brown, Norvel E. Jr. - Disbarment



# Supreme Court of Missouri
## en banc

July 5, 2007


Supreme Court No. SC88622

In re: Norvel E. Brown, Jr., MBE No. 26503


**ORDER**


It appearing to the Court that Norvel E. Brown, Jr., pled guilty in the United States District Court, Eastern District of Missouri, to one felony count of wire fraud in violation of 18 USC 1343 and 2 and one felony count of theft from an Employee Benefit Plan in violation of 18 USC 664; and

The aforesaid judgment of conviction now being final; and

The Chief Disciplinary Counsel having moved the Court pursuant to Rule 5.21(c) for an order of final discipline of said Norvel E. Brown, Jr., and praying that the same be administered without the requirement of any other proceeding;

Now, therefore, it is ordered by the Court that the said Norvel E. Brown, Jr., be, and he is hereby, disbarred, that his right and license to practice law in the State of Missouri is cancelled, and that his name be stricken from the roll of attorneys in this State.

It is further ordered that the said Norvel E. Brown, Jr., comply in all respects with 5.27 - Notification of Clients and Counsel.

Costs taxed to Respondent.

Day - to - Day

Downloads | Texas Supreme Court 96… | Searcy v. State Bar of Te… | Searcy v. State Bar of Te… | 100% | Clear |

_____

William Ray Price, Jr.

Acting Chief Justice


Note: To view any specific rule provisions cited in this order, please visit the pages for Supreme Court of Missouri Rule 4 and Rule 5. Please be aware the versions of the rules available online are those currently in effect and may have changed since this order issued.

# EXHIBIT 2

No. 16448

Court of Civil Appeals of Texas, San Antonio

# Searcy v. State Bar of Texas

604 S.W.2d 256 (Tex. Civ. App. 1980)

Decided Jul 24, 1980

No. 16448.

June 25, 1980. Rehearing Denied July 24, 1980.

Appeal from 224th District Court, Bexar County, Richard J. Woods, J. *257

Frederick J. Deyeso, Deyeso Appleberry, San Antonio, for appellant.

Claude E. Ducloux, Austin, for appellee.

Before CADENA, C. J., and KLINGEMAN and MURRAY, JJ.

## OPINION

KLINGEMAN, Justice:

This is an appeal from a summary judgment entered by the district court of Bexar County, Texas, disbarring Patrick L. Searcy from practicing law in the State of Texas and ordering that his name be stricken from the rolls of attorneys of the State of Texas.

Appellant Patrick L. Searcy asserts that the trial court erred in granting appellee's motion for summary judgment and entering an order of disbarment because: (a) the statute under which appellant was convicted does not involve moral turpitude; (b) there are genuine issues of material fact; and (c) appellant was denied due process and an opportunity for a hearing.

The pertinent portion of the statute relied on by appellee for disbarment, Tex.Rev.Civ.Ann. art. 320a-1, § 6 (Vernon 1973), states:

Upon proof of final conviction of any felony involving moral turpitude or of any misdemeanor involving theft, embezzlement, or fraudulent appropriation of money or other property, where probation has not been given or has been revoked, the district court of the county of the residence of the convicted attorney shall enter a judgment disbarring him.[1]

[1] Since this lawsuit was instituted in the district court, provisions of the new State Bar Act, Tex.Rev.Civ.Stat.Ann. art. 320a-1 (Vernon Supp. 1979), have come into effect. Both appellant and appellee agree that the provisions dealing with disbarment proceedings involving moral turpitude contained in Section 16 of the new State Bar Act are essentially unchanged from the provisions of Section 6 of the old Act under which this cause was initiated.

On March 11, 1977, in criminal cause No. SA-76-CR-159, in the United States District Court, Western District of Texas, entitled United States v. Patrick L. Searcy, Searcy was convicted of violation of 18 U.S.C. § 1014 (1976) knowingly making a false statement in an application for a loan. As a result of this conviction, Searcy was sentenced to two years' confinement in a federal penal institution and fined $5,000. Searcy was denied probation and was confined in a federal correctional institution.

