# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| CONGHUA YAN, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| THE STATE BAR OF TEXAS, a private company, | § CIVIL ACTION NO. 4:23-cv-00758-P-BJ |
| THE BARROWS FIRM, a private company, | § |
| LESLIE STARR BARROWS, in individual capacity, as member of the State Bar of Texas, | § |
| WILLIAM ALBERT PIGG in individual capacity, as member of the State Bar of Texas, | § |
| SAMANTHA YBARRA, in individual capacity, as member of the State Bar of Texas, | § |
| LUIS JESUS MARIN, in individual capacity, as member of the State Bar of Texas, and official capacity as Assistant Disciplinary Counsel for the Office of the CDC, | § |
| DANIEL EULALIO MARTINEZ, in individual capacity, as member of the State Bar of Texas, and official capacity as Assistant Disciplinary Counsel for the Office of the CDC, | § |
| RACHEL ANN CRAIG, in individual capacity, as member of the State Bar of Texas, and official capacity as Assistant Disciplinary Counsel for the Office of the CDC, | § |
| LORI L. DEANGELIS, in individual capacity, as member of the State Bar of Texas, and official capacity as Associated Judge, | § |
| TARRANT COUNTY, | § |
| U.S. Bank, | § |
| | § |
| Defendants. | § |

**DEFENDANT SAMANTHA YBARRA'S REPLY IN SUPPORT OF
HER MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF THIS COURT:

### I. Introduction

1. Plaintiff Conghua Yan ("Plaintiff") continues his shotgun approach but ultimately cannot plead a claim against Defendant Samantha Ybarra ("Ybarra"). Importantly, Plaintiff's claims are premised on the allegation that "[e]very member of the State Bar of Texas" is part of the alleged RICO conspiracy. Plaintiff's claims against Ybarra, the former attorney for Plaintiff's wife in their divorce proceeding (the "Divorce Suit"), are barred by attorney immunity. Additionally, Plaintiff's RICO claims against Ybarra should be dismissed because he does not plead facts to support claims under 18 U.S.C. § 1962(a), (c), or (d) against Ybarra. Moreover, if Plaintiff's Third Amended Complaint can be fairly construed to allege an antitrust claim or any other claim against Ybarra, Ybarra asks the Court to exercise its inherent power to *sua sponte* dismiss these claims as frivolous and malicious.

### II. Argument

**A.   All of Plaintiff's claims against Ybarra are barred by attorney immunity.**

2. Plaintiff focuses on two arguments as to why attorney immunity does not bar his claims against Ybarra: (1) Ybarra's actions were not the "type" of actions performed by attorneys; and (2) Plaintiff and Ybarra's client, Plaintiff's soon-to-be-ex-spouse Wang, did not have an adversarial relationship with Plaintiff at the April 13, 2022 hearing. [ECF No. 89, ¶¶37-45]. Plaintiff's arguments do not defeat Ybarra's entitlement to attorney immunity.

> **1.   Ybarra's alleged conduct was within the scope of Ybarra's legal representation of Wang.**

3. The "only facts required to support an attorney-immunity defense are the ***type*** of conduct at issue and the existence of an attorney-client relationship at the time." *Youngkin v. Hines*,

2

546 S.W.3d 675, 683 (Tex. 2018) (emphasis added). Dismissal at the motion to dismiss stage may be proper where these facts are apparent on the face of the plaintiff's complaint. *See Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763–64 (5th Cir. 2019) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."). When deciding a motion to dismiss, courts can decide the "legal question of whether said conduct was within the scope of representation." *Youngkin*, 546 S.W.3d at 683.

4.   In reviewing a plaintiff's complaint, the court is required to look beyond the plaintiff's "characterizations of activity as fraudulent and conspiratorial" and instead "focus on the conduct at issue." *Ironshore Europe DAC*, 912 F.3d at 766 (quoting *Youngkin*, 546 S.W.3d at 682). For example, in *Youngkin*, the plaintiff accused the defendant-attorney of:

> knowingly participat[ing] in a fraudulent scheme to deprive the plaintiff of property by entering a settlement agreement on his clients' behalf 'knowing they had no intention to comply,' helping his clients avoid compliance by preparing a deed used to transfer the property to another person, and aiding that person in his efforts to wrongfully assert ownership of the property.

