**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendant. | ) |
| ——————————————————— | ) |

**TABLE OF CONTENTS**

TABLE OF CONTENTS                                                                                    2

INDEX OF AUTHORITIES                                                                                 3

I.      INTRODUCTION                                                                                  5

II.     STANDARD OF REVIEW                                                                            5

III.    SUMMARY OF MOTION TO DISMISS                                                                 6

IV.     GENERAL ARGUMENTS AND AUTHORITIES ABOUT ALLEGATIONS AND CONGRESS' RICO
INTENTION                                                                                           7

V.      SPECIFIC ARGUMENTS AND AUTHORITIES                                                          10

**A.   Younger Abstention Doctrine**                                                                **10**
   1.   Lacks subject matter jurisdiction against Barrows Defendants;                               10

**B.   Failed to state a claim**                                                                    **12**
   1.   Claims against Barrows Defendants are barred by attorney immunity;                          12
   2.   Has not sufficiently pleaded "continuity" as is required to support each of his RICO claims against Barrows
Defendants;                                                                                        16
   3.   Has not stated a civil RICO claim "18 U.S.C. § 1962(a)";                                    20
   4.   Has not stated a civil RICO claim "18 U.S.C. § 1962(c)";                                    21
   5.   Has not stated a civil RICO claim "18 U.S.C. § 1962(d)";                                    22
   6.   Has not sufficiently pleaded an antitrust claim against Barrows;                            25
   7.   Has not sufficiently pleaded a constitutional claim against Barrows;                        26
   8.   Has not sufficiently pleaded entitlement to injunctive relief;                              26

VI.     CONCLUSION                                                                                  27

PRAYER FOR RELIEF                                                                                   28

CERTIFICATE OF SERVICE                                                                              29

# INDEX OF AUTHORITIES

## CASES

*Albert Malvino v. Paul Delluniversita*, 840 F.3d 223 (5th Cir. 2016) ...................................................19

Axon Enterprise, Inc. v. Federal Trade Commission et al .......................................................................27

Axon Enterprise, Inc. v. Federal Trade Commission et al., 143 S.Ct. 890 (2023) (No. 21-86).............27

*Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) ......................................................................18

*Baker v. Stewart Title Trust of Phoenix* ..................................................................................................21

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) ..................................................................5

*Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1005 (S.D. Tex. 1995) ...........................23

Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) ..........................................11

*DeLoach v. Woodley*, 405 F.2d 496–97 (5th Cir. 1968) ............................................................................6

*Dolenz v. Akin*, Civ.A. No. 3:95-CV-1605-P, 1997 WL 21388 ..................................................................26

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ...............................................................................................6

*GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463 (2d Cir. 1995) .................................................18

*Google, Inc. v. Hood* ................................................................................................................................10

*H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989) ................................................9

*H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989) ...........................................9, 19

*H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245 (1989) ................................................9

*H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249 (1989) ................................................9

*H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 250 (1989) ................................................9

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021) .....................................................14

*Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021) .....................................................15

*Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008) ...............................5

*Hitt v. City of Pasadena*, 561, F.2d 606, 608–09 (5th Cir. 1977) .........................................................6, 28

*In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993) ................................................................................19

*In re Burzynski*, 989 F.2d 733, 743–44 (5th Cir. 1993) ..........................................................................19

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) ..............................15

*Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017) ...........................................................................12

*Lepage's Inc. v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003) ..........................................................................25

*Loring v. Nelson*, No.: 3:19-cv-185, 3 (E.D. Tenn. Dec. 19, 2019) ........................................................22

*Lowery v. Texas A M University System*, 117 F.3d 242, 247 (5th Cir. 1997) ............................................5

*MasTec Renewables P.R. LLC v. Mammoth Energy Servs.*, 494 F. Supp. 3d 1233, 1241-42 (S.D. Fla. 2020) ............18

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999).........14

*MID-TEXAS COMMUNICATIONS v. AM. TEL. TEL*, 615 F.2d 1372 (5th Cir. 1980) .................................25

*MID-TEXAS COMMUNICATIONS v. AM. TEL. TEL*, 615 F.2d 1372, 1382 n.8 (5th Cir. 1980) .................25

*Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385 (6th Cir. 1989) .......................................................20

*NFTD, LLC v. Haynes & Boone LLP*, 652 S.W.3d 546, 557 (Tex. App. 2022) .........................................16

*Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002) ................................20

*Norfolk S. Ry. Co. v. Boatright R.R. Prods., Inc*., Civil Action Number 2:17-cv-01787-AKK, 22 n.4 (N.D. Ala. May. 21, 2018). ..18

*Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) ...................................28

*Ollie v. Plano Independent School Dist*., 564 F.Supp.2d 658, 660 (**E.D. Tex. 2008**) ................................5

*Peterson v. Peterson,* Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) .......11

*Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004), ..............................................................5

*Pure, Ltd. v. Shasta Beverages*, Inc., 691 F. Supp. 1274, 1279 (D. Haw. 1988). .....................................5

*Rodriguez v. City of New York*, 861 F. Supp. 1173, 1186 (S.D.N.Y. 1994) ...............................................5

*Salinas v. United States*, 522 U.S. 52, 64 (1997). ..................................................................................24

*Salinas v. United States*, 522 U.S. 52, 65 (1997) ...................................................................................24

*Schueuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) ...............................5

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 480 (1985) .........................................................................8

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985) ........................................................................8

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985) ...................................................................9

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985) ........................................................................8

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) ..................................................................8, 10

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500 (1985) ........................................................................8

*Sparks v. Duval County Ranch Co.*, Inc., 604 F.2d 976, 982-83 (5th Cir. 1979) .................................26

*Sprint Comm'cns, Inc. v. Jacobs*, 134 S. Ct. 584, 588, 591 (2013) .......................................................10

*Sprint Comm'cns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ...............................................................11, 27

*Sprint Communications, Inc. v. Jacobs et al* ........................................................................................10

*St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000) .......................................20

Stewart v. Wells, No. 4:19-CV-00598-P-BP, 2020 WL 3146866 ...........................................................11

*Texas State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director// Ellen Jefferson, D.V.M. v. Ellen Jefferson, D.V.M.// Texas State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director*, 03-14-00774-CV (Tex. App. 2015) ..............................................25

*Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 506 (5th Cir. 2019) .............................................13

*Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019) .............................................13

*U.S. v. Corrado*, 227 F.3d 543, 553 (6th Cir. 2000) ............................................................................28

*U.S. v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990) ..............................................................................24

*U.S. v. Philip Morris USA Inc*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) .................................................28

*United States v. Castro*,89 F.3d 1443, 1451 (11th Cir.1996).............................................................23

*United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019)..........................................................24

*United States v. Godwin*, 765 F.3d 1306, 1324 (11th Cir. 2014).......................................................24

*United States v. Sutherland*, 656 F.2d 1181 (5th Cir. 1981)..............................................................23

*W. Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp. (In re Nat'l Prescription Opiate Litig.)*, 452 F. Supp. 3d 745, 773 n.33 (N.D. Ohio 2020) ............................................................................21

*Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) .....................................................11

## STATUTES

§ 2 of the Sherman Act ...........................................................................................................................25

*18 U.S.C. § 1341*....................................................................................................................................22

*18 U.S.C. § 1343*....................................................................................................................................22

*18 U.S.C. § 1956(c)(7)*...........................................................................................................................24

*18 U.S.C. § 1962*(a) .........................................................................................................................16, 20

*18 U.S.C. § 1962*(c) .........................................................................................................................16, 21

*18 U.S.C. § 1962*(d) .........................................................................................................................16, 23

*28 U.S.C. § 1331*....................................................................................................................................27

*29 U.S.C. § 1132(e)*...............................................................................................................................27

*29 U.S.C. § 1144(a)*...............................................................................................................................27

*29 U.S.C. § 18*.......................................................................................................................................27

Rule 12(b)(1) ...........................................................................................................................................5

Rule 12(b)(6) ......................................................................................................................................5, 28

**RESPONSE/OBJECTION TO MOTION TO DISMISS**
**BY LESLIE BARROWS AND BARROWS FIRM**
**AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this Response/Objection to Defendants' Motion to Dismiss by Leslie Starr Barrows and the Barrows Firm. ECF No 90.

## I.    Introduction

1.      Defendants Leslie Starr Barrows ("Barrows") and The Barrows Firm (the "Firm"), a private company (collectively, "Barrows Defendants") in this suit, submitted Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) or, alternatively, 12(b)(6).

