# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendants. | ) |

## OBJECTION TO FINDINGS, CONCLUSIONS
## AND RECOMMENDATION

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this amended objection to the FINDINDS, CONCLUSIONS and RECOMMENDATION for Motion for Sanctions to Counsel of The State Bar of Texas, Marin, Martinez and Craig, ECF No. 114, pursuant to 28 U.S.C. § 636(b)(1). For the reasons stated below, the Motion for Sanctions should not be denied.

## I. INTRODUCTION AND FACTS

1.On **July 21st, 2023**, the Plaintiff filed a complaint against The State Bar of Texas et al, defendants. ECF No. 1,

2.On **August 10th, 2023**, counsels Royce Lemoine and Amanda Kates, appeared to the court, and filed a Motion to Dismiss against the Plaintiff, ECF No. 13. Counsels Royce Lemoine and Amanda Kates represent four Defendants in this suit, the State Bar of Texas ("State Bar"), Luis Jesus Marin ("Marin"), Daniel Eulalio Martinez ("Martinez"), and Rachel Ann Craig ("Craig") (hereinafter referred to collectively as "Defendants").

3.Upon its first appearance until today, the Defendant, the State Bar of Texas, a private company, has not filed a Disclosure Statement as required by FRCP 7.1(a)(1), which states that such a filing is mandatory.

4.In the Motion to Dismiss, two counsels wrote following frivolous arguments:

- In fact, Yan's allegations indicate he either has a misunderstanding of his role as a complainant in the attorney disciplinary system, <u>or that he was intentionally attempting to use the disciplinary system (when he filed his alleged grievances) to harass Barrows and Pigg,</u> because he believes seeking relief against Barrow and Pigg in a **proper venue** will turn out to be unsuccessful.

5.On **August 15th, 2023**, Plaintiff notified Amanda Kates to withdraw frivolous statement or face Motion for Sanctions. Amanda Kates refused Plaintiff's request.

6.On **August 15th, 2023**, Plaintiff severed Counsel Amanda Kates with a Motion for Sanctions, requested them to withdraw and apply modifications to their Motion to Dismiss. Counsel Amanda Kates refused Plaintiff's request.

7.On **August 18th, 2023**, Plaintiff filed a Motion for Sanctions to Counsel of The State Bar of Texas, ECF No. 22.

8.     On **August 31st, 2023**, this Court denied Plaintiff's Motion for Sanctions against State Bar of Texas ECF No. 22, in ECF No 40.

9.     On the date of **August 31st**, 2023, **neither** Plaintiff **nor** State Bar of Texas had filed any Response or Reply regarding the Motion to Dismiss, ECF No. 22. When this Court voluntarily denied the Plaintiff's motion without any action from the opposing party, Plaintiff assumed that the denial was due to their failure to meet the 21-day "safe harbor" provision.

10.    On **September 19th, 2023**, Plaintiff re-filed a Motion for Sanctions to Counsel of The State Bar of Texas, ECF No. 63.

11.    On **December 6th, 2023**, this Court denied Plaintiff's Motion for Sanctions against State Bar of Texas ECF No. 63, in ECF No 114.

12.    In the Findings and Recommendations, this Court wrote, "*the repeated, unwarranted filling of motions for sanctions against an attorney is a serious matter, which the Court will not continue to tolerate. If Plaintiff files **any future frivolous motions for sanctions**, the undersigned will recommend appropriate sanctions against Plaintiff.*"

13.    Plaintiff objects this Findings and Recommendations.

## II. Standard of Review

14.    Rule 7.1 – Disclosure Statement
       (a) Who **must** file; Contents.
           (1) Nongovernmental Corporations. A nongovernmental corporate party or a nongovernmental corporation that seeks to intervene must file a statement that:
               (A) identifies any parent corporation and any publicly held corporation owning 10% or more of its stock; or
               (B) states that there is no such corporation.
       (b) Time to file; Supplemental filing. A party, intervenor, or proposed intervenor must:
           (1) file the disclosure statement with its **first appearance**, pleading, petition, motion, response, or other request addressed to the court; and
           (2) promptly file a supplemental statement if any required information changes.

