**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendants. | ) |

**OBJECTION TO FINDINGS, CONCLUSIONS
AND RECOMMENDATION**

## Cases

*A.D. Brokaw v. Karen Weaver, Mercer County, State of Illinois*, 305 F.3d 660 (7th Cir. 2002) ...................... 5

*A.D. Brokaw v. Karen Weaver, Mercer County, State of Illinois*, 305 F.3d 660, 665 (7th Cir. 2002) .............. 5

*Boyd v. United States*, 116 U.S. 616, 635 (1886) ...................................................................................... 21

*Bradley v. Fisher*, 80 U.S. 335 at 351 (1871)............................................................................................... 8

*Garza v. Morales*, 923 S.W.2d 800, 802 (Tex. App. 1996) ........................................................................ 7

*Glory Truong v. Bank of America, N.A.*, 12-30934 (5th Cir. 2013) ............................................................. 6

*In re Al-Nashiri*, 921 F.3d at 234 ............................................................................................................. 19

*In re State ex rel. Wice*, 668 S.W.3d 662, 672 n.43 (Tex. Crim. App. 2023) .............................................. 6

*John J. Joyce v. United States of America, Appellant*, 474 F.2d 215 (3d Cir. 1973)................................... 20

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 439, 440 (1979) ................ 15

*Luis J. Laje v. R. E. Thomason General Hospital*, 665 F.2d 724 (5th Cir. 1982)............................................ 15

*McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021)...................................................................................... 16

*Mireles v. Waco*, 502 U.S. 9 at 11-12 (1991 ............................................................................................... 8

*Mireles v. Waco*, 502 U.S. 9, 12 (1991).................................................................................................... 9

*N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 135 S. Ct. 1101 (2014)................................... 12

*Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 712 n.8 (9th Cir. 2019) ......................................................... 15

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) ........................................................................... 12

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985), .......................................................................... 13

*Seminole Tribe of Fla. v. Florida*, 473 U.S. 479(1985).............................................................................. 17

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 154 (1996)........................................................................ 13

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 173 (1996)........................................................................ 16

*State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director// Ellen Jefferson, D.V.M. v. Ellen Jefferson, D.V.M.// Texas State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director*, 03-14-00774-CV (Tex. App. 2015) ...................................................................................................................................................... 13

*Stump v. Sparkman*, 435 U.S. 349 at 356-357, 360 (1978)......................................................................... 8

*Stump v. Sparkman*, 435 U.S. 349, 356 n.6 (1978)................................................................................... 7

*Taylor v. Tolbert*, 644 S.W.3d 637, (Tex. 2022) ....................................................................................... 11

*Taylor v. Tolbert*, 644 S.W.3d 637, 653 (Tex. 2022) ................................................................................ 11

*Taylor v. Tolbert*, 644 S.W.3d 637, 654 (Tex. 2022) ................................................................................ 10

*Taylor v. Tolbert*, 644 S.W.3d 637, 656 n.103 (Tex. 2022) ...................................................................... 11

## Contents

I. Plaintiff objects to the characterization of his pleading in background section.........................................4

II. Plaintiff objects to the FCR that DeAngelis is immune from suit...............................................................6

III. Plaintiff objects to the FCR that Barrows, Ybarra and Barrows firm are immune from suit. ............... 10

IV. Plaintiff objects to the FCR that State Bar of Texas, Marin, Martinez, and Craig are immune from suit. ...................................................................................................................................................................12

V. Eleventh Amendment Analysis .............................................................................................................. 17

VI. Plaintiff objects to the FCR that Tarrant County is immune from suit. .................................................. 18

VII. Conclusion............................................................................................................................................. 19

VIII. Prayer for Relief...................................................................................................................................21

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW, Plaintiff, Conghua Yan, respectfully submits this amended objection to the FINDINDS, CONCLUSIONS and RECOMMENDATION (aka as FCR) for Defendants' Motion to Dismiss, [ECF No. 121], pursuant to *28 U.S.C. § 636(b)(1)*. For the reasons stated below, the Motion for Dismiss should be denied.

## I. Plaintiff objects to the characterization of his pleading in background section

1.      The FCR erroneously found that "Yan contends that the *state court* illegally ordered him to pay attorneys' fees and spousal support from certain funds under his control," thus failing to acknowledge a core criminal act alleged in the pleading. Barrows, Ybarra, and Pigg are accused of colluding to underwrite a QDRO order on April 26, 2022, without notice or a hearing for **spousal support**, and without appearing with this subject matter before an impartial tribunal. Plaintiff alleged that the family court **never** acquired subject matter jurisdiction over spousal support. The QDRO order was then allegedly used as a means to financially benefit Barrow and Ybarra, constituting an independent violation of ERISA and *18 U.S.C. § 664* under RICO act *§ 1961(1)*. The FCR mischaracterized Plaintiff's pleading as a dispute over family court proceeding, completely **avoiding any mention** of ERISA or *18 U.S.C. § 664*. How could the Plaintiff's pleading, which stemmed entirely from a decade-long, statewide scheme involving ERISA or *18 U.S.C. § 664* crimes, be addressed by the FCR **without a single mention** of ERISA or *§ 664*?

