IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

CONGHUA YAN,

                                        Civ. Action No. 4:23-cv-00758-P-BJ

                Plaintiff,

v.

THE STATE BAR OF TEXAS, ET AL,

                Defendants.

 

**DEFENDANT U.S. BANCORP'S BRIEF IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

Tyler J. Hill
Texas Bar No. 24130505
Morgan, Lewis & Bockius LLP
1717 Main Street, Ste. 3200
Dallas, Texas 75201
Tyler.J.Hill@morganlewis.com
Tel: (214) 466-4160
Fax: (214) 466-4001

*Counsel for Defendant U.S. Bancorp*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................... 1
II.  STATEMENT OF RELEVANT ALLEGATIONS.................................................. 3
    A.  U.S. Bank Administers An ERISA-Governed 401(k) Plan, Which Sets Forth Procedures For Reviewing Domestic Relations Orders............................. 3
    B.  Plaintiff Commences A Divorce Proceeding In The State Court, Which Enters A Domestic Relations Order That Counsel Sends To U.S. Bank.............. 5
    C.  U.S. Bank Reviews The Domestic Relations Order In Accordance With The Plan's QDRO Procedures And Determines That It Qualifies As A QDRO. ......... 7
III.  STANDARD OF REVIEW ...................................................................................... 8
IV.  ARGUMENT ........................................................................................................... 9
    A.  Plaintiff's Claims Asserted Against U.S. Bank Under 18 U.S.C. §§ 664, 1027, 1341, 1343, And 1349 Each Fail As A Matter Of Law Because None Of Those Criminal Statutes Provides For A Private Right Of Action.................. 9
    B.  Plaintiff's Civil RICO Claim Against U.S. Bank Fails Because The Complaint Provides No Factual Basis From Which To Plausibly Infer That U.S. Bank Engaged In Predicate Crimes Constituting "Racketeering Activity.".................................................................................................................... 11
        1.  Plaintiff Fails To Satisfy The Heightened Pleading Standard Governing The Fraud-Based Predicate Crimes Set Forth In 18 U.S.C. §§ 1341 and 1343. .................................................................... 12
        2.  The Allegations In The Complaint Confirming That U.S. Bank *Complied* With The Plan's QDRO Procedures Fall Woefully Short Of Plausibly Alleging A Violation Of 18 U.S.C. § 664. ......................... 13
    C.  Plaintiff's Fourteenth Amendment And Section 1983 Claims Fail Because The Complaint Does Not Allege That U.S. Bank Acted Under The Color Of State Law. .......................................................................................................... 14
    D.  The Complaint Fails To State An ERISA Fiduciary Breach Claim Under 29 U.S.C. § 1056(d)(3)(H)(i). ..................................................................................... 16
        1.  The Complaint Does Not Allege That U.S. Bank Failed To Provide *The Alternate Payee* With An Accounting Or Otherwise Violated 29 U.S.C. § 1056(d)(3)(H)(i). ..................................................................... 16
        2.  The U.S. Supreme Court's Plan Document Rule Forecloses Any Claim That U.S. Bank Breached Its Fiduciary Duties Under ERISA By Complying With The Plan's QDRO Provisions. .............................. 17
    E.  Plaintiff's Claims Asserted Against U.S. Bank Should Be Dismissed With Prejudice. ............................................................................................................ 20
V.  CONCLUSION....................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Singh*,
   480 F.3d 351 (5th Cir. 2007) ..........................................................................11, 13

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)...............................................................................................10

*Algoe v. State of Tex.*,
   No. 3:15-CV-1162, 2016 WL 6902154 (N.D. Tex. Sept. 29, 2016) .................11, 13

*Armbrister v. McFarland*,
   No. 3:18-CV-1211-B-BH, 2018 WL 6004310 (N.D. Tex. Oct. 30, 2018)...........10, 15, 20, 21

*Arruda v. Curves Int'l, Inc.*,
   861 F. App'x 831 (5th Cir. 2021) ...........................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................................................8

*Austin v. Glob. Connection*,
   303 F. App'x 750 (11th Cir. 2008) .........................................................................10

*Back v. UTMB*,
   No. 6:15-cv-129, 2016 WL 9455135 (W.D. Tex. Apr. 7, 2016) ............................11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................8

*Blue v. UAL Corp.*,
   160 F.3d 383 (7th Cir. 1998) .................................................................................19

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)...............................................................................................15

*Boggs v. Boggs*,
   520 U.S. 833 (1997).................................................................................................4

*Boyle v. United States*,
   556 U.S. 938 (2009)...............................................................................................11

*Brown v. Cont'l Airlines, Inc.*,
   647 F.3d 221 (5th Cir. 2011) .................................................................................19

*In re Burzynski*,
    989 F.2d 733 (5th Cir. 1993) ........................................................................11

*Calhoun v. Att'y Gen. of Texas*,
    No. 4:20-cv-00016-P-BP, 2020 WL 6120475 (N.D. Tex. Sept. 30, 2020) ...........................10

*Cornish v. Corr. Servs. Corp.*,
    402 F.3d 545 (5th Cir. 2005) ........................................................................15

*Davis v. City of Alvarado*,
    835 F. App'x 714 (5th Cir. 2020) ...............................................................12, 20

*Delta Truck & Tractor, Inc. v. J.I. Case Co.*,
    855 F.2d 241 (5th Cir. 1988) .......................................................................2, 11

*Deramus v. Shapiro Schwartz, LLP*,
    No. 4:19-cv-4683, 2020 WL 3493545 (S.D. Tex. June 2, 2020)...............................21

*Diggs v. Tango Mgmt. Consulting, Inc.*,
    No. 3:20-CV-3425-K, 2021 WL 3793035 (N.D. Tex. Aug. 26, 2021) ...........................9

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978)..................................................................................15

*Fulton v. Hecht*,
    545 F.2d 540 (5th Cir. 1977), *cert. denied*, 430 U.S. 984 (1977).............................16

*George v. King*,
    837 F.2d 705 (5th Cir. 1988) ........................................................................20

*Green v. Nat'l Grid*,
    No. 07-CV-60S, 2010 WL 3369548 (W.D.N.Y. Aug. 24, 2010)..............................10

*United States ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Comp., L.P.*,
    491 F. Supp. 3d 220 (N.D. Tex. 2020) ...........................................................20

*Harris v. Hubbert*,
    588 F.2d 167 (5th Cir. 1979) ........................................................................15

*Jackson v. Metro. Edison Co.*,
    419 U.S. 345 (1974)..................................................................................16

*Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*,
    633 F. App'x 214 (5th Cir. 2015) .....................................................................9

