# EXHIBIT A

**U.S. BANK**
**401(k) SAVINGS PLAN**
**Amended and Restated Effective January 1, 2020**

U.S. Bank App. 01

**U.S. BANK**
**401(k) SAVINGS PLAN**
**Amended and Restated Effective January 1, 2020**

### TABLE OF CONTENTS

SECTION 1    INTRODUCTION ........................................................................... 2

    1.1.    History ...................................................................................... 2

    1.2.    Restatement ............................................................................. 2

    1.3.    No Reduction of Protected Benefits ........................................ 2

SECTION 2    DEFINITIONS .............................................................................. 3

    2.1.    Definitions ................................................................................ 3

SECTION 3    ELIGIBILITY AND PARTICIPATION ......................................... 17

    3.1.    General Eligibility Rule ........................................................... 17

    3.2.    Enrollment .............................................................................. 17

SECTION 4    CONTRIBUTIONS AND ALLOCATION THEREOF ........................ 18

    4.1.    Employer Contributions .......................................................... 18

    4.2.    Earnings Reduction Contributions .......................................... 18

    4.3.    Matching Contributions .......................................................... 20

    4.4.    Discretionary Contributions .................................................... 21

    4.5.    Rollover Contributions ........................................................... 21

    4.6.    Catch-up Contributions .......................................................... 22

    4.7.    Voluntary Contributions ......................................................... 23

    4.8.    Limitation on Allocations ....................................................... 24

    4.9.    Effect of Disallowance of Deduction or Mistake of Fact ....... 24

    4.10.    Vesting.................................................................................. 24

SECTION 5    INVESTMENT AND ADJUSTMENT OF ACCOUNTS ..................... 25

    5.1.    Profit Sharing Portion ............................................................. 25

    5.2.    ERISA Section 404(c) Compliance ........................................ 30

    5.3.    Valuation and Adjustment of Accounts .................................. 31

    5.4.    Management and Investment of Fund ..................................... 31

    5.5.    Trading Restrictions ............................................................... 32

SECTION 6    DISTRIBUTIONS ........................................................................ 33

SECTION 7    DISTRIBUTION ........................................................................... 34

i

## TABLE OF CONTENTS
(continued)

**Page**

| | | | |
|---|---|---|---|
| 7.1. | Distribution to Participants Upon Distributable Event | | 34 |
| 7.2. | Distribution to Participants Prior to Severance of Employment | | 36 |
| 7.3. | Distribution to Beneficiary | | 42 |
| 7.4. | Designation of Beneficiaries | | 42 |
| 7.5. | General Distribution Rules | | 47 |
| 7.6. | Loans | | 51 |
| SECTION 8 | SPENDTHRIFT PROVISIONS | | 59 |
| SECTION 9 | AMENDMENT AND TERMINATION | | 60 |
| 9.1. | Amendment | | 60 |
| 9.2. | Discontinuance of Contributions and Termination of Plan | | 60 |
| 9.3. | Merger or Spinoff of Plans | | 60 |
| 9.4. | Adoption by Affiliates | | 61 |
| SECTION 10 | CONCERNING THE TRUSTEE | | 63 |
| 10.1. | Dealings with Trustee | | 63 |
| 10.2. | Compensation of Trustee | | 63 |
| 10.3. | Resignation and Removal of Trustee | | 64 |
| 10.4. | Accountings by Trustee | | 64 |
| 10.5. | Trustee's Power to Protect Itself on Account of Taxes | | 65 |
| 10.6. | Other Trust Powers | | 65 |
| 10.7. | Investment Managers | | 70 |
| 10.8. | Indemnity | | 70 |
| 10.9. | Additional Trust Terms | | 71 |
| 10.10. | Advance Funds or Securities | | 72 |
| 10.11. | Damages | | 72 |
| SECTION 11 | DETERMINATIONS — RULES AND REGULATIONS | | 73 |
| 11.1. | Determinations | | 73 |
| 11.2. | Claims and Review Procedure | | 73 |
| 11.3. | Rules and Regulations | | 75 |
| 11.4. | Deadline to File Claim | | 76 |
| 11.5. | Exhaustion of Administrative Remedies | | 76 |

U.S. Bank App. 03

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 11.6. | Deadline to File Legal Action | 76 |
| 11.7. | Knowledge of Fact by Participant Imputed to Beneficiary | 76 |
| 11.8. | Choice of Law | 76 |
| 11.9. | Choice of Venue | 76 |
| SECTION 12 | OTHER ADMINISTRATIVE MATTERS | 77 |
| 12.1. | Company | 77 |
| 12.2. | Committees | 77 |
| 12.3. | Limitation on Authority | 77 |
| 12.4. | Conflict of Interest | 77 |
| 12.5. | Dual Capacity | 78 |
| 12.6. | Administrator | 78 |
| 12.7. | Named Fiduciaries | 78 |
| 12.8. | Service of Process | 78 |
| 12.9. | Administrative Expenses | 78 |
| 12.10. | IRS Qualification | 78 |
| 12.11. | Method of Executing Instruments | 78 |
| 12.12. | Receipt of Documents | 79 |
| 12.13. | Powers of Attorney | 79 |
| 12.14. | Guardians and Conservators | 79 |
| SECTION 13 | IN GENERAL | 80 |
| 13.1. | Disclaimers | 80 |
| 13.2. | Reversion of Fund Prohibited | 81 |
| 13.3. | Continuity | 81 |
| 13.4. | Contingent Top Heavy Plan Rules | 81 |
| 13.5. | Compliance With Uniformed Services Employment and Reemployment Rights Act of 1994 and Heroes Earnings Assistance and Relief Tax Act of 2008 | 81 |
| 13.6. | Plan Statement Controls | 81 |
| 13.7. | Rules of Interpretation | 82 |
| SCHEDULE I | PARTICIPATING EMPLOYERS | I-1 |

U.S. Bank App. 04

**TABLE OF CONTENTS**
(continued)

**Page**

SCHEDULE II        RECOGNIZED EMPLOYMENT OF UNITED STATES
                   CITIZENS OUTSIDE THE UNITED STATES.....................................II-1

SCHEDULE III       COLLECTIVE FUND / GROUP TRUST ..............................................III-1

       APPENDIX A   LIMITATION ON ANNUAL ADDITIONS .....................................A-1

       APPENDIX B   CONTINGENT TOP HEAVY PLAN RULES...................................B-1

       APPENDIX C   QUALIFIED DOMESTIC RELATIONS ORDERS .........................C-1

       APPENDIX D   401(k), 401(m) & 402(g) COMPLIANCE .........................................D-1

       APPENDIX E   SPECIAL RULES ...............................................................................E-1

U.S. Bank App. 05

**U.S. BANK**
**401(k) SAVINGS PLAN**
**Amended and Restated Effective January 1, 2020**

THIS AGREEMENT, is made and entered into as of the 1st day of January, 2020, by and between U.S. Bancorp, a Delaware corporation (hereinafter sometimes referred to as the "Company"), and, solely with respect to Sections 2.1.21, 2.1.40, 4.1.3, 4.1.9, 5, 7.6.7, 8, 10, 12, 13.1, Exhibit A, 1.1.4, 2.2.4, and 3.2.4 of Appendix D, and 1.8 of Appendix E. U.S. Bank National Association, a national banking association, as trustee (said trustee and its successor or successors in trust from time to time being hereinafter collectively referred to as the "Trustee").

WHEREAS, the Company has heretofore established a qualified plan and trust, within the meaning of Code section 401(a) and that is intended to be exempt from tax pursuant to Code section 501(a), and which, in its most recent amended and restated form, is embodied in an instrument entitled "U.S. Bank 401(k) Savings Plan", which has been amended from time to time (said restatement, as heretofore amended its terms are contained in a document entitled, "U.S. Bank 401(k) Savings Plan (2016 Restatement)" being hereinafter sometimes referred to as the "Prior Plan Statement"); and

WHEREAS, the Company has reserved to itself the power to amend the Plan; and

WHEREAS, the Company previously amended the Plan effective January 1, 2016; and

WHEREAS, it is desired to amend and restate the Plan; and

NOW, THEREFORE, the Plan is hereby amended and restated, effective as of January 1, 2020, to read in full as follows:

# SECTION 1

## INTRODUCTION

1.1.    **History**. This restatement, known as the "U.S. Bank 401(k) Savings Plan, Amended and Restated Effective January 1, 2020", sets forth the terms of the plan (the "Plan"). It restates the Plan, the terms of which were previously set forth in the document entitled, "U.S. Bank 401(k) Savings Plan (2016 Restatement)," as amended.

1.2.    **Restatement**. The provisions of this restatement of the Plan (which is an amendment of the Plan) shall apply with respect to any Participant who completes at least one Hour of Service on or after January 1, 2020, except as may expressly be provided otherwise herein. In addition, the administrative provisions of this restatement of the Plan (the claim procedures, venue, choice of law, and other administrative provisions) shall apply to all Participants, Beneficiaries, and Alternate Payees. Except as may be hereinafter provided, this restatement of the Plan shall not affect the rights of, or benefit payable to or with respect to, any Participant who died, retired or otherwise terminated employment before January 1, 2020.

1.3.    **No Reduction of Protected Benefits**. Nothing in this amendment and restatement of the Plan, or in any subsequent amendment of this Plan, shall cause any "section 411(d)(6) protected benefits" (as defined by Treasury Regulations section 1.411(d)-4) of any Participant to be reduced, eliminated or made subject to discretion in a way that violates Code section 411(d)(6), valid regulations thereunder, or any other provision of the Code or ERISA. If any such amendment would appear to have the effect of reducing a protected accrued benefit, such amendment shall not be given effect to reduce the accrued benefit below the level immediately prior to the effective date of the amendment (but such amendment may have the effect of temporarily or indefinitely curtailing the accrual of additional benefits). If any such amendment would appear to have the effect of reducing any other type of section 411(d)(6) protected benefit, such amendment shall not be given effect with respect to the portion of the Participant's benefit accrued prior to the effective date of the amendment.

U.S. Bank App. 07

**SECTION 2**

**DEFINITIONS**

2.1.    **Definitions**. When the following terms are used herein with initial capital letters, they shall have the following meanings:

2.1.1.    **Accounts**— the following Accounts will be maintained under the Plan for Participants:

(a)    **Total Account**— for convenience of reference, a Participant's entire interest in the Fund, including the Participant's Earnings Reduction Account, Earnings Reduction Pre-Tax Account, Matching Contribution Account, Rollover Account, Transfer Account, Voluntary Account, Roth 401(k) Account, Roth Conversion Match Account, Roth Conversion Account, Roth Conversion – Other Employer Account, Roth Rollover Account, and any other separate accounts or subaccounts that reflect the various types of contributions and transfers that are permitted under the Plan. A Participant's Total Account may also be referred to by the term "Account." A Participant's rights with respect to such separate accounts or subaccounts shall be determined in accordance with the terms of the Plan or, if applicable, the terms of the Plan as in effect at the time such separate accounts or subaccounts were established.

(b)    **Earnings Reduction Account**— a Participant's Earnings Reduction Pre-Tax Account and the Roth 401(k) Account.

(c)    **Earnings Reduction Pre-Tax Account**— the account maintained for each Participant to which is credited the Employer contributions made in consideration of such Participant's pre-tax Earnings Reduction Agreement pursuant to Section 4.2 (or the comparable provisions of the Predecessor Plans), together with any increase or decrease thereon.

(d)    **Matching Contribution Account**— the account maintained for each Participant to which is credited the Participant's allocable share of the Employer Matching Contributions made pursuant to Section 4.3 (or the comparable provisions of the Predecessor Plans), or made pursuant to Section 3.3 of Appendix D (or the comparable provisions of the Predecessor Plans), together with any increase or decrease thereon.

(e)    **Rollover Account**— the account maintained for each Participant to which is credited the Participant's rollover contributions made pursuant to Section 4.5 hereof (or the comparable provisions of the Predecessor Plans), together with any increase or decrease thereon.

(f)    **Transfer Account**— the account maintained for each Participant to which is credited the Participant's interest, if any, transferred from another

3

qualified plan by the trustee of such other plan and not credited to any other Account, together with any increase or decrease thereon.

(g)     **Voluntary Account**— the account maintained for each Participant to which is credited any voluntary after-tax contributions made by the Participant to a Predecessor Plan, together with any increase or decrease thereon.

(h)     **Roth 401(k) Account**— the account maintained for a Participant to which are credited (i) the Participant's after-tax contributions designated as Roth contributions made in accordance with section 402A of the Code under Section 4.2, and (ii) the Participant's converted pre-tax contributions, together with any increase or decrease thereon.

(i)     **Roth Conversion Match Account**— the account maintained for a Participant to which are credited (i) the Participant's converted 2002-2007 employer matching contributions, (ii) the Participant's converted post-2007 employer matching contributions, and (iii) the Participant's prior acquisition account 3 amounts, together with any increase or decrease thereon.

(j)     **Roth Conversion Account**— the account maintained for a Participant to which are credited the Participant's prior employer account 2 amounts, together with any increase or decrease thereon.

(k)     **Roth Conversion – Other Employer Account**— the account maintained for a Participant to which are credited (i) the Participant's converted 1999-2001 employer matching contributions, (ii) the Participant's employer match 2002-2007, (iii) the Participant's safe harbor match post 2007, and (iv) the Participant's converted employer contributions (prior acquisition account 1 amounts) transferred into the Plan as a result of an acquisition, together with any increase or decrease thereon.

(l)     **Roth Rollover Account**— the account maintained for a Participant to which are credited (i) the Participant's Roth rollover contributions, (ii) the Participant's converted rollover contributions, (iii) the Participant's converted after-tax contributions, (iv) the Participant's prior employer contributions account 1 amounts, and (v) the Participant's prior acquisition account 2 amounts, together with any increase or decrease thereon.

(m)     **Other Accounts and Subaccounts**— The Benefits Administration Committee shall have the authority to establish such other accounts and subaccounts as it shall determine to be necessary from time to time for such purposes as the Benefits Administration Committee shall determine to be appropriate, including, without limitation, the segregation of qualified voluntary employee contributions made under a Predecessor Plan, together with any increase or decrease thereon.

4

U.S. Bank App. 09

2.1.2. **Affiliate**— a business entity which is under "common control" with the Company or which is a member of an "affiliated service group" that includes the Company, as those terms are defined in section 414(b), (c) and (m) of the Code. A business entity which is a predecessor to the Company shall be treated as an Affiliate if the Company maintains a plan of such predecessor business entity or if, and to the extent that, such treatment is otherwise required by regulations prescribed by the Secretary of the Treasury under section 414(a) of the Code. A business entity shall also be treated as an Affiliate if, and to the extent that, such treatment is required by regulations under section 414(o) of the Code.

2.1.3. **Alternate Payee**— any spouse, former spouse, child or other dependent of a Participant who is recognized by a qualified domestic relations order as having a right to receive all or a portion of the Account of a Participant under the Plan.

2.1.4. **Annual Valuation Date**— each December 31 (or, if such date is not a Valuation Date, then the Annual Valuation Date shall instead be the nearest preceding Valuation Date).

2.1.5. **Beneficiary or Beneficiaries**— the person or persons designated by a Participant (or automatically by operation of this Plan Statement) to receive any benefit payable under the terms of this Plan Statement to a Beneficiary. A person so designated shall not be considered a Beneficiary until the Participant dies.

2.1.6. **Benefits Administration Committee**— a committee of the Company which, in general, is responsible for the administration of the Plan as outlined in this Plan Statement and its bylaws (this responsibility does not include selecting, monitoring and terminating investments and Subfunds of the Plan).

2.1.7. **Code**— the Internal Revenue Code of 1986, as amended, including applicable regulations for the specified section of the Code. Any reference in this Plan Statement to a section of the Code, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

2.1.8. **Company**— U.S. Bancorp, a Delaware corporation, and any successor thereto.

2.1.9. **Compensation Committee**— the Compensation Committee of the Board of Directors of the Company. References to the Compensation Committee shall mean the Compensation Committee or its delegate.

2.1.10. **Disability**— a physical or mental condition that (i) the person or entity responsible for determining benefit eligibility under the Company's separate plan of long-term disability benefits has determined renders the Participant eligible for long-term disability income loss benefits under such plan, or (ii) solely in the case of a Participant who is not covered by such plan (for example, because the Participant is not in employment covered by such plan or because the Participant has opted out of coverage) at the time

5

short-term disability benefits for the condition end, the Social Security Administration has determined renders the Participant eligible for Social Security disability benefits. A Participant shall cease to be treated as having a Disability for purposes of this Plan when the relevant person or entity (or in the case of a Participant whose Disability was established by the Social Security Administration, such Administration) determines that the Participant is no longer eligible for the disability benefits that originally established the Participant's Disability.

2.1.11. **Distributable Even**t— any of the occurrences described in SECTION 6 by reason of which a Participant or Beneficiary may become entitled to a distribution from the Plan

2.1.12. **Earnings Reduction Agreement**— the agreement or agreements entered into (or deemed under default rules of the Benefits Administration Committee to be entered into) by a Participant as provided in Section 4.2 hereof.

2.1.13. **Earnings Reduction Contributions**— a Participant's pre-tax and Roth contributions contributed to the applicable Account for the Participant under an Earnings Reduction Agreement (including through automatic enrollment) under Section 4.2.2.

2.1.14. **Effective Date**— January 1, 2020.

2.1.15. **Eligibility Service**— a measure of an employee's service with the Company and all Affiliates which is equal to the number of computation periods in which the employee is credited with at least one thousand (1,000) Hours of Service; subject, however, to the following rules:

(a)     **Computation Periods**. The computation periods for determining Eligibility Service shall be the twelve (12) consecutive month period beginning with the date the employee first performs an Hour of Service and all Plan Years beginning after such date (regardless of any termination of employment and subsequent reemployment); provided, however, that in addition to the computation periods listed above, an employee whose employment with the Company and its Affiliates terminates and who subsequently is reemployed by the Company and its Affiliates shall also have a computation period beginning with the date the employee first performs an Hour of Service on or after the date of the employee's reemployment. Hours of Service for a Plan Year for this Section and other Sections shall be the Hours of Service for which the Participant is paid in that Plan Year (rather than worked in the Plan Year).

(b)     **Completion**. A year of Eligibility Service shall be deemed completed as of the last day of the computation period (irrespective of the date during such period that the employee completed one thousand Hours of Service). Fractional years of Eligibility Service shall not be credited.

6

(c)　**Pre-Acquisition Service**. If a person commences employment with an Employer after January 1, 2002, such employment is described in the limitation on Recognized Employment stated in Section 2.1.31(a)(v), and to the extent specified in the agreement governing such acquisition or to the extent the Benefits Administration Committee declares such employment to be Recognized Employment, the person's pre-acquisition service for the acquired trade or business shall be recognized for the purpose of determining such person's Eligibility Service.

2.1.16. **Employer**— the Company, each corporation listed in Schedule I to this Plan Statement (which may be updated at any time without the need for a formal Plan amendment), and any business entity affiliated with the Company that adopts the Plan pursuant to Section 9.4 and subject to such limitations (not inconsistent with federal law) as the Company may impose with respect to the extent that service with such business entity prior to such adoption will be recognized hereunder, and any successor thereof that adopts the Plan. In addition, effective January 1, 2020, each Affiliate that enters the Company's controlled group as a result of a corporate transaction shall become an Employer under the Plan to the extent provided in the purchase agreement governing the corporate transaction that resulted in the Affiliate entering the Company's controlled group.

2.1.17. **Employer Discretionary Contribution**—the employer discretionary contribution (if any) made pursuant to Section 4.4.

2.1.18. **Employer Matching Contribution**—the employer matching contribution made pursuant to Section 4.3.

2.1.19. **Enrollment Date**— the first day of the full payroll period occurring as soon as administratively practicable following an employee's date of hire or rehire.

2.1.20. **ERISA**— the Employee Retirement Income Security Act of 1974, as amended, including applicable regulations for the specified section of ERISA. Any reference in this Plan Statement to a section of ERISA, including the applicable regulation, shall be considered also to mean and refer to any subsequent amendment or replacement of that section or regulation.

2.1.21. **ESOP Portion**— the portion of the Plan that is a tax-qualified stock bonus plan under section 401(a) of the Code and an employee stock ownership plan under section 4975(e) of the Code. The ESOP Portion of the Plan at any time consists of all amounts invested in the ESOP Subfund.

2.1.22. **ESOP Subfund**— the Subfund established pursuant to Section SECTION 5 to hold the ESOP Portion of the Plan.

2.1.23. **Fund**— the assets of the Plan held by the Trustee from time to time, including all contributions and the investments and reinvestments, earnings and profits

7

thereon, whether invested under the general investment authority of the Trustee or under the terms applicable to any Subfund established pursuant to SECTION 5.

2.1.24. **Highly Compensated Employee**— any employee who (a) is a five percent (5%) owner (as defined in Appendix B) at any time during the current Plan Year or the preceding Plan Year, or (b) receives compensation from the Company and all Affiliates during the preceding Plan Year in excess of the dollar limit in effect under section 414(q)(1)(B) of the Code for such preceding Plan Year (as adjusted under the Code for cost-of-living increases). For this purpose, "compensation" means compensation as defined in Appendix A for purposes of section 415 of the Code. Compensation for any employee who performed services for only part of a year is not annualized for this purpose.

2.1.25. **Hours of Service**— a measure of an employee's service with the Company and all Affiliates, determined for a particular computation period and equal to the number of hours credited to the employee under the following rules:

(a)    **Paid Duty**. An Hour of Service shall be credited for each hour for which the employee is paid, or entitled to payment, for the performance of duties for the Company or an Affiliate. These Hours of Service shall be credited to the employee for the computation period or periods in which the duties are performed.

(b)    **Paid Nonduty**. An Hour of Service shall be credited for each hour for which the employee is paid, or entitled to payment, by the Company or an Affiliate on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence; provided, however, that:

(i)    no more than five hundred one (501) Hours of Service shall be credited on account of a single continuous period during which the employee performs no duties (whether or not such period occurs in a single computation period) unless such Hours of Service in excess of five hundred one (501) Hours are due to Disability or to a period for which the employee is entitled to short-term disability pay continuation benefits;

(ii)    no Hours of Service shall be credited on account of payments made under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation or disability insurance laws;

(iii)    no Hours of Service shall be credited on account of payments which solely reimburse the employee for medical or medically related expenses incurred by the employee; and

8

(iv)      payments shall be deemed made by or due from the Company or an Affiliate whether made directly or indirectly from a trust fund or an insurer to which the Company or an Affiliate contributes or pays premiums.

These Hours of Service shall be credited to the employee in accordance with applicable regulations for the computation period for which payment is made or, if the payment is not computed by reference to units of time, the Hours of Service shall be credited to the first computation period in which the event for which any part of the payment is made occurred.

(c)      **Back Pay**. An Hour of Service shall be credited for each hour for which back pay, irrespective of mitigation of damages, has been either awarded or agreed to by the Company or an Affiliate. The same Hours of Service credited under paragraph (a) or (b) shall not be credited under this paragraph (c). The crediting of Hours of Service under this paragraph (c) for periods and payments described in paragraph (b) shall be subject to all the limitations of that paragraph. These Hours of Service shall be credited to the employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

(d)      **Unpaid Absences**.

(i)      **Military Leaves**. During a period of absence due to "Qualified Military Service" (as defined in Code section 414(u)(5), if the employee both entered such service and returned to employment with an Employer or an Affiliate from such service under circumstances entitling the employee to reemployment rights under federal law with respect to such service, the employee shall be credited with the number of Hours of Service which otherwise would normally have been credited but for such leave of absence; provided, however, that if the employee does not return to employment for any reason other than death, Disability or attainment of Normal Retirement Age within the time prescribed by federal law for the retention of reemployment rights, such Hours of Service shall not be credited.

(ii)      **Parenting Leaves**. To the extent not otherwise credited and solely for the purpose of determining whether a One-Year Break in Service has occurred, Hours of Service shall be credited to an employee for any period of absence from work beginning in Plan Years commencing after December 31, 1984, due to pregnancy of the employee, the birth of a child of the employee, the placement of a child with the employee in connection with the adoption of such child by the employee or for the purpose of caring for such child for a period beginning immediately following such birth or placement.

9

U.S. Bank App. 14

The employee shall be credited with the number of Hours of Service which otherwise would normally have been credited to such employee but for such absence. If it is impossible to determine the number of Hours of Service which would otherwise normally have been so credited, the employee shall be credited with eight (8) Hours of Service for each day of such absence. In no event, however, shall the number of Hours of Service credited for any such absence exceed five hundred one (501) Hours of Service. Such Hours of Service shall be credited to the computation period in which such absence from work begins if crediting all or any portion of such Hours of Service is necessary to prevent the employee from incurring a One-Year Break in Service in such computation period. If the crediting of such Hours of Service is not necessary to prevent the occurrence of a One-Year Break in Service in that computation period, such Hours of Service shall be credited in the immediately following computation period (even though no part of such absence may have occurred in such subsequent computation period). These Hours of Service shall not be credited until the employee furnishes timely information which may be reasonably required by the Company to establish that the absence from work is for a reason for which these Hours of Service may be credited.

(e)     **Special Rules**. An Employee will not receive credit for the same Hour of Service under more than one subsection of this section. To the extent not inconsistent with other provisions hereof, Department of Labor Regulations 29 C.F.R. § 2530.200b-2(b) and (c) are hereby incorporated by reference herein. To the extent required under section 414 of the Code, services of leased employees, leased owners, leased managers, shared employees, shared leased employees and other similar classifications by the Company or an Affiliate shall be taken into account as if such services were performed as a common law employee of the Company for the purposes of determining Eligibility Service. (These classifications of persons are not employees. They are, therefore, not eligible to participate in this Plan or accrue benefits under this Plan for such services.) Application of the leased employee rules under section 414(n) of the Code shall be subject to the following: (i) "contingent services" shall mean services performed by a person for the Company or an Affiliate during the period the person has not performed the services on a substantially full time basis for a period of at least twelve (12) consecutive months, (ii) except as provided in (iii), contingent services shall not be taken into account for purposes of determining Eligibility Service, (iii) contingent services performed by a person who has become a Leased Employee shall be taken into account for purposes of determining Eligibility Service, and (iv) all service performed as a Leased Employee (i.e., all service following the date an individual has satisfied all three requirements for becoming a Leased Employee) shall be taken into account for purposes of determining Eligibility Service.

10

U.S. Bank App. 15

(f)     **Equivalency**. Notwithstanding anything to the contrary in this Section 2.1.25, with respect to any period during which an employee is engaged in service for which the Company does not count hours worked(including certain periods during which no duties were performed), Hours of Service shall be credited at the rate of forty-five (45) Hours of Service for each week with respect to which, under the provisions of this section (other than this paragraph), such employee would be entitled to credit for at least one (1) Hour of Service.

2.1.26. **Investment Committee**— a committee of the Company which, in general, has  final and binding discretionary authority to manage and oversee Plan investments, including (i) determining the types of investments in which the Fund is to be invested (e.g., equity, bond, or alternative investments); (ii) allocating the amount of allocation in a targeted area to be invested in an individual investment or separate account; (iii) selecting, monitoring, and terminating investment advisors, investment managers and other individuals and entitles to assist in the management and oversight of Plan investments; (iv) monitoring the performance of investments; and (v) such other rights and powers necessary or convenient to carry out its function hereunder, whether or not such rights and powers are specifically enumerated herein. The Investment Committee may hire an investment advisor to monitor the performance of investments and report to the Investment Committee. In exercising its responsibilities hereunder, the Investment Committee may use agents to manage and administer the Plan investments, including, without limitation, Employers or investment managers, or other employees.  References in the Plan to the Investment Committee shall include its agents and delegates as appropriate based on the context.

2.1.27. **Investment Manager**— that person other than the Trustee appointed by the Investment Committee pursuant to Section 10.7 to manage all or a portion of the Fund.

2.1.28. **Leased Employee**— any individual (other than an employee of the Company or an Affiliate) who performs services for the Company or an Affiliate if (i) services are performed under an agreement between the Company or an Affiliate and any other individual or company, (ii) the individual performs services for the Company or an Affiliate on a substantially full time basis for a period of at least twelve (12) consecutive months, and (iii) the individual's services are performed under the primary direction or control of the Company or an Affiliate. In determining whether an individual is a Leased Employee of the Company or an Affiliate, all prior service with the Company or an Affiliate (including employment as a common law employee) shall be used for purposes of satisfying (ii) above. No individual shall be considered a Leased Employee unless and until all conditions have been satisfied.

2.1.29. **Non-Proprietary Subfunds**— a separate pool of assets of the Fund set aside for investment purposes under SECTION 5 managed by an entity other than the Company or an Affiliate of the Company.

2.1.30. **Normal Retirement Age**— the date a Participant attains age sixty-five (65) years.

11

2.1.31. **Participant**— an employee of an Employer who becomes a Participant in the Plan in accordance with the provisions of SECTION 3. An employee who has become a Participant shall be considered to continue as a Participant in the Plan until the earliest of the following: (i) the date of the Participant's death, or (ii) the date of the Participant's termination of employment if the Participant no longer has any account under the Plan (that is, the Participant has received a distribution of all of the Participant's Total Account, if any). An employee who has not become a Participant in the Plan in accordance with the provisions of SECTION 3 and who makes a rollover contribution to the Plan in accordance with the provisions of SECTION 4 shall be considered a Participant solely for the purpose of making the rollover contribution and receiving a distribution upon a Distributable Event in accordance with the provisions of SECTION 7.

2.1.32. **Plan**— the "U.S. BANK 401(k) SAVINGS PLAN." The ESOP Portion of the Plan is intended to be a tax-qualified stock bonus plan under Code section 401(a) and an employee stock ownership plan under Code section 4975(e)(7). The remainder of the Plan, the Profit Sharing Portion, is intended to be a tax-qualified profit sharing plan within the meaning of Code section 401(a), including portions that are intended to satisfy the requirements of 401(k), 414(v) and 401(m).

2.1.33. **Plan Statement**— the document entitled the "U.S. BANK 401(k) SAVINGS PLAN (2016 Restatement)", as the same may be amended from time to time.

2.1.34. **Plan Year**— the twelve (12) consecutive month period ending on any December 31.

2.1.35. **Predecessor Plans**— the U.S. Bank 401(k) Savings Plan (2002 Restatement) and other predecessor plans, including any amended and restated Plan in effect prior to January, 1, 2020.

2.1.36. **Profit Sharing Portion**— the portion of the Plan that is intended to be a tax-qualified profit sharing plan (and not a stock bonus plan or employee stock ownership plan), including the portions that are intended to satisfy the requirements of Code section 401(k), 414(v) and 401(m). The Profit Sharing Portion of the Plan at any time consists of all assets of the Plan other than those invested in the ESOP Subfund.

2.1.37. **Proprietary Subfunds**— a separate pool of assets of the Fund set aside for investment purposes under SECTION 5 managed by the Company or an Affiliate of the Company.

