**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| CONGHUA YAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. [4:23-cv-00758-P-BJ] |
| | ) | |
| SBOT et al, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
JUDGEMENT AND TO REVISE AN ORDER**

# I.   Contents

I.   INTRODUCTION ...................................................................................................... 4

II.   Defendants have waiver of arguments towards claims............................................. 4

   A.   State Bar of Texas's antitrust Argument ............................................................ 4

   B.   Other Defendants' antitrust Arguments ............................................................. 5

III.   Omitted and/or twisted essential pleaded allegations ........................................... 6

IV.   Rendition of April 26 QDRO Order is a constitutional magnitude fraud ............... 8

V.   Extrinsic Fraud and Structural Error ...................................................................... 10

VI.   Other omitted issues of fact .................................................................................. 12

   A.   Omitted Facts that attorney fees from criminal case was submitted into family case under the affidavit and was awarded by the associate judge .................................................. 13

   B.   Omitted facts related to November 9th 2021 and April 13 2022 interim orders that Plaintiff was ordered to directly pay his own attorney fees without any pleading ...................... 14

   C.   Omitted facts related to April 13 2022 interim QDRO order that Plaintiff was ordered to pay non-incurred (prepayment) attorney fees to opposing party........................................ 16

   D.   Omitted facts related to the April 13, 2022, and April 26, 2022, interim QDRO orders, which were rendered in the pre-trial stage.......................................................................... 17

   E.   Shied away from referencing the essential alleged legal terms "QDRO," "ERISA," "RICO," and 18 U.S.C. § 664, but mischaracterized to "launder money" .............................................. 18

   F.   Omitted facts that Plaintiff alleged and presented evidence of a second 18 U.S.C. § 664 predicate from another interim QDRO ordered by the associate judge ......................................... 20

VII.   Omitted Issues of Law ......................................................................................... 21

   A.   ERISA and *Younger* ...................................................................................... 21

   B.   The legitimacy of interim/interlocutory QDRO order in Texas....................... 22

   C.   The Judicial Immunity/clear absence of all jurisdiction................................. 23

   D.   The Judicial Immunity/associate judge is not judge per legal definition........ 24

VIII.   This Court erroneously issued final judgment ................................................... 27

   A.   April 23, 2024 judgement, [ECF No. 149], is not a final, appealable judgement ............ 27

IX.   Prayer for relief .................................................................................................... 28

## Cases

*Alexander v. Hagedorn*, 226 S.W.2d 996, 1001-2 (Tex. 1950) ...................................................................... 11

*Aoude* v. *Mobil Oil Corp.*, 892 F.2d ........................................................................................................... 8

*Bader v. Atlantic International, Ltd.*, 986 F.2d 912 (5th Cir. 1993) .............................................................. 27

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ................................................................... 5, 12

*Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Tr.*, No. 05-20-00747-CV, (Tex. App. Apr. 12, 2023) ............................................................................................................................. 15

*Cantu v. Guerra & Moore, LLP*, 549 S.W.3d 664, 668 (Tex. App. 2017) .............................................. 13, 27

*Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir.2009). ........................................................................... 7

*Castro v. U.S.*, 540 U.S. 375, 385 (2003) .................................................................................................... 20

*Clifton v. State*, No. 01-22-00641-CR, 67 n.31 (Tex. App. Aug. 24, 2023) ................................................ 10

*Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368, 375 (D. Mass. 2008) ............ 22

*Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018) .................................................................................. 23

*Epps v. State*, 24 S.W.3d 872, 879 n.3 (Tex. App. 2000) ........................................................................... 10

*Graham v. Graham*, 414 S.W.3d 800, 801 (Tex.App.–Houston [1st Dist.] 2013, no pet.) ........................... 26

*Griffin v. Welch*, No. 13-60886, 2 (5th Cir. 2014) ................................................................................. 5, 12

*Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008) ................................ 12

*In re A.E.B.*, NO. 01-19-00517-CV, 15-16 (Tex. App. Jul. 13, 2021) .......................................................... 26

*In re D.L.M.*, 982 S.W.2d 146 (Tex. App. 1998) .................................................................................. 25, 26

*In re L.D.C.*, NUMBER 13-17-00053-CV, 13-12 (Tex. App. Dec. 13, 2018) ................................................ 25

*Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008) .................................................................. 10

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ........................... 12

*Newpark Shipbuilding Repair, v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984) ......................................... 28

*Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014) .................................................................... 10

*Stein v. Stein*, 868 S.W.2d 902, 904 (Tex. App. 1994). ............................................................................. 25

*U.S. v. Marcus*, 560 U.S. 258, 263 (2010) ................................................................................................. 10

*United States ex rel. Bias v. Tangipahoa Parish School Board*, 816 F.3d 315, 321 (5th Cir. 2016) ......... 5, 12

*United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) .................................................................... 4

*United States v. Suarez*, 879 F.3d 626, 642 (5th Cir. 2018) ......................................................................... 8

*Vetri Ventures, LLC v. Westridge Eagles Nest Owners Ass'n* ..................................................................... 25

## Statutes

Tex. Const., Art. 1 § 13 ............................................................................................................................... 27

Tex. Const., Art. 1 § 19 ............................................................................................................................... 27

Tex. Const., Art. 1 § 29 ............................................................................................................................... 27

Tex. Fam. Code. §201.007 .......................................................................................................................... 25

Tex. Gov. Code. Sec. 74.041(2) ................................................................................................................... 25

Tex. Gov. Code. Sec. 74.042(a) ................................................................................................................... 25

# I.   INTRODUCTION

1.      COMES NOW, Plaintiff respectfully submits the memorandum of law in support of his motion to alter or amend a judgement ("the Judgement") to revise an order ("the Order"). In support of this memorandum, Plaintiff states as follows:

## II.   Defendants have waiver of arguments towards claims

### A. State Bar of Texas's antitrust Argument

1.      "Under the party presentation principle, American courts function in an "adversarial system of adjudication" whereby "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." … This system is "designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." … Accordingly, it is inappropriate for a court to raise an issue *sua sponte* in most situations." *United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022).

2.      The core defendant of antitrust claim involves a corporation; in this case, it is the State Bar of Texas (aka "SBOT"). Plaintiff clearly pointed out that "Defendants didn't argue Antitrust claim for its actions" in [ECF No. 93, ¶ 24, PageID 1528]. SBOT and their counsels has effectively waived arguments under 12(b)(6).

3.      SBOT argued injunctive relief under 12(b)(6) related to "bar grievances or outcome of disciplinary proceeding", but waived arguments about other declaratory, injunctive and monetary reliefs [ECF No. 60, ¶ 255-269, PageID 1144-1146]. SBOT argued "Eleven Amendment Immunity" under 12(b)(1), but as the Court correctly pointed out, SBOT does not enjoy immunity under antitrust claim. Therefore, their arguments never fulfill the requirement to dismiss entire antitrust claim.

4.      Every individual defendant in the antitrust claim was pleaded as a member of SBOT, that is why Tarrant County, Barrows Firm and U.S. Bank wasn't included. Plaintiff didn't seek any relief outside the scope of SBOT association and its members in this claim.

5.      The absolute immunity and qualified immunity that SBOT counsels argued don't apply in antitrust claim, because Plaintiff never pleaded individual capacity as state actor. In antitrust claim, Plaintiff correctly pleaded them as members of SBOT, a professional

service provider association. Plaintiff correctly pleaded himself as a legal server consumer, not a court litigant in this claim [ECF No. 93, ¶ 79-80, PageID 1542-1543].

