FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| | ) |
| The State Bar of Texas et al, | ) |
| | ) |
| Defendants. | ) |

**MOTION FOR SHOW CAUSE WITH EMERGENCY PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF NORTHERN DISTRICT OF TEXAS:

COMES NOW Plaintiff, Conghua Yan, and respectfully moves this Honorable Court for a motion for show cause with emergency preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and this Court's inherent power.

## A. FACTUAL BACKGROUND

1. Defendant Leslie Starr Barrows (aka "Barrows" or "Leslie") is represented by counsel Caroline Marie Cyrier in this case. Plaintiff had no direct engagement with Barrows.

2. On March 28th, 2024, Barrows was subpoenaed, as an ex-counsel of opposing party to testify in Plaintiff's ongoing Texas State District Court family law case. Barrows appeared and testified on the standing.

3. On the same day that Barrows returned, she began posting on the social media platform Facebook to retaliate against Plaintiff for subpoenaing her. In her posts, Barrows falsely claimed she was under a safety threat from Plaintiff due to this Federal RICO case. She made exaggerated and false statements related to this RICO case and incited her Tarrant County judge and attorney Facebook friends—who might be named as potential RICO co-conspirators in the discovery stage of this case—to strip Plaintiff of child custody. This was an

attempt to damage Plaintiff's constitutional parental-child relationship merely because Plaintiff sued her in this RICO case. Barrows' post is attached as **Exhibit 1**

4.  This account is owned by Barrows. Evidence attached as **Exhibit 2**.

## B. LEGAL STANDARD

5.  "Parties seeking preliminary injunctions to demonstrate that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm, (3) the balance of hardships tips in their favor, and (4) the injunction is in the public interest." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013), citing Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

6.  "The same legal standard governs the grant of a preliminary injunction and a temporary restraining order." *Levesque v. State of Me.*, 587 F.2d 81 (1st Cir. 1978).

7.  "An attorney's ethical obligations to refrain from **making prejudicial comments** about a **pending trial** will exist whether a gag order is in place or not. In this case, the driving interest of the district court was to preserve the *fair trial interests of the parties in all three related cases*. As the district court pointed out, trial participants, like attorneys, "are privy to a wealth of information that, if disclosed to the public, could readily jeopardize the fair trial rights of all parties."" *U.S. v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000).

8.  "In sum, we conclude that in light of Gentile, "clear and present danger" cannot be the appropriate standard by which we evaluate gag orders imposed on trial participants. Instead, the standard must require a lesser showing of potential prejudice. If the district court determines that there is a "**substantial likelihood**" (or perhaps even merely a "**reasonable likelihood**," a matter we do not reach) that extrajudicial commentary by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available." *U.S. v. Brown*, 218 F.3d 415, 428 (5th Cir. 2000).

9.  "**To be sure**, we are mindful that the government may have an interest in **regulating the speech of attorney**s, given their unique role as officers of the court. See, e.g. , Gentile v. State Bar of Nevada , 501 U.S. 1030, 1074, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) ("[A lawyer is] an officer of the court, and, like the court itself, an instrument ... of justice. ... [T]he speech of lawyers representing clients in pending cases may be regulated under a less

demanding standard than that established for regulation of the press[.]" (citations and internal quotation marks omitted) )." *Benson v. Tyson Foods, Inc*., 889 F.3d 233, 235 (5th Cir. 2018)

## C. ARGUMENTS
### I. Plaintiff is Likely to Succeed on the Merits of His Claims.

10. It is an indisputable fact that the Petitioner did not "sue me [Barrows] and 15 defendants... in federal court." This Court can easily determine the number is actually 10. Barrows' misleading social media post, as seen in Exhibit 1, exaggerated the number by 50%. The reasonable expectation for an attorney is that he or she should be able to count accurately. Barrows' intentionally misleading social media post constitutes libel, aiming to damage Petitioner's reputation.

11. It is an indisputable fact that the statement of "All cases/claims dismissed" is false, as this federal case has not been dismissed. Barrows' misleading social media post, as seen in Exhibit 1, falsifies the status of this case. The reasonable expectation for an attorney is that he or she should be able to determine whether a case has been dismissed or not. Barrows' intentionally misleading social media post constitutes libel, aiming to damage Petitioner's reputation.

12. It is an indisputable fact that on March 28, 2024, Barrows misled her social media audience with the statement, "This man is the reason I lock the doors at my office." Barrows has falsely portrayed Petitioner as a safety threat, despite the fact that Petitioner has **never met** her outside of scope of court proceedings. This libelous statement damages Petitioner's reputation.

