UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| CONGHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 4:23-cv-00758-P-BJ |
| | ) |
| STATE BAR OF TEXAS *et al*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

### I.  Introduction and Relief Requested

1. This motion[1] seeks a narrow legal determination based on undisputed facts and the text of ERISA *§ 1056(d)*:

   a. The three Interlocutory Orders signed by Defendant William Albert Pigg **("Pigg")**, entered before Plaintiff's final divorce decree were not made pursuant to a State or Tribal domestic relations law, and is not a *§ 1056(d)(3)* compliant QDRO;

   b. Any effort to obtain or compel ERISA plan distributions under those orders is unlawful under *§ 1056(d)(1)* and preempted by *29 U.S.C. § 1144(a),* and any transfer of plan assets pursuant to the Interlocutory Order would be without legal authorization under ERISA *§ 1056(d)* and not authorized by *Tex. Fam. Code §§*

---

[1] Record citations are to the concurrently filed Appendix ("APP.__"). Exhibit numbers (e.g., "App'x Ex. 6") match the Appendix index. 'Brief at __' refers to Plaintiff's Brief in Support of Motion for Partial Summary Judgment.

1

*9.101–.103*, and would contravene the U.S. BANK 401(k) SAVINGS PLAN's governing documents and trust-holding requirement.

2. To avoid Rule 19 concerns, Plaintiff requests entry as between Plaintiff and Defendant Pigg[2] only, with an express statement that the ruling does not adjudicate any nonparty's rights.

## II. Statement of Undisputed Material Facts Part One

3. The U.S. BANK 401(k) SAVINGS PLAN (the "Plan") (App'x Ex. 1, at APP-002) is an ERISA-covered plan. The Plan's governing documents expressly state:

- Anti-alienation protection (ERISA § 206(d)(1)) (App'x Ex. 1 at APP-065, Section 8 – Spendthrift Provisions).
- QDRO exception (ERISA § 206(d)(3)) (App'x Ex. 1 at APP-065, Section 8 cross-reference).
- Offsets for ERISA violations/plan crimes (ERISA § 206(d)(4)) (App'x Ex. 1 at APP-065, Section 8 (offset clause)).
- General ERISA compliance references (e.g., § 404(c) fiduciary standards; loans to parties in interest) (App'x Ex. 1 at APP-036, Section 5.2; at APP-063, Section 7.6.9).

4. On March 3, 2022, the 325th District Court filed a *Motion for Interim Attorney's Fees, Costs, and Expenses* in *In the Matter of the Marriage of Conghua Yan and Fuyan Wang and in the Interest of S.Y., a Child*, Cause No. 325-707596-21,

---

[2] Non-party status. All Defendants except William Albert Pigg were dismissed by the Court and are not parties of record. Only parties may oppose a motion. See Fed. R. Civ. P. 7 & local briefing rules.

2

submitted by Leslie Barrows. The motion text contains no reference to "spousal support." (App'x Ex. 2 at APP-125).

5. On March 14, 2022, the court filed a *Notice of Hearing on Motion for Interim Attorney's Fees, Costs, and Expenses*, setting hearing for April 13, 2022, submitted by Barrows and signed by Lori DeAngelis. (App'x Ex. 3 at APP-129).

6. On March 30, 2022, the court filed a *Notice of Hearing on Motion for Sanctions and to Compel Discovery*, also set for April 13, 2022, submitted by Defendant Pigg and signed by DeAngelis. (App'x Ex. 4 at APP-131). Those were the only two matters noticed for the April 13, 2022 hearing.

7. On April 13, 2022, the court entered a *Pre-Trial Docket Control Scheduling Order*, setting trial for March 27, 2024, signed by DeAngelis. (App'x Ex. 5 at APP-133).

8. On April 14, 2022, the court entered an *Associate Judge's Report*, signed April 13, 2022, by DeAngelis. It states: "Mr. Yan testified that he has $100,000 in a retirement account at U.S. Bank. Mr. Yan is ordered to withdraw or borrow $50,000 from his retirement account or as much as allowed. Each attorney is awarded $25,000 in fees. Mr. Yan is responsible for the cost of QDRO." The report text contains no reference to "spousal support." (App'x Ex. 6 at APP-137).

9. On April 26, 2022, the court entered an *Order for Garnishment of the U.S. Bank 401(k) Savings Plan*, signed by Defendant Pigg. The order text contains no reference to "attorney's fees," "fees," or "50,000." (App'x Ex. 7 at APP-139).

10. On May 26, 2022, the court entered a second *Order for Garnishment of the U.S. Bank 401(k) Savings Plan*, also signed by Defendant Pigg. The order text

3

contains no reference to "attorney's fees," "fees," or "50,000." (App'x Ex. 8 at APP-143).

