# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

|  |  |
|---|---|
| CONGHUA YAN, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 4:23-cv-00758-P-BJ |
|  | ) |
| STATE BAR OF TEXAS *et al.*, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

## BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSED MOTION TO RECONSIDER INTERLOCUTORY ORDERS UNDER FEDERAL RULE OF CIVIL PROCEDURE 54(B)

Table of Contents

## Contents

Table of Contents .................................................................................2

Table of Authorities .............................................................................3

I.    Introduction and Relief Requested.................................................6

II.   Procedural Posture .......................................................................6

III.  Legal Standard .............................................................................6

IV.   Grounds for Reconsideration .......................................................7

   A.   Clear Error Causing Manifest Injustice .........................................7

   B.   Intervening or Overlooked Controlling Authority. .........................11

   C.   Newly-Issued Persuasive Authority (Post-Order) Reversing Rule 12 Dismissals in Family-Court Settings ..................................................17

   D.   New, Previously Unavailable Evidence indicates Jurisdictional voidness in ongoing Pre-Judgment QDRO Practice.................................................17

   E.   New, Previously Unavailable Evidence exposes the State of Texas, a new victim of the alleged enterprise, scheme, and pattern...........................20

   F.   New, Previously Unavailable Evidence. ........................................22

V.    Conclusion...................................................................................25

Certificate of Service (Fed. R. Civ. P. 5(b)).........................................26

Table of Authorities

## Cases

*Arnold v. Williams*, 979 F.3d 262 (5th Cir. 2020) ......................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ passim

*Austin v. Kroger Tex., L.P.*, 864 F.3d 326 (5th Cir. 2017) .........................................6

*Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) .....................................................10

*Ballard v. Wall*, 413 F.3d 510 (5th Cir. 2005) .........................................................8

*Bazrowx v. Scott*, 136 F.3d 1053 (5th Cir. 1998) ....................................................7

*Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397 (1997)............................................13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)............................................ passim

*Bellinsky v. Galan*, No. 24-1351 (10th Cir. July 22, 2025)......................................17

*Boggs v. Boggs*, 520 U.S. 833 (1997) ............................................................. 16, 23

*Bradley v. Fisher*, 80 U.S. 335 (1871) .....................................................................13

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)..................................14

*Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380 (5th Cir. 2017) ................15

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) .....................................9

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................21

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) ......................................................7

*Dallas Cnty. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938 (N.D. Tex. 2014) ...................7

*Davoodi v. Austin ISD*, 755 F.3d 307 (5th Cir. 2014) ..............................................7

*Dennis v. Sparks*, 449 U.S. 24 (1980) ....................................................................9

*E-Systems, Inc. v. Pogue*, 929 F.2d 1100 (5th Cir. 1991)..................... 12, 15, 17, 23

*Ex parte Young*, 209 U.S. 123 (1908) .....................................................................12

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)...................15

*Goff v. Taylor*, 706 F.2d 574 (5th Cir. 1983) ...................................... 12, 15, 17, 23

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) ............................................................................................................. 15, 16

*Green v. State Bar of Tex.*, 27 F.3d 1083 (5th Cir. 1994).........................................7

*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016)...........................................13

*Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365 (1990).............23

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) ..............................................23

*Howlett v. Rose*, 496 U.S. 356 (1990)................................................................9, 12

*In re American Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) ..................................21

*In re E.R.*, 385 S.W.3d 552 (Tex. 2012)................................................................19

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) .....11, 16

*Lance v. Dennis*, 546 U.S. 459 (2006) (per curiam) ..............................................15

*Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) ................................................................................................................6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...........................................12

*Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993) .......................................8

*McClendon v. United States*, 892 F.3d 775 (5th Cir. 2018) ............................6

*Mireles v. Waco*, 502 U.S. 9 (1991) .............................................................13

*Miroth v. County of Trinity*, No. 23-15759 (9th Cir. May 8, 2025) .................17

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................................13

*Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995) ................................... 14, 15

*Pearson v. Callahan*, 555 U.S. 223 (2009) ..............................................10, 15

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).....................................13

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001).........................13

*Primate Constr., Inc. v. Silver*, 884 S.W.2d 151 (Tex. 1994) (per curiam)..............19

*Salinas v. United States*, 522 U.S. 52 (1997) ...........................................11, 16

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)....................................9, 14

*Skinner v. Switzer*, 562 U.S. 521 (2011) ............................................... 15, 16

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ..................................17

*Stump v. Sparkman*, 435 U.S. 349 (1978).....................................................13

*Taylor v. Tolbert*, 644 S.W.3d 637 (Tex. 2022)..........................................9, 12

*Truong v. Bank of Am.*, N.A., 717 F.3d 377 (5th Cir. 2013) ................... 10, 15, 16

*United States v. Sineneng-Smith*, 590 U.S. 371 (2020).................................7, 13

*Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884 (Tex. 1985) (per curiam) ............................................................................................19

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) ................................................16

*Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635 (2002)...............................12

*Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900 (5th Cir. 2011).......................16

*Wilson v. Dunn*, 800 S.W.2d 833 (Tex. 1990)..............................................19

**Statutes**

*18 U.S.C. § 1961(1)* ..................................................................................23

*18 U.S.C. § 1962(c)*...................................................................................10

*18 U.S.C. § 1962(d)* ..................................................................................10

*18 U.S.C. § 664* ......................................................................................9, 22

*29 U.S.C. § 1056(d)(1)* ..............................................................................23

*29 U.S.C. § 1056(d)(3)*..........................................................................11, 16

*Fed. R. Civ. P. 11(c)(3)* ..............................................................................21

*Fed. R. Civ. P. 54(b)* ...................................................................................6

*Tex. Fam. Code § 9.102* ...........................................................................19

*Tex. Penal Code § 31.04* .........................................................................20

*Tex. R. Civ. P. 22* ............................................................................ 18, 19

*Tex. R. Civ. P. 23* ............................................................................ 18, 19

*Tex. R. Civ. P. 99* ............................................................................ 18, 19

**Other Authorities**

*ABA Model Rule 1.7(a)(2)* .......................................................................21

*ABA Model Rule 1.7(b)* ...........................................................................22

*ABA Model Rule 3.8* ...............................................................................21

*TDRPC 1.06(b)(2)* ..................................................................................21

*TDRPC 1.06(c)* .......................................................................................22

*TDRPC 3.09* ...........................................................................................21

Texas OCA, District Court Civil Filing Fees (effective Jan. 1, 2022) ....................18

Texas Office of Court Administration, District Court Civil Cases and Actions
(effective Jan. 1, 2022) ............................................................................18

## I.        Introduction and Relief Requested

Plaintiff respectfully moves the Court to reconsider and modify prior interlocutory orders identified in the Motion. Because no final judgment has been entered and the Fifth Circuit has dismissed the appeal for lack of jurisdiction, this Court is free to reconsider and reverse its prior decisions until entry of final judgment. See *Fed. R. Civ. P. 54(b)*. The specific relief requested appears only in the Motion.

## II.        Procedural Posture

1.        On September 29, 2025, the Fifth Circuit dismissed the appeal for lack of appellate jurisdiction, instructed this court to resume proceedings. Additionally, the appellate panel, including the Chief Justice of the Fifth Circuit, correctly **summarized** this suit as one brought by *pro se* plaintiff Conghua Yan alleging a "**decade-long and widespread pattern**" of "**racketeering activity**" conducted by the State Bar of Texas and **seven** of its members. This description persuasively contrasts with ECF No. 148's conclusive characterization of Plaintiff as "a litigant ... simply arguing a certain order was wrong, even really wrong," or a case in which "the pleadings leave the Court with ... the grievances of a disgruntled litigant." Plaintiff is not one of those "litigants ... [who] turn to federal court to challenge a state court's decrees."

## III.        Legal Standard

2.        *Fed. R. Civ. P. 54(b)* permits revision of interlocutory orders "at any time" before final judgment. The Fifth Circuit holds that, before final judgment, a district court may revise such rulings for any reason it deems sufficient[1], and the

---

[1] Rule 54(b) is more flexible than Rule 59(e). *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336–37 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)); see also *McClendon v. United States*, 892 F.3d 775, 781–82 (5th Cir. 2018).

familiar factors, clear error/manifest injustice, intervening controlling law, or new evidence, are guideposts, not prerequisites[2]. Because the Fifth Circuit dismissed for lack of jurisdiction, instructed this court to resume proceedings, its order did not adjudicate the merits; however, the appellate panel's **corrective description** of the suit provides **persuasive context** supporting reconsideration of prior mischaracterization under *Rule 54(b)*'s clear-error/manifest-injustice guidepost.

## IV.      Grounds for Reconsideration

### A.      Clear Error Causing Manifest Injustice

3.      It is clear error that the "Dismissal Order" dismissed the State Bar of Texas (SBTX) related antitrust/RICO claims by recasting them as mere "grievance-dismissal" disputes and by granting sua sponte *Rule 12(b)(6)* reliefs SBTX did not brief; that approach contravenes the party-presentation principle and the Fifth Circuit's *Rule 12* standards. The governing rule is that courts "rely on the parties to frame the issues," and dismissal is improper if the allegations support relief "on any possible theory," with all well-pleaded facts taken as true. The Supreme Court has made clear that appellate courts may not reach out to decide unbriefed issues under the party-presentation principle, see *United States v. Sineneng-Smith*, 590 U.S. 371, 375–77 (2020), and the Fifth Circuit requires notice and an opportunity to respond before a district court dismisses claims sua sponte under *Rule 12(b)(6)*. See *Davoodi v. Austin ISD*, 755 F.3d 307, 310–11 (5th Cir. 2014); *Bazrowx v. Scott*, 136 F.3d 1053, 1054–55 (5th Cir. 1998). Further, the Fifth Circuit has long held that a complaint should not be dismissed if the pleaded facts would support relief on "any possible theory." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994);

---

[2] See *Austin*, 864 F.3d at 336–37; *Dallas Cnty. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 950 (N.D. Tex. 2014); see also N.D. Tex. order collecting *Austin/Lavespere*.

*Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). Relying on unbriefed *Rule 12(b)(6)* defenses to dismiss federal antitrust and RICO claims, which focus on ERISA violations and racketeering income rather than a grievance appeal, constitutes manifest injustice.

4.      It is clear error that the Court applied blanket judicial immunity to Lori L. DeAngelis and characterized Plaintiff as a "disgruntled family-court litigant," disregarding allegations that certain judicial acts were taken in the clear absence of subject-matter jurisdiction and that the federal claims are independent of any state judgment. The governing rule is that a state statutory judge is not absolutely immune for acts taken in the complete absence of statutory jurisdiction; the "judicial act" inquiry turns on the nature of the statutory judge function and the parties' reasonable expectations. *Stump v. Sparkman* holds that judicial immunity yields when a judge acts in the "clear absence of all jurisdiction"; *Mireles v. Waco* reiterates that the analysis turns on the nature of the act and the parties' expectations. See *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11–13 (1991). The Fifth Circuit applies this framework using a four-factor test to determine whether conduct is a "judicial act." See *Malina v. Gonzales*, 994 F.2d 1121, 1124–26 (5th Cir. 1993); *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). Blanket immunity bars adjudication of ultra vires, structural-error allegations tied to deprivations of property without jurisdiction, barring federal remedies that do not seek to overturn state orders, which constitutes manifest injustice.

5.      It is clear error that the Court substituted narrowed federal common-law private attorney immunity principle with Texas's broad common-law "attorney immunity" as a categorical bar to federal RICO, ERISA-based, and interstate property-injury claims against the Barrows Firm, Leslie Starr Barrows, and Samantha Ybarra, treating the ERISA fund embezzlement and tampering court order

episode as protected "zealous advocacy." It extended this "robust" immunity to federal racketeering and ERISA-injury theories without the required statute-specific analysis, despite allegations of interstate ERISA fund injury.

6.     State-law immunity doctrines cannot negate federal causes of action; *§ 1983* and analogous federal statutes draw their immunity rules from federal law, not state labels. See *Howlett v. Rose*, 496 U.S. 356, 376–83 (1990). Private actors do not acquire judges' immunity by participating in or exploiting judicial processes. See *Dennis v. Sparks*, 449 U.S. 24, 27–29 (1980). RICO is to be read broadly, and federal predicates include theft or embezzlement from ERISA plans. See *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–500 (1985); *18 U.S.C. § 664*. Texas's attorney-immunity doctrine protects advocacy within the scope of representation on state-law claims, see *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481–85 (Tex. 2015), but it does not categorically displace federal liability schemes like RICO or ERISA. Treating alleged order alteration or rendition-usurpation and ERISA-plan deprivations as "immunity-protected advocacy" nullifies federal rights and insulates federal RICO predicates from review, which is legal error.

7.     The governing rule, as *Taylor v. Tolbert*, 644 S.W.3d 637, 646–51 (Tex. 2022) explains, is that attorney-immunity turns on the specific statute; federal claims, including RICO predicates and ERISA-related interstate property-injuries, are not categorically foreclosed by Texas's immunity doctrine. The Supreme Court emphasizes RICO's breadth, and *Taylor* confirms the statute-specific analysis. Treating alleged order alteration/rendition-usurpation and ERISA-fund deprivations in state court proceedings as a platform, and using state court orders as a vehicle for 'immunity-protected' advocacy, nullifies federal rights and shields an alleged Federal RICO predicate act from federal judicial review, which constitutes manifest injustice.

8.      It is clear error that the Court dismissed *§ 1983* claims against Luis Marin, Daniel Martinez and Rachel Craig (CDC Lawyers) on threshold immunity/jurisdiction grounds without engaging the pleaded, independent federal-rights injuries and the proper qualified-immunity framework for individual-capacity claims. The governing rule is that the "strongest federal defense" for state officials sued individually is qualified immunity; dismissal must address clearly established law and the complaint's factual content, not impose a blanket bar, and *Nesses*-type reasoning distinguishes independent injuries from an attack on a state judgment. At the *Rule 12* stage, the Fifth Circuit requires plaintiffs to plead specific facts that permit a reasonable inference of liability and that, with equal specificity, overcome qualified immunity; there is no heightened standard beyond *Twombly/Iqbal*. See *Arnold v. Williams*, 979 F.3d 262, 267–69 (5th Cir. 2020); *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The sequencing of qualified-immunity analysis is flexible but mandatory to address; courts may resolve either prong first, but they must conduct the analysis. See *Pearson v. Callahan*, 555 U.S. 223, 236–43 (2009). And the Fifth Circuit recognizes that "independent claims" are not barred by *Rooker-Feldman*. See *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–85 (5th Cir. 2013). A blanket disposition prevents adjudication of prospective and individual-capacity claims that do not seek to undo any state decision, thereby denying a federal forum for federal injuries, which constitutes manifest injustice.

