**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION**

|  |  |
|---|---|
| CONGHUA YAN,<br> Plaintiff,<br><br>v.<br><br>STATE BAR OF TEXAS, et al.,<br> Defendants. | )<br>)<br>)<br>)<br>) Case No. [4:23-cv-00758-P-BJ]<br>)<br>)<br>)<br>) |

# PLAINTIFF'S RESPONSE IN OPPOSITION TO PIGG'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS

(HOOK: RULE 12(C) REQUIRES THE COURT TO ACCEPT THE THIRD AMENDED COMPLAINT'S WELL PLEADED FACTS AS TRUE, NOT REPLACE THEM WITH MR. PIGG'S NARRATIVE)

Table of Contents

I.    INTRODUCTION AND HOOK ...................................................................3

II.    PROCEDURAL POSTURE ......................................................................4

IV.    ARGUMENT............................................................................................6

    A.    Hook 1: Pigg's "Closed Pleadings" Argument Does Not Justify Judgment on the Merits ..........................................................................................................6

    B.    Hook 2: Pigg's Motion Relies on Extrinsic Facts and Argumentative Labels That Cannot Support Rule 12(c) Judgment ...........................................................7

    C.    Hook 3: The TAC Plausibly Alleges a Civil RICO Conspiracy Involving Pigg ...............................................................................................................14

    D.    Hook 4: The TAC's Antitrust Allegations, Read as a Whole and Liberally Construed, Are Sufficient at the Rule 12(c) Stage.................................................18

    E.    Hook 5: The Constitutional and Section 1983 Claims Plausibly Allege State Action Through Joint Participation With State Actors .........................................22

    F.    Hook 6: Even If the Court Identifies Any Defect, the Proper Remedy Is Targeted Leave To Amend, Not Prejudicial Judgment on the Pleadings .............23

V.    RELIEF REQUESTED...........................................................................24

CERTIFICATE OF SERVICE .......................................................................24

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff Conghua Yan ("Plaintiff" or "Yan") files this Response in Opposition to Defendant William Albert Pigg's ("Pigg") Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c) ("Mot"), ECF No. 191, and respectfully shows the Court as follows:

## I.    INTRODUCTION AND HOOK

1.    Pigg asks the Court to do exactly what Rule 12(c) forbids: disregard the well pleaded factual allegations of the Third Amended Complaint ("TAC," ECF No. 60) and instead credit his extra-pleading factual narrative, grievance history, and "Appendix" materials that are not part of the pleadings.

2.    When the TAC is read as a whole, with all reasonable inferences drawn in Yan's favor, it plausibly alleges that Pigg knowingly joined an enterprise that used fraudulent Qualified Domestic Relations Orders ("QDROs"), wire and mail communications, and ERISA plan misappropriations as racketeering acts; that Pigg joined a larger anticompetitive scheme tied to those acts; and that he jointly participated with state actors to deprive Yan of property and due process. Pigg's own Rule 12(c) motion confirms this ERISA and *18 U.S.C. § 664* premise: he admits that the First Claim for Relief identifies him as a "Culpable Person" and lists racketeering predicates including *18 U.S.C. §§ 1341*, *1343*, *664*, *1349*, and *1027*. Mot. 12 (citing TAC at 35–38, 42–45). By his own description, the TAC facially alleges ERISA-plan-based racketeering predicates against him.

3.    The fact that Yan is pro se and that the TAC is lengthy **does not** change the standard. It only requires the Court to construe the pleading liberally while still applying *Twombly* and *Iqbal*. Pigg's motion therefore should be denied. At a

minimum, if the Court identifies any curable defect as to any claim, the proper remedy is targeted leave to amend, not judgment on the pleadings with prejudice.

## II.    PROCEDURAL POSTURE

5.    Yan filed his Third Amended Complaint ("TAC"), ECF No. 60, asserting federal racketeering, antitrust, constitutional, and civil-rights claims arising from an alleged enterprise that misused Texas family-court proceedings and QDROs to divert ERISA plan assets and suppress competition.

6.    Other defendants moved to dismiss under Rule 12(b)(6). Pigg instead filed an Answer to the TAC. ECF No. 73; see also ECF No. 191 at 9 (acknowledging he answered rather than moving under Rule 12(b)).

7.    The Court later entered a Final Judgment that, as the Fifth Circuit held, improperly included Pigg even though his rights and liabilities had not been adjudicated. On appeal, the Fifth Circuit corrected that error and remanded so that this Court could adjudicate the claims against Pigg. Pigg therefore cannot rely on earlier Rule 12(b)(6) rulings as if they had already disposed of the claims against him.

8.    After remand, Pigg filed the present Rule 12(c) motion, ECF No. 191, arguing primarily that: (a) the pleadings are closed and Yan has had "multiple opportunities" to amend; (b) the TAC fails *Twombly* and *Iqbal* as to RICO and does not allege at least two racketeering acts by Pigg; (c) the antitrust claim does not plead facts specifically about Pigg; and (d) Pigg is a private actor who cannot be liable on the constitutional and 42 U.S.C. § 1983 claims.

