# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF TEXAS

# FORT WORTH DIVISION

|  |  |
|---|---|
| CONGHUA YAN,<br>　　　Plaintiff, | )<br>)<br>) |
| v. | )<br>) Case No. 4:23-CV-758-Y |
| STATE BAR OF TEXAS, et al.,<br>　　　Defendants. | )<br>)<br>) |

**PLAINTIFF'S OBJECTIONS TO THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION ON DEFENDANT WILLIAM PIGG'S RULE 12(c) MOTION**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................2

TABLE OF AUTHORITIES ..............................................................................................2

I.     INTRODUCTION ......................................................................................................4

II.    STANDARD OF REVIEW ......................................................................................5

III.   OBJECTION NO. 1: THE FCR DID NOT MEANINGFULLY ENGAGE YAN'S CORE ARGUMENTS OR CONTROLLING AUTHORITIES ...........................6

    A.   RICO ...............................................................................................................6

    B. Antitrust .........................................................................................................13

    C. Section 1983 / Fourteenth Amendment ......................................................19

IV.   OBJECTION NO. 2: THE FCR SUPPLIED SUA SPONTE DISMISSAL THEORIES WITHOUT AFFORDING YAN FAIR NOTICE ...........................................................................................................26

V.    ALTERNATIVE OBJECTION: DISMISSAL WITH PREJUDICE IS UNWARRANTED ...................29

VI.   PRAYER FOR RELIEF ........................................................................................30

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Singh*, 480 F.3d 351 (5th Cir. 2007) .........................................................6

*Ackerson v. Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009) .................................5

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ...................................................21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................5, 15

*Bevill v. Fletcher*, 26 F.4th 270 (5th Cir. 2022) ..................................................21, 24

*Blue Shield of Va. v. McCready*, 457 U.S. 465 (1982) ..............................................18

*Boyle v. United States*, 556 U.S. 938 (2009) ..........................................................7, 8

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) .....................................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) .........................17

*Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) ....................................27

*Century Surety Co. v. Blevins*, 799 F.3d 366 (5th Cir. 2015) ...................................27

*Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219 (5th Cir. 2010) ..................................11

*Cornish v. Corr. Servs. Corp.*, 402 F.3d 545 (5th Cir. 2005) ...................................22

*Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307 (5th Cir. 2014) .......................15, 27

*Dennis v. Sparks*, 449 U.S. 24 (1980) ................................................................20, 21

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992) ......................19

*Erickson v. Pardus*, 551 U.S. 89 (2007) ............................................................5, 6, 30

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) ......................................................18

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) .........................5

*Hafer v. Melo*, 502 U.S. 21 (1991) ..........................................................................19

*Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) ......................................................30

*Hernandez v. Causey*, 124 F.4th 325 (5th Cir. 2024) ..............................................22

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ...................................................18

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) .................20

*Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636 (5th Cir. 2007) ..........................15, 27

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ..................................................20

*Pikaluk v. Horseshoe Entertainment, L.P.*, 810 F. App'x 243 (5th Cir. 2020) ...............22

*Polacek v. Kemper County*, 739 F. Supp. 2d 948 (S.D. Miss. 2010) ..........................23

*Priester v. Lowndes County*, 354 F.3d 414 (5th Cir. 2004) ......................................23

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) .......................................................17

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)......................................................................................8

*Salinas v. United States*, 522 U.S. 52 (1997).....................................................................................10

Shaikh v. Tex. A&M Univ. Coll. of Med., No. 16-20793 (5th Cir. June 20, 2018) ...............6, 30

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...............................14, 19

*Tower v. Glover*, 467 U.S. 914 (1984).................................................................................................21

*Tripathi v. St. Edward's University*, No. 1:25-CV-01203-RP, 2025 WL 2629968 (W.D. Tex. Aug. 27, 2025) .........23

*United States v. Delgado*, 401 F.3d 290 (5th Cir. 2005)...............................................................11

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966) ..................................................................18

*United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) ......................................................11

*United States v. Rosenthal*, 805 F.3d 523 (5th Cir. 2015) ...........................................................11

## Statutes

*18 U.S.C. § 1961(1)(B)* ..........................................................................................................................9

*18 U.S.C. § 1961(5)* ................................................................................................................................6

*18 U.S.C. § 1962(c)* ................................................................................................................................6

*18 U.S.C. § 664* ......................................................................................................................................9

*28 U.S.C. § 636(b)(1)* ............................................................................................................................5

*42 U.S.C. § 1983* ....................................................................................................................................4

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

## I.    INTRODUCTION

1.      Plaintiff Conghua Yan objects to the Findings, Conclusions, and Recommendation entered on February 19, 2026 ("FCR"), ECF No. 214, regarding Defendant William Albert Pigg's Rule 12(c) motion. The FCR recommends granting that motion and dismissing all claims against Pigg with prejudice. Yan objects on two grounds: (1) the FCR did not meaningfully engage Yan's core arguments or the controlling authorities he cited; and (2) the FCR went beyond the grounds Pigg actually asserted, supplying court-generated and erroneous dismissal theories without affording Yan notice or an opportunity to respond.

2.      The FCR accurately summarizes Pigg's motion as arguing **only** that: (a) the RICO claims fail under *Twombly/Iqbal* and for lack of two predicate acts; (b) Yan pleaded no facts supporting an antitrust claim against Pigg; and (c) Pigg is not a state actor for the constitutional and *§ 1983* claims. ECF No. 214, at 4; ECF No. 191, at 10, 12–14.

3.      The FCR did **not** resolve the motion on those grounds. Instead, it under-described the Third Amended Complaint ("TAC") by treating Pigg as if he were only thinly mentioned, even though the TAC alleges a multi-step sequence of Pigg-specific conduct, incorporates those factual allegations into the RICO and antitrust counts, and asserts a separate *42 U.S.C. § 1983* claim against him.

4.      That characterization is directly contradicted by the TAC itself: the Fifth Claim for Relief (ECF No. 60, PageID 1151–53) is captioned "William Albert Pigg, *U.S. Const. amend. XIV*, *42 U.S.C. § 1983*" and runs for nineteen paragraphs of Pigg-specific factual allegations and requested relief. A defendant with a standalone claim section devoted entirely to him is not "thinly mentioned." The FCR also characterized Yan's pleading as resting on conclusory allegations, but the TAC attached the actual conspiratorial instruments as exhibits: Exhibit 1 contains the emails

4

between Pigg, Barrows, and Ybarra, including the August 5, 2022 solicitation email (ECF No. 60 ¶¶ 100–105, PageID 1111–13); Exhibit 7 is the Associated Judge report bearing Pigg's signature consenting to the unlawful QDRO order (id. ¶ 93, PageID 1109); and Exhibit 8 is the garnishment court order Pigg signed on April 26, 2022 (id. ¶ 96, PageID 1110). A complaint that attaches the actual conspiratorial documents as exhibits cannot be dismissed as "conclusory" as to the facts those documents establish.