The summary judgment, consisting of the pleadings, exhibits and admissions on file, established that: (1) appellant was a resident of

Bexar County, Texas, at all times material in this action; (2) appellant was a licensed attorney in the State of Texas at the time of his conviction; (3) appellant had *258 been convicted of a felony offense of knowingly making a material false statement in a loan application submitted to the Bank of San Antonio, in violation of 18 U.S.C. § 1014 (1976) in criminal cause No. SA-76-CR-159; (4) the sentence imposed against Searcy was the maximum for that offense and such sentence was not probated; (5) the sentence imposed on Searcy consisted of confinement in a federal penal institution for a period of time greater than one year indicating a felony grade offense pursuant to 18 U.S.C. § 1 (1969); and (6) Searcy's conviction is final, the appeal having been dismissed.

The primary question on this appeal is whether the crime of which appellant was convicted involves moral turpitude. Appellant's defense in this regard is that there must be an intent to defraud for the offense to be one involving moral turpitude, which is not required under 18 U.S.C. § 1014; that he did not intend to defraud anyone; and that he has repaid all banks involved and obtained releases.

Moral turpitude has been defined as anything done knowingly contrary to justice, honesty, principle, or good morals. In re O'Connell, 184 Cal. 584, 194 P. 1010, 1012 (1920); In re Disbarment of Coffey, 123 Cal. 522, 56 P. 448, 449 (1899); In re Pontarelli, 393 Ill. 310, 66 N.E.2d 83, 85 (1946). It has also been defined to be an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men or to society in general. In re O'Connell, 184 Cal. 584, 194 P. 1010, 1012 (1920); Braverman v. Bar Ass'n of Baltimore City, 209 Md. 328, 121 A.2d 473, 481 (1956); John's Vending Corp. v. Secretary of Revenue, Cigarette Tax Bd., Dep't of Revenue, 3 Pa.Cmwlth. 658, 284 A.2d 834, 837 (1971). The term implies something immoral in itself, regardless of whether it is punishable by law. The doing of the act itself, and not its prohibition by statute, fixes the moral turpitude. See In re O'Connell, 184 Cal. 584, 194 P. 1010 (1920).

Immoral conduct is that conduct which is willful, flagrant, or shameless and which shows a moral indifference to the opinion of the good and respectable members of the community. In re Hicks, 163 Okla. 29, 20 P.2d 896 (1933); Muniz v. State, 575 S.W.2d 408 (Tex.Civ.App. Corpus Christi 1979, writ ref'd n.r.e.).

Appellant relies on cases involving income tax evasion, particularly California cases, and cites In re Hallinan, 43 Cal.2d 243, 272 P.2d 768 (1954). We do not regard such cases as controlling or even persuasive. Appellant attempts to equate conviction for income tax evasion with violation of 18 U.S.C. § 1014. It is noteworthy that in Hallinan the court observed that crimes involving fraud involve moral turpitude, but also stated: "(I)t is also settled that the related group of offenses involving intentional dishonesty for purposes of personal gain are crimes involving moral turpitude." 272 P.2d at 771. California, the state relied upon heavily by appellant, has held that a conviction under 18 U.S.C. § 1014 is an offense involving moral turpitude, In re J. Joseph Kennedy, Supreme Court No. BAR MISC. 3904 (Cal.Sup., filed Sept. 3, 1976; Dec. 13, 1978; May 17, 1979), and is sufficient to support disbarment.