*Id.* at 766 (citing *Youngkin*, 546 S.W.3d at 678–79). The Texas Supreme Court instead classified the attorney's conduct as "negotiating and entering a settlement agreement, preparing transfer documents, and filing a lawsuit," none of which was "foreign" to the duties of a lawyer. *See Youngkin*, 546 S.W.3d at 684.

5.   Here, Plaintiff's Third Amended Complaint sets forth the type of conduct in which Ybarra allegedly engaged—receiving emails, attending a hearing, and reviewing the interlocutory QDRO.[1] [*See, e.g.*, ECF No. 60, ¶¶ 160–68]. Therefore, despite Plaintiff's characterization of

---

[1] *See* ECF No. 89, ¶ 41. In his response, Plaintiff alleges, for the first time, that Ybarra committed "aggravated perjury" at the April 13th hearing. [*Id.*]. He also describes her alleged conduct as "unlawfully abstracting money from Plaintiff's pension account for collecting attorney fees and

3

Ybarra's conduct, it is evident from the face of Plaintiff's Third Amended Complaint that Ybarra's alleged actions were not "criminal"[2] and were within the scope of Ybarra's representation of Wang.[3] *See Youngkin*, 546 S.W.3d at 682 (noting the firm in *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) "was shielded by attorney immunity because preparing documents ancillary to the divorce decree, *even in a manner that allegedly violated the decree*, was within the scope of representation relating to execution of the decree and was not foreign to the duties of a lawyer") (emphasis added). Ybarra was not required, nor permitted, to produce outside evidence of her entitlement to attorney immunity. The allegations in Plaintiff's Third Amended Complaint, taken as true, demonstrate Ybarra's entitlement to such immunity.

      **2.**      **Plaintiff's Complaint establishes the adversarial nature of the Divorce Suit.**

6. Plaintiff argues that Ybarra failed to establish her entitlement to the attorney-immunity defense because Plaintiff and Wang were not in an "adversarial relationship" at the April 13, 2022 hearing. [ECF No. 89, ¶¶ 41, 45; *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65 (Tex. 2021)].

7. Plaintiff's reliance on *Haynes & Boone* is flawed. That case addressed whether and in what circumstances attorney immunity might apply to attorney actions ***outside the litigation context***. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47 n.3 (Tex. 2021); *see*

---

diverting it to the lawyer's own pocket." Plaintiff cannot rely on allegations not pleaded, and his characterizations of Ybarra's conduct are not controlling for purposes of the attorney-immunity analysis. *See Ironshore Europe DAC*, 912 F.3d at 763-64, 766.

[2] Indeed, Plaintiff acknowledges that the Texas Supreme Court held that only those actions that fall outside the scope of client representation negate immunity, not alleged "criminal" activity within course of representation. [Resp., ¶ 40]; *Cantey Hanger*, 467 S.W.3d at 482.

[3] Plaintiff says Ybarra's motion to dismiss did not address his allegations in paragraphs 72, 74, 87, 99, 101, 107, 159, and 160-171. [ECF No. 89, ¶ 8]. However, Ybarra did specifically address the allegations against Ybarra, if any, in these paragraphs, most of which are duplicative of other allegations in the complaint. None of the facts included in these paragraphs allege conduct by Ybarra that would fall outside the scope of her representation of Wang.

*also In re Sams*, No. 05-22-00150-CV, 2022 WL 3354137, at *2 (Tex. App.—Dallas Aug. 15, 2022, no pet.); *Haynes & Boone*, 631 S.W.3d at 78 ((1) providing legal services; and (2) within an adversarial context). Importantly, the second element in the *Haynes & Boone* test—an adversarial context—only applies to non-litigation contexts. *See Legall-Johnson v. JPmorgan Chase Bank, N.A.*, No. 4:22-CV-1560, 2022 WL 17253906, at *3 (S.D. Tex. Oct. 31, 2022), *report and recommendation adopted sub nom. Legall-Johnson v. JP Morgan Chase Bank N.A.*, No. 4:22-CV-1560, 2022 WL 17253901 (S.D. Tex. Nov. 28, 2022) (characterizing the two-part test as applying to "claims based on conduct outside the litigation context").