## II.    Standard of Review

2.      "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court **first** considers the Rule 12(b)(1) jurisdictional attack **before** addressing any attack on the merits. Ramming, 281 F.3d at 161. This requirement precludes a court without jurisdiction from dismissing a case with prejudice. Id. A motion to dismiss under Rule 12(b)(6) is **"viewed with disfavor and rarely granted."** *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004), citing *Lowery v. Texas A M University System*, 117 F.3d 242, 247 (5th Cir. 1997). **The complaint is liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true**. Id. **The issue is whether the plaintiff is entitled to offer evidence to support her claim, not whether she will prevail on the claim**. Id. Although detailed factual allegations are not required, the plaintiff must supply the basis for its justification for relief. *Ollie v. Plano Independent School Dist.*, 564 F.Supp.2d 658, 660 (**E.D. Tex. 2008**), citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007). Consequently, the court **will not dismiss** a claim **unless** the plaintiff will not be entitled to **any relief** under **any facts** or **possible theory** that the plaintiff could prove consistent with the allegations of the complaint. Priester, 354 F.3d at 418." *Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008).

3.      "See *Schueuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (claim **should not be dismissed** without leave to amend **unless** it is clear that there is **no** basis for relief)." *Rodriguez v. City of New York*, 861 F. Supp. 1173, 1186 (S.D.N.Y. 1994).

4.      A complaint **should only be dismissed** under Federal Rule 12(b)(6) **after** affording **ample** opportunity for Plaintiff to state a claim upon which relief can be granted, **unless** it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561, F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496–97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court **must allow** a plaintiff the opportunity to **amend** the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds Plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

### III.      Summary of Motion to Dismiss

5.      In the Motion to Dismiss, Defendants' counsel seeks dismissal under FRCP 12(b)(1) and FRCP 12(b)(6) dismissal for any of all of seven reasons,

   A. 12(b)(1)

      1. Should abstain under Younger abstention doctrine against Barrows Defendants;

   B. 12(b)(6)

      1. Plaintiff's claims are barred by attorney immunity against Barrows Defendants;

      2. Plaintiff has not sufficiently pleaded a RICO claim "continuity" against Barrows Defendants;

      3. Plaintiff has not sufficiently pleaded a RICO claim "18 U.S.C. § 1962(a)" against Barrows Defendants;

      4. Plaintiff has not sufficiently pleaded a RICO claim "18 U.S.C. § 1962(c)" against Barrows Defendants;

      5. Plaintiff has not sufficiently pleaded a RICO claim "18 U.S.C. § 1962(d)" against Barrows;

      6. Plaintiff has not sufficiently pleaded antitrust claim against Barrows;

      7. Plaintiff has not sufficiently pleaded constitutional claim against Barrows;

      8. Plaintiff has not sufficiently pleaded entitlement to injunctive relief.

6.      Plaintiff will rebut Defendants' argument in following order:

   A. General arguments

   B. Abstention

      1. Younger abstention doctrine;

C. Failed to state a claim

1. Attorney immunity;

2. RICO;

3. Antitrust;

4. 1983;

5. Injunctive relief.

## IV.   General Arguments and Authorities about Allegations and Congress' RICO Intention

7.      Plaintiff is confronting numerous parties that employ their monopolistic legal expertise to mischaracterizing this case. Plaintiff will elucidate all the allegations in this case through a straightforward criminal scheme that every Texan can comprehend.

8.      **Timing** is a crucial factor in determining an act's legitimate status. Certain commercial acts, which may appear legal at one point in time, could be deemed entirely illegal if they had occurred six months earlier. **Interlocutory** QDRO is unwarranted under existing Texas statue.

9.      Plaintiff will use a similar mock up example to explain what Plaintiff's allegations are about.

- Assuming Federal laws prohibit the sale of alcohol to individuals under the age of 21 and define such sales as one of the RICO predicate offenses.
- In the State of Texas, there are retail store chains named Walart Enterprise that have the exclusive right to sell alcohol. They formed a separate internal entity called the Alcohol Committee of Texas, which possesses the exclusive authority to regulate the statewide sale of alcohol.
- The Alcohol Committee of Texas operates on the revenue from alcohol sales licenses collected by Walart enterprise. Walart enterprise sells annual license to its stores.
- Plaintiff discovered that his child, who was only 15 years old, went to a Tarrant County Southlake Walart shop accompanied by the child's guardian to purchase alcohol. The Tarrant County Southlake Walart shop informed the minor that it was legal to buy alcohol at the age of 15.
- The child questioned this, and the guardian affirmed that it was legal. The child proceeded to purchase and consumed the alcohol.
- Plaintiff filed a complaint with the Alcohol Committee, and the staff members of this committee attempted to cover up this RICO crime by claiming everything was legal.
- Plaintiff submitted a criminal complaint to the Tarrant County District Attorney's office. However, the District Attorney sought to conceal this RICO crime, and it was discovered that the DA is also a licensed Walart enterprise store.
- Plaintiff has evidences that the retail stores under Walart enterprise had been selling alcohol to underage children for decades and continue to do so as regular business.
- It is obvious in this example, the child is under **systematic victimization** of selling alcohol to underage (RICO predicate act), **acts as a regular way** of conducting their

business, which will **continue indefinitely**. The child is not the only victim, there are
other victims from prior predicate acts since decades ago, if old receipts demonstrated.

10.     SCOTIS has made it clear, "RICO takes aim at "racketeering activity," which it defines
as **any act** "**chargeable**" under several generically described state criminal laws, **any act "indictable"**
under numerous specific federal criminal provisions, including mail and wire fraud," *Sedima, S.P.R.L.
v. Imrex Co.*, 473 U.S. 479, 481 (1985).

11.     SCOTIS also held, "**Nor** is there any requirement that in order to maintain a private
action under § 1964(c) the plaintiff **must** establish a "racketeering injury," **not** merely **an injury**
resulting from the predicate **acts** themselves. A reading of the statute belies any "racketeering injury"
requirement. If the defendant engages in a pattern of racketeering activity in a manner forbidden by §
1962, and the racketeering activities injure the plaintiff in his business or property, **the plaintiff has a
claim under § 1964(c)**. There is **no room** in the statutory language for an additional, amorphous
"racketeering injury" requirement." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 480 (1985).

12.     "RICO was an **aggressive** initiative to supplement old remedies and develop **new**
methods for fighting crime." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985). "We
**nonetheless recognize** that, in its **private** civil version, RICO is evolving into something quite
different from the original conception of its enactors." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479,
500 (1985). "The "extraordinary" uses to which civil RICO has been put appear to be primarily the
result of the **breadth of the predicate offenses**, in particular the **inclusion of wire, mail**, and
securities fraud." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 500 (1985).

13.     "Instead of being used against mobsters and organized criminals, it has become a tool for
**everyday fraud cases** brought against "**respected and legitimate `enterprises.'**" Ibid. Yet Congress
**wanted to reach both** "**legitimate**" and "illegitimate" enterprises. United States v. Turkette, supra.
The former enjoy **neither an inherent incapacity** for criminal activity **nor immunity** from its
**consequences**. …"[T]he fact that RICO has been applied in situations not expressly anticipated by
Congress does not demonstrate ambiguity. It demonstrates **breadth**." Haroco, Inc. v. American
National Bank Trust Co. of Chicago, supra, at 398." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499
(1985). "RICO is to be **read broadly**. This is the lesson not only of Congress' self-consciously
expansive language and overall approach, see United States v. Turkette, 452 U.S. 576, 586-587
(1981), but also of its express admonition that RICO is to "be **liberally construed** to **effectuate its
remedial purposes**," Pub.L. 91-452, § 904(a), 84 Stat. 947. The statute's "**remedial purposes**" are
**nowhere more evident** than in the provision of a private action for those injured by racketeering

activity. See also n. 10, supra. Far from effectuating these purposes, the **narrow readings** offered by the dissenters and the court below **would in effect eliminate § 1964(c)** from the statute." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985).

14.     "RICO provides for **drastic** remedies" H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 233 (1989). Congress's intention is very clear, **a broad and drastic remedial purpose** defined in **§ 1964(c)** lead to civil actions. "Whether the predicates proved establish a threat of continued racketeering activity **depends on the specific facts of each case**." *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). Plaintiff argues that a Motion to Dismiss under Rule 12(b)(6) failed to thoroughly analyze specific facts of this case would be very disfavored and rare, which against Congress' intention.