### III. ARGUMENT AND AUTHORITIES

Pro Se has the freedom to petition against oppression

15.   It has been held that, "Regardless of when exactly the self-representation right emerged, it has deep roots in the American Founding. See Faretta, 422 U.S. at 826, 95 S.Ct. 2525 ("In the American Colonies the insistence upon a right of self-representation was, if anything, more fervent than in England."). The Founding generation maintained an abiding "appreciation of the virtues of self-reliance." Ibid. Informed by "the 'natural law' thinking that characterized the Revolution's spokesmen," the "Founders believed that self-representation was a basic right of a free people." Id. at 830 n.39, 95 S.Ct. 2525. That's primarily because the **Founders** understood "**the freedom to state one's own case**" as "**a defense against government oppression**" and "**a guarantee of individual dignity and autonomy."** No Right, No Access, supra, at 846. Thomas Paine, for example, argued in support of the 1776 Pennsylvania Declaration of Rights by explaining that people had "a natural right to plead [their] own case." Faretta, 422 U.S. at 830 n.39, 95 S.Ct. 2525 (quoting Thomas Paine on a Bill of Rights, 1777, reprinted in 1 BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 314, 316 (1971))." *Raskin v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 291 (5th Cir. 2023).

Anti-lawyerism and anti-elitism are within American Founding generation's spirits

16.   It has been held that, "Equally strong as the Founding generation's belief in the "virtues of self-reliance" was its "**distrust of lawyers**." Id. at 826, 95 S.Ct. 2525. The colonists' anti-lawyer sentiment stemmed from their experiences with the Justices of the King's Court as well as the Crown's Attorneys-and Solicitors-General—whom many colonists believed "**twist[ed] the law** to secure convictions" of "those who opposed the King's prerogatives." Ibid. (quoting CHARLES WARREN, A HISTORY OF THE AMERICAN BAR 7 (1911)); see also id. at 827, 95 S.Ct. 2525 ("[D]istrust of lawyers became an institution." (quoting DANIEL BOORSTIN, THE AMERICANS: THE COLONIAL EXPERIENCE 197 (1958))). Throughout the 17th and 18th centuries, this **understandable** anti-lawyer prejudice intensified "as 'the **lower classes** came to identify **lawyers** with the **upper class**.' " Id. at 827, 95 S.Ct.

2525 (quoting LAWRENCE FRIEDMAN, A HISTORY OF AMERICAN LAW 82 (1973)). And when the time came to draft and ratify the Constitution, such **anti-lawyerism** and **anti-elitism** reached a crescendo. Ibid. One Anti-Federalist captured the zeitgeist this way when expressing his frustration with some supporters of the Constitution: [M]any undesigning citizens may wish [the Constitution's] adoption from the best motives, but these are modest and silent, when compared to the greater number, who endeavour to suppress all attempts for investigation; these violent partizans are for having the people gulp down the gilded pill blindfolded, whole, and without any qualification whatever, these generally, of the noble order of Cincinnatus, holders of public securities, men of great wealth and expectations of public office, Bankers and Lawyers: these with their train of dependants from the Aristocratick combination—**the Lawyer in particular**, keep up an incessant declamation for its adoption, like greedy gudgeons they long to satiate their voracious stomacks with the golden bait—The numerous tribunals to be erected by the new plan of consolidated empire, will find employment for ten times their present numbers; these are the loaves and fishes for which they hunger . . . .Essay by a Federalist, BOSTON GAZETTE (Nov. 26, 1787), reprinted in 4 THE COMPLETE ANTI-FEDERALIST 117 (Herbert J. Storing ed. 1981) (emphasis added) (quotation omitted). Considering the Founding generation's self-reliance and distaste for attorneys, it is unsurprising that "the right of self-representation has been protected . . . since the beginnings of our Nation." Faretta, 422 U.S. at 812, 95 S.Ct. 2525. Indeed, many (perhaps most) colonial charters, declarations of rights, and State constitutions guaranteed self-representation. See, e.g., id. at 828 n.37, 829 n.38, 830, 95 S.Ct. 2525 n.40 (collecting examples)." *Raskin v. Dall. Indep. Sch. Dist.*, 69 F.4th 280, 291 (5th Cir. 2023).