2.      The FCR erroneously concluded that Yan's allegation stemmed from disagreement and an unfavorable order regarding Tarrant County employee DeAngelis's ruling on the subject matter of attorney's fees. This conclusion completely ignored Plaintiff's allegation against DeAngelis, one of them was specifically about the "prepayment" or "advanced payment" that DeAngelis secured on behalf of Plaintiff's own attorneys. This payment was not for services rendered, nor was it earned fees. Instead, it was an ultra vires act to secure funds in advance **without any claim**. The FCR failed to conclude the "without any claim" fact, the FCR also failed to clearly differentiate between "fee" and "payment."

3.      The FCR also erroneously concluded Plaintiff's pleadings against the State Bar of Texas to the dismissal of a grievance complaint, completely ignored Plaintiff's actual claims.

The RICO allegations against State Bar of Texas can be seen in [ECF No. 60, ¶ 149-152] Plaintiff's RICO claim include the allegation that the State Bar of Texas' role of engaging in fees obtained from the income of its members' racketeering activities. There was no single word in referred paragraphs, alleged the dismissal of a grievance. Plaintiff's antitrust claim include the allegation that the State Bar of Texas engaged in unlawful service fees misconducts. There was no single word in referred paragraphs, alleged the dismissal of a grievance as well, as seen in [ECF No. 60, ¶ 219-224]. Mischaracterizing Plaintiff's claim regarding unlawful fee acts as a grievance decision dispute is a key error that misleads this Court to apply the law incorrectly.

4.      Plaintiff request this Court to distinguish claims pursuant to **Nesses reasoning** as seen in *A.D. Brokaw v. Karen Weaver, Mercer County, State of Illinois*, 305 F.3d 660 (7th Cir. 2002). "We conclude that the **Nesses reasoning** applies here. As in Nesses, A.D. **is not** merely **claiming** that the **decision** of the state court was **incorrect** or that the **decision violated** her constitutional rights; **rather**, she is alleging that **the people involved in the decision**…**violated her constitutional rights**, **independently** of the state court **decision**." *A.D. Brokaw v. Karen Weaver, Mercer County, State of Illinois*, 305 F.3d 660, 665 (7th Cir. 2002). **Nesses reasoning** acknowledges the difference in pleadings between alleging involvement of individuals in the decision-making process and alleging the decision itself.

5.      "This court rejected that conclusion, reasoning that the Rooker-Feldman doctrine did not bar Nesses' claim because his suit **was not premised on a claim** that the **state court judgment denied** him some constitutional right; rather, his **federal claim** was based on **a right independent** of the state court proceeding. As we explained in Nesses, **any other conclusion** would mean that "there **would be no federal remedy** for a **violation of federal rights** whenever **the violato**r so far **succeeded in corrupting** the **state judicial process** as to obtain a favorable judgment,..." Id. at 1005. Moreover, we reasoned that **such a "result** would be **inconsistent** with cases in which, for example, **police officers** are sued under **42 U.S.C. § 1983** for having fabricated evidence that resulted in the plaintiff's being convicted in a state court."" *A.D. Brokaw v. Karen Weaver, Mercer County, State of Illinois*, 305 F.3d 660, 665 (7th Cir. 2002). The above analysis from the sister federal court also aligns with Plaintiff's federal claims, which is based on Fourteen Amendment rights and federal criminal acts, **independent**

of the family court proceeding's regular business, such as child custody and child support. **Nesses reasoning** is recognized by the Fifth Circuit in *Glory Truong v. Bank of America, N.A.*, 12-30934 (5th Cir. 2013). The FCR overly emphasized the element of family court proceedings, **without any mention of ERISA**, which supersedes any state law. Essentially, the FCR's stance implies that "there **would be no federal remedy** for a **violation of RICO, antitrust, ERISA and Due Process** whenever **the violator** has **succeeded in corrupting** the **state judicial process** to the extent of obtaining a state judgment..."

6.      Plaintiff **did not** claim against the dismissal decision of the grievance or that the decision itself violate his constitutional right; rather, Plaintiff alleged that the people involved in the decision, were RICO co-conspirator to aid others securing racketeering income through damage control. Plaintiff has argued that his allegations **do not** concern the **reverse** or **void** "disposing of grievances within its self-regulated disciplinary process." Had that been the case, he would have included other counsels of the SDP, or disciplinary commissioner in this lawsuit. The FCR entirely ignored Plaintiff's argument in this regard. Every other no-binding-power district court cases cited in the FCR was relating a party seeks the Court to undo a decision made by the office of CDC, which does not align with Plaintiff's case at all. There is **no** single relief sought in Plaintiff's pleading is related to the dismissal of a grievance. Plaintiff **did not** seek the Count to do anything about the decision. **Please do not twist my claims**.

## II. Plaintiff objects to the FCR that DeAngelis is immune from suit.

7.      "In Texas, courts have **jurisdiction**—the power over the subject matter and person, while judges have **authority**—the power to preside over a case. See *Davis v. State*, 956 S.W.2d 555, 557–60 (Tex. Crim. App. 1997) ("While our case law has called the authority of the judge to preside a jurisdictional issue, we now **disavow that characterization**, because as we have explained, jurisdiction or judicial **power** is **vested in courts**, **not individuals**."" *In re State ex rel. Wice*, 668 S.W.3d 662, 672 n.43 (Tex. Crim. App. 2023). If the family court has no jurisdiction, any act that DeAngelis did has no immunity.