*Jones v. Chevron Phillips Chem. Co. LP Health & Welfare Tr.*,
    No. A-14-CV-0761-DAE, 2014 WL 7236398 (W.D. Tex. Dec. 17, 2014) ......................9

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*,
    555 U.S. 285 (2009)..................................................................................................19

*Kopp v. Klein*,
    894 F.3d 214 (5th Cir. 2018) .......................................................................................8

*Lee v. Butts*,
    No. 11-Civ.-2358, 2012 WL 3115006 (S.D.N.Y. Aug. 1, 2012)................................10

*Livadas v. Bradshaw*,
    512 U.S. 107 (1994)...................................................................................................14

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
    751 F.3d 368 (5th Cir. 2014) .....................................................................................20

*McDonald v. Provident Indem. Life Ins. Co.*,
    60 F.3d 234 (5th Cir. 1995) .......................................................................................17

*Meyers v. Tex. Health Res.*,
    No. 3:09-CV-1402-D, 2009 WL 3756323 (N.D. Tex. Nov. 9, 2009) ...........................4

*Miletello v. R M R Mech., Inc.*,
    921 F.3d 493 (5th Cir. 2019) ...........................................................................4, 18, 19

*New Orleans City v. Ambac Assurance Corp.*,
    815 F.3d 196 (5th Cir. 2016) .......................................................................................8

*Priester v. Lowndes County*,
    354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004)...........................15

*Rodriguez v. U.S.*,
    66 F.3d 95 (5th Cir. 1995) .........................................................................................20

*Rusch v. United Health Grp. Inc.*,
    No. 2:12-CV-00128, 2013 WL 3753947 (S.D. Tex. July 15, 2013) ...........................10

*Sappore v. Arlington Career Inst.*,
    No. 3:09-CV-1671-N, 2010 WL 446076 (N.D. Tex. Feb. 8, 2010) ...........................10

*Taylor v. One Presently Unknown*,
    No. 3:06-CV-2118-B-ECF, 2007 WL 9717269 (N.D. Tex. July 11, 2007) ..................9

*Wilson v. Kimberly-Clark Corp.*,
    254 F. App'x. 280 (5th Cir. 2007) ...............................................................................4

**Statutes**

18 U.S.C. § 664............................................................................................... *passim*

18 U.S.C. § 1027 ..................................................................................................10

18 U.S.C. § 1341 .............................................................................................. *passim*

18 U.S.C. § 1343 .............................................................................................. *passim*

18 U.S.C. § 1349 .............................................................................................. *passim*

18 U.S.C. § 1961 ..........................................................................................11, 13

18 U.S.C. § 1962 ..................................................................................................11

18 U.S.C. § 1964 ..................................................................................................11

29 U.S.C. § 1056 ..................................................................................................16

29 U.S.C. § 1056(d)(3)(A) .....................................................................................4

29 U.S.C. § 1056(d)(3)(B)(i) ..................................................................................4

29 U.S.C. § 1056(d)(3)(B)(ii) .................................................................................4

29 U.S.C. § 1056(d)(3)(H)(i) ............................................................................ *passim*

29 U.S.C. § 1056(d)(3)(K) ......................................................................................4

29 U.S.C. § 1109 ..................................................................................................17

42 U.S.C. § 1983 .............................................................................................. *passim*

Employee Retirement Income Security Act of 1974 ....................................... *passim*

Racketeer Influenced and Corrupt Organizations Act ..................................... *passim*

**Other Authorities**

FED. R. CIV. P. 9(b) .............................................................................................12

FED. R. CIV. P. 12(b)(6) .................................................................................. *passim*

U.S. Const. Amend. XIV ................................................................................. *passim*

U.S. Bancorp ("U.S. Bank") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Third Amended Complaint ("Complaint") filed by Plaintiff Conghua Yan ("Plaintiff").

## I.   <u>INTRODUCTION</u>

This case arises from a divorce proceeding Plaintiff commenced in October 2021. Apparently dissatisfied with how it turned out, Plaintiff has elected to file a 434-paragraph Complaint that names no fewer than eleven defendants ranging from the counsel in his divorce action and the state court judges who presided over it, to the State Bar of Texas.  The Complaint is littered with wild allegations of malfeasance by his and his spouse's divorce attorneys, a "decade-long and widespread pattern of RICO racketeering activity" "within the family court system," (Compl. ¶¶ 6-7, 18), and a "pattern of concealment" by the State Bar to cover-up the alleged "RICO activity" (*id.* ¶ 15).  Upon amending his Complaint for a third time, Plaintiff now attempts to ensnarl his 401(k) plan administrator in this maelstrom of accusations.

U.S. Bank, through a committee, administers the U.S. Bank 401(k) Savings Plan (the "Plan"), a defined contribution plan in which Plaintiff maintains a retirement account.  The Complaint alleges that U.S. Bank reviewed a domestic relations order entered by a Texas state court (the "Domestic Relations Order"), determined that it constitutes a Qualified Domestic Relations Order ("QDRO"), and disbursed $25,000 from Plaintiff's retirement account to his wife, as the QDRO expressly required.  None of these unremarkable allegations supports the causes of action Plaintiff attempts to plead against U.S. Bank.

***First***, Plaintiff purports to assert claims under 18 U.S.C. §§ 664, 1027, 1341, 1343, and 1349; however, those are criminal statutes, none of which provides a private civil right of action.  Courts routinely dismiss under Rule 12(b)(6) claims brought under those statutes.  *Infra* § IV, A.

***Second***, Plaintiff seeks to plead a civil claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against U.S. Bank because it determined that the Domestic Relations

Order is a QDRO.  Civil RICO claims require, among other things, a showing that the defendant committed multiple predicate crimes that, together, constitute a "pattern of racketeering activity" "connected to the acquisition, establishment, conduct, or control of an enterprise."  *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988) (affirming under Rule 12(b)(6) dismissal of a RICO claim on the grounds that plaintiff failed to allege more than "a single, discrete and otherwise lawful commercial transaction").  The Complaint references three predicate crimes (18 U.S.C. § 664 ("theft or embezzlement from employee benefit plan"); 18 U.S.C. § 1341 ("frauds and swindles"); and 18 U.S.C. § 1343 ("fraud by wire, radio, or television")), but falls woefully short of plausibly alleging that U.S. Bank violated any one of those criminal statutes.  In fact, the Complaint claims that U.S. Bank was the victim—not the perpetrator—of a fraud allegedly committed by co-Defendants.  *See* Compl. ¶¶ 73, 107 (alleging that counsel in the divorce action "defraud[ed]" and "deceive[d]" U.S. Bank into disbursing a spousal support payment to Plaintiff's spouse pursuant to the QDRO).  What is more, the Complaint alleges facts that confirm U.S. Bank adhered to the Plan's QDRO procedures.  *See id.* ¶¶ 100-101, 407-409.  Plaintiff's failure to offer any factual basis supporting his conclusory contention that U.S. Bank committed predicate crimes requires dismissal of his civil RICO claim against U.S. Bank.