2.1.38. **Qualifying Employer Securities**— common stock of U.S. Bancorp, or of a corporation which is a member of a controlled group of corporations including U.S. Bancorp within the meaning of section 407(d)(7) of ERISA, which is readily tradable on an established securities market. If there is no such common stock, Qualifying Employer Securities shall mean only that class of common stock having a combination of voting power and dividend rights equal to or in excess of: (i) that class of common stock having the greatest voting power, and (ii) that class of common stock having the greatest dividend rights. Notwithstanding the foregoing, noncallable preferred stock shall be treated as

12

Qualifying Employer Securities if such stock is convertible at any time into stock which satisfies those requirements and if such conversion is at a conversion price which (as of the date of the acquisition by the Plan) is reasonable. For the purposes of the preceding sentence, to the extent permitted by applicable regulations, preferred stock shall be treated as noncallable if after the call there will be reasonable opportunity for a conversion which meets the requirements of the preceding sentence.

2.1.39. **Recognized Compensation**— wages within the meaning of section 3401(a) of the Code for purposes of federal income tax withholding at the source but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in section 3401(a)(2) of the Code) and paid to the Participant by the Company and its Affiliates for the applicable period; subject, however, to the following:

(a)   **Included Items**. In determining a Participant's Recognized Compensation there shall be included all of the following: (i) elective contributions made by the Company on behalf of the Participant that are not includible in gross income under sections 125, 132(f), 402(e)(3), 402(h), 403(b), 414(h)(2) and 457 of the Code (including elective contributions authorized by the Participant under a cafeteria plan or any qualified cash or deferred arrangement under section 401(k) of the Code), (ii) amounts deferred by the Participant under a nonqualified deferred compensation plan maintained by the Company, and (iii) payments for accrued vacation not taken but paid out.

(b)   **Excluded Items**. In determining a Participant's Recognized Compensation there shall be excluded all of the following: (i) expense reimbursements, car allowances and other similar payments, including foreign service allowances, station allowances, foreign tax equalization payments and other similar payments, (ii) welfare and fringe benefits (cash and noncash), including tuition reimbursements, payments under an adoption assistance program, disability payments (but not continued payment of a Participant's normal compensation under the Company's policy regarding short-term absences for medical reasons), payments for sick leave accrued but not taken, and final payments on account of termination of employment (e.g., severance payments), (iii) all noncash remuneration including income imputed from below-market loans and from insurance coverages and premiums, (iv) employee discounts and other similar amounts, (v) moving expenses, (vi) payments under a nonqualified deferred compensation plan, (vii) the value of all stock options and stock appreciation rights (whether or not exercised), restricted stock, and other similar amounts, (viii) cash payments in lieu of retirement plan contributions that could not be made due to the application of section 401(a)(17) of the Code, (ix) retention bonuses, (x) amounts paid under the U.S. Bancorp Incentive Cash Bonus

13

U.S. Bank App. 18

and Retention Plan, (xi) amounts of prizes; (xii) effective January 1, 2021, sign-on bonuses.

(c)     **Pre-Participation Employment**. Remuneration paid by the Company and its Affiliates attributable to periods prior to the date the Participant became a Participant in the Plan shall not be taken into account in determining the Participant's Recognized Compensation.

(d)     **Non-Recognized Employment**. Remuneration paid by the Company and its Affiliates for employment that is not Recognized Employment shall not be taken into account in determining a Participant's Recognized Compensation.

(e)     **Attribution to Periods**. A Participant's Recognized Compensation shall be considered attributable to the period in which it is actually paid and not when earned or accrued.

(f)     **Excluded Periods**. Amounts processed coincident with and after the payroll update following the second payroll after a Participant's termination of employment are excluded. Any amounts processed on and after that payroll update are excluded (even if dated as of a prior date).

(g)     **Annual Maximum**. A Participant's Recognized Compensation shall be limited as required by applicable law.

2.1.40. **Recognized Employment**— all service with the Company and its Affiliates by persons classified by the Company and its Affiliates as an employee on both payroll and personnel records; subject, however, to the following:

(a)     **Exclusions**. Service classified by the Company and its Affiliates as being performed in any of the following categories of employment shall be excluded from Recognized Employment:

(i)     employment in a unit of employees whose terms and conditions of employment are subject to a collective bargaining agreement between the Company and its Affiliates and a union representing that unit of employees, unless (and to the extent) such collective bargaining agreement provides for the inclusion of those employees in the Plan;

(ii)     employment of a nonresident alien who is not receiving any earned income from the Company and its Affiliates which constitutes income from sources within the United States;

(iii)     employment of a United States citizen or a United States resident alien outside the United States unless and to the extent the Benefits

14

Administration Committee shall declare such employment to be Recognized Employment;

(iv)    employment in a division or facility of the Company and its Affiliates which is not in existence on January 1, 2002 (that is, was acquired, established, founded or produced by the liquidation or similar discontinuation of a separate subsidiary after January 1, 2002) unless and to the extent the Benefits Administration Committee shall declare such employment to be Recognized Employment;

(v)    employment by an Company and its Affiliates that began as a result of the Company and its Affiliates' acquisition, by merger, asset purchase, or otherwise, of all or a portion of a trade or business, unless and to the extent the Benefits Administration Committee shall declare such employment to be Recognized Employment;

(vi)    employment for which the person accrues or accrued benefits under any other tax-qualified defined contribution pension plan of the Company and its Affiliates or an Affiliate;

(vii)    employment of an employee of a foreign entity by an Employer pursuant to a secondment arrangement between the Employer and the foreign entity unless and until the Principal Sponsor shall declare such employment to be Recognized Employment; and

(viii)    employment of an employee who is transferred from a foreign entity by an Employer where at the time of transfer the intention is that the employee will work for the Employer for a limited period of time (including periods of years or longer) before returning to the foreign entity unless and until the Benefits Administration Committee shall declare such employment to be Recognized Employment.

(b)    **Non-Employees**. Service performed for the Company and its Affiliates by an individual who is not classified by the Company and its Affiliates as an employee on both payroll and personnel records shall not be considered Recognized Employment. Without limiting the generality of the foregoing, such service shall include service performed by an individual classified by the Company and its Affiliates as a Leased Employee, leased owner, leased manager, shared employee, shared leased employee, temporary worker, independent contractor, contract worker, agency worker, freelance worker or other similar classification.

(c)    **Effect of Classification**. The Company and its Affiliates' classification of an individual at the time of inclusion in or exclusion from Recognized Employment shall be conclusive for the purpose of the foregoing rules. No reclassification of an individual's status with the Company and its

15

Affiliates, for any reason, without regard to whether it is initiated by a court, governmental agency or otherwise and without regard to whether or not the Company and its Affiliates agrees to such reclassification, shall result in the individual being retroactively included in Recognized Employment. Notwithstanding anything to the contrary in this provision, however, the Benefits Administration Committee may declare that a reclassified individual will be included in Recognized Employment prospectively. Any uncertainty concerning an individual's classification shall be resolved by excluding the individual from Recognized Employment.

2.1.41. **Subfund**— a separate pool of assets of the Fund set aside for investment purposes under SECTION 5.

2.1.42. **Trustee**— U.S. Bank National Association, a national banking association, and its successor or successors in trust. Where the context requires, Trustee shall also mean and refer to any one or more co-trustees serving hereunder. The Trustee shall be selected, monitored and terminated by the Benefits Administration Committee.

2.1.43. **Valuation Date**— each day on which trading is conducted on the New York Stock Exchange.

2.1.44. **Vested**— nonforfeitable.

16

## SECTION 3

## ELIGIBILITY AND PARTICIPATION

3.1.    **General Eligibility Rule**.

    3.1.1.    **Participation and Eligibility Continued After Effective Date**. An employee who was a participant in a Predecessor Plan immediately prior to the Effective Date and who is in Recognized Employment on the Effective Date shall be a Participant on the Effective Date, and eligible to make Earnings Reduction Contributions and to receive Employer Matching Contributions.

    3.1.2.    **Participation and Eligibility to Make Earning Reduction Contributions**. Each employee who is hired or re-hired into Recognized Employment shall become a Participant automatically enrolled as of the next Enrollment Date. If the employee is not initially hired or re-hired into Recognized Employment, the employee shall not become a Participant until the first Enrollment Date following the date on which the employee enters Recognized Employment.

3.2.    **Enrollment**. An employee who is hired, rehired, or transferred into Recognized Employment shall be automatically enrolled as of the next Enrollment Date to become a Participant unless the employee (i) elects not to be automatically enrolled, and (ii) does not enter into an Earnings Reduction Agreement. If an employee declines to enroll when first eligible to do so, the employee may enroll as of any subsequent Enrollment Date by completing an Earnings Reduction Agreement and delivering it to the Benefits Administration Committee prior to that Enrollment Date. The Benefits Administration Committee may, but need not, permit such enrollment to be made by telephonic, electronic or similar methods, in lieu of an enrollment in writing, and shall determine what information shall be required to be furnished in connection with the Participant's enrollment.

17

## SECTION 4

## CONTRIBUTIONS AND ALLOCATION THEREOF

4.1.    **Employer Contributions**.

4.1.1.    **Source of Employer Contributions**. All Employer contributions to the Plan may be made without regard to profits.

4.1.2.    **Limitation**. The contribution of an Employer to the Plan for any year, when considered in light of its contribution for that year to all other tax-qualified plans it maintains, shall, in no event, exceed the maximum amount deductible by it for federal income tax purposes as a contribution to a tax-qualified profit sharing plan under section 404 of the Code. Each such contribution to the Plan is conditioned upon its deductibility for such purpose.

4.1.3.    **Form of Payment**. The appropriate contribution of an Employer to the Plan, determined as herein provided, shall be paid to the Trustee and may be paid either in cash or in common shares of an Employer or of any successor or in other assets of any character of a value equal to the amount of the contribution or in any combination of the foregoing ways.

4.2.    **Earnings Reduction Contributions**.

4.2.1.    **Earnings Reduction – Automatic Enrollment**. Each employee who becomes a Participant shall be automatically enrolled in the Plan with an Earnings Reduction Agreement of two percent (2%) of the amount of Recognized Compensation on a pre-tax basis which otherwise would be paid to the Participant by an Employer each payday, and for equal amounts to be contributed by an Employer to the Participant's Earnings Reduction Pre-Tax Account in the Plan. An employee may terminate, increase or decrease this Earnings Reduction Agreement as provided in this Section prior to and after this automatic enrollment becoming effective. The Benefits Administration Committee may from time to time establish rules amending the automatic enrollment features of the Plan. The automatic reduction shall be made by an Employer from the Participant's Recognized Compensation each payday until terminated, increased or decreased by the Participant. Such Earnings Reduction Contributions and any elective contributions made under any other plans of an Employer and Affiliates for a taxable year of a Participant, however, shall not exceed the limit in effect for such taxable year under Code section 402(g).

4.2.2.    **Earnings Reduction Agreements**. Subject to the following rules, each Participant may execute an Earnings Reduction Agreement which provides for a reduction of not less than one percent (1%) nor more than seventy five percent (75%) of the amount of Recognized Compensation (after other deductions have been taken and taxes withheld from Recognized Compensation) which otherwise would be paid to the Participant by an Employer each payday, and for equal amounts to be contributed by an Employer to the Plan. The cumulative amount a Participant's pre-tax and Roth contributions cannot exceed

18

seventy-five percent (75%) of the amount of Recognized Compensation. The Benefits Administration Committee may from time to time establish rules changing the minimum and maximum allowable reduction. The reduction agreed to by the Participant shall be made by an Employer from the Participant's Recognized Compensation each payday for so long as the Earnings Reduction Agreement remains in effect. Such Earnings Reduction Contributions and any elective contributions made under any other plans of an Employer and Affiliates for a taxable year of a Participant, however, shall not exceed the limit in effect for such taxable year under Code section 402(g). The Benefits Administration Committee may impose at any time restrictions on the percent of the amount of Recognized Compensation that a Highly Compensated Employee may contribute, including but not limited to reducing the percent of the amount elected by a Highly Compensated Employee under an Earnings Reduction Agreement.

4.2.3. **Modification of Earnings Reduction Agreements**. Earnings Reduction Agreements may be modified as follows:

(a)     Increase or Decrease. A Participant may, upon giving prior notice in a manner authorized by the Benefits Administration Committee, amend a Participant's Earnings Reduction Agreement to increase or decrease the amount of reduction effective as of the first payday following the pay period in which the notice is given.

(b)     Cancellation of Earnings Reductions. A Participant who has an Earnings Reduction Agreement in effect may, upon giving prior notice in a manner authorized by the Benefits Administration Committee, completely terminate the Agreement effective as of the first payday following the pay period in which the notice is given which is designated by the Participant. Thereafter, such Participant may, upon giving prior notice in a manner authorized by the Benefits Administration Committee, enter into a new Earnings Reduction Agreement effective as of the first payday following the pay period in which the notice is given if, on that first payday, the Participant is employed in Recognized Employment.

(c)     Termination of Recognized Employment. The Earnings Reduction Agreement of a Participant who ceases to be employed in Recognized Employment shall be terminated automatically as soon as administratively feasible after the date the Participant ceases to be employed in Recognized Employment. If such Participant returns to Recognized Employment, the Participant may, upon giving prior notice in a manner authorized by the Benefits Administration Committee, enter into a new Earnings Reduction Agreement effective as of the date of the Participant's return to Recognized Employment or effective as of the first payday following the month in which the notice is given which is designated by the Participant.

(d)     Form of Agreement. The Benefits Administration Committee shall specify the form of all Earnings Reduction Agreements, the form of any notices

regarding such Agreements and all procedures for the delivery and acceptance of forms and notices.

4.2.4. **Amount**. An Employer shall contribute to the Trustee for deposit in the Fund the reduction in Recognized Compensation which was agreed to by each Participant pursuant to an Earnings Reduction Agreement.

4.2.5. **Allocation**. The Earnings Reduction Contribution made with respect to each Participant shall be credited to that Participant's Earnings Reduction Pre-Tax Account or Roth Account, as applicable, as soon as practicable after it is received by the Trustee.

4.2.6. **Section 401(k) Compliance**. Contributions made in accordance with Earnings Reduction Agreements described in this Section 4.2 shall satisfy the nondiscrimination requirements of section 401(k) of the Code by applying the applicable rules set forth in Appendix D.

4.3. **Matching Contributions**.

4.3.1. **Amount**. An Employer shall contribute to the Plan, on behalf of each Participant eligible under Section 4.3.2, an amount equal to one hundred percent (100%) of the Participant's reduction in Recognized Compensation for the Plan Year pursuant to an Earnings Reduction Agreement, up to a maximum Matching Contribution of four percent (4%) of the Participant's Recognized Compensation.

4.3.2. **Eligibility**. A Participant shall be eligible to receive Employer Matching Contributions as of the first day of the month following the month in which the employee has completed one (1) year of Eligibility Service; provided, however, that, if the employee's first Hour of Service occurred on the first day of a month and the employee completed one (1) year of Eligibility Service in his or her first computation period, the employee shall become eligible to receive Employer Matching Contributions on the first day of the second month following the month in which the employee completes one (1) year of Eligibility Service (subject to being in Recognized Employment on that day). If a Participant eligible to receive Employer Matching Contributions terminates employment with the Company and its Affiliates and is subsequently reemployed by the Company and its Affiliates, then such Participant shall be eligible to receive Employer Matching Contributions as of the subsequent Enrollment Date. If a Participant not eligible to receive Employer Matching Contributions terminates employment with the Company and its Affiliates and is subsequently reemployed by the Company and its Affiliates, then such employee must complete one (1) year of Eligibility Service in order to receive Employer Matching Contributions.

4.3.3. **Allocation**. The Employer Matching Contribution which is made with respect to a Participant shall be allocated to that Participant's Matching Contribution Account for the Plan Year with respect to which it is made and, for the purposes of SECTION 5, shall be credited as soon as practicable after it is received by the Trustee.

20

4.4.    **Discretionary Contributions**.

    4.4.1.    **General**. The Company may (but shall not be required to) make discretionary contributions from year to year during the continuance of the Plan in such amounts as the Company shall from time to time determine.

    4.4.2.    **Allocation**. The Employer Discretionary Contribution for a Plan Year (if one is made) shall be allocated to the employer profit sharing accounts of eligible Participants under Section 4.4.3. The discretionary contribution shall be allocated to the employer profit sharing accounts of eligible Participants in the ratio which the Recognized Compensation of each such eligible Participant for the Plan Year bears to the Recognized Compensation for such Plan Year of all such eligible Participants. The amount so allocated to an eligible Participant shall be allocated to such Participant's employer profit sharing account for the Plan Year with respect to which it is made and, for the purposes of SECTION 4, shall be credited as soon as practicable after it is received by the Trustee.

    4.4.3.    **Eligible Participants**. For purposes of Section 4.4.2, a Participant shall be an eligible Participant for a Plan Year only if such Participant is employed in Recognized Employment on the last day of such Plan Year. Any Participant who is then on parental leave and any Participant called to active service in the Armed Forces of the United States whose benefit is protected under USERRA shall be deemed to meet this requirement. No other Participant (including, without limitation, Participants who have severed or terminated employment, retired, or died) shall be eligible to receive a discretionary contribution.

4.5.    **Rollover Contributions**.

    4.5.1.    **Eligible Contributions**. An employee in Recognized Employment may contribute to the Plan, in such form and manner as may be prescribed by the Benefits Administration Committee, an amount equal to: (a) all or a portion of the amount received by the employee as an eligible rollover distribution from an eligible retirement plan as described in this Section, or (b) an amount transferred directly to the Plan (pursuant to section 401(a)(31) of the Code) on the employee's behalf by the trustee of an eligible retirement plan as defined in Section 7.5.2(b) of the Plan, but only if the deposit qualifies as a rollover as defined in section 402 of the Code (or section 408 of the Code, with respect to a rollover from an individual retirement account under section 408(b) of the Code). Employees whose Recognized Employment began as a result of the Company's acquisition by merger, asset purchase or otherwise of all or a portion of a trade or business may also contribute promissory notes for loans made to the employee under the tax-qualified plan of the employee's previous employer, that are received by the employee in an eligible rollover distribution from an eligible retirement plan as defined in Section 7.5.2(b). These Rollover Contributions shall be subject to such conditions and limitations as the Benefits Administration Committee may prescribe from time to time for administrative convenience and to preserve the tax-qualified status of the Plan (including, without limitation, delaying the acceptance of Rollover Contributions from sources that were not permitted sources prior to the Effective Date until such acceptance becomes administratively feasible). The Plan will not accept a rollover of after-tax contributions. The Plan will also accept Roth

21

rollover contributions from an eligible retirement plan as defined in Section 7.5.2(b) other than a plan described in sections 408(a) or 408(b) of the Code.  Roth rollover contributions shall be contributed to the Roth Rollover Account. Notwithstanding anything in this Section 4.5.1 to the contrary, the Plan will not accept as a rollover the amount received by an employee as a "plan loan offset amount" or "qualified plan loan offset amount" as defined under Code section 402(c)(3)(C).

4.5.2.  **Specific Review**. The Benefits Administration Committee shall have the right to reject or return any such Rollover Contribution if, in its opinion, the acceptance thereof might jeopardize the tax-qualified status of the Plan or unduly complicate its administration, but the acceptance of any such Rollover Contribution shall not be regarded as an opinion or guarantee as to the tax consequences which may result to the contributing employee thereby.

4.6.   **Catch-up Contributions**.

4.6.1.  **Enrollment**. A Participant who has attained, or will attain, age fifty (50) prior to the end of a calendar year and whose Earnings Reduction Contributions for that calendar year reach the dollar limit under Code section 402(g) (the "402(g) limit") before the last day of that calendar year will be deemed to have elected to make additional contributions from his or her Recognized Compensation. Such additional contributions shall be in the same percent of Recognized Compensation as the percent in effect for the Participant's Earnings Reduction Contributions when the 402(g) limit was reached and shall continue for the remainder of the calendar year, subject to the Participant's election to discontinue contributions or to contribute a different percent of Recognized Compensation. If a Participant is not expected to reach the 402(g) limit but has elected to defer the maximum percent of Recognized Compensation permitted under Section 4.2 for the entire calendar year, the Participant may elect to contribute an additional amount of his or her Recognized Compensation. Contributions authorized by this Section 4.6.1 shall be referred to as "Catch-up Contributions".

4.6.2.  **Separate Subaccount**. Catch-up Contributions deducted by an Employer from the Participant's Recognized Compensation shall be credited to a separate subaccount in that Participant's Earnings Reduction Pre-Tax Account or Roth 401(k) Account, as applicable.

4.6.3.  **Limitations and Testing**. Except as hereinafter provided for re-characterized Catch-up Contributions and notwithstanding any other provision of this Plan Statement to the contrary, the following rules shall apply to Catch-up Contributions.

(a)   **Section 402(g) Annual Limit**. Catch-up Contributions shall not be subject to the annual contribution limit under section 402(g) of the Code, but shall be subject to the applicable annual contribution limit specified in section 414(v) of the Code.

U.S. Bank App. 27

(b) **ADP Testing**. Catch-up Contributions shall not be subject to the average deferral percentage test under section 401(k) of the Code and Appendix D of this Plan Statement.

(c) **§ 415(c) Annual Addition Limit**. Catch-up Contributions shall not be subject to the limitation on annual additions to the Participant's Account under section 415(c) of the Code and Appendix A of this Plan Statement.

(d) **Matching Contributions**. Catch-up Contributions, whether initially designated under Section 4.6.1 or re-characterized as Catch-up Contributions under Section 4.6.5, shall be eligible for any Employer Matching Contributions.

4.6.4. **Re-characterization of Catch-up Contributions as Elective Contributions**. To the extent that, apart from Catch-up Contributions, a Participant has failed to make the maximum allowable elective contributions for the Participant's taxable year (i.e., the Participant could have made additional elective contributions (i) without exceeding the 402(g) limit, (ii) without exceeding the maximum allowed after the application of the average deferral percentage test specified in section 401(k) of the Code and Appendix D of this Plan Statement, (iii) without exceeding the limitations on annual additions under section 415(c) of the Code and Appendix A of this Plan Statement, and (iv) without exceeding any other limit imposed under the Plan), any amounts initially characterized as Catch-up Contributions shall be, as of the last day of the calendar year, re-characterized as Earnings Reduction Contributions (and not Catch-up Contributions). Any amounts re-characterized shall be treated as Earnings Reduction Contributions (and not Catch-up Contributions) for all purposes of the Plan.

4.6.5. **Re-characterization of Elective Contributions as Catch-up Contributions**. To the extent that (i) a Participant is eligible to make Catch-up Contributions as provided under Section 4.6.1, (ii) the Participant has excess elective deferrals (either in excess of the annual contribution limit under section 402(g) of the Code, in excess of the percent limit in Section 4.2.1 of this Plan Statement, or in excess of the average deferral percentage test specified in section 401(k) of the Code and Appendix D of this Plan Statement), and (iii) the Participant has not exceeded the applicable annual contribution limit specified in section 414(v) of the Code, any amount initially characterized as Earnings Reduction Contributions (and not as Catch-up Contributions) shall be re-characterized as Catch-up Contributions to the extent permitted under section 414(v) of the Code. Any amounts re-characterized shall be treated as Catch-up Contributions (and not Earnings Reduction Contributions) for all purposes of the Plan.

4.7. **Voluntary Contributions**. The Plan no longer accepts voluntary contributions. Any nondeductible voluntary contributions made in accordance with one of the Predecessor Plans shall be held in the Voluntary Account and shall continue to share in any trust earnings or losses, and be distributed in accordance with the provisions of SECTION 7.

U.S. Bank App. 28

4.8.     **Limitation on Allocations**. In no event shall amounts be allocated to the Account of any Participant if, or to the extent, such amounts would exceed the limitations set forth in Appendix A to this Plan Statement.

4.9.     **Effect of Disallowance of Deduction or Mistake of Fact**. All Employer contributions to the Plan are conditioned on their qualification for deduction for federal income tax purposes under section 404 of the Code. If such deduction should be disallowed, in whole or in part, for any Employer contribution to the Plan for any year, or if any Employer contribution to the Plan is made by reason of a mistake of fact, then there shall be calculated the excess of the amount contributed over the amount that would have been contributed had there not occurred a mistake in determining the deduction or a mistake of fact. The Benefits Administration Committee, at its election, may direct the Trustee to return such excess, adjusted for its pro rata share of any net loss (but not any net gain) in the value of the Fund which accrued while such excess was held therein, to the Company within one (1) year of the disallowance of the deduction or the mistaken payment of the contribution, as the case may be. If the return of such amount would cause the balance of any Account of any Participant to be reduced to less than the balance which would have been in such Account had the mistaken amount not been contributed, however, the amount to be returned to the Company shall be limited so as to avoid such reduction.

4.10.    **Vesting**. Each Participant's Total Account shall be fully (100%) Vested at all times.

U.S. Bank App. 29

**SECTION 5**

**INVESTMENT AND ADJUSTMENT OF ACCOUNTS**

5.1.    **Profit Sharing Portion**.

    5.1.1.    **Establishing Commingled Subfunds**. The Investment Committee may direct the Trustee to divide the Fund into two (2) or more Subfunds, which shall serve as vehicles for the investment of Participants' Accounts. The Investment Committee shall select the Subfunds and shall determine whether the Subfunds shall be managed by the Trustee or by one or more Investment Managers. The Investment Committee shall determine, with the advice of the Trustee or such Investment Manager or Managers, the general investment characteristics and objectives of each Subfund. The Trustee or Investment Manager, as the case may be, shall have complete investment discretion over each Subfund assigned to it, subject only to the general investment characteristics and objectives established for the particular Subfund.

    5.1.2.    **Individual Subfunds**. The Investment Committee may (but is not required to) establish additional Subfunds that consist solely of all or a part of the assets of a single Participant's Total Account, which assets the Participant controls by investment directives to the Trustee and which may not be commingled with the assets of any other Participant's Accounts.  The establishment of any additional Subfunds shall be subject to such rules and procedures established by the Investment Committee.

        (a)    **Number of Subfunds**. The Investment Committee shall determine the number (if any) of Proprietary Subfunds and Non-Proprietary Subfunds offered as investment options to Participants. The Investment Committee may, from time to time, increase or decrease the number of Subfunds offered as investments.

        (b)    **Proprietary Subfunds**. The Investment Committee shall set the types of Proprietary Subfunds offered as investments. The Investment Committee shall select, monitor and terminate Proprietary Subfunds.

        (c)    **Non-Proprietary Subfunds**. The Investment Committee shall set the types of Non-Proprietary Subfunds offered as investments. The Investment Committee shall select, monitor and terminate Non-Proprietary Subfunds.

        (d)    **Investment Advice**. The Investment Committee may select one or more entities to provide investment advice to the Investment Committee and to assist the Investment Committee with monitoring Subfunds.

        (e)    **Limitations**. In no event shall a Participant be allowed to direct the investment of assets in an individual Subfund in any work of art, rug or antique, metal or gem, stamp or coin, alcoholic beverage or other similar tangible personal property if the investment in such property shall have been prohibited by the Secretary of the Treasury. Notwithstanding anything to

25

U.S. Bank App. 30

the contrary in Section 10, each Participant, each Beneficiary and each Alternate Payee for whom an individually directed Subfund is maintained shall be responsible for the exercise of any voting or similar rights which exist with respect to assets in such individually directed Subfund. The Trustee shall cooperate with Participants, Beneficiaries and Alternate Payees to permit them to exercise such rights. The Trustee shall not independently exercise such rights. Any Beneficiary of a deceased Participant with an individually directed Subfund shall have the responsibility to direct investments for such Subfund until the Beneficiary directs the Trustee otherwise in writing.

5.1.3.   **Self-Directed Brokerage Account**. In addition to the individual Subfunds offered under the Profit Sharing Portion and the Qualifying Employer Securities under the ESOP Portion (collectively referred to as the "Core Investments"), the Plan may offer a self-directed brokerage account through which a Participant may direct that a portion of the Participant's Total Account be invested. The self-directed brokerage account shall be subject to such rules and procedures established by the Benefits Administration Committee.

5.1.4.   **Operational Rules**. The Investment Committee may (but is not required to) establish additional Subfunds that consist solely of all or a part of the assets of a single Participant's Total Account, which assets the Participant controls by investment directives to the Trustee and which may not be commingled with the assets of any other Participant's Accounts.

5.1.5.   **ESOP Subfund**. The Company intends the ESOP Subfund to be a permanent investment option with respect to the Plan; provided, however, that the Investment Committee shall have the authority to freeze or eliminate the ESOP Subfund in the exercise of its duties and responsibilities under the Plan and section 404(a) of ERISA.

5.1.6.   **Investment of ESOP Portion**. The ESOP Portion is designed to invest primarily in Qualifying Employer Securities and shall be so invested to the extent Qualifying Employer Securities are available and consistent with the reasonably anticipated liquidity needs of the ESOP Subfund. In no event shall the Trustee pay more than adequate consideration for Qualifying Employer Securities which it purchases for the Plan. In no event shall the Trustee receive less than adequate consideration for Qualifying Employer Securities that it sells for the Plan.

5.1.7.   **Diversification**. Any amounts in a Participant's ESOP Account may be reinvested at any time in other Subfunds. All diversification and reinvestment elections authorized by this Section 5.1.7 shall be made in accordance with such rules regarding the form of such elections, the manner of their filing and the information required to be furnished as may be established from time to time by the Benefits Administration Committee.

5.1.8.   **Dividends**. Dividends on Qualifying Employer Securities in the ESOP Subfund shall be allocated to each person who has any portion of his or her Total Account

invested in the ESOP Portion of the Plan in proportion to their ESOP Subfund balances on the applicable dividend record date. Dividends allocated to a Participant or Beneficiary shall be subject to the following rules:

(a) **Election on Dividend Investment or Payment**. Participants and Beneficiaries shall have the opportunity to elect whether any dividends allocated to them shall be paid in cash or invested in the ESOP Subfund. Such elections shall remain in force until changed by the Participant or Beneficiary. If the Participant or Beneficiary does not make an initial election, then any dividend allocated to that Participant or Beneficiary shall be invested in the ESOP Subfund. The Benefits Administration Committee shall establish the form of the election, the procedures for making the election, the frequency of the election (provided that the frequency is not less than once a year), and the restrictions, if any, on the period during which the election may be made.

(b) **Payment of Dividends Directly to Participant or Beneficiary or to Trustee**. For those Participants and Beneficiaries who elect to receive their dividends in cash, such dividends may, at the discretion of the Benefits Administration Committee, be paid by U.S. Bancorp either directly to such Participant or Beneficiary or to the Trustee. If such dividends are paid to the Trustee, the Trustee shall pay the dividends to such Participant or Beneficiary not later than ninety (90) days after the end of Plan Year during which such dividends were paid to the Trustee. The Benefits Administration Committee may decide to use either method or both methods in any Plan Year, so long as the methods are applied to in a nondiscriminatory manner. Such payment shall not be considered a distribution under SECTION 7 and shall not qualify as an eligible rollover distribution.