6.     The Fifth Circuit applies following standard when reviewing motion to dismiss under Rule 12(b)(6):

> "The court's inquiry should focus on the complaint as a whole, regardless of how much of it is discussed in the motion to dismiss. Dismissal is improper if the allegations support relief on any possible theory." *United States ex rel. Bias v. Tangipahoa Parish School Board*, 816 F.3d 315, 321 (5th Cir. 2016) (internal citations omitted).

> "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" "Thus, the court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Griffin v. Welch*, No. 13-60886, 2 (5th Cir. 2014).

> ""Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"[…] A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"." (emphasis added and omitted), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

7.     SBOT didn't pursue a dismissal under 12(b)(6). This Court shouldn't offer a leniency.

### B. Other Defendants' antitrust Arguments

8.     Pigg did not argue anything under 12(b)(6);

9.     DeAngelis did not argue anything under 12(b)(6). DeAngelis asserted Judicial Immunity and Younger Doctrine under 12(b)(1), whereas the actual allegation pleaded her participation in "predatory conduct without a valid business justification" as a member of a monopoly organization. Plaintiff didn't allege her as an associate judge or seek any relief from the outcome of state court case in antitrust claim.

10.    The only defendants argued under 12(b)(6) for antitrust claim is Barrows. [ECF No. 90, ¶40-41]. However, she argued that Plaintiff didn't sufficiently plead under "conspiracy to monopolize" clause of Sec 2 of the Sherman Antitrust Act. In same paragraph Barrows corrected stated that there are "three distinct civil claims: (i) monopoly, (ii) attempt to monopolize, and (iii) conspiracy to monopolize."

11.    After Plaintiff rebutted by arguing that his allegation wasn't "conspiracy to monopolize"; it was monopolist's "predatory conduct without a valid business justification" [ECF No. 108, ¶78-79] under "(i) monopoly", not under "(iii) conspiracy to monopolize." Barrows

had waived further argument under the "monopoly". The same counsels/firm who also represent Ybarra didn't raise any antitrust argument under 12(b)(6).

12.  Because all the Defendants haven't raised an effective 12(b)(6) argument at this juncture, it is an abuse of discretion for the Court to dismiss the antitrust claim under 12(b)(6). SBOT voluntary waived the antitrust argument, they are not entitled a dismissal.

## III.    Omitted and/or twisted essential pleaded allegations

13.  This Order has omitted and/or twisted Plaintiff's factual allegations; therefore, the Order lost the ground to determine whether Plaintiff pleaded sufficient claims. It is quite simple: this Court cannot pull out even one page of the whole pleading or alter one page then move to conclude that the pleading contains insufficient claims.

14.  In every claim of pleading, Plaintiff incorporated followings statements that this Court should not ignore.

> Plaintiff incorporates by reference the sections "FACTUAL BACKGROUND OF THIS SUIT" and "STANDARD OF REVIEW" as if fully set forth **herein**.
> Plaintiff refers to every paragraph **herein** as Plaintiff's allegation.
> Plaintiff refers to every paragraph **herein** where the name of a person or entity is mentioned and its attachment as factual statements.
> Plaintiff refers to every sentence **herein** where the U.S. Code is mentioned as an allegation to its related party

15.  Liberally construed and/or fairly construed, this Court should reasonably construe that the factual allegations are "every paragraph within the entire document including the sections FACTUAL BACKGROUND OF THIS SUIT and STANDARD OF REVIEW."

16.  The Order erroneously concludes the finding of allegations that,

> "ECF No. 60 at 39…issued many orders in that proceeding "without any jurisdiction or authority." Id. The "orders" referenced in Yan's pleadings appear to be (1) "an interim order compelling Plaintiff to directly pay his own attorney fees" and (2) **a "spousal support order" Judge DeAngelis issued "while there [was] neither a motion nor a hearing for the matter of spousal support**." Id. at 39; see also id. at 55–64"

17.  Plaintiff never pleaded that "DeAngelis issued a 'spousal support order' while there [was] neither a motion nor a hearing for the matter of spousal support." That reference cannot be found on pages 39 and 55-64 [ECF No. 60]. Since the Order uses a quotation, it helps

Plaintiff quickly locate the place where "neither a motion nor a hearing for the matter of spousal support" appears, which is on page 15 of [ECF No. 60, ¶56, PageID 1100].

18.   However, the pleading itself clearly showing that, Plaintiff pleaded that,

> "On April 26th, 2022, **Defendant Leslie Starr Barrows** submitted a fraudulent garnishment court order that, **for the first time**, falsely categorized interim attorney's fees as "**spousal support**…. it is unlawful, lacks authority, fraudulent, and an abuse of process for **the officers of the court** to arrange an enforceable spousal support order… it is unlawful, lacks jurisdiction, fraudulent, and an abuse of process under the color of law for **the officers of the court** to arrange an enforceable spousal support order **while there is neither a motion nor a hearing for the matter of spousal support**, which violates the **Due Process** clause of the Fourteenth Amendment"

19.   When a factual pleading is twisted, every conclusion of law derived from it gets flipped upside down. Plaintiff alleged not DeAngelis but Barrows, who exercised judicial authority to render an interim QDRO order for spousal support, even though there was neither a preceding motion nor a preceding hearing for the matter of spousal support.

20.   Who made that rendition of the April 26, 2022 interim QDRO order for spousal support is a constitutional magnitude question of fact that affects the final legitimacy of the QDRO orders. This answer changes the whole legal landscape of underline claims. Because the Order falsely found that DeAngelis (not Barrows as Plaintiff factual pleaded) rendered the April 26, 2022 QDRO order for spousal support, it missed the whole factual point and will never lead to a correct conclusion of law.

21.   Fraud on the court has five elements: (1) conduct of an officer of the court; (2) that is directed to the judicial machinery itself; (3) that is intentionally false, willfully blind to the truth, or in reckless disregard of the truth; (4) that is a positive averment or concealment when one is under a duty to disclose; and (5) that deceives the court.[1]

22.   Plaintiff didn't "[s]imply arguing a certain order was wrong, even really wrong," as seem in [ECF No. 148, PageID 2170]. His arguments aren't "all predicated on the untenable position that he has standing to sue in federal court for unfavorable outcomes in a state court proceeding," as seem in [ECF No. 148, PageID 2167]. Allowing any attorney to usurp constitutional judicial power to have the authority to render court orders at their

---

[1] *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir.2009).

own discretion is an extrinsic fraud, a structural error that affects the infrastructure of Texas legal framework, this is "simultaneously throwing a large monkey wrench into the judicial simultaneously throwing a large monkey wrench into the judicial machinery[2]." It is unlawful and unconstitutional, and really unlawful and unconstitutional.

23.  The Order correctly acknowledged that "attorney immunity is not absolute." But afterwards it falsely concluded that "'[t]his case typifies why the attorney-immunity doctrine exists, which protects the zealous **advocacy** of clients by legal professionals." [ECF No 148, PageID 2173]. "At its core, the majority opinion overlooks the essential character of the American system of justice as **adversarial**, not **inquisitorial**." *United States v. Suarez*, 879 F.3d 626, 642 (5th Cir. 2018). The fact that Barrows rendered a QDRO order for spousal support against Plaintiff at her own discretion showed that Plaintiff was in an inquisitorial system, not in an adversarial system. attorney immunity and inquisitorial system can't co-exist.

24.  Rendering order by an attorney is a fraud upon the court. Plaintiff asserts that what Barrows did on April 26, 2022, is outside of the scope of "zealous advocacy" What Barrows did was unlawful. When she successfully embezzled fund from employee benefit plan, it constituted the "unlawful" element of 18 U.S.C § 664.