13. It is an indisputable fact that Barrows has incited her audience with the inflammatory statement, "**he should have not full custody of his daughter**" on March 28, 2024, when the family court trial was still pending. Barrows' incitement potentially prejudiced this pending case.

14. Barrows' RICO case was arisen from the crime she committed in the family court case, therefore this Court should take action to preserve the *fair trial interests of the parties in all related cases*.

15.   Furthermore, Barrows, being an officer of the court of this pending family court case, should not abuse her attorney-client privilege by disclosing private information ("his daughter") from the case to her own social media platform, including but not limited to the facts that Petitioner has only one child involved in the case, and that the child is female.

16.   Barrows' social media post, as seen in Exhibit 1, falsifies the information relating to this federal case. The public is most likely to give more weight to the misleading and inflammatory statement that attorney made, therefore Barrows' libelous statement has substantial likelihood and/or reasonable likelihood of prejudice towards Petitioner in all related cases.

17.   Barrows made extrajudicial commentary which will undermine a fair trial. An incitement stating "he should not have full custody of his daughter" will disturb the Petitioner's personal family privacy, affect child support payments. Both outcomes have a substantial and/or reasonable likelihood of leading to prejudicial effects on the Petitioner's litigation capacity and/or performance in this federal case. As a pro se litigant, any extrajudicial disturbance of his personal privacy will further undermine his zealous litigation capacity and/or performance.

18.   To the best of Plaintiff's knowledge and belief, Barrows has more than several dozen Tarrant County family court staff members on her Facebook friends list, including but not limited to Tarrant County family court judges, bailiffs, court reporters, local law enforcement, and family court service staff. Barrows has a selective audience on her Facebook, the majority of whom are in Tarrant County, and a high percentage are involved in legal practices. Barrows' post constitute litigation outside the court.

19.   Filing a civil case in Federal court is every American people's constitutional petition right, protected under the First Amendment. Barrows, who is represented by counsel and is herself an attorney, has incited actions to strip Plaintiff of parental custody rights and to harm both Plaintiff and his child, merely because Plaintiff is exercising petition right in this federal court. Such behavior is **an extrajudicial conduct** that this Court should not **tolerate**. Barrows' Facebook post fully demonstrated that Barrows believed she is a privileged individual. Additionally, by portraying Plaintiff as a threatening person, her misleading social

media post constitutes **litigation outside of court** and could potentially impact the juror and witness opinion relating to Plaintiff's state case and federal case. This risk grows especially under the background that the Tarrant County DA office has a policy set forth to refuse to open perjury criminal complaints.

II. Plaintiff is likely to suffer irreparable harm in the absence of preliminary relief

20. An attorney's ethical obligations to refrain from **making prejudicial comments** about a **pending trial** always exist. However, without a preliminary relief in place, Defendant's unhinged extrajudicial conduct has a substantial and/or reasonable likelihood of causing irreparable harm to Petitioner.

21. The statement "[He] should not have full custody of his daughter" constitutes an incitement that inflicts irreparable harm on Petitioner. Any time lost or taken away from a parent-child relationship is considered irreparable harm. Any fear of loss is irreparable harm.

III. The Balance of Hardships tips in Petitioner's favor

22. Other federal courts under Fifth Circuit held, "Without Court-ordered limitations, however, the quantity and — more importantly — the kind of risky attention that appeared immediately following the indictment could have continued unabated. Undeniably, unstructured and unregulated pre-trial publicity in this case carries — then and now — a substantial likelihood of materially prejudicing all common sense notions of fair trial. See Gentile,501 U.S. at 1075, 111 S.Ct. at 2744 (finding that states may constitutionally prohibit statements of lawyers that carry a "substantial likelihood" of material prejudice)." U.S. v. Davis, 902 F. Supp. 98, 103 (E.D. La. 1995).

23. When Defendant Barrows makes comments like those in Exhibit 1 on social media, her unstructured and unregulated pre-trial publicity carries both then and now a substantial likelihood of materially prejudicing all common sense notions of a fair trial. Due to the Defendant's wide social media connections within the local Tarrant County law community, Plaintiff is intimated by her extrajudicial conduct. Petitioner is the only party who might face future hardship without this relief. Graning a injunctive relief in favor of Petitioner.