11. On June 21, 2022, the court entered a third *Order for Garnishment of the U.S. Bank 401(k) Savings Plan*, again signed by Defendant Pigg. The order text contains no reference to "attorney's fees," "fees," or "50,000." (App'x Ex. 9 at APP-147).

12. Also on June 21, 2022, the court entered a *Writ of Garnishment Before Judgment*. (App'x Ex. 10 at APP-151).

13. On July 18, 2022, the court entered a second *Writ of Garnishment Before Judgment*. (App'x Ex. 11 at APP-155).

14. The three garnishment orders (App'x Exs. 7–9: Ex. 7 at APP-139; Ex. 8 at APP-143; Ex. 9 at APP-147) make no reference to fees. Nevertheless, the April 13, 2022 Associate Judge's Report (App'x Ex. 6 at APP-137) awarded $25,000 to each attorney and directed a 401(k) withdrawal/loan.

15. The certified docket sheet in Cause No. 325-707596-21, as certified by the Tarrant County District Clerk, on May 30, 2025 (App'x Ex. 12 at APP-161, Certified Transfer Certificate). See also (App'x Ex. 13 at APP-170, District Clerk printed Docket Transaction Sheet provided with the certified packet; see Declaration) reflects that:

- No final divorce decree had been entered as of July 18, 2022 (App'x Ex. 12 at APP-163; App'x Ex. 13 at APP-172).
- No other motion was noticed or heard between January 1, 2022, and December 31, 2022 (App'x Ex. 12 at APP-163; App'x Ex. 13 at APP-170).

4

- The Final Decree was signed on September 30, 2024 (App'x Ex. 12 at APP-165).
- No application of Writ of Garnishment was filed between April 13, 2022 to July 18, 2022 (App'x Ex. 12 at APP-163; App'x Ex. 13 at APP-172).
- No bond was filed between April 13, 2022 to July 18, 2022 (App'x Ex. 12 at APP-163; App'x Ex. 13 at APP-172).

16.     Exhibits 2–13 are certified copies from the Tarrant County District Clerk (see Declaration). This evidence is drawn from judicial records and plan materials, and there is no genuine dispute as to its content.

### III.     Statement of Undisputed Material Facts Part Two

17.     On January 13, 2025, the 466th District Court, Comal County, Texas, entered an *Order on Interim Attorney Fees* in Cause No. C2022-0409A, signed by the judge and counsel (App'x Ex. 14 at APP-178), stating:

- "IT IS ORDERED that […] shall secure a loan of up to Thirty-Five Thousand Dollars ($35,000.00) from his **401K** and divide the money as follows: Twenty Thousand Dollars ($20,000.00) shall be paid into the registry of the court for the benefit of […] as **Interim Attorney Fees**. IT IS ORDERED that the money deposited into the registry of the Court can be withdrawn only upon further ORDER of this court; Fifteen Thousand Dollars ($15,000.00) of the funds borrowed are for the payment of **interim Attorney Fees** for the […];"

18.     On June 16, 2009, in the 53RD district court, Travis County, Texas, counsel signed and filed a *Proposed Order on Respondent's Motion for Additional Temporary Orders and Interim Attorney's Fees* in Cause No. D-1-FM-08-005770 (App'x Ex. 15 at APP-185), stating:

- "[…] is ORDERED to obtain a loan, […] in the total aggregate amount of $50,000 […] for payment of […] **interim attorney's fees** […] is specifically ORDERED … to obtain said loan from […] including the **401k retirement account** of the parties."

5

19. On February 6, 2014, in the 322ND district court, Tarrant County, Texas, counsel signed and filed a *Motion to Equalize Attorney's Fees* in Cause No. 322-547540-13 (App'x Ex. 16 at APP-190), stating:

- "requests Petitioner pay her fees out of marital assets or Petitioner's **401K**"

20. On March 16, 2011, in the 360TH district court, Tarrant County, Texas, counsel signed and filed a *Motion to Release Funds for Attorney's Fees and Personal Living Expenses* in Cause No. 360-479099-10 (App'x Ex. 17 at APP-193), stating:

- "requests that the Court enter an order to release fund in the American Airlines SuperSaver **40l(k)** Plan in the name of […] for payment of attorney's fees to […]requests that the Court order that $30,000.00 be released from the American Airlines SuperSaver 401(k)"

21. On January 5, 2012, the 360TH district court, Tarrant County, Texas entered an *Order to Withdraw American Airlines SuperSaver 401(k) Plan* in Cause No. 360-479099-10, signed by the judge (App'x Ex. 18 at APP-197), ordering:

- "On this day the Court ORDERS court **appointed receiver**, KERRY L. OWENS to withdraw sixty one thousand seven hundred dollars ($61,700.00) from the funds held in the American Airlines Super Saver **401K Plan**, Employee ID # […] in the name of […] All funds requested shall be paid to KERRY L.OWENS, **Receiver** […]"

22. On May 8, 2012, the 360TH district court, Tarrant County, Texas entered an *Order Confirming Payments from 401(k)* in Cause No. 360-479099-10, signed by the judge and counsel (App'x Ex. 19 at APP-201), ordering:

- "Order Confirming Payments from 401K pursuant to the Orders for Disbursement of Funds from **401k** signed on March 23, 2012 with the addition of the payment of […] attorney's fees and future payment of attorneys fees of […] 100% of the proceeds from the 401k shall be surrendered to […];"

6

23. On July 11, 2014, the 360TH district court, Tarrant County, Texas entered a *Qualified Domestic Relations Order* in Cause No. 360-479099-10, signed by the judge and counsel (App'x Ex. 20 at APP-204), ordering:

- "pursuant to the granting of a divorce on the **13th day of December, 2012**, a Decree of Divorce was signed by the Judge of this Court on the **10th day of January, 2013**. […] This Order applies to the account balance under the Retirement Benefit Plan of American Airlines. Inc. for Employees Represented by the Transport Workers Union of America. AFL-CIO"

24. The record, spanning more than a decade and multiple Texas counties, reflects that (i) counsel filed motions and proposed orders seeking access to 401(k) retirement funds for interim attorney's fees (App'x Exs. 15–17, at APP-180 to APP-195), and (ii) trial courts entered orders authorizing the disbursement of 401(k) funds for such purposes at the pre-judgment stage, including directing deposits into the court registry, confirming payments, and appointing a receiver to withdraw and disburse funds (App'x Exs. 14, 18–20, at APP-178, APP-197, APP-201, and APP-204).

### IV.    Federal and State Authorities

25. *29 CFR § 2530.206(c)(1)* Subject to paragraph (d)(1) of this section, a domestic relations order **shall not** fail to be treated as a qualified domestic relations order **solely** because of the time at which it is issued.

26. *29 CFR § 2530.206(d)(1)* Any domestic relations order described in this section shall be a qualified domestic relations order **only if** the order satisfies the same requirements and protections that apply under section 206(d)(3) of ERISA.

27. *ERISA § 206(d)(3)* (codified at *29 U.S.C. § 1056(d)(3)*)

- (B)(ii)(I)-(II) the term "domestic relations order" means any judgment, decree, or order (including approval of a property settlement agreement) which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is **made pursuant to a State** or Tribal **domestic relations law** (including a community property law).

28. Texas Family Code - *FAM § 9.101-102*

    - FAM § 9.101(a) Notwithstanding any other provision of this chapter, **the court** that **rendered a final decree** of divorce or annulment or another final order dividing property under this title **retains** continuing, exclusive **jurisdiction** to **render** an **enforceable** qualified domestic relations order or similar order permitting payment of pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee or other lawful payee.

    - FAM § 9.102(a) A party **to a decree of divorce** or annulment may **petition** the court for a qualified domestic relations order or similar order.

29. *Texas CPRC §63.001*

    - A writ of garnishment is available if:
      (1) an original attachment has been issued;
      (2) a plaintiff sues for a debt and makes an affidavit stating that:
          (A) the debt is just, due, and unpaid;

8

   (B) within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt; and

   (C) the garnishment is not sought to injure the defendant or the garnishee; or

(3) a plaintiff has a valid, subsisting judgment and makes an affidavit stating that, within the plaintiff's knowledge, the defendant does not possess property in Texas subject to execution sufficient to satisfy the judgment.

30. Texas Rule of Civil Procedure 658

- "Either at the commencement of a suit or at any time during its progress the plaintiff **may file an application for a writ of garnishment**. Such application **shall be supported by affidavits** of the plaintiff, his agent, his attorney, or other person having knowledge of relevant facts. The application **shall** comply with all statutory requirements and **shall** state the grounds for issuing the writ and the specific facts relied upon by the plaintiff to warrant the required findings by the court…."