9.      It was clear error to (i) require a "pattern" showing by each conspirator to sustain a *18 U.S.C. § 1962(d)* conspiracy and (ii) discount ERISA fiduciary/QDRO-determination duties by resolving factual disputes in U.S. Bank's favor at *Rule 12*. Under *Salinas*, a *§ 1962(d)* conspirator need not personally commit or agree to commit two predicate acts; liability turns on agreement to further a scheme that, if completed, would violate *18 U.S.C. § 1962(c)*. *Salinas v. United*

*States*, 522 U.S. 52, 63–66 (1997). ERISA places the QDRO gatekeeping duty on the plan administrator, including promulgating and following reasonable written procedures, making the QDRO determination, segregating amounts during the determination period, and paying out in accordance with the determination. *29 U.S.C. § 1056(d)(3)*(G)–(H); *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–05 (2009). At *Rule 12*, courts must accept well-pleaded facts and may not credit a defendant's contrary narrative. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007). Misstating *§ 1962(d)*'s elements and collapsing ERISA QDRO-determination duties into defense-favorable facts at the pleading stage extinguished the conspiracy count and the ERISA fiduciary-breach theory aimed at protecting plan assets, which constitutes manifest injustice.

### B.    Intervening or Overlooked Controlling Authority.

10.    The Dismissal Order overlooked controlling Supreme Court and Fifth Circuit authority that requires a different *Rule 12* analysis for each defendant group, including the Eleventh Amendment/*Ex parte Young* framework for prospective relief, the judicial-immunity exception for acts taken in the clear absence of jurisdiction, *Monell* municipal-liability elements, ERISA preemption and QDRO-determination duties, RICO *§ 1962(d)* conspiracy elements, and the obligation to credit well-pleaded facts at *Rule 12*.

    1)    State Bar of Texas, Marin, Martinez, and Craig (the "State Bar Defendants"). Yan pleaded federal claims (RICO and ERISA) and seeks forward-looking relief cognizable under *Ex parte Young* against appropriate state officials with a connection to enforcement. The TDRPC are Supreme Court rules of professional conduct with regulatory and

disciplinary force; they do not constitute substantive law governing civil liability. Any assertion of absolute immunity for counsel derived from the TDRPC, or otherwise untethered to controlling federal authority, is neither law nor precedent and cannot bar federal causes of action. The Dismissal Order's reframing of the federal predicates as mere disagreement with "grievances" conflicts with *Howlett* and with *Rule 12*, which requires the court to accept well-pleaded facts rather than a defendant's narrative.

    a. Prospective relief against state actors: *Ex parte Young*, 209 U.S. 123 (1908) (official-capacity prospective relief available despite sovereign immunity); *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002).

    b. No state-law immunity against federal causes: *Howlett v. Rose*, 496 U.S. 356, 375–76 (1990) (state-law immunities and procedures cannot defeat federal claims); *Taylor v. Tolbert*, 644 S.W.3d 637, 646–51 (Tex. 2022) (Texas's attorney-immunity defense does not bar federal statutory claims, even where it may apply to analogous state-law claims).

    c. *Article III* and *Rule 12* method: *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

    d. ERISA preemption support: *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103–06 (5th Cir. 1991); *Goff v. Taylor*, 706 F.2d 574, 579–82 (5th Cir. 1983).

2) Associate Judge DeAngelis. Yan alleged ultra vires acts taken in the complete absence of statutory jurisdiction. Under *Mireles*/*Stump*/*Bradley*, those factual allegations must be credited on a motion to dismiss; blanket

immunity at the jurisdictional stage or sua sponte reframing violates *Sineneng-Smith* and *Rule 12* procedure.

    a. Judicial immunity exception; clear absence of jurisdiction: *Mireles v. Waco*, 502 U.S. 9, 12–13 (1991) (per curiam); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978); *Bradley v. Fisher*, 80 U.S. 335, 351 (1871).

    b. Party-presentation; no sua sponte reframing: *United States v. Sineneng-Smith*, 590 U.S. 371, 375–77 (2020).

3) Tarrant County. Yan alleged policy/custom, single-decision, ratification routes. The Dismissal Order dismissed claims for not "naming the policymaker" or for lack of an evidentiary pattern at *Rule 12*, which conflicts with *Groden*, *Pembaur*, and *Brown*; the complaint's plausible policy-attribution allegations must be accepted and tested in discovery.

    a. Municipal liability: *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

    b. Single-decision and policymaker theories: *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–07 (1997).

    c. Fifth Circuit elements; no heightened pleading of policymaker: *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Groden v. City of Dallas*, 826 F.3d 280, 284–86 (5th Cir. 2016).