9.    These are legal arguments about the sufficiency of the TAC on the face of the pleadings. The Rule 12(c) lens therefore controls.

## III.    RULE 12(c) STANDARD

9.    Rule 12(c) allows a party to move for judgment on the pleadings "after the pleadings are closed, but early enough not to delay trial." Fed. R. Civ. P. 12(c). In the Fifth Circuit, a Rule 12(c) motion is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6). The Court must accept all well pleaded factual allegations as true, view them in the light most favorable to the nonmovant, and determine whether the complaint states a plausible claim for relief. See, e.g., *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002).

10.    Under *Twombly* and *Iqbal*, the Court **disregards** pure legal conclusions, but accepts nonconclusory factual allegations and then asks whether those facts, taken as true, plausibly state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). A complaint is not required to prove the case at the pleading stage; it need only "nudge[] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

11.    The Fifth Circuit has emphasized that a Rule 12(b)(6) motion is "viewed with disfavor and is rarely granted" and that dismissal is proper only if the plaintiff "would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 418–19 (5th Cir. 2004) (internal quotation marks omitted). That same standard applies under Rule 12(c). See *id*.; *Great Plains*, 313 F.3d at 312–13.

12.    Moreover, where a plaintiff is pro se, the Court must construe the complaint liberally and hold it to less stringent standards than pleadings drafted by lawyers, even while applying *Twombly* and *Iqbal*. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Fifth Circuit instructs that courts should "look beyond the [formal] complaint" and treat later pro se filings as clarifying or embellishing the original

allegations. See *Wright v. El Paso Cnty. Jail*, 642 F.2d 134, 135 n.1 (1981); *Howard v. King*, 707 F.2d 215, 220 (5th Cir. 1983). In addition, a complaint states a claim as long as it alleges facts upon which relief can be granted, "even if it fails to categorize correctly the legal theory giving rise to the claim." *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, slip op. at 13 n.7 (5th Cir. June 20, 2018).

13.    On a Rule 12(c) motion, the Court is generally limited to the pleadings, documents attached to the complaint, and matters of which it may take judicial notice. If a defendant asks the Court to consider matters **outside** the pleadings and the Court does **not** exclude them, the motion must be converted to one for summary judgment under Rule 12(d), and the nonmovant must be given a fair opportunity to present evidence. Fed. R. Civ. P. 12(d). In applying this standard, the Court must evaluate the TAC as it is actually pleaded, not on any substituted description of different claims or theories. The Rule 12(c) inquiry focuses on the factual allegations and claims in the operative complaint in this case, not on later events or prior shorthand characterizations in other rulings.

## IV.    ARGUMENT

## A.    Hook 1: Pigg's "Closed Pleadings" Argument Does Not Justify Judgment on the Merits

12.    Pigg is correct that the pleadings are closed for Rule 12(c) purposes now that he has answered. See Fed. R. Civ. P. 7(a), 12(c); ECF No. 191 at 10–11. That fact means only that his motion is procedurally proper. It does not mean he is automatically entitled to judgment.

13.    Rule 12(c) still requires the Court to accept the TAC's factual allegations as true and ask whether they plausibly state a claim. *Great Plains*, 313 F.3d at 312–13; *Priester*, 354 F.3d at 418–19.

14.     Pigg's reliance on the Court's prior admonition that Yan should not file further amended complaints absent extraordinary circumstances, ECF No. 58, goes to whether the Court might allow another amendment. It does not change the standard for evaluating the sufficiency of the TAC already on file. See *Priester*, 354 F.3d at 418–19.

15.     Nor does Pigg's rhetoric about "nine bites at the apple," bar grievances, or a separate "Lawsuit 2" supply a substantive ground for judgment on the pleadings. Those facts are not part of the TAC; they appear only in Pigg's narrative and his Appendix. ECF No. 191 at 5–9, 9–10. They are not assumed true at this pre-discovery stage and, if considered, would require conversion to summary judgment under Rule 12(d).

16.     The only proper questions on Rule 12(c) are what the TAC actually alleges and whether those allegations, taken as true and construed liberally in favor of a pro se plaintiff, plausibly state at least one claim against Pigg. Pigg's first argument does not answer those questions and cannot support judgment on the pleadings.