5.      The FCR thus *fundamentally* under-read the TAC—**a court cannot correctly apply *Twombly/Iqbal* if it misdescribes what was actually pleaded**.

6.      The FCR then imported Judge Pittman's prior Rule 12(b)(6) reasoning directed at other defendants, notwithstanding the Fifth Circuit's mandate that Pigg's liability "was not adjudicated, or even addressed, elsewhere in the record." ECF No. 214, at 2 n.1.

7.      It also added new antitrust and section *1983* theories that Pigg never raised. That procedure was *unfair* to Yan, and the recommendation should be rejected.

## II.    STANDARD OF REVIEW

8.      Under *28 U.S.C. § 636(b)(1)*, the district judge must conduct a de novo review of those portions of the FCR to which specific objection is made.\

9.      A Rule 12(c) motion is governed by the same standard as Rule 12(b)(6). *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312–13 (5th Cir. 2002). The court must accept all well-pleaded factual allegations as true, draw reasonable inferences in the nonmovant's favor, and ask only whether the complaint states a plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Because Yan proceeds pro se, his pleading must be read liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

10.    *Erickson*, 551 U.S. at 94, confirmed that **pro se litigants need not plead legal theories** — they need only allege facts. The Court held that a complaint "does not need detailed factual allegations" and that pro se filings must be "liberally construed." This was a reaffirmation of *Haines* in the post-*Twombly* era, making clear that *Twombly* did not abrogate the liberal construction requirement for pro se plaintiffs.

11.    The Fifth Circuit has stated this explicitly: a complaint states a claim as long as it alleges facts upon which relief can be granted "**even if it fails to categorize correctly the legal theory giving rise to the claim**." Shaikh v. Tex. A&M Univ. Coll. of Med., No. 16-20793 (5th Cir. June 20, 2018), slip op. at 13 n.7.

### III.    OBJECTION NO. 1: THE FCR DID NOT MEANINGFULLY ENGAGE YAN'S CORE ARGUMENTS OR CONTROLLING AUTHORITIES

#### A.    RICO

12.    To state a civil RICO claim under *18 U.S.C. § 1962(c)*, a plaintiff must allege "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." Abraham v. Singh, 480 F.3d 351, 355 (5th Cir. 2007). A pattern of racketeering activity requires at least two related predicate acts. *18 U.S.C. § 1961(5)*. Pigg argued only that the RICO claims failed under *Twombly*/*Iqbal* and because Yan allegedly pleaded fewer than two predicate acts. ECF No. 191, at 10.

13.    Yan's response directly answered that argument by identifying multiple Pigg-specific acts over a five-month period, each tied to TAC allegations and dates, including alleged QDRO- and garnishment-related filings, communications with the retirement-plan administrator, receipt of the August 5, 2022 solicitation email, concealment, and later acceptance of the alleged scheme. ECF No. 206, at 15–17.

14.     The TAC therefore does not mention Pigg only in passing or allege only one isolated event; rather, it alleges a multi-step sequence of Pigg-specific conduct. The First Claim for Relief expressly lists "William Albert Pigg, person," and the TAC then repeatedly alleges Pigg-related acts tied to April 26, May 26, June 21, June–August communications with the 401(k) administrator, and the August 5 solicitation email, including repeated allegations of *§ 1962(d)* conduct. ECF No. 60, PageID 1120–21; *id*. ¶¶ 162–166, PageID 1126–29.

15.     Yan also invoked *Boyle v. United States*, 556 U.S. 938, 945–46 (2009), on the enterprise element, and *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648–49, 658–59 (2008), on reliance and direct injury.

16.     The FCR never analyzed whether Yan's TAC satisfied *Boyle*'s enterprise standard — yet that omission alone warrants de novo review. In *Boyle v. United States*, 556 U.S. 938, 945–46 (2009), the Supreme Court held that an associated-in-fact enterprise requires no formal hierarchy, no rigid structure, and no formal role assignments — it need only be a group of persons associated together for a common purpose of engaging in a course of conduct. Yan's point is not that the Court must now conclusively decide *Boyle* in his favor. It is that the FCR never analyzed *Boyle* at all, despite TAC allegations that Pigg, Barrows, Ybarra, and Associate Judge DeAngelis functioned as an associated unit sharing a common purpose, using a common mechanism, over a defined period, with distinct roles. ECF No. 60 ¶¶ 86–96, 100–105, 162–166, PageID 1108–13, 1126–29. Those allegations required claim-specific analysis under Boyle rather than summary rejection through imported reasoning from other defendants' motions. The FCR's failure to engage this theory — which Yan expressly raised and *Boyle* expressly supports — is an independent ground for de novo correction.

17.     Under *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), *§ 1962(c)* liability extends to anyone who participates in the operation or management of the enterprise itself. Yan's narrower point is that the FCR never addressed whether the TAC's allegations that Pigg communicated with the 401(k) administrator, signed and submitted the challenged instruments, and concealed his role plausibly alleged participation in the enterprise's core operational activity. At the objections stage, that omission matters more than any ultimate merits conclusion.

18.     The point of this objection is not that the Court must now accept every merits characterization Yan advanced, but that the FCR's generic RICO dismissal did **not** meaningfully engage Yan's actual argument that Pigg's "one instance" framing was contradicted by the TAC's pleaded sequence of multiple alleged acts and that those allegations required claim-specific Rule

12(c) analysis rather than imported reasoning from other defendants' motions. The FCR's predicate-act analysis suffers from a further defect: the prior reasoning it borrowed—Judge Pittman's ruling against other defendants—addressed different predicate acts framed as money laundering, not the predicate Yan actually pleads against Pigg. Yan's RICO theory against Pigg rests in substantial part on *18 U.S.C. § 664*, theft from an employee benefit plan, which is an enumerated RICO predicate under *18 U.S.C. § 1961(1)(B)*.

19.    That predicate, grounded in injury to Yan's ERISA retirement fund—was **never** previously analyzed by Judge Pittman or Magistrate Cureton since 2023 to 2025, and is not addressed anywhere in this FCR. A court cannot resolve whether *§ 664* predicate acts were adequately pleaded by importing analysis of a different predicate directed at different defendants.