It is to be remembered that Searcy was convicted after a plea of guilty. By pleading guilty to the criminal indictment in question, appellee admitted as true all of the necessary allegations of the criminal law under which he was charged. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969); State v. Nelson, 551 S.W.2d 433, 435 (Tex.Civ.App. San Antonio 1977, writ ref'd n.r.e.). The indictment here involved alleged that Searcy knowingly made a material false statement in an application for a loan submitted by Searcy to the Bank of San Antonio, the deposits of which are insured by the Federal Deposit Insurance Corporation, for the purpose of influencing the action of said bank to approve said loan; that he falsely represented that he owned various properties with a net worth of approximately

$750,000 and that he falsely represented that he was only indebted to one bank. He has admitted the truth of these allegations by pleading guilty to offense charged. *259

In a case involving alleged violations of 18 U.S.C. § 1014, the Circuit Court of Appeals in United States v. Sabatino, 485 F.2d 540 (2d Cir. 1973), cert. denied 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974), held:

> But there is no ambiguity with respect to the specific intent required to be proved. The false statement which the statute ( 18 U.S.C. § 1014) prohibits shall be 'for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.' To have 'the purpose of influencing' such a bank, the defendant must have known that it was a bank that he intended to influence. . . . 'the essence of the crime is the making of a false statement in an application for a loan for the purpose of influencing in any way the action of the bank from which the loan is sought.'

485 F.2d at 544.

There are a number of Texas cases involving disbarment of an attorney for a conviction of a felony involving moral turpitude. This court in State v. Nelson, 551 S.W.2d 433 (Tex.Civ.App. San Antonio 1977, writ ref'd n.r.e.), held that the offense of making an illegal political contribution was a felony involving moral turpitude and upheld a summary judgment against the attorney involved under the mandatory provisions of section 6 of Tex. Rev. Civ. Stat. Ann. art. 320a-1 Vernon 1973).

In Muniz v. State, 575 S.W.2d 408 (Tex.Civ.App. Corpus Christi 1979, writ ref'd n.r.e.), the disbarment of an attorney was upheld upon proof of federal court felony convictions of conspiring to import and to possess with intent to distribute

substantial amounts of marijuana and for willfully failing to appear in court as ordered. The court found that proof of such convictions constituted conduct involving moral turpitude and that the trial court properly granted the State's motion for summary judgment.

In a recent case, Freedson v. State Bar of Texas, 600 S.W.2d 349 (Tex.Civ.App. Houston, 1980) (not yet reported), Freedson was found guilty in the federal district court of violating 18 U.S.C. § 371 (1966), conspiring to violate 18 U.S.C. § 1001 (1976). The trial court granted the State Bar's motion for summary judgment disbarring Freedson. Freedson contended on appeal that the summary judgment proof did not establish, as a matter of law, that his conviction was one involving moral turpitude and that such question required a factual determination precluding summary judgment. The court of civil appeals disagreed and affirmed the trial court's judgment.

Although an intent to defraud is not an essential element of a conviction under 18 U.S.C. § 1014, we do not accept appellant's argument that the acts of which appellant pleaded guilty do not contain the essential elements of fraud. The gist of the offense as charged is that Searcy willfully and knowingly made material false statements in an application for a loan from a lending institution insured by the Federal Deposit Insurance Corporation for the purpose of obtaining a loan. The gravamen of the crime is the offense of knowingly lying to obtain a loan for the personal benefit of the appellant. Such conduct contains the essential elements of fraud, and clearly meets the criteria of a crime involving moral turpitude.

The Supreme Court of the United States in Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951), stated:

Whatever else the phrase 'crime involving moral turpitude' may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. . . . The phrase 'crime involving moral turpitude' has without exception been construed to embrace fraudulent conduct.

341 U.S. at 232, 71 S.Ct. at 708, 95 L.Ed. at 892. See e. g. In re Wiley, 253 Ind. 704, 252 N.E.2d 799 (1969); Iowa State Bar Ass'n v. Kraschel, 260 Iowa 187, 148 N.W.2d 621 (1967); Attorney Grievance Comm'n v. Andresen, 281 Md. 152, 379 A.2d 159 (1977); Attorney Grievance Comm'n v. Reamer, 281 Md. 323, 379 A.2d 171 (1977); Bar Ass'n of Baltimore City v. Snyder, 273 Md. 534, 331 A.2d 47 (1975). *260

260

We reject appellant's contention that the felony of which appellant was convicted does not involve moral turpitude.