8. In this case, Plaintiff complains about alleged actions taken in a highly-contentious divorce matter, which is still ongoing.[4] Where litigation is ongoing, the parties are definitionally adversarial, often even beyond the entry of a final judgment. *See Cantey Hanger*, 467 S.W.3d at 485 n.11 (disagreeing with lower court's conclusion that parties were no longer adversarial once divorce decree had been entered).

9. Ybarra was not required to allege that her client and Plaintiff were adversaries in the Divorce Suit. And, Plaintiff's bare allegation that he and Wang were not adversaries during any portion of their highly contentious, ongoing Divorce Suit is unfounded. Plaintiff's claims against Ybarra are barred by attorney immunity and should be dismissed with prejudice.

---

[4] In his response, Plaintiff also references Ybarra's representation of Wang in a related criminal matter. [ECF No. 89, ¶ 40]. He seems to say that Ybarra is not entitled to attorney immunity for her representation of Wang in that matter because Plaintiff was not on the other side of that case (i.e., was not Wang's adversary). [*See id.*]. However, the allegations in Plaintiff's Third Amended Complaint are entirely related to Ybarra's and other's work in the Divorce Suit and obtaining attorney's fees in connection therewith. And, Ybarra's representation of Wang in a criminal matter was within the context of the divorce and also adverse to Plaintiff—Plaintiff admitted that the criminal proceedings related to alleged family violence during the pendency of the Divorce Suit. [ECF 60, ¶ 84].

B.  **Plaintiff has not stated a claim against Ybarra under 18 U.S.C. § 1962 ("RICO").**

10. ***Continuity.*** Plaintiff says that Ybarra's argument that Plaintiff failed to plead RICO "continuity" is defective because "there is no requirement for Plaintiff to sufficiently pleaded [sic] 'continuity' or any other element of 18 U.S.C. § 1962(a)(c)(d) separately against Ms. Ybarra's role related to predicate acts." [ECF No. 89, ¶ 47]. Plaintiff misunderstands Ybarra's argument.

11. Ybarra did not allege that Plaintiff was required to prove "continuity" with respect to Ybarra as an alleged RICO "person." Instead, Ybarra argues that Plaintiff cannot show continuity of the predicate acts or offenses he identifies in his Third Amended Complaint. [*See* ECF No. 75, ¶¶ 20–23]. Plaintiff identifies a single episode of alleged fraud (the withdrawal of funds from his retirement account), involving one alleged victim (himself), and relating to one basic transaction (the Divorce Suit). *See Orthoflex, Inc. v. ThermoTek, Inc.*, Civil Action No. 3:10-CV-2618-D, 2012 WL 2864510, at *3 (N.D. Tex. July 12, 2012) ("Continuity cannot be established by multiple acts of fraud that are part of a single transaction."). Plaintiff's references in his response to "Pigg's withdrawal for covering up, his false statement made to the law enforcement when Plaintiff filed criminal complaint, the concealment acts by the Chief Disciplinary Office's counsels, and the Tarrant County District Attorney Office's refusal to investigate for continuous cover up" all relate to this one transaction: the Divorce Suit. [ECF No. 89, ¶ 47].

12. Any reference to a "continuous cover up" is merely conclusory or speculative. Plaintiff points to Exhibit 9 to his Third Amended Complaint as evidence of continuity. [*Id.*]. Exhibit 9 appears to be a 2014 Associate Judge's Report for the 360th District Court, permitting a party to withdraw funds from his 401(k) account for the payment of attorney's fees. [*See* ECF No. 60, p. 152]. However, this out-of-context order from nine years ago, involving different parties,

different attorneys, and a different judge, fails to establish a pattern of racketeering activity constituting or threatening continuity at all, much less on a go-forward basis.

> Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." … "[Continuity] refer[s] either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."

*In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241-42 (1989)). Plaintiff's one example is not related to the alleged actions in the Divorce Suit and does not establish "continuity" of predicate acts.