15.     "Alternatively, a threat of continuity of racketeering activity **might be established at trial** by showing that the alleged bribes were a regular way of conducting Northwestern Bell's ongoing business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise, the MPUC." *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 250 (1989). Plaintiff has claimed that mail fraud, wire fraud and 18 U.S.C. § 664 occurred with some frequency over at least several decades period which is sufficient to satisfy the close-end continuity requirement. Alternatively, a threat of continuity of racketeering activity might be established **at trial** by showing that the alleged acts were a regular way of conducting Barrows defendants ongoing business, or a regular way of conducting or participating in the conduct of the alleged and ongoing RICO enterprise, the Barrows Firm. Plaintiff is entitled to have a discovery to present evidences.

16.     "Section 1961(5) does indicate that Congress envisioned circumstances in which no more than two predicates **would be necessary** to establish a pattern of racketeering — **otherwise** it would have drawn a **narrower boundary** to RICO liability," *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237 (1989).  "As this Court stressed in Sedima, in rejecting a **pinched construction** of RICO's provision for a private civil action, adopted by a **lower court**" *H. J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 249 (1989).  "Congress' decision not explicitly to limit RICO's broad terms **strongly implies** that Congress had in mind **no such narrow and fixed idea** of what constitutes a pattern as that suggested by amici here." *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 245 (1989).

17.     Time and again, the Supreme Court of the United States (SCOTUS) has reversed numerous decisions by lower courts that attempted to **narrowly construe** or **limit the provisions** of RICO for **private civil actions**. It is clear that Congress wanted RICO act be "a tool for everyday

fraud cases brought against "**respected and legitimate `enterprises**.'"" *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). Plaintiff's "everyday fraud cases" allegations used RICO as a tool against "**respected and legitimate 'enterprises**.'"(Texas family courts and Texas family law firms, including but not limited the Barrows Firm, State Bar of Texas and Tarrant County family courts).

18.     Plaintiff did not author the RICO Act; Congress did. It is time to demonstrate to the people of Texas what the RICO law is, rather than what Texas family judges/lawyers or Tarrant County DA office believe it should be.

## V.     Specific Arguments and Authorities

19.

### A.   Younger Abstention Doctrine
#### 1.    Lacks subject matter jurisdiction against Barrows Defendants;

20.     Defendants' counsel argued that "*The Younger abstention doctrine instructs federal courts to refrain from considering requests for injunctive or declaratory relief when doing so would result in the interference with certain, select state proceedings*." This statement is factually false, as none of Defendants are currently playing any role in Plaintiff's isolated state court proceedings. No matter what relief this Court grants, it will not alter the course of Plaintiff's isolated state court proceedings. Furthermore, Defendants' counsels failed to specify which relief would "result in the **interference** with" which "certain, select state proceedings". It left Plaintiff no opportunity to rebut argument in their response. Defendants' counsel missed arguing other reliefs as well.

21.     Defendants' counsel argued that "The doctrine applies only to three categories of state proceedings: (1) … (2) … (3) **pending** civil proceedings involving certain orders **uniquely** in furtherance of the state courts' ability to perform their judicial functions. *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588, 591 (2013))." (1) and  (2) apply to criminal case only.

22.     It is ironic that Defendants' counsel cited *Sprint Communications, Inc. v. Jacobs et al.* The **true** story of this Sprint case was, U.S. District Court for the Southern District of Iowa **abstained** from deciding Sprint's case due to the pending state court proceeding, and the Court of Appeals for the Eighth Circuit **affirmed** the district court's decision to abstain. However, the Supreme Court **reversed**, concluding that "We reverse the judgment of the Court of Appeals. In the main, federal courts are **obliged** to decide cases **within** the scope of federal jurisdiction. Abstention **is not** in order simply because a pending state-court proceeding involves the **same subject matter**. New Orleans

Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) ( NOPSI) ("[T]here is **no** doctrine that . . . pendency of state judicial proceedings **excludes** the federal courts.")." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013).

23.     Plaintiff has never raised issues of child support or child custody in this case. "federal court may **issue an injunction** if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim;" *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Plaintiff argues that the Texas family court never acquired any subject matter jurisdiction in this case because there was no such claim in the pending family court civil proceedings.

24.     The case *Stewart v. Wells*, No. 4:19-CV-00598-P-BP, 2020 WL 3146866 and other cases cited by Defendants' counsel, in ECF No 75, ¶12, are in fact related to either child support or child custody subject matters, which do not apply to this case. It is interesting that when Defendants' counsel stated that "Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) (dismissing plaintiff's RICO claims related to his ongoing divorce proceeding and observing that **"[s]tate courts have concurrent jurisdiction to hear RICO claims**")," in ECF No 75, ¶12, counsel **intentionally** concealed a **critical** context from the *Peterson v. Peterson* citation.

25.     The full context of citation from *Peterson v. Peterson,* Civil Action No. 4:18-CV-4837, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020) is "(quoting Pennzoil, 481 U.S. at 15). State courts have concurrent jurisdiction to hear RICO claims, Tafflin v. Levitt, 493 U.S. 455, 467 (1990),17 and Plaintiff *has made* allegations in state court* almost **identical** to the *underlying facts in this case*." In that *Peterson v. Peterson,* Civil Action No. 4:18-CV-4837 case, Peterson sought remedy about divorce and property disputes arising from a divorce decree. That property was a Texas property and Peterson made allegations in State Court first, **then** went to Federal Court, which triggered conflicting judgement. In this case, Plaintiff never sought remedy in state court for **identical** allegations, and Plaintiff's injury **originated** from an out-of-state employee fund account under **exclusive** ERISA jurisdiction. Contrary to a property dispute among family members, Plaintiff's property was stolen through a joint criminal conspiracy by external **parties** which **is not the party** of state proceedings.

26.     Plaintiff argues that the *Younger* does not apply to this RICO/Antitrust/ERISA/1983 case. Plaintiff's soon-to-be ex-spouse is not a party in this case. Plaintiff is not seeking child support, child custody, or the division of marital assets in this case. Additionally, Plaintiff's state family court case is still ongoing without any indication of interference. Plaintiff has constitutional right to seek various civil remedies in Federal and State court at same time. *Younger* never says citizen can **only** have **one**

civil case ongoing at same time. *Younger* is used to address federal and state court jurisdiction conflict situation over **same subject matter** in **certain** circumstances, not **all**. *Younger* carries no intention restricting people to seek remedies from Federal court while they have isolated cases in the State court.

27.      Defendants' counsel only referred to the name "Younger doctrine" in his argument, without performing full analysis. It left Plaintiff no opportunity to rebut analysis in his response. Therefore, Defendants' argument is insufficient and ineffective.

   **B.  Failed to state a claim**

      **1.  Claims against Barrows Defendants are barred by attorney immunity;**

28.      Barrows Defendants' counsel argued that **the Barrows Firm** also has **attorney immunity** is a clear violation of FRCP rule 11(b)(2), because this defense is not warranted by any existing law. **No attorney immunity for a company**. Keeping competent and diligent representation is a requirement defined in rule 1.01 of Texas Disciplinary rules of professional conduct.

29.      Attorney immunity is qualified immunity in Federal case. Fifth circuit has upheld that, "The mere fact that an attorney was representing a client at the time of **alleged fraudulent** activity **is not enough** to warrant immunity. See id. at *5 ("A lawyer ... **cannot shield** his [or her] **own willful and premeditated fraudulent actions** from liability simply on the ground that [the lawyer] is an agent of the client.") (quoting Alpert v. Crain, Caton & James, P.C. , 178 S.W.3d 398, 406 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) )." *Kelly v. Nichamoff, 868 F.3d 371*, 375 (5th Cir. 2017).

30.      Defendants' counsel argued that "Attorneys have "true immunity from suit" against claims of non-clients for the attorney's actions taken in connection with representing a client in litigation". If the Defendants' counsel's argument holds, claiming that altering the context of a rendition has true immunity, then, following a criminal trial where the judge imposes a 6-month jail sentence agreed upon by both parties without appeal, a prosecutor or any attorney could subsequently alter the context using an underwriting opportunity, changing the 6-month jail sentence to a death penalty, thereby administering injustice with his/her own hands. The Plaintiff argues that this Court should focus on this kind of conduct (altering the context of a consented rendition), not the nature of the conduct's alleged wrongfulness (a $25,000 fraud), to determine whether what Barrows did constitute an aggravated crime, fundamentally harming the impartiality of the judicial system.