## Abuse of Discretion and Appearance of Bias

17.     Plaintiff, is a pro se litigant without a law degree and for whom English is not a native language, faces the Office of Chief Disciplinary Counsel of the State Bar of Texas. This Office is presumed to uphold the highest ethical standards and possess extensive legal knowledge. Given these circumstances, it is understandable from the public's perspective that Plaintiff identifies lawyers with the upper class.

18.     Plaintiff has no issue with this Court adhering to the FRCP. However, when the State Bar of Texas fails to meet the prerequisites mandating that a non-governmental corporate

party disclose its corporate disclosure statement — a step necessary for a judge to determine potential conflicts of interest — it appears that this Court only upholds the FRCP against the lower class.

19. The Court, as an adversary system, resolves disputes by presenting conflicting views of fact and law to an impartial and relatively passive arbiter, who decides the outcomes. In the United States, the term "adversary system" is synonymous with the American system for administering justice—a system constitutionalized by the Framers and elaborated upon by the Supreme Court for two centuries. Thus, the adversary system represents far more than a simple model for resolving disputes. Instead, it embodies a core set of basic rights that recognize and protect the dignity of the individual in a free society.

20. Plaintiff objects to the Court having **voluntarily** denied his initial motion without any adversarial action from the opposing party, and then subsequently denying his motion again, labeling it as repetitive("**repeated**"). Plaintiff asserts that this constitutes an Abuse of Discretion and an Appearance of Bias.

### Applied the law incorrectly

21. Plaintiff objects to the Findings and Recommendations that label his motion as "**unwarranted**." There is no existing federal statute that forbids the refiling of a motion for sanctions after the expiration of the 21-day safe harbor period. Contrarily, federal courts have been allowing this type of action.

22. United States v. Sweet, No. 8:01-CV-331-T-23TGW, 2001 U.S. Dist. LEXIS 17131 (M.D. Fla. Sept. 17, 2001) (declining to sanction party for frivolous motion to quash service of process where motion had been denied before 21-day safe harbor period had expired, but sanctioning **subsequent** motion for reconsideration).

23. Plaintiff raises a question of first impression regarding FRCP Rule 11's safe harbor provision to this court: "When a pro se's first motion is denied due to the safe harbor provision, does a refiling of the motion after the safe harbor period constitute being '**unwarranted**'?" Plaintiff asserts that it does not.

### Errors in interpretation of the law and Appearance of Bias

24. Plaintiff objects to the Findings and Recommendations that label his motion as "**frivolous**."

25. The Supreme Court of the United States (SCOTUS) has interpreted the frivolous standard by stating, "On the other hand, **if** it finds any of the legal points arguable on their merits (and **therefore** not frivolous), it must, prior to decision, afford the indigent…to argue…" *Anders v. California*, 386 U.S. 738 (1967).

26. Solely from FRCP procedural aspect, without examining the context of the Plaintiff's motion to determine if there are **any** legal points arguable on their merits, the Court threatened to sanction Plaintiff's "***any future frivolous motions for sanctions***" because it will not continue to tolerate "sanctions against an attorney." Plaintiff asserts that the Findings and Recommendations constitute **judicial oppression** and demonstrate an Appearance of Bias, potentially affecting public perception of the judiciary and confidence in the courts. It appears this Courts does not tolerate a lower-class pro se filing sanction against an upper-class attorney regardless of "**any** legal points arguable on their merits."

27. Plaintiff raises a question of first impression regarding Federal law to this court: "When a pro se's first motion is denied due to the safe harbor provision, does a refiling of the motion after the safe harbor period constitute being '**frivolous**'?" Plaintiff asserts that it does not.

## III. Prayer for Relief

28.     "We may try to see things as objectively as we please. Nonetheless, we can never see them with any eyes except our own."—Judge Benjamin Cardozo. *The Nature of the Judicial Process*.

29.     Based on the above, Plaintiff respectfully requests this Court to grant the objection.

Respectfully submitted,

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886] /[arnold200@gmail.com]

## CERTIFICATE OF SERVICE

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (December 6th, 2023).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]