8.      "the Court in Bradley stated: "… Where there is clearly no jurisdiction over the subject-matter **any authority exercised is a usurped authority**, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible."

(emphasis omitted), *Stump v. Sparkman*, 435 U.S. 349, 356 n.6 (1978). *Stump* is clear that this Court shall not permit any excuse.

9.      "With regard to the doctrine of judicial immunity, Texas follows the same principles set out by the United States Supreme Court in *Stump v. Sparkman*,435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), that absolute immunity extends to all judicial acts unless such acts fall **clearly outside the judge's subject-matter jurisdiction**." *Garza v. Morales*, 923 S.W.2d 800, 802 (Tex. App. 1996). This Court shall not extend absolute immunity to all judicial acts, regardless of whether DeAngelis' acts fall clearly outside the judge's subject-matter jurisdiction.

10.      Plaintiff did not allege **all the actions** taken by Defendant DeAngelis in the court. Plaintiff specifically alleged and argued **two types of actions** carried out by Defendant DeAngelis: First is compelling Plaintiff to pay attorney fees incurred in a criminal case, where Plaintiff was not even a party to that criminal case. Plaintiff has contended that since he was non-party to the criminal case, there was no personal jurisdiction over him in that court for the recovery of attorney's fees as compensatory damages. Moreover, the criminal case itself with a penal code charge was not within the subject matter jurisdiction of the family court; Second is the compelling attorney fees to Plaintiff's own attorney. There was no claim of compensatory damages relief, therefore, that attorney fees was not the subject matter acquired by the family court. As seen in [ECF No. 60, ¶ 40, 44].

> it is unlawful and ***the judge lacks jurisdiction*** *to award interim attorney fees incurred in the criminal case.*
> ...
> **The family court has no jurisdiction** *to assist the attorney to secure/collect non-billed payment or prepayment from their own client in the absence of that attorney's pleading. The judge lacks jurisdiction over the subject matter of commercial contract relations between the service provider and its consumer, particularly given the clear absence of pleading.*

11.      "While our case law has called the authority of the judge to preside a jurisdictional issue, we now **disavow that characterization**, because as we have explained, jurisdiction or judicial **power** is **vested** in **courts**, not individuals." *Wice*, Id. "Where there is clearly no jurisdiction over the subject-matter **any authority exercised is a usurped authority**, and for the exercise of such authority, when the want of jurisdiction is known to the

judge, no excuse is permissible" *Sparkman*, Id. Granting absolute immunity to judge without considering jurisdiction conflicts with established legal precedents.

12.     The FCR cited "providing that a disgruntled family court litigant lacked standing to sue the judge in federal court for an unfavorable decision" to conclude that "a state family litigant's claims against Judge DeAngelis **should be dismissed** for lack of standing." Plaintiff request this Court to distinguish claims pursuant to **Nesses reasoning** referred in ¶4-5 of this document. Plaintiff **did not** sue the judge in federal court for appealing an unfavorable state court decision. Plaintiff sued DeAngelis involved in offense of RICO act, ERISA act and violation of his private property rights under Fourteenth Amendment etc., which is **independently** of the family court **decision**. **Please do not twist my claims**. This FCR's conclusion also entirely ignored the "clearly no jurisdiction over the subject matter" exception established in well-known Supreme Court precedents. Typically, behind every lawsuit against DeAngelis is always an ending of litigant's disagreement with her application of the law and the issuance of unfavorable orders. Agreements and favorable orders seldom lead to lawsuits. If the FCR's reasoning were correct, then every **judicial in nature** state case ended with an order can be mischaracterized as appealing of decision, would lack standing in Federal court, **regardless of the presence or clear absence of jurisdiction**. The FCR appears to **excessively broaden** judicial immunity, implying that every action a judge takes is absolute immune from lawsuit due to lacking of standing simply by charactering Plaintiff's claims as "disagreement of unfavorable decision". Contradict to Plaintiff's claim, All the cases that the FCR cited does not contain any claim of "clearly no jurisdiction over the subject matter".

13.     Judges are deemed to be "liable to civil actions" for "acts done by them in the clear absence of all jurisdiction over the subject matter." *Bradley v. Fisher*, 80 U.S. 335 at 351 (1871). See also *Stump v. Sparkman*, 435 U.S. 349 at 356-357, 360 (1978). "a judge **is not immune for actions**, **though judicial in nature**, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9 at 11-12 (1991). (Note that, under *Mireles*—contrary to the FCR's assertion—it **does not matter whether** a judge's actions were "judicial in nature"). *Mireles* clearly states that a judge **is not** absolute immune even for "judicial in nature" decision. Plaintiff requests that this Court recognize the binding power of the *Mireles v. Waco* precedent.

14.       "This Court in *Stump* made clear that "whether an act by a judge is a "judicial" one relate[s] to the **nature** of the act itself, i.e., whether it is a function normally performed by a judge, **and** to the **expectations of the parties**" 435U.S., at 362." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). The FCR ignored Plaintiff's above argument, as seen in [ECF No. 81, ¶ 87]. To meet the criteria of a "judicial act," both conditions must be satisfied. It is obvious that a family court has no personal jurisdiction power to compel recovery of attorney's fees as compensatory damages in a criminal case from a non-party. Plaintiff requests that this Court adhere to the "**and**" clause in the *Mireles v. Waco* precedent. It is clear that compelling advance payment to Cutrer and Pigg, without a claim, was not within the expectations of the parties (Yan and Wang).