   ***Third***, while Plaintiff purports to allege a cause of action under 42 U.S.C. §1983 ("Section 1983") for a supposed violation of the Fourteenth Amendment of the U.S. Constitution ("Fourteenth Amendment"), the Complaint contains no factual basis from which to infer that U.S. Bank, a private entity, at any point acted "under the color of state law."  It is settled law that the absence of such allegations mandates dismissal of Section 1983 and Fourteenth Amendment claims.  *Infra* § IV, C.

**Fourth**, and finally, Plaintiff nebulously alleges (in the body of the Complaint, but not as a separate cause of action) that U.S. Bank "breached its fiduciary duty under 29 U.S.C. § 1056(d)(3)(H)(i)." That statutory provision requires a plan administrator to "separately account" for funds "payable to the alternate payee" during its review of a putative QDRO. Plaintiff was not the alternate payee (his spouse was) and, in any event, the Complaint does not allege that U.S. Bank ever failed to provide an accounting to the alternate payee (or to Plaintiff). To the extent that Plaintiff, irrespective of any supposed violation of 29 U.S.C. § 1056(d)(3)(H)(i), intended to plead a fiduciary breach claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), that fails as well because the Complaint's allegations confirm that U.S. Bank adhered to the Plan's QDRO procedures in reviewing the Domestic Relations Order, which, again, is the only substantive action ascribed to U.S. Bank. Further, the face of the Domestic Relations Order (which is referenced throughout and thereby incorporated in the Complaint) confirms that it satisfied the Plan's criteria governing QDROs, and thus U.S. Bank's QDRO determination was correct. Simply, the Complaint offers no factual basis that could plausibly support a fiduciary breach claim under ERISA.

For these reasons, as detailed herein, U.S. Bank respectfully requests that the Court dismiss with prejudice all claims asserted against U.S. Bank in the Complaint.

## II.   STATEMENT OF RELEVANT ALLEGATIONS

### A.   U.S. Bank Administers An ERISA-Governed 401(k) Plan, Which Sets Forth Procedures For Reviewing Domestic Relations Orders.

The Plan is an ERISA defined contribution plan that provides 401(k) benefits to eligible employees. *See* Appendix in support of U.S. Bancorp's Motion to Dismiss ("U.S. Bank App."),

Ex. A.[1]  U.S. Bank's Benefits Administration Committee ("Committee") serves as Administrator of the Plan.  *See* U.S. Bank App. 10 (§ 2.1.6).

Appendix C of the Plan governs QDROs and, relevant here, expressly precludes the Plan from honoring any right to payment under a domestic relations order unless it constitutes a QDRO. *See* U.S. Bank App. 98 (App. C, § 1.1).  A QDRO is an exception to ERISA's general prohibition on the assignment or alienation of employee benefits under covered plans.  29 U.S.C. § 1056(d)(3)(A).  Specifically, a QDRO is a type of domestic relations order; a domestic relations order is "any judgment, decree, or order that concerns 'the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant' and is 'made pursuant to a State domestic relations law (including a community property law).'"  *Boggs v. Boggs*, 520 U.S. 833, 846 (1997) (quoting 29 U.S.C. § 1056(d)(3)(B)(ii)).  A QDRO, in turn, "creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan."  *Id.* (citing 29 U.S.C. § 1056(d)(3)(B)(i)).  "Under a QDRO, the alternate payee is considered a beneficiary of the relevant plan" and "may be a 'spouse, former spouse, child, or other dependent of a participant.'"  *Miletello v. R M R Mech., Inc.*, 921 F.3d 493, 495 (5th Cir. 2019) (quoting 29 U.S.C. § 1056(d)(3)(K)).

To constitute a QDRO under the Plan, a domestic relations order must specify:

    i.    the name and mailing address of the Participant and the Alternate Payee;[2]

---

[1] Although Plaintiff failed to include the Plan among his numerous exhibits to the Complaint, the Court may consider it on this Motion.  *See Wilson v. Kimberly-Clark Corp.*, 254 F. App'x. 280, 284 (5th Cir. 2007) (ruling that district court properly considered an ERISA plan that the defendant attached to its motion to dismiss even though it was not enclosed with the complaint); *Meyers v. Tex. Health Res.*, No. 3:09-CV-1402-D, 2009 WL 3756323, at *3 (N.D. Tex. Nov. 9, 2009) (same).

[2] A Plan Participant's spouse or former spouse, among others, qualifies as an "Alternate Payee."  *See* U.S. Bank App. 98 (App. C., § 1.2).

ii.   the amount of the Participant's Plan account to be disbursed to each such Alternate Payee;

iii.   the payment method for disbursing the funds; and

iv.   that it applies to the Plan.

*See* U.S. Bank App. 98 (App. C., §§ 1.4.1-1.4.4).

To determine whether a domestic relations order satisfies these criteria, the Plan requires U.S. Bank to notify the Plan Participant and Alternate Payee of its receipt of the order and to provide the parties an opportunity to make comments or objections concerning whether the domestic relations order is a QDRO. U.S. Bank App. 100 (App. C., §§ 2.2.2, 2.2.3). Thereafter, U.S. Bank renders a decision as to whether the order is a QDRO. U.S. Bank App. 100-101 (App. C, § 2.2.4). If the order is deemed to be a QDRO, "the Plan ***shall*** pay all amounts required to be paid pursuant to the domestic relations order to the Alternate Payee[.]" U.S. Bank App. 101 (App. C, §§ 2.2.6, 2.3) (emphasis added).

Plaintiff, who identifies as a "professional IT expert for the banking sector," maintained an account with the Plan and thus was subject to the Plan's QDRO provisions. *See* Compl. ¶¶ 7, 94.

## B.   Plaintiff Commences A Divorce Proceeding In The State Court, Which Enters A Domestic Relations Order That Counsel Sends To U.S. Bank.

Plaintiff is married to Fuyan Wang. Compl. ¶ 71. On October 15, 2021, Plaintiff initiated divorce proceedings in the 325th District Court, Tarrant County, Texas (the "State Court") before Judge Judith G. Wells and Associate Judge Lori L. DeAngelis. *Id.* ¶ 79. Leslie Starr Barrows ("Barrows") represented Ms. Wang in the divorce proceeding, and William Albert Pigg ("Pigg") served as counsel for Plaintiff. *Id.* ¶¶ 70, 83.