(c) **Reinvestment of Dividends**. Any reinvestment of dividends in the ESOP Subfund shall not be treated as an annual addition for the purposes of section 415 of the Code, as an elective contribution for purposes of section 401(k) of the Code, or as an employee contribution for purposes of section 401(m) of the Code.

5.1.9. **Voting of Employer Securities**. The Trustee shall vote Qualifying Employer Securities held in the Fund as specified below.

(a) **Issuance of Proxies**. As soon as practicable after notice of any shareholders' meeting is received by the Trustee from the issuer of such Qualifying Employer Securities, the Trustee shall prepare and deliver to each Participant and Beneficiary of a deceased Participant a form of proxy (and related materials, all of which shall be the same in form and content as are issued to shareholders in general) directing the Trustee as to how it shall vote at such meeting, or any adjournment thereof, the Participant's or Beneficiary's share of the Qualifying Employer Securities with voting

27

rights held in the ESOP Subfund as of the most recent Valuation Date for which a valuation has been completed.

(b) **Voting of Securities**. The Trustee shall vote all Qualifying Employer Securities with voting rights for which it has received timely directions from Participants and Beneficiaries in accordance with such directions. The combined fractional shares of Participants and Beneficiaries shall be voted to the extent possible to reflect the directions of the Participants and Beneficiaries with fractional shares. The Trustee shall not honor or recognize any proxy given by any Participant or Beneficiary to any person other than the Trustee. The directions received by the Trustee from Participants and Beneficiaries shall be held by the Trustee in confidence and shall not be divulged or released to any person, including officers or employees of the Company or any Affiliate, except as necessary to administer the Plan.

(c) **Nonresponse**. The Trustee shall vote any Qualifying Employer Securities for which it has not received instructions at least five (5) days (or such other period as the Benefits Administration Committee may designate) prior to the shareholder meeting in the same proportions as the Qualifying Employer Securities for which it did receive timely instructions.

5.1.10. **Tender Offer**. This Subsection shall be effective only if and when the Trustee determines that a bona fide tender offer has been made for some or all of the Qualifying Employer Securities held in the ESOP Subfund. A bona fide tender offer shall be deemed to have been made if the maker of the offer has filed copies of the offer with the Securities and Exchange Commission pursuant to section 14(d)(1) of the Securities Exchange Act of 1934.

(a) **Receipt of Tender**. Upon the receipt by the Trustee of such an offer for some or all of the ESOP Subfund's Qualifying Employer Securities, the Trustee shall prepare and deliver to each Participant and Beneficiary of a deceased Participant a notification (and related materials, all of which shall be the same in form and content as are issued to shareholders in general) of the existence of such a tender offer and shall solicit from each such Participant and Beneficiary binding directions with respect to whether the Trustee should tender the shares held for the benefit of such Participant or Beneficiary.

(b) **Tender of Securities**. The Trustee shall tender Qualifying Employer Securities for which it has received timely directions from Participants and Beneficiaries, as directed. The combined fractional shares of Participants and Beneficiaries shall be tendered (or not) to the extent possible to reflect the directions of Participants and Beneficiaries with fractional shares. The Trustee shall not honor or recognize any proxy given by any Participant or Beneficiary to any person other than the Trustee. The directions received by the Trustee from Participants and Beneficiaries shall be held by the Trustee

28

U.S. Bank App. 33

in confidence and shall not be divulged or released to any person, including officers or employees of the Company or any Affiliate, except as necessary to administer the Plan.

(c)    **Nonresponse**. The Trustee shall tender any Qualifying Employer Securities for which it has not timely received instructions in the same proportions as the Qualifying Employer Securities for which it did receive timely instructions.

(d)    **Fractional Tender**. A Participant or Beneficiary may direct the Trustee to tender some but less than all of the Participant's shares.

(e)    **Proportional Tender**. If, under the terms of the tender offer, the Trustee is able to sell some but less than all of the Qualifying Employer Securities for which it received timely directions to sell, the Trustee shall tender a uniform percentage of each Participant's or Beneficiary's shares which were under directions to be tendered.

(f)    **Securities Law Restrictions**. In no case shall the Trustee honor the direction of any Participant or Beneficiary to tender his or her Qualifying Employer Securities if the Trustee has determined that it is prevented by securities law from tendering such shares.

(g)    **Future Investments**. If the Trustee shall sell any of a Participant's or Beneficiary's Qualifying Employer Securities pursuant to the Participant's or Beneficiary's directions, the proceeds from such sale shall be reinvested in the manner elected by the Participant or, in the absence of such an election, in the manner established by the Investment Committee, which shall not provide for reinvestment in Qualifying Employer Securities.

5.1.11. **Put Option**. If Qualifying Employer Securities in the ESOP Subfund are not publicly traded when distributed or are subject to a trading limitation when distributed, such Qualifying Employer Securities distributed hereunder shall be subject to a "put option" as follows:

(a)    The put option shall be exercised by the Participant or a Beneficiary, by any person to whom the Qualifying Employer Securities have passed by gift, and by any person (including an estate or a recipient of the estate) to whom the Qualifying Employer Securities passed upon the death of the Participant or Beneficiary (hereinafter the "Holder").

(b)    The put option must be exercised during the sixty (60) day period beginning on the date the Qualifying Employer Securities are first distributed by the Plan or during the sixty (60) day period that begins one (1) year after such date. The period during which the put option is exercisable shall not include any time when a Holder is unable to exercise the put option because the Company is prohibited from honoring the put option by federal or state law.

29

(c)     To exercise the put option, the Holder shall notify the Company in writing that the put option is being exercised.

(d)     Upon receipt of such notice, the Employer shall tender to the Holder within thirty (30) days of exercise the fair market value either in cash or in a combination of cash equal to at least sixteen and two-thirds percent (16-2/3%) of the fair market value and a promissory note providing payment of the balance in not more than five (5) equal annual installments of principal (that is, 16-2/3% of total fair market value each), with the first installment due one (1) year after exercise and the last annual installment due five (5) years after exercise. The note shall provide for full right of prepayment without penalty. The interest rate on such promissory note shall be equal to the annual rate of interest on 30-year Treasury securities for the month prior to the month in which the promissory note is issued. The note shall be secured by (and only by) a pledge of the shares sold.

(e)     The Benefits Administration Committee shall have the option to cause the Plan to assume the Company's rights and obligations to acquire Qualifying Employer Securities under the put option. If the Plan issues a promissory note for payment, such note shall be guaranteed by the Company and shall meet the requirements of an exempt guaranteed loan.

(f)     For the purposes of this Subsection, a "trading limitation" on a security is a restriction under any federal or state securities law, any regulation thereunder, or an agreement effecting the security which would make the security not as freely tradable as one not subject to such restrictions.

(g)     If the Qualifying Employer Securities were publicly traded and were not subject to a trading limitation when distributed but cease to be so traded during the period described in paragraph (b) above, the Company must notify each Holder in writing within ten (10) days after the Qualifying Employer Securities cease to be so traded that for the remainder of such period the Qualifying Employer Securities are subject to the put option described in this Subsection.

5.1.12. **Valuation of Employer Securities**. The fair market value of any employer securities (including Qualifying Employer Securities) that are not publicly traded shall be determined by a qualified "independent appraiser" (within the meaning of Code section 401(a)(28)(C)) selected by the Investment Committee in good faith and on the basis of all relevant factors for determining the fair market value of securities. In the case of a transaction between the Plan and a disqualified person, fair market value must be determined as of the date of the transaction. In all other cases, fair market value shall be determined as of the most recent Annual Valuation Date.

5.2.    **ERISA Section 404(c) Compliance**. This Plan is intended to constitute a plan described in section 404(c) of ERISA, and Title 29 of the Code of Federal Regulations §2550.404c-1. Neither the Company, an Employer, the Benefits Administration Committee, the Investment

Committee, the Trustee nor any other Plan fiduciary shall be liable for any losses that are the direct and necessary result of investment instructions provided by any Participant, Beneficiary or Alternate Payee.

> (a)  With respect to any Subfund consisting of Qualifying Employer Securities and intended to satisfy the requirements of section 404(c) of ERISA, (i) Participants, Beneficiaries and Alternate Payees shall be entitled to all voting, tender and other rights appurtenant to the ownership of such securities, (ii) procedures shall be established to ensure the confidential exercise of such rights, except to the extent necessary to comply with federal and state laws not preempted by ERISA, and (iii) the Trustee shall ensure the sufficiency of and compliance with such confidentiality procedures.

5.3.  **Valuation and Adjustment of Accounts**.

> 5.3.1.  **Valuation of Fund**. The Trustee shall value each Subfund in the Profit Sharing Portion and the ESOP Portion from time to time (but not less frequently than each Annual Valuation Date), which valuation shall reflect, as nearly as possible, the then fair market value of the assets comprising such Subfund in the Profit Sharing Portion and ESOP Portion (including income accumulations therein). The ESOP Portion shall use "unit accounting" with units holding only U.S. Bancorp stock and cash or cash equivalents. In making such valuations, the Trustee may rely upon information supplied by any Investment Manager having investment responsibility over the particular Subfund.

> 5.3.2.  **Adjustment of Accounts**. The Benefits Administration Committee shall cause the value of each Account or portion of an Account invested in a particular Subfund in the Profit Sharing portion or in the ESOP Portion (including undistributed Total Accounts of former employees) to be increased (or decreased) from time to time for distributions, contributions, investment gains (or losses) and expenses charged to the Account.

> 5.3.3.  **Rules**. The Benefits Administration Committee may establish additional rules for the adjustment of Accounts, including the times when contributions shall be credited for the purposes of allocating gains or losses under this Section.

5.4.  **Management and Investment of Fund**. The Fund, together with all additional contributions made thereto and together with all net income thereof, shall be controlled, managed, invested, reinvested and ultimately paid and distributed to Participants and Beneficiaries by the Trustee (and Investment Manager, if appointed) with all the powers, rights and discretions generally possessed by trustees, and with all the additional powers, rights and discretions conferred upon the Trustee (and Investment Manager, if appointed) under this Plan Statement. Except to the extent that the Trustee is subject to the authorized and properly given investment directions of a Participant, Beneficiary or Investment Manager, and subject to the directions of the Benefits Administration Committee with respect to the payment of benefits hereunder, the Trustee shall have the exclusive authority to manage and control the assets of the Fund in its custody and shall not be subject to the direction of any person in the discharge of its duties, nor shall its authority be subject to delegation or modification except by formal amendment of this Plan Statement.

U.S. Bank App. 36

5.5. **Trading Restrictions**.

      5.5.1. **Subfund Restrictions**. To the extent a Subfund imposes a trading restriction on investors in the Subfund that temporarily restricts for a period of more than three (3) business days the ability of a Participant, Beneficiary, or Alternate Payee to direct or diversify assets in an Account, to obtain a loan from the Plan, or to obtain a distribution from the Plan, such a trading restriction shall be incorporated into the Plan. Such a trading restriction shall apply to each Participant, Beneficiary, and Alternate Payee invested in the Subfund.

      5.5.2. **Committee Restrictions**. In addition to those trading restrictions that apply and may be considered imposed by a Subfund or by applicable law, the Benefits Administration Committee shall have the power and authority to impose trading restrictions whether generally or individually with respect to each Subfund, Participant, Beneficiary, and Alternate Payee.

U.S. Bank App. 37

## SECTION 6

## DISTRIBUTIONS

A Participant's Total Account shall become distributable in accordance with SECTION 7 upon the earliest occurrence of any of the following events (each, a "Distributable Event") while in the employment of the Company or an Affiliate:

(a)      the Participant's death;

(b)      the Participant's severance from employment, whether voluntary or involuntary, including, without limitation, the disposition by the Company to a non-Affiliate of the Company's interest in a subsidiary (within the meaning of section 409(d)(3) of the Code) which employs the Participant;

(c)      the Participant's Disability; or

(d)      the Participant's attainment of the required beginning date in Section 7.1.5.

For the avoidance of doubt, a transfer from Recognized Employment to employment with the Company that is other than Recognized Employment or a transfer from the employment of one Employer participating in the Plan to another such Employer or to any Affiliate shall not constitute a Distributable Event.

33

## SECTION 7

## DISTRIBUTION

7.1. **Distribution to Participants Upon Distributable Event**.

    7.1.1. **Application Required**. No distribution shall be made from the Plan until the Participant entitled to a distribution has made a request for distribution in the form and manner established by the Benefits Administration Committee. The Benefits Administration Committee may, but need not, permit such application to be made by telephonic, electronic or similar methods, in lieu of an application in writing, and shall determine what additional information shall be required to be furnished in connection with the Participant's request.

    (a)    **Exception for Small Amounts**. The Benefits Administration Committee shall cause distribution to be made in the manner described below without an application for distribution in the case of a Participant who does not elect (i) to have the distribution rolled over to an eligible retirement plan in a direct rollover, or (ii) to receive the distribution directly:

        (i)    If a Participant whose Total Account exceeds One Thousand Dollars ($1,000) but does not exceed Five Thousand Dollars ($5,000) incurs a Distributable Event (other than death) prior to attaining Normal Retirement Age, the Benefits Administration Committee shall direct the Trustee to distribute such Total Account in a direct rollover to an individual retirement account or annuity described in section 408(a) or 408(b) of the Code as soon as administratively practicable following such Distributable Event.

        (ii)    If a Participant whose Total Account exceeds One Thousand ($1,000) but does not exceed Five Thousand Dollars ($5,000) incurs a Distributable Event (other than death) after attaining Normal Retirement Age, the Benefits Administration Committee shall direct the Trustee to distribute such Total Account in a single lump sum as soon as administratively practicable following such Distributable Event.

        (iii)    If a Participant whose Total Account does not exceed One Thousand Dollars ($1,000) incurs a Distributable Event (other than death), the Benefits Administration Committee shall direct the Trustee to distribute such Total Account in a single lump sum as soon as administratively practicable following such Distributable Event.

    Subsequent to the initial determinations described above, the Benefits Administration Committee may make determinations from time to time on a uniform basis of the Total Accounts of Participants who have previously had a Distributable Event and cause distributions to be made in the manner

34

described in this subsection (a) as soon as administratively practicable following such determination without an application for distribution.:

For purposes of determining the value of a Participant's Total Account, the value of a Participant's Total Account shall be determined by including that portion of the Account that is attributable to rollover contributions (and earnings allocable thereto) within the meaning of sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii) and 457(e)(16) of the Code.

(b)     **Exception for Required Distributions**. If no application has been timely received within a reasonable period of time before the date by which distributions are required to be made pursuant to section 401(a)(9) of the Code or, if earlier, pursuant to the Plan, then the Total Account shall be distributed automatically in a lump sum without an application for distribution.

7.1.2.   **Spousal Consent Not Required**. The consent of a Participant's spouse shall not be required to make distributions from the Plan.

7.1.3.   **Form of Distribution**. A Participant who has had a Distributable Event (as provided under SECTION 6) may request a lump sum payment. Such Participant may request a single lump sum payment or partial distribution of One-Thousand Dollars ($1,000) or more in a lump sum payment. The Committee and its delegate may impose limitations applied on a uniform manner as to all Participants on distributions of less than the Participant's Total Account (such as the number of lump sum payments permitted in one Plan Year).

7.1.4.   **Time of Distribution**. Upon receipt of a complete and properly submitted request from the eligible Participant for distribution after a Distributable Event, the Benefits Administration Committee shall cause the distribution of such Total Account (or portion thereof) as soon as administratively practicable thereafter. No distribution, however, shall be made as of a Valuation Date preceding the date the Participant's completed request has been properly submitted.

7.1.5.   **Required Beginning Date**. Notwithstanding anything in Section 7.1.4 to the contrary, distribution to a Participant shall be made not later than the Participant's required beginning date.

(a)     **Required Beginning Date for Five Percent (5%) Owners**. If a Participant is a five percent (5%) owner (as defined in Appendix B) at any time during the Plan Year in which such Participant attains age seventy-and-one-half (70-½), distribution shall not be made later than the April 1 following the calendar year in which the Participant attains age seventy-and-one-half (70-½) years. If any amounts are thereafter credited to such a Participant's Accounts, then each subsequent December 31 shall also be treated as a required beginning date.

35

(b) **Required Beginning Date for All Other Participants**. If a Participant is not subject to (a) above, the Participant's required beginning date shall be the later of (i) the April 1 following the calendar year in which the Participant attains age seventy-and-one-half (70-½) years, or (ii) the April 1 following the calendar year in which the Participant terminates employment.

7.1.6.   **Death Prior to Distribution**. If a Participant dies after the Participant's Distributable Event but before distribution of the Participant's Total Account has been completed, the undistributed Total Account shall be distributed to the Participant's Beneficiary as provided in Section 7.5.

7.2.   **Distribution to Participants Prior to Severance of Employment**.

7.2.1.   **Withdrawals From Voluntary Accounts**. Subject to Section 7.2.7, a Participant may make withdrawals while employed from time to time from the Participant's Voluntary Account. Such withdrawal shall be made in a lump sum payment as soon as administratively practicable following approval of the request.

(a)   The amount of such withdrawals shall be deemed to have been first taken from the Participant's nondeductible voluntary contributions made prior to January 1, 1987, to the extent of the aggregate amount not previously withdrawn. Thereafter, withdrawals shall be deemed to have been taken from a combination of (i) the Participant's nondeductible voluntary contributions made after December 31, 1986, to the extent of the aggregate amount thereof not previously withdrawn, and (ii) a portion of the earnings in the Voluntary Account. The portion of each such withdrawal that is deemed to be earnings will be in the same ratio as the total earnings of the Voluntary Account bear to the total Voluntary Account.

7.2.2.   **Withdrawals From Rollover Accounts.** Subject to Section 7.2.7, a Participant may make withdrawals while employed from time to time from the Participant's Rollover Account. Such withdrawal shall be made in a lump sum payment as soon as administratively practicable following approval of the request.

7.2.3.   **In-Service Distributions**. Subject to Section 7.2.7, a Participant may receive in-service distributions while employed from time to time from the following Accounts: Voluntary Account, Rollover Account, Transfer Account, and the portion of the Participant's Matching Contribution Account attributable to contributions under the Firstar Plan classified as "Pre 2000 Employer" or to contributions under the Bancorp Plan made prior to 1999. Such a distribution shall be made in a lump sum payment as soon as administratively practicable following approval of the request.

Each distribution made pursuant to this Section 7.2.3 shall first be taken from and charged to the Participant's Accounts in a sequence to be determined by the Benefits Administration Committee. Distributions from the Participant's Voluntary Account shall be distributed in the sequence described in Section 7.2.1.

36

7.2.4.  **Age 59-1/2 Distributions**. A Participant may receive a distribution while employed of all or a portion of the Participant's Accounts if the Participant has attained age fifty-nine and one-half (59-1/2) years. Such distribution shall be made in a lump sum payment as soon as administratively practicable following approval of the request.

Each distribution made pursuant to this Section 7.2.4 shall first be taken from and charged to the Participant's Accounts in the following sequence:

Voluntary Account
Rollover Account
Transfer Account
Earnings Reduction Pre-Tax Account
Matching Contribution Account
Roth Rollover Account
Roth 401(k) Account
Roth Conversion Match Account
Roth Conversion Account
Roth Conversion - Other Employer Account
Other Accounts

Distributions from the Participant's Voluntary Account shall be distributed in the sequence described in Section 7.2.1.

7.2.5.  **Hardship Distributions**. Subject to Section 7.2.7, a Participant may receive a hardship distribution while employed from the Accounts listed in (c) below if the Benefits Administration Committee determines that such hardship distribution is for one of the purposes described in (a) below and the condition in (b) below has been fulfilled. Such withdrawal shall be made in a lump sum payment as soon as administratively practicable following approval of the request.

(a) **Purposes**. In-service hardship distributions shall be allowed only if the Participant establishes that the in-service hardship distribution is to be made for one of the following purposes:

(i) expenses for (or necessary to obtain) medical care for the Participant, the Participant's spouse or any dependents of the Participant (as defined in section 152 of the Code and without regard to sections 152(b)(1), 152(b)(2) and 152(d)(1)(B) of the Code), provided that such expenses would be deductible under section 213 of the Code (determined without regard to whether the expenses exceed seven and one-half percent (7.5%) of adjusted gross income),

(ii) costs directly related to the purchase of a principal residence for the Participant (excluding mortgage payments),

37

(iii)      payment of tuition, room and board and related educational fees for the next twelve (12) months of post-secondary education for the Participant or the Participant's spouse, children or dependents (as defined in section 152 of the Code and without regard to sections 152(b)(1), 152(b)(2) and 152(d)(1)(B) of the Code),

(iv)      payments necessary to prevent the eviction of the Participant from the Participant's principal residence or foreclosure on the mortgage of that principal residence,

(v)      payments for burial or funeral expenses of the Participant's deceased parent, spouse, children or dependents (as defined in section 152 of the Code and without regard to section 152(d)(1)(B) of the Code),

(vi)      expenses for the repair of damage to the Participant's principal residence that would qualify for the casualty deduction under section 165 of the Code (determined without regard to whether the loss exceeds ten percent (10%) of adjusted gross income, and without regard to whether the loss would be deductible under section 165(h)(5) of the Code (as amended by the Tax Cuts and Jobs Act, Pub. L. 115-97)), or

(vii)      expenses and losses (including loss of income) incurred by the Participant on account of a disaster declared by the Federal Emergency Management Agency (FEMA) under the Robert T. Strafford Disaster Relief and Emergency Assistance Act, Pub. L. 100-707, provided that the Participant's principal place of residence or principal place of employment at the time of the disaster was located in an area designated by FEMA for individual assistance with respect to the disaster.

Such purposes shall be considered to be an immediate and heavy financial need of the Participant.

(b)      **Limitations**. The amount of the hardship distribution shall not exceed the amount of the Participant's immediate and heavy financial need; provided, however, that the amount of the immediate and heavy financial need may include amounts necessary to pay any federal, state, or local income taxes or penalties reasonably anticipated to result from the distribution. The Participant must represent (in writing, by an electronic medium, or in such other form as may be prescribed by the Benefits Administration Committee) that he has insufficient cash or other liquid assets to satisfy the immediate and heavy financial need. The Benefits Administration Committee may rely on the Participant's representation unless the Benefits Administration Committee has actual knowledge to the contrary.

In addition, a hardship distribution shall not be allowed unless the Participant has obtained all distributions, including distribution of ESOP dividends under section 404(k) of the Code but not including other hardship distributions, currently available under all plans maintained by the Employer and Affiliates. Other funds are not currently available unless the funds are available prior to or coincident with the date the hardship distribution is available.

(c)   **Sequence of Accounts**. Each hardship distribution made pursuant to this Section 7.2.5 shall first be taken from and charged to the Participant's Accounts in the following sequence:

Voluntary Account
Rollover Account
Transfer Account
Earnings Reduction Pre-Tax Account
Roth Rollover Account
Roth 401(k) Account
Roth Conversion Account.

7.2.6.   **Roth In-Plan Conversions**. A Participant who satisfies the eligibility conditions below may elect a Roth in-plan conversion as provided in this Section.

(a)   **In General**. A Participant may request a Roth in-plan conversion from the Participant's Total Account (except for accounts that already contain Roth amounts and other Accounts as designated by the Benefits Administration Committee) that shall be rolled over (via a direct rollover) to the applicable sub-account under the Participant's Roth In-Plan Conversion Account under this Plan pursuant section 402A(c)(4) of the Code in accordance with the procedures established by the Benefits Administration Committee.

(b)   **Spousal Consent Not Required**. Spousal consent shall not be required to make a Roth in-plan conversion.

(c)   **Allocation**. A Roth in-plan conversion shall be allocated to the Participant's applicable Roth Account (an account which contains Roth amounts) under the Plan. By electing to do a Roth in-plan conversion, the Participant is electing to have the amount that is rolled over to the applicable Roth Account invested in the same investments and allocated among those investments in the same percentages as the Participant had elected for the Participant's Total Account at the time of the Roth in-plan conversion.

(d)   **Taxes**. The taxable amount of such Roth in-plan conversion shall be includible in the Participant's gross income in the taxable year in which the conversion occurs.

39

(e)   **Distributions from Roth Accounts**. Any distributions from a Participant's Roth Account (an account which contains Roth amounts) shall be made in accordance with the applicable requirements of sections 402A and 408A of the Code. If an amount in an applicable Roth Account is subject to a distribution restriction, the amount may be distributed only if the restriction has been satisfied.

(f)   **Limitations**. The Benefits Administration Committee and its delegate may impose limitations applied on a uniform manner as to Participants on Roth in-plan conversions, including (but not limited to) any of the following: (i) the number of Roth in-plan conversions allowed in one Plan Year, and (ii) the Accounts and sources that Participants may use for a Roth in-plan conversions.

Except as otherwise provided under another Section of the Plan Statement, a Participant cannot receive a distribution while employed that distributes the amount directly to the Participant, to an individual retirement account, or to another tax-qualified or tax-favored plan for purposes of a Roth in-plan conversions. Interpretation of the Plan's terms on Roth in-plan conversions shall be subject to IRS guidance on such conversions.

7.2.7.   **COVID Related Distributions**. Notwithstanding any provision in the Plan to the contrary, in accordance with section 2202(a) of the Coronavirus Aid, Relief, and Economic Security Act and related guidance, the Plan shall permit a Participant who is a COVID-Related "Qualified Individual" (as defined below) to take COVID Related Distributions, between May 8, 2020 and December 31, 2020, of up to $100,000 from the Participant's Accounts in the following sequence:

Voluntary Account
Rollover Account
Transfer Account
Earnings Reduction Pre-Tax Account
Roth Rollover Account
Roth 401(k) Account
Roth Conversion Account.

If the Participant has already taken one or more COVID Related Distributions from the Plan or any qualified plan maintained by the Employer or an Affiliate, the maximum amount of any future COVID Related Distribution shall be reduced by the amount of any prior COVID Related Distributions that the Participant has received on or after January 1, 2020 from the Plan and/or from all other qualified plans maintained by the Employer or an Affiliate so that the sum of all COVID Related Distributions from the Plan and all other qualified plans maintained by the Employer or an Affiliate shall not exceed $100,000. The Participant may repay the COVID Related Distribution during the three-year period beginning the day after the distribution date, and the repayment shall be treated as a direct rollover.

40

(a)     **COVID Related Qualified Individual**.  A COVID Related "Qualified Individual" means a Participant who has certified, using the form or other method established by the Benefits Administration Committee for such purpose, that the Participant:

(i)     has been diagnosed, or the Participant's spouse or dependent (as defined in Code section 152) has been diagnosed, with the virus SARS-CoV-2 or coronavirus disease 2019 (collectively, "COVID-19") using a test approved by the Center for Disease Control and Prevention; or

(ii)    due to COVID-19, experiences adverse financial consequences because of the individual's (or the Participant's spouse or member of the Participant's household (someone who shares Participant's principal residence)):  being quarantined, furloughed or laid off, or having work hours reduced; being unable to work due to the lack of child care; closing or reducing hours of a business that they own or operate; or having pay or self-employment income reduced, a job offer rescinded or start date for a job delayed.

7.2.8.  **Additional Rules**.  The following rules shall apply to distributions or withdrawals made pursuant the foregoing Sections 7.2.1, 7.2.2, 7.2.3, 7.2.4, 7.2.5, 7.2.7, or 7.2.8:

(a)     **Submission of Request**.  To receive such a distribution or withdrawal, the Participant must complete and submit a request for the distribution or withdrawal in the form and manner established by the Benefits Administration Committee. The Benefits Administration Committee may, but need not, permit such application to be made by telephonic, electronic or similar methods, in lieu of an application in writing, and shall determine what information shall be required to be furnished in connection with the Participant's request in addition to the dollar amount to be distributed or withdrawn.

(b)     **Spousal Consent Not Required**. Spousal consent shall not be required for a distribution or withdrawal to a married Participant.

(c)     **Coordination with Section 5.1**. If the Rollover Account is invested in more than one (1) Subfund authorized and established under Section 5.1, the amount distributed or withdrawn shall be charged to each Subfund in the same proportions as the Rollover Account is invested in each Subfund.

(d)     The minimum withdrawal request is determined by the Benefits Administration Committee or its delegate (which may place other restrictions on withdrawals, such as the number of withdrawals per Plan Year, to the extent permitted by Section 411(d)(6) and the applicable Treasury Regulations).

41

7.3.    **Distribution to Beneficiary**.

7.3.1.    **Application For Distribution Required**. To receive a distribution, a Beneficiary must complete and submit a request for the distribution in the form and manner established by the Benefits Administration Committee. The Benefits Administration Committee may, but need not, permit such application to be made by telephonic, electronic or similar methods, in lieu of an application in writing, and shall determine what information shall be required to be furnished in connection with the Beneficiary's request.

(a)    **Exception for Small Amounts**. Upon the death of a Participant whose Total Account does not exceed Five Thousand Dollars ($5,000), such Participant's Total Account shall be distributed to the Beneficiary in a single lump sum as soon as administratively practicable following such Participant's death without an application for distribution. The value of a Participant's Vested Total Account shall be determined by including that portion of the Account that is attributable to rollover contributions (and earnings allocable thereto) within the meaning of sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16) of the Code.

(b)    **Exception for Required Distributions**. If no application has been timely received within a reasonable period of time before the date by which distributions are required to be made pursuant to section 401(a)(9) of the Code or, if earlier, pursuant to the Plan, then the Total Account shall be distributed automatically in a lump sum without an application for distribution.

7.3.2.    **Form of Distribution**. A Beneficiary eligible for a distribution may request a lump sum payment. Such Beneficiary may request a single lump sum payment or distribution of Five Thousand Dollars ($5,000) or more in a lump sum payment. The Benefits Administration Committee and its delegate may impose limitations applied on a uniform manner as to all Beneficiaries on distributions of less than the Participant's Total Account (such as the number of lump sum payments permitted in one Plan Year).

7.3.3.    **Time of Distribution**. Upon receipt of a complete and properly submitted request from the eligible Beneficiary for distribution after the Participant's death, the Benefits Administration Committee shall cause the distribution of the Total Account (or portion thereof) that is distributable to the Beneficiary as soon as administratively practicable thereafter.

7.3.4.    **Beneficiary's Required Beginning Date**. Notwithstanding any other provision of this Plan, complete distribution to the Beneficiary shall be made by the December 31 of the calendar year in which occurs the first anniversary of the Participant's death.

U.S. Bank App. 47

7.4.    **Designation of Beneficiaries**.

7.4.1.    **Right To Designate**. Each Participant may designate, upon forms to be furnished by and filed with the Benefits Administration Committee, one or more primary Beneficiaries or alternative Beneficiaries to receive all or a specified part of the Participant's Total Account in the event of the Participant's death. Subject to Section 7.4.2, the Participant may change or revoke any such designation from time to time without notice to or consent from any Beneficiary. No such designation, change or revocation shall be effective unless properly completed by the Participant and received by the Benefits Administration Committee during the Participant's lifetime. The Benefits Administration Committee may establish rules for the use of electronic signatures.