## IV.    Rendition of April 26 QDRO Order is a constitutional magnitude fraud

25.  **Attorney William Pigg's view:**

In an email dated Aug 7, 2022 (ECF No. 60, PageID 1173), attorney Pigg stated:

> "If you recall, **at the hearing in April, you were ordered to get 50K** from your 401k. You were to have done it within 30 days - meaning mid-May. **Leslie tried to get her 25k via a QDRO, claiming it was for spousal support - not attorney's fees as ordered**. I did not sign off on that QDRO because **it would not be true** and I'm not going to sign **a court document that is not true**. However, it puts the responsibility on you to get the money. Please advise how long that process will take so I can respond to Leslie"

In an email dated Aug 8, 2022 (ECF No. 60, PageID 1174), attorney Pigg stated:

> "In that case, the legal issue is that we either **have to lie** and **accept the QDRO** or you need to figure out some other way to get 25K for Barrows. As for my 25K, I'm not going to put myself in a position where I'm taking money in **a non-**

---

[2] *Aoude* v. *Mobil Oil Corp.*, 892 F.2d at 1118.

**truthful way**, so, regardless of Barrows, you'll have to figure out something for my end of things."

26.     **Attorney Leslie Barrows' view:**

In an email dated Aug 5, 2022 (ECF No. 60, PageID 1172),

"In order for **us to obtain our attorney's fee**, the order **must say** that **the fees are for spousal support**. There is **no way around it**"

27.     **Petitioner's view after he decided that that he would not lie and accept the QDRO:**

In a mail dated July 21, 2022 (ECF No. 140, PageID 2114),

"The order at issue, dated **April 13, 2022**, **was issued in connection with Ms. Wang's request for attorney's fees** — not in connection with the provision of child support. Consequently, it is Mr. Yan's position that the proposed garnishment is **NOT** a QDRO. I attach hereto a copy of the Court's Order for your review."

28.     **U.S. Bank's view after comparing both associate judge's report and QDRO order:**

In an email dated Aug 1, 2022 (ECF No. 140, PageID 2118),

""Logic suggests…Associated Judge's **report** is **in direct conflict** with the [QDRO] **order**"

29.     Federal court is supposed to be the place to resolve disputes involving federal constitutional issues. However, when Plaintiff pleaded that a lawyer **usurped constitutional judicial authority** to render an interim QDRO order to secure attorney fees from Plaintiff's ERISA protected assert, this Court erroneously concluded that "his **arguments are all predicated on the untenable position** that he has standing to sue in federal court." At the pleadings stage, Plaintiff already have furnished enough facts to allege a plausible claim that members of the Texas judiciary teamed up with attorneys, members of SBOT, and private entities to unlawfully embezzle fund from ERISA protected assets via various court orders from 2014 to 2022. (ECF No. 60, PageID 1172, 1173, 1174); (ECF No. 140, PageID 2114, 2118); ECF No. 60, PageID 1231, 1233, 1236); (ECF No. 60, PageID 1190). It is indeed a largescale RICO schemes or 18 U.S.C § 664 acts of institutional impropriety.

## V.    Extrinsic Fraud and Structural Error

30.    A "structural" error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself and "render[s] a trial fundamentally unfair."[3].

31.    Certain errors, termed "structural errors," might "affect substantial rights" regardless of their actual impact on an appellant's trial.[4]

32.    All structural errors must be founded on a violation of a federal constitutional right.[5]

33.    A structural error requires automatic reversal and is not subject to harmless error analysis because it involves a deprivation of a constitutional protection so basic that in its absence.[6]

34.    "Structural errors comprise a narrow class of cases involving the deprivation of federal constitutional rights. See Johnson v. State, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005) (citing Johnson v. United States, 520 U.S. 461, 468-469 (1997)); see also Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (structural error is error of **constitutional magnitude** that "**affect[s] the framework** within which a trial proceeds rather than simply an error in the trial process itself")." *Clifton v. State*, No. 01-22-00641-CR, 67 n.31 (Tex. App. Aug. 24, 2023).

35.    Plaintiff believes that this Federal Court must uphold the principle that only judges have the constitutional judicial authority to make a rendition. In this case, Plaintiff's ERISA law-protected asset was unlawfully deprived of under an unlawful order **rendered not by a judge, but by an attorney**. Plaintiff has presented sufficient facts to plead that a Texas state court allowed an attorney to issue a rendition. However, neither SBOT (disciplinary action), the state court (civil action), nor the Tarrant County DA's office (criminal action) wants to take any action. This Court should not omit a constitutional magnitude violation that affects the framework of the legal system.

36.    The Supreme Court of Texas has held that,

> "Fraud in its relation to attacks on final judgments is either extrinsic or intrinsic. Only extrinsic fraud will entitle a complainant to relief because it is a wrongful

---

[3] *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008)
[4] *U.S. v. Marcus*, 560 U.S. 258, 263 (2010)
[5] *Schmutz v. State*, 440 S.W.3d 29, 35 (Tex. Crim. App. 2014)
[6] *Epps v. State*, 24 S.W.3d 872, 879 n.3 (Tex. App. 2000)

act committed 'by the other party to the suit which has prevented the losing party either from knowing about his rights or defenses, or from having a fair opportunity of presenting them upon the trial. Such, for instance, as where he has been **misled by his adversary by fraud or deception**, did not know of the suit, or was **betrayed by his attorney**. In other words, fraud which denied him the opportunity to fully litigate upon the trial all the rights or defenses he was entitled to assert." *Alexander v. Hagedorn*, 226 S.W.2d 996, 1001-2 (Tex. 1950). "The Supreme Court of the United States gives these illustrations of extrinsic fraud: 'Where the unsuccessful party has been prevented from exhibiting fully his case, by **fraud or deception practiced on him by his opponent**, as by **keeping him away from court**, a false promise of a compromise; or where the defendant **never had knowledge of the suit**, being kept in ignorance by the acts of the plaintiff' [] it is said that extrinsic fraud is wrongful conduct of the successful party practiced **outside of an adversary** trial and which is **practiced directly and affirmatively** upon the defeated party, or his agents, attorneys or witnesses." *Alexander v. Hagedorn*, 226 S.W.2d 996, 1001-2 (Tex. 1950).

37.   Pigg signed the April 26, 2022 interim QDRO order but never informed Plaintiff. However, in an email dated August 7, 2022 (ECF No. 60, PageID 1173), Pigg continued defrauding, "I **did not sign off** on that QDRO." This is clear evidence that Plaintiff was betrayed by his attorney; Pigg had aligned himself with the opposing party; and the Plaintiff was kept away from court, having no knowledge of this fraudulent order.

38.   Pigg signed the April 26, 2022 interim QDRO order, but in an email (ECF No. 60, PageID 1169), he tried to defraud Plaintiff to collect his $25000 by stating, "attached is the Associate Judge's Order from **April 13, 2022** hearing wherein you were ordered to withdraw $50K from your 401K, SO, you will need to do that. 2 certified checks…one made payable to the Barrows Firm and the other to my law firm." So, it is evident that Pigg knew there was two orders appeared in direct conflict but he defrauded Plaintiff to take action pursuant to April 13, 2022 order so he can get his fees.

39.   Upon the specific fraud and deception facts, this type conduct isn't "the kind of conduct in which an attorney engages when discharging his duties to his client." [ECF No. 148, PageID 2172]. this case never "typifies why the attorney-immunity doctrine exists" [ECF No. 148, PageID 2173]. It is neither duty to client nor zealous advocacy for legal professionals to obtains fees from consumer under fraud and deception.

# VI.    Other omitted issues of fact

40.    "For its Rule 12(b)(6) review, the Court may examine the **complaint**, **documents attached to the complaint**, and **documents attached to the motion to dismiss** that are central to the plaintiff's claims and referenced in the complaint."[7]

41.    ""Rule 12(b)(6) **does not countenance** . . . dismissals based on a judge's **disbelief** of a complaint's factual allegations"[…] A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"."[8] (emphasis added and omitted).