### IV.  Fifth Circuit and other Federal courts has recognized the parental right is protected under privacy clause under constitutions

24. Florida federal court held that,

"The Florida Constitution's express right to privacy states: "Every natural person has the right to be let alone and free from governmental intrusion into the person's private life, except as provided herein." Art. I, § 23, Fla. Const. "In enacting this freestanding constitutional provision, the citizens of Florida opted for more protection from governmental intrusion than that afforded under our federal constitution. The state constitutional right to privacy is much broader in scope, embraces more privacy interests, and extends more protection to those interests than its federal counterpart." Von Eiff v. Azicri, 720 So.2d 510, 514 (Fla. 1998) (citations and quotations omitted). Florida's constitutional right to privacy recognizes **the zone of autonomy around a nuclear family into which a judge, legislator, or official, no matter how well intentioned, simply cannot go**. This zone protects "**the fundamental right of parents to make decisions concerning the care, custody,  and control of their children**." D.M.T. v. T.M.H., 129 So.3d 320, 336 (Fla. 2013) (citing Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ). The only exception occurs if one of the members of the family is at risk of significant harm." *Castellat v. Pereira*, 225 So. 3d 368 (Fla. Dist. Ct. App. 2017).

25. Texas state court held that Texas Constitution protects personal privacy from unreasonable intrusion,

"We decide this case pursuant to the Texas Constitution. **While the Texas Constitution contains no express guarantee of a right of privacy, it contains several provisions similar to those in the United States Constitution that have been recognized as implicitly creating protected "zones of privacy."** Cf. Roe v. Wade,410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1972). Section 19 of the Texas Bill of Rights protects against arbitrary deprivation of life and liberty. TEX.CONST., art. 1, § 19. Section 8 provides the freedom to "speak, write or publish", and section 10 protects the right of an accused not to be compelled to give evidence against himself. TEX.CONST., art. 1, §§ 8, 10. Sections 9 and 25 guarantee the sanctity of the individual's home and person against unreasonable intrusion. TEX.CONST., art. 1, §§ 9, 25. Finally, the Texas Constitution protects the rights of conscience in matters of religion. TEX.CONST., art. 1, § 6 Each of these provisions gives rise to a concomitant zone of privacy. Cf. Griswold v. Connecticut,381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965). **We do not doubt, therefore, that a right of individual privacy is implicit among those "general, great, and essential principles of liberty and free government" established by the Texas Bill of Rights.** TEX.CONST., art. I, Introduction to the Bill of Rights. We hold that the Texas Constitution protects personal privacy from unreasonable intrusion. This right to privacy should yield only when the government can demonstrate that an

intrusion is reasonably warranted for the achievement of a compelling governmental objective that can be achieved by no less intrusive, more reasonable means." *Texas State Employees Union v. Texas Department of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1988).

26. Fifth Circuit acknowledged that personal privacy is a common law right of action,

> "**The importance of personal privacy to Texas's legal framework is also worth noting. The Texas Supreme Court has found that Texas's Constitution guarantees a right to privacy**. *Tex. State Emps. Union v. Tex. Dep't of Mental Health & Mental Retardation*, 746 S.W.2d 203, 205 (Tex. 1987). And when an unwanted invasion of privacy occurs, the Supreme Court has recognized a common law right of action. Billings v. Atkinson, 489 S.W.2d 858, 860 (Tex. 1973). "**The right of privacy has been defined as the right of an individual to be left alone, to live a life of seclusion, to be free from unwarranted publicity**." Id. at 859; see also Cain v. Hearst Corp., 878 S.W.2d 577, 578 (Tex. 1994). This court has recognized that right in a number of contexts, including situations that involve neither trespass nor eavesdropping. St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.–Tex., 249 F.3d 389, 394 (5th Cir. 2001) (finding that constant and abusive debt-collection calls "clearly support a cause of action for invasion of privacy.")." *Amin v. United Parcel Service*, No. 22-10295 (5th Cir. 2023).

27. Defendant's incitement post has solicited governmental intrusion of privacy towards Petitioner and minor's mutual parent-child relationships.

28. Texas attorneys file petitions in court every day. Why then should a self-represented pro se litigant, acting as their own counsel, lose child custody or be portrayed as a safety threat based on Defendant's exaggerated and falsified statements? Defendant's Facebook posts fully prove that she was not truthful and that her mind is filled with unethical and unlawful desires.