31. Texas Rule of Civil Procedure 658a

- "**No writ of garnishment shall** issue **before final judgment until** the party applying therefor has **filed** … **a bond** … in the **amount fixed by the court's order**, with sufficient surety … conditioned that the plaintiff will prosecute his suit to effect and **pay** … **damages and costs** … for **wrongfully suing out such writ of garnishment**…"

### V. Legal Standard

32. Rule 56(a). Summary judgment shall be entered if "there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of

9

law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

33. The Court may also, under Rule 56(g), deem specific facts established for the remainder of the case.

## VI.     Argument

**A.     ERISA bars assignment or alienation absent a valid QDRO (framework).**

34. ERISA's anti-alienation rule provides that benefits "may not be assigned or alienated." *29 U.S.C. § 1056(d)(1)*. The only exception is a "qualified domestic relations order" that (a) is a state or tribal domestic-relations order relating to child support, alimony, or marital property rights; (b) is "made pursuant to" a State or Tribal domestic-relations law, § 1056(d)(3)(B)(ii); (c) recognizes or assigns benefits to a statutory "alternate payee" (spouse, former spouse, child, or other dependent); and (d) satisfies the content requirements in § 1056(d)(3)(C)–(D). Plans must follow ERISA and plan documents, not conflicting orders. *Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–04 (2009).

**B.     Texas Family Code shows a pre-decree order/writ of garnishment is not "made pursuant to" domestic-relations law (post-decree jurisdiction only).**

35. Texas's QDRO provisions (Chapter 9, Subchapter B) are expressly post-decree and require a separate petition. The court that rendered a final decree "retains continuing, exclusive jurisdiction to render [a QDRO]." Tex. Fam. Code § 9.101(a). A QDRO may be obtained only if a party to the decree files a petition. *Tex. Fam. Code § 9.102(a)* ("a party to a decree … may petition … for a [QDRO]"). Thus, in Texas, the statutory trigger for QDRO jurisdiction is not the mere pendency of a

10

divorce but the filing of a new petition after the decree. Pursuant to *29 C.F.R. § 2530.206(c)(1)*, a domestic relations order is not automatically qualified merely because it is entered during ongoing domestic-relations proceedings; it must still be made pursuant to valid state domestic-relations law. An interlocutory order entered **before** any final **decree**, and **without** the required Chapter 9 **petition**, is not "made pursuant to" Texas domestic-relations law within *ERISA § 206(d)(3)(B)(ii)*, *29 U.S.C. § 1056(d)(3)(B)(ii)*. See also *Tex. Fam. Code § 9.1045* (amendments are limited to effectuating the decree's division, not to create new, pre-decree entitlements).

  **C.** **The Interlocutory Order/Writ of Garnishment cannot qualify as a QDRO.**

  36. These three interlocutory garnishment orders and two writs, each directed pre-decree distribution of $25,000 in Plan assets to Fuyan Wang under the cause of action for spousal support, following the April 13, 2022 hearing. Read together, these materials demonstrate that two of the writs of garnishment served a fee-collection purpose despite their pretextual "support" labels, revealing the disguise.

  37. An order/writ of garnishment against ERISA funds entered before a final judgment typically cannot satisfy *§ 1056(d)(3)* because it does not finally allocate marital rights.

  38. Because Chapter 9 authorizes QDROs only post-decree, a pre-decree order cannot qualify absent a proper petition. Under *TRCP 658*, no garnishment order may issue without a sworn application and affidavit. Under *TRCP 658a*, no writ of garnishment may issue before final judgment without the posting of a bond set by the court.

39.     Here, the undisputed record (App'x Exs. 12–13, at APP-160 to APP-176) establishes that no application was filed and no bond was posted. Interlocutory order/writs of garnishment that are invalid under Texas garnishment law cannot be "made pursuant to" domestic-relations law within ERISA *§ 1056(d)(3)(B)(ii)*.

**D.    The Decade-Long Pattern Confirms Preemption and ERISA Violation.**

40.     The undisputed factual record demonstrates a repeated practice across Texas of counsel seeking, and trial courts granting, pre-judgment access to ERISA 401(k) funds for interim attorney's fees, including registry deposits, confirming payments, and even receiverships (App'x Exs. 14–20, at APP-177 to APP-209).