4) The Barrows Firm, Barrows and Ybarra (the "Attorney Defendants"). Yan alleged RICO/ERISA injuries to property through specific fraudulent conduct; at *Rule 12*, courts cannot import state attorney-immunity to truncate distinguishable federal claims nor credit defense facts over well-

pleaded allegations. Under *Nesses v. Shepard*, 68 F.3d 1003, 1004–06 (7th Cir. 1995), the touchstone is causation: do the damages sought stem from defendants' unlawful acts (fraudulent alteration of a court order or unlawful ERISA fund embezzlement)?

5) Yan alleged a decade-long statewide racketeering scheme through which the enterprises obtain racketeering income from predicate acts. This case does not seek to reverse any state grievance decision or judgment, as these do not eliminate injuries from ongoing predicate acts supporting the RICO enterprises' operations. The Dismissal Order's categorical reliance on state common-law attorney immunity to defeat federal claims contradicts *Howlett*, *Sedima*, and *Rule 12* standards.

    a. Federal causes are not defeated by state-law attorney-immunity doctrines: *Howlett*, 496 U.S. at 375–76 (state immunities cannot bar federal claims); cf. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498–500 (1985) (RICO's breadth; no special, extra-statutory immunity).

    b. RICO causation and civil standing: *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 653–59 (2008) (no first-party reliance requirement).

    c. *Rule 12* method: *Twombly*, 550 U.S. at 555–56; *Iqbal*, 556 U.S. at 678–79.

    d. ERISA preemption support: *E-Systems, Inc. v. Pogue*, 929 F.2d at 1103–06; *Goff v. Taylor*, 706 F.2d at 579–82.

6) Marin, Martinez, and Craig (CDC Lawyers, individual-capacity *§ 1983*/related claims). Plaintiff asserts independent federal injuries, not appellate review of any state grievance decision. That is the Supreme

Court's controlling framework, which the Fifth Circuit applies: federal courts adjudicate independent federal claims notwithstanding related state proceedings; only narrow, well-defined jurisdictional or abstention doctrines (e.g., *Rooker–Feldman* in true de facto appeals and *Younger*'s three categories) may limit review, while any preclusion issues are merits questions, not jurisdictional bars; independent claims may proceed. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–94 (2005); *Lance v. Dennis*, 546 U.S. 459, 463–66 (2006) (per curiam); *Skinner v. Switzer*, 562 U.S. 521, 530–33 (2011); *Truong v. Bank of Am.*, N.A., 717 F.3d 377, 382–85 (5th Cir. 2013); *Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 384 (5th Cir. 2017). *Nesses* is cited only persuasively to illustrate this independent-injury line; it is not a separate exception. See *Nesses v. Shepard*, 68 F.3d 1003, 1004–06 (7th Cir. 1995).

7) Dismissal on threshold "immunity/jurisdiction" grounds, without undertaking the qualified-immunity merits analysis and while discounting well-pleaded facts, was error. *Pearson v. Callahan*, 555 U.S. 223, 231–36 (2009); *Skinner*, 562 U.S. at 530–33. At *Rule 12*, the court must accept factual allegations and reasonable inferences in Plaintiff's favor. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002).

8) U.S. Bank (plan administrator/fiduciary). The Dismissal Order erred by demanding a "pattern" showing from each conspirator at the pleading stage and by resolving disputed QDRO-determination facts against the complaint. Under *Salinas*, a conspirator need not commit any predicate act so long as he knowingly agrees that some member will commit two acts to

further *§ 1962(c)*. *Salinas* forecloses the "two-predicates-per-conspirator" gloss; *Kennedy*, *§ 1056(d)(3)*, and *Boggs* confirm administrator duties during QDRO determination that cannot be fact-found away at *Rule 12*.

    a. RICO *§ 1962(d)* conspiracy elements: *Salinas v. United States*, 522 U.S. 52, 63–66 (1997) (no "two predicates per conspirator" requirement).

    b. ERISA QDRO gatekeeping; plan-document rule: *29 U.S.C. § 1056(d)(3)(G)–(H)*; *Kennedy v. Plan Administrator for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300–05 (2009); *Boggs v. Boggs*, 520 U.S. 833, 846–48 (1997).

    c. Trust-law backdrop for ERISA fiduciary duties: *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

    d. *Rule 12* method: *Twombly*; *Iqbal*.

11.    Moreover, in the ERISA strand, the Fifth Circuit holds that state-law devices and defenses cannot redirect or defeat ERISA's injury claims: see *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103–06 (5th Cir. 1991), and *Goff v. Taylor*, 706 F.2d 574, 579–82 (5th Cir. 1983). Read with *Howlett*, 496 U.S. at 375–76, and *Taylor*, 644 S.W.3d at 646–51, these authorities foreclose dismissal of federal ERISA claims based on state-law immunity or procedure.

    a. *E-Systems, Inc. v. Pogue*, 929 F.2d at 1103–06 (5th Cir. 1991) (ERISA preempts state-law attempts to control or redirect plan benefits; conflicting state causes and defenses are displaced).

    b. *Goff v. Taylor*, 706 F.2d at 579–82 (5th Cir. 1983) (ERISA anti-alienation bars state garnishment and similar state mechanisms absent a valid QDRO; state processes cannot override ERISA's federal scheme).