## B.     Hook 2: Pigg's Motion Relies on Extrinsic Facts and Argumentative Labels That Cannot Support Rule 12(c) Judgment

**17.**     Throughout his Statement of the Case and Procedural History, Pigg recounts his version of the underlying divorce, his personal view of Yan's mental health, CPS reports, police calls, settlement offers, withdrawal, bar grievances, and extensive discussion of the parties' minor child, who is not a party to this case, as well as a second federal case that Judge O'Connor dismissed. ECF No. 191 at 5–9. He also fills his motion with litigation-history rhetoric and labels such as "obsessive," "conspiracy theories," "disorganized," and "fanciful." He even places the non party minor child at the center of his narrative, as if parentage and custody questions could

Page | 7

somehow defeat the federal RICO, antitrust, ERISA, and § 1983 claims pleaded here. Dragging a non party child into a Rule 12(c) briefing in this way is improper and irrelevant to the facial sufficiency of the TAC.

18.     Yan is particularly sensitive to this line of attack. Having grown up under a communist, single-party regime, he is familiar with the tactic of **branding dissenters as mentally unstable** in order to discredit those who question official conduct instead of addressing the substance of their complaints. That kind of ad hominem tactic has no place in federal civil procedure and cannot substitute for a Rule 12(c) analysis of the pleadings.

19.     None of those matters are pleaded in the TAC. They are disputed merits issues and argumentative characterizations that cannot be resolved or credited at the Rule 12(c) stage. Rule 12(c) is not a vehicle to weigh credibility or to punish a pro se litigant for filing grievances or other lawsuits. If the Court considers such material at all, Rule 12(d) requires conversion to summary judgment and an opportunity for discovery.

20.     Pigg's Rule 12(c) motion thus rests heavily on assertions that are either (1) factual matters outside the pleadings and supplied only by his own narrative and Appendix, or (2) argumentative labels and legal conclusions. Under Rule 12(c) and Iqbal, none of these statements may be assumed true or used as a basis for judgment on the pleadings. The following examples are illustrative:

**Mental–health characterizations and "obsessive" behavior**

21.     Pigg describes Yan's state of mind and mental health in terms that appear nowhere in the TAC, including assertions that Yan was "obsessed" with certain issues and exhibited mental effects of prolonged sleeplessness. These are Pigg's opinions and narrative, not factual allegations of the TAC. Rule 12(c) requires

the Court to accept Yan's well pleaded facts as true, not Pigg's characterization of Yan as "obsessed" or mentally impaired. These statements cannot be credited as true for purposes of this motion.

**CPS, police, and criminal-justice assertions**

22.     Pigg offers his own version of CPS and police activity, including counts of CPS and police contacts and his view that most were not accepted or did not result in charges. These details are not alleged in the TAC. They are drawn from Pigg's memory and Appendix and go to Yan's supposed credibility, not to the elements of any claim. They are classic summary-judgment material, not Rule 12(c) material, and may not be used to override the TAC's well pleaded factual allegations.

**Surrogacy, parentage, and state-family-law merits narrative**

23.     Pigg devotes substantial text to his version of the underlying family-law issues, including surrogacy, parentage, and how he believed Texas family law applied. None of those issues appears in the TAC's federal RICO, antitrust, ERISA, or § 1983 allegations. They are underlying family-law merits disputes and are not part of the Rule 12(c) record.

**Motives and "conspiracy theory" labels for Yan's decisions**

24.     Pigg repeatedly attributes motives and labels Yan's beliefs as "unfounded conspiracy theories," and characterizes Yan as reacting "badly" whenever he did not get what he wanted. These are not allegations in the TAC. They are Pigg's argumentative characterizations of Yan's motives and attitudes, and they cannot be treated as true facts for Rule 12(c) purposes.

**Even under Pigg's own narrative, the settlement discussion is consistent with coordinated conduct, not exoneration.**

25.     Pigg emphasizes that he drafted a proposed motion and participated in settlement discussions with opposing counsel that, in his view, would have resolved the state-court case by giving Yan certain conservatorship and support terms. See Mot. 5–7. Even if the Court were to accept that description as true arguendo, it does not undercut the plausibility of Yan's federal claims. Yan's theory is that Barrows and Pigg had already participated in QDRO-related predicate acts and ERISA-plan diversions; a later "settlement" that leaves those orders in place or uses them as a bargaining baseline is at least consistent with, and does not negate, an agreement among the attorneys to cover up earlier predicate acts rather than expose or remedy it. In other words, even on Pigg's own telling, the lawyers coordinated their actions and communications in a way that, at a minimum, is consistent with conduct in furtherance of the alleged § 1962(d) conspiracy and with "damage control" arising from the fraudulent QDRO orders. That alleged coordination fits comfortably within the pleaded pattern and enterprise; it does not entitle Pigg to judgment on the pleadings

**Litigation history and "nine bites at the apple" rhetoric, including "Lawsuit 2"**

26.     Pigg recites Yan's grievances and other litigation and contends that a second federal lawsuit ("Lawsuit 2") was filed "to circumvent the admonition of this Court prohibiting him from filing any more amended Complaints," concluding that "Yan has already had nine bites at the apple against Pigg." Mot. 9. The TAC does not plead these supposed motives or characterizations; they are Pigg's inferences based on extrinsic documents.