20.    The TAC specifically alleges that Pigg, in the course of the divorce proceeding, prepared and submitted Qualified Domestic Relations Orders (QDROs) and communicated with Yan's Minnesota retirement-plan administrator in a manner that caused approximately $25,000 to be extracted from Yan's ERISA-protected 401(k) account without legal authorization. ECF No. 60 ¶¶ 101, 104, 162–166, PageID 1112–13, 1126–29.

21.    Section 664 prohibits the knowing embezzlement, stealing, or unlawful abstraction of funds from an employee benefit plan; Yan alleges precisely that the QDRO mechanism was used as the vehicle for such abstraction. *Id*. ¶ 104.

22.    Those allegations identify a specific fund (the Minnesota retirement account), a specific mechanism (the QDRO and garnishment process), a specific dollar figure ($25,000, later alleged to be $50,000 upon discovery of additional instruments), a specific time period (August 2022 onward), and a specific actor (Pigg, as the attorney who prepared or facilitated the relevant instruments). That is not the kind of conclusory allegation Judge Pittman faulted against other

defendants — it is a sequenced, factually grounded claim under an enumerated predicate that the FCR never examined.

23.     Those same § 664 predicate acts—the April 26, May 26, June 21, and August 2022 QDRO and garnishment submissions and communications—are each discrete acts of alleged fund abstraction committed on different dates and therefore satisfy the two-related-predicate-acts minimum under *18 U.S.C. § 1961(5)*. They are related because they share the same purpose (extracting funds from Yan's retirement account), the same victim (Yan), and the same mechanism (the QDRO and garnishment process). The narrower point here is not that the Court must now finally resolve continuity in Yan's favor, but that the FCR never analyzed continuity under the correct framework, including whether the pleaded sequence of related acts and the alleged ongoing deprivation of access to the fund stated a plausible pattern at the Rule 12(c) stage. That omission independently warrants de novo review.

24.     The FCR also failed to separately analyze Yan's RICO conspiracy theory under *18 U.S.C. § 1962(d)*. Instead, it treated the RICO claims as a unit, imported Judge Pittman's earlier reasoning against different defendants, and never addressed the governing conspiracy standard. ECF No. 214, at 5–6. That omission is especially material because the TAC did not merely include Pigg in the RICO count in general terms; it repeatedly alleged specific *§ 1962(d)* acts as to him. See ECF No. 60 ¶¶ 162–166, PageID 1126–29 (alleging, after each event, that Leslie Starr Barrows, Samantha Ybarra, and William Albert "Bert" committed one act of *18 U.S.C. § 1962(d)*).

25.     That omission matters. In *Salinas v. United States*, 522 U.S. 52, 65 (1997), a unanimous Court held that a *§ 1962(d)* conspirator need not personally commit or agree to commit two predicate acts; "[i]t suffices that he adopt the goal of furthering or facilitating the criminal endeavor." The Fifth Circuit has since confirmed that Reves's "operation or management" test

does not apply to *§ 1962(d)* and that the relevant question is whether "two or more people agreed to commit a substantive RICO offense and ... the defendant knew of and agreed to the overall objective of the RICO offense." *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998); accord *United States v. Delgado*, 401 F.3d 290, 296–97 (5th Cir. 2005); *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010); *United States v. Rosenthal*, 805 F.3d 523, 532 (5th Cir. 2015). Here, the TAC alleges that Pigg was repeatedly included in the pleaded *§ 1962(d)* theory and specifically alleges that he received the August 5, 2022 solicitation email and later accepted or consented to the alleged scheme. ECF No. 60 ¶¶ 101, 104, 162–166, PageID 1112–13, 1126–29. Whether those allegations ultimately prevail is a merits question. The narrower objection here is that the FCR did not analyze Yan's *§ 1962(d)* theory under *Salinas* and *Posada-Rios* at all.

26.     The FCR's additional findings—that Yan failed to allege "when, where, or how the conspiracy was formed" and that Yan failed to plead a "meeting of the minds" between Pigg and a state actor—are directly contradicted by ECF NO. 60 ¶ 70 (PageID 1103). That paragraph alleges that on April 13, 2022, Associate Judge DeAngelis ordered Yan to pay Pigg $25,000 from his 401(k) even though "William Albert Pigg never submitted any billable hours or rates or any pleading into the hearing"—and then characterizes that award as "an incentive for William Albert Pigg's do-not-appeal this unlawful order," stating that "Lori L. DeAngelis offered him $25,000 in exchange for his cooperation." That is not a conclusory assertion of conspiracy: it is a pleaded exchange of consideration between a private attorney and a named state judicial officer, on a specific date (April 13, 2022), for a specific act (non-appeal of an unlawful QDRO order), for a specific dollar amount ($25,000). The FCR's finding that no meeting of minds was alleged is irreconcilable with ¶ 70 of the TAC.

27.    The FCR also omitted three additional Pigg-specific factual threads pleaded with particularity in the TAC and attached as Exhibit 1, none of which were addressed anywhere in the FCR's analysis. First, ECF NO. 60 ¶ 100 (PageID 1111) alleges that after Yan was notified by U.S. Bank of the garnishment order in July 2022, Pigg sent Yan a communication "admitt[ing] to Plaintiff that the writ of garnishment and the court orders of garnishment were not truthful"— while simultaneously claiming he had not signed the orders and suggesting Barrows had done so. Pigg allegedly used that deception to induce Yan to pay him an additional $25,000. *Id*. At minimum, those allegations further undercut the FCR's characterization of the TAC as alleging only one isolated Pigg event. Second, ECF NO. 60 ¶ 105 (PageID 1113) alleges that Pigg later sent emails denying he had approved the QDRO because it "would not be true," despite the TAC's prior allegations that he had already signed multiple relevant instruments. Those allegations describe additional concealment and misleading communications that the FCR never addressed. Third, ECF NO. 60 ¶ 108 (PageID 1114) alleges that in September 2022, when Yan declined a forced settlement and identified outstanding discovery deficiencies, Pigg filed a withdrawal petition within 48 hours. The TAC ties that withdrawal to the later $50,000–$100,000 injury allegations at TAC ¶¶ 74 and 179 (PageID 1104, 1131). The FCR never analyzed any of these three factual threads.