Appellant also contends that the court erred in granting appellee's motion for summary judgment because there are genuine issues of material fact. We disagree. The summary judgment evidence conclusively establishes as a matter of law all essential elements required for disbarment of attorneys under section 6 of Tex.Rev.Civ.Stat.Ann. art. 320a-1 (Vernon 1973). There is no genuine issue as to any material fact and appellee is entitled to judgment as a matter of law. Gibbs v. General Motors Corp., 450 S.W.2d 827 (Tex. 1970).

Appellant does not particularly brief this point of error and his only defenses appear to be that (a) appellant was not charged with professional misconduct; (b) he has only been convicted of making a false statement to a bank on a loan application; (c) appellant had no intent to defraud anyone; and (d) the bank did not lose any money. Assuming these allegations are true, they do not constitute a defense in the matter here involved.

The Texas cases hereinbefore cited, State v. Nelson, 551 S.W.2d 433 (Tex.Civ.App. San Antonio 1977, writ ref'd n.r.e.), Muniz v. State, 575 S.W.2d 408 (Tex.Civ.App. Corpus Christi 1979, writ ref'd n.r.e.), and Freedson v. State Bar of Texas, No. 17622 (Tex.Civ.App. Houston, filed Ap. 10, 1980) (not yet reported), were all summary judgment proceedings involving disbarment of lawyers for offenses involving moral turpitude and which summary judgments were upheld by the appellate courts.[2]

> [2] The determination of whether a crime involves moral turpitude is a question of law addressed to the courts and not a fact issue. United States ex rel. Millard v. Tuttle, 46 F.2d 342 (E.D. La. 1930).

By his last point of error, appellant asserts that disbarment by summary judgment denied him due process and an opportunity to be heard. Although he cites no authorities to support such contention, he argues that to allow summary disbarment for a conviction under the particular statute here involved denied him an opportunity to be heard, as the subject statute allows no evidence as to intent to defraud, or even repayment.

Appellant makes no complaint that he was not duly cited for all hearings or that he had no opportunity to appear. In fact, the record shows that he was duly cited after a formal complaint was filed; that he was represented by legal counsel and filed an answer; that after a motion for summary judgment was filed he answered and filed controverting affidavits and exhibits; and that he appeared in person and by counsel on the motion for summary judgment.

A primary requirement of due process in any proceeding which is to be accorded finality, is notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190, 14 L.Ed.2d 62, 65 (1965), H.P.F. v. B.D.P., 479

S.W.2d 124, 127 (Tex.Civ.App. San Antonio 1974, writ ref'd n.r.e.). The other fundamental requirement of due process is the opportunity to be heard. Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363, 1369 (1914). See Galindo v. State, 535 S.W.2d 923, 927 (Tex.Civ.App. Corpus Christi 1976, no writ).

Appellant makes no contention that he did not have adequate notice or that he did not have an opportunity to be heard. Appellant's last point of error is overruled.

The judgment of the trial court is affirmed.

261    *261

 casetext

# EXHIBIT 3

December 19, 1996


The Honorable Richard J. Miller

Bell County Attorney

P.O. Box 1127

Belton, Texas  76513


Letter Opinion No. 96-140


Re:    Whether communicating a

false alarm, in violation of

section 42.06, Penal Code is a

crime of "moral turpitude"

(ID# 38005)


Dear Mr. Miller:


        You have requested our opinion as to whether the offense of

placing a false alarm is one involving "moral turpitude."  Section

42.06, Penal Code, provides:


        (a)  A person commits an offense if he knowingly

initiates, communicates or circulates a report of a

present, past, or future bombing, fire, offense, or

other emergency that he knows is false or baseless and

that would ordinarily:


        (1)  cause action by an official or volunteer

agency organized to deal with emergencies;

(2)  place a person in fear of imminent serious

bodily injury; or


(3)  prevent or interrupt the occupation of a

building, room, place assembly, place to which the

public has access, or aircraft, automobile, or

other mode of conveyance.