13. **Conspiracy.** Plaintiff failed to sufficiently plead a substantive RICO violation under 18 U.S.C. § 1962(c) against Ybarra because conspiracy to commit mail/wire fraud is not a RICO "racketeering activity." [ECF No. 75, ¶¶ 24–26]. In response, Plaintiff argues that he (1) alleged other racketeering activities against Ybarra; and (2) need not prove that Ybarra personally committed two predicate acts to prove "a RICO conspiracy." [ECF No. 89, ¶ 50–51].

14. Addressing his second argument first, Plaintiff confuses sections 1962(c) and 1962(d). To address Ybarra's section 1962(c) arguments, Plaintiff relies on cases outside of the Fifth Circuit that only discuss the elements of a RICO *conspiracy* under 1962(d). [ECF No. 89, ¶¶ 50-59]. By contrast, under Fifth Circuit precedent, "[a] defendant does not 'conduct' or 'participate in the conduct' of a lawful enterprise's affairs [for purposes of section 1962(c)], unless (1) the defendant *has in fact committed the racketeering acts* as alleged; (2) the defendant's position in the enterprise facilitated his commission of the racketeering acts, and (3) the predicate acts had some effect on the lawful enterprise." *United States v. Cauble*, 706 F.2d 1322, 1332–33 (5th Cir. 1983) (emphasis added). Plaintiff has not pleaded (and cannot plead) that Ybarra violated section 1962(c) by actually committing qualifying predicate acts.

15. Plaintiff's argument that he has pleaded a violation of section 1962(d) (RICO conspiracy) is likewise meritless. Although Plaintiff may not need to prove Ybarra personally committed two predicate acts to prove a RICO conspiracy, he must at least specifically allege an agreement to commit two or more predicate acts among the Defendants.[5] *See Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1140 (5th Cir. 1992). Indeed, without this standard and under Plaintiff's argument, "[e]very member of the State Bar of Texas" is involved in this alleged RICO conspiracy. [ECF 89, ¶ 59]. Since Plaintiff has not (and cannot) plead such an agreement, and because his allegations against Ybarra under sections 1962(a) and (c) fail, Plaintiff's RICO conspiracy allegations under section 1962(d) also fail and should be dismissed with prejudice.

16. Additionally, paragraph 107 of the Third Amended Complaint alleges Defendants Ybarra, Pigg, and Barrows "teamed up" to perform only those substantive acts attributable to Defendant Barrows in other portions of the Complaint. [*See, e.g.*, ECF No. 60, ¶¶ 73, 96, 101–02]. Paragraph 107 states: "By August 2022, *following the lead of Defendant Leslie Starr Barrows*, Defendant William Albert Pigg and Defendant Samantha Ybarra *teamed up* . . . [T]hey *carried out* several Federal crimes and RICO racketeering activities defined by [18 U.S.C. § 1961], including but not limited to [18 U.S.C. §§ 1341, 1343, 1349, 664, and 1027]. [ECF No. 60, ¶ 107] (emphasis added). Plaintiff's allegation that Ybarra "follow[ed] the lead of" and "team[ed] up" merely alleges that Ybarra and Pigg were complicit in a RICO conspiracy under section 1962(d), not that they had violated these statutes along with Barrows. [*See* ECF No., ¶ 34 (citing Plaintiff's ¶ 107 within the section of Ybarra's motion to dismiss addressing 1962(d))].

---

[5] The Office of the Chief Disciplinary Counsel and the Board of Disciplinary Appeals found that Barrows and Pigg did not violate the Texas Disciplinary Rules of Professional Conduct. [ECF 60, Ex. 2]. Therefore, Ybarra's failure to report Barrows and Pigg was not a violation of Texas Disciplinary Rule of Professional Conduct 8.03. [ECF 89, ¶ 53].

17. To the extent paragraph 107 can be fairly construed in the manner Plaintiff asserts, Plaintiff still has not pleaded sufficient facts to show that Ybarra has violated any of the provisions cited, some of which are not listed as racketeering activities under 18 U.S.C. § 1961(1).[6]

18. ***Use and Investment.*** To plead a RICO "use and investment" claim under section 1962(a), a plaintiff must show that his injuries resulted from the investment or use of racketeering proceeds. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 443 (5th Cir. 2000). Plaintiff, citing *Williamson*, alleges that Plaintiff's "legal costs" may constitute sufficient injury to support his section 1962(a) claim against Ybarra. [ECF No. 89, ¶ 61].