31.      Plaintiff argues that the intention of "attorney immunity" was not to evade accountability for collusion to alter the context of a consented rendition, which is not part of the litigation. Moreover, Barrows defendants' fraudulent activities included obtaining fee from the service of another criminal

litigation when Plaintiff was not the opposing party. Defendants' counsel **did not argue** about alleged fraudulent activities related to the **criminal case**. Motion to Dismiss cannot be granted if Barrows Defendants failed to argue all allegations under its facts with possible theory. Barrows Defendants' counsel already missed one.

32.        ""Criminal conduct can negate attorney immunity." Gaia Envtl., Inc. v. Galbraith , 451 S.W.3d 398, 404 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "[T]heft of goods or services **on a client's behalf**" is an example the Supreme Court of Texas provided of attorney behavior **undoubtedly not immunized**. Youngkin , 546 S.W.3d at 682-83." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 506 (5th Cir. 2019).  On August 5th, 2022, Barrows wrote email to William Albert Pigg, copied YBarra saying, "In order for us to obtain our attorney's fee, we must say the order is for spousal support…," and "there is no way around it." ECF No. 60, PageID 1172. Plaintiff argues that "say the order is for spousal support", and "for us to obtain our attorney's fee" is "theft of goods on a client's behalf". The fees were sent to the Firm, then YBarra and Barrows split those fees. "We conclude that criminal conduct does not automatically negate immunity, but in the **usual** case it will be **outside** the scope of representation." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019).

33.        "As an example of the doctrine at work, the Supreme Court of Texas cited "assaulting opposing counsel during trial" — a presumably criminal action — as an example of unimmunized conduct. Id. at 683 ; see also TEX. PENAL CODE ANN . § 22.01 (West 2017). The court held such behavior to fall outside the protections of immunity, not because it could be criminal, but "because it **does not** involve the provision of legal services and would thus fall outside the scope of client representation." Cantey Hanger , 467 S.W.3d at 482." *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 (5th Cir. 2019). Plaintiff argues that Plaintiff was not even a party in the criminal case; it was a government entity vs. Barrows' client. Barrows did not provide criminal legal services in criminal court for the defense in that criminal case, and there is no client interest that Barrows could advocate against Plaintiff in the family court. Plaintiff argues that the unlawful theft of Plaintiff's employee pension fund for the lawyer's financial interest incurred in service of criminal case "fall outside the scope of client representation" of family court case.

34.        "Summarizing our jurisprudence, attorney immunity protects an attorney against a non-client's claim when the claim is based on conduct that (1) constitutes the provision of "legal" services involving the **unique office, professional skill, training, and authority of an attorney and** (2) the attorney engages in to fulfill the attorney's duties in representing the client within an **adversarial**

context in which **the client** and **the non-client** do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable. See id. at 52 (holding immunity **did not** apply because the conduct had "**little to do with** 'the office, professional training, skill, and authority of an attorney' " and **was not** "part of the discharge" of a "lawyer's duties in representing his or her client" (quoting Cantey Hanger , 467 S.W.3d at 481 )); … Whether the defense applies depends on whether the claim is based on this "kind" of conduct, not on the nature of the conduct's alleged wrongfulness. Bethel , 595 S.W.3d at 657 ; Youngkin , 546 S.W.3d at 681." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 78 (Tex. 2021). Plaintiff argues that Barrows committed aggravated perjury and her role involved violations of federal crimes, including but not limited to *18 U.S.C. § 1341, 1343 and 664,* had "little to do with the office, professional training, **skill**, and **authority** of an attorney." Plaintiff further argues that RICO acts involving **unlawfully abstracting money from Plaintiff's pension account for collecting attorney fees and diverting it to the lawyer's own pocket** was outside the scope of an adversarial context between her client and non-client. Barrows' client was used as a platform. Barrows did not inform her client that the **pension account** was preserved for child and spousal support only, per Federal ERISA act. Barrows did not inform her client that interlocutory order is not permitted by the Texas Family Code. On April 16, 2022, Ybarra, Barrows, and Pigg betrayed their clients when DeAngelis awarded attorney fees to both sides. None of those who possess an attorney's license objected to that unlawful order. None of them informed their clients that Barrows fabricated an order, committed fraud upon the court in April and May, 2022.

35.     "Because not every situation is clearly defined as "adversarial" or "nonadversarial," the characterization of the inter-party relationship should be guided, at least in part, by "**the extent** to which the interests of the client and the third party are **consistent** with each other." See Feinman, 31 Tort Ins. L.J. at 750." *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999). At the hearing on April 13, 2023, Barrows' client and the non-client shared a non-adversarial relationship after rendering the judgement in open court. Both parties had **signed** and consented to the associated judge's report, which should not be altered against the will of either party. It was Barrows and Ybarra's **later** decision to change the context during reduction to writing.

36.     On the signed associate judge's report on April 13th, 2022, DeAngelis ordered that **Plaintiff** obligates to **pay the fee** for drafting interlocutory QDRO, but she **did not** order which party has to draft interlocutory QDRO, the context on the **signed** associated judge's report indicates that **either** party's counsel could draft the interlocutory QDRO. Few weeks later, Plaintiff asked Pigg why he did not draft, Pigg replied that if he did not draft, Fuyan's counsel could have picked up the work, it

is "**nonadversarial**". The drafting QDRO is purely **ministerial act** does not need to exercise any discretion. The drafting task is neither **'unique'** to Fuyan's party nor to Plaintiff's party, nor does it require any further adversarial context in which Barrows' client (Fuyan) and non-client(Plaintiff) do not share the same interests, because **either** party's counsel can do this underwriting task. When Fuyan's counsel Barrows and Ybarra altered the context, changed $50000 to $25000 and removed the name of Pigg, that altering is an adversarial act against Plaintiff's 401K on behalf of ONLY Barrows and Ybarra's interest. Therefore, the attorney immunity does not apply.

37.       "Attorney immunity exists to **promote** such "**loyal**, **faithful**, and **aggressive** representation" by alleviating in the mind of the attorney any fear that he or she may be sued by or held liable to a non-client for **providing** such **zealous** representation." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 79 (Tex. 2021). Barrows and Ybarra **billed** Fuyan for drafting fees without Fuyan's knowledge, despite Fuyan and Plaintiff having signed and consented to the order which contained the context of Plaintiff agreeing to pay this fee. Later, Ybarra, Barrows Defendants, in an apparent irrational state, **billed** Fuyan for drafting an **unlawful** Motion for Clarification (**outside** the permissible time frame under the Texas Rules of Civil Procedure), blatantly exploiting their client's lack of awareness for their own financial gain. Knowing that Plaintiff's English proficiency was superior, Barrows and Ybarra, in conspiracy with Pigg, covertly conducted the do-not-bill-him act to evade detection of their criminal acts, under the expense of Fuyan. Thus, when Barrows and Ybarra fraudulently drafted the interlocutory QDRO and subsequently charged their own client, contravening the associate judge's order, there was no elements of "loyal" "faithful" "aggressive" and "zealous" representation. Plaintiff argues attorney immunity should not exist to promote disloyal, unfaithful and fraudulent activities that betray their clients.

38.       ""[A]n attorney seeking dismissal based on attorney immunity bears the burden of establishing entitlement to the defense." "To meet this burden, the attorney **must** 'conclusively establish that [the] alleged conduct was within the scope of [the attorney's] legal representation of [the] client.' "" *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019). "Moreover, we have explicitly found that attorney immunity is not a jurisdictional issue and, thus, **not a jurisdictional bar to suit**. See Hunter v. Marshall , No. 14-17-00839-CV, 2020 WL 103706, at *10 (Tex. App.—Houston [14th Dist.] Jan. 9, 2020, no pet.) (mem. op.). Our sister court also agrees, stating that "[a]n attorney has **qualified immunity** from civil liability, with respect to non-clients," and "the attorney immunity defense is an **affirmative defense;** it is not a jurisdictional issue." Diogu v. Aporn, No. 01-17-00392-CV, 2018 WL 3233596, at *5 (Tex. App.—Houston [1st Dist.] July 3,

2018, no pet.) (mem. op.)." *NFTD, LLC v. Haynes & Boone LLP*, 652 S.W.3d 546, 557 (Tex. App. 2022). Plaintiff argues that Defendants' counsel **only** asserted a jurisdictional bar, never raised any evidence to support affirmative defense, therefore, this argument is insufficient.