15.       FCR asserted that Plaintiff makes conclusory statements or displays a material misunderstanding of the law. Hereby, Plaintiff offers this Court the opportunity to make its own conclusions under this Court's understanding of the law. Plaintiff requests that this Court answer two questions of law: Did the family court, not an individual, acquire personal jurisdiction over Plaintiff in a criminal case which Plaintiff was not the party? And did the family court acquire fees subject matter jurisdiction over Plaintiff against his own attorney without any claim filed into the court?

16.       At last, the FCR completely ignored well-established Supreme Court precedents in its analysis. "The remedy was considered necessary because "state courts were being used to harass and injure individuals," "every Member of Congress who spoke to the issue assumed that **judges** would be **liable** under § 1983," "this Court acknowledge Congress' intent to **reach** unconstitutional actions by all state actors, **including judges**," "We remain steadfast in our conclusion, nevertheless, that Congress intended § 1983 to be an independent protection for federal rights and find **nothing to suggest** that Congress intended to **expand** the common-law doctrine of judicial immunity to **insulate state judges** completely from federal collateral review. We conclude that judicial immunity **is not a bar** to prospective injunctive relief against a judicial officer acting in her judicial capacity." All citations are from Supreme Court precedents cited in Plaintiff's argument, as found in [ECF No. 81, ¶43-46]. Nevertheless, the FCR bars Plaintiff from suing DeAngelis, a county employee, even for prospective injunctive relief.

17.      Finally, Plaintiff objects to the FCR exploiting his limited proficiency in English as a non-native speaker. The FCR erroneously asserted that "a review of those statements reveals that Yan **does not actually allege** that Judge DeAngelis lacked jurisdiction or authority to hear the case or to issue the orders," despite Plaintiff's clearly intended to challenge the jurisdiction or authority, as seen in [ECF No. 60, ¶44]. And additionally, Plaintiff **indeed actually alleged** "clear absence of all jurisdiction", as seen in [ECF No. 60, ¶16, 284]. The FCR interpreted the Plaintiff's English, written by a non-native speaker, as conclusory statement and concluded "Yan does not actually allege," subsequently barring Plaintiff from further clarification. This appears biased, as the magistrate judge fully exploited the language barrier of a pro se litigant.

18.      It appears that a pro se litigant's citation of well-established Supreme Court precedents has no value in this Court, per the FCR, "None of Yan's assertions can be taken as anything more than either conclusory statements-which the Court need not credit-or a material misunderstanding of the law."

## III. Plaintiff objects to the FCR that Barrows, Ybarra and Barrows firm are immune from suit.

19.       "When interpreting a federal statute, including whether it has abrogated certain affirmative defenses, we endeavor to "anticipate how the U.S. Supreme Court would decide the issue," and "[t]his analysis often draws on the precedents of other federal courts ... to determine the appropriate answer." In considering the existence or parameters of a common-law defense that may apply to a federal statute, we also "look to the common law, **not of Texas or any particular jurisdiction**, but in general."… Although federal courts have held that government attorneys are absolutely immune from suit under **42 U.S.C. § 1983**, we have **not** found **another statutory civil action** to which a federal court has applied any form of common-law attorney immunity." (emphasis omitted), *Taylor v. Tolbert*, 644 S.W.3d 637, 654 (Tex. 2022). Even the Supreme Court of Texas acknowledged that federal courts **have never applied** any form of common-law attorney immunity in **any federal statutory civil action**, other than granting federal government attorneys' absolute immunity from suits under *42 U.S.C. § 1983*.

20.       "We conclude that **attorney immunity**, as recognized and defined **under Texas law**, **is not a defense** under the **federal [] statute** because, **quite simply**, **a state's common-law defense does not apply to federal statutes**."(emphasis omitted) *Taylor v. Tolbert*, 644 S.W.3d 637, 653 (Tex. 2022). ""[T]he cause of action in this case is provided by federal law and cannot be subverted by any state law or policy.")." *Taylor v. Tolbert*, 644 S.W.3d 637, 656 n.103 (Tex. 2022). A state's common-law defense does not apply to federal statutes is quite simply which this Court shall not have any misunderstanding.

21.       "when conduct is **prohibited by statute**, the attorney-immunity defense is neither categorically inapplicable **nor automatically available**, even if the defense might otherwise cover the conduct at issue. In such cases, whether an attorney may claim the privilege depends on the **particular statute in question**." *Taylor v. Tolbert*, 644 S.W.3d 637, (Tex. 2022). This FCR never analyzed the **particular statute in question** but instead granted attorney immunity **automatically**. It even further concluded that "Attorney Defendants were not required to show an adversarial context."

22.       The FCR states that "the Court finds that because Yan alleges that the Attorney Defendants' wrongful actions **occurred during the scope of** his ongoing divorce **proceeding**, the Attorney Defendants **were not required** to show an **adversarial context**." This Court has erroneously and excessively broadened attorney immunity to cover any conduct "during the scope of proceedings," contrary to federal common law.

23.       Plaintiff objects to the FCR **automatically** making the attorney-immunity defense **available** without analyzing the "**particular statute in question**." It is interesting to note that when the Supreme Court of Texas mentioned **the need to** "anticipate how the U.S. Supreme Court would decide the issue" while "interpreting a federal statute,", they recognized that "quite **simply**, a state's common-law defense does not apply to federal statutes." Erroneously, in this case, the Court reversed its approach by looking at Texas common law to automatically apply the attorney-immunity defense, without analysis of the RICO act, Sherman act and ERISA act.