According to the Complaint, on April 13, 2022, the State Court conducted a hearing at which it "ordered that Plaintiff needs to pay the fees for drafting a QDRO and Plaintiff needs to directly pay Leslie Starr Barrows and William Albert Pigg $25,000 each from his out-of-state

401K account." *Id.* ¶¶ 90, 93 (emphasis omitted).  Plaintiff asserts that, after the hearing, Barrows "contacted Plaintiff's 401K administrator, U.S. Bank," but he does not provide any details regarding that alleged communication or even confirm whether Barrows in fact spoke with (as opposed to merely "contacted") a U.S. Bank representative. *Id.* ¶ 94.

On April 26, 2022, Barrows filed with the State Court a "garnishment court order" that Plaintiff alleges was part of "a scheme and an artifice … to defraud and obtain money from Plaintiff's 401K account through false and fraudulent pretenses." *Id.* ¶¶ 96, 160.  The proposed order stated that "'[o]n April 13, 2022, the [State] Court heard Respondent's request for Spousal Support inter alia,' and 'Yan was ordered/required to pay spousal support,'" which, according to Plaintiff, "were material deceptions" because there supposedly "was no 'request for Spousal Support' heard, and Plaintiff was not ordered to pay spousal support." *Id.* ¶ 162.

Notwithstanding Plaintiff's allegations that the proposed order was an "artifice," on May 26, 2022, Judge Wells entered an Order For Garnishment Of U.S. Bank 401(k) Savings Plan (the "Domestic Relations Order").  Compl. ¶¶ 97-98, 163.  The face of the Domestic Relations Order stated that "this Court intends this order to be a Domestic Relations Order," and it "required" Plaintiff "to pay spousal support to Fuyan Wang … in the balance of $25,000.00."  U.S. Bank App. 125-126.  To those ends, the Domestic Relations Order:

     i.     identifies Plaintiff as the "Participant" and Ms. Wang as the "Alternate Payee," and lists their mailing addresses and phone numbers;

     ii.    specifies the amount ($25,000) to be disbursed by the Plan;

     iii.   orders "that the retirement account at U.S. Bank pay to Fuyan Wang, $25,000.00 from the U.S. Bank 401(k) Savings Plan of Conghua Yan to satisfy this obligation"; and

     iv.   states that it applies to the Plan.

*Id.* The Domestic Relations Order, therefore, provides the exact information that the Plan's QDRO provisions enumerate. *Supra* § II, A. After Judge Wells entered the Domestic Relations Order, counsel mailed it to U.S. Bank. Compl. ¶ 99.

**C.   U.S. Bank Reviews The Domestic Relations Order In Accordance With The Plan's QDRO Procedures And Determines That It Qualifies As A QDRO.**

Under the Plan's QDRO Procedures, the review process of a domestic relations order requires notifying the Plan Participant of its receipt of the order, providing the Plan Participant an opportunity to make comments or objections, and then issuing a determination regarding whether the order constitutes a QDRO. *Supra* § II, A. Consistent with that, the Complaint acknowledges that in July 2022, U.S. Bank "notified" Plaintiff of its receipt of the Domestic Relations Order (Compl. ¶ 100); Plaintiff was permitted to submit to U.S. Bank an "objection letter to the U.S. Bank employment retirement fund" (*id.* ¶¶ 100, 101); and U.S. Bank thereafter "determined that they should treated [sic] the 'domestic relations order' as 'qualified'" (*id.* ¶ 407). The Complaint further acknowledges that, throughout the review process, U.S. Bank regularly communicated with Plaintiff—through "mails and emails"—regarding its examination of the Domestic Relations Order. *Id.* ¶ 407.

The Complaint alleges that U.S. Bank's QDRO determination was the result of Barrows "[u]tilizing her status as an attorney and member of the State Bar of Texas" to "mislead" and "deceive" U.S. Bank into approving the Domestic Relations Order as a QDRO. *Id.* ¶ 103. Plaintiff, however, concedes that his then-attorney, Pigg, "consented to the U.S. Bank dispensing fund [sic]" pursuant to the QDRO. *Id.* ¶ 104; *see also* Compl. Ex. 1 (8/29/22 email from Pigg to Barrows stating, "US Bank approved the QDRO, so you'll be getting your money in due course").

After U.S. Bank approved the QDRO and disbursed the funds to Ms. Wang, there was apparently a dispute between Plaintiff and Pigg that led Pigg to withdraw as Plaintiff's counsel in

the State Court action. *Id.* ¶ 108. Plaintiff then filed grievance actions with the Office of the Chief Disciplinary Counsel against Pigg as well as Barrows, which were subsequently dismissed and Plaintiff's appeals thereof were denied in spring 2023. *Id.* ¶¶ 110, 113-18.

When those attempts failed, Plaintiff elected to file this action in July 2023 and, upon amending his pleading three times within two months (Dkt. 1, 27, 48), determined to name U.S. Bank as the eleventh defendant in the 434-paragraph Complaint.[3] The Complaint alleges that Pigg and Barrows acted improperly in the State Court action, and that the State Bar of Texas and justices who compose it somehow orchestrated an elaborate "RICO conspiracy" against Plaintiff. Compl. ¶ 75. None of these brazen allegations relate to U.S. Bank. As to U.S. Bank, the Complaint merely alleges that it reviewed the Domestic Relations Order in compliance with the Plan's QDRO procedures, determined that it qualified as a QDRO, and disbursed funds pursuant to it. Such allegations fall woefully short of stating a plausible claim against U.S. Bank.

## III.   <u>STANDARD OF REVIEW</u>

"[T]o survive a Rule 12(b)(6) motion to dismiss, [plaintiff] must plead 'enough facts to state a claim to relief that is plausible on its face.'" *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kopp v. Klein*, 894 F.3d 214, 218 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[3] By filing this action in this Court, Plaintiff violated the Plan's Choice of Venue clause, which requires that "[a]ll litigation in any way related to the Plan (including **but not limited to** any and all claims brought under ERISA, such as claims for benefits and claims for breach of fiduciary duty) must be filed in the United States District Court for the District of Minnesota in Hennepin County." U.S. Bank App. 81 (§ 11.8) (emphasis added). U.S. Bank expressly reserves its right to seek dismissal of this action because it is improperly venued.