7.4.2.    **Spousal Consent**. Notwithstanding anything in Section 7.4.1 to the contrary, a designation will not be valid for the purpose of paying benefits from the Plan to anyone other than a surviving spouse of the Participant (if there is a surviving spouse) unless that surviving spouse consents in writing to the designation of another person as Beneficiary. To be valid, the consent of such spouse must be in writing, must acknowledge the effect of the designation of the Beneficiary and must be witnessed by a notary public. The consent of the spouse must be to the designation of a specific named Beneficiary which may not be changed without further spousal consent (unless, as part of the spousal consent, the spouse consents to the designation of alternate beneficiaries). The consent of the surviving spouse shall be given at the time the designation is made. The consent of a spouse shall be irrevocable and shall be effective only with respect to that spouse.

7.4.3.    **Failure of Designation**. If a Participant:

(a)    fails to designate a Beneficiary,

(b)    designates a Beneficiary and thereafter such designation is revoked without another Beneficiary being named, or

(c)    designates one or more Beneficiaries and all such Beneficiaries so designated fail to survive the Participant,

such Participant's Total Account, or the part thereof as to which such Participant's designation fails, as the case may be, shall be payable to the first class of the following classes of automatic Beneficiaries with a member surviving the Participant and (except in the case of the Participant's surviving issue) in equal shares if there is more than one member in such class surviving the Participant:

> Participant's surviving spouse
> Participant's surviving issue per stirpes and not per capita
> Participant's surviving parents
> Participant's surviving brothers and sisters
> Representative of Participant's estate.

43

Under circumstances where no estate is or will be opened for probate (by way of example and not limitation, because the total amount of the Participant's or Beneficiary's estate is below the threshold requiring the opening of an estate under applicable law), the Benefits Administration Committee or its delegate may rely on representations made by a representative of the estate of the Participant or Beneficiary, as applicable, regarding the identity of any person or persons who are entitled to receive assets from the estate of the Participant or Beneficiary, as applicable, and to whom the remaining Plan benefit is to be paid in equal shares.  The Benefits Administration Committee or its delegate may require that such representations be in writing and notarized.

Any payments made in accordance with this Section 7.4.3 shall be a full and complete discharge of liability for such payments with respect to the Plan, the Trust, the Trustee, the Investment Committee and the Benefits Administration Committee.  Neither the Benefits Administration Committee nor the Trustee shall be required to investigate or verify the veracity of the representations made the representative of the estate of the Participant or Beneficiary, as applicable.

Notwithstanding anything in this Section 7.4.3 to the contrary, in the event of a Participant's death prior to January 1, 2021, the terms of the Plan as in effect immediately before January 1, 2020 shall control. Under these prior Plan terms, if the Participant (i) does not have an Estate or has not appointed a representative, and (ii) the present value of the Participant's Total Account (or the part thereof as to which such Participant's designation fails) is Thirty Thousand Dollars ($30,000) or less, the Participant's Total Account shall be payable to the Participant's surviving niece(s) and nephew(s) (the issue of the Participant's brothers and sisters) that are known to the Plan on a per capita basis. The Plan and the plan administrator shall have no duty to determine all of the Participant's nieces and nephews and shall have no duty to conduct a search for the Participant's niece(s) and nephew(s). In addition, if the Participant does not have an Estate or has not appointed a Representative, the Participant's Total Account may be escheated by the Plan to the state that represents the Participant's last known residence or work location.

       7.4.4.   **Disclaimers by Beneficiaries**. A Beneficiary entitled to a distribution of all or a portion of a deceased Participant's Total Account may disclaim his or her interest therein subject to the following requirements. To be eligible to disclaim, such Beneficiary must be a natural person, must not have received a distribution of all or any portion of a Total Account at the time such disclaimer is executed and delivered, and must have attained at least age twenty-one (21) years as of the date of the Participant's death. Any disclaimer must be in writing and must be signed by the Beneficiary and acknowledged by a notary public. A disclaimer shall state that the Beneficiary's entire interest in the undistributed Total Account is disclaimed or shall specify what portion thereof is disclaimed. To be effective, duplicate original signed copies of the disclaimer must be both signed and actually delivered to both the Benefits Administration Committee and to the Trustee after the date of the Participant's death but not later than nine (9) months after the date of the Participant's death. A disclaimer shall be irrevocable when delivered to both the Benefits Administration Committee and the Trustee. A disclaimer shall be considered to be delivered to the Benefits Administration Committee or the Trustee only when actually received by the Benefits Administration Committee or the Trustee (and in the case of a corporate Trustee, shall be considered to be delivered only when actually received by a

44

trust officer familiar with the affairs of the Plan). The Benefits Administration Committee (and not the Trustee) shall be the sole judge of the content, interpretation and validity of a purported disclaimer. Upon the filing of a valid disclaimer, the Beneficiary shall be considered not to have survived the Participant as to the interest disclaimed. A disclaimer by a Beneficiary shall not be considered to be a transfer of an interest in violation of the provisions of SECTION 8 and shall not be considered to be an assignment or alienation of benefits in violation of federal law prohibiting the assignment or alienation of benefits under the Plan. No other form of attempted disclaimer shall be recognized by either the Benefits Administration Committee or the Trustee.

7.4.5. **Definitions**. When the following terms are used herein and, unless the Participant has otherwise specified in the Participant's Beneficiary designation, they shall have the following meaning:

(a) **Issue** — all persons who are lineal descendants of the person whose issue are referred to, subject to the following:

(i) a legally adopted child and the adopted child's lineal descendants always shall be lineal descendants of each adoptive parent (and of each adoptive parent's lineal ancestors);

(ii) a legally adopted child and the adopted child's lineal descendants never shall be lineal descendants of any former parent whose parental rights were terminated by the adoption (or of that former parent's lineal ancestors); except that if, after a child's parent has died, the child is legally adopted by a stepparent who is the spouse of the child's surviving parent, the child and the child's lineal descendants shall remain lineal descendants of the deceased parent (and the deceased parent's lineal ancestors);

(iii) if the person (or a lineal descendant of the person) whose issue are referred to is the parent of a child (or is treated as such under applicable law) but never received the child into that parent's home and never openly held out the child as that parent's child (unless doing so was precluded solely by death), then neither the child nor the child's lineal descendants shall be issue of the person.

(b) **Child** — an issue of the first generation.

(c) **Per stirpes** — in equal shares among living children of the person whose issue are referred to and the issue (taken collectively) of each deceased child of such person, with such issue taking by right of representation of such deceased child.

(d) **Survive and Surviving** — living after the death of the Participant.

45

7.4.6. **Special Rules**. Unless the Participant has otherwise specified in the Participant's Beneficiary designation, the following rules shall apply:

(a)     If there is not sufficient evidence that a Beneficiary was living at the time of the death of the Participant, it shall be deemed that the Beneficiary was not living at the time of the death of the Participant.

(b)     The automatic Beneficiaries specified in Section 7.4.3 and the Beneficiaries designated by the Participant shall become fixed at the time of the Participant's death so that, if a Beneficiary survives the Participant but dies before the receipt of all payments due such Beneficiary hereunder, such remaining payments shall be payable to the representative of such Beneficiary's estate.

(c)     If the Participant designates as a Beneficiary the person who is the Participant's spouse on the date of the designation, either by name or by relationship, or both, the dissolution, annulment or other legal termination of the marriage between the Participant and such person shall automatically revoke such designation. (The foregoing shall not prevent the Participant from designating a former spouse as a Beneficiary on a form signed by the Participant and received by the Benefits Administration Committee after the date of the legal termination of the marriage between the Participant and such former spouse, and during the Participant's lifetime.)

(d)     Any designation of a nonspouse Beneficiary by name that is accompanied by a description of relationship to the Participant shall be given effect without regard to whether the relationship to the Participant exists either then or at the Participant's death.

(e)     Any designation of a Beneficiary only by statement of relationship to the Participant shall be effective only to designate the person or persons standing in such relationship to the Participant at the Participant's death.

(f)     Notwithstanding any other provision of this Plan Statement or any election or designation made under the Plan, any individual who feloniously and intentionally kills a Participant or Beneficiary shall be deemed for all purposes of the Plan and all elections and designations made under the Plan to have died before such Participant or Beneficiary. A final judgment of conviction of felonious and intentional killing is conclusive for the purposes of this section. In the absence of a conviction of felonious and intentional killing, the Benefits Administration Committee shall determine whether the killing was felonious and intentional for the purposes of this section.

A Beneficiary designation is permanently void if it either is signed or is filed by a Participant who, at the time of such signing or filing, is then a minor under the law of the state of the Participant's legal residence. The Benefits Administration Committee (and not the Trustee) shall be the sole judge of the content, interpretation and validity of a purported Beneficiary designation.

46

7.5.    **General Distribution Rules**.

       7.5.1.    **Notices**. The Benefits Administration Committee will issue such notices as may be required under 411(a)(11) of the Code in connection with distributions from the Plan. Such notification shall also include a description of the consequences of failing to defer receipt of a distribution. Generally, distributions may not commence as of a date that is more than one hundred eighty (180) days or less than thirty (30) days after such notices are given to the Participant. Distribution may commence less than thirty (30) days after the notice required under section 1.411(a)-11(c) of the income tax regulations or the notice required under section 1.402(f)-2T of the income tax regulations is given, provided however, that:

          (a)    the Benefits Administration Committee clearly informs the distributee that the distributee has a right to a period of at least thirty (30) days after receiving such notices to consider whether or not to elect distribution; and

          (b)    the distributee, after receiving the notice, affirmatively elects a distribution.

       7.5.2.    **Direct Rollover**. A distributee who is eligible to elect a direct rollover may elect, at the time and in the manner prescribed by the Benefits Administration Committee, to have all or any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover. A distributee who is eligible to elect a direct rollover includes only a Participant, a Beneficiary and a Participant's spouse or former spouse who is the Alternate Payee under a qualified domestic relations order, as defined in Appendix C.

          (a)    **Eligible rollover distribution** means any distribution of all or any portion of a Total Account to a distributee who is eligible to elect a direct rollover except (i) any distribution that is one of a series of substantially equal installments payable monthly, quarterly or annually over a period of time not extending beyond the remaining life expectancy of such distributee or pursuant to the applicable table under section 1.401(a)(9)-9 of the income tax regulations, and (ii) any distribution that is one of a series of substantially equal installments payable not less frequently than annually over a specified period of ten (10) years or more, and (iii) any distribution to the extent such distribution is required under section 401(a)(9) of the Code, and (iv) any hardship distribution, and (v) the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to Qualifying Employer Securities).

             To the extent a distribution consists in part of after-tax employee contributions which are not includible in gross income, such portion may be transferred only to an individual retirement account or annuity described in section 408(a) or 408(b) of the Code, or to a qualified trust described in section 401(a) of the Code or to an annuity contract described in section 403(b) of the Code, if such trust or contract provides for separate accounting

47

for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

In the case of employees whose Recognized Employment ended as a result of the Company's disposition or spin-off of all or a portion of a trade or business, an eligible rollover distribution may include promissory notes for loans made to the employee under the Plan that are to be rolled over to another tax-qualified plan, provided that the Benefits Administration Committee approves of the rollover and that the tax-qualified plan to which the promissory note or loan is being rolled over accepts the promissory note or loan.

(b)    **Eligible retirement plan** means (i) an individual retirement account described in section 408(a) of the Code, or (ii) an individual retirement annuity described in section 408(b) of the Code, or (iii) a plan described in section 403(a) of the Code or an annuity contract described under section 403(b) of the Code, or (iv) a qualified defined contribution plan described in section 401(a) of the Code that accepts the eligible rollover distribution, or (v) an eligible plan under section 457(b) of the Code which is maintained by a state, political subdivision of a state or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. The definition of eligible retirement plan shall also apply in the case of a distribution to a surviving spouse or to a spouse or former spouse who is an Alternate Payee. In the case of a Beneficiary who is not the surviving spouse of a Participant, the definition of an eligible retirement plan shall include only an individual retirement account or annuity described in sections 408(a) or (b) of the Code.

(c)    **After-Tax Contributions and Roth Contributions**. To the extent a distribution consists in part of after-tax employee contributions which are not includible in gross income, such portion may be transferred only to an individual retirement account or annuity described in section 408(a) or 408(b) of the Code, or to a qualified plan described in section 401(a) of the Code or to an annuity contract described in section 403(b) of the Code, if such plan or contract provides for separate accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible. To the extent a distribution consists of Roth contributions, such portion may be transferred only to a Roth IRA described in section 408A of the Code, or to another designated Roth account described in section 402A of the Code that agrees to separately account for amounts so transferred, including separate accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

48

(d)     **Direct rollover** means the payment of an eligible rollover distribution by the Plan to the eligible retirement plan specified by the distributee who is eligible to elect a direct rollover.

(e)     **Special Rule For Nonspouse Beneficiaries**. A distributee who is a Beneficiary and who is not the surviving spouse of a Participant or an Alternate Payee may elect, at the time and the manner prescribed by the Benefits Administration Committee, to have all or any portion of such distributee's benefit paid directly in a trustee-to-trustee transfer to an individual retirement account or annuity described in sections 408(a) or (b) of the Code (a "traditional IRA") or a Roth individual retirement account or annuity described in section 408A of the Code (a "Roth IRA"), provided such traditional IRA or Roth IRA meets the requirements of section 402(c)(11) of the Code.

7.5.3.   **Compliance with Section 401(a)(9) of the Code**. All distributions under this Plan shall comply with the minimum distribution requirements of Code § 401(a)(9), including § 1.401(a)(9)-2 through § 1.401(a)(9)-9 of the regulations and the minimum distribution incidental benefit requirements of Code § 401(a)(9)(G).

7.5.4.   **Distribution in Cash.** Distribution of a Participant's Total Account shall be made in cash (or cash equivalents). If the Total Account to be distributed is in whole or in part invested in a Subfund devoted substantially to investment in Qualifying Employer Securities the Participant may elect distribution of that portion of the Participant's Total Account in one of the following ways:

(a)     Qualifying Employer Securities and such cash as may be necessary to represent fractional shares of such stock and other assets allocated to such Subfund, or

(b)     entirely in cash, to the extent cash is available in such Subfund.

In the absence of an election to receive Qualifying Employer Securities, the portion of the Participant's Total Account invested in such Subfund shall be distributed entirely in cash. In the case of cash distributions in lieu of shares or fractional shares of Qualifying Employer Securities, such shares or fractional shares shall be valued as of the Valuation Date as of which distribution is made.

7.5.5.   **Facility of Payment**. The Benefits Administration Committee shall have no duty to inquire into the identity, legal capacity, or competency of any payee under the Plan. Any payment made to facilitate payment of benefits under the Plan shall operate as a full and complete discharge of all liability of the Plan, the Benefits Administration Committee, the Trustee and Company with respect to such payment amount. In case of the legal disability, including minority, of any person entitled to receive any distribution under the Plan, payment shall be made, if the Benefits Administration Committee shall be advised of the existence of such condition:

49

(a)    To the duly appointed guardian, conservator, attorney-in-fact or other legal representative of such person, or

(b)    To the individual or institution entrusted with the care or maintenance of such person, provided, however, (i) such individual or institution has satisfied the Benefits Administration Committee that it is responsible for the care and maintenance of such person, (ii) such individual or institution has represented to the Benefits Administration Committee that the individual or institution is not aware of another individual or institution having been appointed guardian, conservator, attorney-in-fact or other legal representative, and (iii) provided further, that no prior claim for said payment has been made by a duly appointed guardian, conservator, attorney-in-fact or other legal representative of such person.

(c)    To a parent or grandparent providing care for such person, provided, however, (i) such parent or grandparent has satisfied the Benefits Administration Committee that such parent or grandparent is responsible for the care of such person, (ii) such parent or grandparent has represented to the Benefits Administration Committee that the parent or grandparent is not aware of another individual or institution having been appointed guardian, conservator, attorney-in-fact or other legal representative, (iii) provided further, that no prior claim for said payment has been made by a duly appointed guardian, conservator, attorney-in-fact or other legal representative of such person, and (iv) payment has not been requested under Sections 7.5.5(a) or 7.5.5(b) of the Plan.

Any payment made in accordance with the foregoing provisions of this Section shall constitute a complete discharge of any liability or obligation of the Company, the Benefits Administration Committee, the Trustee and the Fund therefor. Notwithstanding the foregoing, no provision in this Plan shall be interpreted or applied to prevent the Benefits Administration Committee from withholding or delaying any payment hereunder to the extent that the Benefits Administration Committee determines, in its sole discretion, that the withholding or delay is appropriate to resolve issues regarding the entitlement of any payee or issues regarding potential claims that may be made against the Plan.

7.5.6.  **Lost Distributees and Lost Participants**. The Accounts of Participants and Beneficiaries shall be subject to the following rules:

(a)    **Forfeiture of Unclaimed Benefits.**  If, when a benefit becomes due, the Benefits Administration Committee is unable, after reasonable and diligent effort, to locate a Participant, joint annuitant, or Beneficiary, the distribution due such person will be forfeited. Subject to any additional requirements of the Department of Labor or the Internal Revenue Service and set forth in applicable guidance, notification by certified or registered mail to the last known address of the Participant, Beneficiary or joint annuity will be deemed a reasonable and diligent search for such person. If a Participant or other person whose retirement benefit or survivor's benefit has been

50

forfeited shall make a claim for such retirement benefit or survivor's benefit under this Plan before this Plan is terminated, the entitlement to the retirement benefit or survivor's benefit shall be reinstated without any interest earned thereon.

(b)     **Uncashed Checks**. If the Plan issues a payment, that payment is not cashed or deposited, and the individual who was issued the check is a lost distributee, then the Plan will forfeit the check.

(c)     **Later Location of Lost Distributee**. If a lost distributee is later located and files an application for distribution after an amount has been forfeited (including distribution of an uncashed check) with the Benefits Administration Committee, the dollar amount forfeited (and only that amount with no earnings or interest) shall be distributed to such lost distributee as soon as administratively practicable following the approval of such application by the Benefits Administration Committee.

(d)     **Additional Rules**. The Benefits Administration Committee may adopt additional rules regarding the benefit due to lost distributees, the reasonable efforts that will be taken to locate lost distributees, the forfeiture of benefit due to lost distributees, the restoration of the benefit due to lost distributees, and the distribution of the benefit due to lost distributees.  The Benefits Administration Committee or its designee shall maintain a list of all lost distributees and their benefits forfeited.

7.6.   **Loans**. The provisions of this Section shall be subject to the following rules, conditions and limitations:

7.6.1.   **Availability**. Loans shall be made available to all Participants who are actively employed by the Company or an Affiliate subject to limitations and conditions established under this Section by the Benefits Administration Committee on a reasonably equivalent basis. Loans shall not be made available to Highly Compensated Employees in an amount (expressed as a percentage of their Total Account) greater than is made available to other employees.

7.6.2.   **Spousal Consent**. Spousal consent shall not be required to make a loan to a married Participant unless both: (i) the Participant's Account includes assets attributable to a transfer or merger described in Section 9.3 that are subject to the survivor annuity rules of section 401(a)(11) of the Code, and (ii) the amount to be loaned includes such assets. In the event that spousal consent is required, no loan shall be made pursuant to this Section 7.6 unless the spouse of the Participant, consents to the loan. To be valid, the consent of such spouse must be in writing, must acknowledge the effect of the loan and the use of the Account as security for the loan and must be witnessed by a notary public. The consent of the spouse must be given within ninety (90) days prior to the date the loan is made and must relate to that specific loan. The consent given by the spouse to whom the Participant was married at the time the loan was made shall be effective with respect to that spouse

U.S. Bank App. 56

and each subsequent spouse of the Participant. A new consent shall be required if the Account is used for renegotiation, extension, renewal or other revision of the loan.

7.6.3.   **Administration**. Loan requests shall be granted or denied solely on the basis of this Section. . Loans under the Plan and any other plan maintained by the Company will be considered separate loans. Therefore, separate loan applications and promissory notes will need to be completed for loans from the Plan or any other plan. A loan will be made upon completion of a loan application, the execution of a promissory note and the completing of such other forms and the furnishing of such other information as may be required to comply with this Section. The Benefits Administration Committee may prescribe rules and/or adopt procedures regarding the form of such application, the method of filing such application (including telephonic, electronic or similar methods) and the information required to be furnished in connection with such application.

7.6.4.   **Loan Terms**. The total amount of such loans to any Participant shall not exceed the lesser of:

(a)      Fifty percent (50%) (or such lower percentages as the Benefit Administration Committee may establish from time to time) of the Vested amount of that Participant's Total Account, or

(b)      Fifty Thousand Dollars ($50,000);

provided, however, that the Fifty Thousand Dollar ($50,000) limitation shall be reduced by the excess (if any) of: (i) the highest outstanding balance of loans from the Plan (and all other plans of the Company and all Affiliates) to such Participant during the one-year period ending on the day before the new loan is made, over (ii) the outstanding balance of all loans from the Plan (and all other plans of the Company and all Affiliates) to such Participant on the day the new loan is made.

Except for any permitted suspension of payments during a leave of absence, any such loan must be repaid at least monthly in substantially level amounts, including principal and interest, over the term of the loan. Any such loan shall provide that it shall be repaid within a definite period of time to be specified by the Participant in the loan application and the promissory note. That period shall not exceed five (5) years unless such loan is to a Participant and is used to acquire a principal residence (as defined in section 121 of the Code) for the Participant and then it shall not exceed fifteen (15) years.

7.6.5.   **Collateral**. Every loan made under these rules shall be secured by that portion of the Participant's Account which does not exceed fifty percent (50%) of the sum total of the Participant's Total Account. This dollar amount shall be determined immediately after the origination of the loan (and shall be reduced by the amount of any unpaid principal and interest on any earlier loan which is similarly secured). This security interest shall exist without regard to whether it is or is not referenced in the loan documents. The Plan shall be permitted to realize on this collateral (as hereinafter provided) by any means including (but not limited to) foreclosure (i.e., offset). No other collateral shall be permitted or required.

U.S. Bank App. 57

7.6.6.  **Loan Rules**. The Benefits Administration Committee may adopt rules for the administration of loans that are not inconsistent with any prior provisions of this Section. Unless amended by the Benefits Administration Committee, the following rules shall apply:

(a)      **Loan Amount**. Loans will not be made in a principal amount less than one thousand dollars ($1,000) nor in increments of less than one dollar ($1).

(b)      **Loan Interest Rate**. The interest rate on any loan shall be equal to the prime rate (the base rate on corporate loans at large United States money center commercial banks) as published by The Wall Street Journal in its Money Rates column or any comparable successor rate so published for the first business day of the calendar month following the month of publication of the rate, plus one percent (1%); provided, however, that if the rate is published after the fifteenth day of that month, the new rate will not be effective until the first business day of the second calendar month following the month of publication. If the prime rate is published as a range of rates, the highest prime rate in the range shall be used. Notwithstanding the foregoing, with respect to any Participant on military leave, such interest rate shall not exceed the maximum amount permitted under the Soldiers' and Sailors' Civil Relief Act of 1942 for the duration of such military leave.

(c)      **Accounting for Loan**. For the purpose of determining the extent to which a Total Account is entitled to share in income, gains or losses of the Fund under SECTION 5, the same shall be deemed to be reduced by the unpaid balance of any outstanding loans to the Participant, and the interest payments on such loans shall be credited to the Participant's Total Account. If a loan is made to a person who has assets in more than one Account, such loan shall be deemed to have been made from the Accounts in the following sequence:

Voluntary Account
Rollover Account
Earnings Reduction Pre-Tax Account
Transfer Account
Roth Rollover Account
Roth 401(k) Account
Roth Conversion Match Account
Roth Conversion Account

Repayments of principal on loans and payments of interest shall be apportioned among the Accounts from which the loan was made in proportion to the amounts by which the Accounts were initially reduced in order to make the loan. If a loan is made from an Account which is invested in more than one Subfund authorized and established under Section 5.1, the amount withdrawn in order to make the loan shall be charged to each Subfund in the same proportions as the Account is invested in each Subfund.

53

All repayments of principal and interest shall be reinvested in the same manner as contributions under the Participant's investment elections in effect at the time the repayment is received.

(d)    **Payments**. All Participants shall make payment of loans by monthly or more frequent payroll deduction to the extent of their available pay. The making of the loan shall be considered an irrevocable authorization for payroll deduction. Notwithstanding any provision of the Plan to the contrary, in accordance with section 2202(b) of the Coronavirus Aid, Relief, and Economic Security Act and Notice 2020-50, for a Participant who is a COVID Related Qualified Individual (as defined in Section 7.2.7) and has an outstanding loan on or after May 8, 2020, loan repayments that would be otherwise due on or after May 8, 2020 and ending on December 31, 2020 (the "Suspension Period"), shall be suspended until January 1, 2021 if the Participant files a request using the approved method established by the Benefits Administration Committee. Following the end of the Suspension Period, the loan shall be reamortized and subsequent repayments will reflect the delay, plus accrued interest during the Suspension Period, and the initial loan end date shall be extended by one year. If the Participant terminates employment during the Suspension Period and makes arrangements to repay the loan that satisfy the requirements described in 7.6.6(f), the loan end date shall be extended by one year.  If the Participant does not make repayment arrangements that satisfy 7.6.6(f), the entire outstanding principal and unpaid interest shall be due and payable on the date ninety (90) days after the Participant's termination of employment.

(e)    **Prepayments**. The loan may be prepaid in whole at any time.

(f)    **Termination of Employment**. The entire outstanding principal and unpaid interest shall be due and payable on the date ninety (90) days after the Participant's termination of employment with the Company and all Affiliates, unless the Participant agrees to continue repaying the loan through direct debit of the Participant's savings or checking account (under conditions determined by the Benefits Administration Committee). If the entire outstanding principal and unpaid interest is not paid within the ninety (90) day period following the date of (i) the Participant's termination of employment, or (ii) the last direct debit of the Participant's savings or checking account, then the unpaid principal and interest due and owing on that date shall be offset against the Participant's Total Account. Notwithstanding the foregoing, if at the time of a Participant's termination of employment with the Company and all Affiliates the Participant has a loan and the Participant's Total Account balance is Five Thousand Dollars ($5,000) or less, if the entire outstanding principal and unpaid interest on the Participant's loan is not paid within the ninety (90) day period following the date of the Participant's termination of employment, then the unpaid

U.S. Bank App. 59

principal and interest due and owing on that date shall be offset against the Participant's Total Account.

(g) **Death of the Participant**. The death of the Participant shall terminate the loan. The unpaid principal and interest due and owing shall be offset against the Participant's Total Account.

(h) **Event of Default**. Subject to subsections (f) and (i) of this Section 7.6.6, nonpayment on or before the last day of the quarter following the quarter in which the payment is due shall be an event of default. If a payment following an event of default is not made by payroll deduction, then payment shall be considered made for this purpose only when it is received in fact by the Trustee or the Benefits Administration Committee as agent for the Trustee. Upon the occurrence of an event of default, the Participant's Accounts in the Plan given as security shall be offset by the amount of the then outstanding balance of the loan in default (including, to the extent required under the Code, interest on the amount in default from the time of the default until the time of the offset). In the case of a Participant who has not had a Distributable Event, however, this offset shall be deferred until a Distributable Event as to such Participant, and, in the interim, it shall be possible to cure the default. Such offset shall be automatic. No notice shall be required prior to offset.

(i) **Suspension of Payments During Unpaid Leave of Absence**. If the Participant is on an authorized unpaid leave of absence other than for Disability determined on or after January 1, 2021, as determined by the Committee, then loan payments are automatically suspended for a period of time beginning after the unpaid leave of absence commences and ending not later than the earlier of (i) the duration of the authorized unpaid leave of absence, or (ii) twelve (12) consecutive calendar months following the calendar month that the Participant's authorized unpaid leave of absence began; provided, however, that the Participant's death or termination of employment even while payments are suspended shall accelerate the loan as provided in subsections (g) and (f) (respectively). Upon the expiration of the suspension period, the then outstanding principal and interest on the loan shall be reamortized into equal periodic payments which the Participant shall resume paying over the remaining term of the loan; provided, however, that the interest rate used in the reamortization is the same as in the loan note and the final payment on the loan is due by the original maturity date of the loan. Any such reamortization shall not be considered a new loan or a rewriting or extension of the existing loan. For the avoidance of doubt, loan repayments will not be suspended for a Participant on a leave of absence due to Disability; a Participant on Disability will be allowed to continue to repay the loan via direct debit.

(j) **Suspension of Payments Due to Military Service**. If a Participant is called upon or volunteers to perform service in the uniformed services (as defined

55

in chapter 43 of title 38, United States Code), the Plan shall suspend the obligation to repay the loan during the period the Participant performs such service until the Participant returns to employment with the Company and its Affiliates or terminates employment with the Company and its Affiliates. The Participant may voluntarily elect to continue to make loan payments during the period the Participant performs service in the uniformed services.

(k)     **Miscellaneous**. The Benefits Administration Committee may impose uniform and nondiscriminatory procedures for the administration of loans made by the Plan. No Participant shall be permitted to borrow if such Participant then has one loan outstanding at a time within the last seven (7) days. If a Participant has one loan outstanding, the Participant's request for a new loan shall not be processed until the payoff of the outstanding loan has been completely processed. A loan in default that has not yet been offset or repaid shall be considered an outstanding loan for purposes of the preceding sentence.

Notwithstanding anything in Section 7.6.6(k) or otherwise in the Plan to the contrary, if a Participant had one (1) or more loans at a prior employer and the Participant is eligible to rollover a loan under Section 7.6.10 due to an acquisition, the Participant may not take out any new loans until the existing loan (the rolled over loans and any other loans) have been paid off but such Participant does not violate the limit of one (1) loan under Section 7.6.6(k) due to the rollover of one (1) or more loans to the Plan under Section 7.6.10.

(l)     **Fees**. The loan may be subject to any origination and periodic maintenance fees.

(m)     **Form of Payment**. The Benefits Administration Committee may require that prepayments, payments following an event of default, and payments following acceleration in accordance with subsection (f) above must be made by cashier's check, certified check or money order (and not by personal check) if they are not made by payroll deduction. The Benefits Administration Committee may permit payment by personal check in any other case.

(n)     **Loans Outstanding on the Effective Date**. Nothing in this Section 7.6.6 shall alter the terms and conditions of any loan to a Participant that was outstanding immediately prior to the Effective Date.

(o)     **Prohibition on Loans to Executive Officers and Directors**. Until such date as the Securities and Exchange Commission issues guidance permitting loans to executive officers and directors, if a Participant is an executive officer or director, then as permitted under Department of Labor's Field Assistance Bulletin 2003-1, the Participant shall not be eligible for a loan.

56

7.6.7.  **Tax Reporting**. To the extent required by section 72(p) of the Code, the Trustee shall report, from time to time, inclusion of income in connection with loans made under the Plan. The operation of those tax rules is entirely independent of the rules of the Plan.

7.6.8.  **Effect of Participant in Bankruptcy**. To the extent required by bankruptcy laws, loans shall be subject to stay, discharge, reinstatement and other matters.