42.    As the Fifth Circuit held that, "The court's inquiry should focus on the complaint **as a whole**, **regardless of how much of it is discussed** in the motion to dismiss. **Dismissal** is improper if the allegations support relief on **any possible theory**."[9].

43.    The Fifth Circuit applies following standard when reviewing motion to dismiss under Rule 12(b)(6), "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" "Thus, the court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under **any set of facts** or **any possible theory** that [it] could prove consistent with the allegations in the complaint."[10]

44.    "A motion to dismiss under Rule 12(b)(6) is "viewed with **disfavor and rarely granted**." Priester v. Lowndes County, 354 F.3d 414, 418 (5th Cir. 2004)"[11].

45.    This Order has omitted the essential facts in the pleading; therefore, it failed to apply the facts when concluding the law. Plaintiff objects to the dismissal because, when facts are missing or ignored, the Order fails to prove that the plaintiff would not be entitled to relief under **any set of facts**.

46.    Beyond the crucial issue of identifying who rendered the April 26, 2022 interim QDRO order and whether there was a motion and/or hearing for the civil cause of spousal support, several other critical questions of fact remain that cannot be ignored.

---

[7] *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)
[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)
[9] *United States ex rel. Bias v. Tangipahoa Parish School Board*, 816 F.3d 315, 321 (5th Cir. 2016)
[10] *Griffin v. Welch*, No. 13-60886, 2 (5th Cir. 2014)
[11] *Hill v. Astrue*, CIVIL ACTION NO. 2:08-CV-43-P-A, 2-3 (N.D. Miss. Oct. 23, 2008)

    a.  Whether the attorney fees from criminal case was submitted into family case under the affidavit and was awarded by the associate judge?

    b.  Whether Plaintiff's own attorney fees was ordered without any pleading?

    c.  Whether Plaintiff was ordered to pay non-incurred (prepayment) attorney fees to opposing party?

    d.  Whether the April 13, 2022 or April 26, 2022 interim QDRO order was rendered pre-trial or post-trial?

    e.  Whether there is more than one count of interim QDRO order presented in the pleading?

**A. Omitted Facts that attorney fees from criminal case was submitted into family case under the affidavit and was awarded by the associate judge**

47.    On April 13, 2022, during the hearing in the associate judge's court, DeAngelis, Barrows, and Ybarra colluded in a conspiracy to obtain their attorney fees from an unrelated criminal case from Plaintiff. Barrows swore under oath with an affidavit that these attorney fees, incurred from a criminal case, were the attorney fees incurred in Plaintiff's family court case. In fact, these fees were not. Barrows committed aggravated perjury, which is defined as intrinsic fraud upon the court. "[T]he court acknowledged perjury is intrinsic fraud."[12].

48.    The factual allegations were pleaded in [ECF No. 60 ¶40, PageID 1098], [ECF No. 60 ¶69, PageID 1103], [ECF No. 60 ¶87-¶89, PageID 1108], [ECF No. 60 ¶91-¶93, PageID 1109], [ECF No. 60 ¶147, PageID 1122], [ECF No. 60 ¶226, PageID 1139].

49.    Allegations are not based from "speculative allegations of would-be facts", it is from all the evidence attached.

    a.  EXHIBIT 5 (AFFIDAVIT OF LESLIE HARROWS' ATTORNEYS FEES)(ECF No. 60, PageID 1196-1223).On PageID 1214, it clearly states, "01/19/2022 Conference with attorney Ybarra regarding municipal court docket for citation."; On PageID 1196-1197, it clearly states, "swore under oath .. specifically, they are records [time and invoice] … **in this case**".

    b.  EXHIBIT 6, Samata Ybarra's letter to the Southlake Municipal Court (ECF No. 60, PageID 1225). It clearly states, "my firm currently represents Ms. Fu Yan Wang in an ongoing family law matter **and** citation #E029990"

---

[12] *Cantu v. Guerra & Moore, LLP*, 549 S.W.3d 664, 668 (Tex. App. 2017)

    c.  EXHIBIT 3, Motion for Interim Attorney's fees filed to the court (ECF No. 60, PageID 1190).

50.    Whether Barrows and Ybarra swore under oath and submitted fees incurred in a criminal case (where Plaintiff was not the party), into a family court case, is a critical question of fact.  Whether DeAngelis had the jurisdiction to determine fees incurred in a criminal case, is a critical subsequent question of laws to determine whether judicial immunity and attorney immunity should be applied to these aggravated perjury and wire fraud criminal acts.

51.    This allegation and its related evidence were never considered in the Order. The Order failed to address these matters. Therefore, Plaintiff objects to the Order because essential allegations were omitted.

### B. Omitted facts related to November 9th 2021 and April 13 2022 interim orders that Plaintiff was ordered to directly pay his own attorney fees without any pleading

52.    The pleading [ECF No. 60 ¶86, PageID 1107, ¶281-¶282, PageID 1147-1148] clearly showing that, Plaintiff pleaded that,

> "**Without** any court **hearing** on the matter of attorney's fees, and **without** even a **pleading** from either litigant, on November 10th, 2021, Defendant Associate Judge Lori L. DeAngelis ordered Plaintiff to withdraw the last and only $10,000 from his bank account, allocating $5,000 to each party for attorney's fees. **Neither** party had **pleaded** that the court award attorney fees, as both parties had paid retainers before appearing in court."
>
> "On November 8th and 9th, 2021, Defendant Lori L. DeAngelis ordered Plaintiff to prepay both parties' attorneys' fees, which came to a total of $10,000. Plaintiffs allege that, this order was unlawful and Defendant Lori L. DeAngelis lacked authority and jurisdiction, pursuant to the "**STANDARD OF REVIEW**.""
>
> "On April 13th, 2022, following the hearing on the "motion for interim attorney's fees," Defendant Lori L. DeAngelis ordered Plaintiff to prepay Defendant Leslie Starr Barrows $25,000 from his 401K and to prepay Defendant William Albert Pigg $25,000 from his 401K. Plaintiffs allege that, this order was unlawful and Defendant Lori L. DeAngelis' acts lacked authority and jurisdiction, pursuant to the "**STANDARD OF REVIEW**.""

53.    The pleading [ECF No. 60 ¶44, PageID 1098] clearly showing that,

> "In Plaintiff's family law case, it is unlawful and the judge lacks jurisdiction to issue an interim order compelling Plaintiff to **directly pay his own attorney fees**. The family court has no jurisdiction to assist the attorney to secure/collect non-billed payment or prepayment from their own client in the **absence of that attorney's pleading**. The judge lacks jurisdiction over the

subject matter of commercial contract relations between the service provider and its consumer, particularly given the **clear absence of pleading**."

54. Pigg's answer [ECF No. 73 ¶28, PageID 1291] clearly showing that, Pigg replied,

"**admit** that he **did not submit "any billable hours or rates**" into the [second] hearing and to **deny** that he **never submitted any pleading**"

55. Therefore, whether Plaintiff's attorney submitted any pleading became a disputed fact, but "[a]t this stage, the Court accepts all well-pleaded facts as true and views them in Yan's favor." [ECF No. 148, PageID 2176]

56. At the pleadings stage, Plaintiff already have furnished enough facts to allege a plausible claim that, on November 9th 2021 and April 13 2022, Plaintiff was ordered to directly pay his own attorney fees without any pleading.

57. The Order erroneously concludes the finding of allegations that,

The "orders" referenced in Yan's pleadings appear to be (1) "**an** interim order compelling Plaintiff to directly pay his own attorney fees"

58. The Order failed to conclude the findings of fact that DeAngelis compelled two interim orders. Therefore, the Order failed to identify which exact interim order was determined by the ruling. Additionally, the Order missed a critical factual allegation in the pleading: a "clear absence of pleading."