## V.   Tex. Const. art. 1, § 13 and 29 are remedy guarantees, including remedy for injury to reputation

29. In *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446 (Ind. 1999), Supreme Court of Indiana hold that,

> "Faith Thompson, Magna Carta: Its Role in Making of the English Constitution, 1300-1629, at 365 (1948) (quoting Sir Edward Coke, Second Institute 55-56 (4th ed. 1671)). Although neither the original federal Constitution nor its Bill of Rights contains a remedies clause, the drafters of many of the original state constitutions did include a **remedies clause**, and, as other states were added to the Union, many adopted similar provisions.

> Presently, thirty-nine state constitutions contain, or have been construed to contain, **remedies clauses**, providing that **state courts should be open to all and provide remedies for injury**…. These clauses, however, vary from constitution to constitution, protecting different combinations of the following interests: person, personal and real property, character and reputation, privacy, immunities, and other rights [….] At least thirty-four states, including Indiana, specifically identify reputation or character as a protected interest.
>
> > Ala. Const. art. I, § 13; Ark. Const. art. II, § 13; Colo. Const. art. II, § 6; Conn. Const. art. I, § 10; Del. Const. art. I, § 9; Fla. Const. art. I, § 21; Idaho Const. art. I, § 18; Ill. Const. art. I, § 12; Ind. Const. art. I, § 12; Kan. Const. bill of rights, § 18; Ky. Const. bill of rights, § 14; La. Const. art. I, § 22; Me. Const. art. I, § 19; Md. Const. declaration of rights, art. 19; Mass. Const. pt. 1, art. 11; Minn. Const. art. I, § 8; Miss. Const. art. III, § 24; Mo. Const. art. I, § 14; Mont. Const. art. II, § 16; Neb. Const. art. I, § 13; N.H. Const. pt. I, art. 14; N.C. Const. art. I, § 18; N.D. Const. art. I, § 9; Ohio Const. art. I, § 16; Okla. Const. art. II, § 6; Or. Const. art. I, § 10; Pa. Const. art. I, § 11; R.I. Const. art. I, § 5; S.C. Const. art. I, § 9; S.D. Const. art. VI, § 20; Tenn. Const. art. I, § 17; **Tex. Const. art. I, § 13**; Utah Const. art. I, § 11; Vt. Const. ch. I, art. 4; W. Va. Const. art. III, § 17; Wis. Const. art. I, § 9; Wyo. Const. art. I, § 8.
> >
> > *Boswell v. Phoenix Newspapers*, 730 P.2d 186, 190-95 (Ariz. 1986) (holding **Ariz. Const. art. 18, § 6** to be a **remedy guarantee**, including remedy for injury to reputation); *Richardson v. Carnegie Library Restaurant, Inc.*, 763 P.2d 1153, 1161 (N.M. 1988) (concluding that **a right to a remedy** is implicit in the **state constitution**), *overruled on other grounds, Trujillo v. City of Albuquerque*, 965 P.2d 305 (N.M. 1998).
> >
> > Twenty-three state constitutions specifically include a reputation interest: Alabama, Connecticut, Delaware, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Mississippi, Nebraska, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Tennessee, Texas, Utah, West Virginia, and Wyoming. *See* Ala. Const. art. I, § 13; Conn. Const. art. I, § 10; Del. Const. art. I, § 9; Ill. Const. art. I, § 12; Ind. Const. art. I, § 12; Kan. Const. bill of rights, § 18; Ky. Const. bill of rights, § 14; La. Const. art. I, § 22; Me. Const. art. I, § 19; Miss. Const. art. III, § 24; Neb. Const. art. I, § 13; N.C. Const. art. I, § 18; N.D. Const. art. I, § 9; Ohio Const. art. I, § 16; Okla. Const. art. II, § 6; Or. Const. art. I, § 10; Pa. Const. art. I, § 11; S.D. Const. art. VI, § 20; Tenn. Const. art. I, § 17; **Tex. Const. art. I, § 13**; Utah Const. art. I, § 11; W. Va. Const. art. III, § 17; Wyo. Const. art. I, § 8."

30. Defendant's incitement post has constituted injury of reputation towards both Petitioner and minor's mutual parent-child relationships.

31.     Petitioner is entitled for a remedy of relief to recover his damaged reputation which affects parent-child relationship due to Defendant's acts. In this motion, Petitioner requests an apology statement from Defendant to recover the reputation damage over social media.