41.     The exhibits also reveal that orders and motions expressly tethered to interim attorney's fees (e.g., App'x Exs. 14–19, at APP-177 to APP-202) were pursued or labeled as "support," which functions as a circumvention ERISA forbids: the QDRO exception permits payment only to a proper "alternate payee" (spouse, former spouse, child, or other dependent) and does not authorize direct payment of attorney's fees to counsel. See U.S. Department of Labor QDRO guidance (payments limited to alternate payees); *Silverman v. Spiro*, 438 Mass. 725, 734–36 (2003) (fees permissible only insofar as tied to child-support arrears and payable to the alternate payee, not as a freestanding award to counsel). The record here reflects the same pretext: the April 13, 2022 Associate Judge's Report awarded $25,000 to each attorney and directed a 401(k) withdrawal/loan (App'x Ex. 6 at APP-137), while the immediately following garnishment orders omit any fee language yet target the Plan (App'x Exs. 7–9: Ex. 7 at APP-139; Ex. 8 at APP-143; Ex. 9 at APP-147). Because the instruments here are fee-driven and pre-decree—cf. App'x Ex. 6 (fee awards) with App'x Exs. 7–9 (no fee text), their "support" characterization is

12

pretextual; they are not "made pursuant to" support law within *29 U.S.C. § 1056(d)(3)(B)(ii)* and cannot qualify as QDROs.

42. This practice is not isolated to the present case. These geographic (Travis, Tarrant, Comal) and temporal (2009–2025) facts establish a practice persisting for well spans over a decade and across multiple regions of Texas, supporting the Court's characterization of a statewide, decade-long pattern of pre-decree attempts to reach ERISA 401(k) assets for attorney's fees.

43. Such orders conflict directly with ERISA's anti-alienation rule (*§ 1056(d)(1)*), with the exclusive trustee-holding mandate (*§ 1103(a)*), and with the narrow QDRO exception *(§ 1056(d)(3))*. By appointing a receiver to take possession of plan funds (App'x Ex. 18 at APP-197), state courts contravened *§ 1103(a)*, which requires that ERISA plan assets "shall be held in trust by one or more trustees."

44. Texas's own statutes also foreclose this practice. Chapter 9 of the Family Code permits QDROs only after a final decree (*§§ 9.101–.103*). Orders compelling pre-decree 401(k) withdrawals are therefore not "made pursuant to" Texas domestic-relations law and cannot qualify as QDROs under ERISA *§ 1056(d)(3)(B)(ii)*.

45. This statewide pattern underscores why federal preemption *under 29 U.S.C. § 1144(a)* is necessary: without it, ERISA pension assets are exposed to unauthorized diversion for attorney's fees at the pre-judgment stage, outside the limited QDRO framework.

46. Federal authority reinforces this conclusion. The Supreme Court has repeatedly held that ERISA's anti-alienation rule is absolute absent a valid QDRO. See *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 376 (1990);

*Boggs v. Boggs*, 520 U.S. 833, 851–52 (1997). Courts construe the QDRO exception narrowly, requiring strict compliance with § 1056(d)(3). *Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–01 (2009); *In re Gendreau*, 122 F.3d 815, 819 (9th Cir. 1997). State-court garnishment orders directed at ERISA plans are preempted unless they qualify as QDROs. *Mackey v. Lanier Collection Agency*, 486 U.S. 825, 833 (1988). Here, the undisputed record shows that the pre-decree garnishment orders at issue are not QDROs, and that appointment of a receiver to take possession of plan assets directly violated § 1103(a)'s trustee requirement. See *Central States Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570 (1985).

**E.     ERISA prescribes segregation, not distribution, while QDRO status is unresolved; unauthorized distributions are preempted.**

47.     While QDRO status is being determined, the plan may (and must, if it withholds payment) segregate putative amounts for up to 18 months; it may not distribute absent a valid QDRO. *29 U.S.C. § 1056(d)(3)(H)*. Any Texas order commanding immediate pre-decree distribution inverts this statutory mechanism and is preempted.

**F.     Clarifying effect on plan assets and authorization.**

48.     The declaration sought concerns authorization and property status only: if the Interlocutory Orders/Writs are not a QDRO under *§ 1056(d)(3)* and are not authorized by *Tex. Fam. Code §§ 9.101–.103*, then any distribution from the Plan under that order would be a transfer of plan assets without legal authorization under both ERISA and the Plan's governing documents.

**G.     Scope and procedure.**

49. This motion seeks a narrow legal determination grounded in Plaintiff's existing ERISA Act allegations. The Court should enter the declaration as between the parties before the Court only and add Rule 56(g) findings to streamline trial. No amendment is required; the relief narrows issues consistent with the pleadings.

### VII. Conclusion

50. For these reasons, the Court should grant Plaintiff's Motion for Partial Summary Judgment.

<u>/s/ *Conghua Yan*</u>
Conghua Yan, Pro Se Plaintiff
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com

### Certificate of Service (Fed. R. Civ. P. 5(b))

On October 20, 2025, I filed the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the Court's CM/ECF system. I certify that the CM/ECF system will send notice of this filing to all counsel/party of record who are registered CM/ECF users.

<u>/s/ *Conghua Yan*</u>
Conghua Yan, Pro Se Plaintiff
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com