### C.     Newly-Issued Persuasive Authority (Post-Order) Reversing Rule 12 Dismissals in Family-Court Settings

12.     Plaintiff respectfully submits **Exhibit 1**, at APP-002 **(**Opinion on *Bellinsky v. Galan*, No. 24-1351 (10th Cir. July 22, 2025)**)** and **Exhibit 2**, at APP-017 **(**Opinion on *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. May 8, 2025)**)**, which are material and could not, despite reasonable diligence, have been presented earlier. The evidence bears directly on *Rule 12* dismissals issue in family-court settings and would likely change the outcome. Since the Dismissal Order, two 2025 appellate decisions have clarified the jurisdictional gatekeeping that governs actions arising from state family-court proceedings: *Bellinsky v. Galan*, No. 24-1351 (10th Cir. July 22, 2025) (district court erred by abstaining under *Younger* without first confirming the state matter fits one of the three '*Sprint*' categories (*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013)*)*; the preclusive effect of state court judgments is a matter of state law, not a jurisdictional doctrine; a jurisdictional doctrine applies only if the claim specifically seeks to modify or set aside a state-court judgment), and *Miroth v. County of Trinity*, No. 23-15759 (9th Cir. May 8, 2025) (damages claims alleging legal wrongs by adverse parties may proceed in federal court; any overlap with state proceedings is handled by preclusion, not a jurisdictional bar). Read together with *Exxon Mobil, Lance, Skinner, and Sprint*, these decisions reinforce that Plaintiff's federal claims should proceed past Rule *12(b)(1)* to be addressed on their merits, or if raised, on preclusion grounds rather than jurisdiction.

### D.     New, Previously Unavailable Evidence indicates Jurisdictional voidness in ongoing Pre-Judgment QDRO Practice

13.     Plaintiff respectfully submits **Exhibit 3** (Texas Office of Court Administration, District Court Civil Cases and Actions (effective Jan. 1, 2022)) and **Exhibit 4** (Texas OCA, District Court Civil Filing Fees (effective Jan. 1, 2022)).

These statewide directives, merely distributed to district-court clerks as training material are appended for the Court's convenience and reflect statewide administrative treatment. They establish that a **"Petition for Qualified Domestic Relations Order (QDRO)"** is filed in the court that rendered the decree, but it is treated as an original filing, assessed the $350 consolidated new-case fee, and thus proceeds as a new civil case, not as a mere motion in the old cause. See District Court Civil Cases and Actions, Part I.B.9 (Petition for QDRO) (listing $213 local consolidated civil fee + $137 state consolidated civil fee; note: "treated as an original filing")(**Ex. 3**, at APP-089); District Court Civil Filing Fees, Part I(1)–(2) (new-case fees of $213 local and $137 state; only $35/$45 apply to subsequent filings, with listed family-law exceptions that do not include a post-judgment QDRO) (**Ex. 4**, at APP-125, APP-126).

14.    Texas procedural law requires both subject-matter invocation and personal jurisdiction in that new proceeding. A civil suit commences by petition filed with the clerk and is numbered consecutively, *Tex. R. Civ. P. 22–23*; citation must issue and be served in the form *Rule 99* prescribes. Strict compliance with service rules is required to confer personal jurisdiction; absent valid service (or waiver/appearance) the court cannot bind the respondent. See *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152–53 (Tex. 1994) (per curiam); *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (per curiam); *In re E.R.*, 385 S.W.3d 552, 566–67 (Tex. 2012) (no presumptions in favor of service).

15.    New petition, new fees, new cause number. The OCA schedules treat a post-judgment QDRO as a **new original filing** carrying the full new-case fee; by design, it is not a "subsequent filing" in the old cause. This necessitates **a new docket number** and compliance with *Rules 22–23*. A judgement of new petition is

appealable, Plaintiff alleges RICO conspirators in this decade long widespread racketeering activities scheme intentionally use the temporary order as a vehicle to preclude Texas victims from accessing judicial review, allowing the racketeering scheme to continue.

16.     Service and personal jurisdiction. Because the petition seeks operative relief affecting ERISA plan property and the rights of nonparties (e.g., plan administrators), *Rule 99* **citation** and **service** are required to confer personal jurisdiction over those parties. *Wilson*, *Primate*, *Uvalde Country Club*, and *In re E.R.* mandate strict compliance.

17.     Jurisdictional consequence. A temporary order purporting to affect retirement benefits before judgment (not a QDRO) entered without a new petition, payment of the required filing fee, new case number, and *Rule 99* service is procedurally defective under *Fam. Code § 9.102* and *TRCP 22–23/99* for failure to commence and serve the post-decree petition; void as to any party not served and voidable otherwise.