27.     In any event, the undisputed procedural timeline shows that "Lawsuit 2" is irrelevant to this Rule 12(c) motion. This action was filed on July 21, 2023. The Court entered Final Judgment in this case on April 23, 2024. Yan filed his notice of

appeal on June 12, 2024. The second federal action was not filed until June 20, 2024, nearly two months after Final Judgment and eight days after the notice of appeal. As a matter of chronology, the second case could not have influenced the Court's April 23, 2024 merits decision in this case, and it cannot retroactively justify dismissing the claims here on the pleadings. Any admonition regarding "further amended complaints" was directed to amendments in this docket, before judgment, not to the filing of a separate action after Final Judgment and after a notice of appeal.

28.    More fundamentally, Rule 12(b)(6) and Rule 12(c) require the Court to judge the sufficiency of the complaint on the face of the pleadings in this case. A separate lawsuit filed in 2024 cannot alter what factual statements were alleged in the TAC in 2023, cannot change which well pleaded facts must be assumed true for Rule 12 purposes, and cannot make an otherwise sufficient complaint "insufficient on its face." The pleadings in the second case are not part of the TAC or the Rule 12(c) record here. Pigg's reliance on "Lawsuit 2" is therefore temporally, procedurally, and doctrinally irrelevant to whether the TAC in this case states a claim against him.

**Mischaracterization of the RICO theory and Yan's beliefs**

29.    Pigg's reliance on the Court's prior admonition that Yan should not file further amended complaints absent extraordinary circumstances, ECF No. 58, goes to whether the Court might allow another amendment. It does not change the standard for evaluating the sufficiency of the TAC already on file. See *Priester*, 354 F.3d at 418–19.

30.    Pigg recasts Yan's RICO allegations and motives by asserting that Yan "apparently" believes his law license is funded by "unspecified racketeering" and by suggesting that only § 1343 and § 1962(d) are really at issue, while ignoring the § 664 and § 1027 predicates Pigg himself just acknowledged. Those sentences are not neutral descriptions of the TAC; they are argumentative paraphrases that omit key

pleaded statutes and factual allegations. The operative record is what the TAC actually alleges, not Pigg's summary of what "appears" after he labels the allegations "disorganized and rambling."

**Adjectives: "disorganized and rambling," "fanciful," "outlandish," "non-specific"**

31.    Pigg's reliance on the Court's prior admonition that Yan should not file further amended complaints absent extraordinary circumstances, ECF No. 58, goes to whether the Court might allow another amendment. It does not change the standard for evaluating the sufficiency of the TAC already on file. See *Priester*, 354 F.3d at 418–19.

32.    Pigg repeatedly labels Yan's allegations as "disorganized," "fanciful," "outlandish," and "non-specific," including the allegations that Pigg joined a QDRO-based scheme to misdirect ERISA plan assets. These are pure argument. Under Iqbal, the Court itself decides which parts of the complaint are legal conclusions, then assumes the remaining factual allegations are true and asks whether they plausibly state a claim. Pigg's adjectives do not alter the Rule 12(c) standard and cannot substitute for analysis of the TAC's well pleaded facts.

33.    The allegation that the QDROs were altered on their face (TAC ¶¶ 71-72), specifically, that Barrows altered the "alternate payee" and "purpose" set by the original associate judge's report (¶ 72) and inserted fabricated spousal support language stating "the Court heard Respondent's request for Spousal Support" and "Yan was ordered/required to pay spousal support" (¶¶ 71, 97) when no such motion was filed (¶ 54), no such hearing occurred (¶¶ 56, 97, 165), and no such order was ever entered (¶ 97), is a foundational fact that controls the subsequent application of law. Indeed, U.S. Bank itself admitted in writing that the "domestic relations order"

it received "was in direct conflict with the associate judge's factual order dated April 13th, 2022" (¶ 407).

34.    Whether the alleged QDROs were altered on their face is a question of fact that does not require judicial discretion; Plaintiff has requested a jury finding on that factual issue in this pleading. At the Rule 12(c) stage, the Court must accept Plaintiff's well-pleaded allegation that the QDROs were altered as true, reserve disputed factual issues for the jury, and may not resolve that factual dispute in Defendant's favor. See *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998) ("As a procedural matter, … a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain. … we must assume the truth of factual allegations in the complaint. … With these standards in mind, we turn to the merits"). If Pigg contends that the QDROs were not altered, that disagreement simply confirms that this is a factual issue for the jury (or, at most, for summary judgment on an evidentiary record), not a basis for dismissing the claim on the pleadings. Once that factual finding is made, the Court need only determine, as a matter of law, whether the domestic relations order that counsel altered qualifies as a "qualified domestic relations order" under ERISA, 29 U.S.C. § 1056(d)(3), and whether ERISA therefore controls. See *Mack v. Kuckenmeister*, 619 F.3d 1010, 1018–19 (9th Cir. 2010) ("[w]hether a DRO constitutes a valid QDRO under ERISA is a question of law"); *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285 (2009) (QDRO qualification is a legal determination under ERISA).