28.    The FCR also omitted entirely the Pigg-specific grievance proceedings pleaded at TAC ¶¶ 115–118 (PageID 1116). Yan filed a separate grievance against Pigg individually (case 202300469) with the Office of the Chief Disciplinary Counsel. That grievance was initially dismissed by Defendant Martinez, but the Board of Disciplinary Appeals reversed and ordered investigation (¶ 116). On May 18, 2023, Defendant Rachel Ann Craig dismissed the grievance again despite Yan presenting "irrefutable hard evidence." *Id*. ¶ 117. The dismissal letters are

attached as Exhibit 2. The dismissal of the Pigg-specific grievance is independently alleged to constitute "an approval, consent, and endorsement of its members' past and future racketeering activities" constituting one act of *18 U.S.C. § 1962(d)*. *Id.* ¶ 173. This Pigg-specific evidence—a documented grievance, a reversal on appeal, and a second cover-up dismissal—directly supports the open-ended continuity element of Yan's *§ 1962(d)* theory as to Pigg individually. It was never addressed in the FCR, even though it is among the most concrete evidence of the alleged conspiracy's ongoing character.

**B. Antitrust**

29.    Pigg's antitrust argument was narrow: he argued **only** that Yan pleaded no facts supporting an antitrust claim against him and that Pigg's name appeared only once in the antitrust **body** section of the Third Amended Complaint ("nowhere in the body … does Pigg's name appear except in paragraph 226"). See ECF No. 191, at 13. The FCR accurately summarized that limited motion ground. ECF No. 214, at 4.

30.    Yan directly answered that argument by invoking *Federal Rule of Civil Procedure 10(c)*, which permits allegations to be adopted by reference and makes attached written instruments part of the pleading for all purposes. ECF No. 206, at 18–21; *Fed. R. Civ. P. 10(c)*. The antitrust count therefore cannot be read in isolation from the earlier factual allegations it expressly incorporates. *Rule 10(c)* states that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading," and that a written exhibit to a pleading "is a part of the pleading for all purposes."

31.    The FCR's framing rests on an unresolved threshold premise. The FCR adopts Pigg's contention that Yan "failed to make any non-conclusory allegations" supporting an antitrust claim, but that premise is legally invalid unless the Court first determines whether TAC ¶¶ 206–208 incorporate the earlier factual allegations into the antitrust claim under *Federal Rule of Civil*

*Procedure 10(c)*. This is especially so because ECF NO. 60 ¶ 205 expressly identifies "William Albert Pigg" as a defendant in the Second Claim for Relief. The FCR never addressed that antecedent *Rule 10(c)* question, even though its sufficiency conclusion depends entirely on it.

32.     As noted, *Rule 10(c)* permits statements in a pleading to be adopted by reference elsewhere in the same pleading and makes attached exhibits part of the pleading for all purposes. Fed. R. Civ. P. 10(c). ECF NO. 60 ¶ 206 incorporates the "FACTUAL BACKGROUND OF THIS SUIT" as if fully set forth; ¶ 207 incorporates "every paragraph herein"; and ¶ 208 expressly incorporates "every paragraph herein where the name of a person or entity is mentioned." By operation of Rule 10(c), the antitrust claim therefore includes the earlier paragraphs specifically naming Pigg and describing concrete acts, including, at minimum, ¶¶ 70, 72, 93, 96, 98, 99, 100, 101, and 104.

33.     The Supreme Court has instructed that, at the pleading stage, courts must "consider the complaint in its entirety," including documents and allegations incorporated by reference, rather than scrutinizing isolated allegations one by one. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Reading TAC ¶¶ 206–275 in isolation while ignoring the operative incorporation language in ¶¶ 206–208 is the opposite of that approach. The FCR therefore committed analytical error by treating the antitrust count as though it stood alone and by evaluating sufficiency without the incorporated factual record.

34.     Yan expressly raised this *Rule 10(c)* argument in his Opposition. Pigg's Reply did not address *Rule 10(c)*, did not dispute the incorporation language, and did not argue that TAC ¶¶ 206–208 were ineffective or ambiguous. The FCR nevertheless adopted the same insufficiency premise without resolving the incorporation issue that Yan had squarely presented. To the extent the FCR sustained dismissal without addressing that antecedent *Rule 10(c)* argument, the procedure was unfair because Yan was denied a meaningful ruling on the theory he actually presented. *Lozano v.*

*Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642–43 (5th Cir. 2007); *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310–11 (5th Cir. 2014). *Davoodi* is particularly apt because the movant there filed only a partial motion to dismiss, yet the district court dismissed an additional claim without notice; the Fifth Circuit vacated and remanded on that ground.

35.    To the extent the FCR construed the TAC as asserting a *Sherman Act § 2* conspiracy-to-monopolize theory, Yan objects that the TAC plausibly alleges Pigg's knowing and intentional participation in the challenged scheme. The TAC alleges that Pigg consented to and cooperated in the QDRO and garnishment mechanism, received funds extracted from Yan's retirement account, failed to disclose the legal limits of those orders to his own client, received the August 5, 2022 solicitation email, and later acted in a manner the TAC characterizes as concealment and retaliation after Yan challenged the scheme. ECF No. 60 ¶¶ 70, 72, 74, 93, 96, 100–105, 162–166. Read together, those allegations plausibly support an inference that Pigg knowingly participated in the alleged anticompetitive scheme.

36.    The FCR also imposed an unduly rigid conspiracy-pleading requirement by faulting Yan for not pleading when, where, or how the conspiracy was formed. Even under *Bell Atl. Corp. v. Twombly*, the issue is whether the complaint alleges enough factual matter to make the existence of an agreement plausible, not whether it supplies a verbatim account of the conspiracy's formation. 550 U.S. 544, 556 (2007). *Twombly* requires "enough factual matter (taken as true) to suggest that an agreement was made," not a transcript of where the parties sat down and formed it.

37.    To the extent the TAC is construed as alleging exclusionary or coercive conduct in the monopolization or attempted monopolization for legal and professional services, the FCR did **not** perform any claim-specific analysis of **both** theories and could not dismiss it merely by saying

that Yan pleaded no facts against Pigg. The TAC alleges that legal representation in an ongoing family-law proceeding functioned as the service Yan needed, while compelled fee extraction through QDRO, garnishment, and related court-process mechanisms functioned as the coercive condition attached to that representation. ECF No. 60 ¶¶ 101–104, 215, 217, 221–222, 226.

38.    The exclusionary conduct theory as to Pigg is this: as Yan's retained attorney, Pigg allegedly occupied a position in which continued legal representation was conditioned—explicitly or functionally—on Yan's compliance with court orders directing payment of attorneys' fees and spousal support from his ERISA retirement fund. ECF No. 60 ¶¶ 101–104, PageID 1112–13.

39.    The TAC further alleges that Pigg did not inform Yan of the legal limits on such orders, concealed material information about the court proceedings, and facilitated the execution of QDROs and garnishment instruments against Yan's 401(k) in furtherance of the fee-extraction scheme. ECF No. 60 ¶¶ 162–166. Those allegations describe more than the mere existence of an attorney-client relationship; they describe the alleged use of that relationship to impose unlawful financial extraction as the price of continued representation.