(b)  An offense under this section is a Class A

misdemeanor unless the false report is of an emergency

involving a public primary or secondary school, public

communications, public transportation,

public water, gas, or power supply or other public

service, in which

event the offense is a state jail felony.



It is well established that "[g]enerally, a crime involving

dishonesty or false statement is considered to be one involving moral

turpitude."  United States v. Gloria, 494 F.2d 477 (5th Cir. 1974),

cert. denied, 95 S.Ct 306 (1974).  No Texas case has specifically

determined whether the filing of a "false alarm," in contravention of

section 42.06, constitutes a crime of moral turpitude.  Other offenses

involving dishonesty have, however, been held to constitute such crimes.

See, e.g., Searcy v. State Bar of Texas, 604 S.W.2d 256 (Tex. Civ. App.-

-San Antonio 1980, writ ref'd n.r.e.) (making false statement in loan

application in order to obtain loan for personal benefit is crime of

moral turpitude);  State v. Nelson, 551 S.W.2d 433 (Tex. Civ. App.--San

Antonio 1977, writ ref'd n.r.e.) (making illegal political contribution

encompasses moral turpitude).

An offense need not involve personal gain in order to constitute a crime of moral turpitude.  In Robertson v. State, the court held that the offense of lying to a police officer, as proscribed by section 37.08, Penal Code, was a crime of moral turpitude, "regardless of whether it was done for personal gain, because it involves dishonesty." Robertson v. State, 685 S.W.2d 488, 492 (Tex. App.--Fort Worth 1985, no writ).  Any crime, the court declared, that involves "false statement and dishonesty" may be deemed one of "moral turpitude."  Id. at 492. Accord, Lape v. State, 893 S.W.2d 949 (Tex. App.--Houston [14th Dist.] 1994, writ ref'd). [footnote 1]   One element of the section 42.06 offense is that the actor knows the report to be false or baseless.  We believe it is clear that the offense of communicating a false alarm, in contravention of section 42.06, is one of moral turpitude.

            S  U  M  M  A  R  Y

     The offense of communicating a false alarm, in contravention of section 42.06, Penal Code, is a crime of "moral turpitude."



                 Yours very truly,




                 Rick Gilpin

                 Deputy Chief

                 Opinion Committee


------------------------------------------------------------

FOOTNOTES

[1] One court has held that the offense of issuing a bad check, pursuant to section 32.41(a), Penal  Code, is not a crime of moral turpitude, because it does not contain the element of intent to defraud, Dallas  County Bail Bond Board v. Mason, 773 S.W.2d 586 (Tex. App.--Dallas 1989, no writ).  This ruling is not  consistent with other cases.

# EXHIBIT 4





## Lori DeAngelis Griffith for Judge

📍 1119 W. Pioneer Pkwy., Ste. 107

✉️ loriforjudge@gmail.com

🌐 LoriDforjudge.com



**+ 7**

Endorsements

### Photos

See All Photos







**Lori DeAngelis Griffith for Judge**
October 27 · 🌐

I am deeply touched by the enormous support shown at the meet and greet on Monday evening. I'd like to thank our sponsors the Honorable Laura Hill, Attorney Leslie Barrows and her lovely office, and Attorney Maggie Hill Ahearn for making it such a lovely event. You have said some of the nicest things about me and I am grateful for your affirmation and support.









**+ 4**

👍❤️ 35                                    1 Share

👍 Like          💬 Comment          ↪ Share

  Write a comment...          

Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More

· Meta © 2021