19. Plaintiff's argument fails for two reasons. First, Plaintiff only alleges that Defendant Pigg caused Plaintiff to incur legal costs. [*Id.*; *see* ECF No. 60, ¶ 179]. Plaintiff does not make a similar allegation against Ybarra.

20. And, most importantly, the circumstances in *Williamson* are not present here. In *Williamson*, the plaintiff-insurer alleged that the RICO enterprise used funds from prior racketeering activities to support an enterprise that *filed a fraudulent state tort suit* against plaintiff-insurer's insured. *See Williamson*, 224 F.3d at 441–45. Plaintiff-insurer incurred legal costs defending its insured. *Id*. Here, *Plaintiff* initiated the Divorce Suit, and this lawsuit, and has pleaded no other nexus between Defendants' allegedly ill-gotten funds and Plaintiff's complained-of injuries.

---

[6] Plaintiff now asserts that paragraph 107 advances, "under the clause of 'teamed up,'" allegations that "Ms. Ybarra drafted, reviewed, discussed multiple orders and motions which Leslie filed or attempted to file to the court." [ECF No. 89, ¶ 54]. This is not a fair reading of paragraph 107 or Plaintiff's Third Amended Complaint as a whole, nor would this conduct fall outside the scope of Ybarra's attorney immunity protection.

**C.     Plaintiff's purported antitrust allegations against Ybarra are wholly deficient.**

21.     Plaintiff argues that "Defendant's counsel never addressed any Plaintiff's [sic] allegation in the Second Claim for AntiTrust before this Court." [ECF No. 89, ¶ 5]. However, Plaintiff neither listed Ybarra in bold underneath his "Second Claim for Relief" heading, nor did he mention Ybarra by name in the seventy paragraphs that follow, except to re-list her as a "party." [*See id.* at ¶¶ 205–75]. To the extent Plaintiff's pleadings can be construed to advance an antitrust claim against Ybarra, Plaintiff has failed to allege sufficient facts to establish a Sherman Act violation against her. *See Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*, 200 F.3d 307, 316 (5th Cir. 2000) ("A conspiracy to monopolize [under section 2 of the Sherman Antitrust Act] can be established only by proof of (1) the existence of specific intent to monopolize; (2) the existence of a combination of conspiracy to achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect upon a substantial amount of interstate commerce.").

22.     Moreover, Plaintiff's antitrust claim against Ybarra, if any, is barred by attorney immunity. In the event the Court determines that it is not barred, Ybarra asks the Court to exercise its inherent power to dismiss this purported claim against Ybarra as frivolous or to order that Plaintiff submit a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *See Pope v. Mountcastle Mortg. Corp.*, No. 3-11-CV-1689-B, 2011 WL 4986927, at *1 (N.D. Tex. Oct. 18, 2011) (*sua sponte* dismissing pro se plaintiff's complaint); *In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021) (noting the court may *sua sponte* order a more definite statement when presented with shotgun pleadings).

### III. Prayer

WHEREFORE, PREMISES CONSIDERED, Defendant Samantha Ybarra prays that the Court grant her motion to dismiss and dismiss all of Plaintiff's claims against Ybarra with prejudice. [ECF No. 75].

Dated: October 23, 2023

                                                     Respectfully submitted,

                                                   */s/ Caroline M. Cyrier*
Roland K. Johnson
State Bar No. 00000084
rolandjohnson@hfblaw.com
Caroline M. Cyrier
State Bar No. 24097558
ccyrier@hfblaw.com
**Harris, Finley & Bogle, P.C.**
777 Main Street, Suite 1800
Fort Worth, Texas 76102
Telephone:    817-870-8700
Facsimile:    817-332-6121

**ATTORNEYS FOR DEFENDANT SAMANTHA YBARRA**

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument has been served on all parties and counsel of record in compliance with the Federal Rules of Civil Procedure on this 23rd day of October 2023.

                                                 */s/ Caroline M. Cyrier*
                                                 Caroline M. Cyrier