39.     Plaintiff argues that Barrows Defendants' counsel never conclusively established any argument relating to unlawfully abstracting money to collect legal service fee in Fuyan's criminal case. There was no conduct Barrows could have engaged Plaintiff in the family court (April 2023) for discharging duties to criminal case client (Jan 2023). Defendants' counsel failed to complete analyze that whether Barrows' alleged criminal conduct that "(1) constitutes the provision of "legal" services involving the unique office, professional skill, training, and authority of an attorney **and** (2) the attorney engages in to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the non-client do not share the same interests and therefore the non-client's reliance on the attorney's conduct is not justifiable." Defendants' counsel failed to meet the burden of establishing entitlement to the defense. It left Plaintiff no opportunity to rebut argument. Therefore, Defendants' argument is insufficient and ineffective.

### 2. Has not sufficiently pleaded "continuity" as is required to support each of his RICO claims against Barrows Defendants;

40.     Defendants' counsel further argued that Plaintiff has not sufficiently pleaded "continuity", *18 U.S.C. § 1962(a)*, *18 U.S.C. § 1962(c)* and *18 U.S.C. § 1962(d)* against Barrows Defendants.

41.     Defendants' counsel introduced terms such as "single transaction", "one basic transaction", "one victim", "back-and-forth email" that are not present in the language of Congress' RICO statute. These terms originate exclusively from the Fifth Circuit and have not been employed by the Supreme Court.

42.     Plaintiff has presented arguments in section IV "General Arguments…Congress's Intention" of this document. SCOTUS has upheld several rulings based on Congress' intention, RICO is to "be liberally construed to **effectuate its remedial purposes**", "two predicates **would be necessary**", no "**narrower boundary**", no "**pinched construction** of RICO's provision for a private civil action, adopted by a **lower court**",  "decision not explicitly to limit RICO's broad terms", "**no such narrow and fixed idea** of what constitutes a pattern", "**narrow readings would in effect eliminate § 1964(c)**", "**no room** in the statutory language for an additional, amorphous …

requirement" Most importantly, SCOTUS stated, "**the plaintiff has a claim under § 1964(c)** "to maintain a private action" with "**an** injury resulting from the predicate **acts** themselves."

43.     Plaintiff had an injury, resulting from the predicate acts (mail fraud, wire fraud and *18 U.S.C. § 664*, it is sufficient for Plaintiff to have a claim under § 1964(c) to maintain a private action. There is no room for an additional, amorphous "victim" or "transaction" requirement.

44.     It is **all** Defendants' **joint participation** of racketeering activities constituted "continuity", both closed-ended continuity and open-ended continuity. Pigg's withdrawal for covering up, his false statement made to the law enforcement when Plaintiff filed criminal complaint, the concealment acts by the Chief Disciplinary Office's counsels, and the Tarrant County District Attorney Office's refusal to investigate for continuous cover up, along with **prior court orders** involving other alleged **prior racketeering** against **prior victims**—some of which was presented in ECF No. 60, Exhibit 9—collectively prove both closed-ended continuity and open-ended continuity. Members of the State Bar of Texas have not taken any action to stop these alleged unlawful RICO acts, **neither ten years ago nor now**. This constitutes a societal threat of continuing racketeering activity against the people of Texas, who may not be aware of this RICO crime.

45.     When Barrows' counsels argued that "[c]ontinuity cannot be established by multiple acts of fraud that are part of a single transaction.", they forgot to mention that these cited cases were multiple acts of alleged mails or emails. In this case, Plaintiff asserted that there are multiple acts of alleged mails or emails from/to the court, multiple acts of alleged mails or emails from/to out of the state pension fund administrator and acts of *18 U.S.C. § 664*, a decade long, statewide **racketeering** against **family court victims**. Plaintiff presented evidence in ECF No. 60, Exhibit 9 showed there was **prior victim** under the same offense of *18 U.S.C. § 664*, back to 9 years ago. Plaintiff has alleged that he is not the only victim and that he will not be the last. Further, Plaintiff argues that the alleged **systematic victimization** predicate acts have persisted for more than a decade among Texas family court attorneys, including, but not limited to, the Barrows Defendants.

46.     "*Abraham v. Singh*, 480 F.3d 351, 356 (**5th Cir. 2007**) (**open-ended continuity sufficiently alleged** when viewing a scheme where "there is no reason to suppose that this systematic victimization . . . **would not have continued indefinitely had the Plaintiffs not filed" their lawsuit**); *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 370 (E.D.N.Y. 2012) (**collecting cases** demonstrating that "a RICO plaintiff relying on **open-ended continuity is not required** to allege a currently-existing threat that the pattern of racketeering activity will continue"). **This approach**

**makes sense**. RICO targets "the exploitation and appropriation of legitimate businesses by corrupt individuals." *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000) (Goldin I) (quotation omitted). **Without focusing on the threat posed by the predicate acts at the time they were committed**, simply dissolving the RICO enterprise after relatively short periods of activity could **too easily avoid the statute's reach**." *Norfolk S. Ry. Co. v. Boatright R.R. Prods., Inc.*, Civil Action Number 2:17-cv-01787-AKK, 22 n.4 (N.D. Ala. May. 21, 2018).

47.    "*Allwaste, Inc. v. Hecht* , 65 F.3d 1523, 1530 (9th Cir. 1995) (noting that the "[d]efendant[s'] willingness to participate in the kickback scheme and their affirmative misrepresentations ... demonstrate[d] that if they **had not been fortuitously interrupted by termination**, **the predicate acts could have recurred indefinitely**"); *United States v. Alexander* , 888 F.2d 777, 778 (11th Cir. 1989) (finding that, where a defendant had "extorted, or conspired to extort, money each year that he held office from 1977 to 1984," there was a "**sufficient likelihood** that[,] had [he] **continued** as a board member, he **would have also continued** these sorts of activities"); Molinos Valle del Cibao, C. por A. v. Lama , 07-23066-CIV, 2008 WL 11333583, at *3 (S.D. Fla. Oct. 17, 2008) (Simonton, Mag. J.) (finding some support for a RICO claim where the facts showed defendants were committing fraudulent "**acts as a regular way** of conducting their business and, if that activity **had not been discontinued** as a result of [the defendants'] decision to flee the Dominican Republic to avoid their creditors, it **would have continued indefinitely**"), rep. and recommendation adopted, 07-23066-CIV, 2008 WL 11333585 (S.D. Fla. Oct. 31, 2008) (Ungaro, J.)." *MasTec Renewables P.R. LLC v. Mammoth Energy Servs.*, 494 F. Supp. 3d 1233, 1241-42 (S.D. Fla. 2020).

48.    All Defendants, including Barrows, have been committing alleged predicate acts as a regular way of conducting legal service since decades ago and with **no sign of termination or interruption** even **after** Plaintiff filing **grievance**, **criminal complaint** and **this suit**. Barrows has engaged in multiple distinct schemes of mail and wire fraud, all characterized by a common practice of obtaining fees through fraudulent methods—a modus operandi suggesting ongoing criminal behavior as regular way of operating the Firm.

49.    Multiple courts had upheld that mail and wire fraud could have continued if the pool of alleged predicate acts victim is not exhausted, as seen in *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463 (2d Cir. 1995), or if the RICO person has repeatedly attempted to continue predicate acts. as seen in *Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994). Plaintiff argues all Barrows' predicate acts could have continued towards her future clients/victims under the specific circumstances that she has gotten endorsement from the State Bar of Texas, and Tarrant County government has set

forth a policy to no prosecute Barrows' alleged predicate acts. Barrows' regular way of business is "in order for us to obtain attorney fees…we must (commit fraud)." If unlawfully extracting funds from a 401(k) to obtain attorney fees has been decriminalized under a policy of Tarrant County, this Court should recognize the threat that such alleged predicate acts could continue indefinitely into the future.