24.       "Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate `enterprises.'" Ibid. Yet

Congress wanted to reach both "**legitimate**" and "illegitimate" enterprises. United States v. Turkette, supra. The **former** enjoy **neither** an inherent incapacity for criminal activity **nor immunity** from its consequences. …"[T]he fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates **breadth**." Haroco, Inc. v. American National Bank Trust Co. of Chicago, supra, at 398." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985). "RICO is to be read **broadly**…the narrow readings offered by the dissenters and the court below would in effect eliminate § 1964(c) from the statute." As seen in [ECF No. 108, ¶ 13]. "ERISA statute also **supersedes** any and all state laws insofar as they "relate to" any employee benefit plan under 29 U.S.C. § 1144(a). Plaintiff argues ERISA statute supersedes any "immunity" under State common laws as they "relate to" any employee benefit plan." As seen in [ECF No. 108, ¶ 86]. When U.S. Supreme Court clearly said whoever commit RICO criminal activity enjoy no **immunity** from its consequences, does this Court still uphold *Sedima, S.P.R.L. v. Imrex Co*. as a ***binding*** precedent?

25.     The Fourteenth Amendment assures that the federal government **guarantees** that the people's **property** cannot be deprived of without **Due Process**. The collusion of Barrows, Ybarra, and Pigg to underwrite a QDRO order on April 26, 2022, without notice or a hearing for spousal support, and without appearing before an impartial tribunal, is a case in point. When the Plaintiff files a § 1983 complaint, this Court should not stand back and allow state common law to supersede the rights protected by the Fourteenth Amendment.

## IV. Plaintiff objects to the FCR that State Bar of Texas, Marin, Martinez, and Craig are immune from suit.

26.     The State Bar of Texas never raised an argument regarding the antitrust claim. The FCR voluntarily dismissed the antitrust claim, asserting Eleventh Amendment on behalf of the State Bar of Texas. If this Court still believe United States Supreme Court's precedents has binding power, it should look no further than *N.C. State Bd. of Dental Examiners v. Fed. Trade Comm'n*, 135 S. Ct. 1101 (2014), argued in [ECF No. 103, ¶ 23]. Even the Third Court of Appeals Texas adhered to this federal case in its ruling on *State Board of Veterinary Medical Examiners, and Nicole Oria, in Her Official Capacity as Executive Director// Ellen Jefferson, D.V.M. v. Ellen Jefferson, D.V.M.// Texas State Board of Veterinary Medical Examiners, and*

*Nicole Oria, in Her Official Capacity as Executive Director*, 03-14-00774-CV (Tex. App. 2015), stating that "The United States Supreme Court held that **state-action immunity does not extend** to a state board controlled by active market participants unless the state is actively supervising the relevant Board. The Supreme Court states the active market participants cannot be allowed to regulate their own markets free from **antitrust** accountability." and "This case may lead to a restructuring of Texas state regulatory agencies."

27.     Regarding the RICO claim, the FCR has ignored sister federal courts' rulings that government entity is not immune to be enterprise for RICO purpose. argued in [ECF No. 103, ¶ 25-26]. The FCR also failed to bind to the United States Supreme Court's precedent *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985), which states "legitimate enterprises enjoy **nor immunity** from its consequences."

28.     "When individuals sued States to enforce federal rights, the Government that corresponded to the "sovereign" in the traditional common-law sense was not the State but the National Government, and **any state immunity** from the jurisdiction of the Nation's courts would have **required a grant from the true sovereign**, **the people**, in their Constitution, or from the Congress that the Constitution had empowered." (Souter, J., dissenting), *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 154 (1996). In this case, SCOTUS also held that "we agree [] that Congress has in § 2710(d)(7) provided an "unmistakably clear" statement of its intent to abrogate (States' sovereign immunity)." (emphasis added and omitted), ld. at 56. "We held that **through the Fourteenth Amendment**, federal power extended to **intrude upon** the province of the Eleventh Amendment and therefore that § 5 of the Fourteenth Amendment **allowed** Congress to **abrogate the immunity** from suit guaranteed by that Amendment." *ld* at 59. "the Court found that the **Interstate Commerce Clause**, Art. I, § 8, cl. 3, **granted** Congress the power to **abrogate state sovereign immunity**, stating that the power to regulate interstate commerce would be "incomplete without the authority to render States liable in damages."" *ld* at 59. "that statement is made solely in order to emphasize the broad scope of Congress' authority over interstate commerce". *ld* at 61. Plaintiff's claims have trigged the Fourteenth Amendment and Interstate Commerce Clause which Congress had the power to abrogate state sovereign immunity. Furthermore, Plaintiff asserts the state sovereign immunity does not apply to ERISA, RICO and antitrust.

29.     Due to above reason, none of the State agency can assert Eleventh Amendment in claims under violation of **Fourteenth Amendment** and **Interstate Commerce**. For the same reasons, the *18 U.S.C. § 664* clause under RICO act, **supersede** clause under ERISA act, and **interstate commerce** clause under the Sherman act, all are passed pursuant to a constitutional provision (Plaintiff's injury under Minnesota pension plan is both properties protected under **Fourteenth Amendment** and **Interstate Commerce**) granting Congress the power to abrogate sovereign immunity, so Plaintiff's injury can be remedied and future RICO victims' injury can be prevented. It is unconscionable to allow **Texas** state actors and attorneys conspire to embezzle funds from **Minnesota** aset then claim **state immunity** and **Texas common law immunity**.