Importantly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Jin Choi v. Univ. of Texas Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). Indeed, a "complaint must state sufficient facts such that the 'claim has facial plausibility' and is not merely 'possible.'" *Diggs v. Tango Mgmt. Consulting, Inc.*, No. 3:20-CV-3425-K, 2021 WL 3793035, at *2 (N.D. Tex. Aug. 26, 2021) (quoting *Iqbal*, 556 U.S. at 678). "[A] sheer possibility that a defendant has acted unlawfully" is not sufficient to satisfy a plaintiff's pleading obligations. *Iqbal*, 556 U.S. at 678.

## IV.   ARGUMENT

### A.   Plaintiff's Claims Asserted Against U.S. Bank Under 18 U.S.C. §§ 664, 1027, 1341, 1343, And 1349 Each Fail As A Matter Of Law Because None Of Those Criminal Statutes Provides For A Private Right Of Action.

The Complaint purports to assert against U.S. Bank claims under 18 U.S.C. §§ 664, 1027, 1341, 1343, and 1349. *See* Compl. p. 77 ("Ninth Claim for Relief"). Those, however, are criminal statutes, none of which provides for a private civil right of action.

Specifically, 18 U.S.C. §§ 664 ("theft or embezzlement from employee benefit plan"), 1341 ("frauds and swindles") and 1343 ("fraud by wire, radio, or television") are predicate crimes for a RICO charge. *See Taylor v. One Presently Unknown*, No. 3:06-CV-2118-B-ECF, 2007 WL 9717269, at *5 (N.D. Tex. July 11, 2007) (where complaint alleged violations of federal criminal statutes, including 18 U.S.C. §1341, granting motion to dismiss because "no private right of action independent of RICO exists under any of the federal statutes identified by the [plaintiffs]"); *Jones v. Chevron Phillips Chem. Co. LP Health & Welfare Tr.*, No. A-14-CV-0761-DAE, 2014 WL 7236398, at *3 (W.D. Tex. Dec. 17, 2014) (granting motion to dismiss claims brought under 18 U.S.C. §§ 664 and 1027 because they are criminal statutes that do not create a private right of

action); *Lee v. Butts*, No. 11-Civ-2358, 2012 WL 3115006, at * 3 (S.D.N.Y. Aug. 1, 2012) (dismissing 18 U.S.C. § 664 claim because it "is a federal penal statute and … courts have declined to permit attendant claims for civil liability"); *Austin v. Glob. Connection*, 303 F. App'x 750, 752 (11th Cir. 2008) (18 U.S.C. §§ 1341 and 1343 "are criminal statutes which do not provide for civil remedies").

While 18 U.S.C. §§ 1027 ("false statements and concealment of facts in relation to documents required by [ERISA]") and 1349 ("attempt and conspiracy") are not predicate RICO crimes, they are criminal statutes. *See Calhoun v. Att'y Gen. of Texas*, No. 4:20-cv-00016-P-BP, 2020 WL 6120475, at *4 (N.D. Tex. Sept. 30, 2020) (dismissing claim alleging a violation of 18 U.S.C. § 1349 because "the law is settled that there is no private right of action for violation of criminal statutes"); *Jones*, 2014 WL 7236398, at *3 (granting motion to dismiss claim asserted under 18 U.S.C. § 1027 because it is a criminal statute that does not create a private right of action); *Rusch v. United Health Grp. Inc*., No. 2:12-CV-00128, 2013 WL 3753947, at *13 (S.D. Tex. July 15, 2013) (on a motion to dismiss, holding that plaintiff "lacks standing to bring a claim for criminal violations under ERISA"); *Green v. Nat'l Grid*, No. 07-CV-60S, 2010 WL 3369548, at * 9 (W.D.N.Y. Aug. 24, 2010) (on a motion to dismiss, holding that "nothing in the text of 18 U.S.C. § 1027 or its legislative history suggests that it was intended to create a private cause of action").

It is settled law that "[p]rivate citizens do not have the right to bring a private action under a federal criminal statute," *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010), and "cannot enforce criminal statutes in a civil action," *Armbrister v. McFarland*, No. 3:18-CV-1211-B-BH, 2018 WL 6004310, at *4 (N.D. Tex. Oct. 30, 2018). Indeed, private rights of action to enforce federal law must be created by Congress, and courts may not create a cause of action without statutory intent. *See Alexander v. Sandoval*, 532

U.S. 275, 286-87 (2001). "Courts," therefore, "have repeatedly held that violations of criminal statutes do not give rise to a private right of action." *Back v. UTMB*, No. 6:15-cv-129, 2016 WL 9455135 (W.D. Tex. Apr. 7, 2016). Accordingly, because here "[t]he statutes that Plaintiff has cited to … are all criminal statutes[,] … any claim that Plaintiff pursues [there]under … should be dismissed for failure to state a claim." *Algoe v. State of Tex.*, No. 3:15-CV-1162, 2016 WL 6902154 at *9 (N.D. Tex. Sept. 29, 2016). Plaintiff's claims under 18 U.S.C. §§ 664, 1027, 1341, 1343, and 1349 fail as a matter of law.

**B.      Plaintiff's Civil RICO Claim Against U.S. Bank Fails Because The Complaint Provides No Factual Basis From Which To Plausibly Infer That U.S. Bank Engaged In Predicate Crimes Constituting "Racketeering Activity."**

The Complaint next asserts a claim against U.S. Bank under 18 U.S.C. § 1964, which provides a private right of action for individuals injured as a result of violations of the RICO statute (18 U.S.C. § 1962). "Reduced to its three essentials, a civil RICO claim must involve: (1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir. 1988). A "pattern of racketeering activity" requires a showing that the defendant engaged in at least "two or more predicate criminal acts that are (1) related and (2) 'amount to or pose a threat of continued criminal activity.'" *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (internal citation omitted); s*ee also In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993); *Boyle v. United States*, 556 U.S. 938 (2009). The predicate crimes that may support a civil RICO claim are enumerated in 18 U.S.C. § 1961. Although the Complaint nominally identifies three predicate claims—18 U.S.C. §§ 664, 1341, and 1343 (*see* Compl. ¶ 399)—it fails to plausibly allege facts from which to infer that U.S. Bank engaged in any of those crimes.

11

     1.     **Plaintiff Fails To Satisfy The Heightened Pleading Standard Governing The Fraud-Based Predicate Crimes Set Forth In 18 U.S.C. §§ 1341 And 1343.**

18 U.S.C. § 1341 ("frauds and swindles") and 18 U.S.C. § 1343 ("fraud by wire, radio, or television") are fraud-based predicate crimes, and thus are subject to a heightened pleading standard that demands the plaintiff "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). "This requires 'at a minimum' that a plaintiff provide the 'who, what, when, where, and how' of the alleged fraud." *Arruda v. Curves Int'l, Inc.*, 861 F. App'x 831, 834 (5th Cir. 2021) (internal quotation omitted) (affirming dismissal under Rule 12(b)(6) because plaintiffs failed to satisfy the heightened pleading standard). Plaintiff does not come close to plausibly alleging that U.S. Bank committed any predicate act.