7.6.9.  **ERISA Compliance— Loans Available to Parties in Interest**. Notwithstanding anything to the contrary in this Section 7.6, loans shall be available to Participants and Beneficiaries who are parties in interest as defined in section 3(14) of ERISA. An Alternate Payee shall be considered a Beneficiary for this purpose only after the domestic relations order has been finally determined to be a qualified domestic relations order as defined in Appendix C to this Plan Statement.

7.6.10. **Loan Rollovers Into the Plan**. Notwithstanding any of the foregoing provisions of this Section 7.6, the terms and conditions of any plan loan that was made to a Participant under the tax-qualified plan of the Participant's prior employer and that was acquired by the Plan as a result of a direct rollover following the Company's acquisition by merger, asset purchase or otherwise of all or a portion of a trade or business maintained by the Participant's prior employer (an "acquired loan"), shall continue in effect after such rollover, subject to the following modifications:

(a)    any provision requiring accelerated payment of the acquired loan upon termination of the Participant's employment with the prior employer shall be deemed modified to the extent necessary to prevent such acceleration from occurring prior to termination of the Participant's employment with the Company and the Affiliates;

(b)    any payroll deduction authorization for the making of payments on the acquired loan shall be deemed to apply to the Participant's pay from the Company and any Affiliate; and

(c)    the loan rules contained in Section 7.6 will apply to the acquired loan to the extent that they are not inconsistent with the terms and conditions otherwise applicable to such loan (as modified by subsections (a) and (b) above).

If a Participant rolls over a plan loan, the Participant shall be deemed to have consented to these modifications. If a payment with respect to an employee's acquired loan is received prior to the date on which the employee first executes an Earnings Reduction Agreement, such payment shall be reinvested in the same manner as the non-loan portion of the employee's rollover contribution. (Payments received on or after the date on which the employee first executes an Earnings Reduction Agreement shall be reinvested in the same manner as contributions under the Participant's investment election in effect at the time the payment is received.)

7.6.11. **Loan Rollovers Out of the Plan**. Notwithstanding any of the foregoing provisions of this Section 7.6, the terms and conditions of any plan loan that was made

U.S. Bank App. 62

under the Plan to employees whose Recognized Employment ended as a result of the Company's disposition or spin-off of all or a portion of a trade or business, and for whom the Benefits Administration Committee has permitted the plan loan to be rolled over to another tax-qualified plan, shall not be subject to the foregoing provisions:

(a)     Section 7.6.6(d), except that employees shall be responsible for making monthly payments on the loan on an after-tax basis until the loan is rolled over into another tax-qualified retirement plan;

(b)     Section 7.6.6(f), except to the extent either (i) the tax-qualified retirement plan which is to receive the plan loan declines to take the plan loan, (ii) an employee fails to authorize the roll over, or (iii) the roll over does not occur within six months of an employee's termination of employment; and

An employee that elects to roll over a loan must roll over the entire amount of all outstanding loans.

58

# SECTION 8

## SPENDTHRIFT PROVISIONS

No Participant or Beneficiary shall have any transmissible interest in any Total Account nor shall any Participant or Beneficiary have any power to anticipate, alienate, dispose of, pledge or encumber the same while in the possession or control of the Trustee, nor shall the Trustee or the Benefits Administration Committee recognize any assignment thereof, either in whole or in part, nor shall any Total Account be subject to attachment, garnishment, execution following judgment or other legal process while in the possession or control of the Trustee.

The power to designate Beneficiaries to receive the Total Account of a Participant in the event of the Participant's death shall not permit or be construed to permit such power or right to be exercised by the Participant so as thereby to anticipate, pledge, mortgage or encumber the Participant's Total Account or any part thereof, and any attempt of a Participant so to exercise said power in violation of this provision shall be of no force and effect and shall be disregarded by the Trustee and the Benefits Administration Committee.

This Section shall not prevent the Trustee or the Benefits Administration Committee from exercising, in their discretion, any of the applicable powers and options granted to them upon the occurrence of a Distributable Event, as such powers may be conferred upon them by any applicable provision hereof, nor prevent the Plan from offsetting a Participant's Total Account by the amount of the then outstanding balance of the loan in default. This Section shall not prevent the Benefits Administration Committee or the Trustee from observing the terms of a qualified domestic relations order as provided in the Appendix C to this Plan Statement.

Notwithstanding any provision of the Plan to the contrary, a Participant's benefit under the Plan may be offset pursuant to an order or requirement to pay that arises under a judgment of conviction for a crime involving the Plan, a civil judgment entered by a court in an action brought in connection with a violation of ERISA, Title I, Subtitle B, Part 4, or a settlement agreement between the Participant and the Secretary of Labor or the Pension Benefit Guaranty Corporation (PBGC), in accordance with the requirements of sections 401(a)(13)(C) and (D) of the Code.  Participant Plan benefits may also be offset due to overpayment.

U.S. Bank App. 64

## SECTION 9

## AMENDMENT AND TERMINATION

9.1.   **Amendment**. The Company hereby reserves the power to amend this Plan Statement, either prospectively or retroactively or both, as follows:

(a)   in any respect by resolution of the Compensation Committee, and

(b)   to conform the Plan to the requirements of federal law or in any respect that does not materially increase the cost of the Plan to the Company, either by written action of an officer of the Company or by action of the Benefits Administration Committee,

provided that no amendment shall be effective to reduce or divest the Total Account of any Participant unless the same (i) shall have been adopted with the consent of the Secretary of Labor pursuant to the provisions of ERISA or in order to comply with the provisions of the Code and the regulations and rulings thereunder affecting the tax-qualified status of the Plan and the deductibility of contributions thereto, or (ii) is otherwise permitted by section 411(d)(6) of the Code and the regulations issued thereunder. Notwithstanding the foregoing, no amendment shall be effective to increase the duties of the Trustee without its consent.

9.2.   **Discontinuance of Contributions and Termination of Plan**. The Company reserves the right to reduce, suspend or discontinue its contributions to the Plan and to terminate the Plan in its entirety at any time.

9.3.   **Merger or Spinoff of Plans**.

9.3.1.   **In General**. The Benefits Administration Committee may cause all or a part of the Plan to be merged with all or a part of any other plan and may cause all or a part of the assets and liabilities to be transferred from the Plan to another plan. In the case of merger or consolidation of the Plan with, or transfer of assets and liabilities of the Plan to, any other plan, each Participant shall (if such other plan were then terminated) receive a benefit immediately after the merger, consolidation or transfer which is not less than the benefit the Participant would have been entitled to receive immediately before the merger, consolidation or transfer (if the Plan had then terminated). If the Benefits Administration Committee agrees to a transfer of assets and liabilities to or from another plan, the agreement under which such transfer is concluded (or an amendment of or appendix to this Plan Statement) shall specify the Accounts to which the transferred amounts are to be credited.

9.3.2.   **Limitations**. In the event the Benefits Administration Committee:

(a)   causes assets to be transferred to the Plan from any plan that offers one or more optional forms of benefit that must be preserved with respect to the transferred assets in order to satisfy the optional form of benefit

60

requirements of section 411(d)(6)(B)(ii) of the Code (or where applicable, the distribution rules of section 401(k) of the Code), or

(b)      causes the Plan to merge with such a plan,

the Plan shall be deemed amended, effective as of the time of the transfer or merger, to preserve all such optional forms of benefit, but only with respect to all amounts attributable to such transferred or merging assets. In no event shall assets be transferred from the Plan to any other plan unless such other plan complies (or has been amended to comply) with the optional form of benefit requirements of section 411(d)(6)(B)(ii) of the Code and the distribution rules of section 401(k) of the Code with respect to such transferred assets.

9.3.3.   **Beneficiary Designations**. If assets and liabilities are transferred from another plan to the Plan, and except as otherwise determined by the Benefits Administration Committee, Beneficiary designations made under that plan shall become void on the date as of which such transfer is made and the Beneficiary designation rules of this Plan Statement shall apply beginning on such date.

9.3.4.   **Consolidation or Merger of Plans**. If the Plan consolidates or merges with any other plan or the assets of the Plan are transferred to any other Plan, each Participant will be entitled to a benefit immediately after the merger, consolidation or transfer (if the Plan were then terminated) equal to or greater than the benefit immediately before such merger, consolidation or transfer (if the Plan had then terminated).

9.4.   **Adoption by Affiliates**.

9.4.1.   **Adoption with Consent**. In addition to the corporations listed in Schedule I, the Benefits Administration Committee may consent to the adoption of the Plan by other corporations affiliated in ownership with U.S. Bancorp subject to such conditions as the Benefits Administration Committee may impose.

9.4.2.   **Procedure for Adoption**. Any such adopting corporation shall initiate its adoption of the Plan by delivery of a certified copy of the resolutions of its board of directors adopting this Plan Statement to the Benefits Administration Committee. Upon the consent by the Benefits Administration Committee of the adoption by the adopting corporation, the adoption of the Plan by the adopting corporation shall be effective as of the date specified by the Benefits Administration Committee. (The corporations listed in Schedule I shall not be required to obtain approval for their continued participation in the Plan.)

9.4.3.   **Effect of Adoption**. Upon the adoption of the Plan by an adopting corporation as heretofore provided, the adopting corporation shall be an Employer hereunder in all respects. Each corporation listed in Schedule I (which may be updated at any time without the need for a formal Plan amendment) and each other adopting corporation, as a condition of continued participation in the Plan, agrees to the Plan's terms and delegates all fiduciary responsibility as provided under the Plan. In addition, no Employer (other than the Company) shall have the authority (i) to terminate the Plan

61

(except that each adopting corporation shall have the power to terminate the Plan as applied to it), (ii) to amend this Plan Statement or (iii) to take any other action with respect to the Plan unless specifically provided for by the Plan or directed by the Benefits Administration Committee or the Compensation Committee. Employment with the Company or any adopting corporation shall be credited with the Employer for the purposes of determining Eligibility Service and the minimum annual service requirement for allocation of contributions. Contributions of the Company and each adopting corporation shall be allocated only among those persons who were their employees during the Plan Year with respect to which the contribution is made.

U.S. Bank App. 67

## SECTION 10

## CONCERNING THE TRUSTEE

10.1.   **Dealings with Trustee**.

    (a)    No person, firm or corporation dealing with the Trustee shall be required to take cognizance of the provisions of this Plan Statement or be required to make inquiry as to the authority of the Trustee to do any act which the Trustee shall do hereunder. Any such person, firm or corporation shall be entitled to assume conclusively that the Trustee is properly authorized to do any act which it shall do hereunder. Any such person, firm or corporation shall be under no liability to anyone whomsoever for any act done hereunder pursuant to the written direction of the Trustee.

    (b)    Any such person, firm or corporation may conclusively assume that the Trustee has full power and authority to receive and receipt for any money or property becoming due and payable to the Trustee. No such person shall be bound to inquire as to the disposition or application of any money or property paid to the Trustee or paid in accordance with the written directions of the Trustee.

    (c)    No person, firm or corporation dealing with the Trustee shall be required to see either to the administration of the Plan or Fund or to the faithful performance by the Trustee of its duties hereunder (except to the extent otherwise provided by the ERISA).

    (d)    U.S. Bancorp represents and warrants that the Compensation Committee will not give Trustee any directions, and that the Trustee shall not receive directions from the Compensation Committee.

10.2.   **Compensation of Trustee**. The Trustee shall be entitled to receive compensation for providing services under this Plan Statement. A schedule of that compensation is contained in Exhibit A (including all exhibits thereto, which is entitled, "Institutional Trust & Custody Fee Schedule for Plans (for the U.S. Bank 401(k) Savings Plan)", as the same may be updated from time-to-time). In addition, reasonable expenses, fees, costs and other charges incurred by the Trustee in providing services under this Plan Statement (including, but not limited to, compensation, expenses, fees, costs and other charges payable to service providers hired under this Plan Statement) are expenses of the Fund. The Trustee will send an invoice for such compensation (including under Exhibit A), expenses, fees, costs and other charges to the Benefits Administration Committee. The Benefits Administration Committee (or a member of such committee authorized to act on behalf of the Committee) will review each bill and, upon approval, direct the Trustee to charge the bill against the Fund (or, if the Company has paid the bill with the intention the Company be reimbursed, direct that the Company be reimbursed from the Fund), except to the extent the Company has paid a bill and intended for the Company to be responsible for the bill.

U.S. Bank App. 68

10.3.   **Resignation and Removal of Trustee**.

(a)     The Trustee may resign by giving thirty (30) days' notice of intention so to do to the Benefits Administration Committee or such shorter notice as the Benefits Administration Committee may approve.

(b)     The Benefits Administration Committee may remove any Trustee or successor Trustee hereunder by giving such Trustee thirty (30) days' written notice of removal by certified mail.

(c)     The Benefits Administration Committee shall have the power to appoint one or more successor individual or corporate Trustee.

(d)     When any person or corporation appointed, qualified and serving as a Trustee hereunder shall cease to be a Trustee of the Fund, the successor Trustee appointed hereunder shall thereupon be and become vested with full title and right to possession of all assets and records of the Plan and Fund in the possession or control of such prior Trustee, and the prior Trustee shall forthwith account for and deliver the same to such remaining or successor Trustee.

(e)     By designating a corporate Trustee, original or successor, hereunder, there is included in such designation and as a part thereof any other corporation possessing trust powers and authorized by law to accept the Plan and Fund into which or with which the designated corporate Trustee, original or successor, shall be converted, consolidated or merged, and the corporation into which or with which any corporate Trustee hereunder shall be so converted, consolidated or merged shall continue to be the corporate Trustee of the Plan and Fund.

(f)     No Trustee shall be or become liable for any act or omission of a prior Trustee hereunder, it being the purpose and intent that each Trustee shall be liable only for the Trustee's own acts or omissions during the Trustee's term of service as Trustee hereunder.

10.4.   **Accountings by Trustee**.

(a)     The Trustee shall render to the Benefits Administration Committee an account and report as soon as practicable after the Annual Valuation Date in each year showing all transactions affecting the administration of the Fund, including, but not necessarily limited to, such information concerning the Fund and the administration thereof by the Trustee as shall be requested in writing by the Benefits Administration Committee.

(b)     The Trustee shall also render such further reports from time to time as may be requested by the Employer or the Benefits Administration Committee and shall submit its final report and account to the Employer and the Benefits Administration Committee when it shall cease to be Trustee hereunder, whether by resignation or other cause.

64

U.S. Bank App. 69

10.5.  **Trustee's Power to Protect Itself on Account of Taxes**. The Trustee, as a condition to the making of distribution of a former Participant's Total Account during the Participant's lifetime, may require the former Participant, or in the event of the Participant's death may require the person or persons entitled to receive the Participant's Total Account in such event, to furnish the Trustee with proof of payment of all income, inheritance, estate, transfer, legacy and/or succession taxes and all other taxes of any different type or kind that may be imposed under or by virtue of any state or federal statute or law upon the payment, transfer, descent or distribution of such Account and for the payment of which the Trustee may, in its judgment, be directly or indirectly liable. In lieu of the foregoing, the Trustee may deduct, withhold and transmit to the proper taxing authorities any such tax which it may be permitted or required to deduct and withhold and the Account to be distributed in such case shall be correspondingly reduced.

10.6.  **Other Trust Powers**. As directed by the Investment Committee, the Benefits Administration Committee, an Investment Manager, or a Participant or Beneficiary (by way of omnibus investment directions transmitted by the Benefits Administration Committee, or its designated agent (such as the record keeper designated by the Benefits Administration Committee)) (each, a "Directing Party"), the Trustee shall have and may exercise from time to time, the following powers:

    (a)    To invest and reinvest any Subfunds established pursuant to SECTION 5 in accordance with the investment characteristics and objectives determined therefor and to invest and reinvest the assets of the Fund in any securities or properties in which an individual could invest the individual's own funds, without limitation by any statute, rule of law or regulation of any governmental body prescribing or limiting the investment of trust assets by a corporate or individual trustee, in or to certain kinds, types or classes of investments or prescribing or limiting the portion of the Fund which may be invested in any one property or kind, type or class of investment. Specifically and without limiting the generality of the foregoing, the Trustee may invest and reinvest principal and accumulated income of the Fund in any real or personal property; preferred or common stocks of any kind or class of any corporation, including but not limited to investment and small business investment companies of all types; voting trust certificates; interests in investment trusts; shares of mutual funds (including shares of mutual funds for which the Trustee or any affiliate of the Trustee serves as investment advisor, administrator, distributor, custodian or other service provider as disclosed in the current prospectus for any such mutual fund); interests in any limited or general partnership or other business enterprise, however organized and for whatever purpose; group or individual annuity contracts (which may involve investment in the issuer's general account or any of its separate accounts); interests in common or collective trusts, variable interest notes or any other type of collective fund maintained by a bank or similar institution (whether or not the Trustee hereunder); bonds, notes and debentures, secured or unsecured; mortgages, leases or other interests in real or personal property; interests in mineral, gas, oil or timber properties or other wasting assets; options; commodity or financial futures contracts; foreign currency; savings or certificate deposits in the commercial or savings department of the Trustee or any bank or financial institution affiliated with the Trustee; insurance contracts on

65

the life of any "keyman" or shareholder of the Employer; or conditional sales contracts; securities issued by the Company or an Affiliate and real property leased to the Company or an Affiliate; provided, however, that the Plan may not acquire or hold any Company or Affiliate security which is not a Qualifying Employer Security nor any Company or Affiliate owned real property which is not "qualifying employer real property" (within the meaning of section 407(d)(4) of ERISA). Investment of the entire Fund in common stocks shall be deemed appropriate at any phase of the economic business cycle, but it is not, however, the purpose hereof to direct that the Fund shall be invested either entirely or to any extent whatsoever in such common stocks. Prior to maturity and distribution of the Total Accounts of Participants, the Trustee shall commingle the Accounts of Participants and former Participants in each subfund and invest, reinvest, control and manage each of the same as a common trust fund.

(b) To sell, exchange or otherwise dispose of any asset of whatsoever character at any time held by the Trustee in trust hereunder.

(c) To segregate any part or portion of the Fund for the purpose of administration or distribution thereof and to hold the Fund uninvested whenever and for so long as the same is likely to be required for the payment in cash of Total Accounts normally expected to mature in the near future, or whenever, and for as long as, market conditions are uncertain, or for any other reason which requires such action or makes such action advisable.

(d) In connection with the Trustee's power to hold uninvested reasonable amounts of cash whenever it is deemed advisable to do so, to deposit the same, with or without interest, in the commercial or savings departments of any corporate Trustee serving hereunder or of any other bank, trust company or other financial institution including those affiliated with the Trustee.

(e) To register any investment held in the Fund in the name of the Trustee, without trust designation, or in the name of a nominee or nominees, and to hold any investment in bearer form, but the records of the Trustee shall at all times show that all such investments are part of the Fund, and the Trustee shall be as responsible for any act or default of any such nominee as for its own.

(f) To retain and employ such attorneys, agents and servants as may be necessary or desirable in the administration of the Fund, and to pay them such reasonable compensation for their services as may be agreed upon as an expense of administration of the Fund, including power to employ and retain counsel upon any matter of doubt as to the meaning of or interpretation to be placed upon this Plan Statement or any provisions thereof with reference to any question arising in the administration of the Fund or pertaining to the distribution thereof or pertaining to the rights and liabilities of the Trustee hereunder or to the rights and claims of Participants and Beneficiaries. The Trustee, in any such event, may act in reliance upon the advice, opinions, records, statements and computations of any attorneys and agents and on the records, statements and computations of any servants so

66

selected by it in good faith and shall be released and exonerated of and from all liability to anyone in so doing (except to the extent that liability is imposed under ERISA).

(g)     To institute, prosecute and maintain, or to defend, any proceeding at law or in equity concerning the Plan or the Fund or the assets thereof or any claims thereto, or the interests of Participants and Beneficiaries hereunder at the sole cost and expense of the Fund or at the sole cost and expense of the Total Account of the Participant who may be concerned therein or who may be affected thereby as, in the Benefits Administration Committee's opinion, shall be fair and equitable in each case, and to compromise, settle and adjust all claims and liabilities asserted by or against the Plan or the Fund or asserted by or against the Trustee, on such terms as the Benefits Administration Committee shall direct. The Trustee shall be under no duty or obligation to institute, prosecute, maintain or defend any suit, action or other legal proceeding unless it shall be indemnified to its satisfaction against all expenses and liabilities which it may sustain or anticipate by reason thereof.

(h)     To institute, participate and join in any plan of reorganization, readjustment, merger or consolidation with respect to the issuer of any securities held by the Trustee hereunder, and to use any other means of protecting and dealing with any of the assets of the Fund which it believes reasonably necessary or proper and, in general, to exercise each and every other power or right with respect to each asset or investment held by it hereunder as individuals generally have and enjoy with respect to their own assets and investment, including power to vote upon any securities or other assets having voting power which it may hold from time to time, and to give proxies with respect thereto, with or without power of substitution or revocation, and to deposit assets or investments with any protective committee, or with trustees or depositaries designated by any such committee or by any such trustees or any court.

(i)     In any matter of doubt affecting the meaning, purpose or intent of any provision of this Plan Statement which directly affects its duties, to determine such meaning, purpose or intent; and the determination of the Trustee in any such respect shall be binding and conclusive upon all persons interested or who may become interested in the Plan or the Fund.

(j)     To require, as a condition to distribution of any Total Account, proof of identity or of authority of the person entitled to receive the same, including power to require reasonable indemnification on that account as a condition precedent to its obligation to make distribution hereunder.

(k)     To collect, receive, receipt and give quittance for all payments that may be or become due and payable on account of any asset in trust hereunder which has not, by act of the Trustee taken pursuant thereto, been made payable to others; and payment thereof by the company issuing the same, or by the party obligated thereon, as the case may be, when made to the Trustee hereunder or to any person

U.S. Bank App. 72

or persons designated by the Trustee, shall acquit, release and discharge such company or obligated party from any and all liability on account thereof.

(l)    To determine from time to time, as required for the purpose of distribution or for the purpose of allocating trust income or for any other purpose of the Plan, the then value of the Fund, the Trustee, in each such case, using and employing for that purpose that value of each of the assets constituting the Fund as is provided to the Trustee by a third-party pricing vendor or readily determinable on an established market (if such value is available to the Trustee when determining the value of the Fund; if not then available, the Investment Committee will, upon the Trustee's request, direct the Trustee as to such value. Each such determination so made by the Trustee in good faith shall be binding and conclusive upon all persons interested or becoming interested in the Plan or the Fund.

(m)    To receive and retain contributions made in a form other than cash in the form in which the same are received until such time as the Investment Committee directs the sale or other disposition of such assets.

(n)    To commingle, for investment purposes, the assets of the Fund with the assets of any other qualified retirement plan trust fund of the Company, provided that the records of the Trustee shall reflect the relative interests of the separate trusts in such commingled fund.

(o)    To grant an option or options for the purchase of a trust asset ("call option"), including the granting of options for the purchase of common stock held in the Fund ("covered call options") in return for the receipt of a premium or other consideration by the Fund from the optionee, it being expressly intended that such options may be in such form and terms as to permit their being freely traded on an option exchange (such as a "stock index call option"); to repurchase any such option granted, or in lieu thereof, to repurchase an option identical in terms to the one granted; to issue an option or options requiring the purchase into the Fund of assets held by the optionee ("put option"), in return for the receipt of premium or other consideration by the Fund from the optionee, it being expressly intended that said options may be in such form and terms as to permit their being freely traded on an option exchange (such as a "stock index put option"); to repurchase any such option issued, or in lieu thereof, to repurchase an option identical in terms to the one issued; to pledge assets of the Fund in connection with such option transactions.

(p)    To have and to exercise such other and additional powers as may be advisable or proper in its opinion for the effective and economical administration of the Fund.

(q)    To deposit any part or all of the assets in any collective trust fund which is now or hereafter maintained by the Trustee, an agent of the Trustee, an Investment Manager or other financial services firm as a medium for the collective investment of funds of pension, profit sharing or other employee benefit plans, and which is exempt from taxation under section 501(a) of the Code, as amended, and to withdraw any part or all of the assets so deposited. Any assets deposited with the

68

trustee of a collective trust fund shall be held and invested by the trustee thereunder pursuant to all the terms and conditions of the trust agreement or declaration of trust establishing the fund. Such trust agreements or declarations of trust (each of which shall be a "Declaration of Trust") are listed on Schedule III (which may be updated from time to time), hereby incorporated herein by reference and shall prevail over any contrary provisions of this Plan Statement.

(r)     To deposit any part or all of the assets with the trustee of any master investment trust maintained by U.S. Bancorp for the investment of assets of qualified pension, profit sharing or stock bonus plans it or its subsidiaries maintain and to withdraw any part or all of the assets so deposited, and any assets deposited with the trustee of a master investment trust shall be held and invested by that trustee pursuant to the terms and conditions of the master investment trust document, which is hereby incorporated herein by reference and shall prevail over any contrary provision of this Plan Statement. Notwithstanding any other provision of this Plan Statement to the contrary, the Trustee may cause any part or all of the Fund, without limitation as to amount, to be commingled with the money of trusts created by others, by causing such money to be invested as a part of any or all of the funds created by any of the aforementioned Declaration of Trust and the Fund so added to any of said funds at any time shall be subject to all of the provisions of said Declaration of Trust as it is amended from time to time.

(s)     The Trustee is expressly authorized to the fullest extent permitted by law to (i) retain the services of U.S. Bancorp Investments, Inc., an affiliate of U.S. Bank National Association, and/or any other registered broker-dealer organization hereafter affiliated with U.S. Bank National Association, and any future successors in interest thereto (collectively, including U.S. Bank National Association and its other affiliates, for the purposes of this paragraph referred to as the "Affiliated Entities"), to provide services to assist in or facilitate the purchase or sale of investment securities in the Trust, (ii) acquire as assets of the Trust shares of mutual funds to which Affiliated Entities provides, for a fee, services in any capacity and (iii) acquire in the Trust any other services or products of any kind or nature from the Affiliated Entities regardless of whether the same or similar services or products are available from other institutions. The Trust may directly or indirectly (through mutual funds fees and charges for example) pay management fees, transaction fees and other commissions to the Affiliated Entities for the services or products provided to the Trust and/or such mutual funds at such Affiliated Entities' standard or published rates without offset (unless required by law) from any fees charged by the Trustee for its services as Trustee. The Trustee may also deal directly with the Affiliated Entities regardless of the capacity in which it is then acting, to purchase, sell, exchange or transfer assets of the Trust even though the Affiliated Entities are receiving compensation or otherwise profiting from such transaction or are acting as a principal in such transaction. Each of the Affiliated Entities is authorized to (i) effect transactions on national securities exchanges for the Trust as directed by the Trustee, and (ii) retain any transactional fees related thereto, consistent with Section 11(a)(1) of the Securities Exchange Act of 1934, as amended, and related Rule

69

11a2-2(T). Included specifically, but not by way of limitation, in the transactions authorized by this provision are transactions in which any of the Affiliated Entities are serving as an underwriter or member of an underwriting syndicate for a security being purchased or are purchasing or selling a security for its own account. A Directing Party shall be authorized, and expressly retains the right hereunder, to direct the Trustee to retain the services of, and conduct transactions with, Affiliated Entities fully in the manner described above.

10.7.   **Investment Managers**. The Investment Committee shall have the power to appoint from time to time one or more Investment Managers to direct the Trustee in the investment of, or to assume complete investment responsibility over, all or any portion of the Fund. An Investment Manager may be any person or firm (a) which is either (1) registered as an investment adviser under the Investment Advisers Act of 1940, (2) a bank, or (3) an insurance company which is qualified to perform the services of an Investment Manager under the laws of more than one state; and (b) which acknowledges in writing that it is a fiduciary with respect to the Plan. The conditions prescribed in the preceding sentence shall apply to the issuer of any group annuity contract hereunder only if, and to the extent that, such issuer would otherwise be considered a "fiduciary" with respect to the Plan, within the meaning of ERISA. The Investment Committee may remove any such Investment Manager and shall have the power to appoint a successor or successors from time to time in succession to any Investment Manager who shall be removed, shall resign or shall otherwise cease to serve hereunder. The Trustee shall comply with all investment directions given to the Trustee with respect to the designated portion of the Fund, and the Trustee shall be released and exonerated of and from all liability for or on account of any action taken or not taken by it pursuant to the directions of such Investment Manager, except to the extent that liability is imposed under ERISA. Neither the Investment Committee, nor any officer, director or employee thereof, nor any member of the Benefits Administration Committee or the Investment Committee shall be liable for the acts or omissions of the Trustee or of any Investment Manager appointed hereunder. The fees and expenses of any Investment Manager, as agreed upon from time to time between the Investment Manager and the Investment Committee, shall be charged to and paid from the Fund in a fair and equitable manner, except to the extent that the Investment Committee, in its discretion, may pay such directly to the Investment Manager. The Company hereby represents and warrants that any Investment Manager (i) is an "investment manager" within the meaning of section 3(38) of ERISA with respect to the Fund, and (ii) has been delegated the authority to manage, acquire and dispose of the Fund pursuant to section 402(c)(3) of ERISA.

10.8.   **Indemnity**. Except as prohibited by applicable law, the Company shall defend, indemnify and hold harmless from any and all liabilities, costs and expenses (including legal fees), to the extent not covered by insurance, each individual (as distinguished from corporate) trustee of the Plan, and each officer, director or employee of the Company and its Affiliates, who is a party to or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding with respect to the Plan, whether imposed under ERISA or otherwise, wherever brought, whether civil, criminal, administrative or investigative by reason of the fact that the individual is or was a fiduciary or administrator of the Plan (as defined in ERISA), or by reason of acting in any other capacity in connection with such plans. No such indemnification, however, shall be required or provided if such liability arises (i) from the individual's claim for the individual's own benefit, (ii) from the proven willful misconduct, fraud or the bad faith of the

U.S. Bank App. 75

individual, or (iii) from the criminal misconduct of such individual if the individual had reason to believe the conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the individual's conduct was unlawful. This indemnification shall continue as to an individual who has ceased to be a trustee of the Plan or officer, director or employee of the Company and its Affiliates and shall inure to the benefit of the heirs, executors and administrators of such an individual.

10.9.   **Additional Trust Terms**. Notwithstanding any provision of this Plan Statement (including, but not limited to, Sections 5.4 (Management and Investment of Fund) and 12.7 (Named Fiduciaries)) to the contrary:

(a)   The trust maintained under this Plan Statement for the Fund is known as the U.S. Bank 401(k) Savings Plan Trust.

(b)   The Company hereby (i) represents and warrants that the Trustee is the sole trustee of the Fund, and (ii) covenants that the Investment Committee will not appoint a co-trustee of the Fund.

(c)   The Trustee is subject to the directions of the Benefits Administration Committee, the Investment Committee, any Investment Manager, the Participants and the Beneficiaries. Without limiting the generality of the foregoing, the Trustee has no discretion to invest or reinvest the Fund or to distribute the Fund to Participants or Beneficiaries.