59. Whether Plaintiff was order to directly pay his own attorney fees with clear absence of pleading is a critical question of fact. Whether DeAngelis had the jurisdiction to compel fees with clear absence of pleading, is a critical subsequent question of laws to determine whether judicial immunity be applied to DeAngelis.

60. The Supreme Court of Texas has ruled that,

"All three jurisdictional components [] are necessary: an actual case or controversy, ripeness, and standing. Accordingly, as the Texas Supreme Court has recently stated, "[j]ust one valid jurisdictional obstacle is enough for the court to halt further proceedings.""[13]

61. Plaintiff asserts that there was no pleading and "William not even being a party to this hearing." [ECF No. 60 ¶70, PageID 1103]

---

[13] *Canadian Real Estate Holdings, LP v. Karen F. Newton Revocable Tr.*, No. 05-20-00747-CV, (Tex. App. Apr. 12, 2023)

**C. Omitted facts related to April 13 2022 interim QDRO order that Plaintiff was ordered to pay non-incurred (prepayment) attorney fees to opposing party**

62.   The pleading [ECF No. 60 ¶88, PageID 1108, ¶92, PageID 1109] clearly showing that, Plaintiff pleaded that,

> "On March 3rd, 2022, Defendant Leslie Starr Barrows filed a Motion for Interim Attorney's Fees against Plaintiff in the 325th Family Court. Defendant Leslie Starr Barrows claimed that there were **$19,300** in fees **incurred** by March 3rd, 2022. Leslie Starr Barrows, also serving as a witness for this petition, submitted an affidavit stating that the bills recorded in the exhibits were for attorney's fees in the family court case. This motion is attached hereto as Exhibit 3."
>
> "The billing record in the affidavit showed that, even when considering the fees related to the criminal case, Leslie Starr Barrows was only **owed** about **$11,000** after payments as of March 2nd, 2022. Despite this, Defendant Lori L. DeAngelis still **generously awarded** $**25,000** each, **more than** Leslie Starr Barrows asked. Defendant Lori L. DeAngelis' behavior demonstrated her belief that in her family court, she has the absolute authority to unconditionally compel payment, even in a prepayment form, at any time and without needing to provide reasons, as long as Plaintiff's financial account still has an available balance to be withdrawn. Defendant Lori L. DeAngelis' found herself in a new function in the family court, a debt/prepayment collector for her fellow family court attorneys."

63.   The pleading [ECF No. 60 ¶27-¶44, PageID 1097-1098] clearly showing that, Plaintiff additionally pleaded that,

> "Fees awarded **must be** reasonable and necessary, **even if** the statute or contract says "reasonable fees" or just "attorneys fees.""
>
> "If recoverable fees are qualified as "incurred fees", fee award **must be** reasonable, necessary and **incurred**..."
>
> "A party may not recover attorney's fees from the adverse party **unless authorized by statute**…"
>
> "Texas Disciplinary Rules of Professional Conduct Rule 1.04 **does not allow any lawyer enter into an arrangement to collect an unconscionable fee**. "A fee is **unconscionable** if a competent lawyer could not form a reasonable belief that the fee is **reasonable**." "Factors that may be considered in determining the reasonableness of a fee include… the following:(4) the amount involved and the results **obtained**." The prepayment of attorney's fee is not reasonable fee per 1.04(b)(4)"
>
> "When a party seeks an award of attorneys' fees, that party bears the burden of submitting evidence of the hours work**ed** and the rate paid,"
>
> In Plaintiff's family law case, it is unlawful and the judge lacks legal authority to award interim attorney fees to both attorneys.

> In Plaintiff's family law case, it is unlawful and the judge abuses the discretion
> to award interim attorney fees without providing factual evidence that satisfies
> the "**reasonable**" clause.
> In Plaintiff's family law case, it is unlawful and the judge lacks authority to
> award interim attorney fees with **prepayment**.
> In Plaintiff's family law case, it is unlawful and the judge lacks jurisdiction to
> issue an interim order compelling Plaintiff to directly pay his own attorney
> fees. The family court has no jurisdiction to assist the attorney to
> secure/collect non-billed payment or **prepayment** from their own client in the
> absence of that attorney's pleading. The judge lacks jurisdiction over the
> subject matter of commercial contract relations between the service provider
> and its consumer, particularly given the clear absence of pleading.

64.   Whether Plaintiff was compelled to pay prepayment attorney fees is a critical question of fact. Whether DeAngelis had the jurisdiction to compel prepayment attorney fees, is a critical subsequent question of laws to determine whether judicial immunity be applied to DeAngelis.

**D. Omitted facts related to the April 13, 2022, and April 26, 2022, interim QDRO orders, which were rendered in the pre-trial stage.**

65.   The Order failed to conclude the findings of fact that the April 13 2022 and April 26, 2022 interim QDRO orders were rendered in pre-trial stage, not in the post-trial stage.

66.   Whether the April 13 2022 and April 26, 2022 interim QDRO orders were rendered in pre-trial stage is a critical question of fact. This fact is used to determine a critical subsequent question of law: whether these QDROs are pursuant to Texas statute.

67.   Plaintiff has alleged that, "In Plaintiff's family law case, it is unlawful, and the judge **lacks authority to issue a QDRO** in **an unappealable interlocutory order before a final divorce decree** following a trial" [ECF No. 60 ¶49, PageID 1099]. The Order omitted the essential legal term "QDRO" in its conclusion of allegations, merely saying, "appear to be (1) 'an interim order...' and (2) a 'spousal support order'."

68.   Omitting the alleged essential fact that these two alleged QDRO orders were rendered as unappealable interlocutory orders in pre-trial stage is a critical defect of this Order. This critical question of fact will determine a critical question of law: whether these two alleged QDROs are unlawful.

**E.  Shied away from referencing the essential alleged legal terms "QDRO," "ERISA," "RICO," and 18 U.S.C. § 664, but mischaracterized to "launder money"**

69.   The Order intentionally or unintentionally shied away from referencing the essential alleged legal terms "QDRO," "ERISA," "RICO," and "18 U.S.C. § 664".

70.   "QDRO" appears 44 times in the pleading. "ERISA" appears 22 times in the pleading. "RICO" appears 165 times in the pleading. "664" appears 19 times in the pleading. "Launder money" appears 0 time in the pleading.

71.   The pleading [ECF No. 60 ¶1-¶7, PageID 1088-1089] clearly showing that, Plaintiff pleaded that,

> The Employee Retirement Income Security Act (ERISA) is Federal law formulated with the intent to safeguard retirement account assets. ERISA restricts the use of these assets to specific purposes, including providing benefits to ex-spouses or dependents. But certain members of SBOT managed to establish RICO schemes to abstract these assets for their own use over several decades, engaging in a continuous series of RICO racketeering activities (mainly 18 U.S.C. § 1341, 18 U.S.C. § 1343 and 18 U.S.C. § 664) under the protection of their conspirators. This suit exposes a Scandalous Case of the Decades to this Honorable Court.
>
> This lawsuit originates from allegations against certain DFW family court attorneys/judges in Plaintiff's case. They were alleged to have manipulated QDRO orders to illicitly secure attorney's fees from Plaintiff's out-of-state retirement accounts, assets shielded by ERISA from such prohibited usage. Upon discovering this, Plaintiff found that knowledgeable attorneys conspired in coordination to hide the crime.
>
> Additionally, Plaintiff also uncovered a decade-long and widespread pattern of RICO racketeering activity affecting victims statewide, escalating the issue to a matter of public concern. The scope and duration of these alleged RICO racketeering activities present a significant public threat. The danger is immense when legal professionals exploit public trust, unlawfully obtaining millions, and then cover up their actions while proclaiming them lawful.
>
> The alleged RICO schemes consisted of a number of mail fraud and wire fraud offenses and ultimately amounted to acts of "theft or embezzlement from employee benefit plan." These RICO schemes often involve using unlawful QDRO orders to withdraw money from retirement accounts, deliberately circumventing ERISA restrictions through the application of legal skills. The extracted funds are typically divided between the attorneys of both parties as a "say-nothing" incentive. Even though either the order or the procedure often breaches legal boundaries, neither attorney appeals the order that benefits themselves. Rather than advocating for their client's interests, they choose to divert the money for their own business interests, relying on SBOT's self-regulated disciplinary system to shield their conspiracy in the event of being caught.