### VI.     The injunction is in the public interest.

32.     Petitioner and Defendant are in adversarial relation in this case. Using a child as a pawn for retaliation clearly crosses the boundary of human being conscience. If someone filed a federal lawsuit, then the government retaliates by taking the child away from that person, that is called tyranny terrorism against parents. However, Defendant Barrows, an officer of the court, had made an incitement over social media, stating a court shall intrude personal privacy, take away parental right, merely because that person exercised his First Amendment petition right.

**33.**     Defendant Barrows has spent an excessive amount of time practicing in the Tarrant County family law sector, which has led her to believe that her cabal members possess unregulated power to intrude into the zone of autonomy surrounding a nuclear family. It is in the public interest to grant this relief and demonstrate to the public that any family lawyer who solicits the government to intrude upon the privacy of a family is engaging in what could be termed family law terrorism.

**34.**     Just as inciting violence, such as someone being killed, is recognized as a threat, inciting the losing of parent-child relationship is similarly a threat. One Texas State Rep calls it civil death penalty during a public hearing in Austin. This Court should exercise its inherent power to fully commit to preserving and protecting the First Amendment right to petition. Any out-of-court incitement attempting to injure the litigant's constitutional parental rights should be forbidden, as it is in the public interest.

### D. CONCLUSION AND PRAYER FOR RELIEF

35.     Consistent with its obligations to guard the integrity of these proceedings and prevent prejudice to the parties, while respecting the Defendant's First Amendment rights, the Court should enter the proposed orders imposing certain narrow restrictions on Defendant's public statements regarding this case.

36. Based on the above, Plaintiff respectfully requests for the following relief:

37. Plaintiff prays that this Court set forth a show cause hearing. After the hearing, Plaintiff prays that this Court compel Defendant to remove her Facebook post over social media, and/or any other posts relating to these related cases.

38. Plaintiff prays that this Court compel Defendant to disclose a list of her Facebook friend names who has access to her Facebook post over social media, and/or any other posts relating to these related cases, including but not limited, Tarrant County family court judges, bailiffs, court reporters, local law enforcement, family court service staff, lawyers, real estate agents, child custody evaluators, or any other person whose interest involved with family court business. For the purpose of fair trial, Plaintiff needs this list for further recusal and/or objection when these persons play any role in forgoing related cases.

39. Plaintiff prays that this Court compel Defendant to an apology for her conduct and make a corrective statement over social media with the following facts:

- The statement that Defendant was sued alongside 15 other defendants is numerically incorrect;
- The statement that this federal case was dismissed is incorrect;
- The statement that this federal case is bogus is conclusively incorrect;
- To state that the plaintiff has never contacted her in the past, except for court proceedings

40. Plaintiff prays that this Court, grant a gag order, and restrain Defendant Barrows from further disparaging merits or subject matters of this Federal case and/or any other related cases involving Plaintiff over social media.

*41.* Plaintiff prays that this Court order such other sanctions as it deems appropriate under the circumstances to deter repetition of the conduct or comparable conduct by others similarly situated.

Respectfully submitted,

/s/ Conghua Yan

[Conghua Yan]
[2140 E Southlake Blvd, Suite L-439]
[Southlake, Texas 76092]
[214-228-1886]
[arnold200@gmail.com]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| CONGHUA YAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. [4:23-cv-00758-P-BJ] |
| The State Bar of Texas et al, | ) |
| Defendants. | ) |

## CERTIFICATE OF CONFERENCE

On April 15, 2024, Plaintiff reached out to Caroline Marie Cyrier, counsel for the Defendant. Plaintiff notified counsel of his intent to file a motion for show cause with emergency preliminary injunction.

On April 17, 2024, Plaintiff had telephone conference with Caroline Marie Cyrier, counsel for the Defendant. During the conference, Caroline Marie Cyrier agreed to remove the post but did not consent any further corrective action. Caroline Marie Cyrier has expressed neither opinion to,

☒ Opposed the Motion.
☒ Unopposed Motion.

/s/ Conghua Yan
Conghua Yan, Pro Se Plaintiff
[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]
[arnold200@gmail.com]

## CERTIFICATE OF SERVICE

I, Conghua Yan, hereby certify that I have served the forgoing document on all counsels and/or pro se parties of record in a manner authorized by Federal Rule of Civil Procedure 5(b)(2) On (May 11th, 2024).

/s/ Conghua Yan

Conghua Yan, Pro Se Plaintiff

[Conghua Yan] [2140 E Southlake Blvd, Suite L-439] [Southlake, Texas 76092] [214-228-1886]

[arnold200@gmail.com]