18.     The exhibits and authorities warrant reconsideration. They confirm that any lawful post-judgment division of ERISA benefits must proceed through a new QDRO petition, with payment of $350 filing fees and proper service. Any unlawful prejudgment attempts to reach ERISA plan assets both undercuts federal ERISA requirements and fails Texas's jurisdictional prerequisites; it is unlawful on three independent grounds: it violates the Texas Rules of Civil Procedure, exceeds constitutional limits on judicial authority, and conflicts with Texas statutes. This supports vacatur of the Dismissal Order and permits Plaintiff's federal claims, including ERISA-based and RICO predicates, to proceed on the merits.

**E.    New, Previously Unavailable Evidence exposes the State of Texas, a new victim of the alleged enterprise, scheme, and pattern.**

19.    The **Exhibit 3** and **Exhibit 4** are persuasive administrative materials offered to evidence statewide practice and pattern; any harm to the State of Texas is pleaded solely to show enterprise/scheme/pattern and not as a basis for Plaintiff's relief. These materials are material and were not previously in the record despite reasonable diligence.

20.    **Exhibit 3** and **Exhibit 4** tend to show that each temporary order purporting to affect retirement benefits before judgment (not a QDRO) issued by a Texas family court may evade the $350 mandatory filing fee owed to the State of Texas treasury; to the extent *§ 31.04* applies to judicial services, such conduct may constitute theft of service under *Tex. Penal Code § 31.04*, subject to supporting authority and proof. DeAngelis and Attorney Defendants intentionally or knowingly secured performance of those Texas court services knowing they are provided only for compensation and with intent to avoid payment, by (a) styling the request as a "motion for interim attorney fees" inside the existing case; (b) granting QDRO relief through temporary order; (c) omitting any new-case filing and citation; and (d) directing or permitting the clerk to process and the court to act without collecting the required fee. The offense, if established by competent evidence and applicable law, was complete when the court performed the services (accepting, docketing, processing, and entering the order) and no $350 new-case fee was paid or assessed for that QDRO. Harms to the State of Texas are pleaded solely to evidence enterprise, scheme, and pattern; Plaintiff seeks relief only for Plaintiff's injuries proximately caused by Defendants. Plaintiff does not rely on *§ 31.04* as a standalone RICO predicate.

21.     Counsel for the Tarrant County Criminal District Attorney's Office **(**if counsel of record in this case**)** may present a conflict of interest when representing DeAngelis. TCCDA counsel have a duty to prosecute crime for the State interest; that sovereign interest may materially limit their position defending DeAngelis in her individual capacity.

22.     The Court may issue a show-cause order sua sponte, and it retains inherent power to supervise attorneys appearing before it and protect the integrity of its proceedings. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991). Where filings in this case are implicated, the Court may also proceed under *Fed. R. Civ. P. 11(c)(3)*. To the extent a conflict is shown, the Court may grant further relief consistent with Fifth Circuit standards. See *In re American Airlines, Inc.*, 972 F.2d 605, 611–12 (5th Cir. 1992).

23.     In this Court, the Texas Disciplinary Rules and the ABA Model Rules provide guidance on professional responsibility, subject to this Court's Local Civil Rules governing attorney conduct and admission. Representation may be prohibited where responsibilities to another client (the State of Texas) materially limit the representation. *ABA Model Rule 1.7(a)(2)*; *TDRPC 1.06(b)(2)*. A criminal prosecutor's institutional obligations to the sovereign *may be* materially limited by simultaneously defending an individual whose conduct overlaps with matters within the office's remit.

24.     If TCCDA counsel has appeared as defense counsel here**,** prosecutors have duties that constrain advocacy positions that could compromise the public interest. *ABA Model Rule 3.8*; *TDRPC 3.09*. Counsel should explain the authority for the appearance and why appearing as defense counsel for an individual-capacity

defendant is consistent with these obligations and with the Office's independent enforcement role (if permitted by governing law and this Court's rules).

25.    Consent and informed consent. Even if theoretically consentable, conflicted representations require informed consent confirmed appropriately; some conflicts are non-consentable. *ABA Model Rule 1.7(b)*; *TDRPC 1.06(c)*. Counsel should identify the proper governmental authority that purportedly granted informed consent, and explain why the conflict is consentable under these rules and whether any purported consent satisfies applicable governmental-consent requirements.

26.    In light of the Court's inherent authority, Plaintiff requests an order to show cause and a hearing (if TCCDA counsel is counsel of record), tailored to issues within this case and the Court's supervisory authority.

### F.    New, Previously Unavailable Evidence.

27.    Plaintiff respectfully submits **Exhibit 5** (an Order on Interim Attorney's Fees entered in *In the Matter of the Marriage of Angelia Dedek-Christon and R.D. Christon*, Cause No. C2022-0409A, in the 466th Judicial District Court, Comal County, Texas, signed on December 2, 2024), which is material and could not, despite reasonable diligence, have been presented earlier. The evidence bears directly on (i) a RICO predicate under *18 U.S.C. § 664* and (ii) an ERISA anti-alienation violation, and would likely change the outcome.