35.    Because Pigg's motion is built on extra-pleading factual narratives, litigation-history rhetoric, and argumentative labels, those statements cannot be credited as true or used to override the TAC's well pleaded allegations. The Court should disregard them for purposes of this Rule 12(c) motion and apply the

governing standard to the Third Amended Complaint as actually pleaded. See *Molzan v. Bellagreen Holdings, LLC*, No. 23-20492, slip op. at 7-8 (5th Cir. Aug. 12, 2024) (reversing dismissal where district court "erroneously assumed the veracity" of defendants' assertions over plaintiff's well-pleaded allegations).

36.     This is not the end of this Court's inquiry, however. Under Texas law, Judgments issued without authority are void as a matter of Texas law and, therefore, can have no effect under *28 U.S.C. § 1738*. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010). Constitutionally, infirm judgments are not entitled to full faith and credit in federal courts. See *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482-83 (1982); See also *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 386 (1996) (noting that state court judgments are binding only if the state court had power to enter the judgment). In Texas practice, a QDRO is a post-judgment order that is independently reviewable on appeal. Pigg has not briefed this Court on what statutory authority or subject-matter jurisdiction the associate judge's court had to render an interlocutory QDRO in this case. A judgment is void if the court that rendered it lacked jurisdiction over the subject matter or the parties, *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996).

## C.     Hook 3: The TAC Plausibly Alleges a Civil RICO Conspiracy Involving Pigg

37.     As an initial matter, Pigg has already acknowledged that the TAC pleads him as a "Culpable Person" for racketeering predicates that include 18 U.S.C. §§ 1341, 1343, 664, 1349, and 1027. Mot. 12 (citing TAC at 35–38, 42–45). In light of that admission, the RICO analysis must proceed on the pleaded § 664/ERISA and mail/wire fraud predicates, not on Pigg's later paraphrase of the case as a single vague "fraudulent QDRO" dispute.

**Elements and pleading standard**

38.     To state a civil RICO claim under *18 U.S.C. § 1962(c)* and a conspiracy claim under *§ 1962(d)*, a plaintiff must allege: (1) a person who (2) through a pattern of racketeering activity (3) participates in the conduct of an enterprise's affairs (4) causing injury to the plaintiff's business or property. *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). A "pattern of racketeering activity" requires at least two predicate acts within ten years. *18 U.S.C. § 1961(5)*; H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239–42 (1989).

39.     For a conspiracy under *§ 1962(d)*, a plaintiff need not show that each conspirator personally committed two predicate acts; it is enough to plead that the defendant knew of, and agreed to further, the overall racketeering scheme. See *St. Germain*, 556 F.3d at 263–64.

**The TAC alleges multiple ERISA and QDRO based racketeering acts, not a single episode**

40.     Pigg asserts that Yan has "only alleged one such instance" of racketeering as to Pigg, pointing to TAC paragraphs 163–65 about Barrows drafting actions for U.S. Bank and Pigg signing "it." ECF No. 191 at 12–13. That assertion ignores how the TAC and the record describe the enterprise and pattern.

41.     Yan has consistently alleged that the RICO enterprise used an original QDRO rendition, a first altered QDRO order, and a second altered QDRO order rendered on or about April 26 and May 26, and that these altered QDROs were used to divert ERISA plan assets unlawfully.

**The TAC Alleges Specific Predicate Acts by Pigg, Not "One Instance"**

42.     Contrary to Pigg's characterization, the TAC alleges multiple predicate acts involving Pigg, each supported by particular factual allegations, including:

Page | 15

| Date | TAC ¶¶ | Predicate Act Alleged |
|---|---|---|
| April 26, 2022 | ¶ 96, ¶ 162 | Wire fraud (18 U.S.C. § 1343): Pigg signed fraudulent order and submitted his signed copy back to the court. (TAC ¶ 96) |
| May 26, 2022 | ¶ 98, ¶ 163 | Wire fraud (18 U.S.C. § 1343): Pigg signed and submitted revised fraudulent garnishment order. (TAC ¶ 98) |
| June 21, 2022 | ¶ 99, ¶ 164 | Wire fraud & Mail fraud (§§ 1343, 1341): Pigg signed WRIT of garnishment mailed to Plaintiff's 401K administrator. (TAC ¶ 99) |
| June–Aug 2022 | ¶ 165 | Multiple wire fraud acts: Pigg participated in multiple telecommunications to Plaintiff's 401K administrator. (TAC ¶ 165) |
| August 5, 2022 | ¶ 101, ¶ 166, ¶ 171 | RICO conspiracy (§ 1962(d)): Pigg received Barrows' email: "In order for us to obtain our attorney's fee, we must say the order is for spousal support." (TAC ¶ 101) |
| August 2022 | ¶ 100, ¶ 105 | False statements (18 U.S.C. § 1027): Pigg lied to Plaintiff saying he did not sign these orders. (TAC ¶ 100) |
| September 2022 | ¶ 104, ¶ 167 | Aiding/abetting theft from benefit plan (§ 664): Pigg accepted Barrows' RICO conspiracy solicitation and consented to U.S. Bank dispensing fund. (TAC ¶ 104) |