40.    At minimum, the TAC alleges coercive, exclusionary conduct directed at a consumer of legal services. The TAC alleges that Yan, as a consumer in that market, faced a forced choice: submit to unlawful, fee-generating conditions tied to legal representation, or face escalating legal harm, including contempt exposure, increased fees, and loss of meaningful choice. Whether Yan ultimately proves that theory is a later merits question. At *Rule 12(c)*, those allegations were sufficient to require claim-specific analysis rather than dismissal on the ground that Pigg was not factually connected to the count.

41.    Beyond the sufficiency of the incorporated allegations, the FCR also failed to analyze Yan's consumer standing under Clayton Act *§ 4*. Section 4 authorizes suit by "[a]ny person who shall be

injured in his business or property by reason of anything forbidden in the antitrust laws." *15 U.S.C. § 15*. In *Reiter v. Sonotone Corp.*, the Supreme Court considered a complaint alleging violations of *Sherman Act §§ 1 and 2* and held that a retail consumer who pays an artificially inflated price because of anticompetitive conduct is injured in "property" within the meaning of *§ 4*. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 335, 339–41 & n.1 (1979). *Reiter* thus confirms that a consumer is not excluded from seeking treble-damages relief under *§ 4* for claims alleging Sherman Act violations, including *§ 2* violations, merely because the consumer purchased goods or services for personal use.

42.    The TAC alleges precisely that kind of consumer property injury: loss of $60,000, an additional $50,000 to $100,000 in legal-service payments, loss of $25,000 plus capital-growth and tax losses in Yan's 401(k), and continuing loss of access to retirement funds. ECF No. 60 ¶¶ 244–247, PageID 1143–44. Under *Reiter*, those alleged out-of-pocket losses are injuries to "property" sufficient to invoke *§ 4*'s private damages remedy for conduct allegedly forbidden by the antitrust laws, including alleged Sherman Act violations and including a Sherman Act *§ 2* theory if otherwise adequately pleaded. *Reiter* did not decide the ultimate merits of the underlying Sherman Act claims, but it forecloses dismissal on the ground that Yan, as a consumer, lacks a cognizable antitrust damages remedy.

43.    *Brunswick* further confirms that Yan's injuries satisfy the antitrust injury requirement. To recover under *§4*, a plaintiff must show injury "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Here, Yan's alleged losses — fees extracted through unauthorized court orders and QDRO mechanisms — are not collateral consequences of the alleged anticompetitive scheme. They are the scheme. The injury and the violation are

coextensive: the very mechanism alleged to be anticompetitive is the same mechanism that produced Yan's out-of-pocket losses. That is the paradigm case *Brunswick* was designed to protect, and it stands in direct contrast to the *Brunswick* plaintiffs whose injury bore no relationship to what made the defendants' conduct unlawful.

44.    Yan, as the direct purchaser of legal services, also falls within the core purchaser class recognized by the antitrust laws. The Supreme Court has held that the provision of legal services is "trade or commerce" subject to the Sherman Act and that the legal profession enjoys no blanket antitrust exemption. *Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975). As the party who directly purchased those services and directly bore the alleged overcharges and extraction losses, Yan occupies the direct-purchaser position recognized in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

45.    To the extent further antitrust-standing analysis is required, Yan's alleged injury is also of the kind the antitrust laws were designed to prevent. A plaintiff may proceed where the injury flows directly from the very mechanism alleged to make the restraint unlawful. *Blue Shield of Va. v. McCready*, 457 U.S. 465, 484 (1982). Here, Yan alleges direct, out-of-pocket injury from the very fee-extraction mechanism he says the conspiracy used to exploit consumers of legal services. The FCR did not analyze that direct-purchaser and consumer-standing framework at all.

46.    Nor did the FCR perform a claim-specific analysis of whether the incorporated allegations plausibly describe exclusionary conduct by Pigg under the *§ 2* theory the FCR attributed to the TAC. Section 2 reaches exclusionary conduct used to acquire, maintain, or further monopoly power, as distinguished from growth resulting from a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). At the pleading stage, courts must consider the complaint in its *entirety*, including allegations incorporated by

reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). And where market power is used to force unwanted purchases or conditions on buyers, and the conduct is used to maintain or strengthen monopoly power without sufficient business justification, that coercion is legally significant rather than economically irrelevant. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464–65, 482–86 (1992). Once Rule 10(c) is honored and the TAC is read in its entirety, the FCR could not properly dismiss by treating Pigg as a one-reference defendant while ignoring the incorporated allegations describing specific instruments, specific financial incentives, and specific alleged participation in the challenged fee-extraction mechanism.

## C. Section 1983 / Fourteenth Amendment

47.    Pigg's sole section *1983* argument was that Yan sued him in his "individual capacity," making him a private actor as a matter of Yan's own pleading. ECF No. 191, at 13-14. Yan answered that "individual capacity" does not mean "private action" and pointed to the TAC's allegations of joint participation with state actors - Associate Judge DeAngelis and Tarrant County - in the misuse of court orders and QDROs. ECF No. 206, at 22-23.

48.    Pigg's argument confuses two distinct *§ 1983* concepts. "Individual capacity" is a term of art that indicates a plaintiff is seeking to hold a defendant personally liable (as opposed to suing them in their "official capacity" for relief against a government entity). See *Hafer v. Melo*, 502 U.S. 21, 25–27 (1991). It says nothing about whether the defendant qualifies as a state actor. A private attorney sued in his "individual capacity" under *§ 1983* can still be a state actor if he acted under color of state law — which is precisely what Yan alleges through the *Dennis* and *Lugar* theories set forth below. The FCR's inference that "individual capacity" forecloses state-actor status was legal error.

49.    The TAC does more than make a generic reference to a private lawyer. It asserts a separate *§ 1983* claim against Pigg and ties that claim to a sequence of Pigg-specific allegations involving alleged joint use of court orders and QDRO mechanisms with state actors.

50.    Yan placed two controlling Supreme Court authorities directly before the Court: *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980), and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941–42 (1982). Both hold that private persons who willfully participate in joint action with state officials act under color of state law. ECF No. 206, at 22–23.

51.    The FCR did not analyze *Dennis* or *Lugar*. It instead reframed the issue through *Hernandez v. Causey*, No. 2:17-cv-123-TBM-MTP, 2024 WL 5200178, at *11 (S.D. Miss. Feb. 14, 2024), asking whether Yan alleged facts **showing** an "agreement" or "meeting of the minds," "willing participation," and the "time, date, or circumstances" of the agreement. ECF No. 214, at 8–9.