50.     "**Whether** the predicates proved establish a threat of continued racketeering activity **depends on the specific facts of each case**." *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989). "An open-ended period of conduct involves "a threat of continued racketeering activity" and may be established by a showing that there is a "**specific threat of repetition extending indefinitely into the future**," **or** "that the predicates are a **regular way of conducting [a] defendant's ongoing legitimate business**."" *Albert Malvino v. Paul Delluniversita*, 840 F.3d 223 (5th Cir. 2016). Plaintiff argues that the District Attorney's policy of "not opening or investigating crimes that occur within family court," combined with the State Bar's refusal to discipline, effectively afforded the Barrows Defendants unfettered freedom to indefinitely perpetuate all alleged predicate acts. These specific facts are pivotal and **must** be taken into account by this Court. Given that no Texas State authority has attempted to prosecute or discipline those involved, **each day serves as further evidence of "'continuity."**

51.     It is obviously when an officer of the court commits acts of moral turpitude and continues to hold this privileged position, it presents a "**specific threat** of repetition extending indefinitely into the future" to **society** as a whole. Plaintiff argues that when the District Attorney declined to prosecute and the State Bar dismissed the grievance, thereby endorsing these acts, and with Barrows still serving as an officer of the court, a racket has been established in Tarrant County that poses a **societal threat**. These **specific facts** of this case must be taken into consideration by this Court.

52.     Alternatively and additionally, the context of the litigation in the case of *In re Burzynski, 989 F.2d 733*, 743–44 (5th Cir. 1993), is distinct. In *Burzynski* I, "**All of the alleged predicate acts** took place during the course of Burzynski I: Aetna denied coverage to its own insureds; Hinshaw and Aetna filed the **allegedly fraudulent pleadings**, viz., the ex parte motions and the RICO counterclaim; they sent the Aetna/Hinshaw letter under the guise of discovery request. It is also clear that **Monaco formed Emprise after** the Burzynski I lawsuit began, and the defendants gave the **allegedly false information** to federal investigators "to obtain leverage in its **civil litigation**." **All of the alleged predicate acts** took place as **part of the Burzynski I litigation, which has ended.**" *In re Burzynski*, *989 F.2d 733*, 743 (5th Cir. 1993). The allegations by Plaintiff differ significantly. Plaintiff alleges that Barrows' predicate acts are **part** of a decade-long, statewide criminal scheme under *18 U.S.C. §*

*664* targeting family court litigants—not a single litigant. When Plaintiff filed the complaint in this Court, the family court litigation was still active, indicating that Plaintiff's 401K remained at risk of depletion through additional interlocutory orders. Furthermore, there is no prohibition against Barrows representing Plaintiff's soon-to-be-ex spouse in future proceedings.

53.     Defendants' counsel failed to argue the possible theory of "specific threat of repetition extending indefinitely into the future." The Motion to Dismiss thus fails to meet Rule 12(b)(6) standards, which require a thorough address of "any relief under any facts" and encompass "any possible theory."

### 3.   Has not stated a civil RICO claim "18 U.S.C. § 1962(a)";

54.     Defendants' counsel argued that Plaintiff failed to plead *18 U.S.C. § 1962*(a) against Barrows, mainly because Plaintiff failed to plead "any injury must flow from the use or investment of racketeering income.", citing *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir. 2002).

55.     First of all, fifth circuit does recognize "**form of legal costs**" as injury, "we believe that St. Paul has sufficiently distinguished and established a genuine issue of material fact as to the existence of a prior pattern of racketeering activity, which may have produced income that was invested into a RICO enterprise, **causing injuries** to St. Paul in the **form of legal costs.**" *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000). In ECF No. 60, ¶179, Plaintiff did claim a loss of legal costs after Pigg failed to compel Plaintiff to sign an unsolicited settlement offer sent by Barrows. Compelling Plaintiff to settle was a conspiratorial act intended to conclude the case when the Defendants realized that Plaintiff intended to file a criminal complaint soon. Pigg, acting as a co-conspirator, withdrew within 24 hours after Plaintiff declined the draft; he did not even present any alternative settlement proposal, which is highly unusual at the divorce settlement stage. When Pigg met Plaintiff for the first time in the office to discuss the settlement, the motion to withdraw was already printed and present in Pigg's suitcase. Plaintiff incurred legal costs on Pigg without receiving any benefits. The Barrows Firm has used racketeering income to operate its office, providing internet, computer, electricity, and payroll to engage in offering settlement in attempts to conceal prior RICO activities. When it failed, co-conspirator Pigg withdrew, caused the legal cost injury.

56.     *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 444 (5th Cir. 2000). also cited *Newmyer v. Philatelic Leasing, Ltd.*, 888 F.2d 385 (6th Cir. 1989), which says, "See Vemco, 23 F.3d at 131 (distinguishing Newmyer v. Philatelic Leasing, Ltd. , 888 F.2d 385 (6th Cir.1989) ). In

Newmyer, the Sixth Circuit reversed dismissal of plaintiffs' § 1962(a) claim where "Newmyer plaintiffs could have been injured by the investment itself if the investment plan into which they put their money (i.e., the enterprise) was itself funded with monies from **prior racketeering** against **prior victims**" concluding that "an injury resulting from the investment of racketeering proceeds itself was **possible**." Id. (emphasis added)." *W. Boca Med. Ctr., Inc. v. AmerisourceBergen Drug Corp. (In re Nat'l Prescription Opiate Litig.)*, 452 F. Supp. 3d 745, 773 n.33 (N.D. Ohio 2020).

57.	Plaintiff has also alleged that there were prior racketeering activities against previous victims. While Plaintiff is not the first victim of these RICO enterprises involving the Barrows Firm and the State Bar of Texas, due to very high legal knowledge barriers, Plaintiff is the first one to draft a coherent legal document to present the crime to this Court. Even Plaintiff himself did not acquire such a legal knowledge until a few months ago.

### 4.	Has not stated a civil RICO claim "18 U.S.C. § 1962(c)";

58.	"Some federal courts have held an employer liable under respondeat superior for its employee's violations of section 1962(c) "when the employer is distinct from the enterprise." *Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992); see also *Petro-Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1358 (3rd Cir. 1987); *Davis v. Mutual Life Ins. Co. of New York*, 6 F.3d 367, 379-80 (6th Cir. 1993)." *Baker v. Stewart Title Trust of Phoenix*, 197 Ariz. 535, 544 (Ariz. Ct. App. 2000). Plaintiff argues that Barrows is liable under respondeat superior for its Ybarra's violations of section 1962(c).

59.	Defendants' counsel presented arguments in two parts.

60.	In the first part, they argued that 18 U.S.C. § 1027, 18 U.S.C. § 1349, 29 U.S.C. § 1056, Tex. Pen. Code § 37.03, and Tex. Pen. Code § 39.03(a)(2) do not constitute racketeering activities. However, Plaintiff did not claim these statutes were involved in racketeering activities under 1962(c).

61.	In the second part, they argued that,

> Plaintiff also relies on three statutes against Barrows that are listed as predicate acts,18 U.S.C. §§ **1341** (mail fraud), **1343** (wire fraud), and **664** (theft/embezzlement from employee benefit plan). See 18 U.S.C. § 1961(1). However, Plaintiff has not pleaded facts sufficient to show that Barrows violated **any one of these provisions**.
> As for Plaintiff's mail and wire fraud allegations, he has not pleaded these claims against Barrows with particularity as required by Federal Rule of Civil Procedure 9(b). Tele-Phonic Servs., Inc., 975 F.2d at 1139 ("At a minimum, Rule 9(b) requires allegations of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."); McPeters v. Edwards, 806 F. Supp. 2d 978, 989–90 (S.D. Tex. 2011), aff'd, 464 Fed.

Appx. 351 (5th Cir. 2012) (heightened pleading standard applies to RICO claims based on allegations of fraud, such as alleged violations of 18 U.S.C. §§ 1341, 1343).

62.        Defendants' counsel first denied that Barrows breached any of the cited statutes (*18 U.S.C. § 1343*, *1341*, *664*). Subsequently, however, the argument shifted to claim that **only** *18 U.S.C. § 1341* and *1343* necessitate a heightened pleading standard, **conspicuously leaving out** *18 U.S.C. § 664* in following paragraphs. This amounts to an implicit admission through omission, as Defendants' counsel offered no specific refutation regarding the alleged violation of *18 U.S.C. § 664*.

63.        " Rule 9(b)'s heightened pleading standard applies to RICO claims that involve allegations of fraud, but **Rule 8 notice pleading** remains the standard for **non-fraud RICO predicate offenses**. See, e.g., *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (applying Rule 9(b) to predicate acts of **wire**, **mail**, and **bank fraud**); *Dowling v. Select Portfolio Servicing, Inc.*, No. 2:03-CV-049, 2006 WL 571895, at * 9 (S.D. Ohio Mar. 7, 2006) (**declining** to apply heightened pleading standard to **RICO conspiracy** claims); *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002) (explaining the particularity requirement applies **only** to RICO acts predicated upon fraud)." *Loring v. Nelson*, No.: 3:19-cv-185, 3 (E.D. Tenn. Dec. 19, 2019).