30.     In the case where the State Bar of Texas, a public/private hybrid entity, is accused of participating in a decade-long conspiracy that spans the entire state. This involves the illegal diversion of funds from the pension funds of the American middle class nationwide for the enrichment of its Texas members, and the use of full Texas authoritative power to hide these actions. All State actors are granted Eleventh Amendment to dodge RICO, antitrust and § 1983 liabilities. If the FCR's reasoning for applying the Eleventh Amendment in the Plaintiff's case is valid, then the State Bar could establish racial segregation at any time under the guise of state court proceedings, leaving no room for federal remedy. It's possible that SCOTUS would find such a matter arising in this case worth considering. Plaintiff is eager to present this opportunity to set a legal precedent for the nation.

31.     Among the cases referenced by the FCR suggesting state immunity, none pertained to RICO or antitrust allegations. *Krempp v. Dobbs* contains an antitrust claim, but the Fifth Circuit denied it due to a lack of injury, not due to the Eleventh Amendment. Most of these cited cases involving former Texas attorneys suing to reverse or void the grievance decision, which does not constitute a criminal act under allegation. The subject matters of these cases are distinct from the Plaintiff's claim concerning racketeering activities. Plaintiff never sued the grievance body of the State Bar. Plaintiff sued the business body of the State Bar for RICO income and antitrust service fees.

32.      The FCR has ignored SCOTUS opinion saying "In place of the various factors recognized in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S. Ct. 1171, 59 L.Ed.2d 401 (1979), for determining arm-of-the-state status, we may now substitute a single overriding criterion, vulnerability of the state treasury. **If a State does not fund judgments against an entity, that entity is not within the ambit of the Eleventh Amendment, and suits in federal court may proceed unimpeded**." *Ray v. Cnty. of Los Angeles*, 935 F.3d 703, 712 n.8 (9th Cir. 2019), argued in [ECF No. 103, ¶ 19]. The State Bar of Texas is financially self-sufficient, generated "its own revenues," and paid "its own debts," does not need to fund judgment from the State of Texas.

33.      The Court granted Eleventh Amendment to the State Bar of Texas, regardless its financially self-sufficiency. "We cannot accept such an **expansive reading** of the Eleventh Amendment. By its terms, the protection afforded by that Amendment is only available to "one of the United States." It is true, of course, that **some** agencies exercising state power have been permitted to invoke the Amendment **in order to protect** the **state treasury** from **liability** that would have had essentially **the same practical consequences** as a **judgment against the State** itself." *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 439, 440 (1979). The *Mitchell* factors that Plaintiff argued in [ECF No. 103, ¶ 21] align with those in *Tahoe Regional Planning Agency* case, but this Court ignored *Mitchell* factors. Congress never intends to expand the Eleventh Amendment to those entities that are not funded by state treasury.

34.      "[entities] are not entitled to such immunity even though they may "exercise a 'slice of state power' ". *Lake Country Estates, Inc. v. Tahoe Planning Agency*, 440 U.S. 391, 400-01, 99 S. Ct. 1171, 1176-77, 59 L. Ed. 2d 401 (1979). A federal court **must** examine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state itself…Courts typically look at the **degree** of local **autonomy** and **control**, and **most importantly** whether the funds to defray any award would be derived from the **state treasury**." (emphasis omitted) *Luis J. Laje v. R. E. Thomason General Hospital*, 665 F.2d 724 (5th Cir. 1982). The board of the State Bar of Texas is not controlled by the State, and it cannot derive funds from the state treasury either. An

expansive reading of the Eleventh Amendment to a hybrid entity that exercises a slice of state power **contradicts** Congress's intention.

35.     "Ex parte Young restored the old simplicity by complementing In re Ayers with the principle that state officers **never have authority** to violate the Constitution or federal law, so that any illegal action is stripped of state character and rendered an illegal individual act. Suits against these officials are consequently barred by neither the Eleventh Amendment nor Hans immunity. The officer's action "is simply an illegal act upon the part of a state official in at-tempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. . . **The State has no power** to impart to him **any immunity** from responsibility to the **supreme authority of the United States**." (Souter, J., dissenting). *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 173 (1996). In the pleading, Plaintiff has asserted the injunctive relief and declaratory relief which the Eleventh Amendment cannot bar.

36.     "section *1983* provides a remedy for individuals (Marin, Martinez, and Craig) alleging deprivations of their constitutional right by action taken "under color of state law."" (emphasis added), *Lake County Estates v. Tahoe Reg. Planning Agency*, 440 U.S. 391, 440 (1979) Marin, Martinez, and Craig are also sued § 1983 claims under individual capacity, which the Eleventh Amendment does not reach. The FCR improperly ignored *Ex parte Young* doctrine and asserted the eleventh amendment to dismiss all claims even under individual capacity.