On its face, the Complaint alleges that U.S. Bank was a victim—not a perpetrator—of fraud. That supposed fraud was allegedly committed by "[t]hree [co-]Defendants," which "used interstate mail, emails, and phone calls to defraud an employment retirement fund located in the state of Minnesota [i.e., the Plan], with the aim of conspiratorially dispensing the fund for their own use." Compl. ¶ 107. Specifically, Plaintiff alleges: "Between April and September 2022, Leslie Starr Barrows conducted multiple mail and wire fraud telecommunications with U.S. Bank and their legal counsel to try to deceive them into dispensing funds and to counter Plaintiffs [sic] objections using her own interpretation of the law." *Id.* ¶ 73. Thus, according to Plaintiff, the co-Defendants "defraud[ed]" and "deceive[d]" ***U.S. Bank***. Such allegations fall short of satisfying the heightened pleading standard governing Plaintiff's fraud claims against U.S. Bank. *See Davis v. City of Alvarado*, 835 F. App'x 714, 720 (5th Cir. 2020) (dismissing civil RICO claim that was premised on a fraud-based predicate act because plaintiff failed to allege facts satisfying the heightened pleading standard for fraud).

In any event, allegations regarding emails from court officers and "actions during [] court proceedings" "are insufficient to show a pattern of racketeering activity," and do not "give rise to any of the offenses listed as predicate acts in 18 U.S.C. § 1961(1) upon which a pattern of racketeering activity could be based." *Algoe*, 2016 WL 6902154, at *9, n.12.   The Complaint, therefore, does not allege predicate acts sufficient to state a civil RICO claim against *any* Defendant, let alone U.S. Bank—the alleged victim of a supposed fraud.

The only action that Plaintiff ascribes to U.S. Bank in purported violation of 18 U.S.C. §§ 1341 and 1343 is that U.S. Bank, upon being notified of Plaintiff's divorce action, "changed Plaintiff's marital status from 'married' to 'single' in their system without Plaintiffs [sic] knowledge." Compl. ¶ 411.   The Complaint alleges that this was done in error,[4] which U.S. Bank corrected at Plaintiff's request.   *Id.*   For predicate acts to support a civil RICO claim, they must "constitute or threaten long-term criminal activity." *Abraham*, 480 F.3d at 355.   Clearly, corrections of administrative recordkeeping entries regarding a Plan participant's marital status do not give rise to an actionable civil RICO claim.

### 2. The Allegations In The Complaint Confirming That U.S. Bank *Complied* With The Plan's QDRO Procedures Fall Woefully Short Of Plausibly Alleging A Violation Of 18 U.S.C. § 664.

The crux of Plaintiff's allegations concerning the sole other predicate crime listed in the Complaint—18 U.S.C. § 664 ("theft or embezzlement from employee benefit plan")—is directed at other Defendants in this action, not U.S. Bank.   *See* Compl. ¶ 62 ("officers of the court" in the State Court proceeding violated § 664 by entering the Domestic Relations Order); ¶ 63 ("member[s] of the State Bar of Texas" participated in a conspiracy to "abstract [sic] funds from

---

[4] Apparently, "Plaintiff's hearing date for final judgement of divorce was set to 2024 and Plaintiff isn't divorced as of today." Compl. ¶ 411.

litigant's employee welfare benefit plan"); ¶¶ 73, 102, 104 (Barrows and Pigg improperly obtained payment of fees for their legal services).

As to U.S. Bank, the Complaint merely alleges that it sent Plaintiff "mails and emails" regarding its review of the Domestic Relations Order, informed Plaintiff that it had "an obligation to comply with a 'signed order,'" and made initial and final determinations that the Domestic Relations Order qualified as a QDRO.  Compl. ¶¶ 406-409.  Far from constituting either theft or embezzlement, these alleged actions undertaken by U.S. Bank were required by the Plan's QDRO procedures.  *Supra* § II, A.  Complying with obligations under a lawful ERISA plan does not state a civil RICO claim.  Plaintiff's failure to plausibly allege that U.S. Bank engaged in predicate crimes constituting a pattern of racketeering activity that was connected to the acquisition, establishment, conduct, or control of an enterprise, renders his civil RICO claim ripe for dismissal under Rule 12(b)(6).

### C.    Plaintiff's Fourteenth Amendment And Section 1983 Claims Fail Because The Complaint Does Not Allege That U.S. Bank Acted Under The Color Of State Law.

Fourteenth Amendment claims are brought as private causes of action under Section 1983, which applies to private parties only when they acted under the color of state law.  *See* U.S. Const. Amend. XIV ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person life, liberty, or property, without due process of law…"); *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States").  Specifically, to state a Section 1983 claim, the plaintiff must allege that (1) she was deprived of a right secured by the Constitution and the laws of the United States, and (2) the deprivation occurred

14

under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

"'Under color of state law' excludes from its reach purely private conduct, no matter how discriminatory or wrongful." *Armbrister*, 2018 WL 6004310, at *3 (citing *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).  "For a private citizen … to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004).  To do so, the "plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Armbrister*, 2018 WL 6004310, at *3.

The Complaint contains no allegations that U.S. Bank, a private entity, acted under the color of state law or otherwise on behalf of, or in concert with, a state or local government to deprive Plaintiff of any constitutional right.  The absence of such allegations mandates dismissal of Plaintiff's Section 1983 and Fourteenth Amendment claims.  *See Harris v. Hubbert*, 588 F.2d 167, 168 (5th Cir. 1979) (affirming dismissal under Rule 12(b)(6) of Fourteenth Amendment and Section 1983 claims because plaintiff failed to allege "state involvement in order to bring activities within the ambit of ... the Fourteenth Amendment"); *Armbrister*, 2018 WL 6004310, at *4 ("Plaintiff makes no allegations that Defendants are state actors.  She alleges no facts to support a finding that they are state actors or that the individual Defendants … engaged in anything but private conduct. … Accordingly, Plaintiff's claims under § 1983 should be dismissed for failure to state a claim."); *Priester*, 354 F.3d at 420 (affirming dismissal under Rule 12(b)(6) of a Section 1983 claim because "the complaint does not allege an agreement between [a private citizen] and [state officials] to commit an illegal act, nor does it allege specific facts to show an agreement").