(d)   The Company hereby represents, warrants, and covenants that (i) each of the Investment Committee and the Benefits Administration Committee is a "named fiduciary" with respect to the Plan within the meaning of section 402(a) of ERISA (a "Named Fiduciary") and none are a trustee under section 403(a) of ERISA with respect to the Fund, (ii) the Plan maintains and follows procedures for identifying prohibited transactions under ERISA and the Code and, if prohibited, for identifying the individual or class exemption applicable to the transaction (or for not entering into the transaction in the first instance), (iii) upon the Trustee's request, a Named Fiduciary will represent that a transaction is not a prohibited transaction or cite the exemption or legal guidance the Named Fiduciary is relying upon with respect to a directed transaction (and represent and warrant the exemption or legal guidance is satisfied), (iv) any direction provided by a Named Fiduciary will be made according to the terms of this Plan Statement and will not be contrary to ERISA, (v) the Benefits Administration Committee is the "administrator" of the Plan within the meaning of section 3(16)(A) of ERISA.

(e)   The Company hereby acknowledges that (i) the duties of the Trustee will be strictly limited to those set forth in this Plan Statement, and no implied covenants, duties, responsibilities, representations, warranties or obligations will be read into this Plan Statement against the Trustee, (ii) the Trustee has no duty to select or monitor investment options made available to Participants and Beneficiaries or otherwise

71

manage the Fund, and, except as expressly provided in the Nonresponse paragraphs of Sections 5.1.9 (Voting of Employer Securities) and 5.1.10 (Tender Offer), exercises the investment powers set forth in the Plan Statement (including, without limitation, the purchase, sale, retention and valuation of Fund assets, and the exercise of shareholder rights) solely as directed by a Directing Party, and the Trustee's duty with respect to investing Fund assets ultimately held in any Account is limited to implementing investment directions the Trustee receives from a Directing Party, (iii) the Trustee has no duty to question whether any direction received under this Plan Statement is prudent or to solicit directions, (iv) the Trustee is not a Named Fiduciary, and (v) except as provided immediately below, the Trustee does not provide any services under this Plan Statement as a "fiduciary" with respect to the Plan within the meaning of section 3(21) of ERISA.

(f)     The Trustee hereby acknowledges that, when acting as directed by the Benefits Administration Committee or the Investment Committee, the Trustee is providing services directly to the Plan as a "fiduciary" within the meaning of section 3(21) of ERISA, subject to significant limits under section 403(a)(1) of ERISA.

10.10.  **Advance Funds or Securities.**  The Trustee has the power to advance funds or securities in furtherance of settling securities transactions and other financial-market transactions under this Agreement.  Although Trustee has the power, it does not have the duty to advance funds or securities or otherwise expend or risk its own funds or incur its own liability in the exercise of its powers or rights or performance of its duties under this Agreement.  To the extent of any advance of funds or securities under this Agreement, and to the extent permitted by applicable law, the Company hereby grants the Trustee a first-priority lien and security interest in, and right of set-off against, the Assets.  The Trustee may execute that lien and security interest, and exercise that right, at any time.  Furthermore, nothing in this Agreement constitutes a waiver of any of the Trustee's rights as a securities intermediary under Uniform Commercial Code §9-206, and the Company hereby acknowledges that the obligation to pay a purchase price to the Company arises at the time of the purchase.

10.11.  **Damages.**  No party is liable for any indirect, incidental, special, punitive, or consequential damages arising out of or in any way related to this Agreement or the performance of its obligations under this Agreement.  This limitation applies even if the party has been advised of, or is aware of, the possibility of such damages.

72

## SECTION 11

## DETERMINATIONS — RULES AND REGULATIONS

11.1. **Determinations**. The Benefits Administration Committee shall make such determinations as may be required from time to time in the administration of the Plan. The Benefits Administration Committee shall have the sole discretion, authority and responsibility to interpret and construe this Plan Statement and all relevant documents and information, and to determine all factual and legal questions under the Plan, including, but not limited to, the entitlement of all persons to benefits and the amounts of their benefits. Its discretionary authority shall include all matters arising under the Plan including, but not limited to, the determination of whether a domestic relations order is a qualified domestic relations order and the interpretation and administration of a qualified domestic relations order.

11.2. **Claims and Review Procedure**. Until modified by the Benefits Administration Committee, the claims and review procedure set forth in this Section shall be the mandatory claims and review procedure for the resolution of disputes and disposition of claims filed under the Plan.

11.2.1. **Initial Claim**. An individual may, subject to any applicable deadline, file with the Benefits Administration Committee a written claim for benefits under the Plan in a form and manner prescribed by the Benefits Administration Committee.

(a)     If the claim is denied in whole or in part, the Benefits Administration Committee shall notify the claimant of the adverse benefit determination within ninety (90) days after receipt of the claim.

(b)     The ninety (90) day period for making the claim determination may be extended for ninety (90) days if the Benefits Administration Committee determines that special circumstances require an extension of time for determination of the claim, provided that the Benefits Administration Committee notifies the claimant, prior to the expiration of the initial ninety (90) day period, of the special circumstances requiring an extension and the date by which a claim determination is expected to be made.

11.2.2. **Notice of Initial Adverse Determination**. A notice of an adverse determination shall set forth in a manner calculated to be understood by the claimant:

(a)     the specific reasons for the adverse determination;

(b)     references to the specific provisions of the Plan Statement (or other applicable Plan document) on which the adverse determination is based;

(c)     a description of any additional material or information necessary to perfect the claim and an explanation of why such material or information is necessary; and

73

(d)     a description of the claims review procedure, including the time limits applicable to such procedure, and a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following an adverse determination on review.

11.2.3.  **Request for Review**. Within sixty (60) days after receipt of an initial adverse benefit determination notice, the claimant may file with the Benefits Administration Committee a written request for a review of the adverse determination and may, in connection therewith, submit written comments, documents, records and other information relating to the claim benefits. Any request for review of the initial adverse determination not filed within sixty (60) days after receipt of the initial adverse determination notice shall be untimely.

11.2.4.  **Claim on Review**. If the claim, upon review, is denied in whole or in part, the Benefits Administration Committee shall notify the claimant of the adverse benefit determination within sixty (60) days after receipt of such a request for review.

(a)     The sixty (60) day period for deciding the claim on review may be extended for sixty (60) days if the Benefits Administration Committee determines that special circumstances require an extension of time for determination of the claim, provided that the Benefits Administration Committee notifies the claimant, prior to the expiration of the initial sixty (60) day period, of the special circumstances requiring an extension and the date by which a claim determination is expected to be made.

(b)     In the event that the time period is extended due to a claimant's failure to submit information necessary to decide a claim on review, the claimant shall have sixty (60) days within which to provide the necessary information and the period for making the claim determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information or, if earlier, the expiration of sixty (60) days.

(c)     The Benefits Administration Committee's review of a denied claim shall take into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

11.2.5.  **Notice of Adverse Determination for Claim on Review**. A notice of an adverse determination for a claim on review shall set forth in a manner calculated to be understood by the claimant:

(a)     the specific reasons for the denial;

(b)     references to the specific provisions of the Plan Statement (or other applicable Plan document) on which the adverse determination is based;

74

      (c)      a statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits; and

      (d)      a statement of the claimant's right to bring an action under section 502(a) of ERISA.

**11.3.  Rules and Regulations.** Any rule not in conflict or at variance with the provisions hereof may be adopted by the Benefits Administration Committee.

      (a)      No inquiry or question shall be deemed to be a claim or a request for a review of a denied claim unless made in accordance with the Plan's claim procedures. The Benefits Administration Committee may require that any claim for benefits and any request for a review of a denied claim be filed on forms to be furnished by the Benefits Administration Committee upon request.

      (b)      All decisions on claims and on requests for a review of denied claims shall be made by the Benefits Administration Committee unless delegated as provided for in the Plan, in which case references in this SECTION 11 to the Benefits Administration Committee shall be treated as references to the Benefits Administration Committee's delegate.

      (c)      Claimants may be represented by a lawyer or other representative at their own expense, but the Benefits Administration Committee reserves the right to require the claimant to furnish written authorization and establish reasonable procedures for determining whether an individual has been authorized to act on behalf of a claimant. A claimant's representative shall be entitled to copies of all notices given to the claimant.

      (d)      The decision of the Benefits Administration Committee on a claim and on a request for a review of a denied claim may be provided to the claimant in electronic form instead of in writing at the discretion of the Benefits Administration Committee.

      (e)      In connection with the review of a denied claim, the claimant or the claimant's representative shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant (within the meaning of 29 C.F.R. Section 2560.503-1(m)(8)) to the claimant's claim for benefits.

      (f)      The time period within which a benefit determination will be made shall begin to run at the time a claim or request for review is filed in accordance with the claims procedures, without regard to whether all the information necessary to make a benefit determination accompanies the filing.

U.S. Bank App. 80

(g)     The Benefits Administration Committee may, in its discretion, rely on any applicable statute of limitation or deadline as a basis for denial of any claim.

11.4.   **Deadline to File Claim**. To be considered timely under the Plan's claim and review procedure, a claim must be filed with the Benefits Administration Committee within one (1) year after the claimant knew or reasonably should have known of the principal facts upon which the claim is based.

11.5.   **Exhaustion of Administrative Remedies**. The exhaustion of the claim and review procedure is mandatory for resolving every claim and dispute arising under the Plan. As to such claims and disputes:

(a)     no claimant shall be permitted to commence any legal action to recover Plan benefits or to enforce or clarify rights under the Plan under section 502 or section 510 of ERISA or under any other provision of law, whether or not statutory, until the claim and review procedure set forth herein have been exhausted in their entirety; and

(b)     in any such legal action all explicit and all implicit determinations by the Benefits Administration Committee (including, but not limited to, determinations as to whether the claim, or a request for a review of a denied claim, was timely filed) shall be afforded the maximum deference permitted by law.

11.6.   **Deadline to File Legal Action**. No legal action to recover Plan benefits or to enforce or clarify rights under the Plan under section 502 or section 510 of ERISA or under any other provision of law, whether or not statutory, may be brought by any claimant on any matter pertaining to the Plan unless the legal action is commenced in the proper forum before the earlier of:

(a)     thirty (30) months after the claimant knew or reasonably should have known of the principal facts on which the claim is based, or

(b)     six (6) months after the claimant has exhausted the claim and review procedure.

11.7.   **Knowledge of Fact by Participant Imputed to Beneficiary**. Knowledge of all facts that a Participant knew or reasonably should have known shall be imputed to every claimant who is or claims to be a Beneficiary of the Participant or otherwise claims to derive an entitlement by reference to the Participant for the purpose of applying the previously specified periods.

11.8.   **Choice of Law**. Except to the extent that federal law is controlling, the Plan shall be construed and enforced in accordance with the laws of the State of Minnesota (except that the state law will be applied without regard to any choice of law provisions).

11.9.   **Choice of Venue**. All litigation in any way related to the Plan (including but not limited to any and all claims brought under ERISA, such as claims for benefits and claims for breach of fiduciary duty) must be filed in the United States District Court for the District of Minnesota in Hennepin County.

## SECTION 12

## OTHER ADMINISTRATIVE MATTERS

12.1.   **Company**. Except as otherwise provided in the Plan Statement, functions generally assigned to the Company shall be discharged by the Benefits Administration Committee except to the extent the Benefits Administration Committee delegates such functions.

12.2.   **Committees**.

      12.2.1. **Committees**. Three committees have responsibility with respect to the Plan: The Benefits Administration Committee, the Compensation Committee (in a settlor capacity) and the Investment Committee.

      12.2.2. **Membership and Authority**. The membership of each committee shall be that specified in the bylaws, charter, or other governing document for the committee. The authority of each committee shall be the authority specified in this Plan Statement and the bylaws, charter, or other governing document for that committee.

12.3.   **Limitation on Authority**.

      12.3.1. **Fiduciaries Generally**. No action taken by any fiduciary, if authority to take such action has been delegated or redelegated to it hereunder, shall be the responsibility of any other fiduciary except as may be required by the provisions of ERISA. Except to the extent imposed by ERISA, no fiduciary shall have the duty to question whether any other fiduciary is fulfilling all of the responsibility imposed upon such other fiduciary by this Plan Statement or by ERISA or by any regulations or rulings issued thereunder.

      12.3.2. **Trustee**. The Trustee shall have no authority or duty to determine or enforce payment of any contribution under the Plan or to determine the existence, nature or extent of any individual's rights in the Fund or under the Plan or question any determination made by the Benefits Administration Committee regarding the same. Nor shall the Trustee be responsible in any way for the manner in which the Benefits Administration Committee or Investment Committee carries out its responsibilities under this Plan Statement or, more generally, under the Plan. The Trustee shall give the Benefits Administration Committee notice of (and tender to the Benefits Administration Committee) the prosecution or defense of any litigation involving the Plan, the Fund or other fiduciaries of the Plan.

12.4.   **Conflict of Interest**. If any Trustee, any member of the Benefits Administration Committee, the Compensation Committee or the Investment Committee, or any officer or employee of the Company to whom authority has been delegated or redelegated hereunder shall also be a Participant in the Plan, that individual shall have no authority as such Trustee, member, officer or employee with respect to any matter specially affecting the Participant's individual interest hereunder (as distinguished from the interests of all Participants and Beneficiaries or a broad class of Participants and Beneficiaries), all such authority being reserved exclusively to the other Trustees, members, officers or employees, as the case may be, to the exclusion of such

77

Participant, and such Participant shall act only in the Participant's individual capacity in connection with any such matter.

12.5. **Dual Capacity**. Individuals, firms, corporations or partnerships identified herein or delegated or allocated authority or responsibility hereunder may serve in more than one fiduciary capacity.

12.6. **Administrator**. The Benefits Administration Committee shall be the administrator for purposes of section 3(16)(A) of ERISA.

12.7. **Named Fiduciaries**. The Benefits Administration Committee and the Investment Committee shall be named fiduciaries for the purpose of section 402(a) of ERISA.

12.8. **Service of Process**. In the absence of any designation to the contrary by the Benefits Administration Committee, the Secretary and General Counsel of U.S. Bancorp is designated as the appropriate and exclusive agent for the receipt of service of process directed to the Plan in any legal proceeding, including arbitration, involving the Plan.

12.9. **Administrative Expenses**. The reasonable expenses of administering the Plan shall be payable out of the Fund except to the extent that the Benefits Administration Committee, directs the Company to directly pay the expenses. The Benefits Administration Committee, acting in its fiduciary capacity, shall determine the appropriate allocation of such expenses among the Accounts in the Plan. The Fund may reimburse the Company for a reasonable expense incurred in administering the Plan paid by the Company if, at the time the Company paid the expense, the Benefits Administration Committee intended to have the Fund reimburse the Company for the expense. The Fund may pay the Company for the reasonable expenses of administering the Plan that the Company incurs.

12.10. **IRS Qualification**. The Plan is intended to qualify under section 401(a) of the Code as a defined contribution profit sharing plan that contains a qualified cash or deferred arrangement under section 401(k) of the Code, a portion of which is a profit sharing plan (the Profit Sharing portion) and a portion of which is an employee stock ownership plan under section 4975(e)(7) of the Code (the ESOP Portion). The Plan is not a defined contribution money purchase pension plan or a defined benefit pension plan.

12.11. **Method of Executing Instruments**.

12.11.1. **Company**. Information to be supplied or written notices to be made or consents to be given by the Company pursuant to any provision of this Plan Statement may be signed in the name of the Company by any officer thereof who has been authorized to make such certification or to give such notices or consents.

12.11.2. **Committees**. Information to be supplied or written notices to be made or consents to be given by the Benefits Administration Committee, the Compensation Committee or the Investment Committee pursuant to any provision of this Plan Statement may be signed in the name of the committee by any member thereof who has been authorized to make such certification or to give such notices or consents.

78

12.11.3.          **Trustee**. Any instrument or written notice required, necessary or advisable, to be made or given by the Trustee may be signed by any Trustee, if all Trustees serving hereunder are individuals, or by any authorized officer or employee of the Trustee, if a corporate Trustee shall be acting hereunder as sole Trustee, or by any such officer or employee of the corporate Trustee or by an individual Trustee acting hereunder, if corporate and individual Trustees shall be serving as co-trustees hereunder.

12.12.  **Receipt of Documents**. If a form or document must be filed with or received by the Company, the Benefits Administration Committee, the Compensation Committee, the Investment Committee, or Trustee, it must be actually received by the appropriate entity to be effective. The determination of whether or when a form or document has been received by the appropriate entity shall be made by the Benefits Administration Committee on the basis of what documents are acknowledged by the appropriate entity to be in its actual possession without regard to the "mailbox rule" or similar rule of evidence. The absence of a document in the appropriate entity's records and files shall be conclusive and binding proof that the document was not received by the appropriate entity.

12.13.  **Powers of Attorney**. The Plan shall recognize as valid a document submitted to the Benefits Administration Committee by which a Participant, Beneficiary, or Alternate Payee appoints another person as his or her attorney in fact, subject to the uniform and nondiscriminatory procedures established or approved by the Benefits Administration Committee or its delegate.

The Benefits Administration Committee may establish additional uniform and nondiscriminatory procedures for the acceptance of powers of attorneys for Plan purposes. The Benefits Administration Committee, in its sole discretion, may review the document as to whether it complies with the Benefits Administration Committee's procedures. If there is a conflict between the action of a court appointed guardian or conservator and an attorney in fact, then the authority of the court appointed guardian or conservator shall be recognized as superior to that of an attorney in fact.

12.14.  **Guardians and Conservators**. The Plan shall recognize the authority of a court appointed guardian or conservator to act on behalf of a Participant, Beneficiary, or Alternate Payee to the extent such action is within the authority granted to the court appointed guardian or conservator.

U.S. Bank App. 84

## SECTION 13

## IN GENERAL

13.1.   **Disclaimers**.

(a)   Neither the terms of this Plan Statement nor the benefits hereunder nor the continuance thereof shall be a term of the employment of any employee, and the Company shall not be obliged to continue the Plan.

(b)   The terms of this Plan Statement shall not give any employee the right to be retained in the employment by the Company or an Affiliate.

(c)   Neither the Company, its Affiliates, their officers, their employees or members of their Boards of Directors, nor the Trustee nor the Benefits Administration Committee, Compensation Committee or Investment Committee, nor any member of those committees shall in any manner be liable to any Participant, Beneficiary or other person for any act or omission of the Trustee (except to the extent one of the foregoing is a fiduciary and liability is imposed under ERISA).

(d)   Neither the Company, its Affiliates, their officers, their employees or members of their Boards of Directors, nor the Trustee nor the Benefits Administration Committee, Compensation Committee or Investment Committee, nor any member of those committees shall be under any liability or responsibility (except to the extent that one of the foregoing is a fiduciary and liability is imposed under ERISA) for failure to effect any of the objectives or purposes of the Plan by reason of loss or fluctuation in the value of Fund or for the form, genuineness, validity, sufficiency or effect of any Fund asset at any time held hereunder, or for the failure of any person, firm or corporation indebted to the Fund to pay such indebtedness as and when the same shall become due or for any delay occasioned by reason of any applicable law, order or regulation or by reason of any restriction or provision contained in any security or other asset held by the Fund.

(e)   Except as is otherwise provided in ERISA, a fiduciary shall not be liable for an act or omission of another person with regard to a fiduciary responsibility that has been allocated to or delegated to such other person pursuant to the terms of this Plan Statement or pursuant to procedures set forth in this Plan Statement.

(f)   Neither the Company, its Affiliates, their officers, their employees or members of their Boards of Directors, nor the Trustee nor the Benefits Administration Committee, Compensation Committee or Investment Committee, nor any member of those committees guarantees that the benefits to be developed hereunder for each Participant shall equal those which are assumed for the purpose of determining and measuring the contributions of the Employer.

(g)   Neither the Company, its Affiliates, their officers, their employees or members of their Boards of Directors, nor the Trustee nor the Benefits Administration

80

Committee, Compensation Committee or Investment Committee, nor any member of those committees shall be liable or responsible for any error in the computation of the Account of a Participant resulting from any misstatement of fact made by the Participant, directly or indirectly, to the Benefits Administration Committee or the Trustee and used by them in determining the Participant's Account. There shall be no obligation to increase the Account of such Participant which, on discovery of the misstatement, is found to be understated as a result of such misstatement of the Participant. However, the Account of any Participant which is overstated by reason of any such misstatement shall be reduced to the amount appropriate for the Participant in view of the truth. Any reduction of an Account shall be retained in the Fund and used to reduce the next succeeding contribution of the Company to the Plan.

**13.2.   Reversion of Fund Prohibited**. The Fund from time to time hereunder shall at all times be a trust fund separate and apart from the assets of the Company, and no part thereof shall be or become available to the Company or to creditors of the Company under any circumstances other than those specified in this Plan Statement. It shall be impossible for any part of the corpus or income of the Fund to be used for, or diverted to, purposes other than for the exclusive benefit of Participants and Beneficiaries (except as herein provided).

**13.3.   Continuity**. The tenure and membership of the Benefits Administration Committee previously appointed, the rules of administration adopted and the Beneficiary designations in effect under the Prior Plan Statement immediately before the Effective Date shall, to the extent not inconsistent with this Plan Statement, continue in full force and effect until altered as provided herein

**13.4.   Contingent Top Heavy Plan Rules**. The terms of Appendix B (concerning additional provisions that apply if the Plan becomes top heavy under the terms of the Tax Equity and Fiscal Responsibility Act of 1982) are incorporated herein.

**13.5.   Compliance With Uniformed Services Employment and Reemployment Rights Act of 1994 and Heroes Earnings Assistance and Relief Tax Act of 2008**. Effective for veterans rehired on or after December 12, 1994, and notwithstanding any provision of the Plan Statement to the contrary, contributions, benefits or service credits, if any, will be provided in accordance with section 414(u) of the Code. Effective January 1, 2009, and notwithstanding any provision of the Plan Statement to the contrary, (i) differential pay (as defined in section 3401(h)(2) of the Code) shall be included in compensation that is used to determine benefits, and (ii) the death after 2006 of a Participant during qualified military service (as defined in section 414(u)(5) of the Code) will be treated as death while in the employment of the Employer and all Affiliates for purposes of any benefits (other than benefit accruals related to the period of qualified military service) to which the Participant's survivors would have been entitled had the Participant resumed employment and then terminated employment on account of death.

**13.6.   Plan Statement Controls**. In the event there is a conflict between the Plan Statement and any other document relating to the Plan (including but not limited to, the summary plan description, notices to employees, statements and reports), the Plan Statement shall control.

U.S. Bank App. 86

13.7.   **Rules of Interpretation**. An individual shall be considered to have attained a given age on the individual's birthday for that age (and not on the day before). The birthday of any individual born on a February 29 shall be deemed to be February 28 in any year that is not a leap year. Whenever appropriate, words used herein in the singular may be read in the plural, or words used herein in the plural may be read in the singular; the masculine may include the feminine; and the words "hereof," "herein" or "hereunder" or other similar compounds of the word "here" shall mean and refer to this entire Plan Statement and not to any particular paragraph or section of this Plan Statement unless the context clearly indicates to the contrary. The titles given to the various sections of this Plan Statement are inserted for convenience of reference only and are not part of this Plan Statement, and they shall not be considered in determining the purpose, meaning or intent of any provision hereof. Any reference in this Plan Statement to a statute or regulation shall be considered also to mean and refer to any subsequent amendment or replacement of that statute or regulation.

82

IN WITNESS WHEREOF, Each of the parties hereto has caused these presents to be executed, all as of the day and year first above written.

U.S. BANCORP

By _____*Matthew Insinga*_____

Its _____SVP Head of Total Reward_____

Acknowledged that this Restatement does not increase the Trustee's duties:

U.S. BANK NATIONAL ASSOCIATION

By _____

Its ___Vice President, Relationship Manager    12/30/20___

83

U.S. Bank App. 88

## SCHEDULE I

## PARTICIPATING EMPLOYERS

| | |
|---|---|
| U.S. Bancorp | 41-0255900 |
| Elavon, Inc. | 58-1916822 |
| Quasar Distributors, LLC | 39-1982827 |
| U.S. Bancorp Asset Management | 41-2003732 |
| U.S. Bancorp Fund Services, LLC | 39-1939072 |
| U.S. Bancorp Investments, Inc. | 41-1233380 |
| U.S. Bank National Association | 31-0841368 |
| U.S. Bank Trust National Association SD | 41-1899865 |
| U.S. Bank Trust National Association | 41-1973763 |
| Firstar Realty LLC | 36-4172249 |
| Red Sky Risk Services, LLC | 26-1877892 |
| U.S. Bancorp Community Development Corp | 41-1917892 |
| FSV Payment Systems Inc. | 20-1668501 |
| U.S. Bancorp Government Leasing | 45-3798148 |
| Talech | 45-4737991 |
| CENPOS, LLC | 26-4246142 |
| First Payment Systems, LLC | 35-2194688 |

I-1

**SCHEDULE II**

**RECOGNIZED EMPLOYMENT OF
UNITED STATES CITIZENS OUTSIDE THE UNITED STATES**

(As of October 1, 2004)

**Nova Information Systems**

For United States citizens and United States resident aliens who are (i) employees of Nova Information Systems, (ii) paid through Nova Information Systems on U.S. Bancorp's United States payroll, and (iii) temporarily assigned to work outside the United States (generally for a period not to exceed five (5) years or as otherwise determined by the Benefits Administration Committee), service outside the United States on and after October 1, 2004 shall constitute Recognized Employment. To the extent Nova Information Systems provides compensation to such employees through U.S. Bancorp's United States payroll, the compensation shall be considered to be Recognized Compensation, subject to the rules and restrictions of that definition. The compensation received by such employees under a foreign (non-U.S.) payroll or from a foreign affiliate of Nova Information Systems or an Employer shall not constitute compensation under the definition of Recognized Compensation.

II-1

**SCHEDULE III**

**COLLECTIVE FUND / GROUP TRUST**

(As of January 1, 2021)

Incorporated by reference into SECTION 10 of the Plan Statement are the following collective trust fund declarations of trust (each of which shall be a "Declaration of Trust") as the same may be amended from time to time:

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Total Bond Market Index Trust,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Institutional 500 Index Trust,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Extended Market Index Trust,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement Income Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2015 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2020 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2025 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2030 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2035 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2040 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2045 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2050 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2055 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2060 Trust Select,

➢ Declaration of Trust Establishing Vanguard Fiduciary Trust Company Target Retirement 2065 Trust Select, and

➢ Wells Fargo Bank Declaration of Trust Establishing Investment Funds for Employee Benefit Trusts.

III-1

# APPENDIX A

## LIMITATION ON ANNUAL ADDITIONS

### SECTION 1

### DEFINITIONS

Terms defined in the Plan Statement shall have the same meanings when used in this Appendix. In addition, when used in this Appendix, the following terms shall have the following meanings:

1.1.   **Annual Additions Limitation**.

    1.1.1.   In no event shall the Annual Addition on behalf of any Participant for any Plan Year exceed the lesser of:

    (a)    the amount specified in section 415(c)(1) of the Code, adjusted in accordance with section 415(d) of the Code, or

    (b)    100% of such Participant's 415 compensation for the Plan Year.

The limitation referred to in Section 1.1.1(b) shall not apply to any contribution for medical benefits within the meaning of section 401(h) or section 419A(f)(2) of the Code which is otherwise treated as an Annual Addition under section 415(l)(1) or 419A(d)(2) of the Code.

If the amount otherwise allocable to the Account of a Participant would exceed the amount described above, the Benefits Administration Committee may correct an excess Annual Addition using any applicable correction method permitted under the Employee Plans Compliance Resolution System that is issued by the Internal Revenue Service.

In the event of a return of excess Earnings Reduction Contributions from the Plan to a Participant, Employer Matching Contributions (plus income allocable thereto as determined in accordance with Section 2.2.2 of this Appendix) corresponding to the excess Earnings Reduction Contributions shall be forfeited.

    1.1.2.   Annual Addition means, with respect to any Participant for a limitation year, the sum of:

    (i)    all contributions (including employer contributions of the Participant's earnings reductions under section 401(k), section 403(b) and section 408(k) of the Code) allocable as of a date during such limitation year to the Participant under all defined contribution plans;

    (ii)    all forfeitures allocable as of a date during such limitation year to the Participant under all defined contribution plans; and

all Participant contributions made as of a date during such limitation year to all defined contribution plans.

A-1

1.1.3.   **415 Compensation**. 415 compensation  shall mean, with respect to any limitation year, the amount determined as follows:

(a)   **General Definition**. 415 compensation means the amount described in Treasury Regulations sections 1.415(c)-2(a) and (b).

(b)   **Exclusions**. Notwithstanding the foregoing, 415 compensation shall not include any of the following.

    (i)   Contributions (other than elective deferrals) to a plan of deferred compensation to the extent the contributions are not includible in gross income for the year the contribution is added.

    (ii)   Amount realized from the exercise of a nonstatutory option or when restricted stock or other property either becomes freely transferable or is no longer subject to a substantial risk of forfeiture.

    (iii)   Amounts realized from the sale, exchange or other disposition of stock acquired under a statutory stock option.

    (iv)   Other amounts receiving special tax benefits such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in gross income and are not salary reduction amounts described in section 125 of the Code).

(c)   Post-Severance Pay. Notwithstanding the foregoing, 415 compensation shall not include any amounts received after an employee's severance from employment except as follows.

    (i)   **Regular Pay**. Regular pay (e.g., regular base pay, overtime, shift differential pay, commissions, bonuses and other similar compensation) shall be included if (A) it is paid not later than the end of the limitation year that includes the severance from employment date or, if later, two and one-half (2-1/2) months after the severance from employment date, and (B) it would have been paid if there had been no severance from employment.

    (ii)   **Unused Leave**. Payments of unused accrued bona fide sick leave, vacation or other leave shall be included if it is paid not later than the end of the limitation year that includes the severance from employment date or, if later, two and one-half (2-1/2) months after severance from employment.

    (iii)   **NQDC**. Payments of nonqualified unfunded deferred compensation plan shall be included if (A) it is received not later than the end of the limitation year that includes the severance from employment date or, if later, two and one-half (2-1/2) months after the severance from employment date, and (B) it would have been paid if there had been no severance from employment.

A-2

    (iv)    **Actual USERRA and Disability**. Payments of compensation paid to employees performing qualified military service (e.g., "differential pay") and to employees who are totally and permanently disabled shall be included if the payments do not exceed the amounts the employee would have received if employment had continued.

    (v)    **Imputed Disability Pay**. The compensation an employee would have received for the limitation year shall be included if the following conditions are satisfied: (A) the employee is totally and permanently disabled within the meaning of section 22(e)(3) of the Code, and (B) either (x) the employee is not a highly compensated employee immediately before becoming disabled or (y) the terms of the plan provide for the continuation of contributions on behalf of all participants who are permanently and totally disabled for a fixed or determinable period, and (C) the plan provides that such amounts are taken into account for the purpose of making contributions, and (D) all contributions made with respect to such imputed compensation are nonforfeitable when made.