72.   The pleading [ECF No. 60 ¶79, PageID 1105] clearly showing that, Plaintiff additional
      pleaded that,

>      These members of SBOT knowingly used an interlocutory QDRO order to
>      obtain their fees from employee pension benefit plans, which are protected by
>      ERISA specifically to preserve funds for alimony, child support, or the
>      division of marital property. Texas statute does not permit interlocutory
>      QDRO orders, and Federal ERISA regulations do not allow employee pension
>      benefit plans to disburse funds for the purpose of attorney's fees incurred
>      during dissolution of marriage suit. There is no greater form of
>      MONOPOLIZATION than possessing the knowledge and power to commit a
>      crime while preventing others from understanding it.

73.   The pleading [ECF No. 60 ¶79, PageID 1163] clearly showing that, Plaintiff additional
      pleaded that,

>      **Primary substantive contraventions** of Federal law
>      a. A breach of fiduciary duty under 29 U.S.C. § 1056(d)(3)(H)(i), unlawfully
>      and willfully use mail fraud and wire fraud to abstract assets from the
>      employee pension benefit plan for the use of another, as part of a conspiracy

74.   The Order erroneously concludes the finding of allegations that by saying,

>      The "orders" referenced in Yan's pleadings **appear to be** (1) "an interim
>      order compelling Plaintiff to directly pay his own attorney fees" and (2) a
>      "spousal support order" [ECF No.148, PageID 2167]
>      …
>      He also brings claims under the Racketeer Influenced and Corrupt
>      Organizations Act ("RICO"), alleging that DeAngelis was in cahoots with the
>      State Bar Defendants to restrict market competition for legal services,
>      **launder** money…[ECF No.148, PageID 2166]
>      …
>      Liberally construed, Yan alleges that the Attorney Defendants were privy to a
>      **larger conspiratorial scheme** to **launder money** [ECF No.148, PageID
>      2175]
>      …
>      His fanciful, conclusory allegations suggest the Attorney Defendants
>      **laundered money** from Judge On the face of the record, attorneys' fees
>      orders to purchase real estate [ECF No.148, PageID 2176]
>      …
>      Yan cannot keep a factually-devoid RICO claim on life support
>      …
>      It's a hard row to hoe when attempting to allege a plausible claim that
>      members of the Texas judiciary teamed up with attorneys, federal judges,
>      members of the Texas State Bar, and private entities to **launder** money via
>      various court orders. [ECF No.148, PageID 2177]

75.     This Court should note that "laundering of monetary instruments" U.S.C. § 1956 is distinguished from "embezzlement from employee benefit plan" U.S.C. § 664. On the face of the record, the legal term "launder money" or "U.S.C. § 1956" never appears in Plaintiff's pleading. Additionally, on the face of the record, wherein the name DeAngelis was referred to in the pleading, there was never a word "real estate" associated with DeAngelis.

76.     How could it be that in fact, Plaintiff alleged a conspiratorial RICO scheme for primary substantive contraventions of U.S.C. § 664, but this Order, under liberal construction, ended up recharacterizing the core of the pleading as a "conspiratorial scheme to launder money," appears a mystery to Plaintiff.

77.     If someone sued for bank robbery but their claim was denied by the court, which concluded that the claim was fanciful, conclusory, and factually devoid, failing to establish a case for rape, how would the public view this appearance?

78.     "The Court does not, however, place any limits on when recharacterization may occur, but to the contrary treats it as a routine practice which may be employed "**to avoid an unnecessary dismissal**," "to avoid inappropriately stringent application of formal labeling requirements," or "**to create a better correspondence** between the substance of **a *pro se* motion's claim** and its underlying legal basis.""[14].

79.     Plaintiff objects to any recharacterization contrary to what Plaintiff actually alleged. Despite Plaintiff's rebuttal argument, the recharacterization in prior order has created a worse correspondence between the substance of the pro se complaint's claims and its underlying legal basis. It subsequently aided an unnecessary dismissal.

**F.   Omitted facts that Plaintiff alleged and presented evidence of a second 18 U.S.C. § 664 predicate from another interim QDRO ordered by the associate judge**

80.     The Order failed to conclude the findings of allegations that the Plaintiff alleged two predicates.

81.     On the face of the record, the pleading [ECF No. 60 ¶125, PageID 1118] clearly showing that, Plaintiff pleaded that,

Plaintiff holds additional court record evidence dating back nine years, relating to further family court victims. Plaintiff alleges that this evidence supports the claim

---
[14] *Castro v. U.S.*, 540 U.S. 375, 385 (2003)

that in family court, the practice of family court business participants using an **interlocutory QDRO order to** obtain interim attorney fees from federally protected retirement funds—sometimes in prepayment form—is a deeply entrenched, widespread, and statewide RICO conspiracy scandal. This order is attached hereto as **Exhibit 9**.

82. Exhibit 9 shows another interlocutory QDRO order rendered to award interim attorney fees.

83. The response [ECF No. 108 ¶16, PageID 1682] clearly showing that, Plaintiff argued that,

> "Section 1961(5) does indicate that Congress envisioned circumstances in which **no more than two predicates would be necessary to establish a pattern of racketeering** — otherwise it would have drawn a narrower boundary to RICO liability," H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237 (1989). "As this Court stressed in Sedima, in rejecting a pinched construction of RICO's provision for a private civil action, adopted by a lower court" H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 249  (1989). "Congress' decision not explicitly to limit RICO's broad terms strongly implies that Congress had in mind no such narrow and fixed idea of what constitutes a pattern as that suggested by amici here." H. J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245 (1989). Time and again, the Supreme Court of the United States (SCOTUS) has reversed numerous decisions by lower courts that attempted to narrowly construe or limit the provisions of RICO for private civil actions.

## VII.    Omitted Issues of Law

84. There are several essential questions of law appears in the pleading:
    a. ERISA and *Younger*
    b. The legitimacy of interim/interlocutory QDRO order in Texas
    c. The judicial immunity/clear absence of all jurisdiction
    d. The Judicial Immunity/associate judge is not judge per legal definition

### A.  ERISA and *Younger*

85. The Order states that "even if …, the Court would still abstain … under the Younger doctrine." DeAngelis was sued in her individual capacity as a member of SBOT in the RICO and antitrust claims, the injunctive and declaratory reliefs weren't directed toward DeAngelis's official capacity. Plaintiff didn't seek injunctive or declaratory relief in the third 1983 claim, against DeAngelis's official capacity. Younger doctrine doesn't apply.

86. Additionally, "the Supreme Court has found *Younger* abstention appropriate even where a federal plaintiff brings a substantial claim of federal preemption, it has left open the possibility that **abstention** may be **inappropriate** where the plaintiff brings a **facially**

**conclusive claim**….The rationale behind this exception is that there is no significant state interest at issue "when it is clear that the state tribunal is acting beyond the lawful limits of its authority.""[15]. The Federal Circuit court "finds that **the issue of ERISA preemption** is "facially conclusive," Younger abstention **does not** apply" id. *Medley[16]*.