- First, **Exhibit 5** at APP-134, shows the use of a state-court temporary order to compel encumbrance and diversion of ERISA plan assets to pay attorneys' fees; that conduct fits *§ 664*'s prohibition on "embezzl[ing], steal[ing], or unlawfully abstract[ing], or convert[ing]" assets of an employee benefit plan,

and it supplies a racketeering act within the meaning of *18 U.S.C. § 1961(1)*. See *18 U.S.C. § 664*.

- Second, because Texas only permits post judgment QDROs, the prejudgment vehicle to obtain a 401(k) plan loan functions as an assignment or alienation of benefits barred by *29 U.S.C. § 1056(d)(1)* and falls outside the sole domestic-relations exception, *§ 1056(d)(3)*. See *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 371–76 (1990) (anti-alienation is stringent; no extra-statutory exceptions); *Boggs v. Boggs*, 520 U.S. 833, 851–53 (1997) (domestic-relations claims must proceed, if at all, through the QDRO mechanism); *Kennedy*, 555 U.S. at 300–05 (2009) (plan must follow ERISA and plan documents); *E-Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103–06 (5th Cir. 1991); *Goff v. Taylor*, 706 F.2d 574, 579–82 (5th Cir. 1983).

- Third, the documents establish open-ended continuity in a statewide, decade-long RICO scheme, under *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241–42 (1989): the compelled-loan tactic is inherently repeatable in other cases, presents a continuing threat of similar predicate acts, and is not cabined to a single, isolated transaction. At the pleadings stage, *Rule 12* requires crediting these well-pleaded facts and reasonable inferences; taken as true, they revive the *§ 1962(d)* conspiracy and *§ 1962(c)* pattern allegations and confirm a live ERISA-fund embezzlement scheme anchored in Texas state-court proceedings allegedly colluded in by members of the State Bar

23

of Texas. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

- Finally, it is alarming that Yan was compelled by an unlawful order to take a loan from his ERISA plan; other Texas orders alleged in this suit contain similar language. This "loan-label" tactic presents an ongoing risk: ERISA's anti-alienation rule, *29 U.S.C. § 1056(d)(1)*, bars assignment or alienation of plan benefits, yet nominally permissible plan loans, pretextually styled as "spousal support" can be used to fund forbidden purposes (e.g., attorney's fees), thereby sidestepping that protection. Because **money is fungible**, counsel may not prioritize fee collection over a client's subsistence. Other service industries (e.g., health care or higher education) cannot siphon ERISA assets by relabeling collectible obligations as "basic living expenses." However, a monopolized legal-services association has utilized family-court temporary orders, typically not directly appealable, as the vehicle for this relabeling.

- The State Bar of Texas, acting as a market-participant-controlled regulator, adopted the ERISA "loan-label" abstraction mechanism. This decades-long, widespread fee-collection practice circumvents ERISA's anti-alienation protections and constitutes anticompetitive, exclusionary conduct under Sherman Act *§ 2*, deprioritizing non-participating cross-market service industries and increasing their uncollectible fee losses by diverting client liquidity through pretextual "support" orders. It also inflicts consumer harm and cross-market distortion by depriving non-participating creditors in other service industries

24

(e.g., healthcare, higher education, housing, utilities) of equal access to collectible funds. The practice functions as a privileged collection mechanism available only to participating attorneys, a mechanism no other service sector can lawfully replicate, and it lacks any legitimate procompetitive justification.

**G.    New, Previously Unavailable Evidence.**

28.    Plaintiff respectfully submits **Exhibit 6** (an affidavit signed by opposing party Fuyan Wang on October 18, 2025, counsel Leslie Barrows' former client)

29.    In **Exhibit 6**, Fuyan Wang testified that counsel Leslie Barrows filed a motion for interim attorney fees on her behalf. She attended a hearing for that motion. The judge awarded $50,000 from Yan's 401(k) to pay attorney's fees to counsel for both parties, Barrows and Pigg, $25,000 each. Fuyan Wang further testified that she paid Barrows' attorney's fees accordingly, after receiving the check issued by U.S. Bank.

30.    Plaintiff was not able to obtain this affidavit until October 18, 2025.

**V.    Conclusion**

31.    For the reasons above, the Court should grant the Motion to Reconsider under *Rule 54(b)*. The specific relief sought is stated in the Motion.

Respectfully submitted,

/s/ *Conghua Yan*
Conghua Yan, Pro Se Plaintiff
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com

## Certificate of Service (Fed. R. Civ. P. 5(b))

On October 20, 2025, I filed the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the Court's CM/ECF system. I certify that the CM/ECF system will send notice of this filing to all counsel of record who are registered CM/ECF users. I further certify that I served a true and correct copy of the foregoing on any non-CM/ECF participant(s) listed below by U.S. Mail/certified mail/commercial carrier/email by consent at the address(es) shown. If no non-CM/ECF recipients are listed, there are none.

/s/ *Conghua Yan*
Conghua Yan, Pro Se Plaintiff
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com