43.     The TAC thus alleges at least seven separate predicate acts by Pigg spanning five months (April–September 2022), far exceeding RICO's two-act minimum. Pigg's "one instance" argument cherry-picks ¶¶ 163-165 while ignoring the surrounding paragraphs that allege additional acts on different dates.

44.     Moreover, for a § 1962(d) conspiracy claim, Pigg need not have personally committed two predicate acts, it is sufficient that he "knew of, and agreed to further, the overall racketeering scheme." *St. Germain*, 556 F.3d at 263-64. The TAC alleges exactly that: Pigg received the August 5, 2022 email soliciting his agreement to the conspiracy (TAC ¶ 101), and he "accepted" the solicitation (TAC ¶ 104).

**The TAC plausibly alleges Pigg's knowing agreement to the enterprise**

45.     Pigg also tries to recast Yan's allegations as "fanciful" claims that the State Bar pays for Pigg's law license with racketeering proceeds. ECF No. 191 at

12–13. But at the pleading stage, the relevant question is whether the TAC alleges facts from which the Court may reasonably infer that Pigg knew of, and agreed to further, the racketeering scheme.

46.     The TAC does so by alleging, among other things, that: (1) Pigg joined Barrows and DeAngelis in using a fraudulent QDRO to divert Yan's retirement benefits; (2) Pigg signed and transmitted QDRO related documents Barrows drafted for U.S. Bank in a way that furthered the *§ 664* and *§ 1027* violations; (3) Pigg's conduct was part of a broader scheme; and (4) Yan suffered a concrete injury in his ERISA benefits from these acts.

47.     The TAC further alleges that Pigg received direct financial benefit from the scheme: (1) Pigg was ordered to receive $25,000 award from the unlawful QDRO order "as an incentive for William Albert Pigg's do-not-appeal this unlawful order... in exchange for his cooperation." (TAC ¶ 70) (2) Pigg separately "persuaded Plaintiff to pay him $25,000 separately for his perceived honesty. Plaintiff was deceived by him and paid him accordingly." (TAC ¶ 100)

48.     These allegations of direct financial benefit support the inference that Pigg knowingly agreed to participate in the racketeering scheme for personal gain.

49.     Those allegations, coupled with the identification of specific federal statutes that are recognized RICO predicates, satisfy the *Twombly* and *Iqbal* plausibility threshold for a civil RICO conspiracy claim against Pigg at the pleadings stage.

**The prior 12(b)(6) rulings against other "Attorney Defendants" do not automatically decide Pigg's liability**

50.     Pigg suggests that because this Court previously dismissed RICO claims against other "Attorney Defendants" with prejudice, it should now simply

extend that reasoning to him. But the Fifth Circuit remanded precisely because Pigg's own rights and liabilities had not been adjudicated. On remand, the Court must evaluate the TAC's allegations as to Pigg himself. Rule 12(c) therefore does not permit judgment in his favor on the RICO claim.

## D.    Hook 4: The TAC's Antitrust Allegations, Read as a Whole and Liberally Construed, Are Sufficient at the Rule 12(c) Stage

51.    The prior FCR and Order reduced Yan's racketeering and antitrust theories to a generic accusation that the State Bar Defendants and Attorney Defendants conspired "to restrict market competition for legal services, launder money, and cover up ultra vires orders." That shorthand omits the specific ERISA-based and statutory predicates actually pleaded in the TAC.

52.    Pigg's own Rule 12(c) motion confirms that the TAC alleges more, and different, antitrust and racketeering theories than the prior "market competition / launder money" description.

53.    On the antitrust side, Pigg further admits that "Yan identifies Pigg as a 'Party' to his Antitrust claim in the Second Claim for Relief in his Third Amended Complaint. [Doc. 60, at 50, ¶ 205]," and that the TAC again names him in paragraph 226 when it references a $25,000 attorney-fee award. Mot. 13. In other words, Pigg accepts that he is expressly pled as an antitrust party; his only contention is that those allegations are insufficient, not that they do not exist.

## Pigg Misrepresents the TAC's Allegations Against Him

54.    Pigg argues that **"nowhere in the body** of his Antitrust allegations [Doc. 60 at 50-62, ¶¶ 206-275] does **Pigg's name appear** except in paragraph 226." Mot. 13. This argument is misleading and ignores basic federal pleading principles.