52.    That reframing was legal error. *Dennis* expressly holds that private parties, including a private attorney, act under color of state law when they are willful participants in joint action with a judge to obtain a wrongful order. 449 U.S. at 27–28. *Lugar* likewise holds that a private party acts under color of state law when it invokes state procedures to effect a deprivation through state officials. 457 U.S. at 941–42. Neither decision imposed a requirement that the plaintiff plead the precise time, date, or location at which the agreement was formed.

53.    The FCR's demand for **showing** factual allegations of "when, where, or how" the conspiratorial agreement was formed effectively imposed a heightened pleading requirement. In *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court held that federal courts may not apply a heightened pleading standard to *§ 1983* claims; Rule 8 governs. 507 U.S. 163, 168 (1993). Although *Twombly* and *Iqbal* require

plausibility, they did not authorize a claim-specific checklist requiring a *§ 1983* plaintiff to plead the precise mechanics of an agreement's formation.

54.    Even under the ordinary *Twombly*/*Iqbal* plausibility standard, a *§ 1983* conspiracy plaintiff need not plead direct evidence of an agreement or a verbatim account of its formation. The question is whether the complaint alleges enough factual matter to make joint action plausible. *Twombly*, 550 U.S. at 556.

55.    The FCR therefore erred by requiring Yan to "allege facts showing an agreement" and by relying on *Hernandez*, a nonbinding district court order, to demand more than Rule 8 requires. Fifth Circuit precedent requires only that the complaint allege facts plausibly indicating an agreement, not prove one at the pleading stage. *Bevill v. Fletcher*, 26 F.4th 270, 284 (5th Cir. 2022). Read together with the Pigg-specific allegations incorporated into the TAC, Yan's § 1983 claim was entitled to analysis under *Dennis*, *Lugar*, *Leatherman*, and *Twombly*—not dismissal under a heightened, nonbinding checklist.

56.    The Supreme Court has long recognized that a conspiratorial "meeting of the minds" may be established through circumstantial inference. In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970), the Court held that a factfinder could infer from the circumstances that a police officer and a private party had reached a "meeting of the minds." *Dennis v. Sparks*, 449 U.S. 24 (1980), and *Tower v. Glover*, 467 U.S. 914 (1984), separately confirm that private parties who are willful participants in joint activity with state officials may be liable under *§ 1983*.

57.    The pleading-stage question is therefore not whether Yan catalogued the exact time, date, and place of the conspiratorial handshake, but whether the TAC's nonconclusory allegations **indicate** a plausible inference of concerted action with state officials to violate his constitutional rights. They **do**. Yan alleges objective, external facts: court-ordered payments to Pigg, Pigg's

signatures on the challenged instruments, the use of QDRO and garnishment mechanisms through state court processes, the August 5, 2022 *solicitation* email, and Pigg's *subsequent concealment* and *withdrawal*. Those coordinated acts plausibly support an inference of agreement.

58.    The FCR therefore demanded too much. The Supreme Court precedent does require facts supporting an agreement or meeting of the minds and willing joint participation, but it does not require a plaintiff to plead the precise mechanics of the agreement's formation. Read together with *Adickes*, *Dennis*, and *Twombly*, the proper inquiry is whether the pleaded facts make concerted action plausible—not whether Yan pleaded a transcript of private communications.

59.    The FCR's reliance on *Pikaluk v. Horseshoe Entertainment, L.P.*, 810 F. App'x 243 (5th Cir. 2020), for the "agreement or meeting of the minds" requirement is directly undermined by the Fifth Circuit's subsequent published opinion in *Hernandez v. Causey*, 124 F.4th 325 (5th Cir. 2024). In *Hernandez*, Judge Dennis dissented and expressly argued that *Pikaluk* "**misstates** the standard," explaining that the correct rule — drawn from binding Fifth Circuit and Supreme Court precedent — requires only that the defendant be a "willful participant in joint action with the State or its agents." 124 F.4th at 340–41 (Dennis, J., concurring in part and dissenting in part) (quoting *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005), quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). The dissent further identified *Pikaluk* as a nonbinding, unpublished opinion that traced its "meeting of the minds" language not to any Fifth Circuit precedent but to a single district court *Hernandez* opinion. The FCR thus applied an unpublished, internally disputed pleading standard to dismiss a standalone *§ 1983* claim backed by documentary exhibits filed by a pro se plaintiff — precisely the type of legal error that de novo review under *28 U.S.C. § 636(b)(1)* is designed to correct.

60.     The remaining authorities the FCR cited—*Polacek v. Kemper County*, 739 F. Supp. 2d 948 (S.D. Miss. 2010), and *Tripathi v. St. Edward's University*, No. 1:25-CV-01203-RP, 2025 WL 2629968 (W.D. Tex. Aug. 27, 2025)—are nonbinding district-court decisions and do not justify dismissal under a more demanding standard than the one set by the Supreme Court and the Fifth Circuit. At most, those cases illustrate the unremarkable proposition that conclusory allegations are insufficient. Yan does not dispute that proposition. His point is that the TAC alleged specific, external facts **indicating** and **showing** coordinated use of judicial orders and retirement-plan instruments to deprive him of property, and those facts had to be evaluated under the governing plausibility standard—not dismissed for failure to plead the precise mechanics of the agreement's formation.

61.     *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004), cited by the FCR, does not compel a different result — it confirms Yan's position. *Priester* affirmed dismissal of a *§ 1983* conspiracy claim because the plaintiff had offered only bare, conclusory assertions of agreement with no supporting factual matter of any kind. That is not this case. Yan's TAC does not merely allege that Pigg "conspired" with a state official in conclusory terms. It alleges a specific exchange of consideration between Pigg and Associate Judge DeAngelis on a specific date, for a specific amount, in exchange for a specific act — pleaded at TAC ¶70 and corroborated by signed documentary exhibits attached as Exhibits 7 and 8. *Priester* requires "specific facts showing an agreement," 354 F.3d at 420 — and Yan has alleged them. The FCR cited *Priester* for the conclusion that Yan's TAC lacked specific facts, while simultaneously failing to engage TAC ¶¶70, 93, and 96 — the very paragraphs that provide those specific facts. A court cannot find an absence of specific factual allegations by declining to analyze the specific factual allegations that exist.