64.        "the complaint states, "Defendants' emails and communications amongst themselves and to Justice's counsel or Justice via email or phone establishes wire fraud within the meaning of RICO." (Doc. 1 at 33 ¶ 291.) However, **nowhere else** in the complaint is there **any mention** of emails or phone calls amongst Defendants or with Justice or his counsel. Plaintiffs **cannot simply state communications exist** to establish wire fraud; the complaint must allege the **time, place, and content of the misrepresentation** upon which Plaintiffs relied. See Coffey, 2 F.3d at 161-62." *Loring v. Nelson*, No.: 3:19-cv-185, 3 (E.D. Tenn. Dec. 19, 2019). Contrary to the cited case, Plaintiff has **presented** all relevant email evidence and court orders as Exhibits to **sufficiently detail** the **time, place, and content** of the alleged fraudulent misrepresentations. Therefore, Plaintiff's allegations met the heightened pleading standard.

### 5.  Has not stated a civil RICO claim "18 U.S.C. § 1962(d)";

65.        Defendants' counsel argued that "Plaintiff's 1962(d) claims against Barrows still must be dismissed because Plaintiff has failed to plead **the existence of an agreement**". The RICO conspiracy provision **1962(d)** does not require the commission of an overt act (thus it is more comprehensive than the **general criminal conspiracy provision** in section 371). This is because a RICO conspiracy **is not** a conspiracy to commit the alleged predicate acts; rather, a RICO conspiracy offense is a conspiracy to participate in the affairs of an enterprise through a pattern of racketeering activity. Plaintiff does not

need to plead **the existence of an agreement** to commit mail fraud, wire fraud and *18 U.S.C. § 664*.
**1962(d)** says, it shall be unlawful for anyone to **conspire to** violate **1962(a) (b) (c)**.

66.     Defendants' counsel asserted that "The elements of a conspiracy to violate RICO are:
"(1) knowledge by the defendant of the essential nature of the conspiracy; (2) the defendant's
**objective manifestations** of an agreement to participate in the conduct of the affairs of an enterprise;
and (3) an overt act, which need not be a crime, in furtherance of the conspiracy." *Bonton v. Archer
Chrysler Plymouth*, *Inc.*, 889 F. Supp. 995, 1005 (S.D. Tex. 1995) (citing *United States v. Sutherland*,
656 F.2d 1181, 1187 n.4 (5th Cir.1981))." Firstly, adding three elements undefined in RICO provision
are "**pinched construction**" and "drawn a **narrower boundary** to RICO liability". *H. J. Inc.*

67.     "The indictment charged, in brief, that the three defendants "did knowingly, willfully,
and unlawfully combine, **conspire**, confederate, and agree together and with each other," from
November 1975 until the date of the indictment, to violate section **1962(c).** The **conspiracy alleged** by
the government **consisted of an agreement** to associate with and to p**articipate in the conduct of an
enterprise** that affects interstate commerce…"  *United States v. Sutherland*, 656 F.2d 1181 (5th Cir.
1981). This case essentially stated that the government indicted three defendants for violating 1962(d)
due to "combine, **conspire**, confederate, and agree" "**consisted of an agreement**".

68.     In Section II of that *United States v. Sutherland* case*, "All three defendants challenge the
**sufficiency** of the evidence to support their convictions under 18 U.S.C. § 1962(d).", Fifth Circuit said
the court needs "necessary overt act" and "The overt act **need not** itself constitute a substantive crime;
**any act, even if seemingly innocent in itself**, is sufficient to support a conspiracy conviction if taken
in **furtherance** of the conspiracy." Then Fifth Circuit concluded "**consisted of an agreement**" is
**sufficient** to support a 1962(d) conviction. It cannot be interpreted as "the existence of an agreement"
alone is "mandatory" to support 1962(d). Many factors can be considered as objective manifestations.

69.     Secondly, imposing a new rule that states "**the existence of an agreement** is a mandatory
required element of **1962(d)**" contradicts the Supreme Court's and other circuit courts' rulings.

70.     Supreme Court has held that ""[I]n proving the existence of a single RICO conspiracy,
the government **does not** need to prove that **each** conspirator agreed with **every other** conspirator,
knew of his fellow conspirators, was aware of **all** of the details of the conspiracy, or contemplated
participating in the same related crime." *United States v. Castro*,89 F.3d 1443, 1451 (11th Cir.1996).
A mere "[a]greement to participate in the conduct of the affairs of the enterprise through a pattern of
racketeering activity brings a defendant within the conspiracy **regardless of** the **unrelatedness** of the

acts of other members of the conspiracy." Gonzalez,921 F.2d at 1540." *United States v. Godwin,* 765 F.3d 1306, 1324 (11th Cir. 2014).

71.     "a person to be convicted of conspiracy so long as he "**agrees** with such other person or persons that they or **one or more of them will engage in** conduct that constitutes such crime…the actor **need not agree** `to commit' the crime…A conspirator must intend to **further** an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor. He may do so **in any number of ways short of agreeing** to undertake all of the acts necessary for the crime's completion. One can be a conspirator by agreeing to facilitate **only some** of the acts leading to the substantive offense. It is elementary that a conspiracy may exist and be punished **whether or not** the substantive crime ensues, **for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself**. See *Callanan v. United States*, 364 U.S. 587, 594 (1961)." *Salinas v. United States*, 522 U.S. 52, 65 (1997).

72.     "If conspirators have a plan which calls for some conspirators to perpetrate the crime and *others to provide support*, *the supporters are as guilty as the perpetrators*. As Justice Holmes observed: "[P]lainly a person may conspire for the commission of a crime by a third person." *United States v. Holte*, 236 U.S. 140, 144 (1915). A person, moreover, may **be liable for conspiracy even though** he *was incapable* **of committing the** *substantive offense*." *United States v. Rabinowich*, 238 U.S. 78, 86 (1915)." *Salinas v. United States*, 522 U.S. 52, 64 (1997).

73.     "In that regard, we **emphasize** that, because drug trafficking is an "unlawful activity" with respect to money laundering and **RICO offenses** (*see 18 U.S.C. § 1956(c)(7)* ), a lawyer providing advice to an unlawful drug trafficking entity such as the Nicka Organization places himself at great personal risk. **Any lawyer** providing advice concerning ongoing unlawful activity is circumscribed in the legal advice that can permissibly be provided, lest he become a participant in the unlawful activity. That is, a lawyer representing or advising such an entity can **readily turn himself into a coconspirator — or aider and abettor — in the form of a consigliere or fixer**." *United States v. Farrell*, 921 F.3d 116, 138-39 (4th Cir. 2019). "**any statement** by a conspirator, made while he is a member of the conspiracy, that concerns the conspiracy and has some informational content is in furtherance of it. The **exchange of information** is the lifeblood of a conspiracy, as it is of any **cooperative activity**, **legal or illegal**." *U.S. v. Pallais*, 921 F.2d 684, 688 (7th Cir. 1990).

74.     Plaintiff argues that Barrows is a conspirator of the RICO conspiracy, she has committed all conspiracy acts highlighted in above referred cases in **furtherance** of her conspiracy.

**6.  Has not sufficiently pleaded an antitrust claim against Barrows;**

75.    Plaintiff alleged State Bar of Texas violated "monopolization" under § 2 of the Sherman Act. "The Supreme Court has **repeatedly held** that "[r]epeals of the antitrust laws by implication from a regulatory statute are **strongly disfavored**, and have only been found in cases of plain repugnancy between the antitrust and regulatory provisions."…The unwillingness of the courts to imply antitrust immunity is based on recognition that the "antitrust laws represent a **fundamental national economic policy**" which should not be lightly disturbed…Therefore, immunity will be implied only if necessary to permit the regulatory scheme to function, and then only to the "minimum extent necessary."" *MID-TEXAS COMMUNICATIONS v. AM. TEL. TEL*, 615 F.2d 1372 (5th Cir. 1980).