37.     Plaintiff needs to remind this Court that the Fifth Circuit just ruled a case *McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021), involving a 1983 claim disputing fees under First Amendment. State Bar of Texas currently being sued under other three federal cases by different attorneys, why only a pro se litigant is barred with prejudice and not even allowing amendment? Doesn't it appear biased if this Court desperately ban a **pro se litigant** from suing the State Bar of Texas over fee matters while an attorney *McDonald* was free to sue the State Bar of Texas over fee matters in sister court?

## V. Eleventh Amendment Analysis

38.     Plaintiff still does not waive his right as a litigant to petition. *Seminole Tribe of Fla. v. Florida*, 473 U.S. 479(1985), provides an in-depth view of the Eleventh Amendment which this Court cannot ignore. This 5-4 ruling spans 142 pages, of which 111 are dedicated to dissenting opinions.

39.     "The point of the Eleventh Amendment, according to Cohens, was to bar jurisdiction in suits at common law by **Revolutionary War debt creditors**, **not 'to strip** the government of the means of protecting, by the instrumentality of its courts, the constitution and laws from active violation.'" ld. at 112, (Souter, J., dissenting). "The best explanation for our practice belongs to Chief Justice Marshall: the Eleventh Amendment **bars only** those suits in which the sole basis for federal juris-diction is diversity of citizenship….the Court concedes, after all, that 'the text of the Amendment would appear to restrict **only the Article III diversity jurisdiction** of the federal courts.'…there is **no possible argument** that the Eleventh Amendment, by its terms, **deprives** federal courts of jurisdiction over **all** citizen lawsuits against the States. Not even the Court advances that proposition, and there would be no textual basis for doing so." (emphasis omitted). ld. at 114-115, (Souter, J., dissenting).

40.     "As already explained, **federal-question** cases are **not** touched by the Eleventh Amendment, which leaves a State **open** to **federal-question** suits by citizens and noncitizens alike." ld. at 119, (Souter, J., dissenting). "this Court has **repeatedly acknowledged** that the Eleventh Amendment standing alone **cannot bar** a federal-question suit against a State brought by a state citizen." ld. at 123,124, (Souter, J., dissenting). Plaintiff requests this Court to uphold this principle of what SCOTUS has **repeatedly acknowledged.**

41.     "Given this metamorphosis of the idea of sovereignty in the years leading up to 1789, the question whether the old immunity doctrine might have been received as something suitable for the new world of federal-question jurisdiction is a crucial one. The answer is that **sovereign immunity** as it would have been known to the Framers before ratification thereafter became **inapplicable** as a matter of logic in a federal suit raising a federal question." *ld*. at 153, (Souter, J., dissenting). "But we are concerned here not with the survival of the Nation but the opportunity of its citizens to enforce federal rights in a way that Congress provides." *ld*. at 158,

(Souter, J., dissenting). Plaintiff requests this Court to enforce federal rights so Texas cannot steal from Minnesota.

42.     "History confirms the wisdom of Madison's abhorrence of constitutionalizing common-law rules to place them beyond the reach of congressional amendment. The Framers feared **judicial power over substantive policy** and the ossification of law that would result from transforming common law into constitutional law, and their fears have been borne out every time the Court has ignored Madison's counsel on subjects that we generally group under economic and social policy." *Id*. at 165, (Souter, J., dissenting). The reality has confirmed that the State Bar of Texas, a self-funded corporation, a de facto attorney union, has abused their **administrative** agency role of the judicial department of the Texas government, by manipulating the Texas common-law rules and professional conduct disciplinary policy to establish and enforce their immunity, beyond the reach of the US constitution position, is monopolistic control and racketeering scheme.

43.     The merits of this case pale in comparison to the value of all the federal questions arising from it. In Texas family courts, parents have been treated as prey, with their assets laid out on the attorneys' dinner table. Plaintiff entrusts this Court with a pivotal decision: to either drive a nail into the legal system coffin by endorsing this Texas Divorce Corp's collusion, or to restore constitutional rights to the family. The resolution of these issues will establish important precedents. And in full candor, Plaintiff intends to pursue this path.

## VI. Plaintiff objects to the FCR that Tarrant County is immune from suit.

44.     The FCR erroneously concluded that "Tarrant County argues that it cannot be sued for the actions of an **elected judge** as judges are outside of their control and separate from the County." DeAngelis is an appointed county official and she is a Tarrant County employee. DeAngelis **is not an elected judge**. An elected judge is on the State of Texas payroll. But DeAngelis' payroll is on the county bill, as same as Ogle's. Tarrant County and Ogle has made a materially false statement in the defense. The FCR has erroneously acknowledged a plain lie. Plaintiff requests this Court to address this false statement.

45.     DeAngelis's official capacity is being sued under the ultra vires doctrine, for her ultra vires acts, as seen in [ECF No. 60, ¶ 280]. Tarrant County should be held accountable for its employee's ultra vires acts taken under clear absence of all jurisdiction over the subject-matter. When the court lacking of jurisdiction, there is no authority for DeAngel to exercise. Therefore, the employer is liable for its employee's ultra vires acts.

46.     Plaintiff never alleged "the counsel for Tarrant County committed a racketeering by responding to an email Yan sent him and indicating that he is opposed to Yan filing a third amended complaint," as FCR concluded. Plaintiff alleged "the counsel for Tarrant County committed a racketeering by responding to an email", made a request to "cause Lori L. DeAngelis to be absent from this suit to which Lori L. DeAngelis has been summoned in this suit.", a supplemental offense of *18 U.S.C. § 1512(b)(2)(D),* defined under *§* 1961(1). **Please do not twist my claims**.