Further, to the extent Plaintiff attempts to prop-up his Section 1983 and constitutional law claims by contending that U.S. Bank is subject to state regulations and thereby acted under the color of state law when it approved the QDRO, that claim fails on its face.  *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) (affirming dismissal of a Section 1983 action because "the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment"); *Fulton v. Hecht*, 545 F.2d 540, 541 (5th Cir. 1977) (affirming dismissal under Rule 12(b)(6) because plaintiff failed to show significant state involvement by defendant, even though it operated subject to state regulation), *cert. denied*, 430 U.S. 984 (1977).  In total, Plaintiff's failure to allege that U.S. Bank acted under the color of state law mandates dismissal of his Fourteenth Amendment and Section 1983 claims.

### D.     The Complaint Fails To State An ERISA Fiduciary Breach Claim Under 29 U.S.C. § 1056(d)(3)(H)(i).

In the body of the Complaint, Plaintiff asserts that U.S. Bank "breached its fiduciary duty under 29 U.S.C. § 1056(d)(3)(H)(i)" (Compl. ¶ 406), but neither 29 U.S.C. § 1056 nor fiduciary breach is plead as a separate cause of action.  *See* Compl. p. 77.[5]  Plaintiff's pleading leaves the Court having to guess what claims he actually asserts against U.S. Bank.

#### 1.     The Complaint Does Not Allege That U.S. Bank Failed To Provide *The Alternate Payee* With An Accounting Or Otherwise Violated 29 U.S.C. § 1056(d)(3)(H)(i).

To the extent Plaintiff intended to plead as a separate cause of action "breach[] [of] fiduciary duty under 29 U.S.C. § 1056(d)(3)(H)(i)," that purported claim fails on its face.  29 U.S.C. § 1056(d)(3)(H)(i) ("Form and payment of benefits") provides, in full:

> During any period in which the issue of whether a domestic relations order is a qualified domestic relations order is being determined (by the plan administrator, by a court of competent jurisdiction, or otherwise), the plan administrator shall

---

[5] In the section heading titled "Ninth Claim for Relief," Plaintiff lists all of his claims asserted against U.S. Bank. Absent from that list is mention of fiduciary breach or 29 U.S.C. § 1056(d)(3)(H)(i).

> separately account for the amounts (hereinafter in this subparagraph referred to as the "segregated amounts") which would have been payable to the alternate payee during such period if the order had been determined to be a qualified domestic relations order.

The Complaint does not allege that U.S. Bank failed to "separately account for [segregated amounts]" or failed to conduct an accounting with respect to the Domestic Relations Order, and the Complaint does not contain facts which could otherwise give rise to a violation of this statute.

Nor does the Complaint offer any factual or legal basis for contending that a violation of 29 U.S.C. § 1056(d)(3)(H)(i) amounts to a fiduciary breach. Indeed, U.S. Bank has not identified any precedential case law where an ERISA fiduciary breach claim was even asserted on the basis of 29 U.S.C. § 1056(d)(3)(H)(i), as Plaintiff nevertheless suggests. Moreover, given that this statute provides for a right to an accounting of the segregated amounts "payable to the ***alternate payee***," Plaintiff—who was not identified as the Alternate Payee in the QDRO (*supra* §§ I, II)— does not even possess standing to assert this claim. Plaintiff's attempt to assert a claim against U.S. Bank under 29 U.S.C. § 1056(d)(3)(H)(i) is untenable.

> **2.    The U.S. Supreme Court's Plan Document Rule Forecloses Any Claim That U.S. Bank Breached Its Fiduciary Duties Under ERISA By Complying With The Plan's QDRO Provisions.**

To the extent Plaintiff intended to plead an ERISA fiduciary breach claim irrespective of a supposed violation of 29 U.S.C. § 1056(d)(3)(H)(i), that claim fails as a matter of law as well. ERISA provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109. "To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995). The only substantive actions that the

Complaint ascribes to U.S. Bank are that it reviewed the Domestic Relations Order and determined that it qualifies as a QDRO.[6]  Compl. ¶¶ 100-01, 407, 409.  It did so pursuant to the Plan's QDRO procedures, and such conduct cannot give rise to a fiduciary breach claim.

The Plan sets forth the requirements that a domestic relations order must satisfy to qualify as a QDRO, as well as procedures for Plan fiduciaries to undertake when rendering such determination.  *Supra* § II, A.  "ERISA provides an eighteen-month period for determining whether a DRO is a QDRO" and "[i]f during that period, the DRO is determined to be a QDRO, the plan administrator **must** pay the segregated amounts to the person entitled to them under the QDRO." *Miletello*, 921 F.3d at 495 (emphasis added).

The Complaint does not allege that U.S. Bank failed to review the Domestic Relations Order before determining that it is a QDRO, and nor does it allege that U.S. Bank failed to comply with the Plan's procedures for making that determination.  To the contrary, the allegations pleaded in the Complaint confirm that U.S. Bank adhered to Plan's QDRO procedures in reviewing the Domestic Relations Order.  As noted above, the Plan's QDRO procedures call for U.S. Bank to notify the Plan Participants of its receipt of the domestic relations order, provide the Plan Participant an opportunity to comment or object, and then issue a determination as to whether the order constitutes a QDRO.  *Supra* § II, A.  Plaintiff acknowledges in his Complaint that U.S. Bank "notified" Plaintiff of its receipt of the Domestic Relations Order (Compl. ¶ 100), permitted him to submit an "objection letter to the U.S. Bank employment retirement fund" (*id.* ¶¶ 100, 101), and

---

[6] Buried in his 434-paragraph pleading, Plaintiff alleges in passing that U.S. Bank "informed Plaintiff that it is Plaintiffs [sic] responsibility to seek relief for the damages resulting from the criminal acts described herein" and thereby, apparently, "shift[ed] [] legal costs to Plaintiff."  Compl. ¶ 410.  Such conclusory allegations do not support a fiduciary breach claim.  In fact, they confirm that U.S. Bank properly and correctly informed Plaintiff it could not pursue criminal actions on his behalf, and U.S. Bank indeed was under no obligation to pay for the "legal costs" associated with any such baseless criminal actions brought by Plaintiff.

then "determined that they should treated [sic] the 'domestic relations order' as 'qualified'" (*id.* ¶ 407).[7]  By Plaintiff's own admissions, U.S. Bank followed the Plan's QDRO procedures.