1.2.    **Defined Contribution Limitation**.  Notwithstanding anything to the contrary contained in the Plan Statement, there shall not be allocated to the account of any Participant under a defined contribution plan for any limitation year an amount which would cause the annual addition for such Participant to exceed the maximum permissible addition.  Subject to the provisions of this Appendix, the limitations of section 415(c) of the Code (and regulations issued pursuant thereto) are incorporated by reference in this Appendix.

A-3

**APPENDIX B**
**CONTINGENT TOP HEAVY PLAN RULES**

**SECTION 1**

**SPECIAL DEFINITIONS**

Terms defined in the Plan Statement shall have the same meanings when used in this Appendix. In addition, when used in this Appendix, the following terms shall have the following meanings:

1.1.     **Aggregation Group**.  Aggregation Group means the group of qualified plans sponsored by the Employer or by an Affiliated Company formed by including in such group (1) all such plans in which a Key Employee participates in the Plan Year containing the Determination Date, including any frozen or terminated plan that was maintained within the five-year-period ending on the Determination Date, (2) all such plans which enable any plan described in clause (1) to meet the requirements of either section 401(a)(4) of the Code or section 410 of the Code, and (3) such other qualified plans sponsored by the Employer or an Affiliated Company as the Employer elects to include in such group, as long as the group, including those plans electively included, continues to meet the requirements of sections 401(a)(4) and 410 of the Code..

1.2.     **Compensation**.  Compensation means the amount of 415 compensation defined in Appendix A.

1.3.     **Determination Date**.  Determination Date means the last day of the preceding Plan Year or, in the case of the first Plan Year, the last day of such Plan Year.

1.4.     **Key Employee**.  Key Employee means a person employed or formerly employed by the Employer or an Affiliated Company who, during the Plan Year, was any of the following:

        1.4.1.   An officer of the Employer having an annual Compensation of more than the amount as may be in effect under section 416(i)(1)(A)(i) of the Code.  The number of persons to be considered officers in any Plan Year and the identity of the persons to be so considered shall be determined pursuant to the provisions of section 416(i) of the Code and the regulations published thereunder.

        1.4.2.   A five-percent (5%) owner of the Employer.

        1.4.3.   A person who is both an Employee whose annual Compensation exceeds $150,000 and who is a one-percent (1%) owner of the Employer.

The beneficiary of any deceased Participant who was a Key Employee shall be considered a Key Employee for the same period as the deceased Participant would have been so considered.

1.5.     **Key Employee Ratio**.  Key Employee Ratio means the ratio (expressed as a percentage) for any Plan Year, calculated as of the Determination Date with respect to such Plan Year, determined by dividing the amount described in paragraph (1) hereof by the amount described in paragraph (2) hereof, after deduction from both such amounts of the amount described in paragraph (3) hereof.

B-1

1.5.1.   The amount described in this paragraph (1) is the sum of (A) the aggregate of the present value of all accrued benefits of Key Employees under all qualified defined benefit plans included in the Aggregation Group, (B) the aggregate of the balances in all of the accounts standing to the credit of Key Employees under all qualified defined contribution plans included in the Aggregation Group, and (C) the sum of the amount of any in-service distributions during the period of five (5) Plan Years ending on the Determination Date, and the amount of any other distributions during the one-year period ending on the Determination Date, to or on behalf of any Key Employee for all plans in the Aggregation Group.

1.5.2.   The amount described in this paragraph (2) is the sum of (A) the aggregate of the present value of all accrued benefits of all Participants under all qualified defined benefit plans included in the Aggregation Group, (B) the aggregate of the balances in all of the accounts standing to the credit of all Participants under all qualified defined contribution plans included in the Aggregation Group, and (C) the sum of the amount of any in-service distributions during the period of five (5) Plan Years ending on the Determination Date, and the amount of any other distributions during the one-year period ending on the Determination Date, and the amount of any other distributions during the one-year period ending on the Determination Date, to or on behalf of any Participant from all plans in the Aggregation Group.

1.5.3.   The amount described in this paragraph (3) is the sum of (A) all rollover contributions (or similar transfers) to plans included in the Aggregation Group initiated by an Employee from a plan sponsored by an employer which is not the Employer or an Affiliated Company, (B) any amount that would have been included under paragraph (1) or (2) hereof with respect to any person who has not rendered service to any Employer at any time during the one-year period ending on the Determination Date, and (C) any amount that is included in paragraph (2) hereof for, on behalf of, or on account of, a person who is a Non-Key Employee as to the Plan Year of reference but who was a Key Employee as to any earlier Plan Year.

The present value of accrued benefits under any defined benefit plan shall be determined under the method used for accrual purposes for all plans maintained by the Employer and all Affiliated Companies if a single method is used by all such plans, or otherwise, the slowest accrual method permitted under section 411(b)(1)(C) of the Code.

1.6.   **Non-Key Employee**.  Non-Key Employee means any Employee or former Employee who is not a Key Employee as to that Plan Year, or a beneficiary of a deceased Participant who was a Non-Key Employee.

## SECTION 2
## DETERMINATION OF TOP HEAVY STATUS

2.1.   The Plan shall be deemed "top-heavy" as to any Plan Year if, as of the Determination Date with respect to such Plan Year, either of the following conditions is met:

2.1.1.   The Plan is not part of an Aggregation Group and the Key Employee Ratio, determined by substituting the "Plan" for the "Aggregation Group" each place it appears in Section 1.5, exceeds sixty percent (60%), or

B-2

2.1.2.   The Plan is part of an Aggregation Group, and the Key Employee Ratio of such Aggregation Group exceeds sixty percent (60%).

## SECTION 3

## TOP HEAVY MINIMUM ALLOCATION

3.1.     The aggregate allocation made under the Plan to the Account of each active Participant who is a Non-Key Employee for any Plan Year in which the Plan is a Top-Heavy Plan and who remained in the employ of the Employer or an Affiliated Company through the end of such Plan Year (whether or not in the status of Eligible Employee) shall be not less than the lesser of:

3.1.1.   Three percent (3%) of the compensation of each such Participant for such Plan Year; or

3.1.2.   The percentage of such compensation so allocated under the Plan to the Account of the Key Employee for whom such percentage is the highest for such Plan Year.

## SECTION 4

## PARTICIPATION IN TOP-HEAVY DEFINED BENEFIT PLAN

If any person who is an active Participant in the Plan is a Participant under a top heavy defined benefit pension plan qualified under section 401(a) of the Code sponsored by the Employer or an Affiliated Company, there shall be substituted "Five percent (5%)" for "Three percent (3%)" in subsection 3.1.1 above.  For the purposes of determining whether or not the provisions of this Section have been satisfied, (i) contributions or benefits under chapter 2 of the Code (relating to tax on self-employment income), chapter 21 of the Code (relating to Federal Insurance Contributions Act), title II of the Social Security Act, or any other Federal or state law are disregarded; (ii) all defined contribution plans in the Aggregation Group shall be treated as a single plan; and (iii) elective deferrals under all plans in the Aggregation Group shall be disregarded.  For the purposes of determining whether or not the requirements of this Section have been satisfied, contributions allocable to the account of the Participant under any other qualified defined contribution plan that is part of the Aggregation Group shall be deemed to be contributions made under the Plan, and, to the extent thereof, no duplication of such contributions shall be required hereunder solely by reason of this Section.  Subsection 3.1.2 above shall not apply in any Plan Year in which the Plan is part of an Aggregation Group containing a defined benefit pension plan (or a combination of such defined benefit pension plans) if the Plan enables a defined benefit pension plan required to be included in such Aggregation Group to satisfy the requirements of either section 401(a)(4) or section 410 of the Code.

B-3

**APPENDIX C**
**QUALIFIED DOMESTIC RELATIONS ORDERS**

**SECTION 1**

**GENERAL MATTERS**

Terms defined in the Plan Statement shall have the same meanings when used in this Appendix.

1.1.     **General Rule**. The Plan shall not honor the creation, assignment or recognition of any right to any benefit payable with respect to a Participant pursuant to a domestic relations order unless that domestic relations order is a qualified domestic relations order.

1.2.     **Alternate Payee Defined**. The only persons eligible to be considered Alternate Payees with respect to a Participant shall be that Participant's spouse, former spouse, child or other dependent.

1.3.     **DRO Defined**. A domestic relations order is any judgment, decree or order (including an approval of a property settlement agreement) which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a Participant and which is made pursuant to a state domestic relations law (including a community property law).

1.4.     **QDRO Defined**. A qualified domestic relations order is a domestic relations order which creates or recognizes the existence of an Alternate Payee's right to (or assigns to an Alternate Payee the right to) receive all or a portion of the Account of a Participant under the Plan and which satisfies all of the following requirements.

     1.4.1.     **Names and Addresses**. The order must clearly specify the name and the last known mailing address, if any, of the Participant and the name and mailing address of each Alternate Payee covered by the order.

     1.4.2.     **Amount**. The order must clearly specify the amount or percentage of the Participant's Account to be paid by the Plan to each such Alternate Payee or the manner in which such amount or percentage is to be determined.

     1.4.3.     **Payment Method**. The order must clearly specify the number of payments or period to which the order applies.

     1.4.4.     **Plan Identity**. The order must clearly specify that it applies to this Plan.

     1.4.5.     **Settlement Options**. Except as provided in Section 1.4.8 of this Appendix, the order may not require the Plan to provide any type or form of benefits or any option not otherwise provided under the Plan.

C-1

1.4.6.   **Increased Benefits**. The order may not require the Plan to provide increased benefits.

1.4.7.   **Prior Awards**. The order may not require the payment of benefits to an Alternate Payee which are required to be paid to another Alternate Payee under another order previously determined to be a qualified domestic relations order.

1.4.8.   **Exceptions**. The order will not fail to meet the requirements of Section 1.4.5 of this Appendix if:

(a)     The order requires payment of benefits be made to an Alternate Payee before the Participant has separated from service but as of a date that is on or after the date on which the Participant attains (or would have attained) the earliest payment date described in Section 1.4.10 of this Appendix; and

(b)     The order requires that payment of benefits be made to an Alternate Payee as if the Participant had retired on the date on which payment is to begin under such order (but taking into account only the present value of benefits actually accrued); and

(c)     The order requires payment of benefits to be made to an Alternate Payee in any form in which benefits may be paid under the Plan to the Participant (other than in the form of a joint and survivor annuity with respect to the Alternate Payee and his or her subsequent spouse).

In lieu of the foregoing, the order will not fail to meet the requirements of Section 1.4.5 of this Appendix if the order: (1) requires that payment of benefits be made to an Alternate Payee in a single lump sum as soon as is administratively feasible after the order is determined to be a qualified domestic relations order, and (2) does not contain any of the provisions described in Section 1.4.9 of this Appendix, and (3) provides that the payment of such single lump sum fully and permanently discharges all obligations of the Plan to the Alternate Payee.

1.4.9.   **Deemed Spouse**. Notwithstanding the foregoing:

(a)     The order may provide that the former spouse of a Participant shall be treated as a surviving spouse of such Participant for the purposes of SECTION 7 of the Plan Statement (and that any subsequent or prior spouse of the Participant shall not be treated as a spouse of the Participant for such purposes), and

(b)     The order may provide that, if the former spouse has been married to the Participant for at least one (1) year at any time, the surviving former spouse shall be deemed to have been married to the Participant for the one (1) year period ending on the date of the Participant's death.

1.4.10. **Payment Date Defined**. For the purpose of Section 1.4.8 of this Appendix, the earliest payment date means the earlier of:

(a)     The date on which the Participant is entitled to a distribution under the Plan; or

C-2

     (b)     The later of (i) the date the Participant attains age fifty (50) years, or (ii) the earliest date on which the Participant could begin receiving benefits under the Plan if the Participant separated from service.

## SECTION 2

## PROCEDURES

2.1.    **Actions Pending Review**. During any period when the issue of whether a domestic relations order is a qualified domestic relations order is being determined by the Committee, the Committee shall cause the Plan to separately account for the amounts which would be payable to the Alternate Payee during such period if the order were determined to be a qualified domestic relations order.

2.2.    **Reviewing DROs**. Upon the receipt of a domestic relations order, the Committee shall determine whether such order is a qualified domestic relations order.

    2.2.1.    **Receipt**. A domestic relations order shall be considered to have been received only when the Committee shall have received a copy of a domestic relations order which is complete in all respects and is originally signed, certified or otherwise officially authenticated.

    2.2.2.    **Notice to Parties**. Upon receipt of a domestic relations order, the Committee shall notify the Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant that such domestic relations order has been received. The Committee shall include with such notice a copy of this Appendix.

    2.2.3.    **Comment Period**. The Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant shall be afforded a comment period of thirty (30) days from the date such notice is mailed by the Committee (which for these QDRO Procedures shall be the Benefits Administration Committee) in which to make comments or objections to the Committee concerning whether the domestic relations order is a qualified domestic relations order. By the unanimous written consent of the Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant, the thirty (30) day comment period may be shortened.

    2.2.4.    **Initial Determination**. Within a reasonable period of time after the termination of the comment period, the Committee shall give written notice to the Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant of its decision that the domestic relations order is or is not a qualified domestic relations order. If the Committee determines that the order is not a qualified domestic relations order or if the Committee determines that the written objections of any party to the order being found a qualified domestic relations order are not valid, the Committee shall include in its written notice:

        (i)     the specific reasons for its decision;

        (ii)    the specific reference to the pertinent provisions of this Plan Statement upon which its decision is based;

U.S. Bank App. 100

    (iii)    a description of additional material or information, if any, which would cause the Committee to reach a different conclusion; and

    (iv)    an explanation of the procedures for reviewing the initial determination of the Committee.

    2.2.5.   **Appeal Period**. The Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant shall be afforded an appeal period of sixty (60) days from the date such an initial determination and explanation is mailed in which to make comments or objections concerning whether the original determination of the Committee is correct. By the unanimous written consent of the Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant, the sixty (60) day appeal period may be shortened.

    2.2.6.   **Final Determination**. In all events, the final determination of the Committee shall be made not later than eighteen (18) months after the date on which first payment would be required to be made under the domestic relations order if it were a qualified domestic relations order. The final determination shall be communicated in writing to the Participant and all persons claiming to be Alternate Payees and all prior Alternate Payees with respect to the Participant.

2.3.    **Final Disposition**. If the domestic relations order is finally determined to be a qualified domestic relations order and all comment and appeal periods have expired, the Plan shall pay all amounts required to be paid pursuant to the domestic relations order to the Alternate Payee entitled thereto. If the domestic relations order is finally determined not to be a qualified domestic relations order and all comment and appeal periods have expired, benefits under the Plan shall be paid to the person or persons who would have been entitled to such amounts if there had been no domestic relations order.

2.4.    **Orders Being Sought**. If the Committee has notice that a domestic relations order is being or may be sought but has not received the order, the Committee shall not (in the absence of a written request from the Participant) delay payment of benefits to a Participant or Beneficiary which otherwise would be due. If the Committee has determined that a domestic relations order is not a qualified domestic relations order and all comment and appeal periods have expired, the Committee shall not (in the absence of a written request from the Participant) delay payment of benefits to a Participant or Beneficiary which otherwise would be due even if the Committee has notice that the party claiming to be an Alternate Payee or the Participant or both are attempting to rectify any deficiencies in the domestic relations order. Notwithstanding the above, after the commencement of a divorce action, the Committee shall comply with a restraining order, duly issued by the court handling the divorce, reasonably prohibiting the disposition of a Participant's benefits pending the submission to the Committee of a domestic relations order or prohibiting the disposition of a Participant's benefits pending resolution of a dispute with respect to a domestic relations order.

C-4

## SECTION 3

## PROCESSING OF AWARD

3.1.    **General Rules**. If a benefit is awarded to an Alternate Payee pursuant to an order which has been finally determined to be a qualified domestic relations order, the following rules shall apply.

3.1.1.    **Source of Award**. If a Participant shall have a Vested interest in more than one Account under the Plan, the benefit awarded to an Alternate Payee shall be withdrawn from the Participant's Accounts in proportion to his Vested interest in each of them.

3.1.2.    **Effect on Account**. For all purposes of the Plan, the Participant's Account (and all benefits payable under the Plan which are derived in whole or in part by reference to the Participant's Account) shall be permanently diminished by the portion of the Participant's Account which is awarded to the Alternate Payee. The benefit awarded to an Alternate Payee shall be considered to have been a distribution from the Participant's Account for the limited purpose of applying any rules of the Plan Statement relating to distributions from an Account that is only partially Vested.

3.1.3.    **After Death**. After the death of an Alternate Payee, all amounts awarded to the Alternate Payee which have not been distributed to the Alternate Payee and which continue to be payable shall be paid in a single lump sum distribution to the personal representative of the Alternate Payee's estate as soon as administratively feasible, unless the qualified domestic relations order clearly provides otherwise. The Participant's Beneficiary designation shall not be effective to dispose of any portion of the benefit awarded to an Alternate Payee, unless the qualified domestic relations order clearly provides otherwise.

3.1.4.    **In-Service Benefits**. Any in-service distribution provisions of the Plan Statement shall not be applicable to the benefit awarded to an Alternate Payee.

3.2.    **Segregated Account**. If the Committee determines that it would facilitate the administration or the distribution of the benefit awarded to the Alternate Payee or if the qualified domestic relations order so requires, the benefit awarded to the Alternate Payee shall be established on the books and records of the Plan as a separate account belonging to the Alternate Payee.

3.3.    **Former Alternate Payees**. If an Alternate Payee has received all benefits to which the Alternate Payee is entitled under a qualified domestic relations order, the Alternate Payee will not at any time thereafter be deemed to be an Alternate Payee or prior Alternate Payee for any substantive or procedural purpose of this Plan.

C-5

## APPENDIX D
## 401(k), 401(m) & 402(g) COMPLIANCE

**Introduction**. This Appendix D contains rules for complying with the nondiscrimination provisions of sections 401(k) and 401(m) of the Code and the limitations imposed under section 402(g) of the Code.

**Priority**. Determinations under this Appendix shall be made in the following order:

(1)     Excess deferrals under Section 1,

(2)     Excess contributions under Section 2,

(3)     Excess aggregate contributions under Section 3.

The amount of excess contributions shall be reduced by excess deferrals previously distributed to such Participant for the Participant's taxable year ending with or within such Plan Year.

### SECTION 1

### SECTION 402(G) COMPLIANCE

1.1.    **Excess Deferrals**.

1.1.1.    **In General**. A Participant may attribute to this Plan any excess deferrals made during a taxable year of the Participant by notifying the Committee in writing not later than the March 31 following such taxable year of the amount of the excess deferral to be assigned to the Plan. A Participant shall be deemed to have notified the Plan of excess deferrals to the extent the Participant has excess deferrals for the taxable year calculated by taking into account only the amount of elective contributions allocated to the Participant's Earnings Reduction Account and to any other plan of the Company and Affiliates. Notwithstanding any other provision of the Plan Statement, a Participant's excess deferrals, plus any income and minus any loss allocable thereto, shall be distributed to the Participant no later than the first April 15 following the close of the Participant's taxable year.

1.1.2.    **Definitions**. For purposes of this Appendix, excess deferrals shall mean the amount of elective contributions allocated to the Participant's Earnings Reduction Account for a Participant's taxable year and which the Participant or the Benefits Administration Committee, where applicable, allocates to this Plan pursuant to the request procedure described below.

1.1.3.    **Requests**. The Participant's request shall be in writing; shall be submitted to the Committee not later than March 1 with respect to the immediately preceding taxable year; shall specify the amount of the Participant's excess deferrals for the preceding taxable year; and shall be accompanied by the Participant's written statement that if such amounts are not distributed, such excess deferrals, when added to amounts deferred under other plans or arrangements described in sections 401(k), 408(k) or 403(b) of the Code, will exceed the limit imposed on the Participant by section 402(g) of the Code for the taxable year in which the deferral occurred. The

D-1

Employer shall notify the Plan on behalf of the Participant where the excess deferrals occur in the Plan or the combined plans of the Employer and Affiliates.

1.1.4. **Determination of Income or Loss**. The excess deferrals shall be adjusted for income or loss for the taxable year (but not the gap period). Unless the Committee (which for this Appendix shall be the Benefits Administration Committee) and the Trustee agree otherwise in writing, the income or loss allocable to excess deferrals shall be equal to the sum of the income or loss allocable to the Participant's elective contributions for the Plan Year ending within such preceding taxable year by a fraction, the numerator of which is the excess deferrals on behalf of the Participant for such preceding taxable year and the denominator of which is the Participant's Earnings Reduction Account balance attributable to elective contributions on the Valuation Date coincident with or immediately before the last day of such preceding taxable year.

1.1.5. **Accounting for Excess Deferrals**. Excess deferrals shall be distributed first from a Participant's Earnings Reduction Pre-Tax Account and then from a Participant's Roth Account.

1.1.6. **Orphaned Matching Contributions**. If excess deferrals are distributed pursuant to this Section 1.1, applicable Employer Matching Contributions under Sections 4.3 and 4.4 of the Plan Statement shall be treated as forfeitures and reallocated as if such forfeitures were Employer Matching Contributions under Section 4.3 of the Plan Statement made for those Participants who were entitled to receive an Employer Matching Contribution for that Plan Year.

## SECTION 2

## SECTION 401(K) COMPLIANCE

Effective as of January 1, 2008, the Plan is intended to be disaggregated into two (2) parts for purposes of testing under section 401(k) of the Code. With respect to Participants who are eligible for the Employer Matching Contribution, the Plan is intended to satisfy the requirements of section 401(k)(12) of the Code for the Plan Years beginning on or after January 1, 2008. With respect to all other Participants, the provisions of this Section 2 shall apply.

2.1. **Section 401(k) Compliance**.

2.1.1. **Special Definitions**. For purposes of this Section 2, the following special definitions shall apply:

(a)     An **eligible employee** means an individual who is entitled to provide an Earnings Reduction Agreement for all or a part of the Plan Year (whether or not the individual does so). If, for any Plan Year, the individuals who have not satisfied the minimum age and service requirements specified in section 410(a)(1) of the Code (i.e., have not completed one (1) year of service and attained age twenty-one (21) years), would satisfy the requirements of section 410(b)(1) (i.e., the "ratio percentage" or "average benefit percentage" coverage test) if tested separately from other eligible employees, then for that Plan Year, the individuals who have not satisfied the minimum age and service requirements with respect to that Plan Year may, at the election of the Committee, be entirely excluded from consideration in

D-2

U.S. Bank App. 104

determining who is an eligible employee. Alternatively, the Committee may, if it so elects, exclude from consideration in determining who is an eligible employee only those individuals who have not satisfied the minimum age and service requirements specified in section 410(a)(1) of the Code and are not Highly Compensated Employees with respect to that Plan Year.

(b)    An eligible **Highly Compensated Employee** means an eligible employee who is a Highly Compensated Employee.

    (i)    An eligible **Nonhighly Compensated Employee** means an eligible employee who is not a Highly Compensated Employee.

(c)    **Deferral percentage** means the ratio (calculated separately for each eligible employee) of:

    (i)    the total amount, for the Plan Year, of Employer contributions credited to the eligible employee's Earnings Reduction Account excluding:

        (A)    any catch-up contributions,

        (B)    the excess deferrals, as defined in Section 1 of this Appendix, of any eligible Nonhighly Compensated Employee, and

        (C)    any Employer contributions to the Earnings Reduction Account used in determining the contribution percentage in Section 3.1.1(d)(i),

    and including:

        (A)    the excess deferrals, as defined in Section 1 of this Appendix, of any eligible Highly Compensated Employee but only to the extent such excess deferrals are attributable to this Plan (or any other plan of the Company and its Affiliates), and

        (B)    if the Committee elects, all or a portion of the amount of Employer contributions credited to the eligible employee's Matching Contribution Account that are not used in determining the contribution percentage in Section 3.1.1(d)(i), provided such Employer matching contributions are fully (100%) vested and not available for in-service distribution prior to the Participant's attainment of age 59-1/2, whether for hardship or otherwise, to

    (ii)    the eligible employee's compensation, as defined below, for the portion of such Plan Year that the employee is an eligible employee.

For this purpose, Employer contributions will be considered made in the Plan Year if they are allocated as of a date during such Plan Year and are delivered to the Trustee within twelve (12) months after the end of such Plan Year.

D-3

(d)     **Compensation** means compensation for services performed for the Company and its Affiliates defined as "§ 415 compensation" in Appendix A to this Plan Statement. Notwithstanding the definition of "§ 415 compensation" in Appendix A to this Plan Statement compensation shall always be determined on a cash (and not on an accrual) basis and compensation shall be determined on a Plan Year basis (which is not necessarily the same as the limitation year). An eligible employee's compensation for a Plan Year shall not exceed the annual compensation limit under section 401(a)(17) of the Code (as adjusted under the Code for cost-of-living increases).

(e)     **Average deferral percentage** means, for a specified group of eligible employees for the Plan Year, the average of the deferral percentages for all eligible employees in such group.

(f)     **Plan's 401(k) representative contribution rate** means the greater of:

(i)      the lowest applicable contribution rate of any eligible Nonhighly Compensated Employee among a group of eligible Nonhighly Compensated Employees that consists of at least one-half (1/2) of all eligible Nonhighly Compensated Employees for the Plan Year; or

(ii)     the lowest applicable contribution rate of any eligible Nonhighly Compensated Employee in the group of all eligible Nonhighly Compensated Employees who are employed on the last day of the Plan Year.

(g)     **Applicable contribution rate** means, for an eligible Nonhighly Compensated Employee for the Plan Year, the ratio of:

(i)      the total amount, for the Plan Year, of Employer contributions credited to the eligible Nonhighly Compensated Employee's Matching Contribution Account that are used in determining the deferral percentage in Section 2.1.1(d)(i) of this Appendix and of Employer qualified nonelective contributions credited to the eligible Nonhighly Compensated Employee's Earnings Reduction Account that are used in determining the deferral percentage in Section 2.1.1(d)(i) of this Appendix, to

(ii)     the eligible employee's compensation, as defined above, for the portion of such Plan Year that the employee is an eligible employee.

(h)     **Special Rules**. For purposes of this Section 2.1, the following special rules apply:

(i)      **Rounding**. The deferral percentage of each eligible employee and the average deferral percentage for each group of eligible employees shall be calculated to the nearest one-hundredth of one percent.

D-4

(ii) **Highly Compensated Employees Eligible to Participate in Multiple Plans**. The deferral percentage of any eligible Highly Compensated Employee who is eligible to participate in any other plan of the Employer and Affiliates to which Employer contributions are made on behalf of the eligible Highly Compensated Employee pursuant to a deferral election (whether direct or indirect), shall be equal to the ratio of:

(A) the sum of all Employer contributions, and if used to determine the deferral percentage of eligible employees, matching contributions (as defined in section 401(m)(4)(A) of the Code which meet the requirements of sections 401(k)(2)(B) and 401(k)(2)(C) of the Code) or qualified nonelective contributions (within the meaning of section 401(m)(4)(C) of the Code), or both, under all such plans for the Plan Year, to

(B) the eligible Highly Compensated Employee's compensation (as defined in Section 2.1.1 above) for the entire Plan Year.

(iii) **Permissive Aggregation**. If this Plan satisfies the requirements of sections 401(k), 401(a)(4) or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 2.1 shall be applied by determining the average deferral percentage of eligible employees as if all such plans were a single plan. Plans may be aggregated in order to satisfy section 401(k) of the Code only if they have the same Plan Year and use the same 401(k) testing method.

2.1.2. **The 401(k) Tests – Current Year Testing Method**. Notwithstanding the foregoing provisions, at least one of the following two (2) tests must be satisfied for each Plan Year:

(a) **Test 1:**  The average deferral percentage for the group of eligible Highly Compensated Employees for the current Plan Year is not more than the average deferral percentage for the group of all eligible Nonhighly Compensated Employees for the current Plan Year multiplied by one and twenty-five hundredths (1.25).

(b) **Test 2:**  The excess of the average deferral percentage for the group of eligible Highly Compensated Employees for the current Plan Year over the average deferral percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year is not more than two (2) percentage points, and the average deferral percentage for the group of eligible Highly Compensated Employees for the current Plan Year is not more than the average deferral percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year multiplied by two (2).

(c)    The Committee may, however, elect to substitute the average deferral percentage for the group of eligible Nonhighly Compensated Employees for the preceding Plan Year for the average deferral percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year in Tests 1 and 2 above (*i.e.*, elect the prior year testing method) only if:

(d)    the Plan has used the current year testing method for each of the five (5) preceding Plan Years (or if lesser, the number of Plan Years the Plan has been in existence, including years in which the Plan was a portion of another plan); or

(e)    as a result of a merger or acquisition described in section 410(b)(6)(C)(i) of the Code, the Employer maintains this Plan, which uses the current year testing method, and another plan, which uses the prior year testing, and the Committee changes this Plan's testing method to the prior year testing method within the transition period described in section 410(b)(6)(C)(ii) of the Code.

2.1.3.   **Preventative Action Prior to Plan Year End**. If the Committee determines that neither of the tests described in Section 2.1.3 will be satisfied (or may not be satisfied) for a Plan Year, then during such Plan Year, the Committee may from time to time establish (and modify) a maximum amount of contributions that can be made pursuant to an Earnings Reduction Agreement by eligible Highly Compensated Employees that is less than the amount that would otherwise be permitted. No contributions shall be permitted to be made in excess of that maximum after the date such maximum is effective. The Committee shall prescribe rules concerning such modifications, including the frequency of applying the tests described in Section 2.1.3 and the commencement and termination dates for any modifications.

2.2.    **Distribution of Excess Contributions**.

2.2.1.   **In General**. Notwithstanding any other provision of the Plan Statement, excess contributions for a Plan Year, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year, to eligible Highly Compensated Employees as determined in this Section.

2.2.2.   **Determining Excess Contributions**. For purposes of this Section 2.2, excess contributions shall mean, with respect to any Plan Year, the excess of:

(a)    the aggregate amount of Employer contributions taken into account in computing the average deferral percentage of eligible Highly Compensated Employees for such Plan Year, over

(b)    the maximum amount of such contributions permitted by the section 401(k) test described in Section 2.1 of this Appendix. Such maximum amount of contributions shall be determined by reducing (not distributing) eligible Highly Compensated Employees' contributions as follows:

(i)    The contributions made pursuant to an Earnings Reduction Agreement of the eligible Highly Compensated Employee who has the highest deferral

D-6

percentage (as defined in Section 2.1 of this Appendix) shall be reduced by the amount required to cause such eligible Highly Compensated Employee's deferral percentage to equal the next highest deferral percentage of an eligible Highly Compensated Employee.

(ii)     If neither the tests is satisfied after such reduction, the contributions made pursuant to an Earnings Reduction Agreement of the eligible Highly Compensated Employees who then have the highest deferral percentage (including those eligible Highly Compensated Employees whose contributions were reduced under (i) above) shall be reduced by the amount required to cause such eligible Highly Compensated Employees' deferral percentage to equal the next highest deferral percentage of an eligible Highly Compensated Employee.

(iii)    If neither of the tests is satisfied after such reduction, this method of reduction shall be repeated one or more additional times until one of the tests is satisfied.