**B. The legitimacy of interim/interlocutory QDRO order in Texas**

87.   On the face of the record, the pleading [ECF No. 60 ¶45-49, PageID 1098-1099] clearly showing that, Plaintiff pleaded that,

   a.   TX Fam. Code. Sec 9.102: A **party** to a **decree of divorce** or annulment may petition the court for a **qualified domestic relations order** or similar order
   b.   A QDRO must be a final, appealable order; a QDRO is a species of post-divorce enforcement or clarification order; a QDRO must be a final and appealable order and must be post-divorce;
   c.   It is unlawful, and the judge lacks authority to issue a QDRO in an unappealable interlocutory order before a final divorce decree following a trial.

88.   On the face of the record, the response [ECF No. 140 ¶62, PageID 2102] clearly showing that, Plaintiff argued that,

   "The only power ERISA grants to a pension plan administrator is the power to review an existing order to determine whether it is a qualified domestic relations order under the Act. See **29 U.S.C. § 1056(d)(3)(G)(i)(II)** ("[T]he plan administrator shall determine whether such an order is a qualified domestic relations order and notify the participant and each alternate payee of such determination."). Thus, **any power the trial court had to enter the post-divorce order must come from state law**. See Hogle v. Hogle , 732 N.E.2d 1278, 1284 (Ind. Ct. App. 2000) ("Since ERISA does not provide an enforcement mechanism for collecting judgments, state law methods for collecting money generally remain undisturbed by ERISA."). **If no state law authorizes the order**, ERISA does not apply, and **the trial court still lacked authority to enter the order at issue**." *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018).

89.   Plaintiff had upheld a very firm legal position that the Texas Family Code only grants statutory standing to a petition for QDRO when a party has a decree of divorce. Lori DeAngelis' court lacked authority to enter the interim/interlocutory QDRO in pre-trial stage. Without a decree of divorce, neither party has a standing to a petition for QDRO in pre-divorce status.

---

[15] *Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368, 375 (D. Mass. 2008)
[16] *Colonial Life Accident Insurance Company v. Medley*, 584 F. Supp. 2d 368, 375 (D. Mass. 2008)

90.    The Order erroneously reframed that Plaintiff tried to "sue in federal court for unfavorable outcomes in a state court proceeding." This interim/interlocutory QDRO order is not legitimate. This interim/interlocutory QDRO order is void. This interim/interlocutory QDRO order is unlawful. Simply because no Texas State law authorizes an interim/interlocutory QDRO order, the Supreme Court of Texas has ruled that "ERISA does not apply" [17]

91.    Other than the legitimacy characterization of the interim/interlocutory QDRO order itself, Plaintiff's situation is even worse because it was rendered by an attorney, not by a judge. Plaintiff's April 26, 2022 order was an outcome of extrinsic and intrinsic fraud upon the court.

92.    Among all the other words that can be used to characterize the Plaintiff's April 26, 2022 order, "extrinsic," "intrinsic," "unlawful," "void," etc. "Unfavorable" is probably the friendliest characterization and the least legal terminology.

93.    Plaintiff urges this Court to determine the legitimacy of his April 26, 2022 order.

**C.  The Judicial Immunity/clear absence of all jurisdiction**

94.    Plaintiff did not challenge DeAngelis's "jurisdiction or authority," as the Order erroneously concluded [ECF No. 148, PageID 2167]. On the face of the record, Plaintiff has alleged that "these rulings were made without any jurisdiction or authority" [ECF No. 60 ¶154, PageID 1124], and alleged that DeAngelis' acts with "lacks jurisdiction" and "lacks legal authority" [ECF No. 60, PageID 1098-1102].

95.    This Order omitted to address the question of law: whether Judicial Immunity should apply to DeAngelis, when a "clear absence of pleading" and a "clear absence of all jurisdictions" were evidently alleged in the pleading.

96.    This Court erroneously OVERRULES Plaintiff's first objection by saying "litigants may not turn to federal court to challenge a state court's decrees under the banner of "jurisdiction and authority" without plainly explaining how the aggrieving orders were unlawful." [ECF No. 148, PageID 2169].

---

[17] *Dalton v. Dalton*, 551 S.W.3d 126, 138 (Tex. 2018)

97.     However, if this Court truly liberally construed and holds Plaintiff's pleadings to an
        extremely lenient standard, this Court should see Plaintiff has petitioned Family Code
        Sec. 9.102 as standard of review in this pleading. "*PROCEDURE. (a) A party to **a decree**
        **of divorce** or annulment may **petition** the court **for** a qualified domestic relations order
        or similar order.*" [ECF No. 60, ¶45 PageID 1099].

98.     Even though Plaintiff is a first-generation immigrant with English not being his native
        language, and without any US degree, Plaintiff believes he has plainly explained to this
        Court that, pursuant to Texas statute, a lawful QDRO requires a party with a decree of
        divorce as standing and a subsequent petition for QDRO as a pleading/claim.

99.     When Leslie filed the motion for interim attorney fees, DeAngelis held a hearing on April
        13, 2022. After DeAngelis learned that Plaintiff stated he has $100,000 available in a
        401(k), she made a sua sponte decision to grant the relief of dispensing money from the
        401(k) to award both attorneys.

100.    All the evidences in the Exhibits provides supportive facts: during the April 13, 2022
        hearing, there was no decree of divorce (lack of standing); there was no petition/claim for
        QDRO (it was a petition merely for interim attorney's fees; lack of pleading/claim); there
        was no notice of hearing and hearing for spousal support (lack of Due Process); there was
        no Texas statue authorizing "pre-divorce" QDRO (lack of authority).

101.    Plaintiff's April 13, 2022 order demonstrates the darkest secret of family court system. At
        the sua sponte moment when a judge entitles attorneys to relief of attorney's fees, the
        family court becomes an inquisitorial system. Both counsels abandoned the argument
        about how unlawful the interim QDRO is, for their own interest in obtaining fees.

102.    This Order correctly cited *Turner v. Raynes* by saying "If a … judge..try a criminal
        case, he would be acting in the clear absence of jurisdiction and would not be immune
        from liability for his action." But the Court failed to apply the alleged and proven facts
        that Lori DeAngelis tried a matter of incurred attorney's fees from a criminal case.

   **D. The Judicial Immunity/associate judge is not judge per legal definition**

103.    Because DeAngelis is an associate judge, it has left open the possibility of challenging
        immunity under other legal theories. FAM. CODE § 201.017 (cited by the Order) doesn't
        provide a concrete shield of judicial immunity as presumed in this case.

104. This Court failed to distinguish between an associate judge and a state-elected judge.

105. Texas Government Code, Sub-chapter C, Administrative Judicial Regions,

> Sec. 74.041(2) "Presiding judge" means the **presiding judge** of an **administrative region**.

> Sec. 74.042(a) The state is divided into 11 administrative judicial regions.

106. It is held that "[a]ssociate judges were formerly called **family law masters**…We use the terms **interchangeably**… an associate judge of the family law court **does not have the power** to **render judgment**." *Stein v. Stein*, 868 S.W.2d 902, 904 (Tex. App. 1994).

107. Following Texas precedents is crucial to determine the role of an associate judge in family court:

> "In Texas, **all trials** are conducted **before judges**. **TEX. CONST. art. V, § 1**. The **Texas Constitution does not vest** masters, referees, or **associate judges with the authority to act as judges**. Only when a statute permits a litigant to waive his or her constitutional right to trial before a judge, may a person who is not a judge adjudicate the merits of the case." *In re D.L.M.*, 982 S.W.2d 146 (Tex. App. 1998).