**The TAC's Express Incorporation Language**

55.    The Antitrust claim expressly *incorporates* all prior factual allegations. TAC ¶¶ 206-209 state:

- "Plaintiff incorporates by reference the sections 'FACTUAL BACKGROUND OF THIS SUIT' and 'STANDARD OF REVIEW' as if fully set forth herein." (TAC ¶ 206)

- "Plaintiff refers to every paragraph herein as Plaintiff's allegation." (TAC ¶ 207)

- "Plaintiff refers to every paragraph herein where the name of a person or entity is mentioned and its attachment as factual statements." (TAC ¶ 208)

- "Plaintiff refers to every sentence herein where the U.S. Code is mentioned as an allegation to its related party." (TAC ¶ 209)

This incorporation language appears in every claim in the TAC. Under federal pleading rules, incorporated allegations are treated "as if fully set forth" in the incorporating section. See Fed. R. Civ. P. 10(c).

**Specific Factual Allegations Against Pigg Incorporated Into the Antitrust Claim**

48.    The following paragraphs from Section V ("Factual Background of This Suit") are incorporated by reference into the Antitrust claim and contain specific, non-conclusory factual allegations against Pigg:

| TAC ¶ | Factual Allegation Against Pigg |
|---|---|
| ¶ 70 | Pigg was ordered to receive $25,000 from the unlawful QDRO order "as an incentive for William Albert Pigg's do-not-appeal this unlawful order... in exchange for his cooperation." |
| ¶ 72 | "Both William Albert Pigg and Samantha Ybarra consented and cooperated" in altering the QDRO to circumvent ERISA restrictions. |

| TAC ¶ | Factual Allegation Against Pigg |
|---|---|
| ¶ 74 | Pigg "engaged in multiple telecommunications with... Lori DeAngelis, and Samantha Ybarra, seeking their cooperation in her RICO conspiracy." |
| ¶ 93 | "Both Leslie Starr Barrows and William Albert Pigg consented to this unlawful proposed order." |
| ¶ 96 | On April 26, 2022, "Under a conspiracy, William Albert Pigg signed this fraudulent order." |
| ¶ 98 | On May 26, 2022, "William Albert Pigg signed and submitted [the revised fraudulent order] back to the court." |
| ¶ 99 | On June 21, 2022, "William Albert Pigg signed and submitted [the WRIT of garnishment] back to the court." |
| ¶ 100 | Pigg "chose to keep concealing the truth" and "persuaded Plaintiff to pay him $25,000 separately as a reward for his perceived honesty." |
| ¶ 101 | Pigg received Barrows' email stating "In order for us to obtain our attorney's fee, we must say the order is for spousal support… there is no way around it." |
| ¶ 104 | "Defendant William Albert Pigg accepted Defendant Leslie Starr Barrows' RICO conspiracy solicitation." |
| ¶ 105 | Pigg sent emails falsely stating "I did not sign off on that QDRO because it would not be true." |
| ¶ 107 | Pigg "carried out several Federal crimes and RICO racketeering activities." |
| ¶ 108 | Pigg "submitted his withdrawal within 48 hours" to "extricate himself from being held accountable." |

**These Allegations Support the Antitrust Claim**

49.    The Antitrust claim alleges that members of the State Bar conspired to use unlawful court orders to collect fees, with attorneys incentivized not to appeal. TAC ¶¶ 224, 229-231. The incorporated allegations against Pigg show exactly this:

- Pigg was ordered to receive $25,000 via an unlawful order without submitting any evidence (¶¶ 70, 226);

- Pigg did not appeal the order (¶ 70);

- Pigg "consented and cooperated" in the scheme (¶¶ 72, 93);

- Pigg received the email soliciting conspiracy "for us to obtain our attorney's fee" (¶ 101);

- Pigg "accepted" the solicitation (¶ 104).

**Pigg's "One Paragraph" Argument Fails**

50.    Pigg's claim that his name appears "only" in ¶ 226 ignores: (1) the express incorporation of more than thirteen paragraphs specifically naming him; (2) that ¶ 226 itself contains substantive allegations; and (3) that ¶ 205 lists him as a "Party" to the antitrust claim.

51.    Under Rule 12(c), the Court must read the TAC as a whole, including incorporated allegations. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* *551 U.S. 308, 322 (2007)* ("[C]ourts must consider the complaint in its entirety."). Pigg's selective reading of the complaint cannot defeat the claim at the pleading stage.

**The TAC States a Plausible Antitrust Claim**

52.    The TAC, as Pigg himself describes it, alleges that Pigg is a "Culpable Person" in a racketeering enterprise that includes statutory predicates under 18 U.S.C. §§ 664 and 1027 tied to ERISA plans, as well as mail and wire fraud; and that Pigg is one of the "Antitrust Defendants" named in the Second Claim for Relief, whose conduct is alleged to be part of a broader anticompetitive and monopolistic scheme involving the State Bar and family-court processes.