62.     The Fifth Circuit has recognized that a plaintiff need not plead direct evidence of a private planning session so long as the complaint alleges specific, coordinated acts supporting a plausible inference of agreement. In *Bevill v. Fletcher*, the court held that the plaintiff had alleged enough to raise a reasonable expectation that discovery would reveal evidence of an illegal agreement, and in the later appeal it described the record as permitting an inference of an agreement reached expressly or tacitly. See *Bevill v. Fletcher*, 26 F.4th 270, 284 (5th Cir. 2022) ("*§ 1983* conspiracy claim need not satisfy "a `probability requirement at the pleading stage; [plausibility] simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").

63.     Even under the stricter conspiracy standard applied by the *Hernandez* majority, Yan's TAC satisfies the test. The plaintiff in *Hernandez* failed because his complaint contained no factual allegations linking the federal agent to any agreement with state officers — the only alleged "pretext" was a routine phone call for translation assistance, and the shooting was described as the agent's own unilateral act. 124 F.4th at 337–38. Yan's TAC is categorically different. It alleges: (1) a specific financial arrangement between Pigg and state judicial officer DeAngelis on a specific date (ECF NO. 60 ¶ 70, PageID 1103); (2) written consent by Pigg to DeAngelis's unlawful order, documented in a signed exhibit (ECF NO. 60 ¶ 93, PageID 1109, Exhibit 7); (3) multiple QDRO and garnishment instruments bearing Pigg's signature submitted through Tarrant County state court processes (ECF NO. 60 ¶ 96, PageID 1110, Exhibit 8); and (4) email communications among Pigg, Barrows, and Ybarra corroborating coordination of the fee-extraction scheme (ECF NO. 60 ¶¶ 100–105, PageID 1111–13, Exhibit 1). These are not generalized assertions of joint action — they are documentary, date-specific, instrument-specific facts evincing a preceding agreement through coordinated conduct between a private attorney and a named state judicial officer. The

*Hernandez* majority confirmed that *§ 1983* liability attaches where "the constitutional deprivation has its source in state authority," 124 F.4th at 338 (quoting *Lugar*, 457 U.S. at 939) — and here, the entire mechanism of the alleged deprivation runs through the Tarrant County state court process. The FCR's contrary conclusion rests on no engagement with these specific factual allegations and no analysis of the actual exhibits attached to the TAC; it is a legal conclusion untethered from the pleading it purported to evaluate.

64.    The controlling question at *Rule 12(c)* is therefore not whether Yan has mapped the mechanics of an agreement, but whether the TAC plausibly alleges willful participation in joint activity with a state actor. It does. The TAC alleges that Pigg jointly used court orders and QDRO mechanisms in coordination with Associate Judge DeAngelis and Tarrant County processes to injure Yan's ERISA-protected retirement fund.

65.    Specifically: the TAC alleges that Associate Judge DeAngelis issued orders directing payment of attorneys' fees and spousal support from Yan's ERISA-protected retirement account (ECF No. 60 ¶¶ 86–92, PageID 1108–09); that Pigg, as Yan's own attorney, prepared or participated in QDROs and garnishment submissions that implemented those orders against the Minnesota 401(k) administrator (*id*. ¶¶ 101–104, 162–166, PageID 1112–13, 1126–29); that Pigg received the August 5, 2022 solicitation email from co-defendants and thereafter accepted or consented to the scheme (*id*. ¶¶ 104, 165); and that those submissions were transmitted through Tarrant County court processes and the Tarrant County District Clerk, making the deprivation one effectuated through state instrumentalities (*id*. ¶¶ 101–104).

66.    Under *Dennis*, a private attorney who uses court proceedings to accomplish a wrongful taking at the direction of or in coordination with a state judicial officer acts under color of state law. 449 U.S. at 27–28. Under *Lugar*, the invocation of state legal procedures — here, the QDRO

and garnishment process administered through Tarrant County — is itself state action attributable to the private party who invokes it. 457 U.S. at 941–42.

67.     Both standards are met on the face of the TAC. Those allegations directly satisfy the *Dennis*/*Lugar* standard. The FCR's failure to apply that standard—and its substitution of a more demanding lower-court checklist—is legal error requiring de novo correction.

68.     Two additional TAC paragraphs, unaddressed in the FCR, directly contradict its specific findings of no "meeting of the minds" and no "willing participation" with a state actor. First, ECF NO. 60 ¶ 70 (PageID 1103) alleges that on April 13, 2022, Associate Judge DeAngelis ordered Yan to pay Pigg $25,000 from his 401(k) even though "William Albert Pigg never submitted any billable hours or rates or any pleading into the hearing," and expressly characterizes this award as "an incentive for William Albert Pigg's do-not-appeal this unlawful order," stating that DeAngelis "offered him $25,000 in exchange for his cooperation." This is a pleaded meeting of the minds between Pigg and a named state judicial officer, at a specific proceeding, resulting in a specific financial arrangement in exchange for a specific act. Those allegations materially undercut the FCR's demand for additional detail about 'when, where, or how' the agreement was formed. Second, ECF NO. 60 ¶ 93 (PageID 1109) alleges that after the hearing, "Both Leslie Starr Barrows and William Albert Pigg consented to this unlawful proposed order"—the Associated Judge report issued by DeAngelis, attached as Exhibit 7. Written consent by a private attorney to a state judicial officer's unlawful order is precisely the "willing participation in joint activity with the state" that *Dennis* and *Lugar* require. The FCR's finding of insufficient factual allegations on these two elements is irreconcilable with ¶¶ 70 and 93 of the TAC.

## IV.    OBJECTION NO. 2: THE FCR SUPPLIED SUA SPONTE DISMISSAL THEORIES WITHOUT AFFORDING YAN FAIR NOTICE

69.     Fifth Circuit law permits *sua sponte* dismissal only when "the procedure employed is fair." *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 642 (5th Cir. 2007). Fairness ordinarily requires notice of the court's intention and an opportunity to respond before dismissal on grounds the movant did not raise. *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310–11 (5th Cir. 2014); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006); *Century Surety Co. v. Blevins*, 799 F.3d 366, 372–73 (5th Cir. 2015) (reversing dismissal of claims not challenged by the movant, where the district court acted *sua sponte* without notice or an opportunity to respond).

70.     On antitrust, Yan objects both procedurally and on the merits, as set forth in Section III.B above. The FCR dismissed the antitrust count on theories Pigg never raised—specific intent to monopolize and failure to plead the conspiracy's formation—without affording Yan notice or an opportunity to respond. ECF No. 214, at 6–7. Independently, the TAC, read as a whole under Rule 10(c), pleads Pigg-specific conduct, coercive fee-extraction tied to legal services, and direct consumer property injury. The antitrust dismissal therefore was both procedurally unfair and substantively erroneous.