76.    "See generally Goldfarb v. **Virginia State Bar**,421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975) (**antitrust immunity should be recognized only where state law compels action taken by regulated company**)." *MID-TEXAS COMMUNICATIONS v. AM. TEL. TEL,* 615 F.2d 1372, 1382 n.8 (5th Cir. 1980).

77.    "The Supreme Court states the '**active market participants** cannot be allowed to regulate their own markets free from **antitrust accountability**.'*" Texas State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director// Ellen Jefferson, D.V.M. v. Ellen Jefferson, D.V.M.// Texas State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director*, 03-14-00774-CV (Tex. App. 2015).

78.    "Thus, nothing that the Supreme Court has written since Brooke Group dilutes the Court's consistent holdings that a monopolist will be found to violate § 2 of the Sherman Act if it engages in exclusionary or **predatory conduct** without a **valid business justification**" *Lepage's Inc. v. 3M*, 324 F.3d 141, 152 (3d Cir. 2003). Barrows and other members of the State Bar of Texas have engaged in predatory conducts as part of a conspiracy, acquiring **unwarranted marketing revenues** through unlawful acts while leveraging their monopolized legal power to conceal these actions. Plaintiff contends that the surge in attorney fees is a direct result of predatory practices, which are condemned by the Sherman Act. The objective of the conspiracy was to **gain excessive marketing revenues** through various means, including but not limited to, the underwriting of unlawful interlocutory orders, the compelling of prepaid service fees, the manipulation of service fee contracts under the guise of legal obligations by using manipulated court order methods, and operating self-regulated grievance system as a platform to furtherance the concealment. They have been successful in this endeavor.

79.     The arguments relating to "a conspiracy to monopolize" in [ECF No. 90] ¶41 was wrong, because Plaintiff did not assert "a conspiracy to monopolize". Plaintiff asserted Barrows' RICO predicate acts with its conspiracy also constitutes **predatory practices** under Antitrust.

### 7.  Has not sufficiently pleaded a constitutional claim against Barrows;

80.     When Defendants' counsel argued, "The law is clear that a private attorney who **merely** represents a client in a civil proceeding . . .does not act under the color of state law." by referring the *Dolenz v. Akin*, Civ.A. No. 3:95-CV-1605-P, 1997 WL 21388, at *3 (N.D. Tex. Jan. 14, 1997), they intentionally disregarded that *Sparks v. Duval County Ranch Co.*, 604 F.2d 983, was also cited in the same case, just a few paragraphs below.

81.     "But in addition, the Court, discussing the elements of a section 1983 conspiracy between public officials and private persons, made clear that a party who was not an official of the state could be liable for damages under section 1983 by virtue of the fact that the private person himself acts under color of state law and fulfills the state action requirement of section 1983 actions so long as he is involved in a conspiracy with a state official. **The Court declared that a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983**. "Private persons, jointly engaged with state officials in the prohibited action, are acting `under color' of law for purposes of the statute. To act `under color' of law does not require that the accused be an officer of the State. It is enough that he is a **willful participant in joint activity** with the State or its agents. . . ." …By the same reasoning, coconspirators act under color of law and can be sued for damages in a section 1983 action when they **involve a judge in their plot**, **regardless of whether** the judge can be brought to justice for his part in the scheme…**The state action requirement for a section 1983 suit is met, judicial immunity notwithstanding**." *Sparks v. Duval County Ranch Co.*, Inc., 604 F.2d 976, 982-83 (5th Cir. 1979). Lori DeAngelis was also sued under 1983, because she ordered an unlawful interlocutory order. Barrows is a willful participant in joint activity to deprive of Plaintiff's Due Process clause and Property clause under Fourteen Amendment and Tex. Const. Art. I, Sec. 13 and 19.

### 8.  Has not sufficiently pleaded entitlement to injunctive relief;

82.     Plaintiff has pleaded for multiple forms of relief, including but not limited to declaratory relief, injunctive relief, compensatory damages, punitive damages, treble damages etc. Defendants' counsel failed to mention which injunctive relief they were arguing about. Defendants' counsel focused solely on the "'**preliminary**" provision in [ECF No. 90] ¶48 while **disregarding** the

"**permanent**" provision. They even conceded in [ECF No. 90] ¶49 that monetary relief would suffice for reparable injury. However, these arguments did not comprehensively address "any relief under any facts" that includes "any possible theory", and thus did not satisfy the requirements of Rule 12(b)(6).

83.     After all, Defendants' counsel cannot seek dismissal of Plaintiff's prayer for injunctive relief, since **Rule 12 is a vehicle for contesting claims, not remedies**. This is another clear violation of FRCP rule 11(b)(2), because this defense is not warranted by any existing law.

## VI.     Conclusion

84.     This Court "**shall** have **original** jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" under *28 U.S.C. § 1331*.

85.     On **April 14, 2023**, SCOTUS held that "("Cases involving . . . **deprivations** or transfers of life, liberty, or **property** constitute a 'core' of cases that . . . **must be re-solved by Article III courts**—not executive adjudicators 'dressed up as courts' ")." *Axon Enterprise, Inc. v. Federal Trade Commission et al.*, 143 S.Ct. 890 (2023) (No. 21-86). Texas Family courts are not Article III courts. Justice Gorsuch concurred, "Today, §1331 provides that "district courts **shall** have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." **Not may have jurisdiction, but shall**. **Not some** civil actions arising under federal law, **but all**. The statute **is as clear as** statutes **get**", "Section 1331 grants district courts the power to hear … claims and **no other law takes that power away**."

86.     This Court has **exclusive** jurisdiction of civil actions under *29 U.S.C. § 1132(e)* because the essential substantive violation of Federal law arises under ERISA Act, *29 U.S.C. § 18*, and ERISA statute also supersedes **any** and **all** state laws insofar as they "relate to" any employee benefit plan under *29 U.S.C. § 1144(a).* Plaintiff argues ERISA statute supersedes any "immunity" under State common laws as they "relate to" any employee benefit plan.

87.     The Supreme Court held that "In the main, federal courts are **obliged** to decide cases **within** the scope of federal jurisdiction…. *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 373, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989) (NOPSI) ("[T]here is **no doctrine** that . . . pendency of state judicial proceedings **excludes** the federal courts.")." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). This Court is obliged to decide case **originally** arising under the **exclusive** ERISA statue, RICO, Antitrust and Fourteen Amendment.

88.    "**Every circuit in the country** that has addressed the issue has concluded that the nature of both civil and criminal RICO offenses requires **imposition of joint and several liability** because all defendants participate in the enterprise responsible for the RICO violations. See *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 775 (9th Cir. 2002) ("[h]olding RICO conspirators jointly and severally liable for the acts of their co-conspirators reflects the notion that the damage wrought by the conspiracy is not to be judged by dismembering it and viewing its **separate parts**, but only by looking at it **as a whole**"); *U.S. v. Corrado*, 227 F.3d 543, 553 (6th Cir. 2000) (finding that "joint and several liability is **not only consistent** with the statutory scheme [of RICO] but in some cases will be **necessary** to achieve the aims of the legislation" because the "entire scheme would not have succeeded without the support of [the] enterprise")." *U.S. v. Philip Morris USA Inc*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004). This court must allow this case to proceed for the **remedial purpose** within Congress's intention. This case concerns the **systematic victimization** pursuant to *18 U.S.C. § 664* in conjunction with mail and wire fraud, which **acts as a regular way** of conducting family court litigations and will **continue indefinitely** against Plaintiff and other family court litigants in Texas.

89.    Even if Barrows Defendants presented arguments are sound, which they are not, these arguments are still incomplete and partial argument from many aspects, missed arguing **all** reliefs, claims, and U.S.C. code citations. To succeed in a motion to dismiss, Barrows Defendants must meet the Rule 12(b)(6) requirements by proving that all allegations, under any possible theory, do not hold any merit, without missing a single allegation, relief or possible theory. Plaintiff argues that Defendants' Motion to Dismiss is insufficient and ineffective.

### Prayer for Relief

90.    Based on the above, Plaintiff respectfully requests for the following relief:

91.    Plaintiff prays that Defendants' Motion to Dismiss be denied as moot.

92.    If not, "Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a court **must allow** a plaintiff the opportunity to **amend** the Complaint" *Hitt*, 561 F.2d at 608–09. Alternatively, Plaintiff prays that this Court grants Plaintiff leave of court for Amendment.

Respectfully submitted,

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] /[arnold200@gmail.com]

**CERTIFICATE OF SERVICE**

On (November 13th, 2023) I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]