47.     Contrary to what the FCR stated, "Yan has had adequate opportunities to plead his best case, and further amendments to his complaint are unnecessary", Ogle's act was committed after third amendment, therefore Plaintiff requested a supplemental fourth amendment. However, this Court never granted Yan any substantial opportunity for a fourth amendment. This Court declined Yan to plead newly incurred RICO act with prejudice.

## VII. Conclusion.

48.     Attorney immunity in Federal court is not absolute, Texas common law immunity does not apply to violation under Federal statue. Plaintiff request this Court to uphold the law as it is. It appeared bias that the Honorable Magistrate Judge applied the Texas common law immunity to dismiss a pro se litigant's federal case with prejudice to help his fellow members of the bar association to avoid federal statue accountability, regardless the **"quite simple"** principle of "**a state's common-law defense does not apply to federal statutes**". Plaintiff asserts that the appearance of partiality has arisen; the Honorable Magistrate Judge has failed to weight the scales of justice equally between the contending parties. "all that must be demonstrated to compel recusal ... is a showing of an appearance of bias . . . sufficient to permit the **average citizen reasonably to question a judge's impartiality**." *In re Al-Nashiri*, 921 F.3d at 234.

49.       This Court must now address what the average citizen might reasonably question regarding a judge's impartiality, following this FCR decision. When the Honorable Magistrate Judge characterized a pro se litigant's statements as a "misunderstanding of law", meanwhile he himself, a member of the State Bar of Texas, ordered a dismissal with prejudice. This action appeared desperate, aiming to shield other members of the State Bar of Texas from the consequences of RICO violations under the guise of Texas common law immunity. This contradicts the "quite simple" principle that federal authority should-have-known: "a state's common-law defense does not apply to federal statutes." The Honorable Magistrate Judge's actions appear **biased** and compromise his **impartiality**, seemingly **twisting this principle** to grant **unwarranted immunity** to his fellow members of the Texas Bar, while attempting to take advantage of a pro se litigant's inadequate legal knowledge.

50.       "Where there is no jurisdiction over the subject matter, there is, as well, **no discretion to ignore** that lack of jurisdiction" *John J. Joyce v. United States of America*, Appellant, 474 F.2d 215 (3d Cir. 1973). Without addressing the two key questions of lacking subject matter jurisdiction challenge, this Court shall not apply judicial immunity to a county employee's misconduct. These two questions represent issues of first impression in the law that have not been decided in any federal precedents.

51.       Without addressing questions regarding whether funding from the state treasury, factors related to the RICO Act, the Sherman Act, the ERISA Act, violations of the Fourteenth Amendment, and the Interstate Commerce Clause, and without determining whether the related Acts in question were passed pursuant to a constitutional provision granting Congress the power to abrogate state immunity, this Court shall not apply the Eleventh Amendment to the business function body of the State Bar of Texas.

52.       The State of Texas possesses the legal authority to "deprive any person of **life, liberty, or property**"; therefore, the guarantee of Due Process under the Fourteenth Amendment is critical. The essence of Due Process requirements consists of **notice and a hearing before an impartial tribunal**. However, these requirements are rendered meaningless if an attorney, named Barrows, colluded with others, are **permitted to alter the context of a**

**court order/judgement**. The decision of the State Bar of Texas and the policy of the Tarrant County District Attorney's office have jeopardized the integrity of the entire Texas judicial system.

53.     Does this Court really sympathize with Plaintiff and thousands of other victims who are still kept in the dark? "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by **silent approaches** and **slight deviations** from legal modes of procedure. This can only be obviated by adhering to the rule that **constitutional provisions** for the **security of person and property should be liberally construed**. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is **the duty of courts** to be **watchful** for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be **obsta principiis**." *Boyd v. United States*, 116 U.S. 616, 635 (1886). Plaintiff requests this court to fulfill its duty and uphold "obsta principiis."

54.     It would be a devastating federal court decision if, when some Texas attorneys collude to embezzle ERISA plan funds from Minnesota as their business income, the diverted racketeering activity money **eventually** reaches and incentivizes the **State** and **Tarrant County treasuries** in the form of business taxes. Subsequently, if county and state actors conspire to conceal this crime under the guise of discretionary decisions, and then this Court broadly expands various unwarranted immunity, thereby barring potential thousands of victims from suing on the grounds of lack of standing, the implications would be profound. We will see how the Fifth Circuit or SCOTUS' view about it.

55.     This case has significant meanings, Plaintiff is well positioned to offer his case as a federal common law precedent arisen from this Court.

## VIII. Prayer for Relief

56.     Based on the above, Plaintiff respectfully requests this Court to grant the objection.

57.     Alternatively, or additionally, Plaintiff respectfully requests this Court to grant Plaintiff leave to file the fourth amendment.

58.     Plaintiff is very disappointed with the appearance of bias in this particular case, the weighting the scales of justice has been unequally between the pro se litigant and all the members of State Bar of Texas on the opposing side. Plaintiff respectfully requests this Court to recuse the Honorable Magistrate Judge.

Respectfully submitted,

_____/s/ Conghua Yan_____
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]
/[arnold200@gmail.com]

<u>CERTIFICATE OF
SERVICE</u>

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (January 2nd, 2024).

_____        /s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]