Further, the documents referenced throughout, and thereby incorporated in, the Complaint confirms that the determination that the domestic relations order was a QDRO was correct.  To be deemed a QDRO, the Plan instructs that the domestic relations order must: specify that it applies to the Plan, identify the name and address of the Participant and Alternate Payee; and state the amount to be distributed by the Plan.  *See* U.S. Bank App. 98.  The Domestic Relations Order entered by the State Court contains these precise terms.  *See* U.S. Bank App. 125-26.  There are no allegations contained in the Complaint from which the Court could plausibly conclude that U.S. Bank's QDRO determination was incorrect.  Indeed, "[t]he Supreme Court has observed that '[a] QDRO enquiry [by a plan administrator] is relatively discrete, given the specific and objective criteria for a domestic relations order that qualifies as a QDRO.'"  *Brown v. Cont'l Airlines, Inc*., 647 F.3d 221 (5th Cir. 2011) (internal citation omitted); *see also Blue v. UAL Corp*., 160 F.3d 383, 385 (7th Cir. 1998) ("ERISA does not require, or even permit, a [retirement plan] to look beneath the surface of the order. Compliance with a QDRO is obligatory[.]").  Upon correctly determining that the Domestic Relations Order qualified as a QDRO, the Plan disbursed the funds to the Alternate Payee identified therein (Ms. Wang), as it was required to do.  *See Miletello*, 921 F.3d at 495 ("[if] the DRO is determined to be a QDRO, the plan administrator must pay the segregated amounts to the person entitled to them under the QDRO").

Under the U.S. Supreme Court's "Plan Document Rule," fiduciaries cannot be held liable under ERISA for disbursing benefits "in conformity with the plan documents."  *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300 (2009).  In *Kennedy*, the Supreme Court

---

[7] The Complaint further acknowledges that, throughout the review period, U.S. Bank sent Plaintiff "emails and mails" in which it reminded Plaintiff that it had "an obligation to comply with a 'signed order.'"  Compl. ¶ 408.

applied the Plan Document Rule to dismiss a fiduciary breach claim where, as here, the plan administrator adhered to the plan documents in disbursing plan proceeds. *Id.* The Plan Document Rule eviscerates any attempt by Plaintiff to allege that U.S. Bank breached its fiduciary duties. The allegations plead in the Complaint, together with the documents incorporated in it, confirm that U.S. Bank followed the Plan's QDRO provisions in reviewing the Domestic Relations Order, and thus Plaintiff's fiduciary breach claim—which is premised on those very allegations—fails as a matter of law.  Whether construed as a claim for violation of 29 U.S.C. § 1056(d)(3)(H)(i) or fiduciary breach, Plaintiff fails to assert a cognizable legal claim against U.S. Bank.

### E.   Plaintiff's Claims Asserted Against U.S. Bank Should Be Dismissed With Prejudice.

Claims are dismissed with prejudice where amendment of the pleading would be futile. *United States ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Comp., L.P.*, 491 F. Supp. 3d 220, 236 (N.D. Tex. 2020).  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."  *Davis v. City of Alvarado*, 835 F. App'x 714, 719 (5th Cir. 2020) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)).  Courts order dismissal with prejudice on the basis of futility even where the plaintiff is pro se and particularly where, as here, the plaintiff has already been granted multiple opportunities to amend his pleading. *Rodriguez v. U.S.*, 66 F.3d 95, 98 (5th Cir. 1995) (affirming dismissal with prejudice of a pro se complaint where plaintiffs had been "given ample opportunity to amend their complaint"); *George v. King*, 837 F.2d 705, 708, n.2 (5th Cir. 1988) (affirming dismissal of a pro se complaint with prejudice where it was "clear that appellant [wa]s entitled to no relief").

Any further amendment of Plaintiff's *third* amended pleading would be futile.  No repleading can alter the fact that the criminal statutes pleaded in the Complaint do not provide for a private right of action. *See Armbrister*, 2018 WL 6004310, at *6 (dismissing with prejudice a

pro se plaintiff's complaint because she "cannot assert claims under criminal statutes"); *Deramus v. Shapiro Schwartz, LLP*, No. 4:19-cv-4683, 2020 WL 3493545, at *2 (S.D. Tex. June 2, 2020) ("[B]ecause 18 U.S.C. § 1341, 1342, 1344, 1348, 1349 and 1350 … do not display any indication of Congressional intent to create a private right and a private remedy, Plaintiff's claims for violations of these statutes should be dismissed with prejudice under Rule 12(b)(6)[.]").

With respect to the civil RICO claim, this claim is premised on alleged wrongdoing ascribed to other Defendants arising from Plaintiff's divorce proceeding, disputes with counsel for their conduct therein, and the grievance proceedings that resulted therefrom—none of which U.S. Bank had any involvement in.   Plaintiff has not, and cannot, plausibly allege that U.S. Bank— which merely served as Plaintiff's 401(k) plan administrator—committed predicate crimes constituting a "pattern of racketeering activity" sufficient to state a civil RICO claim.

Equally so, Plaintiff cannot establish that U.S. Bank, a private entity, was acting under the color of state law when it reviewed the Domestic Relations Order, and thus his claims under Section 1983 and the Fourteenth Amendment are futile.  *See Armbrister*, 2018 WL 6004310, at *6 (dismissing with prejudice a pro se plaintiff's complaint under Rule 12(b)(6) because her Section 1981 claims failed since defendants were not state actors).

The Complaint's allegation that U.S. Bank "breached its fiduciary duty under 29 U.S.C. § 1056(d)(3)(H)(i)" is equally futile.  29 U.S.C. § 1056(d)(3)(H)(i) entitles the alternate payee to an accounting, and it is undisputed that Plaintiff was not the alternate payee.  *See* U.S. Bank App. 125.  Further, the face of the Complaint confirms that U.S. Bank followed the Plan's QDRO provisions, and therefore the Plan Document Rule precludes Plaintiff's fiduciary breach claim as a matter of law.

No re-pleading, however artful, can overcome these structural deficiencies of Plaintiff's claims.  Plaintiff's *third* amended complaint should be dismissed with prejudice.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, U.S. Bank respectfully asks the Court to dismiss with prejudice Plaintiff's Third Amended Complaint pursuant to Rule 12(b)(6).

Respectfully submitted,

Dated:  January 11, 2024                **MORGAN, LEWIS & BOCKIUS LLP**

*/s/*    *Tyler J. Hill*
Tyler J. Hill
Texas Bar No. 24130505
Morgan, Lewis & Bockius LLP
1717 Main Street, Ste. 3200
Dallas, Texas 75201
Tyler.J.Hill@morganlewis.com
Tel: (214) 466-4160
Fax: (214) 466-4001

*Counsel for Defendant U.S. Bancorp*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing document was filed via the ECF filing system and therefore served on all counsel and parties of record.

Dated:  January 11, 2024                        /s/          *Tyler J. Hill*
                                                          Tyler J. Hill