2.2.3.  **Method of Distributing Excess Contributions**. Excess contributions, plus any income and minus any loss allocable thereto, shall be distributed from the eligible Highly Compensated Employee's Earnings Reduction Account (first from the Highly Compensated Employee's Earnings Reduction Pre-Tax Account and then from the Highly Compensated Employee's Roth Account). If the excess contributions exceed the amount of Employer contributions credited to the eligible Highly Compensated Employee's Earnings Reduction Account for such Plan Year, then the remaining excess contributions, plus any income and minus any loss allocable thereto, shall be distributed from the eligible Highly Compensated Employee's Matching Contribution Account but only of if the matching contributions (as defined in section 401(m)(4)(A) of the Code which meet the requirements of sections 401(k)(2)(B) and 401(k)(2)(C) of the Code) are used to determine the deferral percentage under Section 2.1.1 of this Appendix for such Plan Year. The amount of excess contributions to be distributed on behalf of each eligible Highly Compensated Employee for the Plan Year shall be equal to the amount of reduction determined as follows:

(a)     The contributions made pursuant to an Earnings Reduction Agreement of the eligible Highly Compensated Employee who has the highest dollar amount of such contributions shall be reduced by the amount required to cause such eligible Highly Compensated Employee's contributions to equal the next highest dollar amount contributed by eligible Highly Compensated Employees (and the amount credited pursuant to Section 4.2 of the Plan Statement, and the applicable amount of Employer matching contributions, if any, credited pursuant to Sections 4.3 and 4.4 of the Plan Statement shall be reduced accordingly).

(b)     If any excess contributions remain after performing (a), then the eligible Highly Compensated Employees who have the next highest dollar amount of contributions made pursuant to an Earnings Reduction Agreement (including those eligible Highly Compensated Employees reduced under (a) above) shall be reduced by the amount required to cause such eligible Highly Compensated Employees'

D-7

contributions to equal the next highest dollar amount contributed by eligible Highly Compensated Employees (and the amount credited pursuant to Section 4.2 of the Plan Statement, and the applicable amount of Employer matching contributions, if any, credited pursuant to Sections 4.3 and 4.4 of the Plan Statement shall be reduced accordingly).

(c)     If any excess contributions remain after performing (a) and (b), this method of reduction shall be repeated one or more additional times until no excess contributions remain.

Provided, however, if the total amount of reduction determined in (a), (b) and (c) would be greater than the amount of excess contributions, then the final reduction amount shall be decreased so that the total amount of reductions equals the amount of excess contributions.

2.2.4.   **Determination of Income or Loss**. The excess contributions to be distributed to any eligible Highly Compensated Employee shall be adjusted for income or loss for the Plan Year (but not the gap period). Unless the Committee and the Trustee agree otherwise in writing, the income or loss allocable to the excess contributions to be distributed shall be equal to the income or loss allocable to the eligible Highly Compensated Employee's elective contributions, and if used to determine an eligible Highly Compensated Employee's deferral percentage under Section 2.1 of this Appendix, matching contributions (as defined in section 401(m)(4) of the Code which meet the requirements of sections 401(k)(2)(B) and 401(k)(2)(C) of the Code for the Plan Year multiplied by a fraction, the numerator of which is the excess contributions to be distributed to the eligible Highly Compensated Employee for the Plan Year and the denominator of which is the sum of the eligible Highly Compensated Employee's account balances attributable to elective contributions and such matching contributions on the last day of the Plan Year.

2.2.5.   **Orphaned Matching Contributions**. If excess contributions are distributed pursuant to this Section 2.2, applicable matching contributions under Sections 4.3 and 4.4 of the Plan Statement shall be treated as forfeitures and reallocated as if such forfeitures were Employer matching contributions under Section 4.3 of the Plan Statement made for those Participants who were entitled to receive an Employer matching contribution for that Plan Year.

2.3.    **Section 401(k) Curative Allocation**.

2.3.1.   **Amount and Eligibility**. If neither of the section 401(k) tests set forth in Section 2.1 of this Appendix has been satisfied and a distribution of "excess contributions" has not been made pursuant to Section 2.2 of this Appendix, then the Employer shall make a discretionary contribution for that Plan Year. Only those Participants who were eligible Nonhighly Compensated Employees for that Plan Year and for whom some contribution was made pursuant to Section 4.2 of the Plan Statement for such Plan Year shall share in such allocation. This allocation shall be made first to the Participant with the least amount of compensation and then, in ascending order of compensation, to other Participants. The amount of the Employer Discretionary Contribution to be so allocated shall be that amount required to cause the Plan to satisfy either of the section 401(k) tests set forth in Section 2.1 of this Appendix for the Plan Year; provided, however, that in no case shall any amounts be allocated to a Participant in excess of an amount equal to the Participant's Recognized Compensation for such Plan Year multiplied by the greater of:

D-8

(a)    five percent (5%); or

(b)    the Plan's 401(k) representative contribution rate (as defined in Section 2.1 above) for such Plan Year multiplied by two (2).

Such Employer Discretionary Contribution shall be treated as a qualified nonelective contribution as defined in section 1.401(k)-6 of the Income Tax Regulations and shall be subject to the requirements of section 1.401(k)-2(a)(6) of the Income Tax Regulations, which is incorporated herein.

2.3.2.   **Crediting to Account**. The Employer Discretionary Contribution which is so allocated to a Participant shall be allocated to that Participant's Earnings Reduction Pre-Tax Account for the Plan Year with respect to which it is made and, for the purposes of Section 4, shall be credited as soon as practicable after it is received by the Trustee.

**SECTION 3**

**SECTION 401(M) COMPLIANCE**

Effective as of January 1, 2008, the Plan is intended to be disaggregated into two (2) parts for purposes of testing under section 401(m) of the Code. With respect to Participants who are eligible for the Employer Matching Contribution, the Plan is intended to satisfy the requirements of section 401(m)(11) of the Code for the Plan Years beginning on or after January 1, 2008. With respect to all other Participants, the provisions of this Section 3 shall apply.

3.1.   **Section 401(m) Compliance**.

3.1.1.   **Special Definitions**. For purposes of this Section 3, the following special definitions shall apply:

(a)    An **eligible employee** means an individual who is eligible to receive an Employer matching contribution for any portion of the Plan Year (whether or not the individual does so). If, for any Plan Year, the individuals who have not satisfied the minimum age and service requirements specified in section 410(a)(1) of the Code (i.e., have not completed one (1) year of service and attained age twenty-one (21) years), would satisfy the requirements of section 410(b)(1) (i.e., the "ratio percentage" or "average benefit percentage" coverage test) if tested separately from other eligible employees, then for that Plan Year, the individuals who have not satisfied the minimum age and service requirements with respect to that Plan Year may, at the election of the Committee, be entirely excluded from consideration in determining who is an eligible employee. Alternatively, the Committee may, if it so elects, exclude from consideration in determining who is an eligible employee only those individuals who have not satisfied the minimum age and service requirements specified in section 410(a)(1) of the Code and are not Highly Compensated Employees with respect to that Plan Year.

D-9

(b)     An **eligible Highly Compensated Employee** means an eligible employee who is a Highly Compensated Employee.

(c)     An **eligible Nonhighly Compensated Employee** means an eligible employee who is not a Highly Compensated Employee.

(d)     **Contribution percentage** means the ratio (calculated separately for each eligible employee) of:

    (i)     the total amount, for the Plan Year, of Employer contributions credited to the eligible employee's Matching Contribution Account excluding:

        (A)     any Employer matching contributions used in determining the deferral percentage under Section 2.1.1(d)(i) of this Appendix, and

        (B)     any Employer matching contributions of eligible Highly Compensated Employees that are forfeited pursuant to Sections 1.1.6 or 2.2.5 of this Appendix,

    and including, if the Committee elects, all or a portion of the Employer contributions credited to the eligible employee's Earnings Reduction Account, provided that the 401(k) compliance testing under Section 2.1 of this Appendix is satisfied both with and without exclusion of such Employer contributions, to

    (ii)     the eligible employee's compensation, as defined below for the portion of such Plan Year that the employee is an eligible employee.

For this purpose, Employer contributions will be considered made in the Plan Year if they are allocated as of a date during such Plan Year and are delivered to the Trustee within twelve (12) months after the end of such Plan Year.

(e)     **Compensation** means compensation for services performed for the Employer defined as "§ 415 compensation" in Appendix A to this Plan Statement. Notwithstanding the definition of "§ 415 compensation" in Appendix A to this Plan Statement, compensation shall always be determined on a cash (and not on an accrual) basis and compensation shall be determined on a Plan Year basis (which is not necessarily the same as the limitation year). An eligible employee's compensation for a Plan Year shall not exceed the limit on annual compensation under section 401(a)(17) of the Code (as adjusted under the Code for cost-of-living expenses).

(f)     **Average contribution percentage** means, for a specified group of eligible employees for the Plan Year, the average of the contribution percentages for all eligible employees in such group.

(g)     **Plan's 401(m) representative contribution rate** means the greater of:

D-10

(i)      the lowest applicable 401(m) contribution rate of any eligible Nonhighly Compensated Employee among a group of eligible Nonhighly Compensated Employees that consists of at least one-half (1/2) of all eligible Nonhighly Compensated Employees for the Plan Year; or

(ii)     the lowest applicable 401(m) contribution rate of any eligible Nonhighly Compensated Employee in the group of all eligible Nonhighly Compensated Employees who are employed by the Employer on the last day of the Plan Year.

(h)     **Applicable 401(m) contribution rate** means, for an eligible Nonhighly Compensated Employee for the Plan Year, the ratio of:

(i)      the total amount, for the Plan Year, of Employer matching contributions credited to the eligible Nonhighly Compensated Employee's Matching Contribution Account that are used in determining the contribution percentage in Section 3.1.1(d)(i) of this Appendix and of the Employer qualified nonelective contributions (if any) credited to the eligible Nonhighly Compensated Employee's Matching Contribution Account that are used in determining the contribution percentage in Section 3.1.1(d)(i) of this Appendix, to

(ii)     the eligible employee's compensation, as defined above, for the portion of such Plan Year that the employee is an eligible employee.

3.1.2.  **Special Rules**. For purposes of this Section 3.1, the following special rules apply:

(a)     **Rounding**. The contribution percentage of each eligible employee and the average contribution percentage for each group of eligible employees shall be calculated to the nearest one-hundredth of one percent.

(b)     **Highly Compensated Employees Eligible to Participate in Multiple Plans**. The contribution percentage of any eligible Highly Compensated Employee who is eligible to participate in any other plan of the Employer and Affiliates to which nondeductible voluntary contributions and Employer matching contributions are made on behalf of the eligible Highly Compensated Employee shall be equal to the ratio of:

(i)      the sum of all such nondeductible voluntary contributions and Employer matching contributions, and if used to determine the contribution percentage of eligible employees, Employer contributions made pursuant to a deferral election or qualified nonelective contributions (within the meaning of section 401(m)(4)(C) of the Code), or both, under all such plans for the Plan Year, to

(ii)     the eligible Highly Compensated Employee's compensation (as defined in Section 3.1.1 above) for the entire Plan Year.

U.S. Bank App. 113

(c) **Disproportionate Contributions for Nonhighly Compensated Employees Not Taken into Account**. Employer matching contributions shall not be taken into account in determining the contribution percentage of any eligible Nonhighly Compensated Employee to the extent such matching contributions exceed the greater of:

  (i) Five percent (5%) of the eligible Nonhighly Compensated Employee's Recognized Compensation for such Plan Year;

  (ii) the eligible Nonhighly Compensated Employee's elective contributions for such Plan Year; or

  (iii) the product of (A) multiplied by (B), where (A) and (B) are:

    (A) two (2); and

    (B) the Plan's representative matching rate (as defined below) multiplied by the eligible Nonhighly Compensated Employee's elective contributions for the Plan Year.

For purposes of Section 3 of this Appendix, the "Plan's representative matching rate" means, for any eligible Nonhighly Compensated Employee for the Plan Year, the greater of:

  (i) the lowest matching rate (as defined below) for any eligible Nonhighly Compensated Employee among a group of eligible Nonhighly Compensated Employees that consists of one-half (1/2) of all eligible Nonhighly Compensated Employees in the Plan for the Plan Year who made elective contributions for the Plan Year; or

  (ii) the lowest matching rate (as defined below) for all eligible Nonhighly Compensated Employees in the Plan who are employed by the Employer on the last day of the Plan Year and who made elective contributions for the Plan Year.

For purposes of Section 3 of this Appendix, the "matching rate" means the ratio (calculated separately for each eligible Nonhighly Compensated Employee) of:

  (i) the total amount, for the Plan Year, of Employer matching contributions credited to the eligible Nonhighly Compensated Employee's Matching Contribution Account, to

  (ii) the total amount, for the Plan Year, of elective contributions credited to the eligible Nonhighly Compensated Employee's Earnings Reduction Account.

If, however, the matching contribution is not the same for all levels of elective contributions for an eligible Nonhighly Compensated Employee, such employee's matching rate shall be determined assuming that the employee's elective

D-12

contributions for the Plan Year are equal to six percent (6%) of the employee's Recognized Compensation for the Plan Year.

(d) **Permissive Aggregation**. If this Plan satisfies the requirements of sections 401(m), 401(a)(4) or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 3.1 shall be applied by determining the average contribution percentage of eligible employees as if all such plans were a single plan. Plans may be aggregated in order to satisfy section 401(m) of the Code only if they have the same Plan Year and they use the same 401(m) testing method.

3.1.3. **The 401(m) Tests – Current Year Testing Method**. Notwithstanding the foregoing provisions, at least one of the following two tests must be satisfied for each Plan Year:

**Test 1:** The average contribution percentage for the group of eligible Highly Compensated Employees for the current Plan Year is not more than the average contribution percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year multiplied by one and twenty-five hundredths (1.25).

**Test 2:** The excess of the average contribution percentage for the group of eligible Highly Compensated Employees for the current Plan Year over the average contribution percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year is not more than two (2) percentage points, and the average contribution percentage for the group of eligible Highly Compensated Employees for the current Plan Year is not more than the average contribution percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year multiplied by two (2).

The Committee may, however, elect to substitute the average contribution percentage for the group of eligible Nonhighly Compensated Employees for the preceding Plan Year for the average contribution percentage for the group of eligible Nonhighly Compensated Employees for the current Plan Year in Tests 1 and 2 above (i.e., elect the prior year testing method) only if:

(a) the Plan has used the current year testing method for each of the five (5) preceding Plan Years (or if lesser, the number of Plan Years the Plan has been in existence, including years in which the Plan was a portion of another plan); or

(b) as a result of a merger or acquisition described in section 410(b)(6)(C)(i) of the Code, the Employer maintains this Plan, which uses the current year testing method, and another plan, which uses the prior year testing, and the Committee changes this Plan's testing method to the prior year testing method within the transition period described in section 410(b)(6)(C)(ii) of the Code.

3.1.4. **Preventative Action Prior to Plan Year End**. If the Committee determines that neither of the tests described in Section 3.1.3 will be satisfied (or may not be satisfied) for a Plan

D-13

Year, then during such Plan Year, the Committee may from time to time establish (and modify) maximums for Employer matching contributions of eligible Highly Compensated Employees that are less than the contributions which would otherwise be permitted or provided. No Employer matching contributions shall be made in excess of such maximums after the date such maximums are effective. The Committee shall prescribe rules concerning such modifications, including the frequency of applying the tests designed in Section 3.1.3 and the commencement and termination dates for any modifications.

3.2.    **Distribution of Excess Aggregate Contributions.**

3.2.1.    **In General**. Notwithstanding any other provision of the Plan Statement, excess aggregate contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to eligible Highly Compensated Employees as determined in this Section.

3.2.2.    **Determining Excess Aggregate Contributions**. For purposes of this Section, excess aggregate contributions shall mean, with respect to any Plan Year, the excess of:

(a)    the aggregate amount of contributions taken into account in computing the average contribution percentage of eligible Highly Compensated Employees for such Plan Year, over

(b)    the maximum amount of such contributions permitted by the section 401(m) tests described in Section 3.1 of this Appendix. Such maximum amount of contributions shall be determined by reducing (not distributing) eligible Highly Compensated Employees' contributions as follows:

(i)    The Employer Matching Contributions for the eligible Highly Compensated Employee who has the highest contribution percentage shall be reduced by the amount required to cause such eligible Highly Compensated Employee's contribution percentage to equal the next highest contribution percentage of an eligible Highly Compensated Employee.

(ii)    If neither of the tests is satisfied after such reduction, the Employer Matching Contributions for eligible Highly Compensated Employees who then have the highest contribution percentage (including those reduced under (i) above) shall be reduced by the amount required to cause such eligible Highly Compensated Employees' contribution percentage to equal the next highest contribution percentage of an eligible Highly Compensated Employee.

(iii)    If neither of the tests is satisfied after such reductions, this method of reduction shall be repeated one or more additional times until one of the tests is satisfied.

3.2.3.    **Method of Distributing Excess Aggregate Contributions**. Excess aggregate contributions, plus any income and minus any loss allocable thereto, shall be distributed from the

D-14

eligible Highly Compensated Employee's Matching Contribution Account. If the excess aggregate contributions exceed the amount of the contributions credited to the eligible Highly Compensated Employee's Matching Contribution Account for such Plan Year, then the remaining excess aggregate contributions, plus any income and minus any loss allocable thereto, shall be distributed from the Highly Compensated Employee's Earnings Reduction Account (first from the Highly Compensated Employee's Earnings Reduction Pre-Tax Account and then from the Highly Compensated Employee's Roth Account) but only if elective contributions are used to determine the contribution percentage under Section 3.1.1 of this Appendix for such Plan Year. The amount of excess aggregate contributions to be distributed on behalf of each eligible Highly Compensated Employee for the Plan Year shall be equal to the amount of reduction determined as follows:

(a)   The Employer Matching Contributions of the eligible Highly Compensated Employee who has the highest dollar amount of such contributions shall be reduced by the amount required to cause such eligible Highly Compensated Employee's contributions to equal the next highest dollar amount received by eligible Highly Compensated Employees.

(b)   If any excess aggregate contributions remain after performing (a), then the eligible Highly Compensated Employees who have the next highest dollar amount of Employer Matching Contributions (including those reduced under (a) above) shall be reduced by the amount required to cause such eligible Highly Compensated Employees' contributions to equal the next highest dollar amount received by eligible Highly Compensated Employees.

(c)   If any excess aggregate contributions remain after performing (a) and (b), this method of reduction shall be repeated one or more additional times until no excess aggregate contributions remain.

Provided, however, if the total amount of reduction determined in (a) through (c) would be greater than the amount of excess aggregate contributions, then the final reduction amount shall be decreased so that the total amount of reductions equals the amount of excess aggregate contributions.

    3.2.4.   **Determination of Income or Loss**. The excess aggregate contributions to be distributed to any eligible Highly Compensated Employee shall be adjusted for income or loss for the Plan Year (but not the gap period). Unless the Committee and the Trustee agree otherwise in writing, the income or loss allocable to excess aggregate contributions to be distributed shall be equal to the income or loss allocable to the eligible Highly Compensated Employee's Employer Matching Contributions (to the extent used to determine the eligible Highly Compensated Employee's contribution percentage under Section 3.1 of this Appendix), and if used to determine an eligible Highly Compensated Employee's contribution percentage under Section 3.1 of this Appendix, elective contributions for the Plan Year multiplied by a fraction, the numerator of which is the excess aggregate contributions to be distributed to the eligible Highly Compensated Employee for the Plan Year and the denominator of which is the sum of the eligible Highly Compensated Employee's account balances attributable to Employer Matching Contributions and such elective contributions on the last day of the Plan Year.

D-15

    3.2.5.   **Orphaned Matching Contributions**. If elective contributions treated as excess aggregate contributions are distributed pursuant to this Section 3.2, applicable Employer Matching Contributions under Sections 4.3 and 4.4 of the Plan Statement shall be treated as forfeitures and reallocated as if such forfeitures were an Employer Matching Contribution under Section 4.3 of the Plan Statement made for those Participants who were entitled to receive an Employer Matching Contribution for that Plan Year.

3.3.   **Section 401(m) Curative Allocation**.

    3.3.1.   **Amount and Eligibility**. If neither of the section 401(m) tests set forth in Section 3.1 of this Appendix has been satisfied and a distribution of "excess aggregate contributions" has not been made pursuant to Section 3.2 of this Appendix, then the Employer shall make a discretionary contribution for that Plan Year. Only those Participants who were eligible Nonhighly Compensated Employees for that Plan Year and who were entitled to receive an Employer Matching Contribution shall share in such allocation. This allocation shall be made first to the Participant with the least amount of compensation and then, in ascending order of compensation, to other Participants. The amount of the Employer Discretionary Contribution to be so allocated shall be that amount required to cause the Plan to satisfy either of the section 401(m) tests set forth in Section 3.1 of this Appendix for the Plan Year; provided, however, that in no case shall any amounts be allocated to a Participant in excess of an amount equal to the Participant's Recognized Compensation for such Plan Year multiplied by the greater of:

    (a)      five percent (5%); or

    (b)      the Plan's 401(m) representative contribution rate (as defined in Section 3.1 above) for such Plan Year multiplied by two (2).

Such Employer Discretionary Contribution shall be treated as a qualified nonelective contribution as defined in section 1.401(k)-6 of the Income Tax Regulations and shall be subject to the requirements of section 1.401(m)-2(a)(6) of the Income Tax Regulations, which is incorporated herein.

    3.3.2.   **Crediting to Account**. The Employer Matching Contribution which is so allocated to a Participant shall be allocated to that Participant's Matching Contribution Account for the Plan Year with respect to which it is made and, for the purposes of Section 4, shall be credited as soon as practicable after it is received by the Trustee.

U.S. Bank App. 118

# APPENDIX E
# SPECIAL RULES

1.1    **Eligibility Service (Related to Section 2.1.14)**. Employment prior to the Effective Date that was required to be taken into account for the purpose of determining Eligibility Service under the Predecessor Plans shall be recognized to the same extent under this Plan for the purpose of determining Eligibility Service.

1.2    **Restoration of Accounts of Participants in Certain Merged Plans (Related to Section 4.10)**. The non-vested accounts in the Dakota Bankshares, Inc. 401(k) Plan ("DBI 401(k)") of all participants who were not actively employed on June 30, 1992, shall be restored and fully vested only if the participant returns to active employment with the Company or an Affiliate prior to five (5) consecutive one-year breaks in service (as determined under the DBI 401(k) Plan documents) and satisfies any requirements for restoration of such accounts imposed under the terms of the DBI 401(k) Plan documents as they existed immediately prior to July 1, 1992. The non-vested accounts in the Colorado National Bankshares, Inc. Employee Savings Incentive Plan ("CNB 401(k) Plan") of all participants who were not previously fully vested shall be restored and fully vested only if the participant returns to active employment with the Company or an Affiliate prior to a break in service (as that term is defined in the CNB 401(k) Plan documents) and satisfies any requirements for restoration of such accounts imposed under the terms of the CNB 401(k) Plan documents as they existed immediately prior to May 29, 1993. The non-vested accounts in the American Bank Mankato Profit Sharing and Savings Plan ("ABM 401(k) Plan") of all participants who were not previously fully vested shall be restored and fully vested only if the participant returns to active employment with the Company or an Affiliate prior to a break in service (as that term is defined in the ABM 401(k) Plan documents) and satisfies any requirements for restoration of such accounts imposed under the terms of the ABM 401(k) Plan documents as they existed immediately prior to February 28, 1994.

1.3    **In Service Withdrawal – Firstar Thrift Savings 401(k) Plan Participants (Related to Section 7.2)**. In addition to the opportunities for distribution prior to a Participant's severance from employment stated in Section 7.2 of the Plan Statement, the portion of a Participant's Total Account that is attributable to the balance to the credit of the Participant in the Firstar Thrift Savings 401(k) Plan ("Firstar Plan") immediately prior to the Effective Date shall be distributable prior to the Participant's severance from employment as follows:

     (a)     all or any portion of such amounts that are attributable to amounts that were, immediately prior to the Effective Date, held in the Participant's Deductible Deposits Account may be distributed at any time prior to the Participant's severance from employment;

     (b)     all or any portion of such amounts that are attributable to "Employer Contributions" within the meaning of the Firstar Plan, that were made under the Firstar Corporation Thrift and Sharing Plan prior to September 1, 1999 may be distributed at any time prior to the Participant's severance from employment; and

E-1

(c)     all or any portion of such amount may be distributed at any time prior to the Participant's severance from employment by a Participant who has incurred a "Total Disability" within the meaning of the Firstar Plan.

Amounts distributed pursuant to subsections (a) through (c) above that come from more than one Account shall be withdrawn from the portions of the Participant's Total Account that correspond to the following Accounts under the Firstar Plan in the following order of priority: After-Tax Contributions Account, Deductible Deposits Account, Rollover Contributions Account, Employer Contributions Account and Tax Deferred Contributions Account. Notwithstanding the preceding sentence, a former participant in the Firstar Plan shall be permitted to specify a different order of priority for withdrawals authorized by this Section 1.4 of Appendix F, and shall be permitted to specify a different order of priority for withdrawals pursuant to Section 7.2.3 of the Plan Statement to the extent such withdrawals include the portion of a Participant's Total Account that is attributable to the balance to the credit of the Participant in the Firstar Thrift Savings 401(k) Plan ("Firstar Plan") immediately prior to the Effective Date.

1.4     **In Service Withdrawal – U.S. Bancorp 401(k) Savings Plan Participants (Relating to Section 7.2)**. In addition to the opportunities for distribution prior to a Participant's severance from employment stated in Section 7.2 of the Plan Statement, all or any portion of the Participant's Total Account that is attributable to amounts credited to the Participant's "Account A" or "Account B" within the meaning of the U.S. Bancorp 401(k) Savings Plan ("Bancorp Plan") immediately prior to the Effective Date, may be distributed at any time prior to the Participant's severance from employment, provided, however, that unless and until the Participant has been a Participant in the Plan and the Bancorp Plan for five (5) full years, the Participant shall not be entitled to a withdraw from either of those accounts any contributions that were contributed during the two consecutive Plan Years ending coincident with or immediately before the Valuation Date as of which the withdrawal is being made.

1.5     **In Service Withdrawal – Merged Plans Generally**. To the extent that its distribution prior to severance from employment is not authorized elsewhere in this Appendix E or by the other provisions of this Plan Statement, any portion of a Participant's Total Account that:

(a)     is attributable to amounts that were held by a Predecessor Plan or by a plan that merged into this Plan after the Effective Date and

(b)     immediately prior to the Effective Date, in the case of Predecessor Plan amounts, or immediately prior to the merger date, in the case of other amounts, was available for distribution prior to severance from employment,

shall continue to be available for such distribution to the same extent such distribution was permitted immediately prior to the Effective Date (in the case of Predecessor Plan amounts) or the merger date (in the case of other amounts).

1.6.     **Accounting for Loans (Relating to Section 7.6.6(c))**. Notwithstanding anything in Section 7.6.6(c) of the Plan Statement to the contrary, the amount for a loan shall be withdrawn from the Transfer Account only to the extent that they are available for loans at the time they are merged into the Plan. There shall also be excluded from the amounts available for loans any

E-2

amounts that are attributable to amounts that were, immediately prior to the Effective Date, held in the Participant's Deductible Deposits Account under the Firstar Thrift Savings 401(k) Plan.

1.7.   **Beneficiary Designations (Relating to Section 9.3.3)**. Notwithstanding anything in Section 9.3.3 of the Plan Statement to the contrary, the beneficiary designation forms in effect under the Firstar Thrift Savings 401(k) Plan before the merger of that plan into the Plan, whether filed under the Firstar Thrift Savings 401(k) Plan or of a predecessor plan merged into that plan, shall continue to be in effect.

1.8.   **Piper Jaffray Companies (Relating to Sections 4, 4.1.3, 4.3.2, and 7.1.4)**. Notwithstanding anything in the Plan Statement to the contrary, the following special rules shall apply with respect to the spin-off of U.S. Bancorp Piper Jaffray Inc., as provided for in the Separation and Distribution Agreement between U.S. Bancorp and Piper Jaffray Companies ("Separation Agreement"). Such spin off is referred to herein as the "Piper Jaffray Spin-off".

(a)   **Piper Jaffray Companies Stock Subfund**. There shall be created under the Plan a Piper Jaffray Companies Stock Subfund to receive the shares of Piper Jaffray Companies common stock issued in connection with the Piper Jaffray Spin-off. The Piper Jaffray Companies Stock Subfund shall be a frozen fund. Except for Matching Contributions as authorized under paragraph (c) below, and the reinvestment of dividends under paragraph (b)(iv) below, no other contributions to the Plan will be allowed into the Piper Jaffray Companies Stock Subfund, and Participants may not direct that other assets in their Total Account be invested in such Subfund. Effective January 6, 2020, the Piper Jaffray Companies Stock Subfund was renamed the "Piper Sandler Companies Stock Fund" And references to the Piper Jaffray Companies Stock Subfund means the Piper Sandler Companies Stock Fund or a successor name.

(b)   **Voting of Shares in the Piper Jaffray Companies Stock Fund**. The Trustee shall vote shares held in the Piper Jaffray Companies Stock Subfund as specified below.

(i)   **Issuance of Proxies**. As soon as practicable after notice of any shareholders' meeting is received by the Trustee from Piper Jaffray Companies, the Trustee shall prepare and deliver to each Participant and Beneficiary of a deceased Participant a form of proxy (and related materials, all of which shall be the same in form and content as are issued to shareholders in general) directing the Trustee as to how it shall vote at such meeting, or any adjournment thereof, the Participant's or Beneficiary's Piper Jaffray Companies common stock with voting rights held in the Piper Jaffray Stock Subfund as of the most recent Valuation Date for which a valuation has been completed.

(ii)   **Voting of Securities**. The Trustee shall vote all Piper Jaffray Companies common stock with voting rights for which it has received timely directions from Participants and Beneficiaries, as they direct. The combined fractional shares of Participants and Beneficiaries shall be voted to the extent possible to reflect the directions of the Participants and Beneficiaries with fractional

E-3

shares. The Trustee shall not honor or recognize any proxy given by any Participant or Beneficiary to any person other than the Trustee. The directions received by the Trustee from Participants and Beneficiaries shall be held by the Trustee in confidence and shall not be divulged or released to any person, including officers or employees of an Employer or any Affiliate, except as necessary to administer the Plan.

(iii)   **Nonresponse**. The Trustee shall vote any Piper Jaffray Companies common stock for which it has not received instructions at least five (5) days prior to the shareholder meeting in the same proportions as the Piper Jaffray Companies common stock for which it did receive timely instructions.

(iv)   **Dividends Reinvested**. Dividends (if any) on Piper Jaffray Companies common stock held in the Piper Jaffray Companies Stock Subfund shall be allocated to each Participant who has a portion of his Total Account invested in such Subfund in proportion to his Piper Jaffray Companies Stock Subfund balance on the applicable dividend record date, and any such dividends so allocated will be invested in the Piper Jaffray Companies Stock Subfund.

E-4