> "However, the right to a trial **de novo before an elected judge** was **designed to conform the proceedings to the constitutional grant of powers to the judiciary**. *See In re D.L.M.*, 982 S.W.2d 146, 148 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Associate judges **are creatures of statute** and **are not vested** with the **authority** to render a final order **under the Texas Constitution**. *See* TEX. CONST. art. V, § 1; TEX. FAM. CODE ANN. § 201.104(b)." *In re L.D.C.*, NUMBER 13-17-00053-CV, 13-12 (Tex. App. Dec. 13, 2018).

> "**When a judge has no authority to render an order or judgment, that order or judgment is void**." *Vetri Ventures, LLC v. Westridge Eagles Nest Owners Ass'n*, No. 05-21-01172-CV, 5-6 (Tex. App. Mar. 15, 2024).

108. Tex. Fam. Code. §201.007 clearly defined the rendition "Powers of Associate Judge" as: Except as limited by an order of referral, an associate judge may (14) without prejudice to the right to a de novo hearing before the referring court under Section 201.015 and subject to Subsection (c), render and sign: (**A**) a final order agreed to in writing as to both form and substance by all parties; (**B**) a final default order; (**C**) a temporary order; or (**D**) a final order in a case in which a party files an unrevoked waiver made in accordance with Rule 119, Texas Rules of Civil Procedure, that waives notice to the party of the final hearing or waives the party's appearance at the final hearing;

109. The above Texas precedents make it clear that Texas associate judges in family court are creatures of statute. Associate judges do not have full constitutional judicial power as regular judges do. They only have statutory judicial power expressly granted by the

statute, in this case, Section 201.007 of the Family Code. However, "[a]ssociate judges do not have the power to **render** final judgment **outside the context** of certain limited exceptions listed in section **201.007** of the Family Code." *Graham v. Graham*, 414 S.W.3d 800, 801 (Tex.App.–Houston [1st Dist.] 2013, no pet.)

110.  For the same reason, associate judges do not have full judicial immunity power as the judges do. Their immunity is expressly granted by the statue.

111.  In Texas, an associate judge's judicial power is limited to the associate judge's court only; it does not extend to the district judge's referring court. Plaintiff believes the Honorable Judge in this Court should be familiar to tell the distinguish, because a similar legal principle applied to judicial power between Federal district judges' court and the magistrate judge's court.

> "While our case law has called the authority of the judge to preside a jurisdictional issue, we now disavow that characterization, because as **we have explained, jurisdiction or judicial power is vested in courts, not individuals.**" *Davis v. State*, 956 S.W.2d 555 (Tex. Crim. App. 1997) "**Jurisdiction is the power of a court** to decide a case. *See Episcopal Diocese of Fort Worth v. Episcopal Church*, 422 S.W.3d 646, 655 (Tex. 2013) ("The most fundamental restraint on judicial power is jurisdiction-our very authority to decide cases **in the first place-and if we lack it, we lack it.**");" *In re A.E.B.*, NO. 01-19-00517-CV, 15-16 (Tex. App. Jul. 13, 2021)

112.  Rendering a temporary **QDRO** order in the associate judge's court is outside the context of section 201.007(14) of the Family Code. When Lori DeAngelis sua sponte rendered a temporary QDRO order, she deprived Plaintiff of his constitutional rights because Plaintiff has a constitutional right to a trial before a judge, and a decree of divorce and its enforcement or clarification order are exclusive byproducts rendered by the trial judge. "A QDRO is a species of post-divorce enforcement or clarification order." Id. *In re D.L.M.*

113.  Plaintiff asserts that DeAngelis has no statutory judicial authority to sua sponte step into the trial judge's exclusive constitutional judicial power territory. "And if we lack it, we lack it." Id. *In re A.E.B.*

114.  It is obvious that Plaintiff was deprived of $25K from a federally ERISA-protected asset. This $25K monetary injury is due to Lori DeAngelis initial usurping constitutional judicial power in her associate judge court. Through a rendition of interim QDRO order, Lori DeAngelis also took away Plaintiff's constitutional right of having trial relief heard

in the final trial before the trial judge. Plaintiff correctly sued DeAngelis in her official capacity under the ultra vires doctrine.

115.   This Order erroneously overrules Plaintiff's objection by citing FAM. CODE ANN. § 201.017. The judicial immunity expanded to Texas family court associate judges is not the same as the original federal common law judicial immunity; it is expressly granted by statute under § 201.017.

116.   FAM. CODE. § 201.017 is a statutory expansion of the scope of judicial immunity. It doesn't redefine existing immunity. It expands the scope of who is covered under existing immunity. But a Texas statue cannot supersede the Texas Constitution.

117.   When an associate judge causes damage to people and they seek remedy under "Tex. Const., Art. 1 § 13 and 19", Tex. Const., Art. 1 § 29 voids FAM. CODE. § 201.017.

118.   Texas Constitution, Art. 1 § 29:

> Sec. 29.  BILL OF RIGHTS EXCEPTED FROM POWERS OF GOVERNMENT AND INVIOLATE.  To guard against transgressions of the high powers herein delegated, we declare that every thing in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, shall be void.

119.   For decades, members of SBOT who hold the high power delegated by the Texas people have repeatedly transgressed by expanding immunity within the Texas government. Today, Plaintiff asserts Tex Const., Art. 1 § 29, to plead that FAM. CODE ANN. § 201.017 is void in his case and seek remedy guaranteed under Tex. Const., Art. 1 § 19.

## VIII.   This Court erroneously issued final judgment

### A.   April 23, 2024 judgement, [ECF No. 149], is not a final, appealable judgement

120.   "In a lawsuit which contains multiple claims and/or multiple parties, a final judgment exists only if it meets one of two conditions: The judgment must either adjudicate all claims, rights, and liabilities of all parties or the district court must expressly conclude that no just reason exists for delaying the entry of final judgment and must expressly order the entry of that judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure." *Bader v. Atlantic International, Ltd.*, 986 F.2d 912 (5th Cir. 1993).

121.   Neither of the exceptions is met in this case. There are multiple parties, multiple claims here. The honorable district judge neither expressly determined that no just reason for the delay of final judgment existed nor directed that the judgments be deemed final as to any

party. Absent those express statements, which are required by Rule 54(b), the judgment and its preceding order must adjudicate all of the claims and all of the rights and liabilities of all of the parties. This, they do not do. The order dispose only claims against the defendants who filed motions to dismiss. It does not even discuss the RICO, Antitrust and 1983 claims (First, Second and Fifth) against the Pigg, who filed an answer and never asserted any defense pursuant to Rules 12(b)(1) and 12(b)(6).

122.   Consequently, this order is interlocutory. This order erroneously concluded that after "the Court GRANTS all remaining motions…all other Defendants have been terminated at this juncture", therefore it erroneously ORDERED "that this civil action is DISMISSED." And the subsequent judgement erroneously dismissed this civil action, noncompliant to FRCP Rule 58.

123.   "[T]he Supreme Court has recently restated the general test for finality as being a decision "that `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."'" *Newpark Shipbuilding Repair, v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984). Plaintiff asserts this Judgement doesn't meet the finality rule.

## IX.   Prayer for relief

For all of the reasons stated in Plaintiff's Memorandum of law in support, the Court should grant Plaintiff's motion.

Respectfully submitted,

/s/ Conghua Yan
_____

[Conghua Yan]
[2140 E Southlake Blvd, Suite L-439]
[Southlake, Texas 76092]
[214-228-1886]
[arnold200@gmail.com]

## <u>CERTIFICATE OF SERVICE</u>

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or all parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (May 20, 2024).


/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]