53.    Those allegations put Pigg on fair notice that he is being sued as one of the attorneys who joined the alleged anticompetitive and monopolistic scheme. Given Yan's pro se status, the Court should construe the antitrust claim liberally and permit it to proceed to discovery. See *Erickson*, 551 U.S. at 94.

54.   At the very least, Pigg has not shown that "no relief could be granted under any set of facts that could be proven consistent with the allegations." *Great Plains*, 313 F.3d at 313. Rule 12(c) judgment is therefore inappropriate.

## E.   Hook 5: The Constitutional and Section 1983 Claims Plausibly Allege State Action Through Joint Participation With State Actors

55.   Pigg's final arguments rest on the assertion that he is a "private actor" and that, because Yan sues him "in individual capacity," he cannot be liable under the Fourteenth Amendment, the Texas Constitution, or *42 U.S.C. § 1983*. ECF No. 191 at 13–14.

**"Individual capacity" is not the same as "private action"**

56.   The TAC's reference to suing Pigg "in individual capacity" simply means Yan seeks to hold Pigg personally liable, not in any official capacity. That is standard civil rights usage and does not concede that Pigg acted purely as a private actor.

**The TAC alleges joint participation with state actors, which is state action under Dennis v. Sparks**

57.   The TAC alleges that Pigg joined with state actors, including Associate Judge Lori DeAngelis and Tarrant County, in misusing QDROs and court orders to deprive Yan of his property and due process. Under long settled Supreme Court law, private persons who are "willful participants in joint action with the State or its agents" act under color of state law for purposes of § 1983 and constitutional claims. See *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982).

**Pigg's reliance on *Shelley v. Kraemer* is misplaced**

58.    Pigg cites *Shelley v. Kraemer* for the proposition that constitutional protections apply only to state action. ECF No. 191 at 13. Shelley is consistent with Yan's position, not Pigg's. Shelley held that judicial enforcement of private covenants constituted state action. 334 U.S. 1, 19–20 (1948). Here, Yan alleges that Pigg used judicial and quasi-judicial mechanisms to implement fraudulent QDROs and attorney fee awards, precisely the sort of conduct that falls within Shelley's concept of state action.

**At the pleading stage, Yan's joint participation allegations are enough**

59.    Whether Yan can ultimately prove joint participation is a merits question for later. At Rule 12(c), the Court must accept his allegations that Pigg conspired with Judge DeAngelis and Tarrant County to use state court processes to deprive him of property and due process. Those allegations plausibly state state action under *Dennis* and *Lugar*, and they are sufficient to defeat judgment on the pleadings on the constitutional and *§ 1983* claims.

**F.    Hook 6: Even If the Court Identifies Any Defect, the Proper Remedy Is Targeted Leave To Amend, Not Prejudicial Judgment on the Pleadings**

60.    Finally, even if the Court were to conclude that any of Yan's claims against Pigg is imperfectly pleaded, outright judgment on the pleadings with prejudice would be unwarranted.

61.    The Fifth Circuit has repeatedly emphasized that, in general, plaintiffs should be given at least one fair opportunity to cure pleading deficiencies before dismissal with prejudice. See *Great Plains*, 313 F.3d at 329. That principle applies with special force to pro se litigants. *Erickson*, 551 U.S. at 94.

62.    While this Court previously admonished that no further amendments would be granted absent "extraordinary circumstances," that admonition preceded

the Fifth Circuit's remand as to Pigg. To the extent the Court now concludes that any claim against Pigg could be cured by clarifying factual allegations already in the record, a narrowly tailored amendment focused solely on Pigg would be the appropriate remedy rather than harsh Rule 12(c) judgment with prejudice.

## V.    RELIEF REQUESTED

For the reasons stated above, Plaintiff respectfully requests that the Court:

1.  Deny Defendant William Albert Pigg's Motion for Judgment on the Pleadings under Rule 12(c), ECF No. 191, in its entirety;

2.  Alternatively, if the Court identifies any curable pleading defect as to any claim against Pigg, grant Yan leave to file a targeted amended complaint limited to those claims and defendant; and

3.  Grant any further and additional relief to which Yan may be justly entitled.

Respectfully submitted,

/s/ *Conghua Yan*
Conghua Yan, Pro Se Plaintiff
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com

## CERTIFICATE OF SERVICE

On December 11, 2025, I filed the foregoing document with the Clerk of Court for the United States District Court, Northern District of Texas, using the Court's CM/ECF system. I certify that the CM/ECF system will send notice of this filing to all counsel of record who are registered CM/ECF users. I further certify that I served a true and correct copy of the foregoing on any non-CM/ECF participant(s) listed

below by U.S. Mail/certified mail/commercial carrier/email by consent at the address(es) shown. If no non-CM/ECF recipients are listed, there are none.

/s/ *Conghua Yan*
Conghua Yan, Pro Se Plaintiff