71.     On section *1983*, the FCR converted Pigg's simple private-actor argument into an elaborate joint-action inquiry—requiring allegations of an agreement, a meeting of the minds, willing participation, and a specific time and place—without first confronting *Dennis* or *Lugar* and while treating the TAC as though Pigg were only a generic private actor rather than the subject of a separate section *1983* claim. ECF No. 214, at 8-9.

72.     That checklist has no foundation in *Dennis* or *Lugar*. *Dennis* asks **only** whether a private party conspired with a state official to use judicial power wrongfully; *Lugar* asks **only** whether state procedures were invoked to work the deprivation. Neither case requires the plaintiff to plead when, where, or how the conspiratorial relationship was formed.

73.    Had Yan known the FCR intended to impose that heightened standard, he could have directed the Court to the specific TAC allegations describing Pigg's coordinated use of court orders and QDRO mechanisms with state actors—conduct that satisfies *Dennis* and *Lugar* without any pleading of the agreement's precise formation.

74.    On RICO, the FCR bypassed Yan's predicate-act analysis entirely by borrowing Judge Pittman's prior ruling against other defendants. Yet the Fifth Circuit remanded specifically because Pigg's liability "was not adjudicated, or even addressed, elsewhere in the record." ECF No. 214, at 2 n.1. Transplanting another defendant's dismissal rationale into Pigg's first-time adjudication is not a substitute for the de novo analysis the remand required.

75.    That substitution is especially prejudicial here because Judge Pittman's prior analysis was directed at a money laundering predicate theory—not the predicate Yan pleads against Pigg. Yan's RICO claim against Pigg rests on *18 U.S.C. § 664*, theft from an employee benefit plan, an enumerated predicate under *18 U.S.C. § 1961(1)(B)* grounded in injury to Yan's ERISA retirement fund. That predicate was never analyzed in the borrowed ruling.

76.    The FCR therefore did not merely import reasoning from another defendant's motion—it imported reasoning about a different legal theory directed at different defendants and applied it to extinguish a distinct predicate claim Yan actually pleaded against Pigg.

77.    That importation is especially indefensible because Judge Pittman's "conclusory allegations" finding was directed at defendants whose involvement was alleged only in general narrative terms. Pigg's involvement is different in kind: the TAC attaches the underlying instruments as exhibits. Exhibit 1 contains the actual email correspondence between Pigg, Barrows, and Ybarra—including the August 5, 2022 solicitation email in which Barrows stated "In order for us to obtain our attorney's fee, we must say the order is for spousal support… there

is no way around it," with Pigg as recipient, and Pigg's own emails to Yan admitting the orders were not truthful. ECF No. 60 ¶¶ 100–105, PageID 1111–13. Exhibit 7 is the Associated Judge report bearing Pigg's signature consenting to the unlawful QDRO order. Id. ¶ 93, PageID 1109. Exhibit 8 is the April 26, 2022 garnishment order bearing Pigg's signature. Id. ¶ 96, PageID 1110.

78.     Under *Twombly* and *Iqbal*, the question is whether factual allegations are sufficient to state a plausible claim—not whether they are embodied in narrative prose as opposed to attached documentary exhibits. Where a plaintiff attaches the actual signed instruments and actual email communications as exhibits to the complaint, those exhibits are part of the pleading. See *Fed. R. Civ. P. 10(c)* ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Importing a "conclusory" analysis from a different defendant's motion, directed at a different predicate theory, to extinguish claims backed by attached documentary exhibits is not a permissible application of *Twombly*/*Iqbal*—it is a misapplication of the pleading standard that the de novo review standard under *28 U.S.C. § 636(b)(1)* requires this Court to correct.

79.     The narrow "best case" exception to the notice requirement does not apply here. That exception is not triggered automatically by the age of litigation or the number of prior amendments. *Davoodi*, 755 F.3d at 310–11; *Lozano*, 489 F.3d at 643. The problem is that the FCR recommended dismissal with prejudice on theories Yan never had a fair opportunity to address, compounded by a simultaneous denial of leave to amend.

## V.     ALTERNATIVE OBJECTION: DISMISSAL WITH PREJUDICE IS UNWARRANTED

80.     Beyond the plausibility standard, a court evaluating a pro se complaint bears an affirmative obligation to read the pleading to raise the strongest legal theory the alleged facts support, even if the plaintiff did not correctly name or categorize the applicable doctrine. *Haines v. Kerner*, 404

U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A pro se plaintiff is not required to plead legal theory — only facts. *Shaikh v. Tex. A&M Univ. Coll. of Med.*, No. 16-20793, slip op. at 13 n.7 (5th Cir. June 20, 2018). Dismissal of a pro se complaint for failure to correctly identify the legal theory giving rise to a claim, where the facts alleged support a cognizable claim, is therefore legal error regardless of whether the plaintiff cited the correct statute. That obligation applied with full force to the FCR's evaluation of the TAC — and the FCR's failure to independently analyze what law Yan's factual allegations implicate, particularly as to the *§664* RICO predicate and the *Dennis/Lugar §1983* theory, is an independent basis for de novo correction.

81. Even if the Court finds one or more claims insufficiently pleaded, dismissal with prejudice should be rejected. The FCR's analysis turns substantially on court-supplied pleading deficiencies that Pigg never raised. That alone forecloses prejudicial dismissal, because Yan has not yet had a meaningful opportunity to address those specific deficiencies.

82. At minimum, fairness requires either: (a) denial of the motion as framed; (b) supplemental briefing on the court-supplied theories; or (c) targeted leave to amend directed at any identified deficiency.

83. The ordinary and fair course—especially in a pro se case following a Fifth Circuit remand—is targeted amendment rather than immediate prejudicial dismissal.

## VI.    PRAYER FOR RELIEF

84. For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) sustain these objections; (2) reject the FCR and deny Pigg's Rule 12(c) motion; or, in the alternative, (3) reject prejudicial dismissal, decline to adopt the court-supplied grounds without further notice and briefing, and grant targeted leave to amend any claim the Court finds deficient.

Respectfully submitted,

/s/ *Conghua Yan*
Conghua Yan, Pro Se Plaintiff
2140 E Southlake Blvd, Suite L-439
Southlake, Texas 76092
214-228-1886
arnold200@gmail.com

## CERTIFICATE OF SERVICE

On March 2, 2026, I filed the foregoing through the Court's CM/ECF system, which will send notice to all counsel of record who are registered CM/ECF users. I further certify that I served a true and correct copy on any non-CM/ECF participant listed below by U.S. Mail, certified mail, commercial carrier, or email by consent at the address shown. If no non-CM/ECF recipient is listed, there are none.

/s/ *Conghua Yan*
Conghua Yan